**LAW OFFICES OF C. JOE SAYAS, JR.**
C. JOE SAYAS, JR. (Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (Bar No. 250685)
kpe@joesayaslaw.com
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

**KING CHENG MILLER & JIN, LLP**
DAVID P. KING (Bar No. 136765)
dpk@kmlaw,net
3675 Huntington Drive, Suite 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No.: 2:22-cv-05915-MCS-MAR

CLASS ACTION

DECLARATIONS OF PLAINTIFFS, CLASS MEMBER, AND WITNESS F. POAG IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Complaint filed: August 19, 2022
Trial Date: None Set

**TO THE HONORABLE COURT:**

PLAINTIFFS respectfully submit to Honorable Court the following Declarations:

1. Plaintiff Dora Patricia Amaya;
2. Plaintiff Anibal Silva;
3. Peter Acosta, class member;
4. Manuel Aguilera, class member;
5. Mynor Andrade, class member;
6. Daniel Arango, class member;
7. Hajar Chikh, class member;
8. Brandon Craig, class member;
9. Ruben Espinoza, class member;
10. Anthony Fernandez, class member;
11. Jordan Ford, class member;
12. Jazzmyne Freeman, class member;
13. Todd Fucile, class member;
14. Andrew Gutierrez, class member;
15. Clement Hurtado, class member;
16. Zoila Lemus, class member;
17. Wa Luo, class member;
18. Javier Martinez, class member;
19. Jesus Mendoza, class member;
20. Bryan Morgan, class member;
21. Kevin Orange, class member;
22. Jonathan Otzoy, class member;
23. Anthony Penca, class member;
24. Solvenina Ramirez, class member;
25. Abdel Rifai, class member;
26. Brandon Robinson, class member;
27. Mario Rocha, class member;

28. Ryan Sierra, class member;

29. Abraham Torres, class member;

30. Steven Vakoc, class member; and

31. Frederic Poag, witness.

Dated: May 22, 2023

**LAW OFFICES OF C. JOE SAYAS, JR.**

By: *__/s/ C. Joe Sayas, Jr.__*
C. JOE SAYAS, JR.
KARL P. EVANGELISTA
Attorneys for Plaintiffs

3

DECLARATIONS OF PLAINTIFFS, CLASS MEMBERS, AND WITNESS IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF DORA PATRICIA AMAYA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF DORA PATRICIA AMAYA

I, Dora Patricia Amaya, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I have been employed as a Passenger Customer Service Agent in the Ramp Operations Department of Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") since August 27, 2021.

**My Duties and Responsibilities at Menzies Aviation**

3. Throughout the time I have worked at Menzies Aviation, I have been assigned to the Ramp Operations Department at LAX. During my shift, I perform tasks that include (per my job description and in actual experience): Checking in passengers for flights at the ticket counter and gates; Verifying passenger documentation; Assigning seats and providing gate information; Checking baggage; Hosting self-service kiosks; Ensuring that all work areas are functional (check-in, lobby, gate, baggage); Otherwise offering assistance where needed in all areas of passenger services; and Adhering to Menzies uniform guidelines, which includes wearing protective footwear in the performance of my job duties.

4. In my first year working for Menzies Aviation, I was assigned to service flights by Iberia Airlines at LAX. After my first year, Menzies Aviation assigned me to work with three airlines: Iberia, Copa, and Level, all located at LAX.

**My Typical Work Schedule for Menzies Aviation**

5. My working hours with Menzies Aviation have varied. During what is called the "high season," which is from November to February, I would routinely work 8-hour shifts and sometimes longer up to around 11-hour shifts.

6. While working for Menzies Aviation, the day prior to my shift, Menzies Aviation would inform me of what time to arrive for my shift. After I began servicing three airlines, Menzies Aviation would also inform me of the airline I would service the following day.

7. There are two ways to clock-in and clock-out for employee work shifts. Menzies Aviation employs a biometric method, which involves touching a pad in Menzies Aviation's Operations Room using my thumb. The other method is an application ("Menzies App") installed on employee telephones. The Menzies App can be used when the biometric device is not working properly and was also used extensively during the Covid pandemic because of hygiene issues related to employees all touching the biometric pad with their thumbs.

8. The Menzies App installed on the telephones of employees has a geolocation mechanism that monitors the location of the employee and precludes clocking in for a shift while the employee is outside of the airport. Like many Menzies Aviation employees, I use my personal telephone for work functions as Menzies Aviation has not provided me a telephone to use for work duties. I do not know if the Menzies App monitors my location at all times, even when away from the workplace. I only know that I must use it for work. In addition to providing a means for clocking-in and clocking-out, the Menzies App also permits manual modification or editing of employee clock-in and clock-out times.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

9. I use my personal cell phone at work every day. In addition to using it often to clock-in and clock-out, I am responsible for advising the cargo department personnel of the assigned carousel to offload luggage. This requires me to call the carousel department operated by the airport to get the information. I also use my personal phone to

call customs border protection to give them information on the number of passengers arriving on an international flight, as well as the number of children and crew members. This is required before the passengers can depart the plane.

10. While at work, I and other Menzies Aviation Passenger Customer Service Agents use our phones to communicate with each other through a group chat. The group chat is active when we are off the clock, taking meal breaks, while on rest breaks, and even when we are at home. We are also required to use our phones to take pictures of passport and visa information of passengers from certain countries, such as China or India. That information is then circulated to all those that participate in the group chat, all of whom to the best of our knowledge are using our personal cell phones. Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement.

**Menzies Aviation Did Not Provide Uninterrupted 30-Minute Meal Periods**

11. My co-employees and myself are often not able to take our meal within the first five hours of our shift, or if we are able to take our meal afterwards, our job duties would often continue and interrupt those meal periods.

12. Menzies Aviation informed me that it will be penalized when airline flights are delayed because of gate operations attributable to it. We are told that if the delay was attributable to us, that penalties can be in the many thousands of dollars. In order to ensure continuity of gate operations and avoid those penalties, we were required to continue working through it even if we go past the fifth hour. Menzies Aviation prioritizes flight operations over most other matters, including employee meal and break periods. Certainly, that has been my experience and the experience of others that I have witnessed.

13. Menzies Aviation has a lunchroom that is approximately a 10-minute walk from my various workstations under ideal conditions. Getting to the lunchroom from gate areas requires exiting through the airport security checkpoints. The meal break is only 30 minutes long, and security checkpoints can incur delays or even closure if security events occur at the airport. This condition prevented me from getting back to my workstation in a timely manner. I and my co-employees therefore had to take our meal breaks in the Menzies Aviation Operations Room, which is within the airport security area.

14. The Menzies Aviation Operations Room is a working area. I and others are often approached about work issues such as assisting at a gate or helping passengers while taking our meal breaks. In addition, because the Menzies Aviation group chats are on our respective personal phones, it was the customary practice to receive them throughout our meal times. Frequently, the Menzies Aviation group chats ask me to assist in work functions. We were not able to record this interruption of our meal breaks because Menzies' Kronos system would not allow a recording of meal break for less than 30 minutes.

15. Although I had several missed, late, and interrupted meal breaks, which I estimated to exceed 50, I recall that Menzies paid only a couple of Meal Premiums.My understanding is that after this lawsuit was filed, Menzies Aviation has made more efforts to ensure that employees were permitted meal breaks within the first five hours of their shifts, and have in fact required employees to manually verify on paper that they have received the meal breaks. At the same time, Menzies Aviation managers have encouraged employees to sign these verifications even when they have not received their meal breaks during the initial five-hour period. These changes occurred only after this lawsuit was filed.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

16. Throughout the time I worked for Menzies Aviation, it has been a rarity that I have been able to take rest breaks during my shift and certainly not within the first four hours. Rather, during my shift, I would work continuously. Flights get delayed, rescheduled, and cancelled, and thus departure and arrival times change. Luggage and cargo need to be transferred between flights. Thus, there were always issues that needed to be addressed. Because of the continuous work, a 10-minute down time is quite rare and I would be lucky if I was able to have at least one rest break during a shift.

17. Prior to this lawsuit, Menzies Aviation never informed me or my fellow employees that we were entitled to extra pay if Menzies Aviation did not provide us with 10-minute rest breaks during our shift. During that time period, Menzies Aviation did not pay me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

18. As discussed above, for numerous reasons, including clocking-in and clocking-out through the Menzies App on my phone, the need for intra-airport calls to baggage and other personnel, and the group chat, the use of a cellphone during my shift is critical for performing my job duties. Menzies Aviation has never offered me a company cellphone, has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my personal cellphone.

19. I am also required to wear protective footgear for performance of my job duties such as working on the jet bridge and handling passenger luggage. Menzies Aviation has never provided me with protective footwear, so I have had to purchase my own protective footwear. Menzies Aviation has never offered to reimburse me for the

purchasing of protective footwear nor has Menzies advised me of the right to reimbursement.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 05/21/2023 at Porter Ranch, California.

Dora Patricia Amaya

DORA PATRICIA AMAYA

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF ANIBAL SILVA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

## DECLARATION OF ANIBAL SILVA

I, Anibal Silva, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as n the Ramp Operations Department of Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from 2015 to 2020.

**My Duties and Responsibilities at Menzies Aviation**

3. Starting around October 2016, I became a Crew Lead in Ramp Operations, responsible for a crew of 5-7 other employees responsible for loading and offloading passenger luggage and cargo. In addition to supervision, I frequently step in to personally load and unload airline customer baggages on and off the planes travelling in interstate and international commerce.

4. The primary complaint that I and others had while working at Menzies Aviation was meal and rest break issues.

**My Typical Work Schedule for Menzies Aviation**

5. My working hours with Menzies Aviation varied. Ramp Operations had two shifts, one which started between 3:00 -5:00 a.m and ended around 12:00-3:00 p.m. The second shift would start between 12:00-3:00 p.m. and end between 10:00 p.m.-midnight. While my crew and I would be scheduled for an 8 hour shift, Menzies Aviation would

frequently request that we stay beyond the shift to handle, for example, a delayed arriving or departing flight, or for other reasons. In other words, while a 8 hour schedule was contemplated, the crew and I would often work as many as 12 hours on a single shift.

6. I estimate that in majority of the days I worked at Menzies aviation I was unable to take a lunch break at all and or was unable to take them within the first 5 hours, and often not until I had worked 7-8 hours. There were also occasions when I would be required to work 10 hours or more and was not provided with a second meal period due to work demands. Others in my crew had the same experience. For the most part, I was not paid premium wages for these late or missed meal breaks.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

7. My job at Menzies required that I use and keep open, my personal cell phone at work every day. Menzies' supervisors and managers, as well as other co-employees, communicated with me through my personal cell phone, to provide me with instructions regarding work related issues, including information about cargo being loaded or unloaded, status of flight arrivals, flight departures, cancellations, delays, and equipment issues as examples.

8. Menzies Aviation did not pay nor offer to reimburse me for use of my personal cell phone for work duties. Menzies did not advise me of any right to reimbursement.

**Menzies Aviation Did Not Provide Uninterrupted 30-Minute Meal Periods**

9. As explained above, my co-employees and I rarely took our meal within the first five hours of our shift, or if we are able to take our meal afterwards, our job duties would often continue and interrupt those meal periods.

10. Lunch breaks had to be authorized by our supervisor. The supervisor would rarely authorize a meal break within the first 5 hours of a shift because the number one priority of Menzies Aviation was to service the customers in a timely fashion. I was informed that Menzies' timely service is necessary so that it would not be assessed a penalty for failing to do so.

11. When planes needed to be serviced or we were asked to be on standby for a delayed flight, our supervisor would request that we stay on the job and forego a meal break until things slowed down. I would then submit a Missed Punch Form, advising Menzies Aviation of the missed meal break. I would explain the reasons for the missed meal break, and then learn that it had not been approved by management when we would receive our paycheck and notice that I was not being paid extra for the missed meal break. I would complain to my supervisor.

12. One supervisor in particular, Frederic Poag, stated that he had submitted the Missed Punch Form on my behalf and on behalf of others explaining that I and others were entitled to the extra pay because he had asked us to work beyond the 5 hours. He told me he was frustrated that he was being overruled by management and that he

disagreed with management's decision to deny the extra wages for the missed meal break.

13. Most employees were scared to speak up about the issue because they were concerned about losing their jobs.

14. When we did take a meal break we would try to take it in the Operations Room, which is a working area where I and others would be approached about work related issues, or would frequently be interrupted with text messages or phone calls asking us work related questions. Often, the Operations Room was crowded, forcing us to take our meal breaks in the hallways on the floor.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

15. I don't ever recall, throughout the time I worked for Menzies Aviation, taking a rest break during my shift and certainly not within the first four hours. Rather, during my shift, I would work continuously. Flights get delayed, rescheduled, and cancelled, and thus departure and arrival times change. Luggage and cargo need to be transferred between flights. Thus, there were always issues that needed to be addressed, and quickly. Time was always of the essence with Menzies Aviation. This results in a work environment that deprived me and my co-employees the opportunity to take 10-minute rest periods within a 4-hour work schedule.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

16. As discussed above, for numerous reasons, including clocking-in and clocking-out through the Menzies App on my phone, the need for intra-airport calls to baggage and other personnel, and the group chat, the use of a cellphone during my shift is critical for performing my job duties. Menzies Aviation has never offered me a company cellphone, has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my personal cellphone.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this April 13th, 2023 at Paulden, Arizona.

[signature]

Anibal Silva

Scanned by TapScanner

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF PETER ACOSTA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF PETER ACOSTA

I, Peter Acosta, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Freighter Agent by Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from January 3, 2022 to January 20, 2023.

**My Duties and Responsibilities at Menzies Aviation**

3. As a Freighter Agent, I was responsible for taking cargo from the warehouse to the aircraft and from the aircraft to the warehouse that Menzies Aviation maintained at LAX.

**My Typical Work Schedule for Menzies Aviation**

4. My work schedule was very random, and I would commonly receive a text at midnight advising what time I should report to work that day. I would rarely work an 8 hour shift. Sometimes I would work 6 hours (only about 10% of the time). Most times I would work 10 to 12 hours per day. I would normally come in to work around 3:00 a.m. and work until 3:00 p.m. I would clock in and out at the machine that was located in the warehouse. I would also use this location to clock out for a meal break. The Kronos machine would scan my finger. I would estimate that less than half the time I was permitted to take a meal break by the 5th hour of work. I would estimate that 60% of

the time I took my meal break after the 5th hour of my shift. Even when I worked 12 hours, I would only take one meal break because there was not enough man power to handle the work. There would normally be 4, 5 or 6 flights on the ground and we didn't have enough people to handle them all. If we finished one, we would have to help with the other teams working on other aircraft. Flights and work always took precedence over taking a break.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

5. I used my personal cell phone for work every day. My co-workers and I, including managers, had a group chat where we would discuss work related issues each day, including flight arrivals and departures, and any issues relating to the cargo that we were loading or unloading from the aircraft. I would have to use my personal phone constantly at work. We were told that we could not use our own personal phones for personal use while we were at work, but the managers and supervisors made it clear that we were allowed and expected to use them for work related tasks like communicating on the group chat. Many times, as part of my job, I had to take pictures of defective equipment or cargo with my phone to send and report it to the group chat, so that management would see it. I know that there were radios and company phones that were issued to and used by the supervisors and managers, but I was never offered one. Based on my observations, those were only for management.

6. I do not recall Menzies Aviation ever offering to reimburse me for use of my personal phone for work duties, or ever advising me of any right to reimbursement. I am not aware of any procedure or way for me to get reimbursed by Menzies Aviation for the expense of using my personal cell phone for work-related tasks.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

7. More often than not, I was not provided a meal break within the first 5 hours of my shift. There were simply too many flights and not enough people to handle them. My supervisors made it clear to me and my co-workers that Menzies Aviation required that the cargo take priority over any meal or rest break. Meal breaks had to be authorized by a manager or supervisor, and were not authorized when an aircraft needed to be serviced. I was not allowed to take a meal break when I wanted.

8. Even when I did have a meal break it was often interrupted by text messages from supervisors in the group chat with instructions on what to do as soon as the meal break was over. The supervisor had to authorize the meal break and would do so only after the aircraft had been serviced. There were days that I worked more than 8 hours before I had any type of break, meal or otherwise.

9. I am not aware of Menzies Aviation paying me any meal break premium or any additional wages, overtime, or penalties for not providing me a meal period, or for having me work during my meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

10. Throughout the time I worked for Menzies Aviation, I don't recall ever having a 10 minute break. Work was continuous and there was no time to take a rest break. The supervisor insisted that we promptly service all the aircraft.

11. During that time period, Menzies Aviation did not pay me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this APRIL 17th, 2023 at HAWTHORNE, California.

Peter Acosta

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF MANUEL AGUILERA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF MANUEL AGUILERA

I, Manuel Aguilera, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed in the Cargo Department for Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") warehouse from January 9, 2017, to November 1, 2022. I was responsible for handling larger cargo items (in excess of 1,000 pounds) that were being shipped into and out of the warehouse.

**My Typical Work Schedule for Menzies Aviation**

3. My working hours with Menzies Aviation varied, but I would routinely work 8-hour shifts and sometimes longer up to around 11-hour shifts.

4. I would clock-in and clock-out for my work shifts, including clocking in out out for meal breaks, using a Kronos biometric device that Menzies Aviation employs, which involves touching a pad in Menzies Aviation's Operations Room using my thumb.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

5. Menzies required me to disclose my personal cell phone number and informed me that I can be contacted through it. Menzies' supervisors and employees communicated with me about work-related matters through my personal cell phone nearly every day either during work hours or during my personal time. They would either call or text me work-related messages, including the gate to report to and pictures

of cargo, and whether I was authorized to accept certain cargo. I would also use my cell phone to coordinate with other employees. Menzies Avation would also send me links or documents that I need to read or sign..

6. Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at Menzies Aviation for me to get reimbursed for the expense of using my personal cell phone for work-related tasks.

**Menzies Aviation Did Not Provide Uninterrupted 30-Minute Meal Periods**

7. I would rarely take a meal within the first five hours of my shift. Even on those rare occasions when I took a timely meal break, I and others I worked with would continue working at the warehouse while trying to eat. Supervisors and other employees would often have questions that needed answered during meal breaks. In other words, our job duties would often continue and interrupt those meal periods.

8. There were many reasons why I was not provided with a meal break within the first 5 hours of a shift. The workload was overwhelming, and Menzies insisted on having it completed as quickly as possible. Also, we were required to be on standby because of the uncertainty of flight arrivals and departures. Furthermore, drivers would show up to offload or pickup cargo at the warehouse and we had to service them before taking any meal break. Menzies was adamant that a client had to be serviced promptly and doing so was more important than a meal break. There was no set schedule for

taking meal breaks that I or my other employees can follow. If I had to estimate, I would say that a good majority of my meal breaks occurred well after 5 hours of work, and often not until after 7 or 8 hours of work had been completed. I would need a supervisor's permission to take a meal break and it would be denied until various work tasks were completed. My meal breaks were recorded because I was required to clock out and then back in after my meal break was over. However, those breaks that I and other employees were able to take were interrupted or shortened to resume our work were not recorded because our timekeeping system would not record a meal period of less than 30 minutes.

