1  CHRISTOPHER WARD, CA Bar No. 238777
     cward@foley.com
2  **FOLEY & LARDNER LLP**
   555 SOUTH FLOWER STREET, SUITE 3300
3  LOS ANGELES, CA 90071-2418
   TELEPHONE: 213.972.4500
4  FACSIMILE:   213.486.0065

5  KEVIN JACKSON, CA Bar No. 278169
     kjackson@foley.com
6  **FOLEY & LARDNER LLP**
   11988 EL CAMINO REAL, SUITE 400
7  SAN DIEGO, CA 92130-2594
   TELEPHONE: 858.847.6700
8  FACSIMILE:   858.792.6773

9  Attorneys for Defendant
   MENZIES AVIATION (USA), INC.

10

11              **UNITED STATES DISTRICT COURT**

12             **CENTRAL DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  DORA PATRICIA AMAYA, an individual; and ANIBAL SILVA, an individual; on behalf of themselves and others similarly situated, | Case No. 2:22-cv-05915-MCS-MARx |
| 15 | **DEFENDANT MENZIES AVIATION (USA), INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| 16 Plaintiffs, | |
| 17 vs. | Date:     July 24, 2023 |
| 18 | Time:     9:00 a.m. |
| 19  MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive, | Ctrm.:    7C, 7th Floor |
|  | Judge:    Hon. Mark C. Scarsi |
| 20 Defendants. | |
| 21 | Complaint Filed:  August 19, 2022 |
| 22 | FAC Filed:       August 30, 2022 |
|  | SAC Filed:       May 9, 2023 |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   THE FACTS AND EVIDENCE—MEASURED ACROSS 70+ CLASSIFICATIONS AND MULTIPLE LOCATIONS—REFLECT MENZIES' COMPLIANCE AND THE EXTENT TO WHICH INDIVIDUAL FACTORS PRESENT CRITICAL PROBLEMS FOR THE CLASS ............................................................................................................ 2

    A.   PLAINTIFFS' PROPOSED CLASS IGNORES THE NATURE OF MENZIES' BUSINESS, WITH OVER 70 NON-EXEMPT CLASSIFICATIONS AT NUMEROUS LOCATIONS .............................. 2

    B.   MENZIES EMPLOYEES ARE SUBJECT TO MANDATORY INDIVIDUAL ARBITRATION ........................................................ 3

    C.   MENZIES HAS COMPLIANT POLICIES ...................................... 3

    D.   MANY PUTATIVE CLASS MEMBERS WORK IN POSITIONS WITH REGULAR SCHEDULES UNIMPACTED BY FLIGHTS, AND EVEN THOSE WHO DO NOT WORK IN SUCH POSITIONS REFUTE PLAINTIFFS' CLAIMS OF UNWRITTEN PRACTICE ........... 5

        1.   Dozens Of Menzies Classifications Have Positions With Regular Schedules That Permit Daily Compliant Breaks .............. 6

        2.   Menzies Employees Take Breaks And Receive Premiums .................................................................................. 7

    E.   PLAINTIFFS' MYOPIC STATISTICAL ANALYSIS AND THEORY OF AN UNWRITTEN POLICY IGNORE THE OPERATIONAL REALITY OF SIGNIFICANT "DOWN TIME" .......... 9

    F.   PLAINTIFFS AND THEIR DECLARANTS IRONICALLY EMPHASIZE THE EXTENT TO WHICH MENZIES HAS INDIVIDUALIZED DEFENSES ACROSS THE PROPOSED CLASS ........................................................................................... 12

III.  THE COURT SHOULD NOT CERTIFY CLASSES COVERING 70+ JOB CLASSIFICATIONS SUBJECT TO INDIVIDUALIZED FACTORS ............. 14

    A.   RULE 23 REQUIRES COURTS TO RIGOROUSLY ANALYZE WHETHER PLAINTIFFS HAVE SATISFIED THEIR BURDEN TO SHOW CLASS TREATMENT IS PROPER ...................................... 14

        1.   Certification Is Improper If Common Issues Do Not Predominate .............................................................................. 15

        2.   Adequate Representation Requires Active Participation .............. 16

    B.   PLAINTIFFS' CELL PHONE EXPENSES CLAIM CANNOT BE CERTIFIED ................................................................................. 17

1.  Plaintiffs Are Subject To Unique Defenses ................................... 17

2.  Common Issues Do Not Predominate ............................................ 17

C.  PLAINTIFFS' MEAL AND REST PERIOD CLAIMS CANNOT BE CERTIFIED ................................................................................... 18

1.  Factors That Prevent Certification With Respect To Both Claims ...................................................................................... 18

2.  Factors That Prevent Certification With Respect To Meal Breaks ..................................................................................... 19

a.  Plaintiffs' Reliance On Donahue Is Misplaced ................. 19

b.  Extensive Individual Defenses Exist, Negating Predominance ...................................................................... 22

3.  Factors That Prevent Certification With Respect To Rest Breaks ..................................................................................... 22

a.  Plaintiffs Misrepresent Menzies' Policies And Practices ............................................................................... 22

b.  Commonality Is Impossible ............................................... 23

D.  PLAINTIFFS ARE NOT ADEQUATE REPRESENTATIVES ............... 24

E.  CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allis-Chalmers Corp. v. Lueck,*
    471 U.S. 202 (1985)......................................................................................17

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)......................................................................................15

*Beck v. Maximus, Inc.,*
    457 F.3d 291 (3d Cir. 2006)........................................................................16

*Boumaiz v. Charter Commc'ns LLC,*
    2021 WL 2189481 (C.D. Cal. May 19, 2021)............................................25

*Braun v. Safeco Ins. Co. of Am.,*
    2014 WL 9883831 (C.D. Cal. Nov. 7, 2014)..............................................19

*Brinker Rest. Corp. v. Superior Ct.,*
    53 Cal. 4th 1004 (2012)...............................................................................20

*Brown v. Brewer,*
    2009 U.S. Dist. LEXIS 47535 (C.D. Cal. May 29, 2009) ................16, 24, 25

*Brown v. Fed. Express Corp.,*
    249 F.R.D. 580 (C.D. Cal. 2008).................................................................16

*Burkhalter Travel Agency v. MacFarms Int'l, Inc.,*
    141 F.R.D. 144 (N.D. Cal. 1991).............................................16, 24, 25

*Castillo v. Bank of Am. Nat'l Ass'n,*
    2019 WL 3818954 (C.D. Cal. July 16, 2019).............................................21

*Castillo v. Bank of Am., NA,*
    980 F.3d 723 (9th Cir. 2020) .......................................................................15

*Chavez v. AmeriGas Propane, Inc.,*
    2015 WL 12859721 (C.D. Cal. Feb. 11, 2015) ..........................................19

*Christensen* v. *Carter's Retail,*
    2021 WL 493224 (C.D. Cal. Oct. 21, 2021)...............................................21

*Curtis v. Irwin Indus., Inc.*,
    913 F. 3d 1146 (9th Cir. 2019) ..................................................................17, 18

*Dep't of Fair Emp. & Housing v. Verizon Cal, Inc.*,
    108 Cal. App. 4th 160 (2003) ...........................................................................17

*Donohue v. AMN Servs., LLC*,
    11 Cal. 5th 58 (2021) ................................................................................19, 20

*Dudley v. Brookdale Senior Living Cmtys., Inc.*,
    2015 WL 12426082 (C.D. Cal. Mar. 24, 2015).................................................19

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ............................................................................15

*Garcia v. Sun Pacific Farming Co-op., Inc.*,
    359 F. App'x 724 (9th Cir. 2009) .....................................................................19

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)..............................................................................25

*General Tel. Co. Sw. v. Falcon*,
    457 U.S. 147 (1982).....................................................................................15, 22

*Gonzalez v. HUB Int'l Ltd.*,
    2021 WL 3261634 (C.D. Cal. May 25, 2021)...................................................20

*Gonzalez v. Millard Mall Servs., Inc.*,
    281 F.R.D. 455 (S.D. Cal. 2012) ......................................................................19

*Hadjavi v. CVS Pharm., Inc.*,
    2011 WL 3240763 (C.D. Cal. July 25, 2011)...................................................19

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992) .................................................................15, 16, 25

*Howell v. Leprino Foods Co.*,
    2022 WL 866213 (E.D. Cal. Mar. 23, 2022)...............................................20, 21

*In re AutoZone, Inc. Wage & Hour Emp. Pracs. Litig.*,
    789 F. App'x. 9 (9th Cir. 2019) ........................................................................21

