CHRISTOPHER WARD, CA Bar No. 238777
    cward@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE:   213.486.0065

KEVIN JACKSON, CA Bar No. 278169
    kjackson@foley.com
**FOLEY & LARDNER LLP**
11988 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2594
TELEPHONE: 858.847.6700
FACSIMILE:   858.792.6773

Attorneys for Defendant
MENZIES AVIATION (USA), INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and ANIBAL SILVA, an individual; on behalf of themselves and others similarly situated,<br><br>                              Plaintiffs,<br><br>            vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>                              Defendants. | Case No. 2:22-cv-05915-MCS-MARx<br><br>**DECLARATION OF ROBERT W. CRANDALL IN SUPPORT OF DEFENDANT MENZIES AVIATION (USA), INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:      July 24, 2023<br>Time:      9:00 a.m.<br>Ctrm.:     7C, 7th Floor<br>Judge:     Hon. Mark C. Scarsi<br><br>Complaint Filed:  August 19, 2022<br>FAC Filed:        August 30, 2022<br>SAC Filed:        May 9, 2023 |

DECL ISO OPPOSITION TO MOTION FOR CLASS CERTIFICATION
Case No. 2:22-cv-05915-MCS-MARx

## DECLARATION OF ROBERT CRANDALL

I, Robert Crandall, declare as follows:

1.      I have been retained by counsel for defendant Menzies Aviation Group (USA), Inc. ("Menzies"), to provide my expert opinions in connection with the matter of Amaya et al v. Menzies Aviation, Inc. et al.  I maintain a reasonable degree of certainty of the opinions and conclusions stated herein.  I have personal knowledge of the facts contained in this declaration, and if called upon as a witness, I could and would competently testify thereto.

## I.    ASSIGNMENT

2.      I have been retained by counsel for defendants to review the available Menzies' data and documents, testimony, Plaintiffs' motion for certification and supporting expert report, and other relevant information for the purpose of evaluating: 1) whether there is a disconnect between Plaintiffs' theory that meeting contractual airline operations requirements that may change based on early or delayed arrival and departures resulted in meal break issues where a premium was owed and not paid; 2) whether Plaintiffs' expert failed to study any flight operations data showing scheduled, actual, and estimated arrival and departure times in connection with assessing Plaintiffs theory; 3) whether Plaintiffs' expert failed to study workflow, how work was organized, and the typical duration of the tasks performed in connection with studying Plaintiffs' the impact of flight operations on employees' opportunities to take meal and rest breaks; 4) whether Plaintiffs' expert has failed to address whether a compliant meal break was *provided*  after considering the downtime between flights that is built into the schedule or occurs at different points in the day; 5) whether it is likely that employees and supervisors are aware when flight operations vary from schedule and have opportunities to make adjustments; 6) whether Plaintiffs' expert's analysis fails to consider Menzies  employees are broken out into several "crews" who are tasked with servicing particular aircraft together, and are *provided* the opportunity to take breaks together; 6) whether an allegation that unscheduled changes in flight operations prevented employees from taking meal and rest breaks suggests a day-by-day, shift-by-shift analysis is necessary; 7) whether the "May Fly" data shows there is wide variation in the volume of flights across airports, 8) whether the "May Fly" data shows there is day-by-day variation in the volume of flights across airports and across days at the same airport; 9) whether the "May Fly" data shows there is variation in the extent

of deviation from scheduled flight operations across shifts on the same day at the same airport; 10) whether there is wide variation across employees in terms of the percentage of meal eligible shifts where the timekeeping records show a *prima facie* meal break issues; 11) whether taking the declaration testimony provided to date at face value suggests that employees' experiences varied; and, 12) whether Mr. Marangi's damages analysis is premature if the question is whether employees were provided the opportunity for a timely 30 minute meal break, were not authorized and permitted rest breaks, and use of personal cell phones at work was *necessary* in connection with their job.

## II.    **QUALIFICATIONS**

3.      I am a Partner at Resolution Economics LLC, a firm whose activities include conducting labor studies, performing economic and statistical analyses, and providing complex data analysis in connection with litigation and non-litigation issues.  I have been retained in an expert or consulting capacity in more than 500 class-action matters alleging wage and hour violations under the federal Fair Labor Standards Act and other state laws, including hundreds of matters involving alleged wage and hour violations under various provisions of the California Labor Code.  In connection with this work, I have examined the payroll and timekeeping practices of hundreds of employers.  I have also been involved in numerous projects where the objective was collecting and analyzing data related to the work activities of groups of workers through the use of scientific surveys, time-and-motion studies, and other forensic data studies.  I have also been asked to perform similar studies outside of the litigation context. In addition, I am frequently asked to review and comment upon the surveys and other studies conducted by other experts.  Finally, my work has often called for analysis of survey data in the context of labor economics issues, as well as in connection with conducting statistical analyses of allegations of employment discrimination. I hold an M.B.A. from Loyola Marymount University, and a B.A. degree in History from the University of Southern California.  I have been qualified as an expert witness in both federal and California state Courts.  My resume and testimony over the past four years is attached to this report as Attachment A.  My hourly rate is $800 per hour, which is the rate I customarily charge for both consulting work and expert testimony.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

### III.  DATA RELIED UPON

4.    There are two sources of Human Resources ("HR") data that were reviewed and analyzed in connection with the analyses reported herein.  The first type of HR data reviewed is from Menzies' payroll systems.  The payroll data provides information related to each employee's bi-weekly paycheck earnings and is available for the period spanning from 8/10/2018 to 3/3/2023.  In total, payroll data is available for 224,621 pay periods worked by 5,466 employees.  The second source of HR data reviewed and analyzed is timekeeping data.  The timekeeping data provides the punch in and out records for every shift worked between 6/10/2019 and 12/31/2022.  In total, there is timekeeping data related to 1,101,365 shifts worked by 4,321 employees at 6 airports.   While one can use the timekeeping data to identify what shift a given employee worked at a particular airport, it does not provide the specific crew assignment for the day.

5.    In addition, I have been provided class list data that shows employment dates, job titles, work location, home address, and employment status. I also received May Fly Report data which contains daily flight information including scheduled and actual arrival/departure time for 1,974 days between 1/1/2018 to 5/28/2023 for. Lastly, I reviewed daily Manpower reports that show each crew's work assignment and scheduled breaks for 146 days at LAX between 1/17/2022 to 6/4/2023.

### IV.  INTRODUCTION

6.    It is my understanding that Plaintiffs allege that Menzies failed to provide timely 30-minute meal breaks and rest breaks for its California based airport staff operating out of airports located in Los Angeles (LAX), San Francisco (SFO), Long Beach (LGB), Burbank (BUR), Orange County (SNA), San Diego, (SAN), and Ontario (ONT).   More specifically, Plaintiffs' Motion for Class Certification presents the following theory for what caused meal and rest break issues:

"Defendant Menzies Aviation (USA), Inc. (hereafter, "Menzies") routinely compelled their nonexempt employees (hereafter "Employees") to forego state-mandated meal and rest periods in order to complete work within time limits imposed by Menzies' airline customers. Adhering to its marketing motto of "Excellence from Touchdown to Takeoff," Employees abided by their managers' directive to refrain from taking meal or rest breaks until a specific phase of work is

completed: to get aircraft positioned after landing, unloaded, cleaned, re-loaded, boarded, re-fueled and eventually towed out for takeoff." [1]

7.      One potential issue with Plaintiffs' meal and rest break claims is that the operational information evaluated to date suggests employees may have significant down time before, between, and after flight services are performed. For employees working in roles consistent with Plaintiffs' theory, the downtime presents a problem because it represents an opportunity to take a meal or rest break.  For example, suppose a crew of ramp employees were scheduled to start work at 7:00 AM, and the first aircraft they are assigned to service arrives at 10:00 AM and then departs at 11:30 AM.  The second aircraft the ramp crew is assigned to service arrives at 1:30 PM and departs at 2:15 PM and then the crew clocks out of for the day at 4:30 PM.  Under this scheduling scenario, the are several periods of downtime when there is no aircraft to service including: the 2.75 hours period between shift start at 7:00 AM and first arrival at 9:45 AM, the 2-hour period between 11:30 AM and 1:30 PM, and the 3 hour and 15-minute period between the departure of the last flight and the end of the shift.   If the employees assigned to the crew clock out for their meal break between 11:30 AM and 12:00 PM, then their records would show a timely meal break.  However, suppose one or two members of the crew clock out at 12:15 PM, then the time records will show a "late" meal break even though the *opportunity* for a timely meal break was *provided* 45 minutes prior to when the employees recorded that they started their break. Another example of timekeeping records not accounting for meal break opportunities would be the same timing fact set as above, but instead the recorded meal break was from 11:45 AM to 12:14 PM, which would result in a 29-minute meal break.  However, there was no plane at the gate for the ramp agent to service and the next plane was not due to arrive until 1:30 PM, which is approximately 1.25 hours after the employee clocked-in early by 1 minute.  Finally, suppose what happens if no meal break is recorded at all over the course of a shift.   Clearly, the *opportunity* for a meal was *provided* given the actual flight schedule for the day.

---

[1] Plaintiffs' Motion for Class Certification p. 1.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

8.      In support of Plaintiffs' meal break claims, Plaintiffs' expert provides basic counts of the number of facial meal break issues he identified in the timekeeping data without providing context or much of anything else in the way of information.  For example, Mr. Marangi did not provide his meal break statistics by job title, location, or any other variable that could be used to assess whether the employees' records show consistent or inconsistent experiences.  Had he done so, it would have become evident that there is considerable variation across employees, across locations, and across job titles in terms of the percentage of shifts where employees recorded potentially "short" or potentially "late" meal breaks or failed to record a meal break at all.

9.      Mr. Marangi's failure to present meal break analysis by location or job title results in a disconnect between the theory stated in Plaintiffs' motion and Mr. Marangi's expert report.  Had he looked at the job titles at issue, he would have determined that not every job title in the data he studied has an equal likelihood of being subject to a client service time window.  In other words, Plaintiffs' meal and rest break theories may apply to only a portion of the jobs he studied.  Mr. Marangi also fails to provide an analysis of the duration of aircraft servicing events or how often Menzies's was close to an airline "time limit" during which the service would be performed.  Thus, his analysis fails to address Plaintiffs' theory that pressure to complete work within an airliner's "time limits" resulted in meal and rest break issues.

10.      Translating Plaintiffs' theory into expert parlance, Menzies crews were assigned specific tasks associated with turning around an aircraft including positioning aircraft after landing; unloading,; cleaning; re-loading; boarding; re-fueling; and eventually towing out for takeoff, and employees were not *provided* rest and meal break opportunities because of "time limits" to complete specific tasks that imposed by airlines.  However, Plaintiffs' expert Mr. Marangi presents no analysis that addresses Plaintiffs' theory.  He studies no data nor presents any analyses regarding how flights are scheduled, how specific crews are scheduled and assigned to various flights, or the duration of the specific activities the crews perform in connection with turning around a plane. Most importantly for Plaintiffs' meal and rest break claims, Mr. Marangi does not address the periods of inactivity before flights, between flights,

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

1    after flights, or after the work task was completed, but the flight has still not left.  Further, Mr. Marangi

2    presents no analysis regarding how often flights are delayed, the nature and extent of the flight delay,

3    which would impact the question of whether the delay likely impacted the timing of employee' breaks.

4

5    11.    Another way to interpret Plaintiffs' theory is that Menzies scheduled "too much" work to

6    be performed such that employees did not have the opportunity to take meal breaks.  However, the daily

7    Manpower reports shows that meal and rest breaks are scheduled and there is significant downtime each

8    shift for most crews.  Mr. Marangi reports that the timekeeping data shows that meal breaks were

9    recorded on 73.4% of the eligible shifts overall.[2]  However, he fails to assess whether shifts with

10   potential "missed" meal breaks were instances where Menzies failed to *provide* the opportunity for a

11   timely meal break.  Indeed, digging a little deeper into days where timekeeping records indicate a *prima*

12   *facie* meal break issue, it becomes apparent that the timekeeping records fail to tell the entire story.  For

13   example, specific crews are supposed to work together to turn around planes and then take breaks

14   together.  Yet, there are instances where some employees on a given crew recorded a meal break and

15   others did not on the same shift.  Given Menzies' crew based breaking practice, if a meal break was

16   recorded by some crew members, then it was likely *provided* to all employees who were assigned to the

17   crew.

18

19   12.    Similarly, Mr. Marangi reports that the timekeeping records show that 0.7% of the

20   timekeeping records show potentially "short" meal breaks of less than 30 minutes. [3]  Yet, he fails to

21   examine whether other members of the same crew, who were provided the same meal break opportunity,

22

23

24   [2] Meal break eligible shifts are shifts that are greater than 5 hours.  It is my understanding that employees may choose to waive first meal breaks when they worked greater than 5 but less than 6 hours or waive second meal breaks when they work shifts that are greater than 10 but less than 12 hours. On

25   pages 6 and 7 of his report, Mr. Marangi identifies a total of 252,251 shifts with a missing first meal break. Given that there was a total of 949,308 meal eligible shifts in the timekeeping received and

26   analyzed, the percent of meal eligible shifts with a missing first meal break is 252,251 / 949,308= 26.6% In other words, the percentage of meal eligible shifts with a recorded first meal break is 73.4%.

27   [3] On pages 6 and 7 of his report, Mr. Marangi identifies a total of 6,188 shifts with a shortened first meal breaks. Given that there was a total of 949,308 meal eligible shifts in the timekeeping received and

28   analyzed, the percent of meal eligible shifts with a short first meal break is 6,188 / 949,308= 0.7%

-6-                                                    DECLARATION OF ROBERT CRANDALL
                                                       2:22-cv-05915-MCS-MAR

recorded meal breaks of 30 minutes or more.  Given the group break practice for each crew, it is unlikely to be the case where some members of a particular crew on a particular day are provided 30 minutes or more for a meal break while other members of the same crew who are taking a break at the same time are not.

13.    Finally, with regards to potential "late" breaks that commence after the 5th hour, if some members of a crew recorded a timely break, then it is likely that all members of the same crew were *provided* a break at the same time.  Thus, instances where potentially late breaks are recorded need to be evaluated from the perspective of whether a given crew was delayed in taking their meal break or whether an individual who was provided an earlier opportunity but failed to record their break at that time.

14.    As noted above, the manpower reports show that Menzies' general practice is to schedule timely 30-minute meal breaks for all crews.   Thus, a timely 30-minute meal break was *provided* per the schedule on every shift.  However, the schedule could deviate because the nature of the work is tied to flight operations when the flights Menzies employees service can arrive early or late relative to schedule and can leave after a delay from its scheduled departure time.   For example, suppose there was a crew tasked with baggage handling and that it took a baggage crew approximately 45 minutes to unload a plane once it arrives.  If the baggage handling crew started their shift at 4:00 PM and were scheduled as follows: 6:15 PM unload flight 1, 7:45 PM meal break, 8:30 PM unload flight 2.  If everything goes to schedule, then the meal break would occur 3.75 hours into the shift and the meal break would end at 8:15, which is 15 minutes before flight 2 arrives.  However, if Flight 1 was delayed 1.25 hours to arriving at 7:30 PM and the unload process took 45 minutes, then there would not be time to take a full 30-minute meal break before Flight 2 arrives at 8:15 PM.  While Plaintiffs' expert may consider this to be a circumstance where a timely 30-minute meal break was not *provided* as scheduled, it is important to note that the crew would have no assignments from when they started their shift at 4:00 PM and when Flight 1 arrived at 7:30 PM.  Assuming that the crew is aware of flight delays, the mitigation opportunity for this hypothetical example would be for the crew to take their meal break from 6:45 PM to 7:15 PM,

-7-                    DECLARATION OF ROBERT CRANDALL
                    2:22-cv-05915-MCS-MAR

which would still provide a 15-minute buffer before dealing with unloading Flight 1.  As evidenced by the example, Mr. Marangi's methodology of simply flagging time records with facial issues may not tell the whole story.

15.     The example also highlights the need to study workflow, how work was organized, and the typical duration of the tasks performed.  Yet, Mr. Marangi's analysis fails to consider how workflow and downtime are properly factored into a case where the primary allegations are related to whether meal and rest breaks are provided.  As described in detail below, the Manpower data shows that on average employees are assigned work for only 51.7% of their worktime.  Applied to an 8-hour shift, this statistic implies that over an 8-hour shift, employees spent 4.14 hours actively servicing aircraft and correspondingly 3.86 hours where the employees are clocked in but have no active aircraft servicing duties.   Whereas, for the remainder of the worktime, the ground operations employees are engaged to wait for the next flight they are assigned to service.  Again, the waiting time should provide ample opportunities for employees to take rest and meal breaks.

16.     As noted above, Menzies' general practice was to schedule meal and rest breaks for all ground operations employees on every shift.  Generally, if operations go according to schedule, then the expected outcome is a timely 30-minute meal break.   However, unscheduled changes in flight operations, such as delayed departures or arrivals or early arrivals vary by airport, by day, and even the time of day.  Thus, to the extent that one must examine what happened from an operational perspective on a given day, would likely require a day-by-day, airport-by-airport, shift-by-shift assessment.  Further, it is important to note that often employees are split up into multiple crews, thus a delay associated with a given flight on a given day likely would not impact all employees who worked that day or even all employees who were on-duty on a shift where a flight was delayed because they may have been assigned to a different crew and serviced different aircraft.

17.     As demonstrated in detail below, there is wide variation across employees in terms of the percentage of meal eligible shifts where the timekeeping records show a *prima facie* meal break issue.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

This variation can be observed across employees, across job titles, across locations, and across employees in the same job title at the same location.  One implication of the variation observed is that it indicates that individualized, person specific, job specific, and shift specific factors are driving meal break outcomes.

