**LAW OFFICES OF C. JOE SAYAS, JR.**
C. JOE SAYAS, JR. (Bar No. 122397)
KARL P. EVANGELISTA (Bar No. 250685)
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

**KING CHENG MILLER & JIN, LLP**
DAVID P. KING (Bar No. 136765)
3675 Huntington Drive, Suite 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

DORA PATRICIA AMAYA, an individual; and ANIBAL SILVA, an individual; on behalf of themselves and others similarly situated,

Plaintiffs,

vs.

MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,

Defendants.

Case No.: 2:22-cv-05915-HDV-MAR
Hon. Hernán D. Vera

CLASS ACTION

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

Date: TBD (per Dkt. No. 52)
Time: TBD (per Dkt. No. 52)
Location: Courtroom 5B

///

///

///

///

///

///

## TABLE OF CONTENTS


Page

I. INTRODUCTION 1

II. PLAINTIFFS ARE ADEQUATE CLASS REPRESENTATIVES UNDER FRCP RULE 23(a)(4) 1

A. Arbitration and LMRA Preemption Defenses Do Not Present Unique Defenses That Would Foreclose Adequacy Under FRCP Rule 23(a)(4) 1

B. FRCP Rule 23(a)(4) Does Not Require Class Representatives to Independently Investigate Job Experiences of All Other Class Members 3

III. COMMON QUESTIONS PREDOMINATE AS TO MEAL-BREAK CLAIMS 4

IV. MENZIES' MERITS-BASED ARGUMENTS AS TO REST-BREAK CLAIMS HIGHLIGHT PREDOMINANCE OF COMMON ISSUES 8

V. COMMON QUESTIONS PREDOMINATE AS TO LABOR CODE SECTION 2802 CLAIMS 9

VI. CONCLUSION 10

# TABLE OF AUTHORITIES


| | Page(s) |
|---|---|
| **FEDERAL CASES** | |
| *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904 (9th Cir. 2018) | 3 |
| *Amgen Inc.* v. *Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184 (2013) | 6-7, 9 |
| *Campbell v. Vitran Express, Inc.*, No. CV 11-5029 RGK (SHx), 2015 U.S. Dist. LEXIS 155512 (C.D. Cal. Nov. 12, 2015) | 9 |
| *Chacon v. Express Fashion Operations LLC*, No. 8:19-cv-00564-JLS-DFM, 2021 U.S. Dist. LEXIS 195353 (C.D. Cal. Jun. 14, 2022) | 7 |
| *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015 (9th Cir. 2012) | 2 n.3 |
| *Garcia v. Cent. Coast Rests., Inc.*, No. 18-cv-02370-RS, 2022 U.S. Dist. LEXIS 38803 (N.D. Cal. Mar. 4, 2022) | 2 |
| *Gomez v. J. Jacobo Farm Labor Contr., Inc.*, 334 F.R.D. 234 (E.D. Cal. Nov. 6, 2019) | 3-4 |
| *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) | 1 n.1 |
| *In re Facebook Privacy Litig.*, No.10-cv-02389-RMW, 2016 U.S. Dist. LEXIS 119293 (N.D. Cal. Sep. 2, 2016) | 3 |
| *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024 (9th Cir. 2016) | 3 |
| *Morgan v. Rohr, Inc.*, No. 20-cv-574-GPC-AHG, 2022 U.S. Dist. LEXIS 61046 (S.D. Cal. Mar. 31, 2022) | 6 |
| *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020) | 2 n.4 |
| *Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) | 1 n.1 |
| *Santillan v. Verizon Connect, Inc.*, No. 3:21-cv-1257-H-KSC, 2022 U.S. Dist. LEXIS 182405 (S.D. Cal. Jun. 13, 2022) | 5, 6 n.5, 7, 10 |
| **CALIFORNIA CASES** | |
| *Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal.4th 1004 (Cal. 2012) | 5 |
| *Donohue v. AMN Services, LLC*, 11 Cal.5th 58 (Cal. 2021) | 5, 7 |
| *Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal.App.5th 685 (Cal. Ct. App. Mar. 23, 2022) | 4-5, 7 |


