**LAW OFFICES OF C. JOE SAYAS, JR.**
C. JOE SAYAS, JR. (Bar No. 122397)
KARL P. EVANGELISTA (Bar No. 250685)
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

**KING CHENG MILLER & JIN, LLP**
DAVID P. KING (Bar No. 136765)
3675 Huntington Drive, Suite 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

DORA PATRICIA AMAYA, an
individual; and ANIBAL SILVA, an
individual; on behalf of themselves and
others similarly situated,

        Plaintiffs,

    vs.

MENZIES AVIATION (USA), INC., a
Delaware corporation; and DOES 1
through 10, inclusive,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:22-cv-05915-HDV-MAR
Hon. Hernán D. Vera

CLASS ACTION

**SUPPLEMENTAL DECLARATION OF C. JOE SAYAS, JR. IN SUPPORT OF REPLY BRIEF RE: CLASS CERTIFICATION**

Date:   TBD (per Dkt. No. 52)
Time:   TBD (per Dkt. No. 52)
Location:  Courtroom 5B

///
///
///
///
///

1

## DECLARATION OF C. JOE SAYAS, JR.

I, C. Joe Sayas, Jr., hereby declare:

1.      I am an attorney admitted to practice before this Court and all the courts of the State of California.  I am counsel of record for Plaintiffs Dora Patricia Amaya and Anibal Silva (collectively, "Plaintiffs") in this action.  I have personal knowledge of the facts stated in this declaration, and, if called as a witness, I could and would competently testify thereto.

2.      Attached hereto as Exhibit A is a true and correct copy of relevant excerpts from the transcript of the deposition of Gracie Puckett, a managerial employee of Defendant Menzies Aviation (USA), Inc. (hereafter, "Menzies"), whose deposition was taken in this case by Plaintiffs on May 16, 2023.

3.      Attached hereto as Exhibit B is a true and correct copy of relevant excerpts from the transcript of the deposition of Gustavo P. Papagno, a managerial employee of Defendant Menzies, whose deposition was taken in this case by Plaintiffs on June 26, 2023.

4.      As Lead Counsel for Plaintiffs in this action, I have had the opportunity to observe both Plaintiffs' activities and participation in this litigation.  I believe Plaintiffs have each provided invaluable assistance and insight to counsel in this case.

5.      Throughout my firm's handling of this matter, Plaintiff Amaya has been in regular communications with me, co-counsel, and other members of my team ("Plaintiffs' Team"), regarding issues related to this case.  Before the lawsuit was filed, Ms. Amaya met with me and Plaintiffs' Team on multiple occasions to assist with preparation of the case for filing, and to provide us with relevant information and documents relating to Menzies' operations and the work and pay practices experienced by employees like her.

6.      Throughout our handling of this case, Plaintiff Amaya has been proactive in alerting Plaintiffs' Team with invaluable information related to the claims in this case, including important facts, witnesses, and documents.  She has assisted the Plaintiffs' Team with the investigation of class claims, including participating in lengthy meetings and telephone conferences, and providing information to assist us with evaluation of class claims.  I repeatedly conferred with Plaintiff Amaya in the course of this litigation to obtain her insight

SUPPLEMENTAL DECLARATION OF C. JOE SAYAS, JR. IN SUPPORT OF
REPLY BRIEF RE: CLASS CERTIFICATION

on information my team and I have obtained through our investigations and discovery in this case, and her insight into Menzies' operations has proven invaluable in helping me and my team understand the information we have obtained, which in turn have helped us in preparations for depositions, as well as in preparing the various motions and other pleadings in this case.

7.    Plaintiff Amaya also participated in multiple meetings and/or phone conferences in order to respond to the sets of written discovery propounded to her by Menzies, as well as to prepare her declaration submitted with the class certification motion in this case.  Per our instructions, she diligently searched for documents responsive to Menzies' document requests and assisted me and members of my tram in our review of same.

8.    Plaintiff Amaya also spent significant time meeting with us to diligently prepare to appear for a deposition noticed by Menzies.  She sat for and provided extensive testimony at her deposition taken by Menzies' counsel on April 26, 2023.

9.    After my office obtained the class list in this case, following a Discovery Order from the Magistrate Judge requiring Menzies to produce same, Plaintiffs' Team began communicating with other putative class members in this case, including Anibal Silva. Although he was no longer employed with Menzies, Mr. Silva eagerly assisted us in our investigation.  My co-counsel and I conducted multiple telephone conferences with Mr. Silva, during which he provided invaluable information and insight regarding his work experiences at Menzies, which greatly assisted us in further identifying important facts, witnesses, and documents to focus on in our ongoing discovery in this case.

10.    Mr. Silva also spent significant time conferring with Plaintiffs' Team to prepare his declaration submitted with the class certification motion in this case.  Over the course of several telephone conferences and zoom meetings, Mr. Silva provided extensive information regarding his work experiences at Menzies and answered many of our questions.

11.    Plaintiff Silva spent significant time again conferring with my co-counsel and I, on multiple occasions, to discuss and prepare for his deposition in this case.  Plaintiff Silva sat

SUPPLEMENTAL DECLARATION OF C. JOE SAYAS, JR. IN SUPPORT OF REPLY BRIEF RE: CLASS CERTIFICATION

for and provided extensive testimony at his deposition taken by Menzies' counsel on May 19, 2023.

12.    Plaintiff Silva's efforts to provide information, and his insight into Menzies' operations has proven invaluable in helping Plaintiffs' Team in preparations for discovery and handling of this case.

I declare under penalty of perjury under the laws of the United States and of the State of California that the foregoing is true and correct.

Executed on July 3, 2023 in Glendale, California.


_/s/ C. Joe Sayas, Jr._
C. JOE SAYAS, JR.

SUPPLEMENTAL DECLARATION OF C. JOE SAYAS, JR. IN SUPPORT OF
REPLY BRIEF RE: CLASS CERTIFICATION

# EXHIBIT A

```
 1                  UNITED STATES DISTRICT COURT

 2                 CENTRAL DISTRICT OF CALIFORNIA

 3                           --oOo--

 4   DORA PATRICIA AMAYA, an          )
     Individual; and BRAYAN LOZANO    )
 5   GONZALEZ, an individual; on      )
     behalf of themselves and others  )
 6   similarly situated,              )
                                      )
 7           Plaintiff,               )
                                      )
 8    vs.                             ) CASE NO.
                                      ) 2:22-cv-05915-MCS-MAR
 9   MENZIES AVIATION (USA), INC., a  )
     Delaware corporation; and        ) CLASS ACTION
10   DOES 1 through 10, inclusive,    )
                                      )
11           Defendants.              )
     _____)

12

13                           --oOo--

14           REMOTE VIDEOTAPED DEPOSITION OF

15                    GRACIE PUCKETT

16                TUESDAY, MAY 16, 2023

17                           --oOo--

18

19

20

21

22

23

24       REPORTED BY:  CANDY NEWLAND, CSR 14256

25
```

