CHRISTOPHER WARD, CA Bar No. 238777
  cward@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE:   213.486.0065

KEVIN JACKSON, CA Bar No. 278169
  kjackson@foley.com
**FOLEY & LARDNER LLP**
11988 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2594
TELEPHONE: 858.847.6700
FACSIMILE:   858.792.6773

Attorneys for Defendant MENZIES
AVIATION (USA), INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:22-cv-05915-HDV-MARx <br><br> **DEFENDANT MENZIES AVIATION (USA), INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date:      October 26, 2023 <br> Time:      10:00 a.m. <br> Judge:    Hon. Hernán D. Vera <br> Ctrm.:    5B, 5th Floor <br><br> Complaint filed: August 19, 2022 <br> FAC filed:   August 30, 2022 <br> SAC filed:   May 9, 2023 |

4868-3327-1904.3

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................... 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.................... 1

    A.    MENZIES PROVIDES SERVICES DIRECTLY TO AIRLINES AND EMPLOYEES WORK PURSUANT TO COLLECTIVE BARGAINING AGREEMENT TERMS ..................................... 2

    B.    MENZIES MAINTAINS EXPRESS POLICIES PROHIBITING EMPLOYEES FROM USING PERSONAL CELLULAR PHONES FOR BUSINESS PURPOSES ..................................... 3

    C.    PLAINTIFFS UNDERSTOOD THEY WORKED PURSUANT TO COLLECTIVE BARGAINING AGREEMENTS AND ACCORDINGLY HAD GRIEVANCE AND ARBITRATION RIGHTS ..................................................................................... 4

    D.    THE CBAS OBLIGATE MENZIES  TO PROVIDE ALL NECESSARY BUSINESS EQUIPMENT AND REQUIRE BINDING GRIEVANCE AND ARBITRATION ........................ 5

    E.    DESPITE CLAIMING THEIR PERSONAL CELL PHONES WERE NECESSARY BUSINESS EQUIPMENT, PLAINTIFFS NEVER GRIEVED NOR ARBITRATED THEIR CLAIMS .................................. 5

III.  MENZIES IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CELLULAR PHONE BUSINESS EXPENSE THEORY BECAUSE THE CLAIM REQUIRES INTERPRETATION AND POTENTIAL APPLLICATION OF THE CBAS ....................................... 7

    A.    WHERE CBA LANGUAGE EITHER DIRECTLY OR EVEN ARGUABLY APPLIES TO A BUSINESS EXPENSE CLAIM, RESOLUTION OF THE CLAIM DEMANDS INTERPRETATION OF THE CBA LANGUAGE AND TRIGGERS PREEMPTION............. 8

    B.    PLAINTIFFS' FAILURE TO EXHAUST THEIR CBAS REMEDIES WITHIN SIX MONTHS OF THEIR LAST INJURY MANDATES PARTIAL SUMMARY JUDGMENT.......................................... 10

    C.    THE RLA PROVIDES AN ADDITIONAL BASIS TO GRANT PARTIAL SUMMARY JUDGMENT BECAUSE PLAINTIFFS' CLAIM IS A PREEMPTED "MINOR DISPUTE".................................. 11

IV.  CONCLUSION.................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allis-Chalmers Corp. v. Lueck,*
    471 U.S. 202 (1985)................................................................................1, 8, 11, 12

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)................................................................................7

*Brown v. Lucky Stores, Inc.,*
    246 F.3d 1182 (9th Cir. 2001) ..............................................................11

*Carter v. Smith Food King,*
    765 F.2d 916 (9th Cir. 1985) ................................................................11

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..............................................................................7

*Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n,*
    *(Conrail)*, 491 U.S. 299 (1989)............................................................12

*Cramer v. Consol. Freightways, Inc.,*
    255 F.3d 683 (9th Cir. 2001) (en banc..................................................12

*DelCostello v. Int'l Bhd. of Teamsters,*
    462 U.S. 151 (1983)..............................................................................11

*Dep't of Fair Emp. & Housing v. Verizon Cal, Inc.,*
    108 Cal. App. 4th 160 (2003) ...............................................................1, 8