9. Menzies Aviation did not inform me that I was entitled to extra pay if Menzies Aviation did not provide me with a timely 30-minute uninterrupted meal break. No supervisor or manager ever mentioned it.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

10. Throughout the time I worked for Menzies Aviation, it was a rarity that I was ever able to take rest breaks during my shift and certainly not within the first four hours. Rather, during my shift, I would work continuously. I was never advised of any procedure for taking rest breaks during my employment with Menzies. There was always work that took priority. Because of the continuous work, a 10-minute down time is quite rare and I would be lucky if I was able to have at least one rest break during a shift.

11. Menzies Aviation did not pay me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

12. As discussed above, for numerous reasons, Menzies required me to make myself available through my cell phone during my shift so that they can reach me or similarly, that I can communicate with other employees about work-related issues. Menzies Aviation never offered me a company cellphone, has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my personal cellphone. Menzies did not provide me with a company cell phone or alternative device at work that I or other employees can use to allow for work related communications without having to necessarily use my personal cell phone.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this April 13, 2023 at Hawthorne, California.

[signature]
Manuel Aguilera

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF MYNOR JOAQUIN ANDRADE IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF MYNOR JOAQUIN ANDRADE

I, Mynor Joaquin Andrade, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Cargo Agent for Menzies Aviation (USA), Inc. ("Menzies Aviation") from April 25, 2022 to November 17, 2022 at San Francisco International Airport ("SFO").

## My Duties and Responsibilities at Menzies Aviation

3. While I worked at Menzies Aviation, I was overloaded with work. We were regularly short on staff, and I ended up some weeks working 7 days. My work as a Cargo Agent involved processing cargo arriving and departing on flights coming in and out of SFO. I was required, among other things, to input airbills into the computer system, bring paperwork to the caption to review and sign, and wait for flights to depart. I was not permitted to leave my post until the flight departed no matter the length of the delay. SFO is a busy airport and flights would constantly be arriving and departing and being delayed. I was always on call to handle the flights.

## My Typical Work Schedule for Menzies Aviation

4. I worked mostly Wednesday through Sunday from 5:00 p.m to 1:30 a.m. As explained below, I constantly felt pressured by Menzies Aviation to work through meal and rest breaks.

5. I would clock in and out of work using a machine in the office that Menzies Aviation had. I would also use this machine to clock out for meal breaks and then back in at the end of the meal break.

**Menzies Aviation Did Not Provide Timely Uninterrupted 30-Minute Meal Periods**

6. Meal breaks would be supposedly scheduled each day, but that schedule was almost never followed. My supervisor or manager would get upset with me when I wanted to take a meal break within the first 5 hours of my shift, insisting that there was still work that needed to be completed. Despite the supposed meal break schedule, I was not permitted to take a meal break unless my supervisor or manager authorized it. Many times the supervisor or manager did not authorize a meal break until well after 5 hours that I had been at work.

7. My manager gave me the clear indication that work responsibilities took precedence over meal breaks.

8. I was not aware that I was entitled to extra wages for late meal breaks and was not aware of any procedure to request extra wages. As far as I know, I did not receive any extra wages for my late meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

9. I would often take a rest break within the first two hours of my shift but never had time for a second rest break because of the busy work schedule and my manager's clear instruction that we could not take breaks whenever there was work still to be done. I don't recall ever having a second rest break while I worked at Menzies Aviation. I was required to get permission from the supervisor or manager before I took a rest break. I was not told that I was entitled to extra wages for missed rest breaks and I do not recall ever receiving extra wages for missed rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 4/19, 2023 at Pacifica, California.

_______________________________
Mynor Joaquin Andrade

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF DANIEL ARANGO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF DANIEL ARANGO

I, Daniel Arango, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Ramp Agent by Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from November 13, 2017 until December 20, 2018.

**My Duties and Responsibilities at Menzies Aviation**

3. As a Ramp Agent at Menzies Aviation, I was assigned to towing operations, meaning that I moved aircraft to the gate or terminal, where it can be unloaded and loaded with luggage, cargo, passengers and airline crew. I also moved aircraft from one gate to another, usually for inspections by engineers, cleaning or servicing.

4. Ramp Agents who are part of the towing operation are formed into teams or "crews." Each crew was responsible for gathering all the equipment and vehicles necessary for them to tow aircraft from one gate to another location as required.

5. Other times, I can also be assigned to load or offload cargo and/or luggages. If there was a need for more people for loading or offloading of cargo or luggage, I would sometimes be assigned to such tasks on an as-needed basis by Menzies Aviation.

6. As towing operations Ramp Agents, my team and I would find, posted on the wall, information on the next towing operation, such as time, gate and type of aircraft

that needs to be towed. My team would then have to ensure that we have all the equipment and vehicles needed to tow the aircraft, which were usually located at different locations.

7. As Ramp Agents, we were not issued individual radios, so we had to utilize group chat to coordinate who would be responsible for getting each equipment and vehicle we needed for our towing assignment. The equipment and vehicles we needed would not be in one location, so oftentimes we have to look for them. As we are scattered in different locations, we communicate via our personal cellphones via calls/text messages/ group chat. Once we have all the appropriate equipment and vehicles, we could proceed to tow the aircraft from gate to gate.

**My Typical Work Schedule for Menzies Aviation**

8. My typical shift schedule with Menzies Aviation was from 3:00 p.m. to 11:00 p.m., Tuesdays to Saturdays. My schedule sometimes went past 1:00 am the following day, if management asked me to do overtime.

9. To start my shift, I would manually input my badge number and use my hand on a biometric device located at the Menzies Aviation office in LAX. I would clock out at the end of my shift in the same way. When I was given permission to take an off-duty meal break, I would also clock out and clock back in for those using the same biometric device.

**Menzies Aviation Did Not Provide Timely Uninterrupted 30-Minute Meal Periods**

10. My superiors instructed me that I must get permission before I can take my meal breaks. As Ramp Agents, we receive short notices of arrival or departure of airplanes. Because of this, we do not have a schedule for any meal breaks for the day. Instead, our supervisor will only allow us to take our meal break if and when there are no more aircraft expected to be towed within the next hour.

11. As such, usually Ramp Agents cannot take our meal break within the first five hours of our shifts. It is imperative that all arriving and departing planes must be serviced first, and we aren't given permission by our supervisor to take a meal break when there is still work to do, so my meal break is usually more than five hours after I started my shift.

12. On paper, Menzies Aviation claims that we are to take our meal breaks during the first five hours of work. In reality, this rarely happens because planes must go out on time.

13. About 3-4 times a week, because of how busy we get, I will have no meal breaks at all because there is no time for the supervisor to authorize a meal break for me and my crew. About 3-4 times a week, I will get a meal break beyond my fifth hour of working straight from the beginning of my shift.

14. Supervisors can pull a Ramp Agent from the break room so that they will have enough crew to service any arriving or departing aircraft. This happened to me

about 2 to 3 times a month. When that happens and we have not finished our 30-minute meal break, the device will not allow us to punch back in before 30 minutes has passed since we clocked out for the meal break. As such, we must inform the timekeeper to fill in our correct time by submitting a form, but the timekeeper will oftentimes "forget" or "lose our paper." If I follow through or tell HR, they will say that nothing can be done about it. I let it go because I did not want to be confrontational and irritate them because I was afraid that would affect my job.

15. I remember the timekeeper approaching me more than 20 times while I was employed at Menzies Aviation to tell me that he had adjusted my time record so it will appear that I have taken my meal break even if I had not done so. He tried to make it appear that he did it out of "concern" for me so that I will not get into trouble or get a write up.

16. In other words, they made it difficult for us to get properly paid for interrupted or missed breaks. It gets repetitive and they make it appear as if I am being childish. I felt like I needed to jump through hoops to get paid for not getting my full meal breaks. I would often notice errors in my time records. Ultimately, I just let it go for fear of retaliation from management.

17. On those times when I work more than 10 hours in a shift, I do not recall ever receiving more than one meal break. I did not know when I worked at Menzies Aviation that I am entitled to a second meal break if I work more than 10 hours in a shift.

I do not recall getting paid extra wages for not receiving a second meal break when I work more than 10 hours. I believe only the hours worked are paid by Menzies Aviation at my regular rate.

18. I do not recall being properly compensated for missed, late or interrupted meal breaks at Menzies Aviation.

Daniel Arango

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

19. My managers and supervisors at Menzies Aviation made it clear to me and the other Ramp Agents that we need to use our personal cellphones to do our jobs. I used my personal cell phone at work every day, since this was the main way my co-workers and I, including our supervisors and managers, would communicate about work.

20. When agents Agents are at the terminal, we needed to gather the various equipment and vehicles that we needed to transport aircraft, or to load or off load luggage or cargos from various locations. We were not provided phones, radios, nor any handheld devices by which we can communicate with each other in real time. Hence, the only way we can verify with each other that the team have collected all the needed equipment and vehicles to be able to move to the next step is by using our personal cellphones.

21. There was a group chat that we used to communicate with each other, including our supervisor, regarding work. This was how my team would communicate as we did our work. This was also how our supervisor can inform us to go to a specific gate, or tell us that an aircraft is delayed or rescheduled. The supervisor or lead would

also text or call us with instructions and plane schedules, or to ask for assistance in loading and offloading luggage or cargo, or regarding other work tasks. There was no other way for Ramp Agents to get these instructions because we are not issued radios nor handheld device and we are always on the move.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

22. Like with meal breaks, our managers and supervisors told us that we could only take a rest break if the supervisor or manager gives permission. My memory is that I was only able to take a 10-minute rest break about 3 times a month. We were pretty much always busy, so even on a slow day, the most I got was one 10-minute rest break for my entire 8 to 12 hour shift. I do not recall ever receiving a second rest break on any of my shifts.

23. Menzies Aviation treated employees like robots and not as human beings. Planes must absolutely leave on time. However, they never bothered to arrange the schedules of Ramp Agents to allow people to take proper meals and rest breaks. It's always non-stop activities, with planes arriving and departing back to back to back.

24. I did not know that I can get paid for a missed rest break. I do not recall ever being paid extra wages for any missed rest breaks by Menzies Aviation. I don't know of any way or procedure I could have asked for and obtained extra wages for my missed rest breaks.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

25. As discussed above, I used my personal cell phone every day for work. I would get text messages from supervisors and managers about changes in my shift schedule, or if they needed me to come in early. Throughout the day, my team/crew will group chat, text message or call each other to verify whether a particular equipment has been located and secured for our towing operations, give instructions to each other, and other work-related communications necessary for the towing operations. I would often get text messages and phone calls during a supposed meal break from supervisors about work-related issues.

26. Menzies Aviation never offered me a company cellphone, radio, or any other device to communicate with other co-workers, including supervisors. As I said, those constant communications were necessary to fulfill our daily responsibilities.

27. Menzies Aviation has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my personal cellphone.

28. I would use my personal cellphone 30% of the time for work related purposes for Menzies. My monthly cellphone bill was $90.00/month.

29. I never knew I had a right to seek reimbursement for using my personal cellphone for work-related matters. Menzies Aviation has never offered to reimburse me

for using my personal cellphone for work, nor did they advise me that I can be reimbursed. I was not aware of any procedure or mechanism at Menzies Aviation for me to get reimbursed for using my personal cellphone for work-related matters.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 05/15/2023 at ___Hawthorne_, California.

Daniel Arango

- 9 -

DECLARATION OF DANIEL ARANGO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF ERIK CHACON BOJORQUEZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

**DECLARATION OF ERIK CHACON BOJORQUEZ**

I, Erik Chacon Bojorquez, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Ramp Agent by Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from May 28, 2019 until July 17, 2019.

**My Duties and Responsibilities at Menzies Aviation**

3. As a Ramp Agent at Menzies Aviation, I was responsible, with others in my crew, for guiding planes into and out of the gate, and for loading and unloading luggage, supplies, and cargo to and from the airplanes at LAX.

4. A team or crew is usually composed of 5 to 6 persons: 2-3 people will be in charge of the front cargo area; 2-3 people will be assigned to back cargo area; and the last person, who is usually the lead, will guide the plane.

**My Typical Work Schedule for Menzies Aviation**

5. I usually had an 8-hour shift, five days a week, with Menzies Aviation. But my shift time varied. Sometimes I had the morning shift, which starts at 6:00 a.m. and went until 2:30 p.m. Sometimes, I had an afternoon shift starting at 2:00 p.m. to 10:00 p.m., which sometimes extends to 1:00 a.m. the next day, depending on when our manager dismisses us after the work is completed.

6. I would clock in at the beginning of my shift, and clock out of work at the end of my shift, using the Kronos System that is located in the break room next to the General Manager's computer. When a supervisor or manager authorized me to go on a meal break, I would also clock out and then clock back in on that same Kronos System.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

7. From when I first started to work at Menzies Aviation, our managers and supervisors made it clear that we would need to use our personal cellphones to perform our work. I used my personal cell phone at work every day. It was the main way that my co-workers and I, including our supervisors and managers, would communicate about important work tasks.

8. For each shift, Ramp Agents usually have a group text or chat. For instance, the morning shift Ramp Agents would get a group text/chat message asking for 2-3 people to work until 12:00 MN for a late flight coming from Seattle. If nobody volunteered for overtime, about 30 minutes prior to end of the morning shift, supervisors will pull people from the break room or talk to ramp agents with the least seniority, "mandating" them to work longer hours. Sometimes, individual Ramp Agents would get a text message from a supervisor telling him/her that he/she was "mandated" to work overtime.

9. One of the essential tasks for Ramp Agents is for the crew to work together in gathering all the necessary equipment we need for loading or offloading operations in

an aircraft. These equipment (such as belt loaders, dollies, etc.) were scattered all over the Air Operations Area (AOA). The AOA are in the airport area and used for landing, takeoff, or maneuvering of aircraft.

10. In the AOA, there is no way for Ramp Agents to communicate with each other except through radios or cellphones. But Ramp Agents like me were not issued a company cellphone or radio by Menzies Aviation. As such, to communicate among each other, and with our superiors, Ramp Agents utilized our personal cellphones. We needed to stay in contact to know whether the crew were able to gather all the necessary equipment for the specific aircraft to be loaded/unloaded. My supervisor or lead would also text or call us with instructions, as well as plane arrivals and departures information.

11. Sometimes, we also need to take photographs of luggage that other Ramp Agents need to transfer to its connecting flight, or photographs of aircraft damage that must be immediately conveyed to the supervisor for necessary maintenance or repair, for safety reasons. We also used our personal cellphones for these work tasks.

**Menzies Aviation Did Not Provide Timely Uninterrupted 30-Minute Meal Periods**

12. From my experience, Menzies Aviation was frequently short-staffed. We have a lot of planes coming in and out, but many Ramp Agents calling out sick or injured. We also have a high turnover rate. Due to the constant short-staffing issues, the supervisors at Menzies Aviation will simply pull any Ramp Agents they see, or even those in the break room, to form a work team so that a plane can leave on time.

13. Due to the short-staffing issues, the managers and supervisors also instructed us Ramp Agents that we need to ask for permission from a supervisor or manager before we can take a meal break. Since they are the ones who know when a flight is coming in or going out, the managers get to decide whether we have to remain on duty to complete our work on arriving and departing planes or are authorized to take a break.

14. Oftentimes, a supervisor would pull me out of the break room during my meal break. They would tell me not to clock in from my break anymore and that they will "fix it" so that I can get paid for the short break. I trusted them because the General Manager would be there as well as other managers.

15. When I was asked to cut short my break, I would fill out a Missed Punch Form to reflect my actual clock in from my meal break. However, I would notice that my time record shows as if I had a 30-minute lunch break although it was an interrupted meal break. Whenever I would raise it up with the time record keeper, or even elevate it with HR, they will say they will fix it, but my recollection is that they never did. And when I insisted, they retaliated by not giving me overtime or making my life difficult at work.

16. I cannot refuse to help supervisors even if it entails cutting my meal break. The managers and supervisors are also in the break room and they will get mad if I refused. I know from experience that they will give me a hard time at work if I refused. I've heard stories from other Ramp Agents who were written up for insubordination for refusing instructions.

17. It is a hostile place of work. Many supervisors/managers also treat people badly, *e.g.*, calling people names. There was this person who asked for modified duty, and they assigned him to sweep the floor in the break room, even though LAX Airport had designated janitors for those tasks. Then they would call him "Cinderella." After I saw this type of thing happen a few times, I realized that this treatment is a form of intimidation so that employees will toe the line.

18. Because of the busy workload, staffing shortages, poor management, and uncertainty of plane arrivals and departures, I often went without a meal break for my entire shift about three times a week. Usually, by the time there is enough downtime for the managers to authorize a break for me to eat, it is time for me to go home.

19. Two or three times a week, I wouldn't be authorized to take my meal break within the first 5 hours of my shift because of how busy we were. Around three times a week some supervisor will interrupt my meal break to help them out even before my 30 minutes have passed.

20. At that time, I did not know I was entitled to be paid for missed, late or interrupted meal breaks at Menzies Aviation. I do not recall being paid extra wages

21. There is strong pressure to finish the job on time to keep the airlines happy and retain clients. For instance, when I ask a supervisor if I can eat my lunch, the supervisor will respond back, "You have to finish this plane first."

22. So if there were many planes that needs to be loaded/unloaded, those take priority over meal breaks or rest breaks of employees. The priority of finishing planes was so important that there was one time that I was so sick that I asked if I can go home. The supervisor said no, explaining, "We don't have people now." So I had no choice but to work while I am sick.

23. I never knew I was entitled to a second meal break when I work a 10-hour shift. I don't recall ever receiving a second meal break in any of my shifts, so I don't think I was ever given a second meal break when I worked more than 10 hours.

24. I was instructed by my supervisor to fill out the Missed Punch Form whenever I would have a late or interrupted meal break. But at that time, I did not know I can get paid extra pay for missed, late, or interrupted meal breaks. The supervisor would make it appear that they were doing me a favor by making it appear that I took a timely meal break or a full 30-minute meal break, because to do otherwise would supposedly get me into trouble.

25. The supervisor would tell me to fill the form out and I could get my lunch break later. I would do so because I thought that is toeing the line for the company. I would notice that my time records would be adjusted to make it appear that I took a full 30-minute meal break or that I took an earlier meal break, *i.e.*, before my fifth hour of working.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

26. Throughout the time I worked for Menzies Aviation, I would rarely be allowed to take a 10-minute rest break.

27. Based on my recollection, we only take "rest breaks" during our downtime, which is when we are waiting for the arrival of the next plane and the supervisor will say it is a break time. However, we would be forced to stay in the cargo area of the plane or sit in the tarmac for this supposed "rest break," so that we would be ready to work as soon as the operation needed us.