*Lingle v. Norge Div. of Magic Chef, Inc.*,
    486 U.S. 399 (1987)...........................................................................................17

*Lozano v. AT&T Wireless Servs.*,
  504 F.3d 718 (9th Cir. 2007) .......................................................................15

*McCarty v. SMG Holdings, I, LLC*,
  2022 WL 913092 (N.D. Cal. Mar. 29, 2022) .............................................21

*Mendoza v. Home Depot, U.S.A. Inc.*,
  2010 WL 424679 (C.D. Cal. Jan. 21, 2010) ...............................................21

*Owino v. CoreCivic, Inc.*,
  2020 WL 1550218 (S.D. Cal. Apr. 1, 2020)................................................21

*Rodriguez v. Wal-Mart Assocs., Inc.*,
  2022 WL 17882123 (C.D. Cal. Sept. 16, 2022) .........................................19

*Rojas-Cifuentes v. ACX Pac. Nw. Inc.*,
  2018 WL 2264264 (E.D. Cal. May 17, 2018) .............................................21

*Rosales v. El Rancho Farms*,
  2012 WL 292977 (E.D. Cal. Jan. 31, 2012) ...............................................19

*Safeway Inc. v. Superior Court*,
  238 Cal. App. 4th 1138 (2015) ...................................................................19

*Southwest Airlines Co. v. Saxon*,
  596 U.S. ___, 142 S. Ct. 1783 (2022)..........................................................3

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................15, 16

*Valencia v. VF Outdoor*,
  2022 WL 4397084 (E.D. Cal. Sept. 23, 2022) ...........................................21

*Wallis v. Greyhound Lines*,
  2022 WL 971954 (C.D. Cal. Mar. 30, 2022)..............................................21

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)........................................................................14, 15, 16

*Washington v. Joe's Crab Shack*,
  271 F.R.D. 629 (N.D. Cal. 2010).................................................................21

*Welling v. Alexy (In re Cirrus Logic Sec.)*,
  155 F.R.D. 654 (N.D. Cal. 1994)...........................................................24, 25

*Wilson v. Pactiv LLC*,
  2021 WL 5818492 (C.D. Cal. Dec. 3, 2021) ................................................... 21

*Zayers v. Kiewit Infrastructure W. Co.*,
  2017 WL 4990460 (C.D. Cal. Oct. 26, 2017) ................................................... 21

*Zinser v. Accufix Rsch. Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) ....................................................................... 16

**Rules**

Fed. R. Civ. Proc., Rule 23(a)(2)-(3) ................................................................. 15

Fed. R. Civ. Proc., Rule 23(b)(3) ....................................................................... 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiffs Dora Patricia Amaya ("Amaya") and Anibal Silva ("Silva") (collectively, "Plaintiffs") move to certify a class comprised of all non-exempt employees who worked for Menzies Aviation (USA), Inc. ("Menzies") at any time since 2018. Plaintiffs admit they have no personal knowledge of Menzies' policies and practices outside of their own limited experience working in two positions at Los Angeles International Airport. Yet in seeking to represent the interests of all employees working in more than 70 unique job classifications spread across a half dozen locations in California, Plaintiffs ignore the nature of Menzies' business and the operational realities that preclude them from establishing that common issues predominate. Faced with the inconvenient fact that Menzies has always maintained compliant policies and practices regarding the key issues in this case, Plaintiffs instead manufacture an "unwritten policy" that Menzies prioritizes service to its airline customers over affording its employees the protections guaranteed by the California Labor Code. Plaintiffs' weak and unsubstantiated theory is directly contradicted by objective operational data and testimonial experience of dozens of putative class members. Beyond the fact that that Plaintiffs are inadequate class representatives because their claims are subject to individual defenses, including their assent to binding arbitration, the evidence clearly demonstrates that common issues do not predominate. Many putative class members work in positions and at locations that do not experience the schedule disruptions caused by flight disruptions, and, even if they do, they uniformly attest that Menzies' practices align with its written policies, in full compliance with California law. Unable to avoid the prevalence of individualized inquiries, Plaintiffs cannot withstand the scrutiny that Rule 23's "rigorous analysis" requires. As a result, the Court should deny Plaintiff's Motion for Class Certification in its entirety.

///

///

4871-7313-4953.6

## II.    THE FACTS AND EVIDENCE—MEASURED ACROSS 70+ CLASSIFICATIONS AND MULTIPLE LOCATIONS—REFLECT MENZIES' COMPLIANCE AND THE EXTENT TO WHICH INDIVIDUAL FACTORS PRESENT CRITICAL PROBLEMS FOR THE CLASS

### A.    Plaintiffs' Proposed Class Ignores The Nature Of Menzies' Business, With Over 70 Non-Exempt Classifications At Numerous Locations

Menzies is an aviation services business that provides ground handling services to commercial airlines' aircraft, cargo handling services in airlines' cargo warehouses, and both aircraft fueling to airlines and fuel facilities management services to airports. [Declaration of Talin Bazerkanian ("TB Decl."), ¶ 2.] Ground handling includes servicing aircraft while parked at passenger gates "above-the-wing" in the passenger terminals through passenger service personnel who assist passengers with tickets and boarding and cabin crews who clean aircraft and check security requirements between flights. [*Id.*] It also includes "below-the-wing" work on the ramp, such as offloading and loading of baggage and cargo and guiding taxiing aircraft when they arrive. [*Id.*]

On the cargo side of the business, Menzies' employees work inside warehouses away from passenger aircraft and receive, process, and sort cargo in preparation for loading onto aircraft, but do not themselves load cargo onto aircraft. [*Id.*, ¶3.] It also includes individuals who work in offices inside the cargo warehouse processing paperwork related to commercial cargo movements without a direct hands-on relationship with the cargo itself. [*Id.*] On the fueling side of its operations, Menzies employees both pump jet fuel from tankers or airport hydrant systems into aircraft, operate an airport's fuel tank "farm" well away from passenger gates, and monitor via computer the various fueling infrastructure. [*Id.*, ¶4.] Other employees perform routine and emergency maintenance for hydrant systems and fueling equipment all over an airport. [*Id.*]

All told, across all these various types of work, which Menzies performs at Los Angeles International Airport, San Francisco International Airport, Ontario International Airport, San Diego International Airport, and Long Beach Airport, Menzies maintains over 70 different non-exempt job classifications for people performing these various job functions and the administrative work necessary to support the operational positions. [*Id.*,

**DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION**
-2-
Case No. 2:22-cv-05915-MCS-MARx

¶5.] Other than the administrative personnel—such as accounting and human resources roles—virtually all of these non-exempt employees are represented by one of the several unions at Menzies, all pursuant to a series of collective bargaining agreements that differentiate employees by job classification and location. [*Id.*, ¶5(a)-(g), Exs. A-G.]

**B.    Menzies Employees Are Subject To Mandatory Individual Arbitration**

At all times during the class period, Menzies has maintained an Alternative Dispute Resolution mechanism by which employees waive their right to present various claims—including *all* the class claims at issue here—in any forum other than binding, individual arbitration. [*Id.*, ¶¶ 6-7, Ex. H.] Pursuant to that policy, each employee who enters in an ADR Agreement agrees that the ADR Policy "prohibits you from joining or otherwise participating in a class action or as a collective action representative, or otherwise consolidating a covered claim with the claims of others." [*Id.*] Virtually all of Menzies' California non-exempt employees are subject to the ADR Policy—including *both* Plaintiffs and *every one* of the declarants relied upon by Plaintiffs in support of their Motion. [*Id.*, ¶8.] Many of these individuals—including Plaintiff Amaya—worked in positions where their job duties did not include directly loading passenger baggage or cargo onto commercial aircraft—meaning with respect to all those individuals (including Plaintiff Amaya), they are disqualified from participating as class members.[1]

**C.    Menzies Has Compliant Policies**

At all times during the class period, Menzies has maintained a facially lawful policies that directly cover the three primary issues in this case: meal periods, rest periods, and provision of necessary equipment.[2] Menzies' meal period policy states: "Non-exempt employees who work more than five (5) hours in a workday are entitled to