18.    Mr. Marangi also presents a damages analysis where he assigns a penalty to each facial meal break issue under the theory that each facial meal break issue creates a rebuttable presumption of a meal break violation.   However, Mr. Marangi's damages analysis is premature because it fails to account for the rebuttal part of the rebuttable presumption. As described in detail below, the jobs in question have significant downtime.  Thus, while it is true that meal break opportunities can shift on any day based on flight operations deviated from schedule, it does not necessarily mean that a timely 30-minute meal break was not *provided* when the timekeeping records indicate a facial meal break issue.  Thus, to reliably address this question will require person-by-person, crew-by-crew, shift-by-shift analysis.

19.    Plaintiffs' rest break theory appears to not challenge Menzies policies.  Indeed, Plaintiffs' motion notes: "Thus, despite paying lip service in written policies to compliance with California's rest-break requirements, Menzies maintained an unofficial policy or common practice of foregoing rest breaks and the resulting premium wages for them."[4]  The problem with Plaintiffs' rest break theory is that it fails to consider that ground operations employees likely have hours of downtime when rest breaks could be taken before, after, or between flights.  In other words, given the downtime it is not surprising that few to no rest break premiums are paid because a premium is only owed if employees were not authorized and permitted to take them, which Plaintiffs acknowledge they were per policy, or the opportunity to take a 10-minute rest break was not provided despite the hours of downtime scattered throughout the shift.

---

[4] Plaintiffs' motion for class certification pp. 2-3.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

20.     Finally, as described of personal cell phones at work was *necessary* in connection with their job.  There are 53 job titles among the employees at issue.  Neither Mr. Marangi nor Plaintiffs' motion explains why a personal cell phone is *necessary* to perform the duties the employee is expected to perform and/or whether they were provided a radio, phone, or other Menzies communication device that would eliminate the need to use a personal cell phone.

## V.     Detailed Analysis of Workflow and Operations Data

21.     The proposed class of employees provides an assortment of aircraft support services from working as ramp agents to cleaning aircraft cabins and re-fueling jets.  Employees roles and operational requirements vary depending on their job assignment.  For example, page 4 of Plaintiffs' motion for class certification describes the following potential work assignments:

- "Ramp handling involves all aspects of the offloading and loading of baggage and cargo, as well as guiding taxiing aircraft when they arrive, securing aircraft with chocks and cones, and towing aircraft out of the gate area for departure."[5]

- "Cabin cleaning involves security checks and cleaning of aircraft after passengers and crew have disembarked, in preparation for new passengers and crew, and the aircraft's departure."[6]

- "Fueling operations consist of fueling aircraft following their arrival in preparation for departure."[7]

- "Passenger services consists of checking in passengers for their flights, facilitating their boarding at boarding gates, assisting with flight operations, and assisting arriving passengers with lost luggage, as well as customs and border-protection documents."[8]

- Cargo-handling business runs the warehouses that handle both inbound and outbound cargo for the airline customers. These Menzies warehouses are where inbound cargo are received, processed, sorted and then delivered to land-transport agents by Menzies' cargo employees, and where they receive, process, and then build up outbound cargo into pallets and containers in

---

[5] Plaintiffs' motion for class certification p. 4  (Cites to 30b6 Depo., pp. 33:12-18, 35:3-12; Deposition of Brian Galindo ("Galindo Depo."), attached as Exhibit 2 to Sayas Decl., at pp. 13:11-23, 15:3-11, 22:17-25:17; Deposition of Jose A. Salcedo Garcia ("Salcedo Depo."), attached as Exhibit 3 to Sayas Decl., at pp. 10:7-21, 11:23-12:7
[6] Plaintiffs' motion for class certification page 4, which cites to Deposition of Lizette Medina ("Medina Depo."), attached as Exhibit 4 to Sayas Decl., at pp. 8:21-11:1.
[7] Plaintiffs' motion for class certification p. 4, which cites to 30b6 Depo., pp. 17:24-18:2, 37:12-16.
[8] Plaintiffs' motion for class certification p. 4 which cites to 30b6 Depo., pp. 33:19-34:24.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

preparation for loading onto aircraft by Menzies' ramp operations.

22.    What is evidenced by the different titles and corresponding responsibilities above is that the bulk of the employees in the proposed class fall into job classifications that generally are assigned distinct mutually exclusive set of tasks where they would be expected to fulfill a specific role in turning around an aircraft with tasks that can performed and completed that are not dependent upon whether and when employees assigned to other tasks start or complete their work.  For example, the ramp employees assigned to baggage handling and guiding duties would start working immediately upon the aircraft's arrival at its assigned gate.  After unloading the bags, the ramp employees may load bags for the aircraft's next flight.  From an operational downtime perspective, ramp employees may have break opportunities before the aircraft arrives, between arrival and departure for long-turnaround flights, and after departure.

23.    Whereas the cleaning crew would not start working on a plane until after the passengers deplane and once the cleaning process is completed have no further role with the flight.  Likewise, fuelers perform a discrete task with a duration that varies based on the amount of fuel the plane takes on. Once the plane is fueled, fuelers have no further role with the flight. From an operational downtime perspective, cleaning crews and fuelers are less impacted by departure delays because their roles are fulfilled, and they have no ongoing duties to assist the aircraft during the departure.

24.    In contrast, passenger services are tied to working active gates for flights in the terminal. Depending on how long it is between turnarounds, passenger services employees may continuously man a gate or may leave a gate and return when it is closer to departure time.  Thus, the potential downtime during the shift for break availability could occur before the aircraft arrives, during a turnaround, or after the aircraft departs.  Finally, cargo handling is a warehousing business where the tasks are more predictable and significantly less dependent upon flight operations.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

25.     The class list file (Menzies 000833) shows a total of approximately 5,462 employees, of which 1,355 were active at the time the list was created.  If the data is filtered to only active employees it provides some insight into the distribution of employees across the airports Menzies services in California, how employees are assigned to various departments/locations within a given airport, and what job titles exist within a given airport or airport sub-location.  Exhibit 1 below presents the number of active employees assigned to each location identified in the data.

**Exhibit 1 - Active Employees by Location**

| Location | Number of Active Employees | Percent of Active Employees |
|---|---|---|
| BUR-ASI | 7 | 0.5% |
| LAX-AER | 141 | 10.4% |
| LAX-ASI (503,528, 576) | 307 | 22.7% |
| LAX-MZS | 412 | 30.4% |
| LGB-ASI | 17 | 1.3% |
| ONT-ASI | 89 | 6.6% |
| SAN-ASI | 71 | 5.2% |
| SFO-AER | 114 | 8.4% |
| SFO-ASI (506, 533) | 111 | 8.2% |
| SFO-MZS | 15 | 1.1% |
| SNA-ASI | 70 | 5.2% |
| **Grand Total** | **1,354** | **100%** |

26.     As shown in Exhibit 1, active employees were assigned to 11 different locations within LAX and SFO, each being divided into 3 sub-locations.  If one were to also include the sub-location code variable, then LAX-ASI would have 3 sub-locations and SFO-ASI would have 2 sub-locations.  Considering Plaintiffs claims, location is important for several reasons.  First, to the extent that Plaintiffs' meal and rest break claims are based the vagaries of potential deviations from flight schedules, then the percentage of days where shifts were potentially impacted by a significant flight delay (+- 30 minutes), or a minor flight delay (+- 10 minutes) vary by location.  Second, each flight delay is localized such that an employee providing information about the frequency of delay at his or her location may not be representative of the frequency of delay at other airports and a given delay at a given location would not necessarily impact all crews at all locations. Third, there is wide variation in the total number of flights serviced by locations as well.  To the extent that the level of business impacts

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

breaks, then the flight level varies by airport.

27.    Within each airport, employees play a wide variety of roles, some of which work directly with Menzies' customers and others that support Menzies' operations. In total, the Plaintiffs' proposed class includes 53 job titles where the underlying job duties vary considerably in terms of duties, where the job fits the leadership structure (line, lead, supervisor), the employees' decision-making authority regarding breaks, and the level of predictability of schedule.  Some jobs directly provide services to Menzies' customers, such as ramp agents, fuelers, and passenger service agents, while other jobs support Menzies' operations. Simply put, it is not the case that every employee in the proposed class would be impacted by the variation in operations driven by changing flight schedules.  Yet, that appears to be the focus of Plaintiffs' Motion for Class Certification.  Exhibit 2 below summarizes the number of active employees by job title.

**Exhibit 2 – Employees by Job Title**

| Job Title | Number of Active Employees | Percent of Active Employees |
|---|---|---|
| Accounting Clerk | 6 | 0.4% |
| Accounts Receivable Clerk | 1 | 0.1% |
| Administrative Assistant | 10 | 0.7% |
| Aircraft Fueler | 283 | 20.9% |
| Baggage Agent | 7 | 0.5% |
| Baggage Coordinator | 3 | 0.2% |
| Baggage Lead Agent | 21 | 1.6% |
| Cabin Services Agent Lead | 6 | 0.4% |
| Cabin Services Agent | 79 | 5.8% |
| Cargo Agent | 75 | 5.5% |
| Cargo Agent Lead | 14 | 1.0% |
| Cargo Handler | 144 | 10.6% |
| Cargo Handler Lead | 19 | 1.4% |
| Cargo Runner | 18 | 1.3% |
| Cargo Screening Agent | 12 | 0.9% |
| Cargo Screening Supervisor | 5 | 0.4% |
| Dispatcher | 13 | 1.0% |
| Dispatcher Lead | 3 | 0.2% |
| Driver/Operator | 16 | 1.2% |
| Driver/Operator Lead | 1 | 0.1% |
| Freighter Agent | 49 | 3.6% |
| Freighter Agent Lead | 2 | 0.1% |
| Fuel Farm Mechanic | 18 | 1.3% |

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

| | | |
|---|---|---|
| Fuel Farm Operator | 55 | 4.1% |
| Fuel Farm Operator Lead | 1 | 0.1% |
| General Worker | 2 | 0.1% |
| GSE Fueler | 6 | 0.4% |
| GSE Lead Mechanic | 4 | 0.3% |
| GSE Mechanic | 36 | 2.7% |
| Inventory Clerk | 8 | 0.6% |
| Lavatory Agent | 4 | 0.3% |
| Lead Aircraft Fueler | 16 | 1.2% |
| Loadmaster | 2 | 0.1% |
| Lost & Found Bag Agent | 2 | 0.1% |
| Maintenance Technician | 5 | 0.4% |
| Operational Excellence Supervisor | 1 | 0.1% |
| Operations Agent | 4 | 0.3% |
| Operations Coordinator | 8 | 0.6% |
| Operations Supervisor | 2 | 0.1% |
| Passenger Service Agent | 50 | 3.7% |
| Passenger Service Lead | 7 | 0.5% |
| Quality Control Tech | 10 | 0.7% |
| Quality Control Tech Lead | 1 | 0.1% |
| Ramp Agent | 158 | 11.7% |
| Ramp Lead Agent | 2 | 0.1% |
| Safety Security Enviro Sp. | 4 | 0.3% |
| Service Desk Agent | 3 | 0.2% |
| SSE Supervisor | 11 | 0.8% |
| Supervisor | 129 | 9.5% |
| Timekeeper | 2 | 0.1% |
| Training Coordinator | 2 | 0.1% |
| Training Supervisor | 13 | 1.0% |
| Turnaround Coordinator | 1 | 0.1% |
| **Grand Total** | **1,354** | **100%** |

28.    Exhibit 2 shows that Plaintiffs proposed class includes 53 job titles where the underlying job duties vary considerably in terms of duties, where the job fits the leadership. Exhibit 3 below breaks out job titles by location and sub-location codes. Primarily the sub-locations exist at LAX and SFO and show how operations are divided and/or vary by airport. For example, Menzies' Burbank operation is mostly a fuel farm with no ramp agents, passenger service agents, cabin service agents, or cargo agents. Whereas, the LAX operation can be broken down into several locations which have different functions in terms of the number of active employees in a given job title and what titles are assigned to a given location.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

**Exhibit 3 – Active Employees by Location and Job Title**

| Location / Location Code / Job Title | Count |
|---|:---:|
| **Location: BUR-ASI / Location Code: 534** | |
| Administrative Assistant | 2 |
| Fuel Farm Operator | 4 |
| Maintenance Technician | 1 |
| **Location: LAX-AER / Location Code: LAXC** | |
| Accounts Receivable Clerk | 1 |
| Administrative Assistant | 1 |
| Cargo Agent | 20 |
| Cargo Agent Lead | 2 |
| Cargo Handler | 21 |
| Cargo Handler Lead | 8 |
| Cargo Screening Agent | 6 |
| Cargo Screening Supervisor | 3 |
| Freighter Agent | 49 |
| Freighter Agent Lead | 2 |
| Safety Security Enviro Sp. | 1 |
| Supervisor | 23 |
| Training Supervisor | 4 |
| **Location: LAX-ASI / Location Code: 503** | |
| Accounting Clerk | 2 |
| Aircraft Fueler | 62 |
| Cargo Agent | 21 |
| Cargo Agent Lead | 3 |
| Cargo Handler | 52 |
| Dispatcher | 6 |
| GSE Fueler | 5 |
| GSE Lead Mechanic | 2 |
| GSE Mechanic | 4 |
| Lead Aircraft Fueler | 6 |
| Quality Control Tech | 6 |
| Supervisor | 14 |
| **Location: LAX-ASI / Location Code: 528** | |
| Aircraft Fueler | 1 |
| Cargo Handler | 1 |
| Dispatcher | 1 |
| Fuel Farm Mechanic | 2 |
| Fuel Farm Operator | 20 |
| Inventory Clerk | 4 |
| Maintenance Technician | 3 |
| Operations Coordinator | 1 |
| Supervisor | 5 |
| **Location: LAX-ASI / Location Code: 576** | |
| Aircraft Fueler | 67 |
| GSE Lead Mechanic | 1 |
| GSE Mechanic | 5 |
| Inventory Clerk | 3 |

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

| | |
|---|---|
| Quality Control Tech | 1 |
| Supervisor | 6 |
| Timekeeper | 1 |
| Training Supervisor | 2 |
| **Location:  LAX-MZS / Location Code: LAXR** | |
| Administrative Assistant | 3 |
| Baggage Agent | 7 |
| Baggage Coordinator | 3 |
| Baggage Lead Agent | 21 |
| Cabin Services Agent Lead | 6 |
| Cabin Services Agent | 70 |
| Cargo Runner | 18 |
| General Worker | 2 |
| GSE Mechanic | 13 |
| Lavatory Agent | 4 |
| Lost & Found Bag Agent | 2 |
| Operational Excellence Su. | 1 |
| Operations Agent | 1 |
| Operations Coordinator | 5 |
| Passenger Service Agent | 45 |
| Passenger Service Lead | 6 |
| Ramp Agent | 152 |
| Ramp Lead Agent | 1 |
| Safety Security Enviro Sp. | 1 |
| Service Desk Agent | 3 |
| SSE Supervisor | 4 |
| Supervisor | 38 |
| Training Supervisor | 5 |
| Turnaround Coordinator | 1 |
| **Location: LGB-ASI / Location Code: 545** | |
| Driver/Operator | 16 |
| Driver/Operator Lead | 1 |
| **Location:  ONT-ASI / Location Code: 480** | |
| Administrative Assistant | 1 |
| Aircraft Fueler | 26 |
| Cabin Services Agent | 9 |
| Cargo Handler | 6 |
| Fuel Farm Mechanic | 1 |
| Fuel Farm Operator | 8 |
| GSE Mechanic | 1 |
| Inventory Clerk | 1 |
| Lead Aircraft Fueler | 3 |
| Loadmaster | 2 |
| Maintenance Technician | 1 |
| Operations Agent | 3 |
| Operations Coordinator | 1 |
| Passenger Service Agent | 5 |
| Passenger Service Lead | 1 |
| Quality Control Tech | 1 |
| Quality Control Tech Lead | 1 |

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

| | |
|---|---|
| Ramp Agent | 5 |
| Ramp Lead Agent | 1 |
| SSE Supervisor | 3 |
| Supervisor | 9 |
| **Location: SAN-ASI / Location Code: 529** | |
| Accounting Clerk | 1 |
| Administrative Assistant | 2 |
| Aircraft Fueler | 45 |
| Dispatcher | 3 |
| Fuel Farm Operator | 5 |
| GSE Lead Mechanic | 1 |
| GSE Mechanic | 4 |
| Lead Aircraft Fueler | 4 |
| Quality Control Tech | 1 |
| Supervisor | 3 |
| Training Supervisor | 2 |
| **Location: SFO-AER / Location Code: SFOC** | |
| Cargo Agent | 34 |
| Cargo Agent Lead | 8 |
| Cargo Handler | 36 |
| Cargo Handler Lead | 10 |
| Cargo Screening Agent | 6 |
| Cargo Screening Supervisor | 2 |
| Operations Coordinator | 1 |
| Operations Supervisor | 1 |
| Supervisor | 14 |
| Timekeeper | 1 |
| Training Coordinator | 1 |
| **Location: SFO-ASI / Location Code: 506** | |
| Accounting Clerk | 2 |
| Administrative Assistant | 1 |
| Aircraft Fueler | 58 |
| Dispatcher | 3 |
| Dispatcher Lead | 3 |
| GSE Fueler | 1 |
| Operations Supervisor | 1 |
| SSE Supervisor | 3 |
| Supervisor | 8 |
| Training Coordinator | 1 |
| **Location: SFO-ASI / Location Code: 533** | |
| Accounting Clerk | 1 |
| Fuel Farm Mechanic | 14 |
| Fuel Farm Operator | 11 |
| Fuel Farm Operator Lead | 1 |
| SSE Supervisor | 1 |
| Supervisor | 2 |
| **Location: SFO-MZS / Location Code: SFOR** | |
| GSE Mechanic | 8 |
| Quality Control Tech | 1 |
| Safety Security Enviro Sp. | 2 |

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

| | |
|---|---|
| Supervisor | 4 |
| **Location: SNA-ASI / Location Code: 525** | |
| Aircraft Fueler | 24 |
| Cargo Agent Lead | 1 |
| Cargo Handler | 28 |
| Cargo Handler Lead | 1 |
| Fuel Farm Mechanic | 1 |
| Fuel Farm Operator | 7 |
| GSE Mechanic | 1 |
| Lead Aircraft Fueler | 3 |
| Ramp Agent | 1 |
| Supervisor | 3 |
| **TOTAL** | **1,354** |

## VI.    Analysis of Timekeeping Data

29.    From the timekeeping data one can determine the hours worked for each shift, as well as the timing and duration of each meal period recorded.  Shifts where no meal period was recorded were flagged as having a potentially "missed" meal period; shifts where the meal period recorded was less than 30 minutes in duration were flagged as potentially "short;" and finally, shifts where the meal period commenced after the fifth hour of work were flagged as potentially "late".  In considering the flagged shifts, it is important to note that the timekeeping data provides information on meal periods recorded but does not directly address the question of whether meal periods were *provided*.  Examining meal break outcomes relative to flight information suggests that there are likely instances when a compliant meal period was *provided*, but the employee, for whatever reason, recorded a late or short meal period, or did not record a meal period at all.  Therefore, the percentage of shifts flagged with a missed, short, or late meal period is likely to overstate the percentage of shifts where a compliant meal period was not *provided*.