///

## TABLE OF AUTHORITIES (Cont'd)


| | Page(s) |
|---|---|
| **FEDERAL STATUTES** | |
| *9 U.S.C. § 1* | 2 |
| *Fed, R, Civ. Proc. Rule 23(a)(1)* | 1 |
| *Fed, R, Civ. Proc. Rule 23(a)(2)* | 1 |
| *Fed, R, Civ. Proc. Rule 23(a)(3)* | 1 n. 1 |
| *Fed, R, Civ. Proc. Rule 23(a)(4)* | 1, 2 |
| *Fed, R, Civ. Proc. Rule 23(b)(3)* | 1 |
| **CALIFORNIA STATUTES** | |
| *Cal. Lab. Code § 2802* | 9 |

## I. INTRODUCTION

Defendant Menzies Aviation (USA), Inc. (hereafter, "Menzies") does not dispute that Plaintiffs' proposed class is sufficiently numerous and ascertainable to satisfy Rule 23(a)(1) of the Federal Rules of Civil Procedure ("FRCP"), or that common questions of law or fact satisfy the commonality requirement of FRCP Rule 23(a)(2). Instead, Menzies' Opposition focuses on two issues: (1) whether Plaintiffs are adequate class representatives under FRCP Rule 23(a)(4); and (2) whether common questions of law or fact predominate over individual issues as required by FRCP Rule 23(b)(3).[1] As detailed below, the requirements of subdivisions (a)(4) and (b)(3) of FRCP Rule 23 are both satisfied here.

## II. PLAINTIFFS ARE ADEQUATE CLASS REPRESENTATIVES UNDER FRCP RULE 23(a)(4)

Menzies asserts inadequacy based on two theories: (1) that Plaintiffs are subject to unique individual defenses, Dkt. No. 50, 17:3-16, 25:11-19; and (2) that Plaintiffs have failed to personally investigate the work experiences of other class members. Dkt. No. 50, 24:25-25-1. Neither theory has merit.

### A. Arbitration and LMRA Preemption Defenses Do Not Present Unique Defenses That Would Foreclose Adequacy Under FRCP Rule 23(a)(4)

The question of whether Menzies can compel arbitration as to Plaintiff Amaya is not a defense unique to her and inapplicable to other class members. Indeed, Menzies concedes

---

[1] In a brief footnote in their Opposition, Menzies also asserts that "factual differences between the Plaintiffs' evidence and that of Menzies' declarants show that typicality is absent." Dkt. No. 50, at p. 22 n. 27. Tellingly, no authority is cited for the proposition. Menzies misconstrues the typicality requirement of FRCP Rule 23(a)(3): it does not require an absence of disputed facts. Instead, typicality is satisfied where the proposed class claims "arise from the same course of events" and are founded on "similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."). As detailed in Plaintiffs' Motion, that standard is met here.

that "virtually every employee in California" is subject to Menzies' arbitration agreement. Dkt. No. 50, 3:12-15, 18:21-24. As such, the question of whether such arbitration agreements fall under the Federal Arbitration Act ("FAA") exemption for "contracts of employment of…any…class of workers engaged in foreign or interstate commerce," *9 U.S.C. § 1*, presents a common question of law that may properly be adjudicated class-wide.[2] Thus, Menzies' arbitration defense does **not** raise doubts as to Plaintiff Amaya's adequacy under FRCP Rule 23(a)(4),[3] as **all** of the class members, including Plaintiffs, signed arbitration agreements with Menzies. Dkt. No. 50, 3:12-15, 18:21-24. In other words, Plaintiffs are in the same position as the other class members, such that there is no conflict, and Plaintiffs would vigorously assert the same or similar defenses on behalf of themselves and the class on the common question of whether Menzies' arbitration agreements are enforceable. *See Garcia v. Cent. Coast Rests., Inc.*, No. 18-cv-02370-RS, 2022 U.S. Dist. LEXIS 38803, at *11-12 (N.D. Cal. Mar. 4, 2022) (finding that plaintiff who successfully disaffirmed arbitration agreement in wage-and-hour case may properly assert same or similar challenges on behalf of class of individuals subject to arbitration agreement, and thus satisfied adequacy and typicality requirements of FRCP Rule 23(a)).[4]

---

[2] Challenges to Menzies' arbitration agreement on grounds of unconscionability is likewise a common question of law that may be adjudicated on behalf of the entire class.

[3] FRCP Rule 23(a)(4) requires that Plaintiffs and their counsel: (1) have no conflict of interests with other class members; and (2) have the capacity and willingness to prosecute the action vigorously on behalf of the class. *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012). Plaintiffs adequately meet these requirements.