GRACIE PUCKETT                                                    JOB NO. 601433
MAY 16, 2023

```
 1                    A P P E A R A N C E S

 2
     FOR THE PLAINTIFFS:
 3
             LAW OFFICES OF C. JOE SAYAS, JR.
 4           BY:  C. JOE SAYAS, JR., Attorney at Law
             500 N. Brand Boulevard, Suite 980
 5           Glendale, CA 91203
             818.291.0088
 6           cjs@joesayaslaw.com

 7           KING CHENG MILLER & JIN, LLP
             BY:  DAVID P. KING, Attorney at Law
 8           3675 Huntington Drive, Suite 200
             Pasadena, CA  91107
 9           626.304.9001
             dpk@kcmlaw.net
10
     FOR THE DEFENDANT:
11
             FOLEY & LARDNER, LLP
12           BY:  KEVIN JACKSON, Attorney at Law
             11988 El Camino Real, Suite 400
13           San Diego, CA 92130
             858.792.6773
14           kjackson@foley.com

15
     ALSO PRESENT:
16
             ALEX ACOSTA, Legal Videographer
17

18                         --oOo--

19

20

21

22

23

24

25
```

GRACIE PUCKETT
MAY 16, 2023

JOB NO. 601433

```
 1   about the person who's in charge of ensuring that the
 2   records at Kronos are accurate; correct?
 3        A    That is correct.
 4        Q    And is he the one in charge of maintaining, at
09:25 5   least, and keeping the records, the time records, in
 6   Kronos?
 7        A    That's correct.
 8        Q    Other than tracking time does -- is Menzies
 9   using the Kronos system for something else?
09:25 10       A    No.  As far as I know that's all that -- that
11   Menzies uses it for.  I mean, that's what we use it for.
12   You know, if anybody else is using it for something else
13   I'm not aware of...
14        Q    Okay.  And those time cards, the information
09:26 15  available to the Kronos system, you have access to that;
16   correct?
17        A    That's correct.
18        Q    And as far as your payroll department is
19   concerned, do you obtain a report accessing the Kronos
09:26 20  system?  Tell me the steps in -- the general steps
21   involved in getting information from Kronos.
22        A    So what we do is -- when we're ready to process
23   payroll -- is we extract a data file from Kronos into the
24   payroll system to process the payroll.  I mean, pretty
09:27 25  much that's what we access Kronos for, you know, to pull
```

GRACIE PUCKETT
MAY 16, 2023                                                    JOB NO. 601433

```
  1    that data to then pay out.
  2            But usually we do that, like, after the managers
  3    at the various locations have approved the time cards.
  4    So they have, like, a set deadline that they have to, you
09:27  5    know, review and approve the time cards.  And then once
  6    that deadline has been met then we extract the data to
  7    then process payroll.
  8        Q    And how does your department know that the
  9    managers have approved the time cards?
09:27 10        A    They actually -- what they do is, we get
 11    approval from them.  So we don't process payroll unless
 12    we have everyone's approval at the various locations.
 13        Q    And how is that approval conveyed to the payroll
 14    department -- your department?
09:28 15        A    E-mail.  Through e-mail.  So if someone needs,
 16    like, extra time, you know, they tell us that they need
 17    extra time because they're still reviewing time card, or
 18    they're running behind, or, you know, whatever the
 19    situation is.  We communicate back and forth until, you
09:28 20    know, they're done with the review and the approval.  And
 21    then at that point we extract the data.
 22        Q    And what sort of data do you extract?
 23        A    Hours.
 24        Q    Hours of the shifts --
09:28 25        A    Uh-huh.
```

GRACIE PUCKETT
MAY 16, 2023                                                    JOB NO. 601433

1       Q    -- is that right?

2       A    Yeah.  Total hours of -- so it would be total

3   hours.  Correct.

4       Q    If you can respond with a "yes," so that it's

09:28  5   clear on the record?

6       A    Yes.

7       Q    Okay.  Thank you.

8       A    Yes, sir.

9       Q    And -- okay.  And you understand that,

09:29  10   basically, the employees in California, they have to

11   clock in at the beginning of their shift and clock out at

12   the end of their shift; correct?

13       A    Correct.

14       Q    And you understand that employees in

09:29  15   California -- or Menzies employees in California, they

16   have to clock out for meal break and clock back in after

17   completing their meal break?

18       A    Correct.

19       Q    Do you understand that?  Okay.

09:29  20            And you will see those clock-out and

21   clock-back-in entries at Kronos; correct?

22       A    You would.  Uh-huh.

23       Q    Okay.

24       A    I mean -- but we just -- like I said, when we

09:29  25   pull the data, I mean, we just don't have the manpower,

GRACIE PUCKETT
MAY 16, 2023

JOB NO. 601433

1    you know, to pull -- to look at each employee detail.

2    And that's where we rely on, you know, the local level to

3    review and audit those time cards.

4         Q    Okay.  When you say, "the local level reviewing

09:30  5    and auditing those time cards," what's your understanding

6    of what the local managers are required to do, as far as

7    those time cards are concerned?

8         A    Now, I don't know, like, you know, what they're

9    required to do.  But as far as -- my understanding is

09:30  10    that they're looking, of course, if someone missed a

11    punch.  Of course, you know, because that would affect

12    the hours that they're paid.

13         Q    Yes.

14         A    If someone maybe took vacation, you know, is

09:30  15    that reflected on the time card?  Like, those are the

16    common things that, you know, the managers are looking

17    for.

18         Q    Okay.

19         A    Because if one, you know, didn't -- like, if

09:31  20    they forgot to -- they punched in in the morning but then

21    they forgot to punch out in the afternoon, well, that's

22    going to impact their pay; right?  So you need to make

23    sure that you address those so that the employee's pay is

24    not impacted.

09:31  25         Q    I see.  Okay.  And are there -- are you aware of

GRACIE PUCKETT
MAY 16, 2023                                              JOB NO. 601433

1    we're processing the payroll.

2    BY MR. SAYAS:

3         Q    Okay.  So let me make sure I understand the

4    scope of your responsibility.  It's your office that

09:36  5    determines the amount of compensation due to California

6    employees; correct?

7         A    Repeat that again.

8         Q    It's your office that determines the amount of

9    compensation, or payments, or wages due to California

09:37 10    employees?

11            MR. JACKSON:  Objection.  Misstates prior

12    testimony.

13            MR. SAYAS:  Please respond.  That's my question.

14    You can correct me if I'm wrong.

09:37 15            THE WITNESS:  So your question is that we

16    determine -- we don't determine.  So we process what is

17    reflected on the time card.

18    BY MR. SAYAS:

19         Q    Okay.  What is involved in the task of

09:37 20    processing payroll at Menzies?

21         A    We -- like I mentioned, you know, a payroll

22    week, what it looks like is that we have -- everyone

23    knows pretty much, you know, what the deadlines are and

24    that they have to approve time cards by a specific time

09:37 25    frame.  And so we -- once we are given the approval that

GRACIE PUCKETT
MAY 16, 2023

JOB NO. 601433

1    the time cards have been reviewed, we extract the data

2    and then we pull that into the payroll system to then

3    generate reports.  We send those reports to the station

4    managers, who review and approve, and then we finalize

09:38  5    the payroll.