*Dominguez v. W. States Fire Prot. Co.,*
    2022 WL 2234955 (C.D. Cal. Feb. 2, 2022) ........................................9, 10

*Gattuso v. Harte-Hanks Shoppers, Inc.,*
    42 Cal. 4th 554 (2007) .........................................................................9

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ................................................................10

*Hawaiian Airlines, Inc. v. Norris,*
    512 U.S. 246 (1994)..............................................................................11

*Kobold v. Good Samaritan Reg'l Med. Ctr.,*
    832 F.3d 1024 (9th Cir. 2016) ...................................................................... 12

*Lingle v. Norge Div. of Magic Chef, Inc.,*
    486 U.S. 399 (1987) .................................................................................. 1, 8

*Matson v. United Parcel Serv., Inc.,*
    840 F.3d 1126 (9th Cir. 2016) ............................................................... 1, 12

*McCray v. Marriott Hotel Services, Inc.,*
    902 F.3d 1005 (2018) ................................................................................. 12

*Menzies Aviation, Inc.,*
    46 NMB 8 (2018) ......................................................................................... 3

*Menzies Aviation, Inc.,*
    47 NMB 10 (2019) ........................................................................................ 3

*Rodriguez v. Gonsalves & Santucci, Inc.,*
    No. 21-CV-07874-LB, 2022 WL 161892 (N.D. Cal. Jan. 18, 2022) ............... 9

*SEC v. Seaboard Corp.,*
    677 F.2d 1301 (9th Cir. 1982) ..................................................................... 7

*Steelworkers v. Rawson,*
    495 U.S. 362 (1990) ..................................................................................... 8

*Textile Workers v. Lincoln Mills,*
    353 U.S. 448 (1957) ..................................................................................... 8

*W. Airlines, Inc. v. Int'l Bhd. of Teamsters,*
    480 U.S. 1301 (1987) ................................................................................. 11

**Statutes**

29 U.S.C. § 185(a) ............................................................................................. 8

45 U.S.C. § 151a ............................................................................................. 12

California Labor Code § 2802 ..................................................... 1, 2, 6, 7, 8, 9, 12

**Rules**

Fed. R. Civ P. 56(a) .......................................................................................... 7

4868-3327-1904.3

## I.  INTRODUCTION

Defendant Menzies Aviation (USA), Inc. ("Menzies") is entitled to Partial Summary Judgment on Plaintiffs' claim for alleged failure to reimburse expenses relating to purported necessary use of their personal cellular phones for a simple reason: the claim is clearly preempted by federal law.

Both Dora Patricia Amaya and Anibal Silva worked for Menzies at its Los Angeles International Airport ("LAX") operation, and both worked in positions represented by a union and had terms of conditions of employment governed by collective bargaining agreements.  Those CBAs specifically address Menzies' obligation to provide employees with *all* equipment necessary to perform *any and all* work assignments.  They also establish a mandatory grievance and arbitration procedure.

By claiming Menzies failed to abide by the CBA obligations to provide them with cellular phones – –equipment they deemed "necessary" to perform their work for Menzies notwithstanding the CBAs and Menzies' clear policies to the contrary – they have implicated the expansive language of the CBAs which if not directly, at a minimum arguably, apply to their theory of liability.  They have accordingly subjected those claims to federal preemption under both the Labor Management Relations Act ("LMRA") and the Railway Labor Act ("RLA") because the outcome on those claims depends substantially on analysis of the terms of the CBAs.  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-11 (1985); *Matson v. United Parcel Serv., Inc.*, 840 F.3d 1126, 1132-33 (9th Cir. 2016); *Dep't of Fair Emp. & Housing v. Verizon Cal, Inc.*, 108 Cal. App. 4th 160, 165 (2003).  As a consequence, the Court can and should dismiss such claims outright, or in the alternative apply the six-month statute limitations to such claims – which itself mandates partial summary judgment.

## II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On August 19, 2022, Plaintiffs filed a Class Action Complaint for, among other things, failure to reimburse business expenses pursuant to California Labor Code § 2802.