28. I knew I was entitled to 10-minute rest breaks. However, rarely was I able to take a full 10-minute rest break. If I needed to get a quick rest break (*i.e.*, get a snack, go to the rest room) I have to ask permission from a supervisor. If the supervisor refused, I cannot take a break. For instance, I remember a supervisor told me, "You really need to take your break now? Finish this plane, and you can get your break later." Employees are only allowed rest breaks during downtimes and when they are not needed by other supervisors, which was rare.

29. I don't recall receiving more than one 10-minute rest break in any shifts that I worked. The practice at Menzies Aviation is that it is not as important to give rest/meal breaks to employees as it is to get the plane to leave on time.

30. I never knew I can get paid for a missed rest break. I don't know of any procedure at Menzies Aviation for me to ask for and get paid extra wages for missed rest

break premiums. And I don't recall ever being paid extra wages for any missed rest breaks by Menzies Aviation.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

31. As discussed above, I used my personal cell phone every day for necessary ramp operations. I would get text messages about changes in my shift schedule or if I need to come in early. Throughout the day, my supervisor or lead will text message or call me giving instructions, informing me about plane arrivals and departures, asking me to assist in the loading/unloading of planes, or coordinating communication with other ramp agents in real time while we are in the AOA area.

32. I estimate that about 60% of my personal cellphone use was for work related purposes for Menzies Aviation. I recall my monthly cellphone bill at that time was $65.00.

33. Menzies Aviation never offered me a company cellphone or radio to use instead of my cellphone. I never knew I had a right to seek reimbursement for using my personal cellphone for work-related matters.

34. I am not aware of any procedure or mechanism at Menzies Aviation for me to get reimbursed for the use of my personal cellphone at work. The company has never reimbursed me for use of my personal cellphone for work-related matters.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 05/09/2023 at los angeles, California.

Erik Chacon

Erik Chacon Bojorquez

- 10 -

DECLARATION OF ERIK CHACON BOJORQUEZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF HAJAR CHIKH IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

Scanned with CamScanner

**DECLARATION OF HAJAR CHIKH**

I, Hajar Chikh, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as an import agent for Menzies Aviation (USA), Inc. ("Menzies Aviation") from January 1, 2020 to January 15, 2020, and then again from February 1, 2020 to March 2, 2020 at Los Angeles International Airport ("LAX").

**My Duties and Responsibilities at Menzies Aviation**

3. While I worked at Menzies Aviation, I was responsible for checking to see what flights were arriving, what goods would be on the flights, the names of the pilots, and inputting the manifest into the computer.

**My Typical Work Schedule for Menzies Aviation**

4. I would work Sundays through Thursdays for Menzies Aviation. My shift would begin at 3:30 and end at midnight. As explained below, I constantly felt pressured by my supervisor to work through lunch and rest breaks. I normally clock-in and clock-out each day by using a Kronos touchpad in the Menzies Aviation Operations Room by pressing my thumb against it. When I take meal breaks I clock out and then back in, and clock back out at the end of the day. Menzies Aviation requires that I clock in and out for these periods.

Scanned with CamScanner

**Menzies Aviation Did Not Provide Timely Uninterrupted 30-Minute Meal Periods**

5. On approximately 1/3 of the days I worked at Menzies Aviation I would not take a meal break until after 5 hours of work. I was unable to take a timely meal break because of the busy workload, the uncertainty of flight arrivals and departures, and security measures at the airport that prevented me from leaving the office if nobody else was there.

6. I would be able to take a meal break only when it was convenient for Menzies Aviation and all tasks were completed. If all the work he assigned to me was completed, my manager would allow me to take a meal break. I was not permitted to take the meal break unless my manager gave me permission. My manager gave me the clear impression that work responsibilities took precedence over meal breaks.

7. Menzies Aviation never advised me, and I did not know when I worked there, that I was entitled to extra wages for late meal breaks. As far as I know, I did not receive any extra wages for my late meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

8. Menzies Aviation never advised me that I was entitled to a 10 minute rest break and I never took one while working for Menzies Aviation. I was not told that I was entitled to extra wages for missed rest breaks and I do not recall ever receiving extra wages for missed rest breaks.

Scanned with CamScanner

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this April 19, 2023 at Woodland Hills California.

[signature]
Hajar Chikh

- 4 -

DECLARATION OF HAJAR CHIKH IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Scanned with CamScanner

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF BRANDON CRAIG IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

## DECLARATION OF BRANDON CRAIG

I, Brandon Craig, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I have been employed as a Cargo Handler for Menzies Aviation (USA), Inc. ("Menzies Aviation") at San Francisco Airport ("SFO") since January 24, 2022.

**My Duties and Responsibilities at Menzies Aviation**

3. As a Cargo Handler, I and others in my crew are responsible for handling the cargo from flights or other facilities at SFO. This includes building pallets to ship the cargo, taking cargo to the Ramp Agents to load onto aircraft, receiving cargo from incoming aircraft and loading it at the warehouse or onto trailers.

**My Typical Work Schedule for Menzies Aviation**

4. My working hours with Menzies Aviation are generally Fridays through Tuesdays, from around 7:30 a.m. to 4:00 p.m. I was instructed by Menzies Aviation to record my work time on their Kronos timekeeping system. So when I reported to work each day, I would manually clock in at the office by placing my thumbprint on the Kronos electronic pad. I would manually clock out at the end of my shift in the same way. On those days that I had the opportunity to take meal breaks, I also clocked out when I started taking my meal and clocked back in when I resumed working, again using the same Kronos system. There were many days that I was prevented from taking meal

breaks because of work. In these latter instances, I did not clock out/in for that 30-minute break. I only clocked out when I finally concluded my shift.

**Menzies Aviation Did Not Provide Me Timely, Uninterrupted 30-Minute Meal Periods**

5. Although meal breaks were scheduled, the demands of the job required us to work through many scheduled meal breaks. Often, I am asked to continue working to get the job completed because we were often shorthanded, with a crew of 3-6 when we really needed 7-8 in the crew to efficiently and timely handle all the work that was being demanded of us.

6. Often a flight will be delayed or arrive early, and we were always on standby to handle the cargo, even when it meant working more than 5 hours without any sort of break. The manager would advise us when we were permitted to take a meal break. I would then clock out for a meal break using the Kronos system and then clock back in when the meal break was over.

7. Menzies Aviation prioritizes flight operations over all other matters, including employee meals and break periods. Certainly, that has been my experience.

8. I am not aware of any procedure at Menzies Aviation for seeking extra pay for those days I was required to work more than 5 hours without a meal break. I am not aware of Menzies Aviation paying me any meal break premium or any additional wages, overtime, or penalties for not providing me a meal period, or for having me work during my supposedly scheduled meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

9. Throughout the time I have been working for Menzies Aviation, it is rare to ever have time for a rest break during my shift, and certainly not within the first four hours. Rather, during my shift, I would work continuously, and we were often shorthanded, making it even harder to ever get a rest break. Flights get delayed, rescheduled, and cancelled, and thus departure and arrival times change. Yet, we are required to be ready at all times to handle the cargo. In those rare instances when we are able to take a rest break, supervisors would have to give us permission before we are allowed to go on a 10-minute rest break. If the staffing levels allowed and my supervisors gave permission, I would have wanted to take the 10-minute rest breaks required by California law since my work is very physically demanding.

10. I am not aware of Menzies Aviation informing me that we were entitled to extra pay if Menzies Aviation did not provide us with 10-minute rest breaks during our shift. I am not aware of Menzies Aviation paying me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

**Menzies Aviation Did Not Reimburse Me for My Cell Phone**

11. I use my cell phone everyday at work. I was never advised by my manager or supervisor that there was any other alternatives such as radios or walkie talkies. Everyone uses cell phones. The supervisor will text me with instructions when I am at an airline or warehouse about cargo that it to be handled. Any issues that come up during work will often be discussed over the telephone. Menzies Aviation has never offered me a company cellphone, has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my

personal cellphone. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this April 27, 2023 at Hercules, California.

Brandon M. Craig

BRANDON CRAIG

- 5 -

DECLARATION OF BRANDON CRAIG IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF RUBEN ESPINOZA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

**DECLARATION OF RUBEN ESPINOZA**

I, Ruben Espinoza , declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as an Aircraft Fueler for Menzies Aviation (USA), Inc. ("Menzies Aviation") at the San Francisco International Airport ("SFO") from November 30, 2017 to November 2021.

**My Duties and Responsibilities at Menzies Aviation**

3. I was a Supervisor at SFO and was responsible, with others in my crew, to fuel aircraft. Often, there were 4 or 5 aircraft that had to be fueled at the same time and we were instructed by Menzies Aviation that we had 30-40 minutes to fuel the aircraft.

**My Typical Work Schedule for Menzies Aviation**

4. My typical shift was scheduled Sunday through Thursday from 04:00 p.m. to 14:00 p.m., but many days I worked 12-13 hours. I supervised United aircraft and international flights. I had 8-10 guys working in my crew that I was responsible for supervising. My crew and I hardly ever had an uninterrupted 30 minute meal break and many days I was not provided a meal break within the first 5 hours of my shift.

5. Each day I would clock in and clock out of work without meal breaks using the Kronos System that Menzies Aviation used that was located in the Menzies Aviation AOA office.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

6. As a supervisor I pushed Menzies Aviation to provide radios, either mounted or handheld, for my crew, but Menzies Aviation did not provide them. I was not even provided one and I was a supervisor.

7. Nearly everyone's cell phone number was posted on a list in the dispatch office and the managers would often call me and my crew members on our cell phones. We would use our cell phones to call the dispatch office to find out the status of a flight and other work related issues. Also, my crew would send me pictures from their cell phones of, for examples, fuel spills, dripping hose, or the wrong tail number of an aircraft. We also used our cell phones for a group chat to keep each other informed of flight information including delays, and cancellations, specific instructions regarding an arriving or departing flight, any problems with equipment and similar work issues. The manager was well aware of the cell phone use because he often communicated with the lead or myself through our cell phone. but never offered us a company phone, radio or anything else to use instead of our personal cell phones.

8. Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am also not aware of any way or procedure for me to request reimbursement from Menzies Aviation for my use of my personal cell phone for work-related tasks.

**Menzies Aviation Did Not Provide Timely Uninterrupted 30-Minute Meal Periods**

9. Menzies Aviation management advised me to tell my crew that there was not enough time between flights for scheduled meal or rest breaks and we were to try to squeeze in a meal break between flights if we were able. But some days there was not enough time between flights to take a proper 30 minute meal break. Menzies Aviation constantly advised us that we would be fined if a flight was delayed. I was responsible for driving around to determine if there were any and/or to prevent delays. If a crew member took a break without permission and a flight was delayed I was instructed to counsel that employee. If the delay was more than a minute or two I was instructed to write up that employee.

10. Work was continuous and there was not enough time to take an uninterrupted 30 minute meal break or a 10 minute rest break. Many days those on my crew would eat their meal in one hand while fueling the aircraft in the other. To fuel an aircraft, the fueler must press the trigger (deadman), so in order to timely fuel the aircraft to avoid a reprimand they would often eat their meal in this manner.

11. On those days that I worked more than 10 hours Kronos would automatically record a one hour break even when I was not provided a proper 30 minute break. Often our job duties would continue and interrupt our meal periods. Supervisors, Managers, Leads, and other crew members would approach us or text us or call us with questions or issues. Sometimes we would be ordered back to work before the full 30 minute meal break was completed because a flight needed to be serviced and/or reserviced or some other work issue arose that needed immediate attention. When a meal break was cut short I was locked out of the system so that it would record a full 30 minute meal break, which did not accurately reflect the shortened meal break I was given.

12. I understood that there was a Missed Punch Form to fill out for those days where we were not permitted a 30 minute meal break within the first 5 hours of a shift but Menzies Aviation stopped provide us with those forms, claiming that there they were being "abused".

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

13. Throughout the time I worked for Menzies Aviation, I hardly ever had a ten minute rest break. The same is true of my crew. Unless there was time between flights for a rest break, Menzies Aviation made it clear to me that I was not allowed to authorize a rest break for my crew. The priority was fueling the aircraft quickly so that there was no delay.

14. I am not aware of Menzies Aviation ever paying me extra wages for any of the missed rest breaks while I was employed with Menzies Aviation..

///

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this May 1, 2023 at Austin, ~~California~~ Texas.

Ruben Espinoza

- 5 -

DECLARATION OF RUBEN ESPINOZA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF ANTHONY FERNANDEZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF ANTHONY FERNANDEZ

I, Anthony Fernandez, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed in the Ramp Operations Department of Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from April 30, 2012 until September 15, 2020.

**My Duties and Responsibilities at Menzies Aviation**

3. I was a Ramp Agent at Menzies Aviation and was responsible, with others in my crew, to guide planes into and out of the gate, and to load and unload luggage and cargo form the airplanes at LAX.

4. In my first year working for Menzies Aviation, I was assigned to service flights by Iberia Airlines at LAX. After my first year, Menzies Aviation assigned me to work with three airlines: Iberia, Copa, and Level, all located at LAX.

**My Typical Work Schedule for Menzies Aviation**

5. I worked various 8 hour shifts throughout my employment with Menzies Aviation. However, no matter what shift I worked, the work conditions were similar and I would not be properly compensated for missed, late or interrupted meal breaks or rest breaks, as described below.

6. Each day I would clock in and clock out of work and meal breaks using the Kronos System that Menzies Aviation used that was located in the Menzies Aviation office.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

7. I used my personal cell phone at work every day. I would use it throughout my shift to communicate with other employees, managers and supervisors about our instructions, plane arrivals and departures, cargo issues, and other related work issues. We had a group chat that was used to keep everyone updated on flight information, including delays, and cancellations, specific instructions regarding an arriving or departing flight, issues with any luggage or cargo, and other work related issues throughout the day. I had no other electronic device to communicate with my other crew members, supervisors or managers or keep track of arriving and departing flights, and other work related issues. My managers and supervisors knew that I was using my personal cell phone for my work-related tasks, but they did not offer me a company phone, radio or anything else to use instead of my personal cell phone.

8. Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am also not aware of any way or procedure for me to request reimbursement from Menzies Aviation for my use of my personal cell phone for work-related tasks.

**Menzies Aviation Did Not Provide Timely Uninterrupted 30-Minute Meal Periods**

9. My co-employees and I would rarely take our meal within the first five hours of our shift because flights were constantly arriving and taking off and we had a certain amount of time to finish our work on each aircraft. As soon as we would finish one aircraft, we would have to turn our attention to another. Often, we were shorthanded, which made the work load even more burdensome and difficult to complete in the time Menzies Aviation expected. Security measures at the airport required us to stay with a plane while it was at the gate, which was another reason we would rarely take a meal break within the first 5 hours of my shift.

10. Often our job duties would continue and interrupt our meal periods. Supervisors, Managers, Leads, and other crew members would approach us or text us or call us with questions or issues. Sometimes we would be ordered back to work before the full 30 minute meal break was completed because a flight needed to be serviced or some other work issue arose that needed immediate attention. When a meal break was cut short I was locked out of the system so that it would record a full 30 minute meal break, which did not accurately reflect the shortened meal break I was given.

11. I did submit a Missed Punch Form on some of those days that I did not receive a meal break within the first 5 hours of my shift, but they were often not approved or got lost, and I was not paid a meal break premium for those days.

12. What was particularly unfair is that extra pay for late meal breaks would have to be approved by the manager and he would regularly deny extra pay for late meal breaks by claiming that I and others had time to take the meal break within the 5 hours but failed to do so. He knew, or had to have known, that this was untrue because we needed permission to take a lunch break and our leads and/or supervisors would frequently tell us that work took priority and that permission to take a timely lunch break was not authorized. I am aware of times that the supervisors and managers had a disagreement, with the supervisor authorizing the extra pay for missed or late meal breaks but being overruled by the managers.

13. Menzies Aviation has a lunchroom that is approximately a 10-minute walk from my various workstations under ideal conditions. Getting to the lunchroom from gate areas requires exiting through the airport security checkpoints. The meal break is only 30 minutes long, and security checkpoints can incur delays or even closure if security events occur at the airport. This condition prevented me from getting back to my workstation in a timely manner. I and my co-employees therefore had to take our meals in the Menzies Aviation Operations Room, which is within the airport security area.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

14. Throughout the time I worked for Menzies Aviation, I was unaware that I was entitled to ten minute rest breaks. Even if I had been aware, it would not have been possible to take one with the hectic workloads given to us by the managers. We were

constantly loading or unloading cargo and luggage or on standby waiting for a plane to arrive or depart, and flight departure and arrival times were constantly changing. For security measures, we were unable to leave an empty plane at the gate and had to remain with the plane until it was fully secured or left the gate. If the staffing levels had been better, I would have wanted to take my ten minute rest breaks if Menzies Aviation had told me about them.

15. I am not aware of Menzies Aviation ever paying me extra wages for any of the missed rest breaks while I was employed with Menzies Aviation.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

16. As discussed above, I used my personal cellphone constantly during my shift to communicate with others about tasks to be completed or that had been completed. I would receive instructions from my supervisors, managers and leads throughout the day, including about gates to meet them. I would often get text messages and phone calls during a meal break from supervisors about work related issues. Menzies Aviation never offered me a company cellphone, has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my personal cellphone.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this April 14th, 2023 at Gardena, California.

Anthony Fernandez

Anthony Fernandez

- 7 -

DECLARATION OF ANTHONY FERNANDEZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF JORDAN FORD IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

**DECLARATION OF JORDAN FORD**

I, Jordan Ford, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I have been employed as a Ramp Agent for Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") since April 8, 2022.

**My Duties and Responsibilities at Menzies Aviation**

3. As a Ramp Agent, I am responsible, along with others on my team, for loading and unloading luggage and cargo for aircraft that would arrive and depart each day. Flights are arriving and departing constantly at LAX and we have to be ready at all times to handle the luggage and cargo for those airplanes. Many days we were shorthanded and had difficulty handling all the luggage and cargo that needed handling, especially when airplanes were arriving or departing near in time to each other.

**My Typical Work Schedule for Menzies Aviation**

4. My working hours with Menzies Aviation varied, but more recently I have been working Saturdays through Wednesdays. Some days I would work a shorter 5 hour shift, but most days I am scheduled to work from 4:00 p.m. to 11:30 p.m.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

5. I often use my personal cell phone at work. The managers and supervisors text flight or gate schedule changes, as well as other work related instructions. I clocked in and out for my shift, as well as clocked in and out for meal breaks, using the Kronos machine that was located at the office. If there was a technical problem with the machine then I could use the app on my phone.

6. Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

7. While a meal break is supposedly scheduled at the beginning of my shift each day, more often than not it has not been followed and I was not permitted a meal break until more than 5 hours after I started my shift. There were some days that I was not able to take a meal break at all. Work was too busy and our managers made it clear to use that Menzies Aviation's priority was to complete the work for the clients before meal breaks are permitted. I would have gotten in trouble if I had just left the job to take my scheduled meal break. I was required to get permission from my supervisor before I could go on any break.

8. There was always uncertainty about flight arrivals and departures, so we would always be on standby to handle those flights. Also, there would be manpower shortages so that fewer of us had to handle more tasks, and the work load became heavier. Meal breaks were not authorized when there was work left to be completed. Supervisors always stressed to us the need to get the work done to satisfy the airline customers.

9. I was told by a supervisor and a manager that Menzies Aviation would be penalized if we caused a delay in a flight. That is why handling the luggage and cargo for the aircraft was prioritized over taking a timely meal break.

10. My supervisor told me to submit a Missed Punch Form whenever I was not able to take a meal break at all. But I am not aware of any procedure to follow when I am not able to take a meal break within the first 5 hours of my shift. Many times when I submitted the Missed Punch Form it was not approved by my supervisor for reasons I never understood, and therefore I would not receive any additional wages for that late meal break.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

11. I was not aware of Menzies Aviation's requirement to provide rest breaks during our 8 hour shift. I never received one and only recently learned that I was entitled to them. The work requirements are excessive and we just push through without a break until the supervisor allows us to take a meal break, if I am even permitted to take one on that day.

12. I am not aware of any form or procedure I can use to ask Menzies Aviation for premium wages on days I don't get rest breaks. I am not aware of Menzies Aviation paying for any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 4/20/2023, 2023 at Inglewood, California.

[signature]
Jordan Ford

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF JAZZMYNE FREEMAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

## DECLARATION OF JAZZMYNE FREEMAN

I, Jazzmyne Freeman, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Freighter Agent by Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from July 9, 2021 to October 3, 2022.

**My Duties and Responsibilities at Menzies Aviation**

3. As a Freighter Agent, my duties included guiding aircraft into landing, setting up equipment, putting the chops and cones in place, taking a dolly to the plane to off load arriving planes, and preparing cargo for transport and transporting them to the warehouse. During loading of aircraft, I also assist in lining up cargo pallets to prepare for loading the aircraft, and loading cargos on to the plane.

4. A crew to load an aircraft will have at least 5-6 people, depending on the aircraft. About 7 people need to take the dolly to the aircraft to offload its cargo. Larger aircraft require up to 15 people or more.

5. Supervisors allot an adequate number of people who are usually the strongest to Qatar Airways. Everybody else gets spread out to other aircraft. So sometimes, other crews may be less than 5 workers, if not enough people report for work.

6. In a shift, there are about 4 supervisors and 2 managers. There is no set crew for each supervisor, so they pull workers into their crews as needed. For instance, if a person is finished with his or her task on one crew (*e.g.*, offloading the cargo at the lower deck), then he or she can get pulled off by other supervisors to help with another crew on another aircraft.

**My Typical Work Schedule for Menzies Aviation**

7. My work schedule varied at Menzies Aviation, depending on when my manager and supervisor instructed me to come in and when they dismissed me. Sometimes I reported for work at 4:00 a.m. and worked through 4:00 p.m. or 5:00 p.m. Sometimes I came in at 8:00 a.m. and worked until 6:00 p.m.

8. My working hours varied from 8 hours to 12 hours per shift. I generally worked five or six days a week. It all depended on what the company required.

9. I would clock in at the beginning of my shift, and clock out when my manager or supervisor dismissed me from work, on a device located inside the warehouse. When I am authorized to take a meal break, I would also clock out and back in on that device. I would place my finger on the device to clock in or out, and it records my working time and meal breaks.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

10. I used my personal cell phone as an essential tool in my work, and our managers and supervisors made it clear that this was expected. My personal cell phone

was used for work purposes every day. Before our shift even starts, every one that is supposed to report for work the next day will get a group text message from supervisors, about our work schedule.

11. At work, we regularly received updates on aircraft arrival/departure schedules, and supervisors continuously communicated with us throughout the shift to give instructions or ask questions, to ask for our assistance, or if they are looking for something. These text messages, which are usually sent and received on a group text, reached us even during our meal breaks.

12. Moreover, Freighter Agents need to gather equipment and vehicles for our daily operations. These equipment/vehicles are all over the LAX airport, so we need to coordinate among us who will be in charge of gathering each equipment. It is only when we have the proper equipment and vehicles that we can start loading/offloading cargos. So for the tasks of gathering the equipment and vehicles our crew needed, the other Freighter Agents and I utilized our personal cellphones to coordinate among ourselves. We would be scattered in various parts of the airport to gather these equipment, so the only way we could communicate with each other is through our personal cellphones, because Freighter Agents are not issued company cellphones nor radios.

13. About fifty percent (50%) of the time, I used my personal cellphone for Menzies Aviation work purposes. At that time, my monthly cellphone bill was around $100.00 per month.

14. Menzies Aviation never offered to reimburse me for use of my personal cellphone for work duties, and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at Menzies Aviation to request or get reimbursement for an employee's use of a personal cellphone on work tasks.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

15. By rule, we have to wait for a supervisor to give a go signal when to take our meal breaks, or permission when we we ask for a meal break. If I don't get any approval, I am not allowed to take my meal break.

16. Getting permission to take meal breaks depended on how busy we were. If there are 4 aircraft on the ground, and only 20-25 Freighter Agents report for the shift, then I could expect no meal break. The managers and supervisors put pressure on the agents to get aircraft to depart on schedule regardless of when or whether we got our meal periods.

17. I understand that Menzies Aviation's written policy is that employees should get meal breaks by the 5th hour of work, and that it must be uninterrupted for 30 minutes. While that may be the policy on paper, those were not followed in practice. My superiors impressed on us that it is imperative to get all the aircraft to depart on time, and that this was more important than when and whether we took any breaks. From my experience, the actual practice was that the supervisors would not give us permission to take a meal break whenever there was still work to be done to get aircraft loaded or unloaded.

18. Because of how busy we were, and because we wouldn't be allowed to take a meal break if there was still work to be done, I would regularly not have a meal break until after more than 5 hours of working about 4-5 times per week.

19. There were times when there was absolutely too much work that I would not be dismissed from work to take a meal break for my entire shift. My recollection is that this happened about 15 times a month while I was working at Menzies Aviation.

20. More often, my meal breaks, if ever I have one, will be interrupted by a text message asking where I am or asking me to report back to work.

21. On days when I had a 12-hour shift, I would not get a second meal break. I was not aware when I worked at Menzies Aviation that I was entitled to a second meal break when I work more than 10 hours in a shift. I don't recall ever receiving more than one meal break in any of my shifts at Menzies Aviation.

22. Menzies Aviation never informed me that I was entitled to extra pay if Menzies Aviation did not provide me with 30-minute uninterrupted meal breaks. I do not recall getting paid any wages for missed or late meal breaks by Menzies Aviation.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

23. The entire time I worked for Menzies Aviation, I do not recall ever getting a proper 10-minute rest break. In fact, I did not know that we were entitled to 10-minute off-duty rest breaks as Freighter Agents for the entire time I worked there.

23. Looking back, there was just too much of a work load that I can't imagine the supervisors would allow us to go off duty for a whiole 10 minutes. Instead, supervisors told us that they consider downtime (*i.e.*, the time we are waiting around for aircraft to arrive) as our rest breaks. In other words, supervisors believed that the time Freighter Agents spent on the tarmac, under the hot sun, waiting for the next aircraft, counted as our rest break.

24. At best, I would ask to go on a bathroom break, but it was never a full 10 minutes, because the supervisor made it clear that I had to come back right away to be ready to work as soon as the next plane was there.

25. Menzies Aviation never informed me that I was entitled to extra pay if I was not provided with rest breaks. There was no company procedure I knew of to obtain missed rest breaks payments. I don't recall ever being paid for any missed rest breaks by Menzies Aviation.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 05/09/2023 at Los Angeles, California.

Jazzmyne Freeman

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF TODD FUCILE IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

**DECLARATION OF TODD FUCILE**

I, Todd Fucile, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. From May 2021 until sometime in July 2022, I was a Lead Aircraft Fueler for Menzies Aviation (USA), Inc. ("Menzies Aviation") at San Diego Airport ("SAN").

**My Typical Work Schedule for Menzies Aviation**

3. My typical work week schedule was that I worked the day shift from 5:00 a.m. to 1:30 p.m. for 2 days a week, and then I did a night shift schedule from 1:30 p.m. to 10:00 p.m. three days a week. When I worked the night shift, I sometimes extended up to 1:00 a.m. the following morning.

4. But since the fueling department is habitually short-staffed, Menzies Aviation regularly required fuelers like me to pull "double" shifts. My understanding was that fuelers cannot refuse to put in "doubles" because it is in our contract that we will be required to do so. If I was scheduled to work the morning shift schedule but I find the word "drafted" next to my name on the list of employees posted on the wall, it meant that I needed to put in a "double" and stay until 9:00/10:00 p.m. that day. Also, even though I sometimes get off from work at 10:00 p.m., I would still be asked to come back in at 5:00 a.m. the following morning, so that I only had seven hours to drive home, sleep, shower, and drive back to work again.

5. Oftentimes I would put in double shifts for 4 days, and then on my fifth day I will be assigned a night shift. So it was typical for me to put in 190 work hours every 2 weeks.

6. As it was "part of our contract" to do drafts, if you couldn't do a double shift, you need to find a replacement fueler or you will be asked to "pass your badge" because you'd be terminated. I have a friend at work who had a family emergency and he was still not allowed to forego his double shift because he cannot find a replacement. For fear of being terminated, he was forced to work. I knew 2 other employees, although I cannot recall their names, who got terminated for refusing to do drafts. They were told not to come back. Menzies Aviation asked a lot from their employees, so a lot of employees quit. The fast turnover rate of employees exacerbated the working situations of those who stayed.

7. At the beginning of my shift, I would clock in using my finger on the biometric device located on the wall of the break room. I would clock out the same way at the end of my shift.

**My Duties and Responsibilities at Menzies Aviation**

8. As an Aircraft Fueler, I was responsible for fueling aircraft at the San Diego airport. When I started working at Menzies Aviation, I was trained by a lead fueler, who told me to download the FlightAware App on my personal cellphone to use for my work. As fuelers, the FlightAware App enabled us to track incoming flights, delays, cancellations, and which gates the plane will go into.

9. At the beginning of my shift, I would get my flight schedule from the managers, which typically had 12-13 flights listed per shift, including the airline names and the flight numbers. From there, I would find and get into my assigned truck, then drive over to the opposite side of the airport, which is about a good 10-minute drive, to the runway to begin fueling aircraft. The rest of my shift involved driving to various locations throughout the airport to fuel the aircraft assigned to me by Menzies Aviation.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

10. Even though I got a printout of my flight schedule for the day at the beginning of my shift, flights regularly got delayed or cancelled. Flight schedules are not cast in stone and are often delayed. As a Fueler, I needed to be ready on a moment's notice to fuel the aircraft when it arrives. My superiors at Menzies Aviation made it clear to fuelers like me that we must absolutely not have any flight delays, even at the expense of employee breaks of any kind. As such, because I had such a heavy workload, I rarely took my meal break within the first 5 hours of working when I worked there. For the same reasons, it was also typical for me not to have a meal break at all for an entire shift.

11. If I did have an opportunity to take a meal break, I would just clock out on the Kronos App on my phone, because the Menzies Aviation break room was a long drive away from the runway, where I did my work fueling aircraft. I would commonly eat my lunch sitting inside my fuel truck, because my supervisor made it clear that I needed to be ready on a moment's notice to fuel an aircraft if they needed me, and I would never know when my supervisor might instruct me to cover for another fueler and go fuel up another aircraft.

12. So even if I had a chance to have a meal break in my truck, it was often interrupted by my supervisor over the radio, or calling me on my personal cellphone, or driving by with instructions to fuel another aircraft. This happened about every other day.

13. I remember that when I would put in more than a 10-hour shift, there would be a deduction of 30 minutes in my time records for that shift even though I did not have that 30-minute meal break. When I inquired why there is a 30-minute reduction, the General Manager told me that it was because I neither clocked out for a second meal break nor filled out a Missed Punch Form ("MPF"). Basically, the managers explained to

me that the company would take out that 30-minute meal break in the second part of my shift whenever I worked more than 10 hours unless I submitted a Missed Punch Form to let them know I didn't actually get that second 30-minute meal break.

14. Sometimes, a supervisor would tell me to "do a MPF," which he would sign/approve for me. I would put the completed MPF in the box of the HR lady. But then I still would not get paid for my missed, late or interrupted meal break. When I complained, they would say, "Hey, let's just put it in your next pay check." But then I still would not get paid. More often than not, management would just give me the run around until I got tired of following up or forget to do so.

15. While I know that I was supposed to get paid for interrupted, missing or late meal breaks, Menzies Aviation only paid me some of the meal break premiums they owed me for late, missed and interrupted meal breaks. And I would only get paid if I am vigilant enough and don't give up even though management kept giving me the runaround.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

16. I never knew I was entitled to any rest breaks while I was working at Menzies Aviation. Moreover, due to my tremendous workload and the short-staffing at the company, I barely had time to eat a decent meal much less have time to take 10-minute off-duty rest breaks. My superiors pretty much had me working straight through my shifts, so that I didn't really have a chance to even leave my fuel truck for my meals.

17. I never knew I could get paid for missed rest breaks, and I do not recall Menzies Aviation ever paying me any rest break premiums, or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 05/15/2023 at Columbia, Misouri.

Todd Fucile

- 6 -

DECLARATION OF TODD FUCILE IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF ANDREW GUTIERREZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

## DECLARATION OF ANDREW GUTIERREZ

I, Andrew Gutierrez, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Ramp Agent by Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from July 9, 2018 until sometime in December 2020.

**My Duties and Responsibilities at Menzies Aviation**

3. As a Ramp Agent at Menzies Aviation, I was initially assigned to the bag room, to lift luggage from the weight scale where passengers dropped baggage off onto the carousel to transport these to the airplanes.

4. Then, I was assigned, along with others in my crew, to guide planes into and out of the gate area, to chock the wheels, and to load and unload luggage, supplies, and cargo to and from the airplanes at LAX.

5. Most of the time, a crew of Ramp Agents was composed of 5 to 6 persons: 2-3 people will be in-charge of the front cargo area, 2-3 people will be assigned to back cargo area; and the last person, the lead, would guide the plane. If I was assigned to help with cargo, then it would be a bigger team.

6. Because airplanes are scheduled to leave at a specific time, when I worked as a baggage handler in the bag room, there was usually a mad scramble to finish loading

all the passengers' luggage into the carousel to go into their respective flights. Sometimes, there was only myself to finish transporting the luggage to the terminals, because people assigned to the bag room often get injured due to repetitive lifting, so many call off injured.

7. When I was in the actual terminals helping out with loading/offloading, even though my job position was Ramp Agent, I may not only help with luggage, but also get assigned to carry cargos, depending on the need of Menzies Aviation on that day.

**My Typical Work Schedule for Menzies Aviation**

8. I generally worked five or six days a week with Menzies Aviation. I usually reported for work in Menzies Aviation at 2:00 p.m. and would have at least an 8-hour shift. But the length of my shift commonly varied: sometimes it can extend to 10 or 12 hours, going over into the next day.

9. I would clock in and clock out of work and meal breaks by putting my finger on the device that captures our time record inside the break room at Menzies Aviation office, which is next to the dispatch office.

10. When the device doesn't work, or if I have missed a meal break, I would submit a piece of paper stating my missing punch time. However, most of the time, the manager will deny my request for meal break compensation.

**Menzies Aviation Did Not Provide Timely Uninterrupted 30-Minute Meal Periods**

11. From my experience, Menzies Aviation was frequently understaffed. There was always not enough agents (freighter/ramp) to carry the load. Supervisors would routinely form their crews from the pool of employees (Ramp or Freighter Agents) who were on duty at the time of need. So what would happen is that those of us on duty in a shift were constantly on the go for the entire shift, pulled into different crews by supervisors whenever they needed us. This left pretty much no time for breaks.

12. The supervisors made it clear to me, and the other Ramp Agents and Freighter Agents that worked with me, that the main and primary objective of management was to get the aircraft to leave on time. This meant that Ramp and Freighter Agents had to complete our work as quickly as possible. It also meant that there could be no opportunity for breaks unless and until all work was completed. As a Ramp Agent, I needed to ask the permission from a supervisor before I could take a meal break, and they wouldn't give permission for that if they still had work to do to get planes ready to go.

13. When I worked at Menzies Aviation, I knew that meal breaks were supposed to be taken before the 5th hour of work. I also knew that meal breaks was supposed to be at least 30 minutes and cannot be interrupted, or else I should get paid a premium.

14. It would seem from the manual that this rule was being followed by Menzies Aviation. However, in actuality, this wasn't the case. Because of the heavy workloads we were given, I would regularly work beyond the fifth hour, or even miss my meal break entirely, whenever a supervisor asked me to, because I had no choice. I needed

their authorization to take a meal break, so if they said I couldn't go, then I had to keep working.

15. Sometimes, the supervisor would tell me, "Keep on working, I've got nobody to replace you. We must get this plane going." If I don't oblige, I would get in trouble and get written up for insubordination.

16. Because of the busy workload and usual understaffing, three or four times a week, I would not be allowed to take my meal break within the first 5 hours of my shift. Approximately, 3-4 times a week, some supervisors would interrupt my meal break to have me help them out even before the 30 minutes had passed. Due to the same reasons stated above, about five times a month, I went without any meal break at all for my entire shift.

17. I remember that during COVID times, I would get assigned to cover 14 hours of work per shift, but I would never get a second meal break. I actually did not know I could take a second meal break when I worked there, but sometimes I would get really tired and hungry and could have used a second break. I remember that one time, I asked for another break just to eat, because I worked too long and got tired and hungry. The supervisor told me that my loyalty was fading away and that I didn't deserve my value.

18. To make things worse, the procedure to get paid for missed meal breaks was made unreasonably difficult by Menzies Aviation. Employees had to repeatedly follow

up with their managers and HR if they wanted any chance of getting paid for missed meal breaks.

19. If I stayed on track with my follow ups and got lucky, I might get paid. However, it would become a circus, with each of them giving me the run around. There was always too much back and forth with the manager, dispatch, and HR people, so much so that it becomes more of a headache to follow up that you just had to let it go, because it felt like they would just fight you so hard to not pay what you're owed. My recollection is that I rarely got properly compensated for missed, late or interrupted meal breaks at Menzies Aviation.