---

[1] Menzies acknowledges that individuals in the Ramp Agent classification are not so disqualified pursuant to *Southwest Airlines Co. v. Saxon*, 596 U.S. ___, 142 S. Ct. 1783 (2022), where the hallmark issue is whether workers directly load "cargo" onto aircraft. It also acknowledges that the scope of *Saxon*'s impact as applied to fuelers is currently before the Ninth Circuit in *Lopez v. Aircraft Service Int'l, Inc.*, No. 23-55015.  Even setting aside individuals in those two classifications, that leaves dozens of Menzies employees (such as Plaintiff Amaya) clearly outside the scope of *Saxon* and subject to individual defenses—a complete bar to their participation in this case.
[2] *See* Declaration of Kevin Jackson ("Jackson Decl."), Exs. 8-12.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
-3-
Case No. 2:22-cv-05915-MCS-MARx

an unpaid, duty-free meal period of at least 30 minutes. If you work more than ten (10) hours in a workday, you are entitled to a second, unpaid meal period of at least 30 minutes."[3] It provides employees with the right to waive their first meal period if they work more than five but fewer than six hours, and to waive the second meal period if they work more than 10 hours but fewer than 12 hours and took their first meal period. [*Id.*] It instructs non-exempt employees who "miss[] a meal period for any reason, take[] less than a 30-minute duty-free meal period, or do[] not take the meal period at the scheduled time, to immediately notify his or her manager or supervisor." [*Id.*] Menzies' rest period policy states: "Non-exempt employees are authorized and permitted to take one 10-minute paid rest break for every four hours worked or major fraction thereof." [*Id.*]

With respect to both meal breaks and rest periods, Menzies' policies explain: "If you do not take a meal or rest period during any shift for any reason, you are required to complete a Missed Punch Form so that your time records can be updated, and any other corrective action can be taken." [*Id.*] Menzies repeatedly communicates these various policies, not only through specific meal and rest period policies, but also other policies and notifications that reiterate employees' rights to take such breaks, and Plaintiffs conceded that Menzies communicated these policies to them.[4] Plaintiff Amaya goes so far as to concede that Menzies' policies are "very good." [Amaya Depo., 154:6-7.] Despite claiming otherwise in a self-serving declaration, Amaya testified that Menzies communicated its rest period policy, the right to rest period premiums, and that she could use the Missed Punch Form to request a premium. [Amaya Depo., 133:5-134:22.]

Menzies also maintains several policies that speak directly to Plaintiffs' claim for reimbursement of cell phone expenses. Menzies' "Personal Electronic Device & Cellular Phones Policy" states: (1) Menzies will issue company-provided devices to employees who need it to perform their job; (2) Employees are generally prohibited from using their

---

[3] Deposition of Menzies' Person Most Knowledgeable, attached as Exhibit 3 to the Jackson Declaration ("PMK Depo."), 86:22-87:12, 111:13-112:8, Exs. 5-6.

[4] Deposition of Dora Patricia Villagra, attached as Exhibit 1 to the Jackson Declaration ("Amaya Depo."), 83:25-84:5, 133:5-134:22; Deposition of Anibal Silva, attached as Exhibit 2 to the Jackson Declaration ("Silva Depo."), 102:22-109:6.

personal devices during working hours; (3) Employees with a personal cell phone that is not approved by management for work-related use should not make or accept communications during working hours; and (4) Employees who choose to use their personal devices for work-related functions (e.g., accessing Kronos) do so with the understanding that such use is voluntary and not a business requirement.[5]

Finally, the various CBAs that cover most of Menzies' non-exempt workforce specifically address Menzies' obligation to provide all equipment necessary to perform their work. [TB Decl., ¶5, Exs. A-G.] Employees understand they are not required to use their cellular phones and that Menzies provides them the necessary equipment, such as radios and company mobile phones, to perform their work.[6]

### D. Many Putative Class Members Work In Positions With Regular Schedules Unimpacted By Flights, And Even Those Who Do Not Work In Such Positions Refute Plaintiffs' Claims Of Unwritten Practice

Even Plaintiffs begrudgingly concede in their Motion that Menzies maintains

---

[5] Amaya Depo., 152:15-153:14, 159:21-160:20, 162:9-25; Silva Depo., 21:1-4, 21:11-13, 22:6-22, 84:19-85:3, 101:16-102:18.

[6] *See generally* Declarations of Employees in Support of Defendant Menzies Aviation (USA), Inc.'s Opposition to Plaintiffs' Motion for Class Certification ("Menzies Declarants"), which is comprised of the following declarations: (1) Declaration of Jason Abbitt ("Abbitt Decl."); (2) Declaration of Mary Afuhaamango ("Afuhaamango Decl."); (3) Declaration of Victoria Aluni ("Aluni Decl."); (4) Declaration of Pamela Bartel ("Bartel Decl."); (5) Declaration of Christopher Black ("Black Decl."); (6) Declaration of Mary Antonette Blanco ("Blanco Decl."); (7) Declaration of Louis Burke ("Burke Decl."); (8) Declaration of Kristianne Del Mundo ("Del Mundo Decl."); (9) Declaration of Phuong Do ("Do Decl."); (10) Declaration of Michael Eswagen ("Eswagen Decl."); (11) Declaration of Wesley Faatalale ("Faatalale Decl."); (12) Declaration of Fangia Finau ("Finau Decl."); (13) Declaration of Tevita Fineanganofo ("Fineanganofo Decl."); (14) Declaration of Antonio Funes ("Funes Decl."); (15) Declaration of Florentina Gauro-Salud ("Gauro-Salud Decl."); (16) Declaration of Elva Gonzalez ("E. Gonzalez Decl."); (17) Declaration of Jose Gonzalez ("J. Gonzalez Decl."); (18) Declaration of Brayan Guzman ("Guzman Decl."); (19) Declaration of Holly Hui ("Hui Decl."); (20) Declaration of Sosefo Kafoa ("Kafoa Decl."); (21) Declaration of Shyrin Kumar ("Kumar Decl."); (22) Declaration of Erick Maldonado ("Maldonado Decl."); (23) Declaration of Damen Mamea ("Mamea Decl."); (24) Declaration of Joseph Marion ("Marion Decl."); (25) Declaration of Andres Martinez ("Martinez Decl."); (26) Declaration of Jose Alonso Orozco ("Orozco Decl."); (27) Declaration of Roberto Pangalilingan ("Pangalilingan Decl."); (28) Declaration of Brian Perez ("Perez Decl."); (29) Declaration of Todd Preble ("Preble Decl."); (30) Declaration of Juan Ramirez ("Ramirez Decl."); (31) Declaration of John Soto ("Soto Decl."); (32) Declaration of Nicole Stewart ("Stewart Decl."); (33) Declaration of Sitaniselao Tuipoluto ("Tuipoluto Decl."); (34) Declaration of Unaloto Uhila ("Uhila Decl."); (35) Declaration of Jesus Pool Yam ("Yam Decl."); and (36) Declaration of Bao Bao Yang ("Yang Decl.").

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
-5-
Case No. 2:22-cv-05915-MCS-MARx

facially lawful written meal and rest period policies—policies Amaya herself admits are "very good." [Amaya Depo., 154:6-7.] Unable to rely on policies to satisfy their class certification burden, Plaintiffs construct their class theories upon a purportedly unwritten policy and practice of "authorizing breaks contingent on changing airline schedules, and foregoing breaks until work is completed." [Dkt. 41-1, p. 6.] The massive and obvious problem is that many job classifications work in positions unaffected by airline schedules and have predictable schedules and hours. And even for those who do not, Menzies can offer extensive evidence showing that Plaintiffs' theory of liability—a supposed unwritten policy and practice—does not apply to many employees who explicitly refute what Plaintiffs contend and demonstrates the existence of complete merits and procedural defenses to the claims Plaintiffs assert permeate Menzies' non-exempt employees. [*See generally* Menzies Declarants.]

### 1. Dozens Of Menzies Classifications Have Positions With Regular Schedules That Permit Daily Compliant Breaks

Tethered together only by a non-exempt classification, Plaintiffs' class definition includes dozens of positions where the employees' work is insulated from aircraft movements. [Dkt. 41-1, p. 17; SAC, ¶30.] It includes administrative office personnel, such as accounting, human resources, and training and safety personnel who work office and desk jobs.[7] It includes workers at a fuel farm who follow a virtually identical schedule everyday—including people whose job duties are limited to monitoring fueling systems from a computer.[8] It includes individuals who work in cargo warehouses or administrative roles away from the passenger terminal and have a predictable schedule.[9]

---

[7] *See, e.g.*, Kumar Decl. ¶¶ 2, 13, 17, 22 (Health, Safety, and Environment Supervisor at SFO whose work is "generally not affected by flight schedules or flight delays"); Yang Decl. ¶¶ 2, 17, 22 (Administrative Assistant at SFO with "fixed" and "regular" work schedule); Gauro-Salud Decl., ¶¶ 2, 6 (Accounting Clerk in San Diego); Bartel Decl., ¶¶ 2, 10-11 (Administrative Assistant at LAX); Maldonado Decl. ¶¶ 2, 9-10; Afuhaamango Decl., ¶¶ 2, 10, 13, 20 (HR Administrative Assistant at SFO who usually takes meal breaks at the same time each day); Del Mundo Decl., ¶¶ 2, 29.
[8] *See, e.g.*, Do Decl., ¶¶ 2, 11, 29 (Fuel System Operator at SFO).
[9] *See, e.g.*, Yang Decl., ¶¶ 2, 17, 22 (Administrative Assistant at SFO); Gauro-Salud Decl., ¶¶ 2, 6 (Accounting Clerk at San Diego); Bartel Decl., ¶¶ 2, 10, 11, 13 (Administrative Assistant at LAX).