### a.    **The wide variation in meal period experiences across employees indicates that systematic factors did not prevent employees from taking compliant meal breaks**

30.    The aggregated statistics presented by Mr. Marangi mask the considerable underlying variation across employees, airport, job titles, and across employees who worked in the same airport, or in the same job title.  In other words, the data shows that employees with similar employment

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

characteristics have different meal period experiences. This suggests that there is no one-size fits all answer that can explain why a given shift did not have a recorded meal break, or a late or short meal break. For example, suppose there were four Ramp Agents at LAX with the following late meal percentages: Employee 1 (0%), Employee 2 (3%), Employee 3 (5%) and Employee 4 (40%).  That outcome does not support the contention that all employees were required to take late meal periods due to a systematic practice that impacts all employees.  Indeed, that pattern suggests that individualized factors are driving the late break outcomes for Employee 4, with one potential explanation being employee preference.

### b. Analysis of the timekeeping data shows a pattern of wide variation across employees in terms of the percentage of shifts with potentially missed, late or short meal breaks

31.    Exhibits 4a through 4c present analyses of the percentage of shifts over 5 hours with a missed, late, or short meal period, respectively, by employee. Each bar in the chart represents an individual employee, indicating the percentage of shifts where a meal period was recorded as missed, late, or short.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR



DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

Exhibit 4c

Percent of Meal Eligible Shifts with an Potentially Short Meal Break
- By Employee -



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15    32.    As shown in Exhibit 4a through 4c above, there is considerable variation across

16  employees in terms of their facial meal break compliance.  In fact, across individual employees, the

17  range spans from 0% to 100% for potentially "missed" and potentially "late" meal breaks and from 0%

18  to 56% for potentially "short" meal breaks, with a wide variation of outcomes in between.  In addition,

19  the charts also reveal considerable differences in the composition of potentially "missed," "short", or

20  "late" meal breaks.  Some employees' time records indicate mostly potentially "late" meal break issues,

21  some employees' time records indicate mostly potentially "short" breaks, some employees' time records

22  indicate they mostly have potentially "missed" meal breaks, and some employees have very few shifts

23  with any potential meal break issues at all.  Given the variability in outcomes, the data does not support

24  the contention that systematic policies, practices, or procedures are driving instances of missed, short or

25  late meal breaks.  Further, the variation indicates that the group average may not be representative of the

26  actual experiences of many employees.

27
28

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

### c. **There is wide variation across job titles in terms of their percentage of eligible shifts with a potentially missed, late or short meal period**

33.     Exhibits 5a through 5c show the percentage of shifts over 5 hours where the data shows a potentially missed, late or short meal period, respectively, for 58 job titles categories.  As shown on Exhibit 5a through 5c below, there is considerable variation across job titles in terms of the percentage of shifts with potentially "late," "short," or "missed" meal breaks.  For example, some job titles recorded essentially no short meal periods (Baggage Coordinator, Operational Excellence Supervisor, Fuel Farm Mechanics), while other job titles have a higher percentage of shifts with short breaks recorded (General Fueling Helper or Fuel Quality Control Tech).  Employees in HR Specialist positions practically never missed a meal break (1.6%), yet they recorded late breaks on 75.7% of shifts over 5 hours – in a job title where breaks are unlikely to be impacted by customer flow.   Other job titles almost always record a timely meal period (Inside Wireman). The variation across job titles has several implications.  First, a given employee testifying or providing evidence regarding his or her experiences in a particular job title may not be representative of the experiences of employees in other job titles who are tasked with different duties.  Second, whatever policies or practices exist did not result in similar meal period outcomes across employees regardless of job titles.  Finally, when there is considerable underlying variation in outcomes, the average may not be representative of the underlying experiences of many of the employees who have different work assignments.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR



Exhibit 5a

Percent of Meal Eligible Shifts with an Unrecorded Meal Break
- By Job Title -

Exhibit 5b

Percent of Meal Eligible Shifts with an Potentially Late Meal Break
- By Job Title -

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR



Exhibit 5c
Percent of Meal Eligible Shifts with an Potentially Short Meal Break
- By Job Title -

**d. There is wide variation across airports in terms of the percentage of eligible shifts with a potentially missed, short or late meal period**

34.    Exhibits 6a through 6c show the percentage of shifts over 5 hours where the data shows a potentially missed, short or late meal period, respectively, for each of the six airports in the data.  As shown on Exhibit 6, the overall percentage of shifts with potential issues varies across airports.  More notably however, the underlying distributions of late, short, and missed vary by airport as well.  For example, the percentage of missing meal periods at San Francisco Airport (58.2%) is almost nine times the percentage of missing meal periods at Long Beach Airport (6.8%). On the other hand, the percentage of late meal periods at Long Beach Airport (41.3%) is over seven times the percentage of late meal periods at Santa Ana Airport (5.9%).

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR



DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR



VII.    **Detailed Analysis of May Flight List Reports**

35.    Among the data received and reviewed are 3,115 daily "May Fly List" reports showing the number of arrival and departure flights serviced at both Los Angeles and Ontario Airports between 1/1/2018 and 5/21/2023.  Exhibit 7 below presents a snapshot of one of these daily reports.  As seen on Exhibit 6, the report shows the Scheduled Time, Estimated Time and Actual Time for each flight serviced by Menzies employees at LAX on that day.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

Exhibit 7. Snapshot of May Fly List for Arrivals at LAX on 7/1/2022



| Flight | A/C | Reg | Routing | TM | T | STA | ETA | ATA | Stand | Leads | Bags Off | Bags Drop | Cargo Off | Water | LAVS | Remarks | Canceled |
|--------|-----|-----|---------|----|---|-----|-----|-----|-------|-------|----------|-----------|-----------|-------|------|---------|----------|
| MAA6846 | 76X | N773AX | MEX | | F | 06:05 | | 06:07 | | | | | | | | | |
| LP2476 | 76W | CCCWY | LIM | | J | 07:50 | 07:26 | 07:28 | 152 | | | | | | | TOW TO 410@9:30 (9:00-9:23) | |
| PR112 | 359 | RPC3508 | LAX | | J | 09:25 | 09:27 | 09:32 | 203 | | | | | | | | |
| KE17 | 74H | HL7642 | ICN | | J | 10:10 | 09:25 | 09:35 | 150 | | | | | | | | |
| MAA3941 | 33X | EIMAA | MEX | | T | 10:30 | | 10:27 | | | | | | | | | |
| NH6 | 77W | JA794A | NRT | | J | 11:25 | 11:05 | 11:17 | 155 | | | | | | | | |
| AV522 | 319 | N479TA | SAL | | J | 12:05 | 12:05 | 11:59 | 139 | | | | | | | | |
| SQ12 | 77W | 9VSNB | NRT | | J | 12:50 | 12:50 | 12:46 | 130 | | | | | | | | |
| BA283 | 351 | GXWBH | LHR | | J | 13:00 | 12:28 | 12:25 | 156 | | | | | | | | |
| CM360 | 7M9 | HP9905C | PTY | | J | 13:16 | 12:49 | 13:08 | 151 | | | | | | | TOW TO 405B @ 13:50 (14:17-14:31) | |
| AV640 | 32D | N703AV | GUA | | J | 13:25 | 13:25 | 13:21 | 137 | | | | | | | | |
| LO21 | 788 | SPLRG | LAX | | J | 14:45 | 15:20 | 15:17 | 130 | | | | | | | | |
| BA281 | 77W | GSTBO | LHR | | J | 14:55 | 14:48 | 15:01 | 159 | | | | | | | | |
| KE11 | 77W | HL8010 | ICN | | J | 15:20 | 14:47 | 15:05 | 157 | | | | | | | TOW TO 417 BY 1615 (16:38-16:53) | |
| NH126 | 77W | JA797A | NRT | | J | 15:35 | 15:23 | 15:39 | 133 | | | | | | | | |
| IB6171 | 332 | ECMJA | MAD | | J | 16:20 | 16:33 | 16:33 | 134 | | | | | | | | |
| CA653 | 359 | B308M | PEK | | J | 16:45 | 16:04 | 16:23 | 416 | | | | | | | | |
| NH106 | 77W | JA796A | HND | | J | 17:35 | 16:54 | 17:02 | 414 | | | | | | | | |

36.    Exhibit 8 below presents a comparison of the number of flights serviced at Los Angeles and Ontario airports.

### Exhibit 8
### Number of Flights Serviced by Date

Average Number of Flights per Day:
LAX - 76.9
ONT - 3.6

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

37.     As seen on Exhibit 8, the number of flights serviced varied greatly across the two airports. Indeed, while an average of 76.9 flights were serviced each day at Los Angeles airport, an average of only 3.6 were serviced each day at Ontario airport.  Furthermore, Exhibit 8 shows that the number of flights serviced varied on a day-to-day basis, even within the same airport. In fact, the number of daily flights serviced at Los Angeles Airport varied between a low of one flight on 10/9/2018 to a high of 158 flights on 6/25/2018. Similarly, the number of flights serviced at Ontario airport varied from a low of one flight on multiple days to a high of 6/8/2022.



Exhibit 9
Distribution of Flights by Actual Flight Time Relative to Scheduled Time

38.     Additionally, the May Fly List data shows there is variation in the extent of deviation from the estimated flight arrival and departure times operations across Los Angeles and Ontario airports. As seen on Exhibit 9, 72.9% of flights at LAX were within 20 minutes of the estimated arrival and departure times (on-time), while 1.9% were between 21 and 30 minutes early and 7.1% were between 21 and 30 minutes late. In comparison, only 55.4% of flights at Ontario airport were on-time, while 6.3% of

-28-

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

the flights were between 21 and 30 minutes early and 4.1% were between 21 and 30 minutes late.

39.     Furthermore, combining the information from the timekeeping data and May Fly List reports, the number of daily labor hours per flight serviced were calculated. Exhibit 10 below presents a monthly average of the daily labor hours per flight serviced at both LAX and Ontario airports. As seen on Exhibit 10, there are significant differences between the number of labor hours per flight serviced across the two airports. In fact, the average number of labor hours per flight serviced at LAX was 68.1. On the other hand, the number of labor hours spent on each flight at Ontario airport was 139.4, more than double the average at LAX. Exhibit 10 also shows that the number of labor hours per flight serviced also varied over time. Indeed, the average number of labor hours per flight at Ontario airport varied from a low of 77.9 in May 2022 to a high of 371.5 in September 2019. Similarly, the average number of labor hours per flight at LAX airport varied from a low of 54.6 in August 2019 to a high of 92.7 in February 2020.



Exhibit 10
Average Number of Labor Hours per Flight Serviced

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

## VIII.  Detailed Analysis of Manpower Reports

40.     I have also received and reviewed daily Manpower reports identifying the scheduled assignments for each crew member working at LAX. Exhibit 11 below presents a snapshot of one of these daily reports. As see on Exhibit 11 below, the Manpower reports show the names of the crew members assigned to each flight, the scheduled arrival and departure of each flight they are scheduled to service and the scheduled meal break time. For example, Crew 6, consisting of four ramp agents and one supervisor were assigned to service 5 flights, LA602, CX884, CX885, AV522 and AV523. It's worth noting that while the crew members were scheduled to start their shifts between 4:30 am and 5:15 am, the first flight they scheduled to service was not scheduled to arrive until 6:15 am.

Exhibit 11. Snapshot of Manpower Report at LAX on 1/21/2022





41.     Once the crew members servicing each flight were identified, their timekeeping data was isolated for analysis. Then, the actual flights' arrival and departures times were attached from the daily May Fly Reports allowing for a more accurate analysis of down time. For example, Exhibit 12 below shows all shifts for Ramp Crew 7 on 10/27/2022. Each of the horizontal bars represents a recorded shift for a Ramp Agent, with the recorded meal period indicated by a different color (the color of the meal period also indicates whether it was compliant, missed, short, late or both).

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR



42. In this example, there were five Ramp Agents assigned to service four flights, KE8015, KE8016, CI08 and CI07. While all five agents started their shift around the same time and serviced the same flights, two agents (IDs 271325 and 22643) recorded compliant meal breaks, two agents (IDs 307087 and 301371) recorded a late meal break, and one agent (ID 36878) did not record any meal break in the timekeeping data. However, the chart shows that all agents had the opportunity to record a compliant meal break either during the pre-flight arrival downtime or between the departure of Flight KE8016 at 7:13 PM and the arrival of CI08 at 8:50 PM.

43. Similarly, Exhibit 13 presents the shifts for Ramp Crew 3 on 11/22/2022. As seen on Exhibit 13 below, four Ramp Agents were assigned to service the same three flights: LA2476; AV522; and AV523. Yet only two agents on the crew (IDs 308818 and 303788) recorded compliant meal breaks, while the other two agents did not record any meal breaks in the timekeeping system. Given the amount

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

of pre-flight downtime and in-between flights downtime shown below, all three agents had similar opportunities to record their meal break. Understanding the reason why two of the four agents did not record their meal break requires individualized inquiry.



**Exhibit 13**
**- RAMP CREW 3 at LAX -**
**- 11/22/2022 -**

44.     Exhibit 14 below presents the shifts of Bag Room Crew 12 on 11/25/2022. As seen on Exhibit 14, Crew 12 was assigned to service only flight SQ37. Once again, even though all four Baggage Agents worked the same shift and serviced the same flight, only one Baggage Agent (ID 27216) recorded a compliant meal break, while the remaining three Agents did not record any meal breaks at all despite having hours of downtime pre-flight and likely more downtime within the more than 4 hour period it took between arrival and departure of Flight SQ37.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR



**Exhibit 14**
**- BAGROOM CREW 12 at LAX -**
**- 11/25/2022 -**

45.    Exhibit 15 presents the shifts for Bag Room Crew 3 on 10/24/2022. As seen on Exhibit 15, all three agents assigned to Crew 3 only serviced one flight: LA603. While it's evident from the amount of pre-flight departure downtime that all crew members had the opportunity to take a compliant meal break, only two agents recorded a compliant meal break in timekeeping, while the third (ID 307470) did not record any meal breaks at all. In addition, Crew 3 may have had opportunities to take a break during the 4 hour turnaround period.

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    46.    Finally, Exhibit 16 shows the shifts for Bag Room Crew 9 on 2/27/2022. As shown on

18  Exhibit 16, while Crew 9 only serviced flight BA268 between 4:45 PM and 8:54 PM, only one (ID

19  299115) of the three crew members recorded a compliant meal break, while the other two Baggage

20  Agents recorded late meal breaks after the 5th hour of work in timekeeping. However, both agents had

21  over two hours of pre-flight downtime when they had the opportunity to take a timely meal break. Thus,

22  to determine whether a recorded late break can be attributed to the employee being required to work, or

23  to instances where the employee was provided a timely meal break, but voluntarily took a later meal

24  break due to employee preference and discretion, would require collecting individualized facts.

25
26
27
28

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

1



**Exhibit 16**
**- BAGROOM CREW 9 at LAX-**
**- 2/27/2022 -**

47.    As evidenced by the discussion above, the operations data demonstrates that instances where employees' timekeeping records show potentially "late", "short", or "missed" meal breaks are necessarily shifts where timely meal breaks were provided.  Instead, to properly assess meal break issues will require performing similar detailed shift-by-shift, employee-by-employee analyses because it is likely that many facial meal break issues do not represent an instance where a timely 30 minute meal break was not provided.

## IX.    Detailed Analysis of Fueler Report at SFO

48.    Finally, I have received and reviewed a Fueler Report for SFO Fuelers between 3/6/2023 and 6/6/2023.  The Fueler Report identifies the number of aircraft refuelings performed by each employee, in addition to the time spent on refueling. Exhibit 17 below presents a distribution of the number of refuels per employee day. As seen on Exhibit 17, 8.3% of days had only one refueling, 6.0% had two refuelings, and 7.4% had three refuelings. Furthermore, the average number of refuelings per

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

day was 6.9 and the average aircraft fueling duration was 21.3 minutes.





49.    The calculated daily employee refueling times from the Fueling Report were then compared to the timekeeping hours paid to refueler. Exhibit 18 below presents a comparison between the distribution of timekeeping hours and refueling hours. As seen on Exhibit 18, according to the Fueler Report, 78.3% of Fueler days at SFO airport had fewer than 3.5 hours of refueling time and 94.6% of Fueler days had fewer than 5 hours of refueling time. In comparison, 98.0% of Fueler days in timekeeping had more than 3.5 hours paid and 95.7% had more than 5 hours paid. According to the timekeeping data, the average Fueler shift at SFO was 8.24 hours in duration. On the other hand, the average fueling time observed in the Fueler Report was only 2.46 hours per day. While the refueling

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

time alone may not capture all work tasks performed by Fuelers, the fact that only 30% of Fueler's paid time can be attributed to servicing aircraft shows that Fuelers had plenty of opportunities for both meal and rest break throughout their day.