[4] Contrary to Menzies' suggestion, the fact that its California employees fall into different job classifications does not require that each individual class member be queried as to their individual job duties to determine applicability of the transportation workers exemption under the FAA. Instead, each **job classification** applicable to numerous class members may be examined—based on uniform written job descriptions provided in discovery, and representative testimony from individuals in those positions—to determine whether such job classification is engaged in foreign or interstate commerce, i.e., the movement of goods or persons across borders. *See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 910 (9th Cir. 2020) (in determining FAA exemption for transportation workers engaged in foreign or interstate commerce, Ninth Circuit defined commerce as: "Intercourse by way of trade and traffic

Similarly, Menzies' defense of Labor and Management Relations Act ("LMRA") preemption is not "unique" to Plaintiffs: Menzies acknowledges that "virtually all" putative class members "are represented by one of the several unions at Menzies..." Dkt. No. 50, 3:2-4. Thus, a common question of law will determine the propriety of Menzies' LMRA preemption defense, namely, whether the "state law claim arises entirely from or requires construction of a CBA." *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 914 (9th Cir. 2018); *see Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016) (preemption of state law claims under LMRA § 301 determined by "whether the right 'is nevertheless substantially dependent on analysis of a collective-bargaining agreement'"). Individualized inquiries of each class member will not be required.

**B. <u>FRCP Rule 23(a)(4) Does Not Require Class Representatives to Independently Investigate Job Experiences of All Other Class Members</u>**

Menzies mistakenly argues that Plaintiffs are inadequate simply because they did not personally investigate the work conditions of all class members at Menzies. Dkt. No. 50, 24:21-25:1. However, it is **<u>not</u>** required that class representatives show that they know much more than the typical class member, or that they educated themselves on the job experiences of all putative class members at every single work site. "'The threshold knowledge required of the class representatives is low…It is not necessary that a representative be intimately familiar with every factual and legal issue in the case.'" *In re Facebook Privacy Litig.*, No.10-cv-02389-RMW, 2016 U.S. Dist. LEXIS 119293, at *19-20 (N.D. Cal. Sep. 2, 2016).

As such, Menzies' argument was expressly rejected in *Gomez v. J. Jacobo Farm Labor Contr., Inc.*, where the defendant-employer had argued that "the adequacy requirement is not satisfied because Plaintiffs 'failed to demonstrate that [the proposed class representative] has any more knowledge of and involvement in this case than anyone else." *Gomez v. J. Jacobo Farm*

---

between different people or states and the citizens or inhabitants thereof, including not only the purchase, sale, and exchange of commodities, but also the instrumentalities and agencies by which it is promoted and the means and appliances by which it is carried on, and the transportation of persons as well as of goods…"). Such determination would be appropriate for class treatment.

*Labor Contr., Inc.*, 334 F.R.D. 234, 252 (E.D. Cal. Nov. 6, 2019). The District Court explained that "the adequacy requirement does not require the class representative to have more knowledge of the case than the other class members." *Id.* at 253. Noting that the proposed class representative "spoke with Plaintiffs' counsel and agreed to be the class representative," and had "appeared and testified at his deposition, which was noticed and conducted by his adversary, Defendant," the court ruled that the "evidence shows that [the proposed class representative] has been sufficiently involved in this case." *Id.*

Despite its nitpicking, Menzies does not provide evidence showing that Plaintiffs are either so uninformed about the claims in this case, or so disengaged from its litigation, as to cast doubt on their adequacy as class representatives. To the contrary, the record here reflects that Plaintiffs have both been actively involved in this case, conferring with and providing valuable information to their counsel, responding to discovery, providing declarations, and testifying at depositions. *See* Supplemental Declaration of C. Joe Sayas, Jr. ("Sayas Decl."), ¶¶ 4 - 12. Like in *Gomez*, Plaintiffs have been sufficiently involved in this case. *See Gomez, supra*, 334 F.R.D. at 253.

## III. COMMON QUESTIONS PREDOMINATE AS TO MEAL-BREAK CLAIMS

There is also no merit to Menzies' contention that individualized inquiries would predominate the meal-break claims asserted on behalf of the class. As detailed in Plaintiffs' moving papers, the California Supreme Court's recent decision in *Donohue v. AMN Services, LLC* "established a rebuttable presumption affecting the burden of proof" on the meal-break claims. *See Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal.App.5th 685, 719 (Cal. Ct. App. Mar. 23, 2022). In their Opposition, Menzies asks this court to disregard this rule and instead allow Menzies to "present individualized defenses" requiring the court "to determine *why* a meal period was late, short or skipped." Dkt. No. 50, 21:11-14.