6        Q    When you say, "station managers," are we talking

7    about the local station managers?

8        A    That's correct.

9        Q    And when you track down the work hours as part

09:38 10    of processing payroll, do you make the computations as to

11    determining the wages, like, you know, multiplying those

12    work hours by the hourly rate of the employee.

13        Do you do that?

14        A    The system does that, yes.  So when we process

09:38 15    that, we do have -- in the payroll system, you know, it

16    does have what the employee's hourly rate is, and then,

17    you know, it pays it accordingly to whatever the hours

18    that we've extracted from Kronos for that particular pay

19    period.

09:39 20        Q    Okay.  And does -- and do you also use -- when

21    you say, "system," are we talking about the Kronos

22    system?

23        A    So the payroll system and then Kronos.  So we

24    pull in the hours from Kronos and then we import that

09:39 25    into the, you know, the HRIS payroll system, which has

GRACIE PUCKETT                                              JOB NO. 601433
MAY 16, 2023

```
         1        Q    Okay.  Now, you -- you have three payroll

         2    processors.  Is there anyone specifically assigned to

         3    handle payroll processing for California employees?

         4        A    No.  There's not one specific -- we have pay

09:52    5    groups.  And so -- and all those pay groups could have a

         6    California, you know, location.

         7        Q    I see.  Okay.  Okay.  And -- and does the

         8    system -- the payroll system that we are talking about,

         9    does that system have or consider the meal break penalty

09:53   10    or the meal penalty as part of the wages to be paid to

        11    the employees?

        12        A    If there is, like, a meal premium, or penalty,

        13    or anything that would be -- come from the time card.

        14        Q    And that's one of the data that your department

09:54   15    receives as -- in accessing the Kronos system; correct?

        16        A    Correct.

        17             MR. JACKSON:  Objection.  Asked and answered.

        18             Joe, we've gone over this for the last

        19    20 minutes, and it's getting to the point of being

09:54   20    harassing?  I'm going to give you some -- now if you ask

        21    the same question 15 different ways and she's answered

        22    every time.

        23             MR. SAYAS:  No.  I don't think so.  But --

        24             MR. JACKSON:  Okay.

09:54   25             MR. SAYAS:  -- let's proceed.
```

GRACIE PUCKETT
MAY 16, 2023

JOB NO. 601433

```
 1              So once we pull the data, we do lock the system
 2      so that they can't make changes to the time card.
 3      BY MR. SAYAS:
 4          Q     Okay.  And who is -- who, if any, is authorized
09:57  5    to make any changes to the information in the time cards?
 6          A     Before it's signed off or, like, after -- when?
 7          Q     At any time before or after.
 8          A     So it would be the timekeeper, you know, the
 9      station -- the station manager.  Whomever is overseeing
09:58 10    the -- that task of -- the time keeping task, which
11      typically is the station manager.
12          Q     Okay.  All right.  Now, when you -- when your
13      department accesses the information in the time cards, is
14      there any instance when you, your department, can
09:59 15    indicate that there may be errors or mistakes in the data
16      in the time records?
17          A     Can you repeat that again?
18          Q     Are there -- as part of your payroll processing,
19      are there instances when you inform the local office or
09:59 20    California office that there are inaccuracies or errors
21      in the data?
22          A     Yes.
23          Q     Okay.  What are those instances?
24          A     Sometimes, like -- I'm trying to think of
09:59 25    something off the top of my head.  But we have seen
```

GRACIE PUCKETT
MAY 16, 2023

JOB NO. 601433

1    Q    And by this document you also provided the

2  amount pertaining to a specific earnings code; correct?

3    A    So on the green, that area is the total hours

4  for that period.  And those are the total hours paid.  So

10:40  5  they don't correspond to the periods that you see on the

6  left-hand side.  That doesn't correspond to that.  It's

7  the total, the grand total.

8    Q    So the grand total for that specific shift or?

9    A    No.  That's the grand total that the employee

10:41 10  was paid for that whole, you know, date range that --

11  that we pulled.

12    Q    Okay.  Okay.  And since we are in the issue of

13  MLB or meal break, that -- MLB stands for the meal

14  penalty compensation; correct?

10:41 15    A    I have to look at the earning code to see

16  specifically, but I think that that's the meal.  Yeah.  I

17  would have to go to the configuration to see, you know,

18  the description.  But as I understand it, it's the

19  meal --

10:41 20    Q    Okay.  And --

21    A    -- the meal break.

22    Q    -- I'm sorry to interrupt.  Okay.  And there's a

23  corresponding amount on the -- to the next column under

24  the heading of "Current Amount."  It's $26.

10:42 25    What's the $26 there?

GRACIE PUCKETT
MAY 16, 2023

JOB NO. 601433

1        A    It would be the dollar amount that they were

2    paid.

3        Q    And the next entry there it's 1.0 under the

4    heading of "Current Hours."

10:42  5              What does that number, 1.0, represent?

6        A    That would be the hours that they're -- for the

7    meal break.

8        Q    Now, earlier we talked about the missed-punch

9    form.  I seem to have a vague recollection of the

10:43 10    missed-punch form.

11              But have you seen those forms before at any

12    time?

13        A    No.

14        Q    Your department, the payroll department or the

10:43 15    HRIS department, do they keep any of the missed-punch

16    form that have been signed by either the employee or by

17    the manager?

18        A    No.

19        Q    Now, give me a second here.

10:45 20              Okay.  Now, in creating other payroll register

21    documents, you -- your department, through your

22    assistant, generated all these payroll registers for all

23    non-exempt employees; correct?

24        A    Correct.

10:45 25        Q    Okay.  How long did it take your department to

GRACIE PUCKETT                                              JOB NO. 601433
MAY 16, 2023

1                    REPORTER'S CERTIFICATE

2

3          I, Candy Newland, certified shorthand reporter

4    No. 14256, in and for the State of California, do hereby

5    certify:

6          That prior to being examined, the witness named

7    in the foregoing proceedings was by me duly sworn to

8    testify to the truth, the whole truth, and nothing but

9    the truth;

10         That said proceedings were taken by me in

11   shorthand at the time and place herein named and were

12   thereafter transcribed into typewriting under my

13   direction, said transcript being a true and correct

14   transcription of my shorthand notes;

15         That pursuant to Federal Rule 30(e), transcript

16   review was not requested.

17          I further certify that I have no interest in the

18   outcome of this action.

19               In witness whereof, I have hereunto

20   subscribed my name this 30th day of May, 2023.