[Dkt. 1.]  As relevant for purposes of this Motion, and as clarified in their pending Motion for Class Certification,[1] Plaintiffs specifically assert within their Section 2802 claim that Menzies required them to use their personal cell phones to carry out their job duties – making such cellular phones necessary business equipment – without reimbursing them for or otherwise covering the costs of such personal cellular phone use. [Dkt. 41-1, p. 3.]

### A.   Menzies Provides Services Directly To Airlines And Employees Work Pursuant To Collective Bargaining Agreement Terms

Menzies is an aviation services business that provides ground handling services to commercial airlines' aircraft, cargo handling services in airlines' cargo warehouses, and both aircraft fueling to airlines and fuel facilities management services to airports. [Uncontroverted Fact ("UF") 1.] Ground handling includes servicing aircraft while parked at passenger gates "above-the-wing" in the passenger terminals through passenger service personnel who assist passengers with tickets and boarding and cabin crews who clean aircraft and check security requirements between flights. [UF 2.] It also includes "below-the-wing" work on the ramp, such as offloading and loading of baggage and cargo and guiding taxiing aircraft when they arrive. [UF 3.]  On the cargo side of the business, Menzies' employees work inside warehouses away from passenger aircraft and receive, process, and sort cargo in preparation for loading onto aircraft, but do not themselves load cargo onto aircraft. [UF 4.] It also includes individuals who work in offices inside the cargo warehouse processing paperwork related to commercial cargo movements without a direct hands-on relationship with the cargo itself. [UF 5.] On the fueling side of its operations, Menzies employees both pump jet fuel from tankers or airport hydrant systems into aircraft, operate an airport's fuel tank "farm" well away from passenger gates, and monitor via computer the various fueling infrastructure. [UF 6.] Other employees perform routine and emergency maintenance for hydrant systems and

---

[1] Plaintiffs' Motion for Class Certification is currently set for hearing on October 26, 2023.  [Dkt. 41.]  Menzies has noticed this Motion for hearing concurrently with Plaintiffs' Motion.

1   fueling equipment all over an airport. [UF 7.]

2       As a consequence of performing this type of work and providing services directly

3   to airlines, the National Mediation Board (NMB") has repeatedly recognized both

4   Menzies as an employer, and its employees providing services directly to commercial

5   airlines such as the Plaintiffs, covered the RLA.  *See, e.g., Menzies Aviation, Inc.*, 47

6   NMB 10 (2019); *Menzies Aviation, Inc.*, 46 NMB 8 (2018).  Additionally, across all the

7   California airports where Menzies operates, virtually all the non-exempt employees

8   performing services provided directly to airline customers are represented by one of the

9   several unions at Menzies, all pursuant to a series of collective bargaining agreements.

10  [UF 8.]

11      **B.    Menzies Maintains Express Policies Prohibiting Employees From Using**

12      **Personal Cellular Phones For Business Purposes**

13      Menzies maintains a series of policies governing employees' possession on their

14  person of personal cellular phones during work hours and purported use of such personal

15  cellular phones for work purposes.  [UF 9.]  For example, the company's Hand Held

16  Electronic Devices Policy explicitly states that Menzies "has a zero tolerance policy

17  applicable to the use of personal mobile/cell phones whilst on duty."  [UF 10.]  Its

18  Personal Electronic Device & Cellular Phone Policy notes that where use of a cellular

19  phone is necessary to perform business operations, the Company will provide such a

20  device and it reiterates that "If an employee brings a personal cellular phone onto

21  Company property, the phone **must** remain on the **'off'** mode during business hours."

22  [UF 11.]  And Menzies' Personal Effects Policy notifies employees that they must not

23  bring personal effects into their work areas and informs them of where Menzies has

24  supplied secure lockers for storage of prohibited personal items – such as cellular phones

25  – during their work hours.  [UF 12.]  Even where Menzies makes work resources

26  available to employees usable on their personal devices – such as the ability to view their

27  schedule through a phone app or receive text messages regarding their work schedule – it

28  specifically informs employees that they are not "under any obligation to do so using my

personal device" and they can opt out of such use.  [UF 13.]