20. There is strong pressure to finish the job and not complain because my loyalty will be questioned, or I will earn the ire of my superiors. However, it was unfair that I didn't get properly paid for carrying the heavy load.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

21. I used my personal cell phone at work every day, because it was one of my essential tools to properly do my job. My supervisor or lead would text or call us with instructions, to inform me of my schedule for the next day, to give updates on plane arrivals and departures, which gate to go to next, etc.

22. Furthermore, as a ramp agent, I am part of the crew that must gather equipment, *e.g.*, belt loader, LD7 (an equipment that connects to a vehicle that is used to transfer cargo or luggage). Except for the leads, Ramp Agents are not provided with any

radios, nor company cellphones, hence, we utilize our personal cellphones to communicate with the crew to ensure that the team has all the equipment necessary to do our job prior to loading or offloading the aircraft. Our lead might set up a group chat or we could simply call or text each other.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

23. When I was working for Menzies Aviation, the Ramp Agents rarely got rest breaks. Our superiors told us that they consider our downtime (*i.e.*, when we are finished loading the passenger bags inside the plane and waiting for other agents to finish their tasks) as our rest break.

24. However, we still cannot leave the plane until it is time to take off, so it didn't even feel like a rest break. Ramp agents cannot leave an aircraft unattended, so we are forced to stay in the cargo area of the plane or sit on the tarmac for this supposed rest break. So during the time that I was employed by Menzies Aviation, I did not get to take any real rest breaks.

25. I never knew that I can get paid for a missed rest break, much less know what the procedure would be to get missed meal break premiums. As far as I know, there wasn't a procedure to ask Menzies Aviation for extra pay for missed rest breaks. I remember there was supposed to be a procedure for meal breaks, but not rest breaks.

26. As far as I remember, I have never been paid any extra wage for missed rest breaks by Menzies Aviation.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

27. As discussed above, I used my personal cell phone daily for work purposes. This was the main way that my co-workers, including my bosses, would communicate with us about work. I would get text messages or calls throughout my shift. I would even get text messages and phone calls when I was supposed to be on a meal break, from supervisors wanting to discuss work related issues.

28. More importantly, we use our personal cellphones to communicate with our team or crew to ensure that we have all the proper equipment for our task. Since we are not issued company cellphones, nor given radios, the crew utilized group chat, text message, or call each other using our personal cellphone since we could be in various areas in the airport to gather these equipment.

29. When I was working for Menzies Aviation, about 70% of the time I used my personal cellphone was for work related purposes. My monthly cellphone bill at the time was $100.00/month.

30. I never knew I had a right to seek reimbursement for using my personal cellphone for work-related matters. Menzies Aviation has never offered to reimburse me for that, nor have they advised me that I can be reimbursed. I am not aware of any procedure or mechanism I could have used at Menzies Aviation to get reimbursement for my use of my personal cellphone for work-related things.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 05/10/2023 at Torrance, California.

Andrew Gutierrez

- 9 -

DECLARATION OF ANDREW GUTIERREZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF CLEMENT HURTADO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF CLEMENT HURTADO

I, Clement Hurtado, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a truck driver for Menzies Aviation (USA), Inc. ("Menzies Aviation") at the Long Beach and Ontario Airports from January 2019 until on or around September 13, 2021. I have been a truck driver in California since 1995.

**My Duties and Responsibilities at Menzies Aviation**

3. Throughout the time I worked at Menzies Aviation, I drove a company-owned truck to carry jet fuel from the refineries to various airports serviced by Menzies Aviation where the jet fuel was needed, including Long Beach, Ontario, Van Nuys, Burbank, Riverside, San Bernardino, and Palm Springs. I began work at the Long Beach Airport, but was transferred to the Ontario Airport during the Covid pandemic. My work experiences at both airports were essentially the same, as I describe below.

**4.** When I reported for work each day I would manually clock in at the office using the Kronos system and then clock back out at the end of my shift. Because I was on the road all day driving the truck, I was unable to clock in and out using the Kronos system at the office, so I would manually log the few meal breaks I was actually able to take on paperwork that I would then submit to Menzies Aviation.

**My Typical Work Schedule for Menzies Aviation**

5. I would typically work 12 hour shifts, 5 days per week while working for Menzies Aviation. Throughout my time with Menzies Aviation, I constantly felt pressured by my managers to work through lunch and rest breaks. I would go to the refinery to pick up the jet fuel and often there would be a line that I would have to wait in. Sometimes the refinery was closed and I would have to drive to another to get the jet fuel. Then I would have to drive, in Los Angeles traffic, to the various airports where I would unload the jet fuel into a fuel tank located that the airport. Sometimes I would be behind schedule because of unforeseen lines at the refinery, the refinery being closed, and/or traffic congestion, which meant no time to take a meal or rest break. In fact, I do not recall ever taking a ten minute rest break during the time I worked for Menzies Aviation. I almost never took a lunch break within the first five hours of my shift. Typically, I would try to stop along the road and grab a quick bite to eat, often after 7 or hour 8 hours of work. I would often eat my lunch in the truck or while driving. My managers at Menzies Aviation always made it clear to me that getting the jet fuel to a location in a timely manner was critical, and more important than me receiving a timely lunch or meal break.

6. I would manually clock in and out of work each day. I would receive instructions throughout my shift as to tasks I was to accomplish through phone calls and text messages on my personal cell phone, for which I was never reimbursed. I was never

issued a company cell phone. There were times when I would be in a long line to fill the truck with jet fuel and I would tell my manager I was waiting in line. He would insist I take a picture of the line and location with my cell phone and text him the image to confirm that there was actually a line. My manager would contact me on almost a daily basis while I was at work, either via text or phone call because he always wanted an update on my location.

**Menzies Aviation Did Not Provide Me Proper Lunch Breaks Or Rest Periods**

7. Menzies Aviation never informed me that I was entitled to extra pay if I was unable to take a lunch break within the first five hours of work, or was unable to take a full, uninterrupted meal break of at least 30 minutes. Menzies Aviation never advised me that I was entitled to ten minute rest breaks during the day and that I was entitled to extra pay if I was unable to take the rest breaks due to the demands that Menzies Aviation placed on truckers like me. I am not aware of any payments made by Menzies Aviation of any meal or rest break premium, or any additional wages, overtime, or penalties for not providing me a meal period, or rest break.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

8. As explained above, I used my cell phone on a daily basis while working for Menzies Aviation, yet was never reimbursed for my cell phone. There really was no other effective way to stay in touch with my manager or the office other than with my

cell phone, because my truck was not outfitted with a radio. I am not aware of any procedure or mechanism at the company for me to get reimbursed for my expenses like the cell phone.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this April 15, 2023 at Los Alamitos, California.

Clement Hurtado

- 5 -

DECLARATION OF CLEMENT HURTADO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br>vs.<br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br>CLASS ACTION<br><br>DECLARATION OF ZOILA LEMUS IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

**DECLARATION OF ZOILA LEMUS**

I, Zoila Lemus Martinez, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Passenger Service Agent for Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from April to July 2022.

**My Duties and Responsibilities at Menzies Aviation**

3. As a Passenger Service Agent, I was responsible for checking in passengers for flights at the ticket counter, assigning seats and providing gate information, and checking baggage, among other things.

4. My usually worked for Menzies from Wednesdays thru Sundays from 6 pm to 2 or 3 am. Sometimes until 8 am. I was instructed by Menzies Aviation to record my work time on their Kronos timekeeping system. So when I reported to work each day, I would manually clock in at the office by placing my thumbprint on the Kronos electronic pad. I would manually clock out at the end of my shift in the same way. On those days that I had the opportunity to take meal breaks, I also clocked out when I started taking my meal and clocked back in when I resumed working, again using the same Kronos system. There were many days that I was prevented from taking meal breaks because of work. In these latter instances, I did not clock out/in for that 30-minute break. I only clocked out when I finally concluded my shift.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

5. I use my personal cell phone at work every day because the supervisor would communicate with me and other Passenger Service Agents through a Whatsapp group chat about work related issues, including flight arrivals, departures and delays.

6. I was told that I had to be added to the Whatsapp group as soon as I started to work. The group chat is active when we are off the clock, taking meal breaks, while on rest breaks, and even when we are at home. There were Walkie talkies but those were used by the Supervisors and were give to us only when we went to the gate because at the gate there was no phone signal. Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of use of my personal cellphone for work.

7. I was never reimbursed for the clothes that Menzies Aviation required me to buy for my job, including pants, shirts, skirt, vest and shoes, for which I paid around $468.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

8. On many days that I worked for Menzies Aviation, I was not permitted to take meal breaks within the first 5 hours of my shift. The workload was too great. We were under constant pressure from our supervisors and managers to work though breaks because we were often short of workers and there was always uncertainty involving flight arrivals, departures and delays. Breaks were not permitted until all passengers were handled and I had to get permission from my supervisor before I took any kind of break.

9. Many of my supposed meal breaks I took at the counter, where I could continue to handle work related tasks while I ate. If I took my meal break in the break area, I would be constantly interrupted by a manager or supervisor or other passenger service agents asking me about work related issues. All the time, a supervisor would literally sit next to me during my lunch and have a long conversation about work during my lunch. Often my manager would tell me to clock out for a meal break but immediately return to the counter to continue with my work-related obligations, which I always felt was fraudulent on the part of Menzies Aviation. I was aware of the 30-minute lockout before I could clock back in from lunch.

10. I don't believe Menzies Aviation fairly compensated me for missed, or interrupted meal breaks. I am not aware of Menzies Aviation paying me any meal break premium or any additional wages, overtime, or penalties for not providing me a meal period, or for having me work during my supposed meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

11. I don't recall ever being permitted to take a 10 minute rest break at any time I worked for Menzies Aviation. As I describe above, the workload was just too much, so there was no real opportunity

for us to take rest breaks. I am not aware of ever being compensated by Menzies Aviation for failing to allow me to take rest breaks during my shift.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 4/20, 2023 at Downey, California.

Zoila Lemus

4

DECLARATION OF ZOILA LEMUS IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF WA LUO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

**DECLARATION OF WA LUO**

I, Wa Luo, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Cargo Agent by Menzies Aviation (USA), Inc. ("Menzies Aviation") at San Francisco International Airport ("SFO") warehouse from August 2, 2017 to April 24, 2021.

**My Typical Work Schedule for Menzies Aviation**

3. I typically worked 8-hour shifts, five days a week. Prior to June 2018, my shift would start at 8:30 a.m. and end at 4:30 p.m. Then, starting in June 2018, my shift schedule started from 2:30 p.m. and I was scheduled to work through 11:00 p.m.

4. I would report to work at the Menzies Aviation office located at 632 Westfield Road, San Francisco, CA 94128. Using my finger, I would clock in on a device located inside the office. I would clock out the same way with the same device at the end of my shift. I would clock-out and clock-in for meal breaks using the same biometric device that Menzies Aviation employs.

**My Duties and Responsibilities at Menzies Aviation**

5. As a Cargo Agent, my responsibilities involved collecting and preparing proper documentation for in-bound cargo. I would submit the correct information to Customs. Cargos are delivered by the driver, but before that I needed to verify all information and prepare documents for Customs and for the trucking companies.

6. Typically, I would drive a Menzies Aviation vehicle inside the airport to the Air Operations Area ("AOA") to get documents from the aircraft, such as airway bills and cargo documents. I would verify those documents, and ensure that the correct information was submitted to Customs. I would prepare documents for each bill and wait

to ensure that the warehouse agent put the cargo in specific pallets or containers in such a way that the correct cargo are in each location (pallet /container) in the warehouse area.

7. As an in-bound Cargo Agent, I ensured that the trucking company can easily identify their cargo inside our warehouse, including which particular area the cargo was located, the specific pallet/container they were in, and where those pallets/containers were located.

8. The morning shift is usually busy because the driver will pick up cargo and there are only 1-2 Cargo Agents on hand who are responsible for preparing the documentation and checking that information needed by Customs are ready and accurate. Because of this, we often have to work through our meal breaks in order to ensure that the cargo are ready for shipment.

9. Sometimes, when the driver arrives in the middle of my meal break, I have to stop eating and attend to the driver. I thought that is how it is supposed to be done because Menzies Aviation was the first U.S. company I had worked for as a new immigrant to the United States.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

10. I used my personal cell phone practically every day to communicate about work related matters. If there are any missing, damaged or undocumented cargo, I needed to contact my supervisor to request assistance, and since I would be in the AOA area in the airport, I cannot reach anybody except through my personal cellphone.

11. In the ramp or AOA area, there are no Menzies company cellphones or telephones, and there are no company radios. So Cargo Agents like me have no choice but to use our personal cellphones to communicate with our co-workers.

12. There are also instances when I would have engine, tire blow out, or no gas in the Menzies vehicle I am using inside the airport. When that happened, I would have to contact my supervisor for assistance.

13. The supervisor also sends group text messages to me and other Cargo Agents through a group chat, usually regarding an important announcement, such as an error done by another Cargo Agent that the supervisor fixed and reminding everyone of the issue and not to do the same mistake.

14. I would also at times use my cellphone to take a photo of an error or system issue I was having trouble with. I would send the photo of the error message to the supervisor via my cellphone. I would need her assistance immediately, and cellphone text messages was the communication tool that I can use to get a response immediately.

15. Supervisors would also sometimes text message me outside of my working hours when they needed me to come in early the next day or work longer hours.

16. Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement.

**Menzies Aviation Did Not Provide Uninterrupted 30-Minute Meal Periods**

17. Due to my heavy work load, I would have late meal breaks about twice a week when I worked at Menzies Aviation, meaning that I would work more than 5 hours from the start of my shift before I would be allowed to take my meal break. More frequently, approximately four times a week, I would have interrupted meal breaks, meaning that I would be asked to do work before 30 minutes have passed since I started a meal break. When we needed to submit documentation for Customs, I often had to postpone my meal break and just work through it in order to submit the report timely.

18. Menzies Aviation never informed me that I was entitled to extra pay if Menzies Aviation did not provide me with 30-minute uninterrupted off-duty meal breaks.

I was never paid any meal break premiums or any additional wages, penalties, or other money by Menzies Aviations for not providing me proper meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

19. I did not know that I was entitled to 10-minute rest breaks when I worked at Menzies Aviation. I only learned about rest breaks after I left Menzies Aviation, when I was working for another company at the airport. I do not recall ever being able to take off-duty 10-minute rest breaks when I worked at Menzies Aviation.

20. As such, I never knew the procedure to take rest breaks or that I could get paid for any missed rest breaks. To my knowledge, Menzies Aviation did not pay me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

21. As I mentioned above, I would often use my personal cell phone for work, especially when I am in the AOA area, where I would have no other means apart from my mobile phone to communicate with supervisors or co-workers about work related matters (*i.e.*, arrival of driver/s, missing cargo, damaged cargo, missing documentation, etc.) Supervisors would also text message me, or send me and other Cargo Agents, a group text message regarding work schedule for the next day or important announcements.

22. I estimate that 20% of my total use of my personal cellphone was for Menzies Aviation work purposes when I worked there. At that time, my monthly cellphone bill was about $40.00 per month.

23. Menzies Aviation never offered me a company cellphone or radio, never advised me of the right to be reimbursed for the use of my personal cellphone, and has never reimbursed me for use of my personal cellphone.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 05/15/2023 at San Mateo, California.

Wa Luo

- 6 -

DECLARATION OF WA LUO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF JAVIER MARTINEZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

**DECLARATION OF JAVIER MARTINEZ**

I, Javier Martinez, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Ramp Agent in the Ramp Operations Department of Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from November 3, 2020 to June 7, 2021.

**My Duties and Responsibilities at Menzies Aviation**

3. While I worked at Menzies Aviation, I was responsible for loading and unloading luggage and cargo from Volaris Airlines. I would typically work from Wednesday through Sundays. My shift would typically start around 3:00 p.m. and would often last until 2:00-3:00 a.m., and sometimes later if I was asked at the last minute to handle an early morning flight.

4. I was instructed by Menzies Aviation to record my work time on their Kronos timekeeping system. So when I reported to work each day, I would manually clock in at the office by placing my thumbprint on the Kronos electronic pad. I would manually clock out at the end of my shift in the same way. On those days that I had the opportunity to take meal breaks, I also clocked out when I started taking my meal and clocked back in when I resumed working, again using the same Kronos system. There were many days that I was prevented from taking meal breaks because of work. In these

latter instances, I did not clock out/in for that 30-minute break. I only clocked out when I finally concluded my shift.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

5. When I started working at Menzies Aviation, my supervisor informed me that I would be required to use my personal cellphone for work communications. I frequently used my personal cell phone at work as my supervisors almost always communicated through my cellphone to provide directions on where to go next to service a flight, handle luggage (such as dropping it off at a certain location), for special instructions, and updates on the status of flight arrivals and departures. Because I would be moving between flights, there was really no choice but to use a cellphone or other mobile device, but Menzies never offered to provide me a company phone, two-way radio or other similar device. There were radios but they were not for us regular employees to use; only the Supervisors and/or Managers use them. I am not aware of Menzies Aviation offering to reimburse me for use of my personal phone for work duties or advising me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of use of my personal cellphone for work.

**Menzies Aviation Did Not Provide Me Timely, Uninterrupted 30-Minute Meal Periods**

6. During the time I worked for Menzies Aviation, I rarely had a meal break within the first 5 hours of a shift. We were always too busy. I would finish working on one flight and then need to hurry with my crew to handle another one assigned to us. The supervisors would determine when a meal break was permitted, and would always require that we finish handling the flights on hand before any meal break would be permitted. There was always an emphasis on satisfying the airline customers. The supervisors advised us that Menzies Aviation would be penalized if we did not complete our work in a timely fashion, and that avoiding those penalties was a much greater priority than providing timely meal breaks.

7. Following what I understood to be the company procedure, I would fill out a Missed Punch Form when I did not receive a timely meal break, and witnessed my co-workers doing the same. We would leave those forms in a box in the office for the manager to approve, expecting that we would be properly compensated with the extra pay for late meal breaks. However, when we received our paychecks, the extra hour of pay for the missed or late meal break rarely, if ever, was provided.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

**8.** Rest breaks were essentially non-existent for the same reason of heavy workloads that prevented us from taking proper meal breaks. Menzies did not tell me

that I was actually entitled to rest breaks under the law. Work had to be completed in a timely manner so that Menzies Aviation would not be penalized. There was such a tremendous amount of work to be completed each day that rest breaks were not authorized by our supervisor, because planes needed to be serviced rapidly and so left no time for an opportunity to take a rest break.

**9.** I am not aware of Menzies Aviation paying me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 4/18, 2023 at SAN LEANDRO, California.

Javier Martinez

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF JESUS MENDOZA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

**DECLARATION OF JESUS MENDOZA**

I, Jesus Mendoza, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Freight Agent for Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from June 22, 2020 to July 19, 2022.