Given the predictable nature of their work, it comes as no surprise that these individuals refute Plaintiffs' contentions, as they acknowledge receiving their meal periods and rest breaks. Indeed, some of these individuals even acknowledge they take their meal breaks and rest periods at essentially the same time every day.[10] Even those who might occasionally miss a break for whatever reason receive premium pay and deny having ever missed a break they wanted to take without receiving premium pay.[11] The predictable nature of their work clearly refutes the fact that as putative class members, they are subject to a purportedly unwritten widespread policy and practice of "authorizing breaks contingent on changing airline schedules, and foregoing breaks until work is completed" that this Court can evaluate through common factors based purely on their non-exempt classification. In other words, the hallmark of Plaintiffs' entire meal and rest period theory they want to apply to every non-exempt employee in California is completely inapplicable to large portions of the class Plaintiffs ask the Court to certify. Perhaps it should come as no surprise that Plaintiffs fail to account for the wide spectrum of varying experiences because they both admit that they have no knowledge of positions or locations other than their own and have not made any effort to investigate them.[12]

## 2.    Menzies Employees Take Breaks And Receive Premiums

Even where employees work in positions where aircraft movements impact their work schedule, Plaintiffs' brazen attempt to simplify their workflows into a purported unwritten policy and practice of "authorizing breaks contingent on changing airline schedules, and foregoing breaks until work is completed" and trying to tie all 70-something non-exempt positions together on that basis cannot stand up to the operational realities of Menzies' business. Plaintiffs' approach still offers no solution for how the Court could properly tie together groups of employees covered by multiple different collective bargaining agreements. It offers no explanation for how fuelers at a smaller

---

[10] *See, e.g.*, Aluni Decl., ¶¶ 11, 18 (Crew Service Team Lead at Ontario).
[11] *See, e.g.*, Gauro-Salud Decl., ¶3; Do Decl., ¶12.
[12] Silva Depo., 26:1-3, 63:13-65:5, 88:17-89:6, 91:1-10, 92:1-13; 94:20-25, 95:19-96:1, 123:1-10, 125:5-16; 145:10-15, 146:16-24, 147:21-25; Amaya Depo., 68:20-69:13, 69:19-25, 77:4-78:2, 94:3-95:1, 103:25-104:3; 161:4-7.

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
-7-
Case No. 2:22-cv-05915-MCS-MARx

airport like San Diego purportedly must be subject to the same kinds of aircraft-related
complexities that individuals at LAX might handle. It radically ignores the fact that
airline delays do not force employees to work non-stop, but instead create "down time"
for breaks because employees are waiting on aircraft they are scheduled to service.[13]

In light of these operational factors that vary from job to job and location to
location, it again should not surprise the Court to see that many of these employees
subject to this purported unwritten policy of denying breaks specifically and directly
refute Plaintiffs' arguments. [*See generally* Menzies Declarants.] Many of these
individuals acknowledge that while they do receive their breaks from Menzies in the
normal course, they also do sometimes miss breaks—and they report and receive the
premium payment for the missed break when it occurs.[14] Many of these individuals
specifically acknowledge how aircraft movements and delays in fact force them to wait
around unable to perform their duties, enjoying the work-free "down time" that results.[15]
And this evidence is not confined to one or two classifications from one airport—it
comes from classifications across *many* jobs at all of Menzies' airports in California.[16]
Moreover, many employees have posted break schedules or are reminded by managers or
supervisors to take breaks.[17] And Plaintiffs themselves concede they cannot refute the
testimony and evidence provided by these scores of Menzies employees about which
Plaintiffs know nothing—indeed, they admit that the purported "unwritten practice" of
denying breaks can only occur where individual managers fail to follow Menzies'
policy.[18] As both other managers[19] and their subordinates attest, Menzies follows its

---

[13] *See, e.g.*, Faatalale Decl., ¶¶ 2, 17 (Fueler at SFO takes breaks during regular down
time); Black Decl., ¶¶ 10, 18 (Quality Control Technician at Ontario with "ample down
time between flights"); Ramirez Decl., ¶¶ 2, 19 (Fueler Supervisor at SFO who always
takes rest breaks, but at different times depending on the day due to down time).
[14] *See, e.g.*, Orozco Decl., ¶¶ 2, 13; Martinez Decl., ¶¶ 2, 11; Funes Decl., ¶¶ 2, 8.
[15] *See, e.g.*, Burke Decl., ¶¶ 2, 18; Kafoa Decl., ¶¶ 2, 19; Preble Decl., ¶¶ 2, 9.
[16] *See, e.g.*, Marion Decl., ¶¶ 2, 18 (Operations Supervisor, SFO); Yam Decl., ¶¶ 2, 20
(Dispatcher, LAX); Funes Decl., ¶¶ 2, 20 (Quality Control Technician, San Diego);
Orozco Decl., ¶¶ 2, 15 (Fueler, Ontario).
[17] *See, e.g.*, Ramirez Decl, ¶ 11; Faatalale Decl., ¶10; Kafoa Decl., ¶ 10; Blanco Decl., ¶9.
[18] Silva Depo., 58:25-59:10; Amaya Depo., 139:4-15.
[19] *See, e.g.*, Deposition of Brian Galindo, attached as Exhibit 4 to the Jackson Declaration
("Galindo Depo."), 74:11-75:9; Deposition of David Funes, attached as Exhibit 7 to the

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
-8-
Case No. 2:22-cv-05915-MCS-MARx

policies and California law and provides meal and rest breaks to employees, paying them premiums when it cannot, making the supposed "unwritten practice" something that requires examination of each manager's team—and Plaintiffs conceded as much during their depositions.[20]  In the face of these operational realities and differences coming from all corners of Menzies' California operations, Plaintiffs assert the Court can simply *assume* that every non-exempt employee can participate in their proposed class alleging meal and rest period violations based on some time records reflecting a late, short, or missed meal without a corresponding meal premium payment. This assumption is wrong. Menzies has provided proof that it has complete merits defenses to many of the supposed claims of these class members—and complete procedural bars to the participation in the class of many of these individuals in the form of ADR Agreements. All these facts demonstrate the massive problem in Plaintiffs claiming they can assert theories *across all non-exempt employees* (many of whom completely refute Plaintiffs' assertions) based on common proof. Menzies has both complete merits defenses for all classifications in Plaintiffs' proposed class and complete procedural defenses to class participation for huge swaths of Plaintiffs' proposed class in the form of mandatory individual arbitration.

## E.    Plaintiffs' Myopic Statistical Analysis And Theory Of An Unwritten Policy Ignore The Operational Reality Of Significant "Down Time"

While Plaintiffs would seemingly have this Court believe that Menzies' employees are subject to an unofficial policy and practice that forces them to work most or even all of a shift without a minute off, under the guise of unpredictable aircraft schedules and delays, the reality is far different. When aircraft schedules vary from plan, the result is often the exact opposite from what Plaintiffs contend—extensive periods of "down time" clearly facilitating the ability for employees to take breaks.  As discussed *supra*, multiple

---

Jackson Declaration ("Funes Depo."), 48:15-50:4, 83:23-84:7; Deposition of Jose Salcedo, attached as Exhibit 5 to the Jackson Declaration ("Salcedo Depo."), 43:11-44:17. 56:11-57:11, 59:12-13.
[20] *See* Silva Depo., 42:2-44:1, 58:25-59:10, 62:9-69:13; 137:7-136:15, 139:25-141:12; Amaya Depo., 69:7-13, 115:13-25, 139:4-15, 166:23-168:2; Deposition of Lizette Medina, attached as Exhibit 6 to the Jackson Declaration ("Medina Depo."), 34:14-37:22; Galindo Depo., 60:5-15.

Menzies employees have explained how this "down time" affects them—for example Fuel Mechanics cannot perform any work until aircraft leave the gate area, meaning they must often wait for as long as an hour relieved of their duties and able to take breaks.