Exhibit 18
Distribution for Daily Timekeeping and Re-Fueling Hours for Aircraft Fuelers
- SFO Airport -



## X.    Review of Employee Declarations

50.    A review of employee declarations shows that employees had varying experiences regarding meal and rest break practices and the use of personal cell phones. For example, Plaintiffs' declarant Mynor Joaquin declared:

- "My supervisor or manager would get upset with me when I wanted to take a meal break within the first 5 hours of my shift…Despite the supposed meal break schedule, I was not permitted to

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

take a meal break unless my supervisor or manager authorized it ."[9]

51.    Similarly, Plaintiffs' declarant Erik Chacon Bojorquez states:

- "Two or three times a week, I wouldn't be authorized to take my meal break within the first 5 hours of my shift because of how busy we were." [10]

52.    On the other hand, Defendant's declarants state that meal breaks can be taken at their discretion and did not require authorization from their supervisor or manager.

- "I have discretion to take the meal break whenever I want during my shift. I take my meal break before the beginning of my fifth hour of work. Because I am regularly scheduled to start work at 3:00 a.m., I usually start my meal break before 8:00 a.m." [11]

- "When I work a shift that is longer than five hours, Menzies provides me the opportunity to take a meal break. This meal break is typically at the same time each day I work." [12]

- I have never been told I am unable to take a meal break and I have never felt pressure to not take a meal break. I have never heard other Menzies employees complain about being unable to take a meal break." [13]

53.    The testimony of the Plaintiffs' and Defendant's declarants regarding rest breaks suggests varying experiences that may not all be representative of the company's practices. Plaintiffs' declarants state that rest break must also be authorized by the supervisor. For example:

---

[9] Declaration of Mynor Joaquin Andrade, paragraph 6
[10] Declaration of Erik Chacon Bojorquez, paragraph 19
[11] Declaration of Antonio Funes, paragraph 7
[12] Declaration of Erick Maldonado, paragraph 9
[13] Declaration of Brian Perez, paragraph 8-9

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

- Plaintiffs' declarant Daniel Arango states that "like with meal breaks, our managers and supervisors told us that we could only take a rest break if the supervisor or manager gives permission."[14]

- "I constantly felt pressured by Menzies Aviation to work through meal and rest breaks."[15]

- "Menzies Aviation never advised me that I was entitled to a 10 minute rest break and I never took one while working for Menzies Aviation."[16]

54.     On the other hand, Defendant's declarants state that just like meal breaks, rest breaks were provided and not managed by the supervisors.

- "When I take my rest breaks, I am not required to be available to work in any way. No one has ever told me I cannot take a rest break and I have not felt pressured to not take a rest break. I have never heard other Menzies employees complain about being unable to take a rest break."[17]

- "I usually take my rests breaks either outside or in the office. If I take the rest break in the office, that is my choice and personal preference. There is no restriction on my leaving Menzies's property."[18]

- "When I work a shift more than 3.5 hours, Menzies makes available to me a 15- minute rest break. If I work more than six hours, Menzies makes available to me a second 15- minute rest break. If I work more than 10 hours, Menzies makes available to me a third 15- minute rest

---

[14] Declaration of Daniel Arango, paragraph 22
[15] Declaration of Mynor Joaquin Andrade, paragraph 4
[16] Declaration of Hajar Chikh, paragraph 8
[17] Declaration of Erick Maldando, paragraph 20
[18] Declaration of Pamela Bartel, paragraph 4

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

break." [19]

55.    Declarations reviewed also show variation in experiences regarding cell phone usage. For example, Plaintiffs' declarants state:

- "Like many Menzies Aviation employees, I use my personal telephone for work functions as Menzies Aviation has not provided me a telephone to use for work duties." [20]

- "My job at Menzies required that I use and keep open, my personal cell phone at work every day. Menzies Aviation did not pay nor offer to reimburse me for use of my personal cell phone for work duties. Menzies did not advise me of any right to reimbursement." [21]

- "I used my personal cell phone at work every day. It was the main way that my co-workers and I, including our supervisors and managers, would communicate about important work tasks."[22]

56.    On the other hand, Defendant's declarants state:

- "I have never been required to purchase any item I needed for my work at Menzies. Sometimes I use my personal cell phone to make calls, but this is entirely my choice because Menzies provides me with a phone and I can always use that if I want." [23]

- "I am aware that Menzies has a policy prohibiting employees from using their cell phones during work, but that employees may voluntarily use their personal cell phones to access the UKG system to access the online timeclock. I use the Kronos system to clock in and clock out, and

---

[19] Declaration of Jose Gonzalez, paragraph 4
[20] Declaration of Patricia Amaya, paragraph 8
[21] Declaration of Anibal Silva, paragraph 7-8
[22] Declaration of Erik Chacon Bojorquez, paragraph 7
[23] Declaration of Florentina Gauro-Salud, paragraph 12

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

because I know Menzies provides this, I am not required to use my personal cell phone to clock in and out." [24]

- "I also occasionally use my personal phone to communicate with my team. As with the ADP application, I voluntarily use my personal phone for work communications and do not feel obligated to use it by anyone on my teams." [25]

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.  Executed this 12th day of June 2023, at Los Angeles, California.

By:  _____
Robert W. Crandall

---

[24] Declaration of Brayan Guzman, paragraph 25
[25] Declaration of Christopher Black, paragraph 23

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

1

2                          **List of Data and Documents Relied Upon**

3   - MENZIES_000828 CONFIDENTIAL.xlsx
    - MENZIES_000829 CONFIDENTIAL.xlsx
4   - MENZIES_000830 CONFIDENTIAL.xlsx
    - MENZIES_000831 CONFIDENTIAL.xlsx
5   - MENZIES_000832 CONFIDENTIAL.xlsx
6   - MENZIES_000833 CONFIDENTIAL_RWC Pivot.xlsx
    - MENZIES_000833 CONFIDENTIAL.xlsx
7   - MENZIES_000834 CONFIDENTIAL.xlsx
8   - APRIL WB MayFly Report.pdf
    - FREIGHTER APRIL MayFly Report.pdf
9   - FREIGHTER MAR MayFly Report.pdf
10  - FREIGHTER MAY MayFly Report.pdf
    - LAX WB MAY MayFly Report.pdf
11  - MARCH WB MayFly Report.pdf
12  - ONTG APRIL MayFly Report.pdf
    - ONTG MARCH MayFly Report.pdf
13  - ONTG MAY MayFly Report.pdf
14  - RSMS Apr2023.xlsx
    - RSMS - Mar2023.xlsx
15  - RSMS May2023.xlsx
16  - LAX Door performance 3 months.docx
    - LAX Import Breakdown 3 months.docx
17  - MayFly Report - FREIGHTER.pdf
18  - MayFly Report - LAX.pdf
    - MayFly Report - ONTG.pdf
19  - SFO130 Door performance 3 months.docx
20  - SFO130 Import Breakdown 3 Months.docx
    - SFO142 Door performance 3 months.docx
21  - SFO142 Import Breakdown 3 months.docx
    - SFO161 Door performance 3 months.docx
22  - SFO161 Import Breakdown 3 Months.docx
23  - Copy of SATURDAY 04.29.2023 MANPOWER.xlsx
    - Friday 03.03.2023 MANPOWER.xlsx
24  - Friday 03.10.2023-MANPOWER.xlsx
25  - Friday 03.17.2023-MANPOWER - new rosters-time change.xlsx
    - Friday 03.24.2023.xlsx
26  - Friday 03.31.2023.xlsx
27  - Friday 04.07.2023.xlsx
    - Friday 04.14.2023.xlsx
28

DECLARATION OF ROBERT CRANDALL
                                       2:22-cv-05915-MCS-MAR

- Friday 04.21.2023 MANPOWER.xlsx
- Friday 05.05.2023 MANPOWER.xlsx
- Friday 05.12.2023 MANPOWER.xlsx
- Friday 05.19.2023 MANPOWER.xlsx
- Friday 06.02.2023 MANPOWER.xlsx
- FW PRE-PLANNED MANPOWER FOR FRIDAY 05262023.msg
- MARS June 13-19 2022.docx
- MONDAY 03.06.2023 MANPOWER - New Rosters.xlsx
- MONDAY 03.13.2023 MANPOWER - New Rosters - Time Change.xlsx
- MONDAY 03.20.2023 MANPOWER - New Rosters - Time Change - Copy.xlsx
- MONDAY 03.27.2023 MANPOWER - New Rosters - Time Change - Copy.xlsx
- MONDAY 04.03.2023.xlsx
- MONDAY 04.10.2023-MANPOWER.xlsx
- MONDAY 04.17.2023.xlsx
- MONDAY 04.24.2023 MANPOWER.xlsx
- MONDAY 05.012023 MANPOWER.xlsx
- MONDAY 05.08.2023 MANPOWER.xlsx
- MONDAY 05.15.2023 MANPOWER.xlsx
- MONDAY 05.22.2023 MANPOWER.xlsx
- MONDAY 05.29.2023 MANPOWER.xlsx
- SATURDAY 03.011.2023 MANPOWER.xlsx
- SATURDAY 03.04.2023 MANPOWER.xlsx
- SATURDAY 03.18.2023 MANPOWER.xlsx
- SATURDAY 03.25.2023.xlsx
- SATURDAY 04.01.2023.xlsx
- SATURDAY 04.08.2023.xlsx
- SATURDAY 04.15.2023.xlsx
- SATURDAY 04.22.2023.xlsx
- SATURDAY 04.29.2023 MANPOWER.xlsx
- SATURDAY 05.06.2023 MANPOWER.xlsx
- SATURDAY 05.13.2023 MANPOWER.xlsx
- SATURDAY 05.20.2023 MANPOWER-V.3.xlsx
- SATURDAY 05.27.2023 MANPOWER.xlsx
- SATURDAY 06.03.2023 MANPOWER.xlsx
- SUNDAY 03.05.2023-MANPOWER.xlsx
- SUNDAY 03.12.2023-MANPOWER.xlsx
- SUNDAY 03.19.2023-MANPOWER.xlsx
- Sunday  03.26.2023.xlsx
- Sunday  04.02.2023.xlsx
- Sunday  04.09.2023.xlsx
- Sunday  04.16.2023.xlsx
- Sunday  04.23.2023.xlsx

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

- Sunday  04.30.2023.xlsx
- Sunday 05.07.2023 MANPOWER.xlsx
- Sunday 05.14.2023 MANPOWER.xlsx
- Sunday 05.21.2023 MANPOWER.xlsx
- Sunday 05.28.2023 MANPOWER.xlsx
- Sunday 06.04.2023 MANPOWER.xlsx
- THURS 04.06.2023.xlsx
- THURS 04.13.2023-MANPOWER.xlsx
- THURS 04.27.2023.xlsx
- THURS 05.04.2023-MANPOWER.xlsx
- THURS 05.11.2023-MANPOWER.xlsx
- THURS 05.18.2023-MANPOWER.xlsx
- THURS 05.25.2023-MANPOWER.xlsx
- THURS 06.01.2023-MANPOWER.xlsx
- THURSDAY 03.02.2023 MANPOWER.xlsx
- THURSDAY 03.09.2023 MANPOWER.xlsx
- THURSDAY 03.16.2023 MANPOWER -new rosters- time change.xlsx
- THURSDAY 03.23.2023 MANPOWER -new rosters- time change - Copy.xlsx
- THURSDAY 03.30.2023 MANPOWER.xlsx
- THURSDAY 04.20.2023-MANPOWER.xlsx
- TUESDAY 03.07.2023 MANPOWER.xlsx
- TUESDAY 03.14.2023 MANPOWER.xlsx
- TUESDAY 03.21.2023 MANPOWER.xlsx
- TUESDAY 03.28.2023.xlsx
- TUESDAY 04.04.2023.xlsx
- TUESDAY 04.11.2023-MANPOWER.xlsx
- TUESDAY 04.18.2023.xlsx
- TUESDAY 04.25.2023.xlsx
- TUESDAY 05.02.2023 MANPOWER.xlsx
- TUESDAY 05.09.2023 MANPOWER-mo.xlsx
- TUESDAY 05.16.2023 MANPOWER.xlsx
- TUESDAY 05.23.2023 MANPOWER.xlsx
- TUESDAY 05.30.2023 MANPOWER.xlsx
- Wed 03.29.23.xlsx
- WEDNESDAY 03.01.2023 MANPOWER.xlsx
- WEDNESDAY 03.08.2023 MANPOWER.xlsx
- WEDNESDAY 03.15.2023 MANPOWER - New Rosters-Time Change.xlsx
- WEDNESDAY 03.22.2023 MANPOWER - New Rosters-Time Change-.xlsx
- WEDNESDAY 04.05.23.xlsx
- WEDNESDAY 04.12.23-MANPOWER.xlsx
- WEDNESDAY 04.19.23.xlsx
- WEDNESDAY 04.26.23.xlsx

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

- WEDNESDAY 05.03.23 MANPOWER.xlsx
- WEDNESDAY 05.10.23 MANPOWER.xlsx
- WEDNESDAY 05.17.23 MANPOWER.xlsx
- WEDNESDAY 05.24.23 MANPOWER.xlsx
- WEDNESDAY 05.31.23 MANPOWER.xlsx
- Friday 09.09.2022.xlsx
- Friday 11.25.2022.xlsx
- Friday 12.30.2022.xlsx
- MANPOWER for FRIDAY 10.28.2022.xlsx
- MANPOWER FOR MONDAY 11.21.2022.xlsx
- MANPOWER FOR MONDAY 12.26.2022.xlsx
- MANPOWER for SATURDAY 12.31.2022.xlsx
- MANPOWER for SUNDAY 01.01.2023.xlsx
- MANPOWER for SUNDAY 10.30.2022.xlsx
- MANPOWER for SUNDAY 11.27.2022.xlsx
- MANPOWER for  TUESDAY 12.27.2022.xlsx
- MANPOWER for WEDNESDAY 11.23.2022.xlsx
- MANPOWER for WEDNESDAY 12.28.2022.xlsx
- MANPOWER SATURDAY 09.10.2022..xlsx
- MANPOWER TUESDAY  09.06.2022.xlsx
- MONDAY MANPOWER 09.05.2022.xlsx
- MONDAY MANPOWER  10.24.2022-.xlsx
- SATURDAY 10.29.2022.xlsx
- SATURDAY 11.26.2022.xlsx
- Sunday  09.11.2022.xlsx
- THURS 09.08.2022.xlsx
- THURS 10.27.2022.xlsx
- THURS 12.29.2022.xlsx
- THURSDAY 11.24.2022.xlsx
- TUESDAY 10.25.2022.xlsx
- TUESDAY 11.22 .2022.xlsx
- WED  09.07.2022.xlsx
- WED 10.26.2022.xlsx
- FREIGHTER LAX MAYFLY REPORT JAN 2018-DEC 2019.pdf
- FREIGHTER LAX MAYFLY REPORT JAN 2020-DEC 2021.pdf
- FREIGHTER LAX MAYFLY REPORT JAN 2022-JUNE 2022.pdf
- LAX MAYFLT REPORT JULY- DEC 2018.pdf
- LAX MAYFLT REPORT JULY - DEC 2021.pdf
- LAX MAYFLY JAN-JUNE 2018.pdf
- LAX MAYFLY REPORT JAN-FEB 2023.pdf
- LAX MAYFLY REPORT JAN - JUNE 2019.pdf
- LAX MAYFLY REPORT JAN -JUNE 2020.pdf

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

- LAX MAYFLY REPORT JAN -JUNE 2021.pdf
- LAX MAYFLY REPORT JAN-JUNE 2022.pdf
- LAX MAYFLY REPORT JULY -DEC 2019.pdf
- LAX MAYFLY REPORT JULY - DEC 2020.pdf
- ONTG MAYFLY REPORT JAN 2018-JUNE 2022.pdf
- FRI-MANPOWER.xlsx
- Manpower Sheet Friday Feb 25 2022.xlsx
- Manpower Sheet Friday March 11 2022.xlsx
- Manpower Sheet Tuesday Feb 22 2022.xlsx
- MONDAY 2.21.2022.xlsx
- MONDAY MANPOWER 3.07.2022.xlsx
- Pre- Planning of MONDAY MANPOWER 1.17.2022.xlsx
- SAT JAN 22 2022 - PRE PLAN .xlsx
- SATURDAY 02.26.2022.xlsx
- SATURDAY 03.12.2022.xlsx
- Sunday Manpower Sheet Feb 27 2022.xlsx
- Sunday Manpower Sheet March 13 2022.xlsx
- SUNDAY MANPOWER.xlsx
- THU JAN 20 2022 - PRE PLAN.xlsx
- THURS MANPOWER 03.10.2022.xlsx
- THURS MANPOWER FEB. 24TH 2022.xlsx
- TUE-MANPOWER.xlsx
- TUESDAY MANPOWER 03.08.2022.xlsx
- WED MANPOWER 03.09.2022.xlsx
- WED MANPOWER FEB. 23rd 2022.xlsx
- WED-MANPOWER.xlsx
- FuelerReportTue Jun 06 2023 10_24_40 GMT-0700 (Pacific Daylight Time).xlsx
- 2023-05-22 D41-1 Pltfs Memo of Points  Authorities ISO Motion for Class Cert.pdf
- 2023-05-22 D41-3 UNREDACTED Declaration Marangi ISO Pltfs Class Cert.pdf
- 2023-05-31 Amaya - Menzies Employee Consent of Giovanni Tarol.pdf
- 2023-05-31 Amaya - Menzies Employee Declaration and Consent of Andres Martinez.pdf
- 2023-05-31 Amaya - Menzies Employee Declaration and Consent of Brian Perez.pdf
- 2023-05-31 Amaya - Menzies Employee Declaration and Consent of Florentina Gauro-Salud.pdf
- 2023-05-31 Amaya - Menzies Employee Declaration and Consent of John Soto.pdf
- 2023-05-31 Amaya - Menzies Employee Declaration and Consent of Todd Preble.pdf
- 2023-05-31 Amaya - Menzies Employee Declaration of Antonio Funes.pdf
- Amaya v. Menzies - Brayan Guzman_Signed.pdf
- Amaya v. Menzies - Erick Maldonado Declaration_Signed.pdf
- Amaya v. Menzies - Jesus Pool Yam Declaration_Signed.pdf
- Amaya v. Menzies - Jose Gonzalez Declaration_Signed.pdf
- Amaya v. Menzies - Louis Burke Declaration_Signed.pdf
- Amaya v. Menzies - Pamela Bartel Declaration_Signed.pdf