Such insistence on individualized inquiries as to the *why* of each non-compliant meal break runs wholly counter to the basis of *Donohue*, which is premised on an express rejection of defendant-employers' oft-asserted argument "'that the question of why a meal period was missed renders meal period claims *categorically* uncertifiable.'" *Estrada*, 76 Cal.App.5th at 722

(*quoting Brinker Rest. Corp. v. Sup. Ct.*, 53 Cal.4th 1004, 1052 (Cal. 2012) (conc. Opn. of Werdegar, J.)) "Justice Werdegar explained, 'such a per se bar would be inconsistent with the law governing reporting obligations and our historic endorsement of a variety of methods that render collective actions judicially manageable.' Rather, '[i]f an employer's records show no meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided.'" *Id.* at 723 (internal citations omitted). "*Donohue* expressly adopted Justice Werdegar's concurrence…" *Id.* (*citing Donohue v. AMN Services, LLC*, 11 Cal.5th 58, 75-76 (Cal. 2021). Thus, under *Donohue*, "'[i]f time records show missed, short, or delayed meal periods with no indication' that premium pay was provided, then a rebuttable presumption arises that the employee was not provided a compliant meal period." *Estrada* at 722 (*citing Donohue*, 11 Cal.5th at 77. The California Court of Appeal in *Estrada* explained:

> "The presumption derives from an employer's duty to maintain accurate records of meal periods." "'To place the burden elsewhere would offer an employer an incentive to avoid its recording duty and a potential windfall from the failure to record meal periods.' "'[W]here the employer has failed to keep records required by statute, the consequences for such failure should fall on the employer, not the employee,'"'" "Employers can rebut the presumption by presenting evidence that employees…had in fact been provided compliant meal periods during which they chose to work. 'Representative testimony, surveys, and statistical analysis,' along with other types of evidence, 'are available as tools to render manageable determinations of the extent of liability.'"

*Estrada* at 722 (*quoting Donohue*, 11 Cal.5th at 76-77) (internal citations omitted); *see also Santillan v. Verizon Connect, Inc.*, No. 3:21-cv-1257-H-KSC, 2022 U.S. Dist. LEXIS 182405, at *38-39, 41 (S.D. Cal. Jun. 13, 2022) (finding that *Donohue* "specifically enumerated **'[r]epresentative testimony, surveys, and statistical analysis**,'…as classwide evidence that may be used to rebut the presumption of liability") (emphasis supplied).

Here, Menzies' electronic time and pay records create a rebuttable presumption of liability and damages for meal-break violations that are appropriate for class treatment. *See Morgan v. Rohr, Inc.*, No. 20-cv-574-GPC-AHG, 2022 U.S. Dist. LEXIS 61046, at *49-50 (S.D. Cal. Mar. 31, 2022) ("With a full dataset of payroll data and timekeeping records, meal break premiums owed to putative class members for missed and shortened meal breaks can be assessed on a classwide basis, and will not necessarily require individual inquiry into the circumstances surrounding each and every employee's work shifts and meal break periods."). Menzies' records show meal-break violations with equivalent meal-break premium wages totaling an estimated $10,511,115. *See* Dkt. No. 49-1, ¶¶ 11-12. Of this amount, only $1,126,295 have been paid by Menzies, *see* Dkt. No. 49-1, ¶ 13, representing 10.7% of the aggregate due to employees. In other words, 90.3% of the premium wages owed for non-compliant meal breaks (i.e., $9,284,820),[5] remains unpaid to the putative class. *See id.*

Curiously, Menzies' Opposition seems to rely on the very type of common evidence available to rebut the presumption of liability that is enumerated by *Donohue*—to wit, representative testimony in the form of competing declarations[6]—albeit mostly improperly focused on the merits at this class certification stage of proceedings. *See Amgen Inc.* v. *Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1184, 1195 (2013) ("Merits questions may

[5] The numbers, while tentative as Menzies has yet to complete its production for the entire class period, is undisputed by Menzies. These numbers are shown to illustrate that liability and damages to the class can manageably be determined from Menzies' own records.