21

22

23

24                    CANDY NEWLAND
                       CSR No. 14256

25

# EXHIBIT B

```
 1                 UNITED STATES DISTRICT COURT

 2                CENTRAL DISTRICT OF CALIFORNIA

 3

 4   DORA PATRICIA AMAYA, an        )Case No.:

 5   individual; and BRAYAN        )2:22-cv-05915-MCS-MAR

 6   LOZANO GONZALEZ, an individual; )

 7   on behalf of themselves and   )CLASS ACTION

 8   others similarly situated,     )

 9                      Plaintiffs, )

10      vs.                         )

11   MENZIES AVIATION (USA), INC., a )

12   Delaware corporation; and DOES 1 )

13   through 10, inclusive,         )

14                      Defendants. )

15   _____

16

17         REMOTE VIDEOTAPED DEPOSITION OF GUSTAVO P.

18   PAPAGNO, taken on behalf of the Plaintiffs, pursuant to

19   Federal Rules of Civil Procedure 30(b)(1), commenced on

20   Monday, June 26, 2023, at 9:15 a.m. PDT, via Steno

21   Connect platform, before Allison L. Shearer, Registered

22   Professional Reporter and California Certified Shorthand

23   Reporter #14456.

24

25
```

GUSTAVO P. PAPAGNO                                          JOB NO. 632605
JUNE 26, 2023

```
 1   APPEARANCES:

 2

 3   On behalf of the Plaintiffs DORA PATRICIA AMAYA and

 4   BRAYAN LOZANO GONZALEZ:

 5        LAW OFFICES OF C. JOE SAYAS, JR.

 6             C. Joe Sayas, Jr., Esquire

 7             500 North Brand Boulevard, Suite 980

 8             Glendale, California 91203

 9             (818) 291-0088

10             cjs@joesayaslaw.com

11

12

13   On behalf of Defendant MENZIES AVIATION (USA), INC:

14        FOLEY & LARDNER, LLP

15             Kevin Jackson, Esquire

16             11988 El Camino Real, Suite 400

17             San Diego, California 92130

18             (858) 847-6700

19             kjackson@foley.com.

20

21

22

23

24

25   ALSO PRESENT:  Austin Lietz, Videographer
```

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

| | | |
|---|---|---|
| 09:26:51 | 1 | responsibilities over timekeeping functions in |
| 09:26:54 | 2 | California? |
| 09:26:55 | 3 | A.  No, they're just general support. |
| 09:26:58 | 4 | Q.  Anyone else on the Kronos team? |
| 09:27:04 | 5 | A.  No, sir. |
| 09:27:04 | 6 | Q.  Now, I heard the name Emma Fombona, |
| 09:27:08 | 7 | F-O-M-B-O-N-A? |
| 09:27:11 | 8 | A.  That's correct. |
| 09:27:12 | 9 | Q.  Is she part of the Kronos team? |
| 09:27:14 | 10 | A.  She's part of the team; yes, she is.  She's |
| 09:27:19 | 11 | based out of LA.  Sorry. |
| 09:27:21 | 12 | Q.  What is Ms. Fombona's job title? |
| 09:27:28 | 13 | A.  I believe she's -- I don't know if she's |
| 09:27:30 | 14 | regional timekeeper.  I know she's a timekeeper.  I |
| 09:27:35 | 15 | don't know what capacity though to be honest.  I can't |
| 09:27:42 | 16 | think of it right now. |
| 09:27:43 | 17 | Q.  Mm-hmm.  And what is her responsibility as a |
| 09:27:45 | 18 | timekeeper for Los Angeles? |
| 09:27:48 | 19 | A.  She over -- she basically oversees what the -- |
| 09:27:52 | 20 | so you have local timekeepers and you have Ana -- Ana. |
| 09:27:58 | 21 | Emma.  I'm sorry -- that has a different level than a |
| 09:28:01 | 22 | normal timekeeper.  So she basically oversees, reviews, |
| 09:28:03 | 23 | and adds certain types of pays to -- to timecards that |
| 09:28:10 | 24 | are required. |
| 09:28:18 | 25 | Q.  When you mention the overseeing reviews, what |

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

```
09:28:22    1   reviews are you talking about?
09:28:23    2        A.  To make sure exceptions are done correctly.
09:28:25    3   That's the most common one.  What's another one.  She
09:28:34    4   also ensures she puts -- if there's any monetary pay
09:28:38    5   that applies to a particular person, she'll allot that.
09:28:43    6   She's more of second-level support, if you will.
09:28:49    7        Q.  And who would be responsible for the
09:28:54    8   first-level support?
09:28:55    9        A.  It's whatever they have locally in the station.
09:28:58   10        Q.  Okay.
09:28:58   11        A.  So they have -- so basically the way it's
09:29:02   12   structured is you have timekeepers in LA because of the
09:29:06   13   size.  And, also, in other locations, Ana -- I keep
09:29:08   14   saying Ana.  I'm sorry.  Emma.
09:29:11   15        Q.  Yes.
09:29:11   16        A.  Sorry.
09:29:12   17        Q.  Yeah.
09:29:12   18        A.  Emma basically reviews what the other
09:29:15   19   timekeepers do before the payroll is finalized and then
09:29:19   20   she'll communicate with payroll when everything is
09:29:22   21   reviewed for processing.
09:29:23   22        Q.  So let's take LA for instance.  If -- do
09:29:31   23   managers review time and attendance records?
09:29:34   24        A.  I'm not sure.
09:29:36   25        Q.  And when you say Emma does the second level of
```

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

| | | |
|---|---|---|
| 09:30:56 | 1 | Q. -- reports? |
| 09:30:57 | 2 | A. That -- that requires a review will be to look |
| 09:31:03 | 3 | at exceptions and an exception is anything out of your |
| 09:31:08 | 4 | -- your schedule for example. |
| 09:31:09 | 5 | Q. Mm-hmm. |
| 09:31:10 | 6 | A. So anything in your schedule. If you leave |
| 09:31:11 | 7 | late, that's an exception. If you leave early, that's |
| 09:31:14 | 8 | an exception. If you don't show up to work, that's an |
| 09:31:17 | 9 | exception. And they would have to address those |
| 09:31:20 | 10 | exceptions. |
| 09:31:20 | 11 | Q. Okay. |
| 09:31:21 | 12 | A. Or code them, if you will. |
| 09:31:23 | 13 | Q. Okay. Part of the time and attendance records |
| 09:31:28 | 14 | would mean recording the start and end of an employee's |
| 09:31:37 | 15 | shift, correct? |
| 09:31:40 | 16 | A. Right. |
| 09:31:40 | 17 | Q. By the way, when I mention employees, I would |
| 09:31:44 | 18 | refer to employees as the non-exempt employees as |
| 09:31:49 | 19 | opposed to the managers. |
| 09:31:50 | 20 | A. Correct. |
| 09:31:51 | 21 | Q. And the -- part of the time and attendance |
| 09:31:58 | 22 | record would be records on the time the meal breaks are |
| 09:32:02 | 23 | taken by employees, correct? |
| 09:32:04 | 24 | A. Can you repeat that question, please? |
| 09:32:06 | 25 | Q. Part of the time and attendance records that |