The cumulative effect of these policies demonstrates Menzies' standardized instruction to employees that they are prohibited from using their personal cell phones during working hours.  [UF 14.]  Emphasizing this point, dozens of Menzies employees have provided evidence acknowledging their understanding that they are not required to use their personal cellular phones for work purposes, and multiple employees acknowledged that if their job responsibilities require immediate phone or radio communication, Menzies provides those work radios or work cellular phones so they can carry out their duties.  [UF 15.]

### C.    Plaintiffs Understood They Worked Pursuant To Collective Bargaining Agreements And Accordingly Had Grievance And Arbitration Rights

Plaintiff Amaya worked for Menzies as a Passenger Service Agent at Menzies' operation at LAX, and Plaintiff Silva worked as a Ramp Agent, also at LAX.  [UF 16.] While Amaya remains a current employee of Menzies, she has been on a leave of absence since December 8, 2022 and accordingly has not performed any work (and accordingly cannot have suffered any alleged harms) for more than six months.  [UF 17.]  Silva's employment with Menzies terminated on March 15, 2020, such that he also clearly has not suffered any harms alleged in the Complaint for a period greater than six months. [UF 18.]

Both Plaintiffs worked in classifications represented by a union and had the terms and conditions of their employment covered by collective bargaining agreements.  [UF 19.]  Both Plaintiffs also understood that: (i) they were represented by a union with respect to their employment at Menzies; (ii) the CBAs contained terms and conditions of employment that applied to them; and (iii) they had recourse to the union if they had questions about the CBAs.  [UF 20.]

///

///

///

4868-3327-1904.3

### D. The CBAs Obligate Menzies To Provide All Necessary Business Equipment And Require Binding Grievance And Arbitration

Though represented by the same union, Plaintiffs worked pursuant to different CBAs due to their differing job classifications. [UF 21.] However, both CBAs contain identical language addressing Menzies' obligation to provide employees with all equipment necessary to perform their work. [UF 22.] Both CBAs explicitly state that "The Employer agrees to provide and to maintain properly equipment and materials adequate to perform *any and all* work assignments." [UF 23 (emphasis supplied).] Both CBAs also establish a grievance and arbitration procedure "pertaining to the application or interpretation of [the CBA]." [UF 24.]

In the event of any failure or alleged failure by Menzies to abide by the terms of the CBAs – such as the failure to provide equipment need to perform "any and all work assignments" – such disputes "must be handled" through the CBAs' four-step procedure requiring arbitration of any claims not resolved through the prior steps of grievance and mediation. [UF 25.] The first step of the grievance process is required to be initiated "within seven (7) calendar days after the occurrence of the alleged violation." [UF 26.] As noted above, Plaintiffs understood that these provisions entitled them to seek help from the Union if they felt Menzies had violated any of their rights. [UF 27.] Silva even once availed himself of this ability when he complained to the Union about meal periods. [UF 28.]

### E. Despite Claiming Their Personal Cell Phones Were Necessary Business Equipment, Plaintiffs Never Grieved Nor Arbitrated Their Claims

Both Plaintiffs acknowledged their receipt and understanding of the various Menzies policies prohibiting use of personal cellular phones for work purposes, during work hours, and the voluntary nature of accessing work schedules or receipt of text messages. [UF 9.] They also both conceded that Menzies makes various forms of communication available, such as landline phones and radios, and provided cell phones to certain employees (e.g., managers) to carry out required cellular and telephone

communications.  [UF 29.]

Notwithstanding these concessions both Plaintiffs contend they could not perform their job assignments without using their personal cellular phone.  [UF 30.]  In other words, in the face of Menzies' clear policies saying otherwise and extensive evidence from other employees refuting their contentions, both Plaintiffs identified a personal cellular phone as a necessary piece of equipment needed to perform their work assignments.  Accordingly, their Labor Code § 2802 cause of action (on which they seek to represent a class of Menzies employees) relies upon the assertion that personal cellular phones were in fact pieces of equipment needed to perform their job and Menzies failed to provide them with these pieces of equipment or reimburse them for their business use in the face of clear CBA and policy language saying otherwise.  Through such admissions, <u>Plaintiffs clearly base their Section 2802 claim on the assertion that Menzies failed to abide by a duty specifically addressed in their CBAs</u> – "to provide and to maintain properly equipment and materials adequate to perform any and all work assignments."