**My Duties and Responsibilities at Menzies Aviation**

3. Throughout the time I worked at Menzies Aviation, I was a Freight Agent responsible for loading and unloading cargo pallets and other larger cargo items (cars, airplane motors, etc.) off arriving flights and onto departing flights. We would take these larger items from the aircraft to the Menzies Aviation warehouse located at LAX. We would also be responsible for transporting these larger cargo items from the warehouse to the departing flights, or at least assist in loading them onto trucks to transport to the aircraft.

**My Typical Work Schedule for Menzies Aviation**

4. My working hours with Menzies Aviation varied quite a bit, but Wednesdays through Sundays was the most common work shift I had each week. I would commonly receive a text from my supervisor on the night before my shift, advising me what time to report to work the following day. It was common for me to arrive at work between 3:00 a.m – 4:00 a.m. Some days I would work a 12-hour shift. Other days I would work 2-3 hours in the morning, go home and be asked to return later that day for another 6-8 hour shift.

5. I was instructed by Menzies Aviation to record my work time on their Kronos timekeeping system. So when I reported to work each day, I would manually clock in at the office by placing my thumbprint on the Kronos electronic pad. I would manually clock out at the end of my shift in the same way. On those days that I had the opportunity to take meal breaks, I also clocked out when I started taking my meal and clocked back in

when I resumed working, again using the same Kronos system. There were many days that I was prevented from taking meal breaks because of work. In these latter instances, I did not clock out/in for that 30-minute break. I only clocked out when I finally concluded my shift. When I arrived for my shift, Menzies required me to clock in. I would do that through a Kronos device in the Menzies operations room. I was also required to clock out and also clock in and out for meal breaks, which I would do the same way.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

6. I was required to use a cellphone to perform my job duties and my supervisor told me and made it clear that I was to use my personal cellphone. I would use my personal cell phone at work every day throughout my shift. We would keep track of arriving and departing flights using our cell phone and communicating with supervisors and managers. We would also use the cell phone to contact our supervisors or managers if we encountered any problem where we needed help. The supervisors and managers would text us with instructions throughout the shift. As I would be moving around the airport to get to different flights throughout the shift, there was no realistic way of communicating efficiently without a cellphone or some other mobile device. Menzies never offered me a company phone or any other mobile device or informed me of the availability of any options other than using my own personal phone.

7. Menzies Aviation never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of use of my personal cellphone for work.

**Menzies Aviation Did Not Provide Me Timely, Uninterrupted 30-Minute Meal Periods**

8. In my experience, meal breaks were never scheduled at Menzies Aviation and were not authorized whenever there was work that needed to be completed. Because there

were too many flights arriving near in time to each other and we were under constant pressure to quickly load or unload freight in a certain time period, that meant that meal breaks were hardly ever authorized, if at all. We were advised by our supervisors that Menzies Aviation would be fined if we did not service an aircraft on time.

9. For these reasons, we would often work more than 5 hours without any meal (or rest) break. More than once, the supervisor advised me that he would fill out the necessary paperwork for the late or missing break, but I never saw the paperwork. On a few occasions, my manager asked me to punch out to reflect a lunch break even though we continued to work.

10. I do not recall whether Menzies Aviation ever paid me extra for all the meal breaks I missed. I would need to review my pay stubs.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

11. Throughout the time I worked for Menzies Aviation, I never had a 10 minute rest break. Like with meal breaks, there was simply too much work to be done. Throughout my time working at Menzies Aviation, I don't recall a supervisor or manager ever authorizing such a rest break during my shifts. I was never told that I was entitled to a rest break. I was never told that I was entitled to extra pay for a missed rest break either. I also do not recall whether Menzies Aviation ever paid me extra for all the rest breaks I missed. I would need to review my pay stubs.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this April 18, 2023 at Inglewood, California.

Jesus Mendoza

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF BRYAN MORGAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF BRYAN MORGAN

I, Bryan Morgan, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was an aircraft fueler for Menzies Aviation (USA), Inc. ("Menzies Aviation") at San Francisco International Airport ("SFO") from April 26, 2018 until April 26, 2019.

**My Duties and Responsibilities at Menzies Aviation**

1. Throughout the time I worked at Menzies Aviation, I was responsible for fueling aircraft at SFO on what was referred to as a "swing shift," from 2:00 p.m. to 10:00 p.m., Sundays through Thursdays. As an Aircraft Fueler, I am responsible for fueling aircraft that arrive at LAX to prepare them for departure. I ensure that the aircraft are properly fueled before departure. An aircraft fueler is in charge of hooking up the equipment safely. I fill fuel for the wings, unhook the equipment safely, fill out the fuel transaction forms correctly, and perform quality control on the equipment every day.

2. I was instructed by Menzies Aviation to record my work time on their Kronos timekeeping system. So when I reported to work each day, I would manually clock in at the office by placing my thumbprint on the Kronos electronic pad. I would manually clock out at the end of my shift in the same way. On those days that I had the opportunity to take meal breaks, I also clocked out when I started taking my meal and

clocked back in when I resumed working, again using the same Kronos system. There were many days that I was prevented from taking meal breaks because of work. In these latter instances, I did not clock out/in for that 30-minute break. I only clocked out when I finally concluded my shift.

**Menzies Aviation Did Not Provide Me Timely, Uninterrupted 30-Minute Meal Periods**

3. Many days I would work more than 5 hours without a meal break, because the managers and supervisors would not authorize a break when a plane needed to be fueled. We were not allowed to take a break without permission from the manager or supervisor. My supervisor told me that Menzies Aviation would receive a $500 penalty for every 5 minutes a plane was delayed if we did not timely fuel it or were otherwise responsible for the delay. For that reason, they emphasized that getting the work done was a priority for Menzies Aviation over our meal breaks.

4. It would take nearly 10 minutes to get from my work station to the break room to take a meal break, and my supervisor did not want me to be that far away in case I was needed to do any work. For that reason, I would normally sit outside the terminal, right in front the airplanes, to take my meal break so that I was available at all times in case my supervisor needed me. I would constantly be interrupted during a meal break with questions from my supervisor or other co-workers about work related issues.

5. In my experience, meal breaks would be authorized by the Supervisor based on flight schedules. There was never a fixed meal period during a shift. I don't know if Menzies paid me for the missed meal breaks, but I am fairly certain it did not pay me for interrupted ones, because nearly every meal break was interrupted by supervisors or other co-workers.

6. I am also fairly certain that Menzies Aviation did not pay me for missed rest breaks, because rest breaks were a rarity while I worked at Menzies Aviation and I don't recall ever receiving pay for a missed rest break. Aircraft constantly needed fueling and we had to be ready when a flight was delayed to promptly fuel it so that Menzies Aviation would not be penalized.

7. I used my cell phone every day at work for a number of reasons including to communicate with my supervisor for rides to and from the tarmac, for verification of meal breaks and any other work related issues or questions that arose during my shift. I was not reimbursed for my cell phone use and am not aware of any procedure or mechanism at Menzies Aviation for me to get reimbursed for the expense of use of my personal cell phone for work.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 4/20/, 2023 at SAN FRANC, California.

Bryan Morgan

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF KEVIN ORANGE IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

## DECLARATION OF KEVIN ORANGE

I, Kevin Orange, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I have been employed as a Ramp Agent for Menzies Aviation (USA), Inc. ("Menzies Aviation") and its predecessor at Los Angeles International Airport ("LAX") since August 2007.

**My Duties and Responsibilities at Menzies Aviation**

3. Throughout the time I have worked at Menzies Aviation, I have been assigned to the Ramp Operations Department at LAX. Since at least 2018, I have primarily worked the morning shift, which starts between 6:00-6:30 a.m. and lasts until around 2:00-3:30 p.m., Mondays through Fridays. As a Ramp Agent, I am responsible for loading and unloading cargo and luggage from arriving and departing flights, which usually involves nonstop work for us throughout the morning. I work with a crew chief, sometimes referred to as a Lead, and 4-5 other co-workers, depending on who shows up for work.

4. I clock-in and clock-out at the Menzies Aviation break room using a biometric system called Kronos, which involves touching a pad with one of my fingers. I understand that clocking in and out is a mandatory Menzies Aviation policy.

5. I use this same method to clock out for my meal break and to clock back in after my meal break is finished, except when my meal break was not provided until after the 5th hour of my shift. In those instances, I would fill out a Missed Punch Form and leave it on the manager's desk to approve and process. My understanding is that Menzies Aviation would then manually enter the time of my late meal break.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

6. While I was a Ramp Agent for Menzies Aviation I used my personal cell phone at work every day to communicate with others about work related issues. I used my

cell phone to monitor the Kronos system and my work schedule each day. Even though Menzies Aviation had an ostensible no cell phone policy, everyone used their cell phone at work to communicate with each other, the managers and supervisors. The managers and supervisors definitely knew employees were using our personal cell phones as a routine part of our job because that's how they would communicate with me and other employees throughout our shifts. For example, if luggage, equipment or the aircraft was damaged we would take pictures with our phones and text them to the supervisor and/or manager. We had a group chat to communicate with other crew members about work related issues, including gage changes, flight arrivals and departures and delays.

7. Menzies Aviation did not issue me a company cell phone, radio, or any other device that I could have used to communicate with my managers, supervisors, and co-workers. Menzies Aviation never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work.

**Menzies Aviation Has Denied Me And My Co-workers Extra Pay For Missed Meal Breaks.**

8. I am aware that there is a paper form we can supposedly fill out when a meal break is not taken within the first 5 hours of work. On many occasions, I worked well over 5 hours before taking a meal break, which has to be authorized by a supervisor under Menzies Aviation policy. But, the supervisor regularly does not authorize a meal break until all the planes have been loaded or unloaded. With the heavy number of flights arriving and departing, or being delayed, at LAX it is rare to ever take a meal break within the first 5 hours of work. The priority for Menzies Aviation is to handle the cargo and luggage on arriving and departing flights as expeditiously as possible, and supervisors routinely withhold permission for us to take meal breaks until the work is completed.

9. When a meal break is missed (meaning not taken within the first 5 hours of a shift) Menzies Aviation has a paper form that I and my co-workers are to fill out and submit

to the dispatcher for Menzies Aviation. However, the payroll department will not pay an employee any extra wages for a missed meal break unless the Menzies Aviation Manager approves it.

10. In 2018 and 2019 I recall not being provided the extra wages for missed breaks many times even though I had submitted the form requesting the extra wage for a missed meal break. I am a union steward, so other employees would approach me with similar complaints. I therefore scheduled a meeting in 2019 with Ms. Talin Bazerkanian, who was the Regional Manager of the Human Resources Department for Menzies Aviation, to complain about this practice. I advised her that a Manager who was not on the ground observing the enormous workload and pressure that we were under to complete that work in a timely fashion was unfairly and arbitrarily denying meal break penalties. She acknowledged to me that the manager had no right to do that.

11. However, the problem was not remedied, because the managers continued to deny me and others meal break penalties after we submitted the paperwork reflecting the missed meal break. Some employees complained to me that they worked 8-10 hours straight without any meal break and were still denied a meal break penalty. Because the problem was never properly remedied, I scheduled another meeting with Ms. Bazerkanian a few months ago to once again bring this problem to her attention. I was once again assured that the problem would be fixed. However, I have not received confirmation that the problem has been fixed.

12. My understanding is that Menzies Aviation can be penalized when airline flights are delayed because of gate operations. I do not know the details, but have been told by Menzies Aviation managers that the penalties can be in the many thousands of dollars. However, many days we have significant staffing shortage, making the burden on those that did show up for work even more hectic and burdensome, especially during busy periods. Because of the penalties assessed against Menzies Aviation if work is not completed for the clients in a timely fashion, we would often work more than 5 hours without any sort of break. Menzies Aviation prioritizes flight operations over all other

matters, including employee meal and break periods. Certainly, that has been my experience.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

13. Throughout the time I worked for Menzies Aviation, it has been a rarity that I or the others I have worked with have been able to take rest breaks during the shift, and certainly not within the first four hours. I don't recall receiving a second rest break despite the long hours of work that often exceed 8 hours. Rather, during my shift, I would work continuously. Flights get delayed, rescheduled, and cancelled, and thus departure and arrival times change. Luggage and cargo need to be transferred between flights. Thus, there were always issues that needed to be addressed. Because of the continuous work, a 10-minute down time is very rare, and I would be lucky if I was able to have at least one rest break during a shift.

14. I am unaware of Menzies Aviation paying me or other co-workers any extra wages for missed rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this April 21, 2023 at LOS ANGELES, California.

Kevin Orange

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br><u>CLASS ACTION</u><br><br>DECLARATION OF JONATHAN G. OTZOY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

# DECLARATION OF JONATHAN G. OTZOY

I, Jonathan G. Otzoy, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed in the Ramp Operations Department of Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from March 29, 2016, to August 18, 2021.

**My Duties and Responsibilities at Menzies Aviation**

3. I was initially hired as a Ramp Agent by Menzies Aviation. Starting around February 2017, I became a Crew Lead in Ramp Operations, responsible for a crew of 4-5 other Ramp Agents. I was responsible, along with others on my team, for loading and unloading luggage and cargo for aircraft that would arrive and depart each day. Flights are arriving and departing constantly at LAX and we have to be ready at all times to handle the luggage and cargo for those airplanes. Many days we were shorthanded and had difficulty handling all the luggage and cargo that needed handling, especially when airplanes were arriving or departing near in time to each other.

**My Typical Work Schedule for Menzies Aviation**

4. My working hours with Menzies Aviation varied, but towards the end of my employment I had been working Saturdays through Wednesdays. Some days I would work a shorter 5 hour shift, but most days I was scheduled to work from 12:00 pm to 9:00 pm and sometimes later than that – the same with my crew.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

5. I often used my personal cell phone at work. The managers and supervisors texted flight or gate schedule changes, as well as other work related instructions, to my cell phone throughout my shift. I clocked in and out for my shift, as well as clocked in and out

for meal breaks, using the Kronos machine that was located at the office. But if there was a technical problem with the machine, then I could use the app on my phone to clock in and out.

6. Not only did I use my personal cell phone on an almost daily basis to communicate with my managers, supervisors, agents and my crew, often through a group chat, but also I would get flight information over the internet by logging into flight tracker, and to bid on my work schedule. As a general rule, managers and supervisors were part of the group chats. It would be completely normal for the managers and/or supervisors to send out instructions or call for a meeting using employees' personal cell phones. There were radios, but there were not enough for everyone that needed them, and the radios that did exist were often not operating.

7. While the written policy is that we are not to use our phones at work, it was one of the primary sources of communication. The group chat texts would include a minimum of 3 people and as many as 15, including the supervisor. In fact, it was the supervisor or manager that would create the group chat.

8. As Ramp Agents, my crew and I were constantly on the move throughout the airport, sent to different planes and having to go to various locations in the airport to locate and obtain the equipment and vehicles we needed to do our jobs. Being able to stay in touch with your fellow crew members, as well as other Menzies Aviation employees scattered in various locations, was part of our job. Without the group chats, and the ability to directly communicate with co-workers, including supervisors and managers, via text or phone call, we simply would not be able to complete our job tasks in the times allotted.

9. Menzies Aviation never offered to reimburse me for use of my personal cell phone for work duties and did not advise me of any right to reimbursement. I was not aware of any procedure or mechanism at Menzies Aviation to get reimbursed for the expense of using my personal cellphone for work.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

10. I estimate that a majority of the days I worked at Menzies Aviation I was unable to take a meal break within the first 5 hours of my shift, and often not until I had worked 7-8 hours. I would submit a Missed Punch Form and put down the reason why we couldn't or weren't allowed to take a meal break. If the manager signed and approved, we would get paid the extra 1 hour of pay for the late break. If he did not sign and approve, we would not get paid for the late meal break. I recall being paid a meal penalty for some of those late meal breaks, but I was not paid for all of them, because the manager would not approve it, claiming that I took too long to complete a task or for some other reason that I did not agree with.

11. Late meal breaks were a result of the heavy workload and poor management of the operational needs of Menzies Aviation. We were shorthanded on many days, and we were not permitted to take a meal break whenever we wanted, and certainly not in the middle of a task. If we tried to take a meal break without the permission of a supervisor or manager, we would face discipline, including something as severe as a claim of job abandonment. My crew and I would take a meal break only when permission was granted. Management always stressed to us the need to get the work done to satisfy the airline customers, so permission for a meal break would only be granted if we had completed our assigned work on an airplane and there wasn't another airplane scheduled to arrive or depart that needed our attention.

12. Many of my meal breaks were interrupted by communications from the airlines to me, or from my co-workers, supervisors or managers with work-related issues or questions.

13. I was told by a supervisor and a manager that Menzies Aviation would be penalized if we caused a delay in a flight. That is why handling the luggage and cargo for the aircraft was prioritized over taking a timely meal break.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

14. The majority of the time my crew and I did not take rest breaks. Menzies Aviation's point of view was that any time waiting for a flight was considered a break. It was pretty much policy that if we had "downtime," meaning time spent waiting for the next plane on our list of assignments, that would be considered break time, no matter that we usually spent that downtime looking for equipment or preparing for the next flight. My crew and I certainly did not have the opportunity to do whatever we wanted during this supposed downtime, since we were expected to stay on the jobsite in order to be immediately ready to work as soon as the airplane was there for us to unload and load.

15. I started each work shift with a schedule of the aircraft my crew and I had to work with that day, but aircraft get delayed, supervisors ask for favors such as to grab equipment, a tow cart, etc. Also, there were aircraft that we had to service that were not scheduled when we started the shift, but which we would be instructed to service even with a shorthanded crew. In other words, we continuously had work to do throughout our shifts, including supposed downtimes, so there was really no opportunity to take off-duty breaks of at least 10 minutes.

16. I am not aware of any form or procedure I could have used to ask Menzies Aviation for premium wages for missed rest breaks. I am not aware of Menzies Aviation paying for any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this May 16th, 2023 at Inglewood, California.

Jonathan Otzoy

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br><u>CLASS ACTION</u><br><br>DECLARATION OF ANTHONY PENCA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

# DECLARATION OF ANTHONY PENCA

I, Anthony Penca, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Ramp Agent for Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") starting in August 2021, and then switched to become a Cargo Agent at El Segundo from September 2021 to September 2022.

**My Duties and Responsibilities at Menzies Aviation**

3. As a Cargo Agent, I was responsible, along with others on my team, for handling cargo that was off loaded from arriving flights and brought to the Menzies Aviation warehouse, or needed to be transported from the warehouse to departing flights, or picked up from the warehouse for local distribution. LAX is an extremely busy airport and flights are arriving and departing constantly and we have to be ready at all times to handle the cargo for those airplanes. Many days we were shorthanded and had difficulty handling all the cargo that needed handling, especially when two or more clients of Menzies Aviation had simultaneous cargo needs to be handled.