Menzies' objective operational data more than backs up the subjective testimony these witnesses provide. Menzies retained a statistical data expert to test Plaintiffs' meal and rest period theories using operational data that tracks the expected and actual flight schedules, which demonstrates the inadequacy of Plaintiffs' approach to establishing liability based on common proof.[21] Menzies' expert corroborated that Plaintiffs' expert (Mr. Mirangi)[22] does nothing more than provide basic counts of meal break issues in the timekeeping data without providing context or analyzing variables such as job title or location, and that the lack of analysis makes it difficult to assess whether the employees' records show consistent or inconsistent experiences regarding meal breaks. [Crandall Decl., ¶¶ 8, 30.] Mr. Mirangi's failure to analyze meal breaks by location or job title results in a disconnect between the plaintiffs' theory and his report. [Crandall Decl., ¶ 9.] Mr. Crandall observed that not all job titles have an equal likelihood of being subject to client service time windows, which may affect the applicability of the plaintiffs' theory to all employees, and the wide variation in meal period experiences across employees suggests that systematic factors did not prevent employees from taking compliant meal breaks. [Crandall Decl., ¶9.] The data shows that individualized factors, such as employee preference, may be driving the outcomes of missed, short, or late meal breaks for certain employees. [Crandall Decl., ¶¶ 30, 46.]

Menzies' analysis of the timekeeping data reveals a pattern of wide variation across employees in terms of the percentage of shifts with potentially missed, short, or late meal breaks, which indicates that systematic policies, practices, or procedures are not

---

[21] *See* Declaration of Robert W. Crandall, MBA ("Crandall Decl."), ¶2.

[22] Menzies wishes to apologize to the Court for its inadvertent failure to submit a declaration establishing a basis for Plaintiff to seal information, which was due entirely to an oversight by counsel and not an intentional disregard for the Court's instruction or Menzies' commitment to defending the public disclosure of its employees' personal information. [*See* Dkt. 47.]

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
-10-    Case No. 2:22-cv-05915-MCS-MARx

solely responsible for instances of non-compliant meal breaks. [Crandall Decl., ¶ 31.] There is also wide variation across job titles in terms of the percentage of shifts with potentially missed, short, or late meal breaks. [Crandall Decl., ¶ 33.] Different job titles exhibit different patterns, with some recording mostly late meal breaks, some mostly short breaks, some mostly missed breaks, and others having very few meal break issues. [Crandall Decl., ¶ 33.] This variation suggests that *job assignments and duties* may play a role in meal period outcomes. [Crandall Decl., ¶ 33.]  Similarly, there is wide variation across airports in terms of the percentage of shifts with potentially missed, short, or late meal breaks. [Crandall Decl., ¶ 34.] The overall percentage of shifts with issues varies across airports, and the distributions of late, short, and missed meal breaks also differ between airports. This indicates that the *airport location* may be a factor influencing meal period outcomes. [Crandall Decl., ¶¶ 34.]  Studying workflow, work organization, and the typical duration of tasks performed is crucial to understanding whether meal and rest breaks were provided—all factors which Plaintiffs' expert fails to consider in his analysis. Since flight delays or changes may not impact all employees or crews in the same way, Plaintiffs' meal and rest break theories may apply to only a portion of the jobs he studied. [Crandall Decl., ¶9.]

Menzies' expert also reviewed "Manpower Reports" which reflect that timely meal breaks were scheduled for every crew, and that significant "down time" was available for most crews. [Crandall Decl., ¶¶ 11, 40-47.] This detailed analysis compared the scheduled assignments with the timekeeping data and actual flight arrival and departure times from a sampling of flight reports. [Crandall Decl., ¶¶ 40-46.] Examples provided illustrate how different crew members assigned to the same flights may have different meal break records, which demonstrates why individualized inquiry is required to assess the reason why employees servicing the same aircraft had different meal break outcomes. [Crandall Decl., ¶ 43.] Mr. Mirangi's analysis of potential meal break issues fails to examine whether other members of the same crew, who were provided the same break opportunity, recorded timely meal breaks of 30 minutes or more. [Crandall Decl., ¶ 12.]

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
-11-    Case No. 2:22-cv-05915-MCS-MARx

In fact, if some members of a crew recorded a timely break, it is likely that all members
of the same crew were provided a break at the same time. [Crandall Decl., ¶ 13.]
Instances of potentially late breaks need to be evaluated from the perspective of whether
the entire crew was delayed in taking the break or if an individual failed to record their
break at an earlier opportunity. [Crandall Decl., ¶ 13.]

Moreover, the detailed analysis of the flight reports shows significant variations in
the number of flights serviced at each airport, with Los Angeles Airport having an
average of 76.9 flights per day compared to Ontario Airport's average of 3.6 flights per
day. [Crandall Decl., ¶ 37.] The number of flights serviced also varies on a day-to-day
basis at both airports. [Crandall Decl., ¶ 37.] This analysis also reveals variations in the
extent of deviation from estimated flight arrival and departure times at Los Angeles and
Ontario airports. [Crandall Decl., ¶ 37.] The data shows a significantly higher percentage
of timely flights at LAX compared to Ontario airport, which suggests differences in
operational efficiency and performance between the two airports. [Crandall Decl., ¶ 38.]
The average number of labor hours per flight is significantly higher at Ontario airport
compared to LAX, indicating potential differences in workload or operational processes
between the two airports, and also varies over time at both airports. [Crandall Decl., ¶
39.] Finally, Menzies' expert also analyzed reports that show the distribution of
refuelings per employee per day and compares the refueling hours recorded in the Fueler
reports with the timekeeping hours paid to Fuelers. [Crandall Decl., ¶ 48.] Menzies'
expert observed that 94.6% of Fueler days at SFO had fewer than 5 hours of refueling
time, while 95.7% of Fueler days in timekeeping had more than 5 hours paid per day.
[Crandall Decl., ¶ 49.]  As a whole, the data, testimony, and declarations that Menzies'
expert reviewed reflected varying experiences when it comes to meal break, rest break,
and cell phone practices, and exposes the flaws of Plaintiffs' expert report. [Crandall
Decl., ¶¶ 9-20, 28, 39, 46-49, 53-55.]

**F.    Plaintiffs And Their Declarants Ironically Emphasize The Extent To
       Which Menzies Has Individualized Defenses Across The Proposed Class**

The foregoing information makes plain how differences in employee classification, manager, and location impact when and how employees take breaks and what happens when such breaks do not occur. It also emphasizes the scope to which Menzies can show it has complete defenses to Plaintiffs' radically overbroad class whose only unifying guidepost is their non-exempt status. As demonstrated *infra*, the degree to which these individual facts impact any liability analysis <u>and</u> the degree to which Menzies can prove it has individualized defenses (which it has a due process right to present) demand denial of Plaintiffs' Motion. Ironically, Plaintiffs and their declarants themselves reiterate the extent to which individual issues predominate and Menzies has individualized defenses. Plaintiff Amaya admitted she has no role loading passenger baggage onto aircraft— meaning she is bound by her execution of the ADR Agreement disqualifying her from being a class representative. [Amaya Depo., 32:11-36:1, 56:14-18.] Both Plaintiffs are subject to collective bargaining agreements that address Menzies' obligation to provide all necessary business equipment and claim their personal cell phones were necessary equipment to do their work—meaning their cell phone contentions require interpretation of collective bargaining agreements. [Amaya Depo., 43:13-16; Silva Depo., 59:11-61:21.] The existence of these individual defenses not only renders Plaintiffs inadequate to represent the class, it speaks to the degree these same defenses potentially apply across the entire class—an analysis the Court could only conduct person by person.

Plaintiffs' declarants also highlight this critical point. Every single one of them is bound by an ADR Agreement, and many are in classifications that do not work in the vicinity of aircraft or load anything onto aircraft. [TB Decl., ¶8.] Multiple of those individuals are parties to separation agreements with Menzies and have released the claims covered by the class—suggesting that *many* former class members may also have waived their right to participate in the class, something Menzies could only present to the Court for consideration on a person-by-person basis. [*Id.*, ¶9.] And while many of them claimed they rarely took breaks and never received premiums if they missed breaks, Menzies' time and pay records specifically impeach that testimony—the declarants and

Plaintiffs collectively received nearly 1,000 premiums, or an average of 30 meal premiums per individual; in fact, one individual received 319 premiums). [*Id.*, ¶10.] The fact that Menzies can impeach the testimony of these specific individuals again speaks to its potential ability to impeach the claims of any particular class member with that person's objective documentation, data and exploration of how "down time" affected his or her work. As shown *infra*, Menzies has a due process right to present these defenses, and it can only do so person by person, day by day.