DECLARATION OF ROBERT CRANDALL
2:22-cv-05915-MCS-MAR

- Christopher.Black.Signed.Declaration.pdf
- Jose.Alonso.Orozco.Signed.Declaration.pdf
- Michael.Eswagen.Signed.Declaration.pdf
- Victoria.Aluni.Signed.Declaration.pdf
- 2023-05-22 D41-5 Decls of Pltfs Class Member and Witness Poag ISO Motion for Class Cert 4894-9920-9574 v.2.pdf
- PDF - FULL SIZE - TALIN BAZERKANIAN - 30(B)(6) - CONTAINS HIGHLY CONFIDENTIAL PORTIONS.pdf
- SILVA, ANIBAL A. 05-19-2023_full.pdf
- VILLAGRA, PATRICIA 04-26-2023_full.pdf
- Aircraft Fueler with Excellent Benefits _ Menzies Aviation Careers.pdf
- Cabin Services Agent - $18.04__hr. to $22.47__hr. _ Menzies Aviation Careers.pdf
- Cargo Office Agents ( Full-Time) - $21.65_hr. - $22.90_hr. + Great Benefits! _ Menzies Aviation Careers.pdf
- Cargo Screening Agent _ Menzies Aviation Careers.pdf
- Cargo Warehouse Agents ( Full-Time) - $20.00_hr. + Great Benefits! _ Menzies Aviation Careers.pdf
- Class A Hazmat Tanker Driver - $30.00_hour _ Menzies Aviation Careers.pdf
- Fuel Farm Operator _ Menzies Aviation Careers.pdf
- Full -Time Passenger Service Agent - Bi Lingual (Spanish) - $18.04__hr. to $23.81__hr. _ Menzies Aviation Careers.pdf
- Ground Support Equipment Mechanic _ Automotive Mechanic - $32_hour _ Menzies Aviation Careers.pdf
- Passenger Service Supervisor _ Menzies Aviation Careers.pdf
- Ramp Agent $18.00_hour! _ Menzies Aviation Careers.pdf



1925 Century Park East
15th Floor
Los Angeles, CA 90067
Office.310.275.9137
Fax.310.275.9086
RCrandall@resecon.com

# ROBERT W. CRANDALL, PARTNER

Robert W. Crandall is a Partner in the litigation consulting practice of Resolution Economics LLC.  He has a M.B.A. from Loyola Marymount University and a B.A. in History from the University of Southern California. Prior to the formation of Resolution Economics, Mr. Crandall was with the Dispute Consulting Group at Deloitte & Touche, the Economics & Litigation Services Group at Altschuler, Melvoin & Glasser, and the Dispute Analysis & Corporate Recovery Group at Price Waterhouse.

Mr. Crandall provides consulting services and expert witness testimony related to a variety of practice areas. He has provided expert testimony in deposition, trial, arbitration, and other forums. He specializes in estimating damages, evaluating business issues and business operations, designing and conducting observation studies and surveys related to work activities, assessing economic and statistical approaches to litigation issues, and performing forensic programming and analysis of large complex databases.  Mr. Crandall has significant experience in analyzing complex data for the purpose of assisting counsel in evaluating class certification and liability.  He is frequently asked to present findings related to class certification, merits, and economic exposure for alternative dispute resolution forums such as mediation, settlement conferences, and arbitration.

## Professional Experience

Mr. Crandall has considerable experience in providing economic and/or statistical analyses related to employment litigation matters. Also, he performs general damages analysis, forensic accounting, business valuations, and statistical analysis in a broad range of matters where the underlying issues are: breach of contract, antitrust, intellectual property, environmental claims, and insurance coverage.  In addition, Mr. Crandall has considerable expertise in financial modeling, creating large databases from paper records and diverse data sources, designing, implementing, and analyzing surveys, and conducting statistical analysis related to complex data intensive litigation assignments.  Finally, Mr. Crandall is experienced in analyzing job duties and content and business operations.

## Employment Discrimination Liability Analysis

Mr. Crandall has performed numerous statistical analyses of liability related to class action, multi-plaintiff, and single plaintiff claims of employment discrimination.  He is experienced at analyzing claims alleging discrimination in hiring, promotion, placement, termination, discipline, and pay equity.  Assignments representative of Mr. Crandall's experience in employment discrimination include the following:

- Provided consulting services to defense counsel in a class action matter alleging racial discrimination in the officer disciplinary process at a very large police department.  Services included statistical analysis of data to test plaintiffs' allegations and work related to rebutting analysis proffered by plaintiffs' expert.

- Provided consulting services to defense counsel in a class action matter, brought by the EEOC, alleging discrimination in recruiting, hiring and placement at a hotel. Created an applicant database, and performed SAS programming and statistical analysis related all three issues. Analyzed opposing expert analysis and assisted counsel in developing cross-examination.

- Provided consulting services to defense counsel in a class-action matter brought by the EEOC alleging age discrimination in terminations at a major law firm. Services included building analytical databases from multiple sources of information, performing statistical analysis related to the discrimination claim, estimating economic exposure for mediation/ settlement discussions.

- Provided consulting services to defense counsel in multi-plaintiff action alleging age discrimination at a major clothing retailer. Services included researching external labor market characteristics for individuals with the plaintiff's occupation. Created financial models to calculate damages under a variety of offset scenarios.

- Provided consulting services to defense counsel in multi-plaintiff action alleging racial discrimination in work assignments at a government agency. Services included performing statistical analysis to determine if minority workers received a disproportionate share of unfavorable work assignments.

- Provided consulting services to defense counsel in a multi-plaintiff action alleging gender discrimination in promotions at a large city police department. Services included performing statistical analysis of promotions and placements into coveted positions.

- Provided consulting services to defense counsel in multi-plaintiff action alleging age discrimination following a reduction of force at a hospital. Services included performing statistical analysis of liability and critiquing the analyses proffered by plaintiffs' expert.

- Provided consulting services to defense counsel in a large national class action employment dispute alleging gender discrimination at a warehouse style home and garden center retailer. Performed SAS programming and statistical analyses related to hiring, initial placement, and initial pay of applicants. Performed statistical analyses of female availability in the external labor market. Provided deposition support to counsel including drafting questions for the deposition of the opposing expert witness.

- Provided consulting services to defense counsel in a class action employment matter brought by the EEOC. Constructed a damage model that placed minority applicants in jobs awarded to White employees through analysis of the difference between actual and expected hires based on various flexible assumptions. Developed a random placement model testing both minority and non-minority placements. After placing the minority applicants at an appropriate rate during the damages period, the model calculated the damages of the applicants based on the time of their placement and other labor market factors.

- Provided consulting services to defense counsel in a single plaintiff action alleging age discrimination by a large international food company. Performed SAS programming and statistical analysis of terminations. Analyzed the work product of opposing expert. Assisted in drafting questions for use at deposition.

- Provided consulting services to defense counsel in a class action matter alleging age discrimination at a major drug store chain.  Performed statistical analysis related to terminations of store managers and assistant managers, reviewed and critiqued analysis of opposing experts.

- Provided consulting services to defense counsel in a single plaintiff matter alleging age discrimination in terminations resulting from a reduction in force.  Services included performing statistical analysis of termination claims.

- Provided consulting services to defense counsel in a multi-plaintiff matter alleging national origin discrimination at a waste management company. Performed statistical analyses to test plaintiffs' claims. Developed external labor market benchmarks.

- Provided consulting services to outside counsel in connection to performing statistical analysis of proposed workforce reductions at a publishing company.  Tested various reductions in force scenarios for statistical significance.  Assisted counsel in creating a RIF plan that avoided adverse impact on protected classes.

- Provided consulting services to outside counsel in connection to performing statistical analysis of proposed workforce reductions at a medical supply manufacturing company.  Tested various reductions in force scenarios for statistical significance.  Assisted counsel in creating a RIF plan that avoided adverse impact on protected classes.

- Provided consulting services to defense counsel in a wrongful termination matter alleging racial discrimination at a major defense contractor. Examined workforce composition in response to allegations of systematic discrimination based on race.  Analyzed external labor market availability to determine minority representation in the industry by job classification. Created a visual representation of results to be used as exhibits in trial.  Calculated loss of earnings related to the termination. Drafted cross-examination questions for the examination of plaintiff's expert.

## Class Action Wage and Hour Claims

Mr. Crandall has been involved in more than 500 class action wage and hour matters.  He is highly experienced in analyzing liability, damages, and class-member commonality related to wage and hour claims.  He is experienced in designing, implementing, and analyzing surveys and time-in-motion studies and performing forensic data analysis related to job content, exempt / non-exempt status, independent contractor / employee status, hours worked, uncompensated time, meal and rest breaks, improper pay calculations, and other issues. Finally, Mr. Crandall has significant experience in assisting counsel at mediation where he presents findings related to class certification and merits issues, evaluates economic exposure under a variety of legal theories, and assists in structuring the settlement terms. In this role, Mr. Crandall has worked for a party or as a neutral expert. Assignments representative of Mr. Crandall's wage and hour experience include:

- Provided consulting services to defense counsel in a national class-action wage and hour matter alleging that several thousand loan originators at a large banking institution were misclassified under FLSA. Conducted statistical analyses of hours worked records, compensation data, plaintiffs' declarations, and other data to determine if select groups of plaintiffs would be representative of class.  Assisted counsel in developing an approach for trial, estimating economic damages, and critiquing plaintiff's trial plan and damages analyses.

- Provided consulting services and expert services to defense counsel in a class action wage and hour matter alleging several hundred insurance sales originators at a call center were misclassified as exempt workers. Services included analyzing phone system data containing over 5.5 million records and computer login / logout data containing over 250,000 records to estimate overtime hours worked each workweek and the number of missed meal and rest periods. Analyzed compensation data and estimated economic damages for the class.

- Provided consulting services to defense counsel in a wage and hour matter alleging that several hundred loan originators were misclassified as exempt workers. Services included analyzing phone system data containing over 5.3 million records and over 1 million door swipe records to estimate overtime hours worked and the number of missed meals and rest periods each workweek. Analyzed compensation data and estimated damages and penalties for the class for mediation. Also, developed an economic model that estimated exposure based on the probability and economic consequences associated with winning or losing a variety of legal rulings.

- Provided consulting services to defense counsel in a wage and hour matter alleging that several thousand General Managers and Assistant Managers at a large office supply retailer were misclassified as exempt employees. Services included designing and conducting a survey to examine whether class members were appropriately classified, analyzing the company's labor model and human resources data, and conducting statistical analysis related to a variety of class certification issues.

- Provided consulting services and expert witness testimony to defense counsel in a matter alleging hourly workers at a large chain of convenience stores were denied meal and rest periods, that all workers lost vacation pay, and that the employer placed employees on unpaid leave prior to termination to avoid waiting time penalties. Services included data and statistical analysis of over 25 million time clock records in order to examine a variety of issues related to shift duration and break opportunities, analysis of vacation data to determine the number employees impacted by the policy, and analysis of termination records to demonstrate that there was no systematic practice of placing employees on LOA status prior to termination.

- Provided consulting services to defense counsel in a wage and hours matter alleging store managers and assistant store managers at a chain of retail discount stores were misclassified. Services included creating and implementing a survey to examine whether class members were classified appropriately and conducting statistical analysis related to commonality of class-members and other class certification issues. Also, analyzed and critiqued a survey conducted by plaintiffs, assisted counsel in opposing expert depositions, and estimated economic damages for mediation.

- Provided consulting services to defense counsel in a wage and hours matter alleging store managers at a chain of convenience stores were misclassified. Services included creating and implementing a survey to examine whether class members were classified appropriately, analyzing labor models, conducting statistical analysis related to commonality of class-members, assisting counsel in estimating damages for mediation.

- Provided consulting services to defense counsel in a class-action wage and hour matter alleging uncompensated meal periods and breaks, unpaid overtime wages, and minimum wage violations at a field maintenance company. Services included creating a database of hours worked from paper and electronic records, and then providing damages estimates based on a variety of assumptions and legal theories.



- Provided consulting services to defense counsel in a multi-plaintiff wage and hour matter alleging that the defendant employer failed to compensate security guards for uniform changing time and other claims of off-the-clock work. Services included designing and conducting an observation study to measure time associated with various activities and estimating damages for mediation.

- Provided consulting services to defense counsel in a wage and hours matter alleging store managers and assistant store managers at a chain of clothing retail stores were misclassified. Services included creating and implementing a survey to examine whether class members were classified appropriately and conducting statistical analysis related to commonality of class-members and other class certification issues.

- Provided consulting services to defense counsel in a class action matter alleging a variety of wage and hour violations for hourly workers at chain of warehouse stores. Services included analyzing over 5.5 million time clock records and payroll data to evaluate allegations of improper time adjustments, missed meal and rest periods, uncompensated split shifts, reporting time violations, overtime and regular rate issues, and off-the-clock work. Also, estimated damages for mediation.

- Provided consulting services to defense counsel in a class action matter alleging a variety of wage and hour violations related to time spent donning and doffing at a food factory. Services included designing a statistical sampling approach, conducting a time and motion study to measure donning and doffing time, and estimating economic damages related to various claims.

- Provided consulting services to defense counsel in a class action wage and hour matter alleging meal and rest period violations for hourly workers at chain of disabled adult services centers. Services included designing and conducting an observation study to estimate breaks taken and break opportunities. Also, assisted counsel in examining class certification issues and the representativeness of the name plaintiffs' claims.

- Provided consulting services to defense counsel in a national class action wage and hour matter alleging off-the-clock work at a storage company. Services included analyzing company hours data to test plaintiffs' legal theory, reviewing, analyzing, and critiquing a survey conducted by plaintiffs, conducting statistical analyses related to class certification, designing a conducting a survey related to management and timekeeping practices, and estimating economic damages for mediation.

- Provided consulting services to defense counsel in a class action wage and hour matter alleging that several hundred managers were misclassified as exempt workers by a large restaurant chain. Analyzed data and assisted counsel in developing approaches to class certification.

- Provided consulting services to defense counsel in a wage and hour class action matter alleging that the defendant grocery store chain misclassified several hundred non-exempt assistant managers as exempt workers. Services included creating database of hours worked, designing a flexible financial model, and computing damages under a variety of counsel specified scenarios for the purposes of mediation.



- Provided consulting services to defense counsel in several wage and hour matters alleging that police officers should be compensated for donning and doffing and other tasks. Services included analyzing survey data and time clock data to determine class certification issues for other off-the-clock tasks and constructed measures of donning and doffing time.

- Provided consulting services to defense counsel in a class action matter alleging failure to pay overtime wages to independent sales and service representatives for a large national tool franchiser. Services included designing and implementing an hours survey to determine whether the additional hours worked claimed by some plaintiffs was representative of the additional hours worked by the class as a whole. Determined that the problem were isolated to certain geographic areas rather than nationwide.

- Provided consulting services to defense counsel in a matter alleging that a class of several hundred independent contractors were misclassified employees. Services included designing a sampling scheme, building and analyzing a database of business expenses, analyzing the business model, and performing business valuations related to a number of businesses.

- Provided consulting services and expert witness testimony to defense counsel in a NLRB matter alleging that independent contractors package delivery drivers were misclassified employees. Services included analyzing the business model, productivity data, and other business records, and performing business valuations related to several businesses.

- Provided consulting services to defense counsel in a class action matter alleging that independent contractors and their employees/ workers were misclassified employees of the defendant and a large national hardware chain. Services included analysis of the business model to evaluate whether the business model meets the criteria for a business.

- Provided consulting services to defense counsel in a multi-district class action matter alleging that independent contractors in the package delivery business were misclassified employees. Services included analyzing the business model, conducting a variety of surveys, and responding to the class certification report of plaintiffs' expert.

- Provided consulting services to defense counsel in a matter alleging uncompensated time for donning and doffing at a chain of quick oil lube establishments. Services included designing and conducting a time and motion study to estimate total time spent donning and doffing and designing a survey to determine uniform practices to assess class certification and de minimis issues.

- Provided consulting services to defense counsel in a class action matter alleging that product marketing testers performed off-the-clock work and were denied meals and rest periods. Services included designing and conducting an online survey to evaluate commonality issues.



## Employment Damages Analysis

Mr. Crandall has assisted counsel in estimating employment related economic damages in more than 100 cases. He has expertise in evaluating but-for earnings, job search efforts, mitigation opportunities, and losses related to stock options and other forms of equity. Assignments representative of Mr. Crandall's experience estimating economic damages include the following:

- Provided consulting services to defense counsel in numerous matters alleging to wrongful termination of police officers, failure to promote police officers, and failure to hire police officers from a variety of police agencies. Services included analyzing labor market opportunities for police officers and creating economic models to estimate economic damages under a variety of career paths and/or retirement scenarios and critiquing the analyses of opposing experts.

- Provided consulting services to defense counsel in numerous matters alleging wrongful termination, or failure to promote government employees at a variety of city level agencies.  Services included creating economic models to estimate damages under a variety of career paths and retirement scenarios.

- Provided consulting services to defense counsel in numerous matters alleging wrongful termination in the grocery industry.   Services included creating models to estimate economic damages, analyzing mitigation opportunities, and critiquing the work of opposing experts.