[6] Menzies' attempt to submit "competing [declarations] with the opposite experience," does not establish that "'common proof' is unavailable" or "the necessity of individualized inquiries." Dkt. No. 50, 22:11-12. As a primary matter, such merits arguments do not defeat certification. Moreover, the "common proof" is the time and pay records through which the presumption arises under *Donohue*. Menzies' Declarations simply show that those declarants were either themselves able to take compliant meal periods or received meal premiums. They provide no insight as to the many non-compliant meal periods *without* premium wages suffered by other employees, which are clearly reflected in Menzies' records, and cannot rebut the presumption of accuracy of those records. *See Santillan*, *supra*, 2022 U.S. Dist. LEXIS 182405, at *39 (declarations attesting to compliant meal periods does not go to affirmative defense of voluntary waiver).

be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied…(citations omitted) [A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."). Menzies' proffer of such common evidence, along with common evidence of their written policies and timekeeping procedures, further highlights the propriety of class adjudication of the meal-break claims in this case. *See Estrada*, *supra*, 76 Cal.App.5th at 722; *Santillan*, *supra*, 2022 U.S. Dist. LEXIS 182405, at *38-41 (predominance under FRCP Rule 23(b)((3) satisfied, as employer's defense of voluntary waiver of meal breaks actually provided is subject to common evidence of employer's meal period policies and timekeeping procedures, as well as "representative testimony, surveys, and statistical analysis" specifically enumerated by *Donohue* as "classwide evidence that may be used by an employer to rebut the presumption of liability and show compliant meal periods or voluntary waiver"); *see also Chacon v. Express Fashion Operations LLC*, No. 8:19-cv-00564-JLS-DFM, 2021 U.S. Dist. LEXIS 195353, at *24 (C.D. Cal. Jun. 14, 2022) (expressly rejecting employer's argument that "each and every instance where an employee did not take a meal during a voluntarily 'waivable' meal period would still need to be individually investigated to determine *why* the employee did not take the meal" in light of rebuttable presumption created by employer's electronic time and pay records pursuant to *Donohue*).

Menzies, however, seemingly attempts to rebut the *Donohue* presumption by discrediting its own electronic time and pay records, through its economist, Randall Crandall, who suggests a collection of individualized inquiries that could possibly be used to determine if putative class members could have been given meal-break opportunities that nonetheless may not have appeared in Menzies' comprehensive time and pay records. But Mr. Crandall's proposals not only go against the California Supreme Court's presumption of accuracy of employer records; his method is also not one of those prescribed procedures for rebutting that presumption. *See Donohue*, *supra*, 11 Cal.5th at 76-77; *Estrada*, 76 Cal.App.5th at 722; *Santillan*, 2022 U.S. Dist. LEXIS 182405, at *38-41.

Mr. Crandall's musings hardly rise to the level of a statistical analysis or survey mentioned by the *Donohue* Court as potentially sufficient to rebut the presumption. His speculations about possible windows of downtime, without evidence that Menzies actually provided employees a duty-free opportunity for meal periods, does nothing to cast doubt on the accuracy of time and pay records required of Menzies by California law. The records of late, shortened and missed meal periods, which were created at the time of the events and recorded under strict timekeeping procedures, are presumed accurate and reliable under *Donohue*. Indeed, the High Court's presumption of accuracy is afforded greater weight[7] in light of Menzies' common timekeeping policies and procedures, which: (i) strictly requires all employees to accurately record their meal periods under threat of discipline; (ii) requires employees to fill in Missed Punch Forms if they missed any clock-in or clock-out, including for meal periods; (iii) requires Timekeepers and Managers to regularly review hours recorded on Menzies' timekeeping system at each pay period, and (iv) requires Manager approval of time cards before employee payroll is processed, to ensure accuracy. Dkt. No. 41-1, § II. C.[8]

## IV. MENZIES' MERITS-BASED ARGUMENTS AS TO REST-BREAK CLAIMS HIGHLIGHT PREDOMINANCE OF COMMON ISSUES

Plaintiffs contend that Menzies had an unofficial policy to violate its facially-compliant written rest-break policies: breaks are taken only with permission from supervisors but are withheld until work is completed, indicating Menzies' preferred policy to prioritize completion

---

[7] In fact, Menzies' Opposition uses the same time and pay records to support its defense that some payments of meal premiums were made to Plaintiffs' Declarants. Menzies' own reliance on these records underlies the predominance of employer records as the common evidence upon which adjudication of the central question in this case will be made.