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

| | | |
|---|---|---|
| 09:32:09 | 1 | you referred to, would that include time records |
| 09:32:16 | 2 | pertinent to meal breaks? |
| 09:32:19 | 3 | A.  Yes. |
| 09:32:20 | 4 | Q.  And if they're -- and you mentioned exceptions, |
| 09:32:31 | 5 | okay.  Let me lay a foundation here for a second.  Are |
| 09:32:37 | 6 | you aware that the policy at Menzies is to provide meal |
| 09:32:45 | 7 | breaks within the first five hours of work?  Are you |
| 09:32:51 | 8 | aware of that? |
| 09:32:52 | 9 | A.  Yes, I am. |
| 09:32:52 | 10 | Q.  And the employees are required to record the |
| 09:32:58 | 11 | start of their meal breaks and the end of their meal |
| 09:33:02 | 12 | breaks, correct? |
| 09:33:03 | 13 | A.  That's correct. |
| 09:33:04 | 14 | Q.  It's a meal break for at least 30 minutes, |
| 09:33:09 | 15 | correct? |
| 09:33:09 | 16 | A.  Correct. |
| 09:33:10 | 17 | Q.  And are there exceptions to this recording? |
| 09:33:18 | 18 | A.  I mean, not that I can think of, no. |
| 09:33:23 | 19 | Q.  And when there's no -- there's no record of a |
| 09:33:29 | 20 | meal break on a certain shift, is that something that |
| 09:33:32 | 21 | you would consider as an exception? |
| 09:33:36 | 22 | MR. JACKSON:  Objection.  Vague and ambiguous. |
| 09:33:38 | 23 | Calls for speculation.  You can answer, if you |
| 09:33:41 | 24 | understand the question. |
| 09:33:43 | 25 | THE WITNESS:  It's okay to answer? |

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

```
09:35:30   1   depends on the -- the structure or how big the location
09:35:32   2   is, what is that specific notation that the assigned
09:35:40   3   timekeeper has to do in that particular instance?
09:35:41   4        A.  They would add a meal penalty code into Kronos
09:35:47   5   stating the employee didn't take a break or sufficient
09:35:52   6   break for that time, and then that would be reported on
09:35:56   7   the timecard which will come out on the payroll system.
09:36:00   8        Q.  Okay.  When you say meal penalty code, is that
09:36:09   9   simply assigning a code into the employee's --
09:36:16  10        A.  Oh, yes.  Yes.
09:36:17  11        Q.  And are -- are you familiar with a -- with a
09:36:25  12   missed punch form?
09:36:27  13        A.  Yes, I am.
09:36:28  14        Q.  Okay.  And what's -- what's your understanding
09:36:32  15   of the missed punch form?
09:36:37  16        A.  My understanding -- and, I mean, we don't deal
09:36:39  17   with a missed punch form, but I'm familiar with it.
09:36:41  18        Q.  Okay.  Yeah.
09:36:41  19        A.  So basically what I understand is an employee
09:36:44  20   doesn't take a break or misses a punch, they are to
09:36:49  21   submit the missed punch form to the dispatcher or
09:36:52  22   timekeeper, if you will, so they can add whatever was
09:36:56  23   missed, either a missed punch or what have you, into the
09:37:01  24   timecard.
09:37:02  25        Q.  And who has the responsibility to keep this --
```

| | | |
|---|---|---|
| 09:43:34 | 1 | would have its own tenant, and then with Kronos, it |
| 09:43:38 | 2 | brought everybody into one, which was better for |
| 09:43:41 | 3 | reporting purposes obviously. |
| 09:43:42 | 4 | Q.  Okay.  All right.  Now, let's -- let's talk |
| 09:43:48 | 5 | first about the Kronos system.  I understand that the |
| 09:43:58 | 6 | Kronos system was applied in one department or unit at |
| 09:44:01 | 7 | Menzies even before 2019; is that accurate? |
| 09:44:04 | 8 | A.  Kronos Central.  We acquired a company in 2017 |
| 09:44:09 | 9 | and we inherited the version of Kronos.  It was called |
| 09:44:14 | 10 | Kronos Central which is no longer available.  It's what |
| 09:44:16 | 11 | that company was using at the time. |
| 09:44:18 | 12 | Q.  What is that department or unit at Menzies? |
| 09:44:23 | 13 | A.  Fueling. |
| 09:44:26 | 14 | Q.  Okay.  Let's talk about the Kronos system.  Can |
| 09:44:46 | 15 | you tell me how the time records of employees are |
| 09:44:53 | 16 | reported using the Kronos system? |
| 09:44:54 | 17 | A.  So employee time record is captured by time |
| 09:45:00 | 18 | clocks that have biometric readers on them for |
| 09:45:04 | 19 | authentication.  So the employee goes up, puts their |
| 09:45:07 | 20 | number, it prompts them put their fingerprint, and then |
| 09:45:12 | 21 | they have a button punch in/punch out.  And once they |
| 09:45:17 | 22 | press those buttons, that time is captured on the system |
| 09:45:21 | 23 | on the timecard basically. |
| 09:45:22 | 24 | Q.  Okay.  And the same system also captures a |
| 09:45:27 | 25 | record of meal breaks taken? |

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

| 09:45:30 | 1 | A.  Yes, sir, it does.  It has a break out and |
| 09:45:33 | 2 | break in.  So in California locations, they have:  In, |
| 09:45:36 | 3 | break out, break in, out.  Four buttons. |
| 09:45:42 | 4 | Q.  Okay.  So the first one is in? |
| 09:45:44 | 5 | A.  Yeah.  Punch in, break out, break in, punch |
| 09:45:49 | 6 | out. |
| 09:45:52 | 7 | Q.  So there would -- an ordinary shift of four -- |
| 09:45:57 | 8 | you know, more than a five-hour shift, you would expect |
| 09:45:59 | 9 | to have at least four entries, correct? |
| 09:46:02 | 10 | A.  That's correct. |
| 09:46:03 | 11 | Q.  Now, the employee who punches a break out and a |
| 09:46:32 | 12 | break in record, other than using a time clock, can that |
| 09:46:43 | 13 | employee use a telephone app? |
| 09:46:45 | 14 | A.  Yes, sir.  There's a mobile app that's |
| 09:46:47 | 15 | controlled -- it's controlled, but they can use that |
| 09:46:50 | 16 | mobile app to punch in, perform any -- many of the same |
| 09:46:52 | 17 | functions they could do at the clock level, they could |
| 09:46:55 | 18 | do it with their phones, yes. |
| 09:46:56 | 19 | Q.  Yes.  Okay.  Within -- within the last four |
| 09:47:03 | 20 | years, have you had a percentage of how many employees |
| 09:47:06 | 21 | in California use the mobile app as opposed to using the |
| 09:47:15 | 22 | time clock for purposing -- purpose of recording their |
| 09:47:18 | 23 | time record? |
| 09:47:20 | 24 | MR. JACKSON:  Objection.  Calls for |
| 09:47:21 | 25 | speculation.  You can answer, Gus. |