Despite making such claims and averring that Menzies has breached an obligation for which Menzies and Plaintiff's Union representing Plaintiffs collectively bargained, Plaintiffs never grieved or otherwise sought the Union's support with respect to Menzies' alleged failure to satisfy the obligations covered by the CBA.  [UF 31.]    Neither filed a grievance or complaint with the Union regarding Menzies' alleged failure to provide cell phones or reimbursement for the use of personal cell phones.  [UF 31.] Instead, they filed a civil action and seek to bring this claim on a class-wide basis, rather than abide by the ***mandatory*** grievance and arbitration procedure created by the CBA, which also expressly obligates Menzies to provide them with all equipment necessary to perform their work.  As set forth below, that failure subjects their cellular phone-based Labor Code § 2802 cause of action to federal preemption and requires summary judgment on their individual claims.

///

4868-3327-1904.3

### III. MENZIES IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CELLULAR PHONE BUSINESS EXPENSE THEORY BECAUSE THE CLAIM REQUIRES INTERPRETATION AND POTENTIAL APPLLICATION OF THE CBAS

Fed. R. Civ P. 56(a) authorizes the granting of full or partial summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has sustained its burden, the burden then shifts to the nonmovant to identify specific facts, drawn from materials in the file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested.  *See Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (a party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial.")  A factual dispute is material only if it affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth.  *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Menzies acknowledges that a fact dispute exists as to whether personal cellular phones were in fact necessary business equipment and therefore arguably subject to Labor Code § 2802's provisions.  One the one hand, Menzies' policies unambiguously establish that employees are not to use personal cellular phones to carry out their work duties – let alone have such devices on their person during working time – and both its policies and dozens employees emphasize that if their duties require wireless

communication, Menzies provides radios and company cellular phones for that purpose. On the other hand, in the face of these policies, Plaintiffs contend they nonetheless had to use their personal phones for work purposes. However, this <u>fact dispute is not material and does not create a basis to deny partial summary judgment; rather, it emphasizes why the Court should grant partial summary judgment on the claim.</u> The existence of this fact dispute – whether such phones are or are not "necessary" – heightens the importance of the CBAs' express language requiring Menzies "to provide and to maintain properly equipment and materials adequate to perform *any and all* work assignments." Given that Menzies maintains express policies prohibiting use of cellular phones for work purposes, and agreed through collective bargaining to cover the cost of "equipment and materials … to perform *any and all* work assignments," Plaintiffs claim would require they prove Menzies acted in derogation not only of its policies, but its CBA commitments. As set forth below, because that necessarily would entail interpretation of the CBAs' "any and all" language that if not directly, certainly arguably, applies to Plaintiffs' claim. As a result, federal preemption applies to Plaintiffs' claim, and their failure to timely exhaust their grievance and arbitration rights demands partial summary judgment.

A.     **Where CBA Language Either Directly Or Even Arguably Applies To A Business Expense Claim, Resolution Of The Claim Demands Interpretation Of The CBA Language And Triggers Preemption**

The United States Supreme Court has stated that federal law should govern actions concerning the interpretation and enforcement of collective bargaining agreements. *See Steelworkers v. Rawson,* 495 U.S. 362, 368 (1990); *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957). Consequently, where an employee's job is covered by a CBA, state law-based claims – even if not based on the CBA itself – are preempted by the federal law where the outcome depends substantially on analysis of the terms of the CBA. 29 U.S.C. § 185(a); *Lingle*, 486 U.S. at 405-06; *Allis-Chalmers*, 471 U.S. at 210-11; *Verizon Cal, Inc.*, 108 Cal. App. 4th at 165.