**My Typical Work Schedule for Menzies Aviation**

4. My working hours with Menzies Aviation varied, but I would normally work 5 days per week, Fridays through Wednesdays. My shifts varied. Sometimes I had

a shift from 7:00 a.m. to 3:00 p.m., and sometimes 3:30 p.m. to 10:00 p.m. However, the issues with meal and rest breaks, as described below, were basically the same regardless of the shift times.

5. I clocked in and out for my shift, as well as clocked in and out for meal breaks, using the Kronos machine that was located at the warehouse. If there was a technical problem with the machine then I would use the app on my phone. Sometimes I had to go to another location to use the Kronos machine when the one in the warehouse was inoperable.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

6. I used my personal cell phone at work every day. When the Kronos machine was not working properly, I would use my phone to clock-in and clock-out, to request time off, to communicate with my managers, supervisors and co-workers, and to check schedules. We were told to use our personal cell phone to communicate with management via phone or text. I would also have to call clients or other agencies and used my personal phone for that. Menzies Aviation did not provide me with any other device to communicate electronically at work.

7. Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not

aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work tasks.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

8. In my experience at Menzies Aviation, there was no set schedule for meal breaks. Whether and when we got an opportunity to take a meal break would always depend on the workload, and required permission from our supervisor. There was always uncertainty about flight arrivals and departures, so we would always be on standby to handle those flights. Also, there would be manpower shortages so that fewer of us had to handle more tasks, and the work load became overwhelming. Meal breaks were not authorized when there was work left to be completed. Supervisors and managers always stressed to us the need to get the work done to satisfy the airline customers. A customer's needs always took priority over an employee meal break. So I would normally take a meal break after more than 5 hours of continuous work.

9. Even when I was able to take a meal break, I was compelled to stop using the break room to take them, because I would always be interrupted by managers and supervisors with work related questions or issues. Sometimes a manager would ask me to cut my meal break short to handle some unexpected work task. For these reasons, I started taking my meal break in my car to try to get a 30 minute uninterrupted meal break.

10. As explained above, I would clock out to take a meal break using the Kronos system, or use the app on my phone when the Kronos system was not working. I am not aware of Menzies Aviation paying me extra wages for missed, late, or uninterrupted meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

11. Throughout the time I worked for Menzies Aviation, I often worked more than 4 hours straight without any rest break. Many times I did not take a rest break at all during my entire shift because of the excessive amount of work and time pressures to complete that work. There were times when the work slowed down where I was allowed to take a rest break, but more often than not I was not allowed to take one. It was really hit or miss whether a supervisor would authorize a rest break in any particular day, and I don't recall ever receiving more than one rest break in any shift. The urgency of taking care of customers was more important than a rest break, so supervisors would not authorize rest breaks until a customer's job had been completed. I would estimate that 50% of the time that I worked at Menzies Aviation I did not get permission to take a rest break within the first 4 hours of work. I would often go an entire day without any rest break.

12. I am not aware of Menzies Aviation paying for any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this April 15th, 2023 at Hawthorne, California.

Anthony Penca

- 6 -

DECLARATION OF ANTHONY PENCA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF SOLVEVINA RAMIREZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

**DECLARATION OF SOLVEVINA RAMIREZ**

I, Solvevina Ramirez, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Cabin Cleaner by Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from June 13, 2016 to April 10, 2019.

**My Duties and Responsibilities at Menzies Aviation**

3. As a Cabin Cleaner, I was responsible for cleaning the inside of arriving aircraft. I was responsible for wiping down all surfaces, such as seats and tray tables, cleaning the inside of seat pockets, and vacuuming the floors around the seats and aisles. I was also responsible for cleaning the restrooms and crew service areas where supplies are stocked, picking up trash, and refilling seat pockets.

4. **My Typical Work Schedule for Menzies Aviation**

My work schedule was typically Sundays through Thursdays, from 4:00 p.m. to 12:00 - 12;30 a.m. Every day I came to work, my co-workers and I that worked the same shift would clock in using the Kronos machine located in the break room. We would use that same machine to clock out for meal breaks and then back in. We would also use it to clock out at the end of our shift.

**Menzies Aviation Did Not Provide Me Timely, Uninterrupted 30-Minute Meal Periods**

5. Several days per week, I would not receive a meal break within the first 5 hours of my shift. There were too many airplanes to clean and not enough people or time to clean them all in the quick turnaround that Menzies Aviation required. Somedays there were 18-20 airplanes that we had to clean in our 8 hour shift. Menzies Aviation would not permit a meal break until we had finished cleaning the planes that had arrived. Menzies Aviation would transport us by bus to the aircraft to clean, so we were always far away from the breakroom to have a meal break and felt trapped. We would depend on Menzies Aviation to bus us back to the breakroom when a meal break was permitted. There was never any set schedule for that meal break. It was decided on a day-to-day basis depending on the number of aircraft that needed to be cleaned, and when the supervisor or manager authorized the meal break. I was not allowed to take a meal break when I wanted. I could only take a meal break with permission from the supervisor or manager.

6. But even when we were authorized to start a meal break, many of my meal breaks were interrupted by the supervisor or manager telling us to hurry and finish because an aircraft was waiting and the office was right next to the breakroom. If our meal break got cut short we could not use the Kronos machine to clock back into work.

We were locked out for 30-minutes automatically, even when our meal break was cut short.

7. I am pretty sure Menzies Aviation did not pay me for many of my missed or late meal breaks. I am also fairly certain that Menzies Aviation did not compensate me for all the time that my meal break was interrupted by a supervisor or manager.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

8. In my experience at Menzies Aviation, it was rare to ever receive a 10 minute break. There was no set schedule for rest breaks that I or my co-workers knew about. I wasn't allowed to take a rest break when I wanted to. Instead, we would only get a rest break if a supervisor gave permission. Sometimes the supervisor would tell us to take a 10 minute break at the end of our shift, but I and others just wanted to go home so that rest break was meaningless. Throughout my time working there, I don't recall ever getting more than one rest break in a shift. Work was continuous and there was no reasonable opportunity to take a rest break. The supervisors insisted that we promptly service all the aircraft, and they made clear that finishing that work was more important than our breaks.

9. During that time period, Menzies Aviation did not pay me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 04/18/, 2023 at Harbor City, California.

Solvevina Ramirez

- 5 -

DECLARATION OF SOLVEVINA RAMIREZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**Translation Affidavit**

I have had the attached declaration consisting of 6 pages, including this page, read to me in Spanish. I fully understand its contents. I certify that it is true and correct to the best of my knowledge and belief.

Solvevina Ramirez, Declarant

I am fluent in English and Spanish. I have read the preceding English declaration of Solvevina Ramirez to the Declarant in Spanish. I swear that I have faithfully and truly translated the testimony of the witness according to the best of my skill, knowledge and ability.

C. Soledad Albarracin,
Paralegal to David P. King
KING CHENG MILLER & JIN, LLP
3675 Huntington Dr., Ste. 200
Pasadena, California 91107

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF ABDEL RIFAI IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF ABDEL RIFAI

I, Abdel Rifai, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Truck Driver for Menzies Aviation (USA), Inc. ("Menzies Aviation") at the Los Angeles International Airport ("LAX") from January 2022 until on or around August 2022.

**My Typical Work Schedule for Menzies Aviation**

3. I would typically work 8-hour shifts, usually from 6:00 p.m. to 2:30 a.m., five days per week.

4. I would clock in with my employee code and using my finger on a device located either inside the Menzies Aviation warehouse or in the Menzies Aviation lunch room within LAX. I would clock out at the end of my shift the same way.

**My Duties and Responsibilities at Menzies Aviation**

5. Throughout the time I worked at Menzies Aviation, I drove a company-owned semi-truck to transport cargo to and from company warehouses within and around 3-4 miles of LAX.

6. Menzies supervisors would call me on my personal cellphone throughout my shift with instructions to pick up cargo from one company warehouse to another.

7. At the start of my workday, I would drive my semi-truck and line up at the location of my first warehouse. There is usually a line of truck drivers to get cargo in a warehouse.

8. Drivers need to stay on the line, then once it's your turn, you open the loading dock gate, set up the ramp to the trailer, hitch the trailer to the semi-truck, access

the forklift to prepare to load cargo, load the trailer while ensuring that the weight was distributed evenly, and then pull the trailer containing a load of cargo to its destination.

9. Truck drivers at Menzies Aviation were always given tight time schedules. So I had to be continuously working throughout my shift to ensure that I finish all the instructions of my supervisor.

**Menzies Aviation Did Not Provide Me Proper Lunch Breaks Or Rest Periods**

10. As a Truck Driver, I cannot leave the truck line to a warehouse, or else I will lose my spot and be delayed to my next task. Nor am I allowed by the company to leave my truck with cargo worth millions of dollars. As a result, I was regularly unable to find time to eat within the first 5 hours of my work, because of how much work was assigned to me.

11. Many times, I would only find a chance to eat after 7 or 8 hours of continuous work after starting my shift. I remember reading about meal breaks in the exam the company gave us prior to hiring, but nobody explained the company's actual policy of how we were supposed to get meal breaks to me.

12. Menzies Aviation did not inform me I was entitled to have a 30-minute uninterrupted meal break within the first five hours of work, or that I was entitled to extra pay for every instance of uninterrupted or failure to take a meal break within the first five hours of work.

13. When I worked at Menzies Aviation, I usually only ate a sandwich while driving on the road, and because of my tight work schedules, I could not take a full 30-minute meal break. At times, if I could find a parking spot for my semi-truck with its trailer, then I could stop along the road to quickly finish eating my food. But I wasn't allowed to leave my truck.

14. I was not aware that I was entitled to rest breaks when I worked at Menzies Aviation. I was never trained on meal or rest breaks by the company, and I don't recall ever being given any employee handbook. I was just given keys to the truck and told to drive. Nevertheless, because of my tight work schedule, I would have been unable to take any rest breaks.

15. Menzies Aviation did not advise me that I was entitled to 10-minute off-duty rest breaks during my shift, or that I was entitled to extra pay if I was unable to take the rest breaks.

16. I do not recall being paid any extra wages for any missed or late meal breaks, or for any missed rest breaks. I never knew the procedure to obtain payment for missed or late breaks, meals or otherwise.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

17. The practice at Menzies Aviation was for Truck Drivers like me to receive instructions on our tasks throughout our shifts via phone calls and text messages on our personal cell phones. I was constantly in contact with someone on the phone from the company regarding what they wanted me to do and any questions either I had or they had for me.

18. I was never issued a company cell phone, radio or other device I could have used instead of my personal cellphone to communicate with the people I needed to stay in touch with at the company.

19. Throughout the duration of my work, I was required to keep my personal cell phone on so that I can always be available to Menzies and its managers/supervisors, who provide work instructions to me. If they couldn't reach me on my cell phone, they would get mad at me.

20. I used my personal cell phone on a daily basis to perform essential tasks while working for Menzies Aviation, but I did not know that I could be reimbursed by the company for using my cell phone for work. I was never reimbursed by Menzies Aviation for use of my cell phone.

21. About 15-20 % of my total use of my cell phone was for work-related purposes at Menzies Aviation. My monthly cellphone bill was $65.00.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 05/18/2023 at Los Angeles, California.

Abdel Rifai

______________________________

Abdel Rifai

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF BRANDON ROBINSON IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF BRANDON ROBINSON

I, Brandon Robinson, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. From December 2021 until approximately January 2022, I was an Aircraft Fueler for Menzies Aviation (USA), Inc. ("Menzies Aviation") at San Francisco International Airport ("SFO").

**My Duties and Responsibilities at Menzies Aviation**

3. As an Aircraft Fueler, I was responsible for fueling aircraft at SFO airport. I also needed to complete safety procedure tasks required by my employer, and do all other tasks as my supervisor instructs me.

4. From a list that management prepared, I would find the fuel truck assigned to me at the start of my shift. As required by Menzies Aviation, I would first conduct the safety procedure on my fuel truck. Then, based on papers that management gives me, I would find the list of aircraft that they assigned me to be responsible for, including their flight arrival times, and the gates where they are expected to land.

**My Typical Work Schedule for Menzies Aviation**

5. My work schedule was typically Thursdays through Mondays, from approximately 2:30 p.m. to 10:30 p.m. Although, on some days, I may be requested to work additional overtime hours.

6. I would clock in using my finger on a device located inside the Menzies office at San Francisco airport. I would clock out at the end of my shift using the same device inside the Menzies office.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

7. I use my personal cell phone at work every day, because there was no other way of knowing the actual times of arrival of flights, and at which gate each aircraft will actually be. The order in which I fuel the aircraft was based on the list of flight schedules given to me by management. But the arrival times and the gates listed on the papers they gave me could change at any time, which often happened. Also, I would regularly be asked by management to cover other aircraft that was not originally included in my list. My supervisor for the shift would also give other instructions over the phone. So I had to stay in touch with my supervisors throughout my shift, since they would communicate to me with the information that I needed via text message or a call to my personal cellphone. If I had any questions for my supervisor, I would also use my personal cellphone to contact them and they would answer my questions so that I know what they wanted me to do in order to do my work properly.

8. I was not issued any company cellphone, radio, or any handheld device on which I could have received information from my supervisors regarding the real time aircraft arrival times and gates information that I needed and their other instructions. My fuel truck has no radio or device where I could check for these information. The only tool I had to contact my supervisors, from wherever I was at in the airport with my fuel truck, was my personal cellphone. This was how we communicated with each other throughout my shift because that was the only thing available other than having to drive back to where they were to talk face to face, which would have taken too much time and not allowed me to do all the work they wanted me to do.

9. Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

10. I eat my meals in my fuel truck whenever I find a decent time interval between fueling assignments to eat. I do not go to the Menzies office to clock out because it is a good 10-15 minutes drive from the tarmac and I had limited time before my supervisor would need me again for a fueling assignment. So I would just find a safe zone on the tarmac where I could eat my meal in my fuel truck.

11. I have to first call my shift supervisor to tell them that I will be taking my meal break, and they will give permission if there wasn't a fueling assignment that they needed me to do at the time. But they can always interrupt my meal period to ask me to cover fueling another aircraft since they knew I was just in my truck ready to go. This happened about 2-3 times per week.

12. Basically, I would only be authorized to take a meal period if there was no work to be done at that moment, but with the understanding that I was on standby in case there was suddenly work that they needed me for. My understanding from my work experience there is that the policy of Menzies Aviation is for flight operations to take precedence over all other matters, including employee meal and break periods.

13. Since the work always took priority, there were times when I could not take my meal break within the first 5 hours of my shift. Flights are often delayed, and I needed to be on standby, ready to fuel the aircraft on my flight schedules, as there can be no delay on my part in getting them fueled and ready to leave again. Oftentimes, flights are back-to-back, so I would finish fueling one aircraft and then immediately have to turn my attention to fuel the next one. Hence, approximately 3-4 times a week, I would have to take a late meal break.

14. Moreover, we usually needed to cover fueling other aircraft that weren't originally on our list. I needed to get permission from my supervisor before I can take a

meal break, and the supervisor will only allow me to have a meal break after all aircraft had been serviced and if we are not expecting any other aircraft. So there were days that I worked more than 7-8 hours before I have any meal breaks because of how much work we had to do.

15. I am not aware of Menzies Aviation paying me any meal break premium or any additional wages, overtime, or penalties for not providing me a meal period, or for having me stay on duty during my meal periods.

16. If I had a chance to have a meal break, it is occasionally interrupted by my supervisor calling me to fuel another aircraft.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

17. Some days, I cannot take a 10 minute rest break while I was working at Menzies Aviation because of how much work we had. Sometimes, in lieu of my meal break, I will take a quick 10 to 15 minutes break to be able to eat something, again because of the heavy workload.

18. I do not recall ever receiving more than one rest break in a shift even though I regularly worked at least 8 hours. We were too busy with fueling assignments to be able to take a second rest break. The most I would ever get was that I would take my meal and get one rest break in a shift.

19. At no time can I leave my fuel truck and the tarmac area, because my supervisors made it clear to me that I can get a call to fuel another aircraft immediately and I had to always be ready to go do that when they called. The priority is to fuel all the aircraft as soon as possible over employees taking any breaks.

20. I never knew I can get paid for missed rest breaks, and I do not recall Menzies Aviation ever paying me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 05/16/2023 at san francisco, California.

Brandon Robinson

- 6 -

DECLARATION OF BRANDON ROBINSON IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF MARIO ROCHA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

**DECLARATION OF MARIO ROCHA**

I, Mario Rocha, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Ramp Agent in the Ramp Operations Department of Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from May 3, 2021 to August 20, 2022.

**My Duties and Responsibilities at Menzies Aviation**

3. While working at Menzies Aviation, I was assigned to the Ramp Operations Department at LAX, and we were responsible for loading and unloading luggage and cargo from departing and arriving aircraft. We would also guide aircraft to the gates upon arrival and from the gates for departure. There always seemed to be too many airplanes to serve. We were given two hours to unload an arriving aircraft and then load it again for departure which was difficult because we were often shorthanded. Some of the larger aircraft required 6 to 10 people to service it timely, yet many days we had only 3 workers, plus the Lead. Sometimes the cargo would arrive late from the warehouse, delaying our work even more. We would finish one aircraft and another would be arriving and we would then immediately turn our attention to that aircraft. LAX is an extremely busy airport.

4. Managers and supervisors were constantly yelling at us to get the work done quicker. We were always under pressure to get the work done as quickly as possible.

**My Typical Work Schedule for Menzies Aviation**

5. My working hours with Menzies Aviation varied. I typically worked Mondays through Fridays beginning around 4pm to 2am. There were many days, however, when it was so busy and we were shorthanded, that I worked a 12 hour shift. I would typically clock in and out of work each day, as well as for meal breaks using the Kronos system in the breakroom.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

6. I used my personal cell phone at work every day. Supervisors would communicate with me almost exclusively through my cell phone with work instructions. We would text about issues such as where to drop off cargo or luggage, where certain containers were to be directed, or such mundane issues such as a request to bring a dolly. There were instances where I used my phone to take pictures of the luggage that appeared to have been damaged or opened and sent it to my supervisor or manager. There was not a way to do my job efficiently, and certainly not within the time Menzies Aviation expected work to be completed, without using my cell phone. I had no other device to communicate with my supervisor. In fact, one of my supervisors asked me for my cell

phone number which he then used to communicate with me at work. The other supervisors had my cell phone number from my employment application.

7. I also used my cell phone to participate in a group chat with other employees, including supervisors, for information about flights. When I arrived at work we would be provided a schedule of flights that we would be responsible for, but that could change during the day and we would be notified of changes through the group chat. We would also use the group chat for updates on flight delays or cancellations.

8. I also downloaded two apps, one to clock in and out via my phone when I was not able to clock in and out manually in the office using the Kronos system. I also used the app to keep track of my hours and paycheck.