## III.   THE COURT SHOULD NOT CERTIFY CLASSES COVERING 70+ JOB CLASSIFICATIONS SUBJECT TO INDIVIDUALIZED FACTORS

Across the entirety of Menzies' population of non-exempt California employees, with no accounting for how the Court can parse through different management teams, job locations, job classifications, or application of ADR Agreements, Plaintiffs seek to certify claims for failure to provide meal periods and failure to provide rest periods. They also appear to seek to "certify a subclass" comprised only of those individuals who were "not provided company-issued cell phones or radios." [Dkt. 41-1, at 8.] None of these claims are proper for class treatment, because even in situations where time records suggest a missed break without corresponding premium payment, every putative class member is subject to individualized defenses that Menzies has a right to present. Moreover, whether individuals took breaks, how they took breaks, whether they properly clocked their break time, whether they voluntarily chose not to break, and whether individual managers affected their breaks are all highly relevant issues that defy uniform examination across 70+ job classifications at multiple airports. That Plaintiffs themselves are subject to these individual defenses, and thus not fit to represent the class, highlights the myriad reasons why class treatment is not proper and the Court should deny Plaintiffs' Motion.

### A.   Rule 23 Requires Courts To Rigorously Analyze Whether Plaintiffs Have Satisfied Their Burden To Show Class Treatment Is Proper

Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). To overcome this presumption, Plaintiff must, among other things, show

there are questions of law or fact common to the class and that the claims of the class representatives are typical of the claims of the class. Fed. R. Civ. Proc., Rule 23(a)(2)-(3). Plaintiffs also bear the burden to show common questions predominate over any issues affecting individuals, such that classwide resolution is a superior means of resolution. Fed. R. Civ. Proc., Rule 23(b)(3); *see Lozano v. AT&T Wireless Servs*., 504 F.3d 718, 735 (9th Cir. 2007). Finally, the proposed class representatives must also prove to the Court they can and will adequately represent the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Courts must conduct a "rigorous analysis" of these factors and carefully hold Plaintiffs to their burden to prove the propriety of class treatment. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) (*quoting General Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

### 1.    <u>Certification Is Improper If Common Issues Do Not Predominate</u>

The "commonality" element requires that the moving party show that each of the class members have suffered the same injury. *Dukes*, 564 U.S. at 349-50. This must be more than merely showing the putative class members "suffered a violation of the same provision of law. . . . That common contention, moreover, must be . . . capable of classwide resolution." *Id.* at 350. In other words, it is insufficient for plaintiffs to only pose a common question; instead, they bear the burden to show that proceeding as a class will result in common answers that may resolve the entire litigation. *Id.*; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011). Plaintiffs also bear the burden to show common questions predominate over any issues affecting individuals, such that classwide resolution is a superior means of resolution. Fed. R. Civ. Proc., Rule 23(b)(3); *see Lozano*, 504 F.3d at 735. "[F]ar more demanding" than commonality, predominance tests whether class treatment "would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 623-24 (1997); *see Castillo v. Bank of Am., NA,* 980 F.3d 723, 730 (9th Cir. 2020). This requires the Court to assess the substantive issues raised by

Plaintiffs and "inquire into the proof relevant to each issue." *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 584 (C.D. Cal. 2008). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually," then common issues do not predominate. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Because predominance is a crucial part of the certification analysis, and the certification analysis must be "rigorous" and might "entail some overlap with the merits of the plaintiff's underlying claim," *Dukes* directs that where an employer has a lawful policy, and liability depends upon individualized practices, certification is improper. *Id.* at 351, 355-58.

## 2.    Adequate Representation Requires Active Participation

In assessing whether the proposed class representative can and will adequately represent the class, a court considers whether the plaintiff: (1) has any conflict of interest with class members; and (2) will prosecute the action vigorously on behalf of the class. *Staton*, 327 F.3d at 957. If the proposed representative's claim asserted individually, and on behalf of the class, is subject to a defense specific to that proposed representative, that renders the proposed class representative categorically inadequate to represent the class on that claim. *See Hanon*, 976 F.2d at 507 (affirming denial of class certification because of defenses unique to the named plaintiff); *see also Beck v. Maximus, Inc.*, 457 F.3d 291, 301 (3d Cir. 2006) ("A proposed class representative is neither typical nor adequate if the representative is subject to a unique defense that is likely to become a major focus of the litigation.").  The responsibilities associated with serving as a class representative and representing others demand that the proposed representative actively participate in the case, understand what it involves and what the duties of class representative entail, and will not rely exclusively upon counsel to direct the litigation. *Brown v. Brewer*, 2009 U.S. Dist. LEXIS 47535, at *13-14 (C.D. Cal. May 29, 2009). If the plaintiff has no concept of the people they purportedly represent, they are not an adequate representative. *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153-54 (N.D. Cal. 1991).

**B.    Plaintiffs' Cell Phone Expenses Claim Cannot Be Certified**

**1.    Plaintiffs Are Subject To Unique Defenses**

Plaintiffs are both subject to unique defenses that preclude a finding of commonality and adequacy. Amaya's claims are subject to mandatory arbitration pursuant to Menzies' ADR Policy, and she is not excluded from coverage under the Federal Arbitration Act. Moreover, both Plaintiffs are covered by CBAs that address business expenses. That means their individual claims necessary require analysis of the CBAs applicable to them and preempt their individual claims.[23] Where an employee's job is covered by a CBA, state law-based claims—even if not based on the CBA itself—are preempted by the federal law where the outcome depends substantially on analysis of the terms of the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11 (1985); *Dep't of Fair Emp. & Housing v. Verizon Cal, Inc.*, 108 Cal. App. 4th 160, 165 (2003). When an employee's state law claim is preempted, it cannot proceed in court and is subject to the grievance and arbitration procedures set forth in the CBA. *Allis-Chalmers*, 471 U.S. at 220-21; *Curtis v. Irwin Indus., Inc.*, 913 F. 3d 1146, 1152 (9th Cir. 2019).

**2.    Common Issues Do Not Predominate**

CBA preemption applies to all class members covered by CBAs that address business expenses, which inherently necessitates a person-by-person analysis to determine whether they are subject to a CBA. Moreover, many witnesses deny having to use their personal phones or say they only do so voluntarily. [*See generally* Menzies Declarations.] The nature of Plaintiffs' theory speaks to lack of commonality.  Plaintiffs propose certifying a "subclass" comprised only of those individuals who were "not provided company-issued cell phones or radios," but provide no plan to resolve this inquiry on a common basis. Instead, the theory inherently requires a trier of fact to ask each individual employee whether they received a company-issued cell phone and, if not,

---

[23] In addition to arguing here that the availability of these defenses renders Plaintiffs inadequate class representatives on these claims, Menzies intends to move for summary judgment on the cell phone expense theory.

whether their duties required the use of a personal cell phone or whether they simply chose—as many employees have attested—to using it for personal reasons like preference or convenience, not necessity. [*Id.*]. These highly individualized issues preclude a finding of predominance, and the Court should deny Plaintiffs' request to certify a "cell phone expense" subclass.

### C. Plaintiffs' Meal And Rest Period Claims Cannot Be Certified

Plaintiffs' meal and rest period claims are not appropriate for classwide treatment because resolution depends on individualized inquiries that predominate over common issues. Both claims are not certifiable because all class members, including Amaya, are subject to unique individual defenses—namely, their agreement to arbitrate claims against Menzies on an individual basis in arbitration. Moreover, the sheer volume of disparate—not common—experience across the spectrum of positions and locations reflected in the dozens of declarations negates a finding of predominance. Plaintiffs' meal and rest claims are also subject to factors that prevent certification of each claim, respectively. Plaintiffs' meal period theory of liability rests upon a misapplication of legal precedent and flawed statistical analysis, while Plaintiffs' rest period theory resorts to misrepresenting evidence and ignoring the reality that the claim depends entirely upon anecdotal evidence that establishes the lack of common experience sufficient to determine liability on a classwide basis.