- Provided consulting services to defense counsel in numerous matters alleging wrongful termination in the retail industry.   Services included creating models to estimate economic damages, analyzing mitigation opportunities, and critiquing the work of opposing experts.

- Provided consulting services to defense counsel where the underlying issue was a class action failure to hire complaint brought by the EEOC.  Services included creating financial models for estimating damages for the ten named plaintiffs, as well as, estimating potential damages for the class.

- Provided consulting services to defense counsel in a breach of contract matter where the underlying issue was related to an alleged failure to deliver stock options to an executive in the high-tech industry.  Analyzed options value under a variety of trading strategies.

- Provided consulting services to plaintiff counsel in a National Labor Relations Act right to work case. Services included calculating the economic losses suffered by twenty-five plaintiffs due to alleged illegal acts by their union.

- Provided consulting services to defense counsel in a multi-plaintiff action alleging wrongful terminations by an aerospace and defense contractor.  Evaluated plaintiff's expert report, and developed cross-examination questions for deposition and trial. Also, provided a rebuttal analysis of economic damages.

- Provided consulting services to plaintiff's counsel in a matter alleging wrongful termination and breach of contract for a high-ranking executive at a health care company.  Evaluated labor market earnings potential, calculated economic damages, reviewed defendant's expert analyses, and drafted a report of findings and a rebuttal report.



- Provided consulting services to plaintiff's counsel in a matter alleging wrongful termination and breach of contract for a highly compensated sales employee in the high-tech industry. Evaluated labor market earnings potential, calculated economic damages, created exhibits for use at mediation, and created trial exhibits.

- Provided consulting services to defense counsel in a wrongful termination matter that alleged discrimination based on national origin brought by a former project manager at a large engineering corporation. Analyzed mitigation factors and calculated loss of earnings.

## Insurance Coverage/Environment/Statistics

Assignments representative of Mr. Crandall's experience in related to insurance converge, environmental claims, and other statistical matters include:

- Provided consulting services to defense counsel in connection with a Department of Justice investigation regarding allegations of racial profiling by a large city police department. Analyzed departmental data related to over 130,000 traffic stops, pedestrian stops, and other types of police contacts that occurred in four selected weeks in 1997 and four selected weeks in 1999. Cross-referenced traffic stops data with other departmental information sources including human resources data, precinct level paper records, and the officer discipline system to test various hypotheses.

- Provided consulting services to defense counsel in a 17200 action alleging that the defendant insurer was using inappropriate condition adjustments when settling vehicle total loss claims. Services included analyzing theoretical issues related to used car pricing, conducting regression analysis to estimate coefficients for various condition adjustments, and determining the fairness of the settlements amounts for the name plaintiffs vehicles.

- Provided consulting services to coverage counsel in a CERCLA cost recovery action. Created a database of costs relating to the clean-up of several sites once used by an aerospace and defense contractor. Performed analysis to apportion clean up costs between covered and not covered.

- Provided consulting services supporting coverage counsel in a binding arbitration where the underlying issue was coverage for thousands of asbestos claims. Performed SAS programming, statistical analysis, created summary exhibits, and drafted a report of findings.

- Provided consulting services to coverage counsel in a class action matter alleging overcharging in workman's compensation insurance. Analyzed the difference in aggregate premium paid and the economic impact of reclassifying certain medical and legal costs.

- Provided consulting services to coverage counsel for an underlying class action case alleging damages from exposure to asbestos. Analyzed through SAS programming defense and settlement costs for over 100,000 claims. Constructed a model to apportion costs between various insurers and covered and not covered claims.



- Provided consulting services to defense counsel in a class action ADA matter brought against a government transit agency. Created databases from hard copy paper records, analyzed internal agency data, and merged all data to develop a comprehensive database of access failures.  Assisted in the design of a statistical sampling scheme for future monitoring of access to the disabled.

## Forensic Accounting/Business Valuations/Commercial Damages

Assignments representative of Mr. Crandall's experience related to general damages analysis, forensic accounting, finance, and antitrust include:

- Provided consulting services and expert witness testimony to defense counsel in a breach of contract matter. Services included analyzing financial records, estimating damages, and performing a valuation analysis of the plaintiff's business.

- Provided consulting services to defense counsel in a breach of contract matter where the underlying issue was fraudulent inducement of employment.  Services included analyzing financial records to determine the value of shareholder equity at various points in time, creating financial models related to economic losses, analysis of financial performance of an unrelated third party to assess but-for opportunity.

- Provided consulting services to plaintiffs' counsel in class-action matter where the underlying issue was fraudulent overcharges of California consumers. Services included estimating the range of potential damages under a variety of scenarios.  Filed declaration.

- Provided consulting services to plaintiff's counsel in lender liability arbitration involving a complex financial transaction.  Created a financial model that demonstrated the feasibility of the transaction under various interest rate and market return scenarios.

- Provided consulting services to defense counsel in a class action matter alleging unfair business practices related to gift certificate redemptions at a major national retailer.  Services included creating survey to determine redemption patterns and analysis of company data.

- Provided consulting services to plaintiff's counsel in a breach of contract matter related to the testing of an innovative dental implant product.  Analyzed plaintiff's sales, products, marketing, and sales of plaintiff's competitors, analyzed the products, marketing, and sales of potential market entrants, and developed damages analyses based on a market share approach.

- Provided consulting services to defense counsel in a case alleging usury and fraud.  Analyzed accounting records and other data, determined the appropriate interest charges, and quantified overcharge.

- Provided consulting services to plaintiffs and cross-defense counsel in a tort matter alleging interference with recruiting for high-tech salespeople.  Analyzed labor markets and internal recruiting data, and developed damages theory and analyses related to the expected economic return on investments in human capital.  Drafted declaration and provided deposition and strategy support.

- Provided consulting services to plaintiff's counsel in a breach of contract matter related to financing sub-prime equipment leases. Reviewed financial records of plaintiff's business, industry data, and cohort data, and developed a financial model projecting lost profits under a variety of default scenarios.

- Provided consulting services to defense counsel in an antitrust matter alleging anti-competitive behavior in large-scale model industry. Performed forensic accounting involving the reconstruction of sales and purchases of a multi-million dollar closely held-entity. Managed process of converting numerous paper records into computerized format and developed database to analyze sales, purchases, and gross profit margins through SAS programming. Performed accounting to determine if the plaintiff was committing fraudulent practices. Provided deposition support including drafting questions for counsel in the depositions of several fact and expert witnesses.

- Provided consulting services to plaintiff's counsel in a breach of contract matter involving a medical device. Performed SAS programming to create a database of sales and customers. Researched the market for the product in question and developed a damages model based on a market share approach.

- Provided consulting services to defense counsel in a medical malpractice action where the underlying damages issue was valuing an income stream from a closely held cash business. Performed accounting of plaintiff's financial records to determine existence and extent of fraud. Created financial models to calculate damages under a variety of scenarios.

## Intellectual Property

Assignments representative of Mr. Crandall's experience related to intellectual property, trademark, and trade dress disputes include:

- Provided consulting services to plaintiff's counsel in a patent infringement action against a bedding manufacturer. Created database of sales of the patented product by the defendant and plaintiff. Analyzed price erosion caused by the sales of the competing product to the plaintiff's customers and the consequential damages resulting from the diminution of margins.

- Consulting to plaintiff's counsel in a trademark infringement action. Converted paper records to computerized format and created a database of sales attributed to the trademarked product. Analyzed data to calculate profits and consequential damages.

- Provided consulting services to defense counsel in a patent infringement action involving a high-end coffee cup manufacturer. Analyzed sales data and assisted counsel in determining an appropriate amount for settlement.

- Provided consulting services to defense counsel in a trademark infringement/breach of contract matter. Services included valuing the future income generated through use of the trademark and developing financial models and analyses of damages related to a breach of contract cross-complaint related to potential products that exploited the trademark.



- Provided consulting services to claimant's counsel in a matter alleging patent infringement, trademark infringement, and breach of contract claim involving a food additive.  Services included evaluating the market potential for the product and estimating economic damages.

## Education

**Loyola Marymount University**
Masters of Business Administration

**University of Southern California**
Bachelor of Arts, History

## Employment History

**Resolution Economics LLC**
   1998–Present: Partner, Project Manager, Senior Consultant

**Deloitte & Touche, LLP**
   1998:          Senior Consultant, Dispute Consulting Services (Los Angeles)

**Altschuler, Melvoin and Glasser LLP**
   1996-1998:    Staff and Senior Consultant and Marketing Manager, Economics and Litigation Services (Los Angeles)

**Price Waterhouse LLP**
   1993-1996:    Marketing Manager, Dispute Analysis and Corporate Recovery Group (Los Angeles)

## Publications

"Surveys Can Help Court Decide Issues of Commonality", *Los Angeles Daily Journal,* January 28, 2004, Robert W. Crandall and Karyn Model

"Pros and Cons of Anonymous Surveys", December 2011, Richard Goldberg and Robert W. Crandall

"Wage and Hour Litigation", chapter in <u>Litigation Services Handbook</u>, ed. by Roman Weil, et al., 2012

## Memberships

Los Angeles County Bar Association – Labor and Employment Section

Society for Human Resources Management

resolution economics LLC

### Robert W. Crandall, M.B.A.
### Attachment to Resume

---

## TESTIMONY AND AFFIDAVITS PRESENTED (2018-2023)

In the matter of Valerie Alberts, et al. v. Aurora Behavioral Health Care et al., Case No: BC419340, related to data analysis of labor code violation claims and class certification issues, Declaration Filed December 5, 2012. Deposition testimony March 19, 2013.  Rebuttal report filed February 28, 2018. Deposition testimony April 19, 2018.

In the matter of Nate Booker, et. al., v. Tanintco, Inc., et al., Case No: BC 349267, And related cases: BC351252, BC354230, related to statistical analysis of data, rebuttal of plaintiffs' expert report, and response to plaintiffs' trial plan.  Report filed June 9, 2015.  Deposition testimony July 14, 2015. Report filed October 20, 2017.  Report filed July 27, 2018. Report filed September 10, 2019. Deposition testimony September 13, 2019.   Trial testimony February 7, 2020, February 10, 2020, and February 11, 2020.

In the matter of Archivaldo Marquez, et al. v. Weber Distribution, Case No. BC 512269, related to rebuttal of plaintiffs' trial plan and proposed survey.  Report filed March 11, 2016. Rebuttal report filed May 16, 2016.  Deposition testimony March 20, 2018.

In the matter of Christopher Levanoff, et al. v. SoCal Wings LLC., et al., Case No: 30-2011-00511808-CU-OE-CXC, related to statistical analysis of data, rebuttal of opposing expert, evaluation of trial plan, rebuttal of opposing expert's survey.  Reports filed on April 26, 2016, June 3, 2016, July 7, 2016, September 23, 2016, January 24, 2017, September 6, 2017, September 19, 2017 and January 18, 2018.  Deposition testimony October 5, 2016.  Trial testimony June 26, 2018, June 27, 2018. Trial testimony June 26, 2018 and June 27, 2018.

In the matter of Troy Slack, et al. v. Swift Transportation CO. of Arizona, LLC., Case No: 3:11-cv-05843-BHS. Related to statistical analysis of data, analysis of economic damages, and rebuttal to plaintiffs' expert report.  Report filed March 10, 2017.   Trial testimony July 18, 2017.

In the matter of Naomi Slaton, et. al. v. Dole Packaged Foods, et al., Case No: CVM016111.  Related to evaluation of trial plan and statistical analysis of data.  Report filed March 22, 2017. Supplemental report filed July 10, 2017. Rebuttal report filed March 28, 2018.

In the matter of Donna Busik, et. al. v. Maplebear Inc., et al., JAMS reference #1100081511, related to statistical analysis of data and business model to evaluate independent contractor status.

In the matter of Party City Wage and Hour Cases, JCCP Case No. 4781. Related to statistical analysis of data in connection with class certification issues.  Report filed May 31, 2017.  Deposition testimony July 26, 2017.  Report Filed March 19, 2019.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of William Helmick, et. al. v. Air Methods Corp., et. al., Case No: RG133665373, PMK deposition regarding a wage and hour audit.  Deposition testimony June 5, 2017.  Expert report related to class certification issues filed on September 29, 2017. Damages report filed July 30, 2018. Deposition testimony August 2, 2018. Deposition testimony July 7, 2019.  Trial testimony July 22, 2019.

In the matter of Eric Chavez et al. v. Converse, Inc., et al., Case No: 5-cv-03746-NC.  Related to statistical analysis of data.  Report filed June 23, 2017.  Rebuttal report filed September 20, 2017. Report filed March 20, 2020.

In the matter of Jorge Estrada, et al. v. Royal Carpet Mills, Inc., Case No: 30-2013-00692890-CU-OE-CXC, related to statistical analysis of data and trial plan issues.  Report filed July 19, 2017.  Trial Testimony April 29, 2019.

In the matter of Westfall, et, al,  v. Ball Metal Beverage Container Corporation, Case No:  2:16-cv-02632-KJM-GGH, related to statistical analysis of data.  Report filed August 28, 2017.  Supplemental report filed January 28, 2019.

In the matter of Gray et al. v. Hansel Ford, Inc., Case No:  SCV258850, related to statistical analysis of data.  Report filed August 30, 2017. Additional report file in response to Plaintiffs' Motion for Summary Adjudication on January 31, 2020.

In the matter of Mary Andrews, et. al. v. TRG Customer Solutions, Inc., et. al., Case No: 1:14-cv-00135, related to statistical analysis of data for class certification and merits.  Report filed September 11, 2017.  Deposition testimony February 13, 2018. Rebuttal Report filed March 16, 2018.

In the matter of Robyn James, et. al. v. American Corporate Security, et. al., Case No: BC525388, related to response to plaintiffs' PAGA trial plan.  Report filed October 2, 2017.  Supplemental report filed May 29, 2018.

In the matter of Balapuwaduge Mendis, et. al. v. Schneider National Carriers, Inc. et al., Case No: 2:15-cv-00144 JCC, statistical analysis of data, evaluation of merits and damages issues.  Report filed October 30, 2017.  Rebuttal report filed December 15, 2017. Deposition testimony February 8, 2018. Report filed March 23, 2018.

In the matter of Eric Bahra v. County of San Bernardino.  Case No. 5:16-cv-01756-JGB-SP, related to analysis of economic damages.  Report filed November 20, 2017.  Trial testimony July 14, 2021.

In the matter of Irean Amaro, et. al. v. Anaheim Arena Management LLC, Case No: 30-2017-00917542, related to the fairness of class action settlement.  Report filed January 11, 2018. Supplemental Report filed April 20, 2018.

In the matter of Robert Shaw, et al. v. AMN Services LLC, Case No: 3:16-cv-02816 JCS, related to statistical analysis of data related to class certification issues.  Report filed January 15, 2018. Deposition April 26, 2018.

**ATTACHMENT A**

In the matter of <u>Miguel Rojas-Cifuentes et. al. v. ACX Pacific Northwest Inc. et. al.</u>, Case No: 2:14-cv-00697-JAM-CKD, related to statistical analysis of data for class certification issues, rebuttal of opposing expert.  Report filed January 19, 2018.

In the matter of <u>Juan Barajas, et. al. v. WHM LLC, et. al.</u>, Case No: BC491045, related to analysis of reporting time pay.  Report filed January 31, 2018.

In the matter of <u>Emily Howell, et. al. v. Advantage RN LLC, et. al.</u>, Case No: 3:17-cv-00883-JLS-BLM, related to statistical analysis of data.  Report filed February 2, 2018.  Supplemental report filed May 23, 2019.

In the matter of <u>Diana Vasquez, et. al. v. Warren Distributing Inc., et. al.</u>, Case No: BC549552, related to statistical analysis of data for class certification issues.  Report filed February 2, 2018. Deposition March 20, 2018.  Rebuttal report Filed May 1, 2018.

In the matter of <u>Maria Juarez, et. al. v. Columbia Riverside Inc., et al</u>. Case No: RIC1509204, related to statistical analysis of data for class certification issues and rebuttal of opposing expert.  Report filed February 5, 2018. Deposition testimony March 7, 2018.

In the matter of <u>Jose Nevarez v. Foster Farms LLC,</u> Case No: 13CECG02624, related to statistical analysis of data in support of Defendant's Motion for Summary Adjudication.  Report filed February 28, 2018.  Related to statistical analysis of data and trial plan issues for class certification. Report filed July 11, 2019.

In the matter of <u>Landon Fulmer, et. al., v. Golden State Drilling, Inc.,</u> Case No:  S-1500-CV-279707, Related to analysis of data for liability and damages purposes and rebuttal of opposing expert. Deposition testimony April 30, 2018.

In the matter of <u>Felipe Alverez, et. al. v. YRC Inc., et al.,</u> Case No:  CV 12-0134-TJH-F, related to statistical analysis of data for class certification purposes.  Report filed May 7, 2018.

In the matter of <u>Jaime Maradriaga, et al. v. PIH Health, et al.,</u> Case No: BC597115, related to statistical analysis of data in connection with class certification issues.  Report filed May 23, 2018. Deposition testimony August 21, 2018.  Rebuttal report September 20, 2018.

In the matter of <u>Sephora Wage and Hour Cases</u>, Judicial Council Coordination Proceeding No.: 4911, related to statistical analysis of data for class certification purposes.  Report filed May 29, 2018.  Deposition June 14, 2018. Report related to merits issues and responding to survey filed August 5, 2020.

In the matter of <u>Daniel Rodriguez, et. al., v. TC Mel Trucking, Big E Transportation, et al.,</u> Case No: 219-2017-CV-00327, related to analysis of trucking company business model.  Report filed July 5, 2018.  Report filed March 15, 2019.  Deposition testimony April 5, 2019.

**ATTACHMENT A**

**resolution economics** LLC                              **Robert W. Crandall, M.B.A.**

In the matter of <u>CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC</u>, Case No: 1:17-cv-00025-CJW, related to analysis of claims and rebuttal of damages. Report Filed July 20, 2018. Rebuttal Report filed September 28, 2018. Trial testimony July 19, 2019.