[8] *See also* Deposition of Gracie Puckett, attached as Exhibit A to Sayas Decl., at 14:18-15:21, 16:14-17:3, 21:19-22:8, 30:7-16, 33:4-11, 50:12-51:7 (Payroll Director testified that payroll is not processed unless they have Managers' review and approval of time cards); Deposition of Gustavo P. Papagno, attached as Exhibit B to Sayas Decl., at 12:12-13:21, 15:25-16:16, 18:11-24, 23:14-24:18, 25:11-24, 28:14-31:19, 39:15-40:2, 47:18-48:1, 59:17-60:9 (Time and Attendance Manager testified that Menzies' time records are reviewed daily, are generally accurate, and that he cannot think of any reason why anyone should doubt the accuracy of such records).

of work for its airline clients more than providing breaks to its employees.[9] Menzies counters that the declarations they submitted with their Opposition, and the deposition testimony of Menzies' managers, disproves the existence of an improper unwritten policy. But rather than establish impropriety of class treatment, Menzies' merits argument highlights the predominance of common issues making class certification proper.

"[T]he office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.'" *Amgen Inc.*, *supra*, 133 S. Ct. at 1190. This "requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Id.* Menzies' opposition merely highlights that the question of whether Menzies has an unofficial rest-break policy to violate their own facially-compliant written policies remains in dispute. Answering that question in a class-wide proceeding makes practical sense, as said answer will drive resolution of the primary issue underlying the rest-break claims. *See Amgen, Inc.* at 1190; *see also Campbell v. Vitran Express, Inc.*, No. CV 11-5029 RGK (SHx), 2015 U.S. Dist. LEXIS 155512, at *23-24, 26 (C.D. Cal. Nov. 12, 2015) (competing declarations stating rest-break compliance are merits arguments more appropriately made at the post-certification stage; court ruled that "common questions predominate as to Plaintiff's claim that Defendant maintained an unofficial policy to deprive employees of their…rest breaks").

## V. COMMON QUESTIONS PREDOMINATE AS TO LABOR CODE SECTION 2802 CLAIMS

Menzies asserts that individual issues would predominate on Plaintiffs' cellphone-reimbursement claims, in that each class member would need to be queried to determine whether they were issued a cell phone by Menzies, and whether their use of their personal cell phone for work tasks was "required" or done for personal "preference or convenience." Menzies misconstrues the standard applicable to cell phone reimbursements under Labor Code Section 2802. As discussed in Plaintiffs' Motion, the showing of "necessity" needed to

[9] *See* Dkt. No. 41-1, p. 6-9 (§ II. B. of MPA) *and* footnotes 3, 4, 14, 15, and 16. Dkt. No. 41-1, p. 13-14.

prove a claim under Labor Code Section 2802 is not the same as a showing that use of the cell phone was "required" in the sense that it was mandatory. *Santillan*, *supra*, at *8 ("'[n]ecessary' does not mean 'mandatory' in the sense that the employer ordered the employee to incur the expense"). Inquiry into necessity under Section 2802 involves: (i) whether the relevant subclass of employees performed core duties on their personal cell phones; and (ii) whether the employer provided a reasonable alternative to use for those core duties. *See id.* at *8-10.

As Menzies concedes that only a limited number of company-issued radios and cell phone were available, and only for supervisory personnel, identification of the subclass will primarily involve identification of those Menzies written job classifications where the employee is either required to be at different work areas in the course of their work shift and/or required to be in contact with other employees not located in the same location. Representative testimony obtained during post-certification discovery would then be used to confirm whether individuals employed in the identified job classifications in fact used cell phones to perform core duties and whether Menzies provided a reasonable alternative to perform those core duties on something other than personal cell phones. *See id.* Contrary to Menzies' suggestion, asking each and every class member regarding their use of cell phones at work will not be necessary.

## VI. CONCLUSION

For the foregoing reasons, as well as those advanced in their initial moving papers, Plaintiffs request that the Court grant class certification in this matter.

Respectfully submitted,

Dated: July 3, 2023

**LAW OFFICES OF C. JOE SAYAS, JR. and KING CHENG MILLER & JIN, LLP**

By: */s/ C. Joe Sayas, Jr.*
C. JOE SAYAS, JR.
KARL P. EVANGELISTA
Attorneys for Plaintiffs