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

| | | |
|---|---|---|
| 09:47:23 | 1 | THE WITNESS:  I don't have that data, sir. |
| 09:47:26 | 2 | BY MR. SAYAS: |
| 09:47:26 | 3 | Q.  Okay.  And can the system generate a report |
| 09:47:29 | 4 | showing the percentage of people or employees who used |
| 09:47:34 | 5 | the mobile app as opposed to the time clock? |
| 09:47:37 | 6 | MR. JACKSON:  Objection.  Calls for |
| 09:47:38 | 7 | speculation. |
| 09:47:40 | 8 | THE WITNESS:  I'm not sure if there's such a |
| 09:47:47 | 9 | report. |
| 09:47:58 | 10 | BY MR. SAYAS: |
| 09:47:58 | 11 | Q.  Okay.  Now, the employees who are required to |
| 09:48:05 | 12 | record these four entries using either the time clock or |
| 09:48:11 | 13 | their mobile app, are they required to input the actual |
| 09:48:19 | 14 | time, let's say, when they start their meal breaks? |
| 09:48:24 | 15 | A.  No, sir.  By pressing the button, I'd imagine |
| 09:48:30 | 16 | the system will capture the time you pressed it. |
| 09:48:33 | 17 | Q.  Okay.  And as a matter of policy, the employees |
| 09:48:37 | 18 | are required to depress the time clock or their mobile |
| 09:48:41 | 19 | app at the actual time they start their meal breaks, |
| 09:48:44 | 20 | correct? |
| 09:48:45 | 21 | A.  Correct. |
| 09:48:45 | 22 | Q.  And they're supposed to press the break in time |
| 09:48:53 | 23 | at the actual time they end their meal breaks, correct? |
| 09:48:57 | 24 | A.  Correct. |
| 09:48:57 | 25 | Q.  As a matter of policy, they're not allowed to |

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

09:52:40  1  generate annual reports of time records for all

09:52:46  2  employees in California for the years 2019 through 2020?

09:52:52  3       A.  Yeah, I did that.  I ran those reports.

09:52:56  4       Q.  And you -- were you assisted by anyone in

09:53:01  5  running those reports?

09:53:04  6       A.  No.

09:53:06  7       Q.  Now, I asked you earlier about the missed punch

09:53:16  8  forms.  I understand that your Kronos team is not

09:53:19  9  responsible for keeping and maintaining those records.

09:53:21  10 And who would be responsible for -- for keeping those

09:53:27  11 missed punch forms?

09:53:30  12      A.  I would assume it would be the local -- local

09:53:33  13 timekeepers or HR.  I'm not sure, sir.

09:53:37  14      Q.  Now, let's go back to that issue where you were

09:54:07  15 making reference to the review of time records either by

09:54:12  16 timekeepers or -- or managers.

09:54:17  17           In terms of frequency of reviews, are these

09:54:22  18 reviews being done on like a pay period basis or a

09:54:29  19 twice-a-month basis?  How often are these reviews being

09:54:32  20 done?

09:54:32  21      A.  They should be done daily before they send them

09:54:41  22 over.

09:54:41  23      Q.  Okay.  And whether it's the manager or the

09:54:44  24 timekeeper, that review of the time records should be

09:54:48  25 done daily?

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

| | | |
|---|---|---|
| 09:54:49 | 1 | A.  Yes. |
| 09:54:49 | 2 | Q.  You mentioned Ms. Fombona providing a second |
| 09:55:05 | 3 | level of support to the review.  Is there any similar |
| 09:55:08 | 4 | procedure outside of Los Angeles -- I mean, other than |
| 09:55:11 | 5 | the Los Angeles location -- where a second level of |
| 09:55:15 | 6 | review support is also provided? |
| 09:55:17 | 7 | A.  So it depends on the location.  It could be a |
| 09:55:21 | 8 | timekeeper and the manager reviews it, for example, or |
| 09:55:25 | 9 | signs off on it. |
| 09:55:26 | 10 | Q.  Mm-hmm. |
| 09:55:26 | 11 | A.  If it's the manager that does it, basically the |
| 09:55:29 | 12 | manager reviews it and approves it. |
| 09:55:31 | 13 | Q.  Okay.  And earlier, a few weeks ago, Ms. Gracie |
| 09:55:48 | 14 | Puckett -- do you know who Ms. Gracie Puckett? |
| 09:55:52 | 15 | A.  Payroll I believe. |
| 09:55:53 | 16 | Q.  And earlier, a few weeks ago, she testified |
| 09:55:58 | 17 | that payroll would not process an employee's pay unless |
| 09:56:05 | 18 | there's manager approval.  Is that consistent with your |
| 09:56:08 | 19 | understanding? |
| 09:56:08 | 20 | A.  That is correct.  It's a manager sign-off, yes. |
| 09:56:12 | 21 | Q.  Okay.  And these manager approvals, are they |
| 09:56:17 | 22 | given before the completion of a pay period? |
| 09:56:22 | 23 | A.  They're -- they're actually done at the end of |
| 09:56:28 | 24 | the pay period.  They're confirming that everything has |
| 09:56:33 | 25 | been reviewed and it's correct. |

GUSTAVO P. PAPAGNO
JUNE 26, 2023                                              JOB NO. 632605

| | |
|---|---|
| 09:56:37 | 1    Q.  Okay.  Sir, let me -- let me understand the |
| 09:56:40 | 2  procedure here.  So in addition to the daily review of |
| 09:56:45 | 3  time records either by the timekeeper or the manager, |
| 09:56:50 | 4  the assigned person who reviews the records also does |
| 09:56:55 | 5  the review at the end of the pay period? |
| 09:57:02 | 6    A.  No.  So you have -- and, again, it all depends |
| 09:57:06 | 7  on the structure, right.  Ideally, you have the |
| 09:57:09 | 8  timekeeper review, the department manager -- because you |
| 09:57:14 | 9  have review, you have sign-off, and you have another |
| 09:57:22 | 10  level which I can't think of right now. |
| 09:57:24 | 11    So, let's say, the timekeeper does the review, |
| 09:57:27 | 12  the department manager does the second level, and then |
| 09:57:30 | 13  the -- usually the station manager would sign off and |
| 09:57:33 | 14  that gives the final okay that payroll can be processed. |
| 09:57:37 | 15    Q.  Okay.  When you say sign-off, is that the |
| 09:57:42 | 16  approval? |
| 09:57:43 | 17    A.  It's the approval, yeah.  Basically what that |
| 09:57:45 | 18  does -- yeah, it -- it confirms the payroll is correct |
| 09:57:49 | 19  and it can be processed. |
| 09:57:51 | 20    Q.  Okay.  And you mentioned, and correct me if I'm |
| 09:57:54 | 21  wrong, but you mentioned a third level, another level |
| 09:57:58 | 22  after the sign-off? |
| 09:58:00 | 23    A.  Well, I mean, ideally that's what you want to |
| 09:58:03 | 24  do.  You have the timekeeper, the department manager, |
| 09:58:06 | 25  and usually the station or GM -- it depends on the |