While Labor Code § 2802 requires employers indemnify employees for *necessary*

expenditures incurred in direct discharge of their duties, provision of necessary business equipment and reimbursement of employee-incurred expenses may be properly the subject of collective bargaining negotiation and agreement. *See Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 569-70 (2007). As a consequence, where CBA language either speaks <u>directly or arguably</u> to the specific from of business equipment or expense at issue, federal preemption, and courts have correctly found it in directly analogous scenarios <u>where employees claimed unreimbursed expenses for business equipment and the CBA directs that the employer will provide such equipment</u>. *See, e.g., Rodriguez v. Gonsalves & Santucci, Inc.*, No. 21-CV-07874-LB, 2022 WL 161892, at *5 (N.D. Cal. Jan. 18, 2022) (finding the failure to pay business expenses substantially depends on analysis of CBA language entitling employees to reimbursement and requiring the employer to provide for certain equipment). Section 2802 claims only escape such preemption when the CBA language clearly will not apply to the specific business equipment or expense at issue, such that the claim can be resolved without <u>any</u> review and interpretation of the identified CBA language because it is not even arguable applicable to the situation at issue. *See, e.g., Dominguez v. W. States Fire Prot. Co.*, No. 221CV07319RGKMRW, 2022 WL 2234955, at *5 (C.D. Cal. Feb. 2, 2022) (no preemption when the CBA language applies only to tools and safety of tool kits, but contains no language even arguably covering personal cell phone use).

Here, any resolution of Plaintiffs' claim absolutely implicates the CBA and requires review and interpretation of its language. Specifically, the CBA explicitly states that Menzies will provide equipment and materials necessary for employees to perform *any and all* work duties. [UF 8.] Plaintiffs further admit that Menzies provided employees with communication devices, including cell phones, landlines, and radios. [29.] Plaintiffs also admit that Menzies maintained various policies that generally *prohibited* employees from using their personal cell phones during working hours, and provided for certain authorized *voluntary* (but not mandatory or "necessary") uses of personal devices. [UF 9.]

By nevertheless contending that Menzies acted in derogation of these requirements, they implicate multiple rules of contract interpretation are arising from these uncontested facts – including the CBA's contract language that Menzies will provide "equipment and materials necessary … to perform *any and all* duties." Consequently, this matter is not analogous to the *Dominguez* case noted above, where the CBA language limited itself to tools and tool safety kits, and thus had no arguable application to personal device use.  Instead, the language of the CBA here is expansive, covering *any* necessary equipment to perform *any and all* work assignments.  Particularly given the fact that Plaintiffs claim personal cellular phone use[2] was "necessary" in the face of Menzies' extensive evidence establishing otherwise, Plaintiffs' claim cannot be resolved without addressing Menzies' alleged direct, or at a minimum arguable, failure to comply with the expansive requirements in the CBA to provide Plaintiffs with the equipment they allege was necessary to perform their work assignments.  The determination of Plaintiffs' claim that Menzies required employees to use their personal devices but failed to reimburse them for the cost of such usage thus "depends substantially" on the interpretation of the terms of the CBA.[3]

**B.    Plaintiffs' Failure To Exhaust Their CBAs Remedies Within Six Months Of Their Last Injury Mandates Partial Summary Judgment**

When an employee's state law claim is preempted, as Plaintiffs' personal cellular

---

[2] Plaintiff's Motion for Class Certification limits their claim for expense reimbursement to cover only expenses incurred as a result of using their personal cell phones for work purposes. *See* Dkt. 41-1, p. 3.  While Plaintiff Amaya also testified at her deposition that her claim included expenses related to uniforms, that Plaintiffs did not include that theory as part of their class certification motion suggests they have abandoned it – wisely so given that Amaya admitted such claim would be limited to a handful of individuals only.  However, to the extent Plaintiffs attempt to resurrect that claim later in the case, the CBAs also contain express language regarding provision of uniforms, and Menzies reserves the right to show such uniform-related claims would accordingly be equally preempted.