9. Menzies Aviation did not offer to provide me with a company phone, 2-way radio or any other device I could've used instead of my personal cell phone for work-related tasks. The company never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work.

**Menzies Aviation Did Not Provide Me Timely, Uninterrupted 30-Minute Meal Periods**

10. Often, meal breaks were not permitted by the supervisor or manager within the first 5 hours of my shift, for a number of reasons. Flights would constantly be

arriving and departing, and some flights would be delayed, and we needed to service them all promptly. Furthermore, we never had enough people on our crew to service all the flights as quickly as Menzies Aviation demanded, which is why I sometimes worked a 12-hour shift.

11. Our supervisors and managers wanted us to finish work on the flights before authorizing us to take a meal break. Many times, our supervisors would request that we cut our meal break short (to 15 minutes) because another flight would be arriving soon and we had to be prepared to quickly handle the luggage and cargo. One time I punched out for my lunch break and the supervisor got upset at me and told me that I should have only taken a short break. After that I always had to wait for permission to clock out for lunch. Many days I and the others in my crew had to cut our meal breaks short because the supervisor or manager would come in and tell us we had to go back to work to attend to a plane that was waiting for us. When that happened we could not punch back in from lunch because the machine had a 30 minute block. They would tell us to complete a Missed Punch Form and we would turn it in expecting to get paid for not taking a full meal break but more often than not we did not see it reflected in our paychecks. When we complained, we were told to speak to HR. HR would tell us that the manager did not approve it and ultimately we would let it go because it was a waste of our time.

12. Many times I filled out a Missed Punch Form when I was not permitted to take a meal break within the first 5 hours of my shift. Although I was under the

impression that my supervisor approved the Missed Punch Form, I noticed that my paycheck frequently failed to properly account for the missed meal breaks. In other words, Menzies Aviation did not pay me extra for those missed meal breaks.

13. If I worked 10 or 12 hours we were never given a second lunch, at most we were given 10 or 15 minute break almost at the time we were about to go home. If I worked 12 hours the machine would automatically discount 30 minutes for lunch, even though I didn't take that second lunch.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

14. Some days, Menzies Aviation permitted me a 10-minute rest break, but only if there was time between flights. If the flights were arriving and departing too close in time, breaks were not permitted or taken. I don't recall ever being permitted a second 10 minute rest break on those days that I worked 8, 10 or 12 hours.

15. I am not aware of Menzies Aviation paying me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 4/30, 2023 at INGLEWOOD, California.

MRR

Mario Rocha Rodriguez

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF RYAN SIERRA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF RYAN SIERRA

I, Ryan Sierra, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Ramp Agent for Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from September 2019 to March 2020. From March 2020 until November 2020, I was a Freight Agent for Menzies Aviation at LAX.

**My Duties and Responsibilities at Menzies Aviation**

3. As a Ramp Agent I worked in the bag room where departing luggage would be sent through a conveyor belt system. When the luggage reached the bag room I would load it into the proper can and once multiple cans were filled it would then be sent out to the corresponding flight using a Tug(small kart like vehicle). As a Freight Agent I would load and unload heavier cargo using heavy equipment. Freight Agent oversees the shipping and receiving of cargo for a company. A Freight Agent's duties also include managing shipping logistics, working with carriers, and documenting shipments. The flights were unpredictable and sometimes we would have four flights coming in at one time. Some come earlier or later than they are supposed to come.

**My Typical Work Schedule for Menzies Aviation**

4. I was always on standby, working 5 days per week anywhere from 8-12 hour shifts, but never knowing my schedule until I arrived at work. Our starting time ranged from 2am to 8am. There were rare occasions I would receive a text around 9pm or 10pm for a 2am or 3am start time, having to wait for a text every night so you knew when you could go to bed in order to set your alarm to wake up at the proper time was annoying. The constant inconsistent start and finish times combined with working standby hours wore thin, so I eventually quit working for Menzies Aviation.

5. I would punch in when I reported to work, punch out when I took a meal break, punch back in when my meal break was over, and then punch out at the end of my shift using a biometric method, which involves touching an electronic pad in Menzies Aviation's Operations Room using my finger.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

6. I used my personal cell phone at work every day because my instructions would be sent to me via my phone. Frequently I would receive instructions about flight schedules and schedule changes during my meal break so that I knew exactly where to report and what to do the minute my meal break was over.

7. I was not provided with any alternative method of communication with my supervisors and/or managers. The supervisors and managers used radios and/or other forms of communication but those were never offered to us. Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work.

**Menzies Aviation Did Not Provide Me Timely, Uninterrupted 30-Minute Meal Periods**

8. For most of the shifts that I worked at Menzies Aviation, I was not afforded a meal break within the first 5 hours of my shift, because the busy workload did not allow for a break. Meal breaks had to be approved by a manager or supervisor, and those breaks would not be permitted when multiple flights were arriving and departing, and the work needed to be completed. Our managers made it clear to us that Menzies Aviation stressed the urgency of getting planes serviced in a timely manner and that always took priority over a meal or rest break. There were rare instances when we would be told to take our meal break as soon as we clocked in because that was the only time we had due to the

hectic flight schedule, even though we ended up working 8, 10 or even 12 hours that day. The flight schedule dictated when and if we would take a meal break.

9. I am not aware of Menzies Aviation's policy for paying for or recording missed meal breaks, and I'm also not aware if I ever received extra pay for my missed or late meal breaks. I am not aware of Menzies Aviation's policy for paying for or recording missed meal breaks, and I'm also not aware if I ever received extra pay for my missed or late meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

10. Throughout the time I worked for Menzies Aviation, I was not aware that I was entitled to take rest breaks during my shift, and certainly did not ever get 2 10-minute rest breaks for shifts over 8 hours. During my shift, I would work continuously. Flights get delayed, rescheduled, and cancelled, and thus departure and arrival times change. My managers made it clear to me that I always had to be available to service those planes. Cargo needed to be offloaded from flights, and our managers said that these needed to be loaded and unloaded promptly. Thus, there were always issues that needed to be addressed. I really don't recall being allowed to take rest breaks during my shift.

11. I am not aware of Menzies Aviation paying me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

Executed this April 20, 2023 at Hawthorne, California.

Ryan Sierra
Ryan Sierra

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF ABRAHAM TORRES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

## DECLARATION OF ABRAHAM TORRES

I, Abraham Torres, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed as a Ramp Agent in the Ramp Operations Department of Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from 2017 until 2021.

**My Duties and Responsibilities at Menzies Aviation**

3. Throughout the time I worked at Menzies Aviation, I was assigned to the Ramp Operations Department at LAX. During my shift, I worked with other ramp agents to load and offload passenger luggage and cargo.

**My Typical Work Schedule for Menzies Aviation**

4. My working hours with Menzies Aviation varied. While I would report to work expecting to work an 8-hour shift, ramp agents were often asked by Menzies supervisors to work additional hours to service a plane that was arriving or departing after the 8-hour shift was ending, regularly resulting in work days of 10-12 hours.

5. I would clock-in and clock-out through a biometric touch pad in Menzies Aviation's Operations Room using my thumb. The other method is an application ("Menzies App") installed on cell phones. Sometimes I would clock in and clock out using this Kronos Menzies App that our managers instructed us to install on our personal cell phones. I would clock in at the beginning of my shift and clock out at the end of my shift. I would also clock out and back in for meal breaks, either on the biometric touch pad or on the Menzies App on my cell phone.

6. Like many Menzies Aviation employees, I was asked by my supervisors that I used my personal telephone to communicate with other employees about work related issues, I used it to track flights through Flight View and Flight Radar in order to prepare

to receive and service the flights. I received text messages at work and during off hours regarding my schedule, flight arrivals, departures and the nature of work that needed to be accomplished. I used my personal cell phone at work every day to communicate with other employees, managers and supervisors about our instructions, plane arrivals and departures, cargo issues, and other related work issues. Supervisors used our phones to keep everyone updated on flight information, including delays, and cancellations, specific instructions regarding an arriving or departing flight, issues with any luggage or cargo, and other work related issues throughout the day. There were walkie talkies but they were never offered to us. They were for management to use. My managers and supervisors knew that I was using my personal cell phone for my work-related tasks, but they did not offer me a company phone, radio or anything else to use instead of my personal cell phone.

7. Menzies Aviation never offered to reimburse me for use of my personal phone for work duties and never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the Menzies Aviation to get reimbursed for the expense of using my personal cellphone for work.

**Menzies Aviation Did Not Provide Uninterrupted or Timely 30-Minute Meal Periods**

8. My co-employees and I would rarely have a lunch break within the first 5 hours of a shift. Even when we did take a short lunch, we would often be interrupted with work-related texts, conversations and instructions. I was aware that the Kronos Machine locked us out for 30 minutes, meaning that when we clocked out for lunch, we could not clock back in unless 30 minutes had passed.

9. My co-workers and I could not take a meal break without authorization from our manager or supervisor. Menzies Aviation insisted that we work through lunch if a plane needed to be serviced, in order to ensure that the work was completed as quickly as possible. Meals would be missed because the workload was substantial and needed to be

completed and was a priority over taking a meal break. We also had to be on standby for plane arrivals and departures, which further prevented timely meal breaks. Often, I would not take a meal break until after I had worked 7-8 hours. That was my common experience and the experience of other ramp agents I worked with.

10. When I was able to take a meal break, I would sometimes do so in the Menzies Aviation Operations Room, which is within the airport security area. But sometimes it was full since people work in that area and I and other ramp agents would eat on the hallway floor. Moreover, going through security would take time and cut into our meal break. I would use Kronos to record my meal break when I was allowed to take one.

11. I and other ramp agents were often approached about work issues such as assisting at a gate or questions about an arriving or departing flight when we were given a short time for a meal. It was rarely uninterrupted.

12. I don't recall ever receiving a second meal break on those shifts when I worked more than 10 hours.

13. I knew from prior employment that I was entitled to extra pay for missed, late or interrupted meals breaks. But at Menzies Aviation, any extra pay would have to be approved by the manager, and I am certain I was not paid extra wages for all of the meal break violations.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

14. Throughout the time I worked for Menzies Aviation, it was often too busy to take a rest break during the first 4 hours of work. I would have to get permission from my manager to take a break and often it was refused because work was too busy. There were occasions when my manager told me to tack on a ten minute break to my lunch break, but for the most part rest breaks were not encouraged or approved. I don't recall ever receiving more than one 10-minute rest break during any of my shifts.

15. Menzies Aviation never informed me that we were entitled to extra pay if Menzies Aviation did not provide us with 10-minute rest breaks during our shift.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

16. As discussed above, for numerous reasons, including clocking-in and clocking-out through the Menzies App on my phone, tracking flights, and communicating with co-workers, I would use my cellphone during my shift. Menzies Aviation never offered me a company cellphone, has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my personal cellphone. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this April 21, 2023 at Huntington Park, California.

[signature]
Abraham Torres

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF STEVEN VAKOC IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

# DECLARATION OF STEVEN VAKOC

I, Steven Vakoc, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. From early 2021 until approximately June or July 2022, I was an Aircraft Fueler for Menzies Aviation (USA), Inc. ("Menzies Aviation") at Ontario Airport ("ONT).

**My Typical Work Schedule for Menzies Aviation**

3. My typical work schedule was from 3:30 a.m. to 1:00 p.m., five days a week. Although, on some days, I would be requested to do additional overtime hours. I clocked in when I reported for work, and then clocked out at the end of my shift before I went home, on the device in the break room.

**My Duties and Responsibilities at Menzies Aviation**

4. As an Aircraft Fueler, I was responsible for fueling aircraft at the Ontario airport. I was assigned to fuel Southwest Airlines airplanes. Since their flight schedules are very tight, Southwest Airlines airplanes usually came in for fueling every 15 minutes.

5. Usually, at the start of my shift, a print out of my schedule of flights will be handed over to me by one of my superiors. However, flights are usually delayed, or if there are fueling problem with an aircraft, my schedule can get backed up, so that tentative schedule of my work was always subject to change. So I utilized Flightradar or Flightaware to stay current on the most recent arrival times and arrival gates of the flights/planes that I needed to fuel.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

6. My recollection is that I rarely took my meal breaks within the first 5 hours of my shift. I was assigned to Southwest Airlines, which are back-to-back-to-back flights. I would barely finish fueling one aircraft before I must immediately turn my attention to fuel another one. There were days that I worked more than 6-7 hours straight after clocking in before I could find an opportunity to grab a bite to eat.

7. My superiors at Menzies Aviation made it clear to me and the other fuelers that we cannot neglect to fuel an aircraft even if we are hungry because we would get written up if flights are delayed on your watch. If there were any planes that needed fueling, a fueler had to keep working, regardless of how long you've been on duty since clocking in for your shift. As such, I would get a late meal break, meaning one beyond the 5th hour of working, about 3-4 times a week.

8. The policy at Menzies Aviation is that flight operations takes precedence over all other matters, including employee meal and break periods. So approximately 5-6 times a month, I would absolutely miss having a chance to stop and eat for my entire shift.

9. Also, because of the rule that you had to keep working if there were any planes that needing fueling, even when I did have a chance to have a meal break, it would occasionally be interrupted by my supervisor calling me to fuel another aircraft. This happened about 2-3 times per week.

10. Since I can always get interrupted by my supervisor instructing me to fuel another aircraft, when I was given a chance to take my meal break, I would just grab the opportunity by simply taking my lunch out and eating at my fuel truck. I never knew if I would be asked by my supervisor to cover for another flight, and they made it clear that it wasn't an option for me to decline the instruction when I'm on a meal break, so I pretty

much had to stay with my truck, ready to work on a moment's notice. So I did not have an opportunity to drive back to the break room to clock out for meal breaks.

11. I did not know when I worked at Menzies Aviation that I can get paid for missing, late, or interrupted meal breaks, let alone any procedure to request a meal break premium payment.

12. As far as I know, I have never have been paid for any meal break premiums while I was working at Menzies Aviation. Nor am I aware of Menzies Aviation ever paying me any additional wages or penalties for not providing me a meal period, or for having me work during my supposed meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

13. I rarely took any rest breaks while I was working at Menzies Aviation. The priority at the company was to fuel all the aircraft as soon as possible, which was more important than employees taking any breaks. Sometimes, I would catch a few minutes break in-between flights, but rarely was it 10 minutes. And since I cannot leave the Airport Operations Area (AOA) and my fuel truck in case my supervisor needed me to fuel another aircraft, it didn't seem to be off duty. Sometimes, in lieu of my meal break, I would take a quick rest break to be able to eat something in between fuelings in my fuel truck.

14. In reality, I never knew I was entitled to 10-minute off-duty rest breaks when I worked for Menzies Aviation, much less payment for missed rest breaks. As such, I never applied for rest break premium payments and I don't know how I could have even done that. I do not recall Menzies Aviation ever paying me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 05/16/2023 at rancho cucamonga ,ca, California.

Steven Merlin Vakoc

Steven Vakoc

- 5 -

DECLARATION OF STEVEN VAKOC IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

CASE NO. 2:22-cv-05915-MCS-MARx

CLASS ACTION

DECLARATION OF FREDERIC POAG IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Judge: Hon. Mark C. Scarsi
Ctrm.: 7C, 7th Floor

Complaint Filed: August 19, 2022
FAC Filed: August 30, 2022

## DECLARATION OF FREDERIC POAG

I, Frederic Poag, declare as follows:

1. I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2. I was employed by Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") in the Ramp Operations Department from September 2018 to February 2020. After a few months as a Lead, I was promoted to the position of Operations Control Center Duty Manager.

**My Duties and Responsibilities at Menzies Aviation**

3. As an Operations Control Center Duty Manager, I was responsible for managing and coordinating staffing decisions for the Ramp Operations Department, and authorizing overtime and meal break penalties for employees within that Department. I was no longer directly involved in providing the services we provided to airline clients once I became an Operations Control Center Duty Manager.

4. When I became Operations Control Center Duty Manager, I was advised by Menzies Aviation that I had authority to approve overtime and meal break penalties. However, Menzies became hyper-focused on reducing overtime pay as well as meal break penalties, and I learned that Menzies Aviation had on many occasions disallowed the meal break penalties I had authorized, as explained further below.

**Menzies Aviation Frequently denied Meal Break Penalties that Employees Were Entitled To.**

5. I was assigned to the morning shifts (starting around 5:00 a.m. and ending as late as 3:00 p.m), Wednesdays through Sundays. Mornings have a large number of flights arriving and departing. Sundays are the most difficult day to work because of the larger number of international flights arriving and departing. Sundays were also the most difficult day to staff because many employees did not want to work on Sundays. I was responsible for making sure that staffing was accomplished so that Menzies Aviation could properly handle all of the arriving and departing flights.

6. Menzies Aviation's priority was to ensure that cargo and luggage was promptly handled, which meant that the work needed to be completed before breaks were allowed.

7. Often, the workload would require employees in the Ramp Operations to work continuously for more than 5 hours without any meal break. I was responsible for asking the employees to work more than 5 hours without any meal break, advising them that they would receive a meal penalty for working through the meal break. I would then fill out a form authorizing Menzies Aviation to include the extra wage earned for the missed meal break, but would later learn that many of my authorizations for meal break penalties were overruled, and that the extra wage was not paid to the employee who deserved it and who I had assured would receive it.

8. Many employees would approach me after receiving their paycheck and complain that they had not received any extra wages for missed meal breaks, after I had assured them that they would receive extra wages. I tried to follow up to find out the reason, and was told by upper management that they believed the employee could have taken a timely meal break, or that the paperwork was missing or some other excuse. I did not understand how Menzies Aviation would deny an employee a meal break penalty after I assessed the situation in real time and determined that the worker was needed to finish the work and there was not time to take a 30 minute meal break. Menzies Aviation, after the fact, would second guess me and frequently overrule my authorizations for a missed meal penalty.

9. Employees started to question whether it was my fault that they were not paid for the meal break penalty, and started to question whether I had even submitted the form for them to receive the extra wage. I assured them that I had, but the situation became so embarrassing that I started to take photographs with my phone to memorialize the paperwork I had submitted on their behalf, in order to prove that I had submitted the paperwork.

**Menzies Aviation Did Not Provide Uninterrupted 30-Minute Meal Periods**

10. Many of the Ramp Operations employees would take meal breaks in an area where I was also working, and I would frequently discuss work-related issues with them during their meal breaks because time was always of the essence.

**Menzies Aviation Did Not Provide Rest Periods**

11. For all intents and purposes, 10-minute rest breaks did not exist while I worked for Menzies Aviation. The press of work, and the company's emphasis on completing it quickly was the priority. I am not aware of any procedure for an employee to claim a rest break penalty or premium for missed rest breaks during their shifts.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 4/13, 2023 at Castle Rock, Colorado.

[signature]

Frederic Poag