### 1. Factors That Prevent Certification With Respect To Both Claims

Every putative class member, including Plaintiffs, who adhered to Menzies' arbitration agreement (which is virtually every employee in California) is subject to an individual defense—whether the FAA requires them to submit their claims to arbitration on an individual basis and precludes them from participating in a class action. This inquiry is further complicated by virtue of applying the Supreme Court's recent *Saxon* decision (discussed *supra* at fn.1), which directs a trial court to conduct a highly fact-specific and individualized inquiry into whether that employee's duties are sufficiently tethered to "interstate commerce." Moreover, as Plaintiffs' own declarants reflect,

Menzies has a practice of offering severance to some departing employees, which if accepted precludes them from bringing any claims against Menzies. [TB Decl., ¶9 (six of Plaintiffs' 30 declarants, or 1 in 5, executed a separation agreement).] Finally, the "battle of declarations," which is clearly present, illustrates why common issues do not predominate. [24] Each of these issues alone is sufficient to preclude a finding of predominance; together, they are fatal to Plaintiffs' attempt to certify a bloated class comprised of individuals with highly disparate experiences across a wide spectrum of job classifications and work environments.

### 2.   Factors That Prevent Certification With Respect To Meal Breaks

#### a.   Plaintiffs' Reliance On Donahue Is Misplaced

Plaintiffs' theory that common issues predominate is predicated <u>entirely</u> upon a misapplication of the California Supreme Court's decision in *Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 74 (2021) ("*Donohue*").  In *Donohue*, the California Supreme Court held that time records showing noncompliant meal periods (missed, delayed, or short) raise a "rebuttable presumption" of meal period violations at the summary judgment stage, and not just at the class certification stage.  *Donohue*, 11 Cal. 5th at 75. Where an employer fails to provide time records showing that a meal break was taken, a presumption can arise that the employee was not offered such a break. In that case, an employer's claim that a break was in fact offered but the employee declined it is an affirmative defense that the employer must prove. *Donohue*, 11 Cal.5th at 74-76; *Safeway*

---

[24] *See, e.g., Garcia v. Sun Pacific Farming Co-op., Inc.*, 359 F. App'x 724, 726 (9th Cir. 2009) (affirming the district court's denial of class certification on commonality grounds because "the record evidence—in particular, the conflicting employee declarations submitted by each party—does not establish common wage and hour practices at Sun Pacific[.]") (citations omitted) (alterations in original); *Dudley v. Brookdale Senior Living Cmtys., Inc.*, 2015 WL 12426082, at *5 (C.D. Cal. Mar. 24, 2015) ("When Parties submit conflicting evidence regarding the existence of a common wage and hour practice, courts in this Circuit have denied class certification.") (citing cases); *Rodriguez v. Wal-Mart Assocs., Inc.*, 2022 WL 17882123, at *6 (C.D. Cal. Sept. 16, 2022); *Chavez v. AmeriGas Propane, Inc.*, 2015 WL 12859721, at *14 (C.D. Cal. Feb. 11, 2015); *Gonzalez v. Millard Mall Servs., Inc.*, 281 F.R.D. 455, 463-64 (S.D. Cal. 2012); *Braun v. Safeco Ins. Co. of Am.*, 2014 WL 9883831, at *16 (C.D. Cal. Nov. 7, 2014); *Hadjavi v. CVS Pharm., Inc.*, 2011 WL 3240763, *4-5 (C.D. Cal. July 25, 2011); *Rosales v. El Rancho Farms*, 2012 WL 292977, at *1 (E.D. Cal. Jan. 31, 2012).

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
-19-
Case No. 2:22-cv-05915-MCS-MARx

*Inc. v. Superior Court*, 238 Cal. App. 4th 1138, 1159 (2015) (citing *Brinker Rest. Corp. v. Superior Ct.,* 53 Cal. 4th 1004, 1052 (2012) (conc. opn. of Werdegar, J.).) Plaintiffs fail to appreciate or acknowledge the limitations of that presumption, particularly as applied to the issue of <u>predominance</u>. The California Supreme Court's decision in *Donohue* did not disrupt Justice Werdegar's concurring opinion in *Brinker* (upon which the "rebuttable presumption" jurisprudence is predicated) which explicitly recognized that "individual issues arising from an affirmative defense can in some cases support denial of certification[.]"  *Brinker*, 53 Cal. 4th at 1053. Further, "whether in a given case affirmative defenses should lead a court to approve or reject certification will hinge on the manageability of any individual issues," and the trial court should decide "in the fullness of its discretion" whether "case methods exist to render class treatment manageable." *Id.*, 53 Cal. 4th at 1054-55.

*Post-Donohue,* courts have continued to deny certification of meal period claims, even in the presence of a "rebuttable presumption." For instance, *Gonzalez* v. *HUB Int'l Ltd.*, 2021 WL 3261634, at *5 (C.D. Cal. May 25, 2021), held that *Donohue* "does little to satisfy [plaintiffs'] burden to establish by a preponderance of the evidence that they have satisfied [the] requirements for class certification." As the court explained, "[t]o the extent [p]laintiffs or others felt pressured to skip meal breaks or rest periods, to determined liability would require an individualized analysis that might vary by department, supervisor, and employee. Because liability for missed breaks and rest periods depends on these individualized determinations, [p]laintiffs' challenges to [d]efendants' meal break and rest period policies require individualized determinations." *Id*.  The court in *Howell* v. *Leprino Foods Co.*, 2022 WL 866213, at *9 (E.D. Cal. Mar. 23, 2022), adopted the *Gonzalez* analysis: "As *Donohue* itself recognizes, 'If the records are incomplete or inaccurate—for example, the records do not clearly indicate whether the employee chose to work during meal periods despite bona fide relief from duty—then the employer can offer evidence to rebut the presumption.'" *Id.* (quoting *Donohue,* 11 Cal. 5th at 7). As rebuttal, Leprino cited its policy and "employees who state that Leprino

did not stop them from taking their meal breaks by the fifth hour." *Id.* Thus, "[r]ather than demonstrating the existence of a uniform policy of depriving employees of timely meal breaks, the evidence before the Court present[ed] numerous possibilities as to why Leprino's rounding and attendance policies *may* cause untimely meal breaks during a given shift. This evidence [was] insufficient for the Court to conclude that Leprino denied its employees the opportunity to take timely meal breaks on a classwide basis." *Id.* (emphasis in original) (citation omitted). A series of other decisions have denied class certification based on similar reasoning,[25] and carry through case law from before *Donohue*.[26] Accordingly, the Court should reject Plaintiffs' myopic and simplistic presentation of *Donohue* and adhere to the long line of case precedent that protects Menzies' due process right to present individualized defenses that preclude a finding of predominance, regardless of any "rebuttable presumption" that arises from an uninformed review of time records that do not allow a trier of fact to determine *why* a meal period was late, short, or skipped. *See, e.g., Mendoza v. Home Depot, U.S.A. Inc.*, 2010 WL 424679, at *10 (C.D. Cal. Jan. 21, 2010) (finding that defendant's "due process right to

---

[25] *See also Valencia v. VF Outdoor*, 2022 WL 4397084, at *12 (E.D. Cal. Sept. 23, 2022), *report and rec. adopted*, 2022 WL 17343864 (E.D. Cal. Nov. 30, 2022) (where policy "facially . . . is compliant . . ., unless [p]laintiff can provide substantial evidence that the policy was consistently applied to deprive employees of [meal] breaks free of employer control, individual, rather than common questions will predominate.") (quoting *Christensen v. Carter's Retail*, 2021 WL 493224, at *11 (C.D. Cal. Oct. 21, 2021)) (citing *In re AutoZone, Inc. Wage & Hour Emp. Pracs. Litig.*, 789 F. App'x. 9, 11 (9th Cir. 2019)); *McCarty v. SMG Holdings, I, LLC*, 2022 WL 913092, at *6 (N.D. Cal. Mar. 29, 2022); *Wallis v. Greyhound Lines*, 2022 WL 971954, at *7 (C.D. Cal. Mar. 30, 2022); *Wilson v. Pactiv LLC*, 2021 WL 5818492 (C.D. Cal. Dec. 3, 2021) (same) (quoting *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 641 (N.D. Cal. 2010); citing *Castillo v. Bank of Am. Nat'l Ass'n*, 2019 WL 3818954, at *10 (C.D. Cal. July 16, 2019)).

[26] *See, e.g., Castillo*, 2019 WL 3818954, at *10 (despite 30% of time records creating a rebuttable presumption, denying class certification because plaintiff failed to show that "the reason underlying a meal break violation was common to the class" and the employer provided "numerous declarations demonstrating that [employees] received compliant meal breaks pursuant to the Bank's policy"); *see also Owino v. CoreCivic, Inc.*, 2020 WL 1550218, at *20, 25 (S.D. Cal. Apr. 1, 2020); *Washington*, 271 F.R.D. at 641-42; *Rojas-Cifuentes v. ACX Pac. Nw. Inc.*, 2018 WL 2264264, *5-7 (E.D. Cal. May 17, 2018) (denying certification where even data showing over 60% of meal periods were non-compliant did not reflect on "numerous possibilities [of] why" and "say nothing about whether an employee failed to clock out for a meal period, or if they forgot to clock out for a meal period at the actual start of the meal period"); *Zayers v. Kiewit Infrastructure W. Co.*, 2017 WL 4990460, at *3-4 (C.D. Cal. Oct. 26, 2017).