In the matter of <u>Ricardo Gomez, et al. v. USF Reddaway Inc., et al.</u>, Case No: 2.16-cv-05572-JAK (FFM), related to statistical analysis of data for class certification purposes. Report filed July 30, 2018.

In the matter of <u>John May v. Inter-Con Security Systems, Inc.</u>, Case No. BC645310, related to analysis of economic damages and mitigation opportunities. Deposition testimony August 3, 2018.

In the matter of <u>Norma Gonzalez, et al. v. Waterway Plastics</u>, Case No. 56-2014-00460995-CU-OE-VTA, related to statistical analysis of data for class certification. Report filed August 11, 2018. Supplemental report filed June 14, 2019.

In the matter of <u>Juan Towle, et al. v. Cummins Pacific, et al.</u>, Case No: 3:18-cv-00083-LAB-JLB, related to statistical analysis of data for class certification and rebuttal of opposing expert. Report filed August 31, 2018. Deposition testimony September 5, 2018.

In the matter of <u>Robert Chase and Preston Epps v. Haliburton Energy Services</u>, Arbitration No: 1210034965, related to economic damages. Deposition testimony September 24, 2018. Arbitration testimony October 11-12.

In the matter of the <u>State of Washington Employment Security Department v. Zimride Inc., dba Lyft</u>, Case No: 021729 related to analysis of independent contractor status. Report filed October 11, 2018.

In the matter of <u>Devon Isbell v. Party City Corporation</u>, Case No: 3:17-cv-00709-MMD-VPC, related to analysis of economic damages. Report filed October 19, 2018. Deposition testimony November 6, 2018.

In the matter of <u>Ronald Pineda v. Abbot Laboratories Inc., et al</u>. Case No: CV18-3395 SVW (RAOx). Related to analysis of economic damages. Report filed November 1, 2018. Rebuttal report filed November 16, 2018. Deposition testimony November 27, 2018. Supplemental report filed July 27, 2021. Supplemental rebuttal report filed August 4, 2021.

In the matter of <u>CRST Expedited Inc. v. JB Hunt Transport Inc</u>., Case No: 1:17-cv-00026-LRR, related to analysis of claims and rebuttal of damages. Report filed November 2, 2018.

In the matter of <u>Matthew Ogura, et. al. v. Thrifty Payless Inc., et. al</u>, Case No: BC605968. Related to statistical analysis of data for class certification. Report filed November 16, 2018. Deposition testimony March 18, 2019. Supplemental Report filed July 16, 2019.

In the matter of <u>Johnny Moody, et. al. v. Infotree Service Inc., et. al.</u> Case No: BC673011. Related to statistical analysis of data. Report filed November 16, 2018.

In the matter of <u>Mark Prado, et. al. v. Wal-Mart Stores Inc., et al</u>. Case No: 2:17-cv-05630-AB KK, related to analysis of claims and rebuttal of trial plan. Report filed November 30, 2018.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

---

In the matter of Rodrigo Reqeudan v. Centerplate of Delaware Inc., Case No: 17-cv-03828-LHK, related to statistical analysis of data for class certification. Report filed December 3, 2018

In the matter of Marriage of Najarian, Case No: BD634136, related to reasonable compensation of executives of closely held corporation.  Report filed December 12, 2018.

In the matter of Richard Hose, et al. v. Washington Inventory Service, et al., Case No: 3:14-cv-02869-WQH-AGS, related to rebuttal of opposing experts. Report filed December 17, 2018

In the matter of Perez De Leon v. Dunn-Edwards Corporation. Case No: 17-CV-306134, related to analysis of economic damages. Deposition testimony January 8, 2019.  Arbitration testimony February 25, 2019. Report filed April 20, 2020.

In the matter of Timothy Quick v. The County of San Bernardino, Case No: 5:18-cv-00105-JVS (SPx), related to analysis of economic damages.  Report filed January 30, 2019.

In the matter of Rexann Jasso v. Walmart Stores Inc., Case No: 2:18-cv-02344-ODW-JC, related to analysis of economic damages.  Report filed February 4, 2019.

In the matter of Patricia Rodriguez v. Jack in the Box., Case No: RG17847828, related to statistical analysis of data.  Deposition testimony March 4, 2019.  Trial testimony May 15-16, 2019.

In the matter of Carol Lear, et al. v. Hitachi Automotive Systems, Case No: 5:17-CV-00186-JMH, related to analysis of timekeeping and payroll data with regard to exemption issues, including rebuttal to plaintiffs' expert report.  Report filed March 11, 2019.  Supplemental report filed June 24, 2021.  Rebuttal report filed July 23, 2021.  Deposition testimony August 24, 2021.

In the matter of Stephanie Heredia, et al. v. Eddie Bauer LLC, Case No: 5:16-cv-06236-BLF, related to statistical analysis of data.  Report filed March 29, 2019.  Report filed April 30, 2019.  Deposition Testimony May 3, 2019.

In the matter of William Edwards, et al. v. Leaders in Community Alternatives, Inc., Case No: 4:18-cv-4609, related to statistical analysis of data.  Report filed April 8, 2019.

In the matter of Carolyn Medina v. SCPMG, Case No: BC613714, related to analysis of economic damages.  Report filed April 15, 2019.  Deposition Testimony April 18, 2019.  Deposition testimony October 7, 2019.

In the matter of William Richards v. County of San Bernardino, Case No: 17-cv-00497-SJO-SP, related to analysis of economic damages.  Report filed May 7, 2019.

In the matter of Pike v. County of San Bernardino, Case No: 5:17-cv-01680, related to statistical analysis of data and rebuttal of opposing expert.  Report filed May 13, 2019.

**ATTACHMENT A**

resolution economics llc                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Scot Lee Allison vs. Halliburton Energy Services, Inc.</u>, Arbitration No: 12100035811, related to economic damages.  Deposition testimony May 17, 2019.  Deposition testimony October 30, 2019.  Arbitration testimony November 11, 2019.

In the matter of <u>Shaon Robinson, et al vs. The Chef's Warehouse, Inc.</u>, Case No: 3:15-cv-05421-RS, related to statistical analysis of data and rebuttal of opposing expert.  Report filed May 30, 2019.

In the matter of <u>La Tasha Coates, et al vs. United Parcel Services, Inc.</u>, Case No: 2:18-cv-03012-PSG-AFM, related to statistical analysis of data and rebuttal of opposing expert.  Report filed June 3, 2019.

In the matter of <u>Cindy Castillo, et. al. v. Bank of America, et. al.</u>, Case No: 8:17-cv-00580-DOC (KESx), related to statistical analysis of data for class certification. Report filed June 17, 2019.

In the matter of <u>Azizi Baranauskas, et al., v. Healthcare Manager Services LLC</u>, et. al, Case No:  37-2017-00013171-CU-OE-NC, related to statistical analysis of data for class certification purposes.  Report filed July 5, 2019.  Deposition Testimony July 10, 2019.

In the matter of <u>Manuel Vigueras, et. al. v. Red Robin International Inc., et. al</u>, Case No: 8:17-cv-1422, related to statistical analysis of data, rebuttal of trial plan.  Report filed July 8, 2019.  Supplemental report filed January 21, 2020.  Rebuttal report filed February 5, 2020.  Deposition testimony February 18, 2020.

In the matter of <u>Barbara Ruotolo, Edward Williams, and Chris Kalhoon v. Lyft, Inc.</u>, Case No: AAA 01-18-0003-9788, 01-18-0003-9782, 01-18-0003-9777, related to statistical analysis of data, discussion of business model and control issues. Report filed August 14, 2019.  Deposition testimony August 20, 2019.

In the matter of <u>Alejandra Del Aguila v. Herbalife International of America Inc.</u>, Case No: BC689113, related to analysis of economic damages.  Report filed September 3, 2019.

In the matter of <u>Amber Pardue, et al. v. CBC Restaurant Corp., et al.</u>, Case No: 2:19-cv-03920-R (SKx), related to statistical analysis of data in connection with class certification and rebuttal of opposing expert. Report filed September 9, 2019.

In the matter of <u>Esmat Yadkouri v. Wal-Mart</u>, Case No. BC620135, related to analysis of economic damages.  Deposition testimony September 20, 2019.

In the matter of <u>Gene Sugimoto v. Intercon Security</u>, Case No: 3:19 –CV-0025 DMS-BLM, related to analysis of economic damages. Report filed September 26, 2019.

In the matter of <u>Patricia Harvey, et. al. v. Bed Bath & Beyond et al.</u>, Case No: RG17885153, related to analysis of seating claims in connection with evaluation of the settlement fairness. Report filed September 30, 2019.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Irma Frausto et. al. v. Bank of America, National Association</u>, Case No: 3:18-cv-01983-LB (Frausto)/3:18-cv-01202-LB (Suarez), related to class certification. Report filed October 11, 2019.  Rebuttal report filed November 15, 2019.

In the matter of <u>John Utne, et. al., v. The Home Depot USA, Inc</u>., Case No: 3:16-CV-01854-RS, related to video study of claims.  Report filed October 16, 2019. Supplemental Declaration filed December 20, 2019. Rebuttal report filed April 30, 2020.  Sur-rebuttal report filed December 17, 2021.  Deposition testimony February 4, 2022. Deposition testimony August 23, 2022.

In the matter of <u>Ashley Broussard v. The Geo Group, et. al.</u>, Case No. CIVDS1722295, related to analysis of economic damages.  Deposition testimony October 31, 2019.

In the matter of <u>Melody Cunningham, et. al, v. Lyft Inc., et al</u>., Case No: 1:19-CV-11974-IT, related to statistical analysis of data. Reports filed November 6, 2019 and April 3, 2020.

In the matter of <u>Roberto Tellez, et. al. v. Harvest Container Co., et al</u>, Case No:  VCU264528, related to statistical analysis of data for class certification. Report filed December 16, 2019.

In the matter of <u>Andrew Gordon, et. al, v. TBC Retail Group, Inc</u>., et.al, Case No: 2:14-cv-03365-DCN, related to statistical analysis of data.  Report filed November 20, 2019.  Deposition testimony January 17, 2020.

In the matter of <u>Robert Cole and Kristie King v. Sallyport Global Holdings, Inc</u>., Case No: 2018-2951, related to analysis of economic damages.  Report filed January 2, 2020.

In the matter of <u>Arliss Villalta, et. al. v. Leonardo's Restaurant Inc., et. al</u>., Case No: BC542133, related to discussion of trial plan.  Report filed January 20, 2020.  Deposition testimony February 24, 2020.

In the matter of the <u>People of the State of California v. Maplebear Inc., dba Instacart</u>, Case No:37-2019-00048731-CU-MC-CTL, related to statistical analysis of data.  Report filed February 2, 2020.

In the matter of <u>Mesfin Haile v. LA Auto Distributors</u>, Case No: 18-3162-MDM, related to analysis of economic damages and rebuttal of opposing expert.  Deposition testimony March 10, 2020.

In the matter of <u>John Rogers, et al. v. Lyft</u>, Case No: CGC-20-583685, related to statistical analysis of data.  Report filed March 25, 2020.  Report filed April 16, 2020.

In the matter of <u>Christopher Lyons, et al., v. Air Methods Corp., et al</u>, Case No: 3:20-cv-01700-PJH (DMR), related to potential amounts in controversy. Report filed April 22, 2020.

In the matter of re: <u>Westamerica Wage and Hours Issues</u>, Case No JCCP004921, related to trial plan issues. Report filed April 30, 2020.   Report filed November 13, 2020.  Deposition December 1, 2020.

In the matter of <u>Scott Stout, et. al. v. GEO Group, et. al.</u>, Case No:  37-2019-00000650-CU-CR-CTL, related to statistical analysis of data and class certification issues.  Report filed June 18, 2020.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of Christine Andersen, et. al. v. RSCR California Inc., et. al., Case No: 5:18-cv-02474-JAK-KK, related to statistical analysis of data, trial plan, and survey issues. Report filed June 30, 2020. Deposition testimony August 27, 2020. Supplemental Report October 1, 2020.

In the matter of Nick Nichols v. City of Burbank, Case No EC06467, related to analysis of economic damages. Deposition testimony July 15, 2020

In the matter of Audrey Heredia, et. al. v. Sunrise Senior Living, et. al., Case No: 8:18-cv-01974-JLS-JDE. Related to rebuttal of opposing expert. Report filed September 1, 2020. Deposition Testimony October 22, 2020. Supplemental report June 23, 2021. Supplemental declaration August 16, 2021.

In the matter of Omar Ahmad v. Lyft, Case No: AAA Action No. 01-20-0001-7550, related to data analysis, independent contractor status, and damages. Report filed September 4, 2020.

In the matter of Emilia Santos, et al. v. United Parcel Service Inc,, Case No: 3:18-cv-01377-EMC, related to statistical analysis of data, rebuttal, and trial plan issues. Report filed September 18, 2020. Deposition September 25, 2020.

In the matter of HFR R&B Holdings, LLC v. Mapletree SR Management Pte. Ltd, JAMS Reference No: 1220061992, analysis of wage and hour issues in connection with a purchase price dispute. Report filed September 21, 2020. Arbitration testimony November 20, 2020.

In the matter of Lisa Boczko v. Lyft, Inc., Case No: AAA Action No. 01-20-0000-7324, related to data analysis, independent contractor status, and damages. Report filed September 18, 2020.

In the matter of Oscar Granados v. The GEO Group., Case No: 8:20-cv-00478-DOC-DFM, related to calculating loss of earnings capacity in a personal injury matter. Report filed October 9, 2020.

In the matter of Charles Hoffman v. Lyft, Inc., Case No: AAA Action No. 01-20-0001-6875, related to data analysis, independent contractor status, and damages. Report filed October 15, 2020.

In the matter of Larry Roach, et al. v. Wal-Mart Stores, Inc., Case No: 5:18-CV-02536 AB-KK, related to rebuttal of opposing expert. Report filed October 30, 2020.

In the matter of Roberto Ruiz, et al., v. Unity Courier Services, et. al., Case No: BC724435, related to statistical analysis of data in support of motion to strike. Report filed November 11, 2020. Deposition testimony February 25, 2021.

In the matter of Daniel Barnett v. Lyft, Inc., Case No: AAA Action No: 01-20-0001-7323, related to data analysis, independent contractor status, and damages. Report filed December 9, 2020.

In the matter of Deena Asamurai, et, al. v. First Technology Federal Credit Union, Case No: S-CV-0044446, related to statistical issues associated with trial plan. Report filed December 14, 2020.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Dean A. Robbins, et al, v. Phillips 66 Company, et al</u>., Case No: 3:18-cv-00292-RS (consolidated Case No. 19-cv-01558-RS), related to statistical analysis of data and statistical issues associated with trial plan.  Report filed December 21, 2020.  Deposition testimony January 15, 2021.

In the matter of <u>Michael Lavigne, et, al. v. Herbalife Ltd.</u>, Case No: 2:18-cv-07480-JAK (MRWx), related to statistical analysis of the relationship between earnings and event attendance of Herbalife distributors. Report filed January 11, 2021. Deposition testimony February 2, 2021.

In the matter of <u>Michelle Hinds, et, al. v. FedEx Ground Package Systems,</u> Case No: 4:18-cv-01431-JSW (AGT), related to trial plan issues, rebuttal of opposing expert. Report filed February 5, 2021. PAGA declaration filed February 25, 2022.  Deposition testimony April 8, 2022.

In the matter of <u>Mary Jane Gonzales, et. al., v. Healthcare Services Group, Inc</u>, et al. Case No: CGC-18-570988, related to statistical analysis of data and trial plan issues.  Report filed February 11, 2021.  Supplemental report filed May 30, 2021.

In the matter of <u>Louis Ibarra, et al. v. Artisan Screen Printing, et. al.</u>, Case No: BC644708, related to statistical analysis of data in connection with class certification issues.  Report filed February 19, 2021. Deposition testimony March 27, 2021.

In the matter of <u>Victor Polina, et. al. v. Skechers USA Inc</u>., et al., Case No: 19STCV20234, related to video observation study and statistical analysis of data in connection with suitable seating claims. Report filed March 2, 2021.  Deposition testimony March 5, 2021.

In the matter of <u>Eric Ayala, et. al., v. UPS Supply Chain Solutions, et al.</u>, Case No: 5:20-cv-00117 PSG-AFM, related to statistical analysis of data, video observation, rebuttal of opposing expert, and critique of trial plan.  Report filed March 15, 2021. Deposition testimony April 7, 2021.

In the matter of <u>John Elmy, et. al. v. Western Express, et. al.</u>, Case No: 3:17-CV-01199, related to statistical analysis of data related to class certification issues.  Report filed March 17, 2021.

In the matter of <u>Kevin Anderson et. al. v. Equinox Holdings Inc., et. al.</u>, Case No: 37-2018-00014364-CU-OE-CTL, related to statistical analysis of data, discussion of trial plan issues, rebuttal of opposing experts, and rebuttal of survey conducted by opposing counsel.  Report filed April 2, 2021.

In the mater of <u>Michelle Frey v. Creative Artists Agency</u>, Case No: 1210037212, related to analysis of economic damages.  Declaration filed April 20, 2021. Arbitration testimony May 13, 2021.

In the matter of <u>Herman Overpeck, et. al. v. FedEx Corporation, et. al.,</u> Case No:  4:18-cv-07553-PJH (DMR), related to statistical analysis of data and rebuttal of opposing expert.  Report filed June 1, 2021.  Deposition testimony August 10, 2021.

In the matter of <u>Hernan Hernandez v. Restoration Hardware, et. al</u>., Case No: CIVDS1723322, related to statistical of data and rebuttal of opposing expert.  Report filed June 4, 2021.  Deposition testimony June 18, 2021.  Supplemental report filed September 2, 2021.