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

| | | |
|---|---|---|
| 09:58:10 | 1 | structure -- does the final review. |
| 09:58:12 | 2 | Q.  And the final review, is that done after the |
| 09:58:15 | 3 | sign-off or before the sign-off? |
| 09:58:18 | 4 | A.  It's done -- actually, there's one more step. |
| 09:58:23 | 5 | I can't -- I'm sorry.  I'm drawing a blank, what it's |
| 09:58:26 | 6 | called -- but the sign-off is basically what you -- |
| 09:58:29 | 7 | that's the last review. |
| 09:58:30 | 8 | Q.  Ah. |
| 09:58:30 | 9 | A.  So the third person will basically sign that |
| 09:58:33 | 10 | off and that -- by signing off, the -- no more changes |
| 09:58:34 | 11 | can be made in the system.  The timecard is locked. |
| 09:58:37 | 12 | Q.  Okay.  And just to clarify.  I'm sorry for |
| 09:58:41 | 13 | being repetitivity here. |
| 09:58:44 | 14 | A.  That's okay. |
| 09:58:44 | 15 | Q.  I just want to make sure I understand.  There's |
| 09:58:45 | 16 | a daily review and then there's a subsequent review |
| 09:58:50 | 17 | after each daily review at the end of the pay |
| 09:58:53 | 18 | period?  Is that how it... |
| 09:58:55 | 19 | A.  Yes, basically.  For sign-off, yes. |
| 09:58:58 | 20 | Q.  For sign-off.  Okay.  And the -- in your work |
| 09:59:24 | 21 | as the project manager for the Kronos team, do you |
| 09:59:27 | 22 | interact with the payroll director Ms. Puckett? |
| 09:59:33 | 23 | A.  No, only when she has a special request from me |
| 09:59:36 | 24 | or there's some sort of discrepancy. |
| 09:59:40 | 25 | Q.  And when we -- you know, examples of instances |

| | | |
|---|---|---|
| 10:10:28 | 1 | A.  In what you discussed, yes, sir. |
| 10:10:32 | 2 | Q.  Have you -- have you reviewed the declaration |
| 10:10:49 | 3 | of Plaintiff's expert in this case, Plaintiff's expert |
| 10:10:55 | 4 | being Mr. Kirk Marangi? |
| 10:11:02 | 5 | A.  No, sir. |
| 10:11:04 | 6 | Q.  Now, in the last four or five years at Menzies, |
| 10:11:45 | 7 | have you been asked by anyone from management to see if |
| 10:11:54 | 8 | any of the meal breaks have been completely paid to |
| 10:12:04 | 9 | employees? |
| 10:12:05 | 10 | A.  Not that I can recall. |
| 10:12:08 | 11 | Q.  Have you ever been asked by anyone from |
| 10:12:15 | 12 | management about employee complaints that the time |
| 10:12:25 | 13 | records at Kronos are not accurate? |
| 10:12:28 | 14 | A.  Not that I can recall. |
| 10:12:30 | 15 | Q.  To the extent within your knowledge and |
| 10:12:41 | 16 | expertise as project manager for Kronos, are you saying |
| 10:12:47 | 17 | that the time records at Kronos are generally accurate? |
| 10:12:52 | 18 | A.  To the best of my knowledge, yes, they are. |
| 10:12:58 | 19 | Q.  Is there any reason why anyone should doubt the |
| 10:13:03 | 20 | accuracy of the time records at Menzies within the last |
| 10:13:07 | 21 | five years? |
| 10:13:08 | 22 | A.  Not that I -- |
| 10:13:11 | 23 | MR. JACKSON:  Objection.  Calls for |
| 10:13:12 | 24 | speculation.  Completely vague and ambiguous. |
| 10:13:14 | 25 | Incomplete hypothetical.  But calls for speculation |

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

| | | |
|---|---|---|
| 10:13:16 | 1 | clearly.  You can answer. |
| 10:13:18 | 2 | THE WITNESS:  Not that I can think of. |
| 10:13:21 | 3 | BY MR. SAYAS: |
| 10:13:21 | 4 | Q.  Now, in making those time punches -- and |
| 10:13:34 | 5 | earlier you had discussed four different time punches |
| 10:13:39 | 6 | that the employees are required to do at Menzies.  Now, |
| 10:13:44 | 7 | is there any question asked on a daily basis to the |
| 10:13:54 | 8 | employees as to whether he or she had taken a full duty |
| 10:13:59 | 9 | break for the shift? |
| 10:14:00 | 10 | A.  Yes, there is. |
| 10:14:02 | 11 | Q.  Okay.  Do you call that a, what, a confirmation |
| 10:14:07 | 12 | question or validation question? |
| 10:14:07 | 13 | A.  It's attestation.  It's called attestation, |
| 10:14:12 | 14 | yeah. |
| 10:14:12 | 15 | Q.  And what is the wording of that attestation |
| 10:14:15 | 16 | question? |
| 10:14:16 | 17 | A.  Per -- off the top of my head, I don't recall, |
| 10:14:22 | 18 | but it has something to do with I confirm I've taken my |
| 10:14:24 | 19 | full meal or full required time for my meal period.  I |
| 10:14:29 | 20 | don't remember the exact wording. |
| 10:14:31 | 21 | Q.  Okay.  Now, does the question read something |
| 10:14:39 | 22 | like this: |
| 10:14:43 | 23 | "Please confirm you took your full duty-free |
| 10:14:48 | 24 | meal (and rest) periods for the shift?" |
| 10:14:54 | 25 | Is that generally -- |

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

| | | |
|---|---|---|
| 10:25:00 | 1 | answered.  Go ahead. |
| 10:25:01 | 2 | THE WITNESS:  Yeah.  I wouldn't know, sir, |
| 10:25:06 | 3 | what's required of the manager to do when they see |
| 10:25:08 | 4 | something. |
| 10:25:22 | 5 | MR. SAYAS:  Why don't we take a 15-minute |
| 10:25:25 | 6 | break, Kevin.  It's about 10:25.  I think I can comply |
| 10:25:35 | 7 | with my promise to you, Kevin, we'll be completed before |
| 10:25:42 | 8 | 1:00 p.m.  So it's 10:25.  Let's go back on the record |
| 10:25:46 | 9 | at 10:40 a.m.  Is that okay with everyone? |
| 10:25:50 | 10 | MR. JACKSON:  Sure. |
| 10:25:50 | 11 | MR. SAYAS:  Okay. |
| 10:25:52 | 12 | VIDEOGRAPHER:  Off the record.  The time is |
| 10:25:54 | 13 | 10:25 a.m. Pacific Time. |
| 10:26:12 | 14 | (Whereupon, a brief recess was taken.) |
| 10:47:43 | 15 | VIDEOGRAPHER:  We are now back on the record. |
| 10:47:46 | 16 | The time is 10:47 a.m. Pacific Time. |
| 10:47:49 | 17 | BY MR. SAYAS: |
| 10:47:49 | 18 | Q.  We are back on the record, Mr. Papagno.  I |
| 10:48:00 | 19 | remind you, sir, you're still under oath.  With respect |
| 10:48:04 | 20 | to the procedure of employees punching in for their work |
| 10:48:10 | 21 | times as well as their meal break times, are employees |
| 10:48:18 | 22 | as a matter of policy at Menzies required to record |
| 10:48:23 | 23 | those information on the actual dates of the |
| 10:48:28 | 24 | shift?  Meaning if they work on June 14th, 2023, you're |
| 10:48:35 | 25 | supposed to make those recordings on June 14th itself? |