[3] Even if the Court were to find it cannot resolve the preemption question at the summary judgment stage, the fact that it stands as a potentially valid defense to Plaintiffs' claims subjects them to defenses rendering them inadequate to represent any class of individuals on their personal cellular phone theory of liability.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992) (affirming denial of class certification because of defenses unique to the named plaintiff).

device use claim is, a court has the option to either dismiss it outright or treat it as a claim brought under § 301 of the LMRA.  *Allis-Chalmers*, 471 U.S. at 220-21.  <u>The quickest path to resolution here is for the Court to dismiss the claim outright by entering partial judgment in Menzies' favor</u>.  However, even if the Court elects to treat the preempted claims as brought under § 301, the same statute of limitations applicable to claims brought directly under § 301 apply.  *See id*.; *see also Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001).  Suits under § 301 claiming breach of a collective bargaining agreement are subject to a six-month statute of limitations.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169, 172 (1983); *Carter v. Smith Food King*, 765 F.2d 916, 919 (9th Cir. 1985).

As noted above, Plaintiffs acknowledge they had resort to the CBAs' grievance arbitration provisions, which apply to any asserted violation of the CBA – such as the obligation to provide necessary equipment for "any and all" work assignments.  Neither properly exercised that right, and neither has performed work at Menzies (and therefore incurred any alleged harm) within the last six months.  Even if the Court thus treats their personal cellular phone claim as brought pursuant to the LMRA, they are beyond the six-month statute of limitations period and have no valid claim as a matter of law.

## C.  The RLA Provides An Additional Basis To Grant Partial Summary Judgment Because Plaintiffs' Claim Is A Preempted "Minor Dispute"

The RLA creates "a comprehensive framework for resolving labor disputes" in the rail and airline industries.[4]  *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994).  Within this framework, labor disputes are first categorized as "representation," "major," or "minor," according to their subject matter, then assigned to a corresponding dispute-resolution mechanism.  *See W. Airlines, Inc. v. Int'l Bhd. of Teamsters*, 480 U.S. 1301, 1302-03 (1987) (O'Connor, J., in chambers).  State law claims are minor disputes under the RLA where they grow "out of grievances or . . . the interpretation or application of

---

[4] As noted *supra*, the National Mediation Board (the federal agency charged with interpreting the RLA) has made clear Menzies and Plaintiffs are covered by the RLA.

agreements covering rates of pay, rules, or working conditions."  45 U.S.C. § 151a; *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n (Conrail)*, 491 U.S. 299, 303 (1989). Much like the LMRA does, the RLA thus also preempts state law claims that are based upon, or require interpretation of, a collective bargaining agreement.  *Allis-Chalmers*, 471 U.S. at 220; *Matson*, 840 F.3d at 1132-33; *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032-33 (9th Cir. 2016); *McCray v. Marriott Hotel Services, Inc.*, 902 F.3d 1005 (2018) (the preemptive force of the Railway Labor Act is "virtually identical" to that of the LMRA); *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 693 (9th Cir. 2001) (en banc).

Because Menzies and its employees operate in the airline industry, and the CBAs expressly addresses its obligation to provide all "equipment and materials adequate to perform and any and all work assignments" and thus require interpretation, Plaintiffs' cell phone claim is a "minor dispute" covered by and preempted by the RLA.  As a preempted minor dispute, Plaintiffs' *exclusive* mechanism to resolve that claim is through the mandatory grievance and arbitration mechanism created by the CBAs.  Having failed to avail themselves of that mechanism, they cannot seek redress through civil means, and their preempted Labor Code § 2802 claim must be resolved via partial summary judgment.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant its Motion for Partial Summary Judgment, entering judgment in its favor as to Plaintiffs' Fifth Cause of Action for Failure to Reimburse under California Labor Code § 2802.

///

///

///

///

///

///

1   DATED: August 22, 2023          **FOLEY & LARDNER LLP**
2                                   Christopher Ward
                                    Kevin Jackson
3

4

5                                   */s/ Christopher Ward*
                                    Christopher Ward
6                                   Attorneys for Defendant MENZIES
                                    AVIATION (USA), INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4868-3327-1904.3