DEFENDANT'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION
-21-
Case No. 2:22-cv-05915-MCS-MARx

raise affirmative defenses as to individual plaintiffs . . . in conjunction with the individual

nature of damages . . . makes it difficult to see how class certification would substantially

benefit the court").

### b. *Extensive Individual Defenses Exist, Negating Predominance*

Menzies has introduced extensive evidence of its compliant meal period policies

and practices. Plaintiffs' limited and often inconsistent evidence to the contrary does

nothing more than lend further support to the conclusion that common issues do not

predominate—for every declarant Plaintiff puts forward who claims they could not take a

meal period due to schedule disruptions and did not receive a meal period premium,

Menzies offers a competing declarant with the opposite experience, reflecting the extent

to which "common proof" is unavailable and the necessity of individualized inquiries.

The Court should deny certification of Plaintiff's meal period claim.[27]

### 3. <u>Factors That Prevent Certification With Respect To Rest Breaks</u>

### a. *Plaintiffs Misrepresent Menzies' Policies And Practices*

Plaintiffs cannot fabricate a common fact by twisting the evidence to say it's

something that it's actually not. The fact that Plaintiffs have lied to the Court about the

evidence speaks to the fact that they know there is no common evidence available to

assess the theory. Plaintiffs' rest period claim is even less susceptible to common proof

than their meal period claim, rendering it similarly unsuitable for resolution on a

classwide basis. Plaintiffs contend that notwithstanding Menzies' facially lawful rest

period policy, it had "no policy, procedure or mechanism by which employees could

request or otherwise obtain rest premium wages." [Dkt. 41-1, p. 13.] Plaintiffs do not

even attempt to argue that Menzies' rest period policy is facially unlawful. Instead, they

claim that "Menzies failed to notify Employees of the right to an extra hour of pay when

---

[27] Because no commonality exists on these facts, the Court need not address the other
Rule 23 requirements or Plaintiffs' derivative claims. Even so, Plaintiffs do not meet
Rule 23(a)(3)'s typicality requirement, which requires that the representatives' claims
and defenses be "typical" of those of the putative class. The purpose of typicality is to
ensure that "the interests of the class members will be fairly and adequately protected in
their absence." *Falcon*, 457 U.S. at 157 n.13. The factual differences between the
Plaintiffs' evidence and that of Menzies' declarants show that typicality is absent here.

they miss any of their 10-minute rest breaks." [Dkt. 41-1, p. 13.] They further claim—without citing any evidence whatsoever—that "Defendant Menzies acknowledges that there are instances when employee rest breaks are missed due to uncertainty of flight schedules, coupled with Menzies' practice of foregoing breaks unless and until all work has been completed for its airline customers." [*Id.*] Both propositions lack evidentiary support, and are contradicted by both Menzies' written policies, Plaintiffs' sworn deposition testimony, and the testimony and attestation of Menzies' witnesses and declarants. Amaya unequivocally admitted that Menzies informed her of her right to rest breaks, right to rest break premiums if Menzies failed to provide her with a required rest break, and that she could use the missed punch form to request a rest period premiums—all of which are clearly communicated in Menzies' written policies. [Amaya Depo., 133:5-134:22.] Plaintiffs also falsely state that Menzies decided "not to provide any procedure for Employees to request or otherwise obtain Rest Premium wages," which they contend is supported by the fact that Menzies does not maintain a separate payroll code for rest period premiums. Menzies' PMK witness addressed this issue head on during her deposition, explaining that Menzies' policy and practice is to pay rest period premiums to employee who use the missed punch form to report that they missed a rest period to which they were entitled. [PMK Depo., 176:15-177:3.] She further explained that Menzies utilizes the same payroll code for rest periods as it does for meal periods because it has the "same functionality" and pays the "same amount." She further testified that "if an employee has requested [a rest period premium], then I'm certain we paid [it.] [PMK Depo, 177:22-25.] The Court should ignore Plaintiffs' blatant misrepresentations.

### b.    *Commonality Is Impossible*

Plaintiffs claim—without citing any evidence—that "Menzies acknowledges that there are instances when employee rest breaks are missed due to uncertainty of flight schedules, coupled with Menzies' practice of foregoing breaks unless and until all work has been completed for its airline customers." [Dkt. 41-1, p. 13.] The actual evidence contradicts this claim in its entirety. First, each of the five Menzies' managers (including

its PMK) that Plaintiffs deposed uniformly attested to *always* providing rest periods.[28] Second, Menzies' declarants uniformly attest to receiving regular rest periods which are facilitated, in part, by regular periods of prolonged "down time," as further examined and confirmed by Menzies' data expert.  Menzies' compliant written rest period policies coupled with extensive evidence of regular adherence to them forecloses Plaintiffs from establishing that common issues predominate. Plaintiffs rely solely on anecdotal evidence in the form of testimonial evidence which Menzies has directly contradicted with its own declarations, thereby establishing the predominance of individualized inquiries and analysis. Accordingly, the Court should deny certification.

### D.    PLAINTIFFS ARE NOT ADEQUATE REPRESENTATIVES

Plaintiffs' admissions regarding their lack of engagement in this action and understanding of their role in it, and the fact that they are subject to unique defenses indicate that they cannot and will not adequately fulfill the responsibilities a class representative must fulfill. The Court should therefore not certify any class with Plaintiffs as representatives. The responsibilities associated with representing others demand that the proposed representative actively participate in the case, understand what it involves and what the duties of class representative entail, and will not rely exclusively upon counsel to direct the litigation. *Brewer*, 2009 U.S. Dist. LEXIS 47535, at *13-14; *Welling v. Alexy (In re Cirrus Logic Sec.)*, 155 F.R.D. 654, 659 (N.D. Cal. 1994).  If the plaintiff has no concept of the people he purportedly represents, he is not an adequate representative. *Burkhalter*, 141 F.R.D. at 153-54. During their depositions, both Plaintiffs admitted that they have not undertaken *any effort whatsoever* to investigate the allegations they are making on behalf of individuals employed in other positions than themselves, or located at other worksites other than LAX. [Amaya Depo., 94:3-95:1; Silva Depo., 145:6-147:25.] Both Plaintiffs admitted that their personal knowledge and experience is limited to their positions (Passenger Service Agent and Ramp Agent) and

---

[28] Salcedo Depo., 59:12-13; Medina Depo., 67:25-68:5; Funes Depo., 96:25-98:8; Galindo Depo., 74:12-75:9; PMK Depo., 187:15-188:8.

work location (LAX). Additionally, Silva admitted during his deposition—taken just days prior to Plaintiffs' filing their Motion for Class Certification—that he had *never read the FAC* adding him as a proposed class representative. [Silva Depo., 66:11-68:5.] Plaintiffs' general failure to execute their role as class representatives coupled with their total lack of understanding of the working conditions of other employees establishes their inadequacy to serve as class representative. Plaintiffs' ignorance of their role and lack of engagement in this action belie their adequacy as class representatives. They have not engaged in the actions expected of an adequate representative and not taken an active role in the litigation necessary to otherwise check the unfettered discretion of their counsel. *Brewer*, 2009 U.S. Dist. LEXIS 47535, at *13-14; *Welling*, 155 F.R.D. at 659; *Burkhalter*, 141 F.R.D. at 153-54.  Moreover, a class representative whose individual claims are subject to unique defenses that could become a focus of the litigation cannot qualify as an adequate class representative. *Hanon*, 976 F.2d at 508; *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017). Employees who signed arbitration agreements must be excluded from the class, such that any proposed representative subject to an arbitration agreement could not adequately represent the class. *See, e.g., Boumaiz v. Charter Commc'ns LLC*, 2021 WL 2189481, at *3 (C.D. Cal. May 19, 2021).

## E. CONCLUSION

For the foregoing reasons, the Motion does not satisfy Rule 23's requirements. The Court should therefore deny the Motion in its entirety.

DATED:  June 12, 2023

FOLEY & LARDNER LLP
Christopher Ward
Kevin Jackson


/s/ Christopher Ward
‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Christopher Ward
Attorneys for Defendant
MENZIES AVIATION (USA), INC.