**ATTACHMENT A**

resolution economics LLC                                        **Robert W. Crandall, M.B.A.**

In the matter of <u>Ronald Held, et. al. v. Hitachi Automotive Systems Americas</u>, et. al., Case No: 18-CI-00294, related to statistical analysis of data.  Report filed June 28, 2021. Rebuttal report filed July 23, 2021.  Deposition testimony August 24, 2021.

In the matter of <u>Randy Salinas, et. al. v. The Cornwell Quality Tools Company, et al.</u>,  Case No: 5:19-cv-02275-FLA-SP, related to statistical analysis of data and discussion of business model issues. Report filed July 2, 2021.   Deposition testimony July 20, 2021.

In the matter of <u>Christine Crump, et al. v. Hyatt Corporation, et. al</u>., Case No: 4:20-cv-00295-HSG, related to statistical analysis of data, critique of opposing experts, and trial plan.  Report filed July 15, 2021.

In the matter of <u>Marvin Nash, et. al. v. Horizon Freight System Inc., et. al</u>., Case No: 3:19-cv-01833-VC, related to rebuttal of opposing experts survey and data study.  Report filed July 23, 2021. Rebuttal report filed September 10, 2021.

In the matter of <u>Earnest Cuadra, et. al. v. FedEx Ground Package System, et. al</u>., Case No: 2:20-cv-10719-JFW (SKx), related to rebuttal of opposing expert's survey.  Report filed July 26, 2021. Deposition testimony July 27, 2021. Supplemental report filed August 16, 2021.

In the matter of <u>Natalie Haaverson, et al. vs. Tavistock Freebirds LLC et al</u>., Case No: RG19030716, related to analysis of restaurant operations.  Report filed August 16, 2021.  Supplemental report filed September 20, 2021.

In the matter of <u>Claudia Alvarado, et. al. v. Wal-Mart Associates Inc., et. al</u>, Case No: 2:20-cv-01926-AB-KK, related to analysis of class certification issues and critique of opposing expert. Report filed August 16, 2021. Deposition testimony September 23, 2021.

In the matter of <u>Kathleen Williams and Michael Hill v. City of Long Beach, et al</u>, Case No: 2:18-cv-01069-AB-JC, related to discussion of data and racial profiling claims.  Report filed August 20, 2021. Rebuttal report filed September 17, 2021.  Deposition testimony October 8, 2021.

In the matter of <u>Yolanda Bennett v. AT&T Services Inc</u>., Case No: 4:20-cv-03581-JST, related to analysis of economic damages.  Report filed August 31, 2021.  Rebuttal report filed September 30, 2021.

In the matter of <u>Sherman Garnett v. County of San Bernardino, et al</u>., Case No: CIVDS1938394, related to analysis of economic damages.  Deposition testimony September 3, 2021.

In the matter of <u>Elsie Romero, et. al. v. Select Employment Services, et al</u>., Case No: 2:19-cv-06369-AB-AGR, related to statistical analysis of data and trial plan issues. Report filed September 10, 2021.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Valerie Sampson, et. al. v. Knight Transportation</u>, et. al.,  Case No: 2:17-cv-00028
JCC, related to statistical analysis of data and labor market benchmarking.  Report filed October 12,
2021.  Rebuttal report filed October 29, 2021.  Supplemental declaration December 22, 2021.

In the matter of <u>Brian Dittman, et. al. v. Medical Solutions Inc.</u>, Case No: 2:17-cv- 01851-MCE-
CKD, related to statistical analysis of data and labor market benchmarking.  Report filed October 14,
2021.

In the matter of <u>Marlea Dell Anno v. City of San Diego</u>, Case No: 37-2017-00000118-CU-OE-CTL,
related to analysis of economic damages.  Report filed October 15, 2021.  Deposition testimony
October 20, 2021.  Trial testimony March 15, 2022.

In the matter of <u>Donna Preston v. Lyft</u>, AAA Action No. 01-20-0005-0881, related to data analysis,
independent contractor status, and damages.  Report filed October 19, 2020.

In the matter of <u>Joseph Kennedy v. Lyft</u>, AAA Action No. 01-20-0005-0613, related to data analysis,
independent contractor status, and damages.  Report filed October 19, 2020.

In the matter of <u>Daniel McCoy v. Lyft</u>, AAA Action No. 01-20-0005-0878, related to data analysis,
independent contractor status, and damages.  Report filed October 19, 2020.

In the matter of <u>Camille Green, et. al. v. Cornerstone Services Inc., et al</u>., Case No: 1:20-cv-00706-
MWM, related to statistical analysis of data.  Report filed October 22, 2021.

In the matter of <u>Stephen Kohr v. ULINE Inc., et. al.</u>, Case No: CIVIDS1912069, related to statistical
analysis of data.  Report filed October 25, 2021.  Deposition testimony November 4, 2021.

In the matter <u>Julian Vargas, et. a. v. Quest Diagnostics Clinical Laboratories Inc</u>., et. al., Case No:
2:19-cv-08108-DMG, related to statistical issues and trial management plan.  Report filed November
1, 2021.  Deposition testimony November 15, 2021.

In the matter of <u>Anthony Mostajo, et. al. v. Nationwide Mutual Insurance, et. al</u>., Case No: 2:17-CV-
00350-JAM-AC, related to statistical analysis of data and rebuttal of survey.  Report filed November
5, 2021.

In the matter of <u>Giuliana Mendiola v. Regents of the University of California</u>, et. al., Case No: 5:20-
cv-00832-ODW-KK, related to analysis of economic damages.  Report filed December 24, 2021.

In the matter of <u>George Stickles, et. al. v. Atria Senior Living, et al</u>., Case No: 3:20-cv-09220-WHA,
related to statistical analysis of data and rebuttal of opposing expert.  Report filed December 31,
2021.

In the matter of <u>Karen Hartstein, et. al. v. Hyatt Corporation, et. al</u>., Case No: 2:20-cv-04874-DSF-
JPR, related to rebuttal of opposing experts.  Report filed January 7, 2022.

**ATTACHMENT A**

**resolution economics** LLC                                  **Robert W. Crandall, M.B.A.**

In the matter of <u>Frank Fodera, et. al. v. Equinox Holdings Inc., et al.</u>, Case No: 3:19-cv-05072-WHO, related to statistical analysis of data and rebuttal of opposing experts.  Report filed February 4, 2022. Rebuttal report filed February 23, 2022. Supplemental report filed August 3, 2022.

In the matter of <u>Sharey Thomas, et. al. v. Maximus Inc.</u>, Case No: 3:21-cv-00498-DJN, related to statistical analysis of data.  Report filed February 10, 2022. Supplemental report filed March 1, 2022.

In the matter of <u>Harjus Birk v. The Regents of the University of California</u>, Case No: 37-2020-00007663-CUWT-CTL, related to analysis of economic damages.  Report filed March 4, 2022.

In the matter of <u>Brian Koos v. The Regents of the University of California</u>, Case No: 18STCV00470, related to analysis of economic damages.  Report filed March 7, 2022.

In the matter of <u>Verna Clarke, et. al. v. AMN Services Inc</u>., Case No:. 2:16-cv-4132 DSF (KSx), related to statistical analysis of data.  Report filed March 8, 2022.

In the matter of <u>Farzin Morena v. Tesla Inc.</u> Jams Arbitration No: 1240023994, related to economic damages.  Report filed March 11, 2022.  Supplemental report filed April 24, 2022. Deposition testimony April 26, 2022.

In the matter of <u>Hekmatollah Yosifi v. The Regents of the University of California,</u> Case No: BC724191, related to economic damages.  Deposition testimony March 14, 2022.

In the matter of <u>Alfredo Martinez and Justin Page v. Southern California Edison</u>, et. al., Case No: BC670461, related to analysis of economic damages.  Deposition testimony March 17, 2022. Trial testimony May 24, 2022.

In the matter of <u>George Chacon, et al. v. Express Fashion Operations LLC, et al.</u>, Case No: 8:19-CV-00564 JLS (DFMx), related to statistical analysis of data.  Report filed March 24, 2022. Deposition testimony April 18, 2022 and April 28, 2022.

In the matter of <u>Maurice Frank, et. al. v. Golden Gate Bell, et. al</u>., Case No: RG18913275, related to statistical analysis of data.  Report filed March 25, 2022.

In the matter of <u>Dawn Winship v. PruCo Securities</u>, FINRA Case No: 19-00083, related to analysis of economic damages and rebuttal of opposing expert.  Report filed March 24, 2022.  Arbitration testimony March 30, 2022.

In the matter of <u>Racklin v. Zeta Global Corp</u>, United States District Court for the Eastern District of Virginia – Alexandria Division, Civil Action No: 1:21-cv-01035-AJT-JFA related to analysis of economic damages.  Co-authored with Richard Goldberg. Report filed on April 13, 2022.

In the matter of <u>Todd Hearn v. Pacific Gas & Electric Company</u>, Case No: 20CV000391, related to analysis of economic damages and rebuttal of opposing expert.  Deposition testimony April 21, 2022. Trial testimony October 3, 2022.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Vanna Troung v. American Red Cross, et. al.</u>, Case No: 2:21-cv-05789 GW(GJSx), related to analysis of economic damages. Report filed May 2, 2022. Rebuttal Report May 23, 2022.

In the matter of <u>Cecilia Rodriguez, et. Al. v. Wal-Mart Associates, Inc.</u>,  Case No: 2:20-cv-07045, related to rebuttal of opposing expert's proposed survey.  Report filed May 10, 2022.

In the matter of <u>Carla Sanchez, et. al. v. Sam's West Inc., et. al.</u>, Case No: 2:21-CV-05122-SVW-JC, related to rebuttal of opposing expert's proposed survey. Report filed May 11, 2022.  Deposition testimony May 27, 2022.

In the matter of <u>Andres Lopez v. Giorgio Armani Corporation,</u> Case No: BC71329, related to statistical analysis of data and rebuttal of plaintiff's trial plan.  Report filed May 20, 2022. Deposition testimony November 10, 2022.

In the matter of <u>Amanda Bowers, et. al. v. Prolink Staffing Services</u>, et al., Case No: 21STCV22188, related to statistical analysis of data.  Report filed June 1, 2022. Supplemental report filed March 29, 2023.

In the matter of <u>Jennifer Hua v. Western Asset Management Company</u>, et. al., Case No: 19STCV31305, related to analysis of economic damages and rebuttal of opposing expert. Deposition testimony August 25, 2022.

In the matter of <u>Roberts v. TransAm</u>, et al., Case No: 2:21-cv-02073-JWB-GEB, related to analysis of minimum wage and allegations of fraud.  Declaration filed July 22, 2022. Declaration filed September 6, 2022.  Deposition testimony October 27, 2022.

In the matter of <u>Jennifer Brum, et. al. v. MarketSource Inc., et. al</u>., Case No: 2:17–CV–00241–KJM–JDP, related to statistical analysis of data, rebuttal of opposing experts, and discussion of trial plan. Report filed August 9, 2022. Deposition testimony September 7, 2022.

In the matter of <u>Gregory Andrews v. US Bank</u>, Case No: 8:22-cv-00117-DOC-DF, related to analysis of economic damages. Report filed September 7, 2022.  Rebuttal report filed October 7, 2022.

In the matter of <u>Nicholas Tomaszewski v. City of Palmdale, et. al.</u>, Case No: MC026483, related to analysis of economic damages and rebuttal of opposing expert.  Deposition testimony September 12, 2022.

In the matter of <u>Michael Gonzalez, et. al. v. Charter Communications, et al</u>., Case No: 2:20-cv-08299-SB-AS, related to statistical analysis of data.  Report filed September 20, 2022.  Rebuttal report filed October 10, 2022.

In the matter of <u>Anthony Jones v. City of Alhambra, et. al</u>., Case No: 19STCV11721, related to analysis of economic damages and rebuttal of opposing expert.  Report filed September 20, 2022. Deposition testimony September 22, 2022.

**ATTACHMENT A**

**resolution economics** LLC                                        **Robert W. Crandall, M.B.A.**

In the matter of <u>Bonnie Gawf v. City of Monterrey,</u> Case No: 20CV003232, related to analysis of economic damages and rebuttal of opposing expert.  Report filed September 20, 2022.  Deposition testimony September 23, 2022.

In the matter of <u>Kyle Walker v. Howmedica Osteonics Corp., et al.</u>, Case No: 22-cv-002640-MMA-JLB, related to analysis of economic damages.  Report filed October 14, 2022.  Rebuttal report filed November 4, 2022.  Deposition testimony December 8, 2022.

In the matter of <u>Julio Garcia, et. al. v. Walmart, et al.</u>, Case No: 18-cv-00500-L-MDD, related to statistical analysis of data and rebuttal of opposing expert.  Report filed October 21, 2022.  Rebuttal report filed December 9, 2022.  Deposition testimony January 5, 2023.

In the matter of <u>Austin Works, et. al. v. Flowers Foods Inc., et al</u>. Case No: 3:21-cv-03567, related to analysis of data and independent contractor issues.  Report filed October 17, 2022.  Deposition testimony November 29, 2022.

In the matte of <u>Desmond Augustine, et. al.  v. United Parcel Service, et. al.</u>, Case No: BC636468, related to statistical analysis of data and rebuttal of opposing experts.  Report filed October 24, 2022.

In the matter of <u>Carla Janzen v. Regents of the University of California, et. al.</u>, Case No: 19STCV24840, related to analysis of economic damages and rebuttal of opposing expert.  Trial testimony October 28, 2022.

In the matter of <u>Martin J. Walsh, Secretary of Labor, et al. v. Nursing Home Care Management Inc., et. al.</u>, Case No: 21-2583-CFK.  Related to analysis of potential unpaid wages and rebuttal of opposing expert. Report filed November 18, 2022.

In the matters of <u>Stephanie Walker v. Lyft</u>, <u>Steven Ortega v. Lyft</u>, <u>Michael Foster v. Lyft</u>, <u>Gabriel Lopez v. Lyft</u>, <u>Michael Ayres v. Lyft</u>, and <u>Antonio Alves v. Lyft</u>,  AAA Action Nos. 01-22-0001-7556, 01-22-0001-7557, 01-22-0001-7521, 01-22-0001-7463, 01-22-0001-7402, and 01-22-0001-7417,  respectively, related to data analysis, independent contractor status, and damages.  Reports filed December 2, 2022.

In the matter of <u>Lucio Lemus, et. al. v. Owens Brockway Container Glass Company</u>, Case No: 2:21-CV-00146 FLA (AFMx), related to statistical analysis of data and rebuttal of opposing expert.  Report filed December 9, 2022. Deposition testimony January 9, 2022.

In the matter of <u>Armando Haro, et. al. v. Walmart Inc</u>., Case No: 1:21-cv-00147, related to analysis of video data.  Report filed December 14, 2022.  Deposition testimony January 4, 2023.

In the matter of <u>Nicholas Lara, et al. v. Z Golf Food & Beverage Services, et al.</u>, Case No: RIC1905177, related to statistical analysis of data and rebuttal of opposing expert.  Report filed December 16, 2022.  Deposition testimony January 6, 2023.

**ATTACHMENT A**

resolution economics LLC                                    **Robert W. Crandall, M.B.A.**

In the matter of <u>Juan Carlos Corral, et al. v. Staples the Office Superstore LLC,</u> Case No: 2:22-cv-01254-MCS-(PVCx), related to statistical analysis of data and rebuttal of opposing expert.  Report filed January 27, 2023.

In the matter of <u>Kathy Arrison, et al. v. Walmart Inc., et. al.</u>, Case No: CV-21-00481-PHXSMB, related to the scientific collection of data and statistical analysis of data.  Report filed February 3, 2023. Deposition testimony March 16, 2023.

In the matter of <u>Joseph Ash, et al. v. Flowers Foods Inc, et al</u>., Case No: 1:21-CV-03566, related to analysis of independent contractor issues.  Report filed February 16, 2023.

In the matter of <u>David Padilla, et al. v. Walt Disney Parks and Resorts, et al.</u>, Case No: 2019-01077209-CU-OECXC, related to statistical analysis of data, scientific collection of data, and rebuttal of opposing expert.  Report filed February 17, 2023.  Deposition testimony March 24, 2023.

In the matter of <u>Edward Castillo v. Burrtec Industries, et al</u>,. Case No: 19STCV31323, related to analysis of economic damages.  Report filed March 14, 2023.  Deposition testimony March 17, 2023.

In the matter of <u>Antoine Richard, et al. v. Flowers Foods Inc, et al.</u>, Case No: 6:15-CV-02557, related to analysis of independent contractor issues.  Report filed March 15, 2023.

In the matter of <u>Raymond Knight, et. al, v. Flowers Foods Inc., et. al.</u>, Case No: NO. 21cv3568, related to analysis of independent contractor issues. Report filed March 16, 2023.

In the matter of <u>Home Point Financial Corporation v. Donald Mark Lane, Candace Robertson Christopher Wilkins, and Guaranty Home Mortgage Corporation</u>, Case No: 6:20-cv-01819-CEM-EJK, related to analysis of economic damages. Report filed March 31, 2023. Rebuttal report filed May 15, 2023.

In the matter of <u>Claudia Carr, et. al. v. Walmart Inc., et. al.</u>, Case No: 5:21-cv-01429-AB-KK, related to statistical analysis of data and rebuttal of opposing expert.  Report filed April 7, 2023.

In the matter of <u>Requel Martin v. Jacobs Engineering, et. al</u>, Case No: 2:22-cv-06240-MRW, related to analysis of economic damages.  Report filed April 19, 2023.

In the matter of <u>Jerome King, et. al, v. Flowers Foods Inc., et. al.</u>, Case No: 3:21-cv-00579, related to analysis of independent contractor issues. Report filed May 1, 2023.

In the matter of <u>Suzanne Alfonso, et. al. v. FedEx Ground Package System, Inc.</u>, Case No: 3:21-CV-1644 (SVN), related to scientific data collection and statistical analysis of data.  Report filed May 15, 2023.

**ATTACHMENT A**