GUSTAVO P. PAPAGNO
JUNE 26, 2023

JOB NO. 632605

```
10:48:43    1        A.  Correct.

10:48:43    2        Q.  Now, when you or your department trains

10:48:57    3   managers or timekeepers with respect to timekeeping, do

10:49:06    4   you -- was it your practice to distribute memos or

10:49:10    5   written instructions as part of that training?

10:49:13    6        A.  Yes.

10:49:13    7        Q.  And has that been your practice within the last

10:49:20    8   four years?

10:49:21    9        A.  Yes.

10:49:21   10        Q.  And what would be those documents called?

10:49:24   11        A.  Reference guides.

10:49:29   12        Q.  And would you circulate an email citing -- you

10:49:37   13   know, breaking out portions of the reference guides?

10:49:41   14        A.  Yes.

10:49:41   15        Q.  And, let's say, how many of those written

10:49:55   16   communications have been made by you or anyone from your

10:50:00   17   department regarding this issue?  Let's say an estimate

10:50:06   18   of written -- written instructions on an annual basis.

10:50:13   19        A.  How many have we done --

10:50:15   20        Q.  Yes.

10:50:16   21        A.  -- in regards to this particular issue?

10:50:19   22        Q.  Yeah.

10:50:19   23        A.  I mean, it's just -- it's one I think that

10:50:22   24   we've done.  I don't know.  I'd have to check.

10:50:25   25        Q.  Mm-hmm.  Okay.  All right.  And you've done --
```

GUSTAVO P. PAPAGNO
JUNE 26, 2023                                                    JOB NO. 632605

| | | |
|---|---|---|
| 11:11:39 | 1 | some -- some information under the comments section, |
| 11:11:43 | 2 | my -- my question is:  Were they encouraged to make |
| 11:11:48 | 3 | entries if they -- if they see information that the |
| 11:11:56 | 4 | employee has actually taken a meal break? |
| 11:12:00 | 5 | A.  Not specifically to meal breaks.  I wouldn't |
| 11:12:05 | 6 | know.  I mean, they're supposed to be general comments |
| 11:12:09 | 7 | for any anomaly that they need to refer back to. |
| 11:12:15 | 8 | Q.  Okay.  The entry of lunch here and those |
| 11:12:19 | 9 | entries that I previously pointed out to you, were those |
| 11:12:28 | 10 | considered exceptions or anomalies? |
| 11:12:31 | 11 | A.  I would say so, yeah. |
| 11:12:33 | 12 | Q.  Okay.  And then I see entries of lunch here. |
| 11:12:39 | 13 | Were those considered situations when the employee did |
| 11:12:43 | 14 | not take a meal break? |
| 11:12:45 | 15 | A.  There's no way of me telling that, sir, by |
| 11:12:50 | 16 | this.  I'm not sure of the intentions. |
| 11:12:59 | 17 | Q.  Okay.  Now, under the Staff Tracker system, |
| 11:13:10 | 18 | employees were also required to punch in their meal |
| 11:13:14 | 19 | breaks, correct? |
| 11:13:15 | 20 | A.  Correct. |
| 11:13:16 | 21 | Q.  And similarly, under the Staff Tracker system, |
| 11:13:27 | 22 | managers and timekeepers were also required to review |
| 11:13:31 | 23 | the time records on a daily basis; is that correct? |
| 11:13:36 | 24 | A.  Correct. |
| 11:13:37 | 25 | Q.  And similarly, under the Staff Tracker system, |

GUSTAVO P. PAPAGNO
JUNE 26, 2023                                              JOB NO. 632605

| | | |
|---|---|---|
| 11:13:46 | 1 | there has to be some final review or final approval of |
| 11:13:51 | 2 | either the timekeeper or the manager before payroll is |
| 11:13:55 | 3 | processed; is that correct? |
| 11:13:58 | 4 | A.  That's correct. |
| 11:14:00 | 5 | Q.  Now, under the Staff Tracker system, did |
| 11:14:39 | 6 | employees have the option of using the time clock device |
| 11:14:45 | 7 | or their telephone using the mobile application? |
| 11:14:51 | 8 | A.  Only physical time clocks.  There was no mobile |
| 11:14:55 | 9 | app. |
| 11:14:56 | 10 | Q.  Okay.  Now, I understand that the reason why |
| 11:15:18 | 11 | Menzies shifted from the Staff Tracker system to the |
| 11:15:24 | 12 | Kronos system is -- and correct me if I'm wrong -- is |
| 11:15:27 | 13 | that Menzies wanted a uniform, global way of reporting |
| 11:15:35 | 14 | time information; am I correct? |
| 11:15:36 | 15 | A.  My understanding was that. |
| 11:15:38 | 16 | Q.  Okay.  Was there any other problem with the |
| 11:15:42 | 17 | Staff Tracker system? |
| 11:15:44 | 18 | A.  Not that I'm aware of, no. |
| 11:15:46 | 19 | Q.  Now, the change to the Kronos system, was that |
| 11:15:58 | 20 | something that you recommended or somebody else |
| 11:16:03 | 21 | recommended? |
| 11:16:03 | 22 | A.  It was a corporate decision.  Nothing to do... |
| 11:16:06 | 23 | Q.  You just followed management's instructions for |
| 11:16:10 | 24 | you to change the system? |
| 11:16:11 | 25 | A.  Yes.  Yes, sir. |

GUSTAVO P. PAPAGNO                                         JOB NO. 632605
JUNE 26, 2023

1                    CERTIFICATE OF REPORTER

2

3        I, Allison Leigh Shearer, Certified Shorthand

4   Reporter, holding a valid and current license issued by

5   the State of California, CSR No. 14456, duly authorized

6   to administer oaths, do hereby certify:

7        That the witness in the foregoing remote deposition

8   was administered an oath to testify remotely to the

9   whole truth in the within-titled cause.

10       That said remote deposition was taken down by me in

11  shorthand at the time and place therein stated and

12  thereafter transcribed into typewriting, by computer

13  under my direction and supervision.

14       Should the signature of the witness not be affixed

15  to the deposition, the witness shall not have availed

16  himself/herself of the opportunity to sign or the

17  signature has been waived.

18       I further certify that I am neither counsel for,

19  nor related to any party in the foregoing deposition and

20  caption named, nor in any way interested in the outcome

21  thereof.

22

23       _____

24       Allison Leigh Shearer, RPR, CA CSR 14456

25       June 30, 2023