C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATARICA AMAYA, an individual; and ANIBAL SILVA, an individual; on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:22-cv-05915-HDV-MARx <br><br> <u>CLASS ACTION</u> <br><br> **DECLARATION OF C. JOE SAYAS, JR. IN SUPPORT OF OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Date:     October 26, 2023 <br> Time:     10:00 a.m. <br> Judge:    Hon. Hernán D. Vera <br> Ctrm:     5B, 5th Floor, <br>               First Street U.S. Courthouse |

1

DECLARATION OF C. JOE SAYAS, JR. IN SUPPORT OF OPPOSITION TO DEFENDANT MENZIES
AVIATION (USA), INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

192

### DECLARATION OF C. JOE SAYAS, JR.

I, C. Joe Sayas, Jr., hereby declare:

1.      I am an attorney admitted to practice before this Court and all the courts of the State of California.  I am counsel of record for Plaintiffs Dora Patricia Amaya and Anibal Silva (collectively, "Plaintiffs") in this action.  I have personal knowledge of the facts stated in this declaration, and, if called as a witness, I could and would competently testify thereto.

2.      Attached hereto as <u>Exhibit 1</u> is a true and correct copy of relevant excerpts from the transcript of the deposition of Talin Bazerkanian, who was designated by Defendant Menzies Aviation (USA), Inc. ("Menzies") as its representative deponent pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and whose deposition was taken in this case by Plaintiffs on April 13, 2023.

3.      Attached hereto as <u>Exhibit 2</u> is a true and correct copy of relevant excerpts from the transcript of the deposition of Brian Galindo, a managerial employee of Defendant Menzies, whose deposition was taken in this case by Plaintiffs on May 3, 2023.

4.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Peter Acosta, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

5.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Manuel Aguilera, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

6.      Attached hereto as <u>Exhibit 5</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by Plaintiff and putative class member Dora Patricia Amaya, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

7.      Attached hereto as <u>Exhibit 6</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Daniel Arango, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

8.      Attached hereto as <u>Exhibit 7</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Erick Chacon Bojorquez, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

9.      Attached hereto as <u>Exhibit 8</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Brandon Craig, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

10.     Attached hereto as <u>Exhibit 9</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Ruben Espinoza, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

11.     Attached hereto as <u>Exhibit 10</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Anthony Fernandez, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

12.     Attached hereto as <u>Exhibit 11</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Jordan Ford, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

13.     Attached hereto as <u>Exhibit 12</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Jazzmyne Freeman, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

14.     Attached hereto as <u>Exhibit 13</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Todd Fucile, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

15.     Attached hereto as <u>Exhibit 14</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Andrew Gutierrez, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

16.     Attached hereto as <u>Exhibit 15</u> is a true and correct copy of relevant excerpts

DECLARATION OF C. JOE SAYAS, JR. IN SUPPORT OF OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

of a signed declaration provided to my office by putative class member Clement Hurtado, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

17.     Attached hereto as <u>Exhibit 16</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Zoila Lemus, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

18.     Attached hereto as <u>Exhibit 17</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Wa Luo, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

19.     Attached hereto as <u>Exhibit 18</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Javier Martinez, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

20.     Attached hereto as <u>Exhibit 19</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Jesus Mendoza, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

21.     Attached hereto as <u>Exhibit 20</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Bryan Morgan, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

22.     Attached hereto as <u>Exhibit 21</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Kevin Orange, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

23.     Attached hereto as <u>Exhibit 22</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Jonathan Otzoy, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

24.     Attached hereto as <u>Exhibit 23</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Anthony Penca, which was previously submitted in support of Plaintiffs' Motion for Class Certification.

25.     Attached hereto as <u>Exhibit 24</u> is a true and correct copy of relevant excerpts of a signed declaration provided to my office by putative class member Abdel Rifai, which

DECLARATION OF C. JOE SAYAS, JR. IN SUPPORT OF OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    was previously submitted in support of Plaintiffs' Motion for Class Certification.

2        26.    Attached hereto as <u>Exhibit 25</u> is a true and correct copy of relevant excerpts

3    of a signed declaration provided to my office by putative class member Brandon Robinson,

4    which was previously submitted in support of Plaintiffs' Motion for Class Certification.

5        27.    Attached hereto as <u>Exhibit 26</u> is a true and correct copy of relevant excerpts

6    of a signed declaration provided to my office by putative class member Mario Rocha,

7    which was previously submitted in support of Plaintiffs' Motion for Class Certification.

8        28.    Attached hereto as <u>Exhibit 27</u> is a true and correct copy of relevant excerpts

9    of a signed declaration provided to my office by putative class member Ryan Sierra, which

10   was previously submitted in support of Plaintiffs' Motion for Class Certification.

11       29.    Attached hereto as <u>Exhibit 28</u> is a true and correct copy of relevant excerpts

12   of a signed declaration provided to my office by Plaintiff putative class member Anibal

13   Silva, which was previously submitted in support of Plaintiffs' Motion for Class

14   Certification.

15       30.    Attached hereto as <u>Exhibit 29</u> is a true and correct copy of relevant excerpts

16   of a signed declaration provided to my office by putative class member Abraham Torres,

17   which was previously submitted in support of Plaintiffs' Motion for Class Certification.

18       31.    Attached hereto as <u>Exhibit 30</u> is a true and correct copy of relevant excerpts

19   of a signed declaration provided to my office by putative class member Steven Vakoc,

20   which was previously submitted in support of Plaintiffs' Motion for Class Certification.

21       I declare under penalty of perjury under the laws of the United States and of the

22   State of California that the foregoing is true and correct.

23       Executed on September 5, 2023 in Glendale, California.

24

25       _____*/s/ C. Joe Sayas, Jr.*_____

26              C. JOE SAYAS, JR.

27

28

DECLARATION OF C. JOE SAYAS, JR. IN SUPPORT OF OPPOSITION TO DEFENDANT MENZIES
AVIATION (USA), INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

# EXHIBIT 1

```
 1              UNITED STATES DISTRICT COURT

 2              CENTRAL DISTRICT OF CALIFORNIA

 3                       -  -  -
        DORA PATRICIA AMAYA, an    ) CIVIL DIVISION
 4      individual; and BRAYAN     )
        LOZANO GONZALEZ, an        ) Case No.:
 5      individual; on behalf      ) 2:22-cv-05915-MCS-MAR
        of themselves and          )
 6      others similarly           )
        situated,                  )
 7                                 )
                Plaintiffs,        )
 8                                 )
           -vs-                    )
 9                                 )
        MENZIES AVIATION (USA),    )
10      INC., a Delaware           )
        corporation; and DOES 1
11      through 10, inclusive,

12              Defendants.

13                       -  -  -

14           CONTAINS HIGHLY CONFIDENTIAL PORTIONS

15

16              REMOTE VIDEOTAPED DEPOSITION OF TALIN

17      BAZERKANIAN, 30(b)(6), located in California,

18      commencing at 9:47 A.M. PDT, on Thursday, April

19      13, 2023, before ALYSSA A. REPSIK, Court Reporter

20      and Notary Public in and for the Commonwealth of

21      Pennsylvania.

22

23

24

25
```

TALIN BAZERKANIAN - 30(B)(6) - CONTAINS HIGHLY CONFIDENTIAL PORTIONS    JOB NO. 564833
APRIL 13, 2023

```
 1        A.    This relates just through Kronos.
 2        Q.    It would explain -- are you able to
 3   explain, generally, what Menzies' policy is
 4   with respect to use of personal cell phones at
 5   work?
 6        A.    I would probably -- I would want to
 7   do it based on the policy.  I don't want to
 8   just explain it.
 9        Q.    Sure.
10        A.    If you do have it, I'll be more than
11   happy to go over it with you.
12        Q.    We'll probably have to get that
13   after the break instead of having you wait.
14              But let me ask you this question:
15   As far as -- as far as cell phones are
16   concerned, are employees able to bring their
17   cell phones to work?
18        A.    They can bring them to work.  Yeah,
19   they can.
20        Q.    They can.  And can they receive
21   messages from HR or from supervisors or call
22   employees regarding work through the use of
23   their cell phones?
24        A.    That portion -- that question is
25   actually addressed on the Kronos' document that
```

TALIN BAZERKANIAN - 30(B)(6) - CONTAINS HIGHLY CONFIDENTIAL PORTIONS   JOB NO. 564833
APRIL 13, 2023

```
 1   you have up there.

 2         Q.    Yes.

 3         A.    They can receive it to the number

 4   that they have provided to us, but they also --

 5         Q.    Yes.

 6         A.    -- if you go to the Page 1, they

 7   also are able to -- can you take the document

 8   up a little bit to Page 1, please?

 9         Q.    Is this the page you're referring

10   to?

11         A.    No.  To the first page, please.  Let

12   me see.  Sorry.  I can't see your screen

13   anymore.  Sorry.

14                  MR. SAYAS:  Okay.  Can you

15   zoom this in, Cielo?

16                  THE REPORTER:  We just lost

17   the witness.

18                  MR. SAYAS:  Okay.

19                  MR. JACKSON:  I'll give her a

20   call.

21                  MR. SAYAS:  Kevin, why don't

22   we take a short break and see what we can do.

23                  MR. JACKSON:  All right.  Just

24   hang tight.

25                  MR. SAYAS:  Let's go off the
```

```
 1   record first, yeah, for a few minutes.

 2                   THE VIDEOGRAPHER:  All right.

 3   We are off the record.  The time is 3:31 p.m.

 4   Pacific time.

 5                   (A recess was taken.)

 6                   THE VIDEOGRAPHER:  Okay.  We

 7   are on the record.  The time is 3:35 p.m.

 8   Pacific time.

 9   BY MR. SAYAS:

10        Q.    We're still at Exhibit 18; right?

11                   MR. SAYAS:  Cielo, can we show

12   Exhibit 18?

13   BY MR. SAYAS:

14        Q.    Okay.  And I think you were trying

15   to say something about Exhibit 18?

16        A.    Yes.  If you can just -- in relation

17   to your question, if you can just take the

18   document up a little bit towards the bottom of

19   it?

20        Q.    Towards the bottom.

21        A.    Yeah.  Under line, it said that we

22   will be using the employees' provided cell

23   numbers, but it is completely voluntary, and it

24   says that if you are not -- and "you are not

25   required to consent to Menzies communication
```

TALIN BAZERKANIAN - 30(B)(6) - CONTAINS HIGHLY CONFIDENTIAL PORTIONS   JOB NO. 564833
APRIL 13, 2023

 1   with you using your mobile number or receiving

 2   text message as a condition of your employment.

 3   Please ask your human resources if you're

 4   interested in receiving more information about

 5   how we collect and use your personal

 6   information."

 7              And if you wish -- if the employee

 8   wishes no longer to receive it, they can

 9   communicate that within human resource, as

10   well.

11        Q.    Okay.  So for the employee to

12   receive the messages, either via text messages

13   or receive phone calls from a supervisor or

14   from anyone at Menzies, that employee should

15   acknowledge the fact that he's consenting to

16   the use of the personal cell phone.

17              Is that what it's trying to say?

18        A.    No.  What it is, they consent by

19   signing this document.

20        Q.    Okay.

21        A.    It's a consent.

22        Q.    Right.

23        A.    And if they do not wish to receive

24   text message or calls, it says clearly that

25   they have to contact their human resources and

```
 1   did Menzies provide cell phones to nonexempt

 2   employees?

 3        A.    No, we don't.

 4        Q.    Did Menzies provide any type of

 5   communication device, like a walkie-talkie or a

 6   hand-held type of communication device?

 7        A.    Yes, we do.  We do provide radios

 8   that are being used during the work hours.

 9            And I should go back a little bit.

10   We also did provide sometimes on-duty cell

11   phones for our supervisors.

12        Q.    Other than supervisors, does Menzies

13   provide cell phones to other nonexempt

14   employees?

15        A.    Not that I know of, no.  It could be

16   a duty phone that maybe an agent would use it

17   to perform a task, but it's not something that

18   we provide to an individual, specific

19   individual.

20        Q.    Now, you said that Menzies has

21   provided radios.  And did Menzies provide

22   radios or make radios available to all its

23   nonexempt employees?

24        A.    No, not all.

25        Q.    And whose employees receive radios?
```

```
 1        A.    Supervisors, leads, sometimes the

 2   employees that they work as a gate agent,

 3   sometimes the employees that are on the custom

 4   hall assisting the arrival employees.

 5             It depends on the function.  Depends

 6   on where they were, what function they do.

 7   It's not a generalized item that we just give

 8   it out.

 9        Q.    Okay.  So I understand there's

10   consent provided by employees, but is it fair

11   to say that there's a company-wide practice of

12   communicating with employees, for work

13   purposes, using the employee's personal cell

14   phone?

15        A.    No.  That's not -- it's not a true

16   statement.

17        Q.    Why is that?

18        A.    Why is that?

19        Q.    Yeah.

20        A.    It's because it's on a voluntary

21   basis.  So it's not to accommodate.  It only

22   becomes common if it's not non-voluntarily.  We

23   also have a hand-held policy that I mentioned

24   before that prohibits the employees to have

25   their cell phone while at work, or to have it
```

TALIN BAZERKANIAN - 30(B)(6) - CONTAINS HIGHLY CONFIDENTIAL PORTIONS    JOB NO. 564833
APRIL 13, 2023

```
 1   COMMONWEALTH OF PENNSYLVANIA            )
                                            ) SS
 2   COUNTY OF ALLEGHENY                     )

 3                   CERTIFICATE

 4    I, Alyssa A. Repsik, a notary public in and
     for the Commonwealth of Pennsylvania, do hereby
 5   certify that the witness, TALIN BAZERKANIAN,
     was by me first duly sworn to testify the
 6   truth, the whole truth, and nothing but the
     truth; that the foregoing deposition was taken
 7   at the time and place stated herein; and that
     the said deposition was recorded
 8   stenographically by me and then reduced to
     typewriting under my direction, and constitutes
 9   a true record of the testimony given by said
     witness.

10
      I further certify that I am not a relative,
11   employee or attorney of any of the parties, or
     a relative or employee of either counsel, and
12   that I am in no way interested directly or
     indirectly in this action.

13
      IN WITNESS WHEREOF, I have hereunto set my
14   hand and affixed my seal of office this 19th
     day of April 2023.

15

16

17           Alyssa A. Repsik
             Alyssa A.  Repsik, Notary Public
18           Court Reporter
             Notary Public
19           Allegheny County
             My Commission Expires March 3, 2024
20           Commission Number 129614

21

22

23

24

25
```

# EXHIBIT 2

BRIAN GALINDO                                          JOB NO. 591518
MAY 03, 2023

```
1              UNITED STATES DISTRICT COURT

2             CENTRAL DISTRICT OF CALIFORNIA

3                        -   -   -
   DORA PATRICIA AMAYA, an        )Case No.:
4  individual; and BRAYAN        )2:22-cv-05915-MCS-MAR
   LOZANO GONZALEZ, an           )
5  individual; on behalf of      )
   themselves and others         )REMOTE VIDEOTAPED
6  similarly situated,           )DEPOSITION OF BRIAN
                                 )GALINDO
7                 Plaintiffs,    )
                                 )
8  Vs.                           )
                                 )
9  MENZIES AVIATION (USA),       )
   INC., a Delaware              )
10 Corporation; and DOES 1       )
   through 10, inclusive,        )
11                               )
                  Defendants.
12

13

14                       -   -   -

15

16

17

18

19

20    REPRODUCTION OF THIS TRANSCRIPT IS PROHIBITED
      WITHOUT AUTHORIZATION FROM THE CERTIFYING
21    AGENCY

22

23

24

25
```

BRIAN GALINDO
MAY 03, 2023

JOB NO. 591518

```
 1        Q.    How do you know someone has a set-up
 2   that they're no longer using?
 3            Do you call them up?
 4        A.    The lead would communicate with
 5   other leads or the duty manager on shift where
 6   specifically they may grab their equipment for
 7   their assigned flight.
 8        Q.    You've got to figure out where
 9   anything is and go get it?
10            Is that right?
11        A.    Yes.
12        Q.    You said you're leads are usually
13   the ones doing the service.
14            How do they communicate with the
15   other leads or duty managers?
16        A.    Via radios.
17        Q.    Are lead ramp agents assigned
18   radios?
19        A.    Yes.
20        Q.    Are any of the ramp agents assigned
21   radios, as well?
22        A.    Ramp agents are not.
23        Q.    Besides leads, do ramp agents
24   communicate with other employees in your
25   department during the regular course of their
```

1  shift?

2      A.     In person, they may.

3      Q.     Are you aware that ramp agents in

4  LAX are often in group texts or WhatsApp

5  messages to communicate with each other?

6                   MR. JACKSON:  Objection.

7  Calls for speculation.

8  BY MR. EVANGELISTA:

9      Q.     Are you aware, Brian?

10     A.     May I proceed to answer?

11                  MR. JACKSON:  Yes.

12                  THE WITNESS:  I'm aware that

13  employees have the choice of being in group

14  chats or utilize their personal cell phones.

15  BY MR. EVANGELISTA:

16     Q.     Just a piece of housekeeping, at

17  certain points during the deposition your

18  lawyer may object to one of my questions.

19  That's his right.

20          Know that the purpose of those

21  objections is so the judge in our case can

22  properly rule on them, should that need arise.

23          You are always obligated to answer

24  unless you believe that doing so violates a

25  constitutional right of privilege, which your

BRIAN GALINDO
MAY 03, 2023

JOB NO. 591518

```
 1   lawyer would advise you of.
 2            Okay?
 3        A.    Understood.
 4        Q.    Are you also in those group text
 5   messages or WhatsApp messages?
 6        A.    Are you referring to with regular
 7   agents?
 8        Q.    Yes.
 9        A.    I am not.
10        Q.    How are you familiar with them?
11        A.    Like I mentioned, I am aware that
12   employees are able to use their personal
13   devices if they choose to.
14        Q.    How do you know they're on group
15   texts?
16        A.    Everybody uses their phones to
17   communicate.  If they choose to use their
18   phones to communicate, they're free to do so.
19   It's not something I mandate.
20        Q.    Did you tell your ramp agents that
21   they shouldn't use their personal cell phones
22   at work?
23        A.    That is a policy, yes.
24        Q.    My question is:  Did you tell them
25   that they shouldn't use their personal cell
```

BRIAN GALINDO
MAY 03, 2023

JOB NO. 591518

 1  phones at work?

 2       A.    I don't tell them because it's

 3  written on the policy that they're not allowed

 4  to use electronic devices on the ramp area.

 5       Q.    You are aware that they do?

 6       A.    On their own time, they can, yes,

 7  when they're not working.

 8       Q.    I'm talking about something

 9  different.  I'm talking about group text

10  messages where they communicate during work

11  about work?

12       A.    They can do that at work in the

13  break room, if they you would like or in the

14  hallway when they're not servicing a flight.

15       Q.    My question is a little bit

16  different.

17            Are you aware that your ramp agents

18  communicate using their personal cell phones

19  during work and regarding work on group text

20  messages and WhatsApp?

21       A.    As I mentioned, yes.

22       Q.    We don't have to quibble.  We can

23  move on.

24            Let's go back to your

25  responsibilities as the operations manager.  Is

1    COMMONWEALTH OF PENNSYLVANIA          )
                                          ) SS
2    COUNTY OF ALLEGHENY                   )

3                    CERTIFICATE

4         I, Katie Wilkerson, a notary public in and
     for the Commonwealth of Pennsylvania, do hereby
5    certify that the witness, BRIAN GALINDO, was by
     me first duly sworn to testify the truth, the
6    whole truth, and nothing but the truth; that
     the foregoing deposition was taken at the time
7    and place stated herein; and that the said
     deposition was recorded stenographically by me
8    and then reduced to typewriting under my
     direction, and constitutes a true record of the
9    testimony given by said witness.

10        I further certify that the inspection,
     reading and signing of said deposition were
11   waived by counsel for the respective parties
     and by the witness.

12

13        I further certify that I am not a
     relative, employee or attorney of any of the
14   parties, or a relative or employee of either
     counsel, and that I am in no way interested
15   directly or indirectly in this action.

16        IN WITNESS WHEREOF, I have hereunto set my
     hand and affixed my seal of office this 10th
17   day of May, 2023.

18             _Katie Wilkerson_

19        Katie Wilkerson, Notary Public
               Professional Reporter

20        My Commission Expires February 14, 2026

21

22

23

24

25

# EXHIBIT 3

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br>CLASS ACTION<br><br>DECLARATION OF PETER ACOSTA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

- 1 -

DECLARATION OF PETER ACOSTA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

the time I took my meal break after the 5th hour of my shift.    Even when I worked 12 hours, I would only take one meal break because there was not enough man power to handle the work.  There would normally be 4, 5 or 6 flights on the ground and we didn't have enough people to handle them all. If we finished one, we would have to help with the other teams working on other aircraft.  Flights and work always took precedence over taking a break.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

5.    I used my personal cell phone for work every day. My co-workers and I, including managers, had a group chat where we would discuss work related issues each day, including flight arrivals and departures, and any issues relating to the cargo that we were loading or unloading from the aircraft.  I would have to use my personal phone constantly at work.  We were told that we could not use our own personal phones for personal use while we were at work, but the managers and supervisors made it clear that we were allowed and expected to use them for work related tasks like communicating on the group chat.  Many times, as part of my job, I had to take pictures of defective equipment or cargo with my phone to send and report it to the group chat, so that management would see it.  I know that there were radios and company phones that were issued to and used by the supervisors and managers, but I was never offered one.  Based on my observations, those were only for management.

- 3 -

DECLARATION OF PETER ACOSTA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

6.    I do not recall Menzies Aviation ever offering to reimburse me for use of my personal phone for work duties, or ever advising me of any right to reimbursement. I am not aware of any procedure or way for me to get reimbursed by Menzies Aviation for the expense of using my personal cell phone for work-related tasks.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

7.    More often than not, I was not provided a meal break within the first 5 hours of my shift. There were simply too many flights and not enough people to handle them. My supervisors made it clear to me and my co-workers that Menzies Aviation required that the cargo take priority over any meal or rest break. Meal breaks had to be authorized by a manager or supervisor, and were not authorized when an aircraft needed to be serviced. I was not allowed to take a meal break when I wanted.

8.    Even when I did have a meal break it was often interrupted by text messages from supervisors in the group chat with instructions on what to do as soon as the meal break was over. The supervisor had to authorize the meal break and would do so only after the aircraft had been serviced. There were days that I worked more than 8 hours before I had any type of break, meal or otherwise.

9.    I am not aware of Menzies Aviation paying me any meal break premium or any additional wages, overtime, or penalties for not providing me a meal period, or for having me work during my meal breaks.

- 4 -

DECLARATION OF PETER ACOSTA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

10.     Throughout the time I worked for Menzies Aviation, I don't recall ever having a 10 minute break.  Work was continuous and there was no time to take a rest break.  The supervisor insisted that we promptly service all the aircraft.

11.     During that time period, Menzies Aviation did not pay me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.


Executed this _____APRIL 17th_____, 2023 at _____HAWTHORNE_____, California.


_____
Peter Acosta

- 5 -

DECLARATION OF PETER ACOSTA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# EXHIBIT 4

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx <br><br> CLASS ACTION <br><br> DECLARATION OF MANUEL AGUILERA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION <br><br> Judge: Hon. Mark C. Scarsi <br> Ctrm.: 7C, 7th Floor <br><br> Complaint Filed: August 19, 2022 <br> FAC Filed: August 30, 2022 |

- 1 -

MANUEL AGUILERA DECLARATION

# DECLARATION OF MANUEL AGUILERA

I, Manuel Aguilera, declare as follows:

1.    I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2.    I was employed in the Cargo Department for Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") warehouse from January 9, 2017, to November 1, 2022.  I  was responsible for handling larger cargo items (in excess of 1,000 pounds) that were being shipped into and out of the warehouse.

**My Typical Work Schedule for Menzies Aviation**

3.    My working hours with Menzies Aviation varied, but I would routinely work 8-hour shifts and sometimes longer up to around 11-hour shifts.

4.    I would clock-in and clock-out for my work shifts, including clocking in out out for meal breaks, using a Kronos biometric device that Menzies Aviation employs, which involves touching a pad in Menzies Aviation's Operations Room using my thumb.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

5.    Menzies required me to disclose my personal cell phone number and informed me that I can be contacted through it. Menzies' supervisors and employees communicated with me about work-related matters through my personal cell phone nearly every day either during work hours or during my personal time.  They would either call or text me work-related messages, including the gate to report to and pictures

of cargo, and whether I was authorized to accept certain cargo.  I would also use my cell phone to coordinate with other employees.  Menzies Avation would also send me links or documents that I need to read or sign..

6.    Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at Menzies Aviation for me to get reimbursed for the expense of using my personal cell phone for work-related tasks.

**Menzies Aviation Did Not Provide Uninterrupted 30-Minute Meal Periods**

7.    I would rarely take a meal within the first five hours of my shift.  Even on those rare occasions when I took a timely meal break, I and others I worked with would continue working at the warehouse while trying to eat.  Supervisors and other employees would often have questions that needed answered during meal breaks. In other words, our job duties would often continue and interrupt those meal periods.

8.    There were many reasons why I was not provided with a meal break within the first 5 hours of a shift.  The workload was overwhelming, and Menzies insisted on having it completed as quickly as possible. Also, we were required to be on standby because of the uncertainty of flight arrivals and departures. Furthermore, drivers would show up to offload or pickup cargo at the warehouse and we had to service them before taking any meal break. Menzies was adamant that a client had to be serviced promptly and doing so was more important than a meal break.  There was no set schedule for

- 3 -

MANUEL AGUILERA DECLARATION

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

12.    As discussed above, for numerous reasons, Menzies required me to make myself available through my cell phone during my shift so that they can reach me or similarly, that I can communicate with other employees about work-related issues. Menzies Aviation never offered me a company cellphone, has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my personal cellphone.  Menzies did not provide me with a company cell phone or alternative device at work that I or other employees can use to allow for work related communications without having to necessarily use my personal cell phone.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this _April 13_, 2023 at _Hawthorne_, California.

_Manuel Aguilera_
Manuel Aguilera

- 5 -

MANUEL AGUILERA DECLARATION

222

# EXHIBIT 5

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated, | CASE NO. 2:22-cv-05915-MCS-MARx <br><br> CLASS ACTION <br><br> DECLARATION OF DORA PATRICIA AMAYA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |
| Plaintiffs, | |
| vs. | Judge: Hon. Mark C. Scarsi <br> Ctrm.: 7C, 7th Floor |
| MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive, | Complaint Filed: August 19, 2022 <br> FAC Filed: August 30, 2022 |
| Defendants. | |

- 1 -

DECLARATION OF DORA PATRICIA AMAYA  IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

6.     While working for Menzies Aviation, the day prior to my shift, Menzies Aviation would inform me of what time to arrive for my shift. After I began servicing three airlines, Menzies Aviation would also inform me of the airline I would service the following day.

7.     There are two ways to clock-in and clock-out for employee work shifts. Menzies Aviation employs a biometric method, which involves touching a pad in Menzies Aviation's Operations Room using my thumb. The other method is an application ("Menzies App") installed on employee telephones. The Menzies App can be used when the biometric device is not working properly and was also used extensively during the Covid pandemic because of hygiene issues related to employees all touching the biometric pad with their thumbs.

8.     The Menzies App installed on the telephones of employees has a geolocation mechanism that monitors the location of the employee and precludes clocking in for a shift while the employee is outside of the airport. Like many Menzies Aviation employees, I use my personal telephone for work functions as Menzies Aviation has not provided me a telephone to use for work duties. I do not know if the Menzies App monitors my location at all times, even when away from the workplace. I only know that I must use it for work. In addition to providing a means for clocking-in and clocking-out, the Menzies App also permits manual modification or editing of employee clock-in and clock-out times.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

9.     I use my personal cell phone at work every day. In addition to using it often to clock-in and clock-out, I am responsible for advising the cargo department personnel of the assigned carousel to offload luggage. This requires me to call the carousel department operated by the airport to get the information. I also use my personal phone to

- 3 -

DECLARATION OF DORA PATRICIA AMAYA  IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

call customs border protection to give them information on the number of passengers arriving on an international flight, as well as the number of children and crew members. This is required before the passengers can depart the plane.

10.     While at work, I and other Menzies Aviation Passenger Customer Service Agents use our phones to communicate with each other through a group chat. The group chat is active when we are off the clock, taking meal breaks, while on rest breaks, and even when we are at home. We are also required to use our phones to take pictures of passport and visa information of passengers from certain countries, such as China or India. That information is then circulated to all those that participate in the group chat, all of whom to the best of our knowledge are using our personal cell phones. Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement.

**Menzies Aviation Did Not Provide Uninterrupted 30-Minute Meal Periods**

11.     My co-employees and myself are often not able to take our meal within the first five hours of our shift, or if we are able to take our meal afterwards, our job duties would often continue and interrupt those meal periods.

12.     Menzies Aviation informed me that it will be penalized when airline flights are delayed because of gate operations attributable to it. We are told that if the delay was attributable to us, that penalties can be in the many thousands of dollars. In order to ensure continuity of gate operations and avoid those penalties, we were required to continue working through it even if we go past the fifth hour. Menzies Aviation prioritizes flight operations over most other matters, including employee meal and break periods. Certainly, that has been my experience and the experience of others that I have witnessed.

- 4 -

DECLARATION OF DORA PATRICIA AMAYA  IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

13.    Menzies Aviation has a lunchroom that is approximately a 10-minute walk from my various workstations under ideal conditions. Getting to the lunchroom from gate areas requires exiting through the airport security checkpoints. The meal break is only 30 minutes long, and security checkpoints can incur delays or even closure if security events occur at the airport. This condition prevented me from getting back to my workstation in a timely manner. I and my co-employees therefore had to take our meal breaks in the Menzies Aviation Operations Room, which is within the airport security area.

14.    The Menzies Aviation Operations Room is a working area. I and others are often approached about work issues such as assisting at a gate or helping passengers while taking our meal breaks. In addition, because the Menzies Aviation group chats are on our respective personal phones, it was the customary practice to receive them throughout our meal times. Frequently, the Menzies Aviation group chats ask me to assist in work functions. We were not able to record this interruption of our meal breaks because Menzies' Kronos system would not allow a recording of meal break for less than 30 minutes.

15.    Although I had several missed, late, and interrupted meal breaks, which I estimated to exceed 50, I recall that Menzies paid only a couple of Meal Premiums.My understanding is that after this lawsuit was filed, Menzies Aviation has made more efforts to ensure that employees were permitted meal breaks within the first five hours of their shifts, and have in fact required employees to manually verify on paper that they have received the meal breaks. At the same time, Menzies Aviation managers have encouraged employees to sign these verifications even when they have not received their meal breaks during the initial five-hour period.  These changes occurred only after this lawsuit was filed.

- 5 -

DECLARATION OF DORA PATRICIA AMAYA  IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

purchasing of protective footwear nor has Menzies advised me of the right to reimbursement.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 05/21/2023 _____ at Porter Ranch, California.

_____
DORA PATRICIA AMAYA

- 7 -

DECLARATION OF DORA PATRICIA AMAYA  IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# EXHIBIT 6

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br>CLASS ACTION<br><br>DECLARATION OF DANIEL ARANGO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

- 1 -

DECLARATION OF DANIEL ARANGO IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

that needs to be towed.  My team would then have to ensure that we have all the equipment and vehicles needed to tow the aircraft, which were usually located at different locations.

7.    As Ramp Agents, we were not issued individual radios, so we had to utilize group chat to coordinate who would be responsible for getting each equipment and vehicle we needed for our towing assignment.  The equipment and vehicles we needed would not be in one location, so oftentimes we have to look for them.  As we are scattered in different locations, we communicate via our personal cellphones via calls/text messages/ group chat.  Once we have all the appropriate equipment and vehicles, we could proceed to tow the aircraft from gate to gate.

**My Typical Work Schedule for Menzies Aviation**

8.    My typical shift schedule with Menzies Aviation was from 3:00 p.m. to 11:00 p.m., Tuesdays to Saturdays.  My schedule sometimes went past 1:00 am the following day, if management asked me to do overtime.

9.    To start my shift, I would manually input my badge number and use my hand on a biometric device located at the Menzies Aviation office in LAX.  I would clock out at the end of my shift in the same way.  When I was given permission to take an off-duty meal break, I would also clock out and clock back in for those using the same biometric device.

- 3 -

DECLARATION OF DANIEL ARANGO IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

I do not recall getting paid extra wages for not receiving a second meal break when I work more than 10 hours. I believe only the hours worked are paid by Menzies Aviation at my regular rate.

18.   I do not recall being properly compensated for missed, late or interrupted meal breaks at Menzies Aviation.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

19.   My managers and supervisors at Menzies Aviation made it clear to me and the other Ramp Agents that we need to use our personal cellphones to do our jobs. I used my personal cell phone at work every day, since this was the main way my co-workers and I, including our supervisors and managers, would communicate about work.

20.   When agents Agents are at the terminal, we needed to gather the various equipment and vehicles that we needed to transport aircraft, or to load or off load luggage or cargos from various locations. We were not provided phones, radios, nor any handheld devices by which we can communicate with each other in real time. Hence, the only way we can verify with each other that the team have collected all the needed equipment and vehicles to be able to move to the next step is by using our personal cellphones.

21.   There was a group chat that we used to communicate with each other, including our supervisor, regarding work. This was how my team would communicate as we did our work. This was also how our supervisor can inform us to go to a specific gate, or tell us that an aircraft is delayed or rescheduled. The supervisor or lead would

- 6 -

DECLARATION OF DANIEL ARANGO IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

also text or call us with instructions and plane schedules, or to ask for assistance in loading and offloading luggage or cargo, or regarding other work tasks. There was no other way for Ramp Agents to get these instructions because we are not issued radios nor handheld device and we are always on the move.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

22.    Like with meal breaks, our managers and supervisors told us that we could only take a rest break if the supervisor or manager gives permission.  My memory is that I was only able to take a 10-minute rest break about 3 times a month.  We were pretty much always busy, so even on a slow day, the most I got was one 10-minute rest break for my entire 8 to 12 hour shift.  I do not recall ever receiving a second rest break on any of my shifts.

23.    Menzies Aviation treated employees like robots and not as human beings. Planes must absolutely leave on time.  However, they never bothered to arrange the schedules of Ramp Agents to allow people to take proper meals and rest breaks.  It's always non-stop activities, with planes arriving and departing back to back to back.

24.    I did not know that I can get paid for a missed rest break.  I do not recall ever being paid extra wages for any missed rest breaks by Menzies Aviation. I don't know of any way or procedure I could have asked for and obtained extra wages for my missed rest breaks.

- 7 -

DECLARATION OF DANIEL ARANGO IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

25.     As discussed above, I used my personal cell phone every day for work. I would get text messages from supervisors and managers about changes in my shift schedule, or if they needed me to come in early.  Throughout the day, my team/crew will group chat, text message or call each other to verify whether a particular equipment has been located and secured for our towing operations, give instructions to each other, and other work-related communications necessary for the towing operations.  I would often get text messages and phone calls during a supposed meal break from supervisors about work-related issues.

26.     Menzies Aviation never offered me a company cellphone, radio, or any other device to communicate with other co-workers, including supervisors. As I said, those constant communications were necessary to fulfill our daily responsibilities.

27.     Menzies Aviation has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my personal cellphone.

28.     I would use my personal cellphone 30% of the time for work related purposes for Menzies. My monthly cellphone bill was $90.00/month.

29.     I never knew I had a right to seek reimbursement for using my personal cellphone for work-related matters. Menzies Aviation has never offered to reimburse me

- 8 -

DECLARATION OF DANIEL ARANGO IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

for using my personal cellphone for work, nor did they advise me that I can be reimbursed. I was not aware of any procedure or mechanism at Menzies Aviation for me to get reimbursed for using my personal cellphone for work-related matters.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this _____05/15/2023_____ at ___Hawthorne_, California.

_____

Daniel Arango

- 9 -

DECLARATION OF DANIEL ARANGO IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# EXHIBIT 7

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>            Plaintiffs,<br><br>        vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>            Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br>CLASS ACTION<br><br>DECLARATION OF ERIK CHACON BOJORQUEZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

- 1 -

DECLARATION OF ERIK CHACON BOJORQUEZ IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

6.      I would clock in at the beginning of my shift, and clock out of work at the end of my shift, using the Kronos System that is located in the break room next to the General Manager's computer.  When a supervisor or manager authorized me to go on a meal break, I would also clock out and then clock back in on that same Kronos System.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

7.      From when I first started to work at Menzies Aviation, our managers and supervisors made it clear that we would need to use our personal cellphones to perform our work.  I used my personal cell phone at work every day.  It was the main way that my co-workers and I, including our supervisors and managers, would communicate about important work tasks.

8.      For each shift, Ramp Agents usually have a group text or chat.  For instance, the morning shift Ramp Agents would get a group text/chat message asking for 2-3 people to work until 12:00 MN for a late flight coming from Seattle. If nobody volunteered for overtime, about 30 minutes prior to end of the morning shift, supervisors will pull people from the break room or talk to ramp agents with the least seniority, "mandating" them to work longer hours. Sometimes, individual Ramp Agents would get a text message from a supervisor telling him/her that he/she was "mandated" to work overtime.

9.      One of the essential tasks for Ramp Agents is for the crew to work together in gathering all the necessary equipment we need for loading or offloading operations in

- 3 -

DECLARATION OF ERIK CHACON BOJORQUEZ IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

an aircraft. These equipment (such as belt loaders, dollies, etc.) were scattered all over the Air Operations Area (AOA).  The AOA are in the airport area and used for landing, takeoff, or maneuvering of aircraft.

10.    In the AOA, there is no way for Ramp Agents to communicate with each other except through radios or cellphones. But Ramp Agents like me were not issued a company cellphone or radio by Menzies Aviation.  As such, to communicate among each other, and with our superiors, Ramp Agents utilized our personal cellphones. We needed to stay in contact to know whether the crew were able to gather all the necessary equipment for the specific aircraft to be loaded/unloaded.  My supervisor or lead would also text or call us with instructions, as well as plane arrivals and departures information.

11.    Sometimes, we also need to take photographs of luggage that other Ramp Agents need to transfer to its connecting flight, or photographs of aircraft damage that must be immediately conveyed to the supervisor for necessary maintenance or repair, for safety reasons.  We also used our personal cellphones for these work tasks.

**Menzies Aviation Did Not Provide Timely Uninterrupted 30-Minute Meal Periods**

12.    From my experience, Menzies Aviation was frequently short-staffed. We have a lot of planes coming in and out, but many Ramp Agents calling out sick or injured.  We also have a high turnover rate.  Due to the constant short-staffing issues, the supervisors at Menzies Aviation will simply pull any Ramp Agents they see, or even those in the break room, to form a work team so that a plane can leave on time.

- 4 -

DECLARATION OF ERIK CHACON BOJORQUEZ IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

break premiums. And I don't recall ever being paid extra wages for any missed rest breaks by Menzies Aviation.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

31.    As discussed above, I used my personal cell phone every day for necessary ramp operations. I would get text messages about changes in my shift schedule or if I need to come in early. Throughout the day, my supervisor or lead will text message or call me giving instructions, informing me about plane arrivals and departures, asking me to assist in the loading/unloading of planes, or coordinating communication with other ramp agents in real time while we are in the AOA area.

32.    I estimate that about 60% of my personal cellphone use was for work related purposes for Menzies Aviation.  I recall my monthly cellphone bill at that time was $65.00.

33.    Menzies Aviation never offered me a company cellphone or radio to use instead of my cellphone. I never knew I had a right to seek reimbursement for using my personal cellphone for work-related matters.

34.    I am not aware of any procedure or mechanism at Menzies Aviation for me to get reimbursed for the use of my personal cellphone at work. The company has never reimbursed me for use of my personal cellphone for work-related matters.

- 9 -

DECLARATION OF ERIK CHACON BOJORQUEZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1    I declare under penalty of perjury under the laws of the State of California and the

2    United States that the foregoing is true and correct.

3        Executed this_____05/09/2023_____ at ____los angeles_____, California.

4

5

6        _____
                    *Erik Chacon*
7        Erik Chacon Bojorquez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- 10 -

DECLARATION OF ERIK CHACON BOJORQUEZ IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# EXHIBIT 8

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br>CLASS ACTION<br><br>DECLARATION OF BRANDON CRAIG IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

- 1 -

DECLARATION OF BRANDON CRAIG IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

9.     Throughout the time I have been working for Menzies Aviation, it is rare to ever have time for a rest break during my shift, and certainly not within the first four hours. Rather, during my shift, I would work continuously, and we were often shorthanded, making it even harder to ever get a rest break.  Flights get delayed, rescheduled, and cancelled, and thus departure and arrival times change. Yet, we are required to be ready at all times to handle the cargo.  In those rare instances when we are able to take a rest break, supervisors would have to give us permission before we are allowed to go on a 10-minute rest break.  If the staffing levels allowed and my supervisors gave permission, I would have wanted to take the 10-minute rest breaks required by California law since my work is very physically demanding.

10.     I am not aware of Menzies Aviation informing me that we were entitled to extra pay if Menzies Aviation did not provide us with 10-minute rest breaks during our shift. I am not aware of Menzies Aviation paying me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

**Menzies Aviation Did Not Reimburse Me for My Cell Phone**

11.     I use my cell phone everyday at work. I was never advised by my manager or supervisor that there was any other alternatives such as radios or walkie talkies. Everyone uses cell phones.  The supervisor will text me with instructions when I am at an airline or warehouse about cargo that it to be handled.  Any issues that come up during work will often be discussed over the telephone.  Menzies Aviation has never offered me a company cellphone, has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my

- 4 -

DECLARATION OF BRANDON CRAIG IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

personal cellphone.  I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this  April 27, 2023 at Hercules, California.

*Brandon M. Craig*

_____
BRANDON CRAIG

- 5 -

DECLARATION OF BRANDON CRAIG IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# EXHIBIT 9

1  C. JOE SAYAS, JR. (CA Bar No. 122397)
2  cjs@joesayaslaw.com
   KARL P. EVANGELISTA (CA Bar No. 250685)
3  kpe@joesayaslaw.com
4  **LAW OFFICES OF C. JOE SAYAS, JR.**
   500 N. Brand Boulevard, Suite 980
5  Glendale, California 91203
6  Telephone: (818) 291-0088
   Facsimile: (818) 240-9955
7

8  DAVID P. KING (CA Bar No. 136765)
9  dpk@kcmlaw.net
   **KING CHENG MILLER & JIN, LLP**
10 3675 Huntington Dr., Ste. 200
11 Pasadena, California 91107
   Telephone: (626) 304-9001
12 Facsimile: (626) 304-9002
13
14 Attorneys for Plaintiffs

15            **UNITED STATES DISTRICT COURT**

16           **CENTRAL DISTRICT OF CALIFORNIA**

17

18 DORA PATRICIA AMAYA, an          CASE NO. 2:22-cv-05915-MCS-MARx
   individual; and BRAYAN LOZANO
19 GONZALEZ, an individual; on behalf of   CLASS ACTION
20 themselves and others similarly situated,
                                     DECLARATION OF RUBEN
21            Plaintiffs,            ESPINOZA IN SUPPORT OF MOTION
                                     FOR CLASS CERTIFICATION
22        vs.
                                     Judge: Hon. Mark C. Scarsi
23 MENZIES AVIATION (USA), INC., a     Ctrm.: 7C, 7th Floor
   Delaware corporation; and DOES 1
24 through 10, inclusive,            Complaint Filed: August 19, 2022
25                                   FAC Filed: August 30, 2022
             Defendants.
26
27
28

                              - 1 -

   DECLARATION OF RUBEN ESPINOZA IN SUPPORT OF MOTION FOR CLASS
                            CERTIFICATION

                                247

# DECLARATION OF RUBEN ESPINOZA

I, Ruben Espinoza , declare as follows:

1.      I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2.      I was employed as an Aircraft Fueler for  Menzies Aviation (USA), Inc. ("Menzies Aviation") at the San Francisco  International Airport ("SFO") from November 30, 2017 to November 2021.

## My Duties and Responsibilities at Menzies Aviation

3.      I was a Supervisor at SFO and was responsible, with others in my crew, to fuel aircraft.  Often, there were 4 or 5 aircraft that had to be fueled at the same time and we were instructed by Menzies Aviation that we had 30-40 minutes to fuel the aircraft.

## My Typical Work Schedule for Menzies Aviation

4.      My typical shift was scheduled Sunday through Thursday from 04:00 p.m. to 14:00 p.m., but many days I worked 12-13 hours.  I supervised United aircraft and international flights.  I had 8-10 guys working in my crew that I was responsible for supervising.   My crew and I hardly ever had an uninterrupted 30 minute meal break and many days I was not provided a meal break within the first 5 hours of my shift.

5.      Each day I would clock in and clock out of work without meal breaks using the Kronos System that Menzies Aviation used that was located in the Menzies Aviation AOA office.

## The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation

6.      As a supervisor I pushed Menzies Aviation to provide radios, either mounted or handheld, for my crew, but Menzies Aviation did not provide them.  I was not even provided one and I was a supervisor.

- 2 -

DECLARATION OF RUBEN ESPINOZA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

7.      Nearly everyone's cell phone number was posted on a list in the dispatch office and the managers would often call me and my crew members on our cell phones. We would use our cell phones to call the dispatch office to find out the status of a flight and other work related issues.  Also, my crew would send me pictures from their cell phones  of, for examples,  fuel spills, dripping hose, or the wrong tail number of an aircraft.  We also used our cell phones for a group chat to keep each other informed of flight information including delays, and cancellations, specific instructions regarding an arriving or departing flight, any problems with equipment and similar work issues. The manager was well aware of the cell phone use because he often communicated with the lead or myself through our cell phone. but never offered us a company phone, radio or anything else to use instead of our personal cell phones.

8.      Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement.  I am also not aware of any way or procedure for me to request reimbursement from Menzies Aviation for my use of my personal cell phone for work-related tasks.

**Menzies Aviation Did Not Provide Timely Uninterrupted 30-Minute Meal Periods**

9.      Menzies Aviation management advised me to tell my crew that there was not enough time between flights for scheduled meal or rest breaks and we were to try to squeeze in a meal break between flights if we were able.  But some days there was not enough time between flights to take a proper 30 minute meal break.  Menzies Aviation constantly advised us that we would be fined if a flight was delayed. I was responsible for driving around to determine if there were any and/or to prevent delays.  If a crew member took a break without permission and a flight was delayed I was instructed to counsel that employee.  If the delay was more than a minute or two I was instructed to write up that employee.

- 3 -

DECLARATION OF RUBEN ESPINOZA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1         I declare under penalty of perjury under the laws of the State of California and the

2    United States that the foregoing is true and correct.

3

4    Executed this _____MAY  1_____, 2023 at ___AUSTIN___, ~~California.~~ TEXAS

5

6

7    _____
     Ruben Espinoza

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 5 -

DECLARATION OF RUBEN ESPINOZA IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION

# EXHIBIT 10

1    C. JOE SAYAS, JR. (CA Bar No. 122397)
2    cjs@joesayaslaw.com
     KARL P. EVANGELISTA (CA Bar No. 250685)
3    kpe@joesayaslaw.com
     **LAW OFFICES OF C. JOE SAYAS, JR.**
4    500 N. Brand Boulevard, Suite 980
5    Glendale, California 91203
     Telephone: (818) 291-0088
6    Facsimile: (818) 240-9955

7    DAVID P. KING (CA Bar No. 136765)
8    dpk@kcmlaw.net
     **KING CHENG MILLER & JIN, LLP**
9    3675 Huntington Dr., Ste. 200
     Pasadena, California 91107
10   Telephone: (626) 304-9001
     Facsimile: (626) 304-9002
11

12   Attorneys for Plaintiffs
13
                    **UNITED STATES DISTRICT COURT**
14
                   **CENTRAL DISTRICT OF CALIFORNIA**
15

16   DORA PATRICIA AMAYA, an            CASE NO. 2:22-cv-05915-MCS-MARx
17   individual; and BRAYAN LOZANO
     GONZALEZ, an individual; on behalf of  <u>CLASS ACTION</u>
18   themselves and others similarly situated,
                                          DECLARATION OF ANTHONY
19             Plaintiffs,               FERNANDEZ IN SUPPORT OF MOTION
                                          FOR CLASS CERTIFICATION
20        vs.
                                          Judge: Hon. Mark C. Scarsi
21   MENZIES AVIATION (USA), INC., a     Ctrm.: 7C, 7th Floor
22   Delaware corporation; and DOES 1
     through 10, inclusive,              Complaint Filed: August 19, 2022
23                                       FAC Filed: August 30, 2022
               Defendants.
24

25

                                  - 1 -

     DECLARATION OF ANTHONY FERNANDEZ IN SUPPORT OF MOTION FOR
                          CLASS CERTIFICATION

6.      Each day I would clock in and clock out of work and meal breaks using the Kronos System that Menzies Aviation used that was located in the Menzies Aviation office.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

7.      I used my personal cell phone at work every day. I would use it throughout my shift to communicate with other employees, managers and supervisors about our instructions, plane arrivals and departures, cargo issues, and other related work issues. We had a group chat that was used to keep everyone updated on flight information, including delays, and cancellations, specific instructions regarding an arriving or departing flight, issues with any luggage or cargo, and other work related issues throughout the day. I had no other electronic device to communicate with my other crew members, supervisors or managers or keep track of arriving and departing flights, and other work related issues. My managers and supervisors knew that I was using my personal cell phone for my work-related tasks, but they did not offer me a company phone, radio or anything else to use instead of my personal cell phone.

8.      Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am also not aware of any way or procedure for me to request reimbursement from Menzies Aviation for my use of my personal cell phone for work-related tasks.

- 3 -

DECLARATION OF ANTHONY FERNANDEZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1   constantly loading or unloading cargo and luggage or on standby waiting for a plane to

2   arrive or depart, and flight departure and arrival times were constantly changing. For

3   security measures, we were unable to leave an empty plane at the gate and had to remain

4   with the plane until it was fully secured or left the gate. If the staffing levels had been

5   better, I would have wanted to take my ten minute rest breaks if Menzies Aviation had

6   told me about them.

7

8       15.    I am not aware of Menzies Aviation ever paying me extra wages for any of

9   the missed rest breaks while I was employed with Menzies Aviation.

10  **Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

11

12

13      16.    As discussed above, I used my personal cellphone constantly during my shift

14  to communicate with others about tasks to be completed or that had been completed. I

15  would receive instructions from my supervisors, managers and leads throughout the day,

16  including about gates to meet them. I would often get text messages and phone calls

17  during a meal break from supervisors about work related issues. Menzies Aviation never

18  offered me a company cellphone, has never reimbursed me for use of my personal

19  cellphone, and has never advised me of the right to be reimbursed for the use of my

20  personal cellphone.

21

22

23

24

25

- 6 -

DECLARATION OF ANTHONY FERNANDEZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1    I declare under penalty of perjury under the laws of the State of California and the

2    United States that the foregoing is true and correct.

3    Executed this ___April 14th___ , 2023 at ___Gardena___ , California.

4

5

6    _Anthony Fernandez_
     Anthony Fernandez

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- 7 -

DECLARATION OF ANTHONY FERNANDEZ IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

# EXHIBIT 11

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br>CLASS ACTION<br><br>DECLARATION OF JORDAN FORD IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

1

257

**DECLARATION OF JORDAN FORD**

I, Jordan Ford, declare as follows:

1.      I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2.      I have been employed as a Ramp Agent for Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") since April 8, 2022.

**My Duties and Responsibilities at Menzies Aviation**

3.      As a Ramp Agent, I am responsible, along with others on my team, for loading and unloading luggage and cargo for aircraft that would arrive and depart each day.  Flights are arriving and departing constantly at LAX and we have to be ready at all times to handle the luggage and cargo for those airplanes.  Many days we were shorthanded and had difficulty handling all the luggage and cargo that needed handling, especially when airplanes were arriving or departing near in time to each other.

**My Typical Work Schedule for Menzies Aviation**

4.      My working hours with Menzies Aviation varied, but more recently I have been working Saturdays through Wednesdays.  Some days I would work a shorter 5 hour shift, but most days I am scheduled to work from 4:00 p.m. to 11:30 p.m.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

5.      I often use my personal cell phone at work. The managers and supervisors text flight or gate schedule changes, as well as other work related instructions. I clocked in and out for my shift, as well as clocked in and out for meal breaks, using the Kronos machine that was located at the office.  If there was a technical problem with the machine then I could  use the app on my  phone.

6.     Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

7.     While a meal break is supposedly scheduled at the beginning of my shift each day, more often than not it has not been followed and I was not permitted a meal break until more than 5 hours after I started my shift.  There were some days that I was not able to take a meal break at all.  Work was too busy and our managers made it clear to use that Menzies Aviation's priority was to complete the work for the clients before meal breaks are permitted.  I would have gotten in trouble if I had just left the job to take my scheduled meal break.  I was required to get permission from my supervisor before I could go on any break.

8.     There was always uncertainty about flight arrivals and departures, so we would always be on standby to handle those flights. Also, there would be manpower shortages so that fewer of us had to handle more tasks, and the work load became heavier. Meal breaks were not authorized when there was work left to be completed.  Supervisors always stressed to us the need to get the work done to satisfy the airline customers.

9.     I was told by a supervisor and a manager that Menzies Aviation would be penalized if we caused a delay in a flight.  That is why handling the luggage and cargo for the aircraft was prioritized over taking a timely meal break.

10.     My supervisor told me to submit a Missed Punch Form whenever I was not able to take a meal break at all.  But I am not aware of any procedure to follow when I am not able to take a meal break within the first 5 hours of my shift.  Many times when I submitted the Missed Punch Form it was not approved by my supervisor for reasons I never understood, and therefore I would not receive any additional wages for that late meal break.

3

DECLARATION OF JORDAN FORD IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

11.    I was not aware of Menzies Aviation's requirement to provide rest breaks during our 8 hour shift.  I never received one and only recently learned that I was entitled to them.  The work requirements are excessive and we just push through without a break until the supervisor allows us to take a meal break, if I am even permitted to take one on that day.

12.    I am not aware of any form or procedure I can use to ask Menzies Aviation for premium wages on days I don't get rest breaks. I am not aware of Menzies Aviation paying for any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this_____4/20/2023_____, 2023 at _____Inglewood_____, California.

_____
Jordan Ford

4

DECLARATION OF JORDAN FORD IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# EXHIBIT 12

1

2  C. JOE SAYAS, JR. (CA Bar No. 122397)
   cjs@joesayaslaw.com
3  KARL P. EVANGELISTA (CA Bar No. 250685)
   kpe@joesayaslaw.com
4  **LAW OFFICES OF C. JOE SAYAS, JR.**
5  500 N. Brand Boulevard, Suite 980
   Glendale, California 91203
6  Telephone: (818) 291-0088
7  Facsimile: (818) 240-9955

8  DAVID P. KING (CA Bar No. 136765)
   dpk@kcmlaw.net
9  **KING CHENG MILLER & JIN, LLP**
10 3675 Huntington Dr., Ste. 200
   Pasadena, California 91107
11 Telephone: (626) 304-9001
12 Facsimile:  (626) 304-9002

13 Attorneys for Plaintiffs

14           **UNITED STATES DISTRICT COURT**

15           **CENTRAL DISTRICT OF CALIFORNIA**

16

17 DORA PATRICIA AMAYA, an                CASE NO. 2:22-cv-05915-MCS-MARx
   individual; and BRAYAN LOZANO
18 GONZALEZ, an individual; on behalf of  CLASS ACTION
   themselves and others similarly situated,
19                                         DECLARATION OF JAZZMYNE
                                           FREEMAN IN SUPPORT OF MOTION
20          Plaintiffs,                    FOR CLASS CERTIFICATION

21      vs.                                Judge: Hon. Mark C. Scarsi
                                           Ctrm.: 7C, 7th Floor
22 MENZIES AVIATION (USA), INC., a
   Delaware corporation; and DOES 1       Complaint Filed: August 19, 2022
23 through 10, inclusive,                  FAC Filed: August 30, 2022

24          Defendants.

25

---

- 1 -

DECLARATION OF JAZZMYNE FREEMAN IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

6.    In a shift, there are about 4 supervisors and 2 managers. There is no set crew for each supervisor, so they pull workers into their crews as needed. For instance, if a person is finished with his or her task on one crew (*e.g.*, offloading the cargo at the lower deck), then he or she can get pulled off by other supervisors to help with another crew on another aircraft.

**My Typical Work Schedule for Menzies Aviation**

7.    My work schedule varied at Menzies Aviation, depending on when my manager and supervisor instructed me to come in and when they dismissed me. Sometimes I reported for work at 4:00 a.m. and worked through 4:00 p.m. or 5:00 p.m. Sometimes I came in at 8:00 a.m. and worked until 6:00 p.m.

8.    My working hours varied from 8 hours to 12 hours per shift.  I generally worked five or six days a week.  It all depended on what the company required.

9.    I would clock in at the beginning of my shift, and clock out when my manager or supervisor dismissed me from work, on a device located inside the warehouse.  When I am authorized to take a meal break, I would also clock out and back in on that device.  I would place my finger on the device to clock in or out, and it records my working time and meal breaks.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

10.    I used my personal cell phone as an essential tool in my work, and our managers and supervisors made it clear that this was expected.  My personal cell phone

- 3 -

DECLARATION OF JAZZMYNE FREEMAN IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

was used for work purposes every day. Before our shift even starts, every one that is supposed to report for work the next day will get a group text message from supervisors, about our work schedule.

11.    At work, we regularly received updates on aircraft arrival/departure schedules, and supervisors continuously communicated with us throughout the shift to give instructions or ask questions, to ask for our assistance, or if they are looking for something.  These text messages, which are usually sent and received on a group text, reached us even during our meal breaks.

12.    Moreover, Freighter Agents need to gather equipment and vehicles for our daily operations. These equipment/vehicles are all over the LAX airport, so we need to coordinate among us who will be in charge of gathering each equipment. It is only when we have the proper equipment and vehicles that we can start loading/offloading cargos. So for the tasks of gathering the equipment and vehicles our crew needed, the other Freighter Agents and I utilized our personal cellphones to coordinate among ourselves. We would be scattered in various parts of the airport to gather these equipment, so the only way we could communicate with each other is through our personal cellphones, because Freighter Agents are not issued company cellphones nor radios.

13.    About fifty percent (50%) of the time, I used my personal cellphone for Menzies Aviation work purposes. At that time, my monthly cellphone bill was around $100.00 per month.

- 4 -

DECLARATION OF JAZZMYNE FREEMAN IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

14.     Menzies Aviation never offered to reimburse me for use of my personal cellphone for work duties, and has never advised me of any right to reimbursement.  I am not aware of any procedure or mechanism at Menzies Aviation to request or get reimbursement for an employee's use of a personal cellphone on work tasks.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

15.     By rule, we have to wait for a supervisor to give a go signal when to take our meal breaks, or permission when we we ask for a meal break.  If I don't get any approval, I am not allowed to take my meal break.

16.     Getting permission to take meal breaks depended on how busy we were. If there are 4 aircraft on the ground, and only 20-25 Freighter Agents report for the shift, then I could expect no meal break. The managers and supervisors put pressure on the agents to get aircraft to depart on schedule regardless of when or whether we got our meal periods.

17.     I understand that Menzies Aviation's written policy is that employees should get meal breaks by the 5th hour of work, and that it must be uninterrupted for 30 minutes. While that may be the policy on paper, those were not followed in practice.  My superiors impressed on us that it is imperative to get all the aircraft to depart on time, and that this was more important than when and whether we took any breaks.  From my experience, the actual practice was that the supervisors would not give us permission to take a meal break whenever there was still work to be done to get aircraft loaded or unloaded.

- 5 -

DECLARATION OF JAZZMYNE FREEMAN IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

23.    Looking back, there was just too much of a work load that I can't imagine the supervisors would allow us to go off duty for a whiole 10 minutes. Instead, supervisors told us that they consider downtime (*i.e.*, the time we are waiting around for aircraft to arrive) as our rest breaks.  In other words, supervisors believed that the time Freighter Agents spent on the tarmac, under the hot sun, waiting for the next aircraft, counted as our rest break.

24.    At best, I would ask to go on a bathroom break, but it was never a full 10 minutes, because the supervisor made it clear that I had to come back right away to be ready to work as soon as the next plane was there.

25.    Menzies Aviation never informed me that I was entitled to extra pay if I was not provided with rest breaks.  There was no company procedure I knew of to obtain missed rest breaks payments. I don't recall ever being paid for any missed rest breaks by Menzies Aviation.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this_____05/09/2023_____ at _____Los Angeles_____, California.

_____
Jazzmyne Freeman

- 7 -

DECLARATION OF JAZZMYNE FREEMAN IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# EXHIBIT 13

1  C. JOE SAYAS, JR. (CA Bar No. 122397)
2  cjs@joesayaslaw.com
   KARL P. EVANGELISTA (CA Bar No. 250685)
3  kpe@joesayaslaw.com
   **LAW OFFICES OF C. JOE SAYAS, JR.**
4  500 N. Brand Boulevard, Suite 980
   Glendale, California 91203
5  Telephone: (818) 291-0088
6  Facsimile: (818) 240-9955

7  DAVID P. KING (CA Bar No. 136765)
8  dpk@kcmlaw.net
   **KING CHENG MILLER & JIN, LLP**
9  3675 Huntington Dr., Ste. 200
   Pasadena, California 91107
10 Telephone: (626) 304-9001
11 Facsimile: (626) 304-9002

12 Attorneys for Plaintiffs

13          **UNITED STATES DISTRICT COURT**

14          **CENTRAL DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| 16 DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO 17 GONZALEZ, an individual; on behalf of themselves and others similarly situated, 18 | CASE NO. 2:22-cv-05915-MCS-MARx CLASS ACTION DECLARATION OF TODD FUCILE IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |
| 19          Plaintiffs, 20          vs. 21 MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 22 through 10, inclusive, 23          Defendants. 24 | Judge: Hon. Mark C. Scarsi Ctrm.: 7C, 7th Floor Complaint Filed: August 19, 2022 FAC Filed: August 30, 2022 |

25

- 1 -

DECLARATION OF TODD FUCILE IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

6.    As it was "part of our contract" to do drafts, if you couldn't do a double shift, you need to find a replacement fueler or you will be asked to "pass your badge" because you'd be terminated.  I have a friend at work who had a family emergency and he was still not allowed to forego his double shift because he cannot find a replacement. For fear of being terminated, he was forced to work.  I knew 2 other employees, although I cannot recall their names, who got terminated for refusing to do drafts. They were told not to come back.  Menzies Aviation asked a lot from their employees, so a lot of employees quit.  The fast turnover rate of employees exacerbated the working situations of those who stayed.

7.    At the beginning of my shift, I would clock in using my finger on the biometric device located on the wall of the break room.  I would clock out the same way at the end of my shift.

**My Duties and Responsibilities at Menzies Aviation**

8.    As an Aircraft Fueler, I was responsible for fueling aircraft at the San Diego airport.  When I started working at Menzies Aviation, I was trained by a lead fueler, who told me to download the FlightAware App on my personal cellphone to use for my work. As fuelers, the FlightAware App enabled us to track incoming flights, delays, cancellations, and which gates the plane will go into.

9.    At the beginning of my shift, I would get my flight schedule from the managers, which typically had 12-13 flights listed per shift, including the airline names and the flight numbers.  From there, I would find and get into my assigned truck, then drive over to the opposite side of the airport, which is about a good 10-minute drive, to the runway to begin fueling aircraft.  The rest of my shift involved driving to various locations throughout the airport to fuel the aircraft assigned to me by Menzies Aviation.

- 3 -

DECLARATION OF TODD FUCILE IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

10.    Even though I got a printout of my flight schedule for the day at the beginning of my shift, flights regularly got delayed or cancelled.  Flight schedules are not cast in stone and are often delayed.  As a Fueler, I needed to be ready on a moment's notice to fuel the aircraft when it arrives.  My superiors at Menzies Aviation made it clear to fuelers like me that we must absolutely not have any flight delays, even at the expense of employee breaks of any kind.  As such, because I had such a heavy workload, I rarely took my meal break within the first 5 hours of working when I worked there.  For the same reasons, it was also typical for me not to have a meal break at all for an entire shift.

11.    If I did have an opportunity to take a meal break, I would just clock out on the Kronos App on my phone, because the Menzies Aviation break room was a long drive away from the runway, where I did my work fueling aircraft.   I would commonly eat my lunch sitting inside my fuel truck, because my supervisor made it clear that I needed to be ready on a moment's notice to fuel an aircraft if they needed me, and I would never know when my supervisor might instruct me to cover for another fueler and go fuel up another aircraft.

12.    So even if I had a chance to have a meal break in my truck, it was often interrupted by my supervisor over the radio, or calling me on my personal cellphone, or driving by with instructions to fuel another aircraft.  This happened about every other day.

13.    I remember that when I would put in more than a 10-hour shift, there would be a deduction of 30 minutes in my time records for that shift even though I did not have that 30-minute meal break.  When I inquired why there is a 30-minute reduction, the General Manager told me that it was because I neither clocked out for a second meal break nor filled out a Missed Punch Form ("MPF").  Basically, the managers explained to

- 4 -

DECLARATION OF TODD FUCILE IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1   Executed this_____05/15/2023_____ at __Columbia_, Misouri.

2

3   _____

4   Todd Fucile

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- 6 -

DECLARATION OF TODD FUCILE IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# EXHIBIT 14

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br>CLASS ACTION<br><br>DECLARATION OF ANDREW GUTIERREZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

- 1 -

DECLARATION OF ANDREW GUTIERREZ IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

up with their managers and HR if they wanted any chance of getting paid for missed meal breaks.

19.    If I stayed on track with my follow ups and got lucky, I might get paid. However, it would become a circus, with each of them giving me the run around. There was always too much back and forth with the manager, dispatch, and HR people, so much so that it becomes more of a headache to follow up that you just had to let it go, because it felt like they would just fight you so hard to not pay what you're owed. My recollection is that I rarely got properly compensated for missed, late or interrupted meal breaks at Menzies Aviation.

20.    There is strong pressure to finish the job and not complain because my loyalty will be questioned, or I will earn the ire of my superiors. However, it was unfair that I didn't get properly paid for carrying the heavy load.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

21.    I used my personal cell phone at work every day, because it was one of my essential tools to properly do my job. My supervisor or lead would text or call us with instructions, to inform me of my schedule for the next day, to give updates on plane arrivals and departures, which gate to go to next, etc.

22.    Furthermore, as a ramp agent, I am part of the crew that must gather equipment, *e.g.*, belt loader, LD7 (an equipment that connects to a vehicle that is used to transfer cargo or luggage). Except for the leads, Ramp Agents are not provided with any

- 6 -

DECLARATION OF ANDREW GUTIERREZ IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

radios, nor company cellphones, hence, we utilize our personal cellphones to communicate with the crew to ensure that the team has all the equipment necessary to do our job prior to loading or offloading the aircraft. Our lead might set up a group chat or we could simply call or text each other.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

23.     When I was working for Menzies Aviation, the Ramp Agents rarely got rest breaks. Our superiors told us that they consider our downtime (*i.e.*, when we are finished loading the passenger bags inside the plane and waiting for other agents to finish their tasks) as our rest break.

24.     However, we still cannot leave the plane until it is time to take off, so it didn't even feel like a rest break. Ramp agents cannot leave an aircraft unattended, so we are forced to stay in the cargo area of the plane or sit on the tarmac for this supposed rest break. So during the time that I was employed by Menzies Aviation, I did not get to take any real rest breaks.

25.     I never knew that I can get paid for a missed rest break, much less know what the procedure would be to get missed meal break premiums. As far as I know, there wasn't a procedure to ask Menzies Aviation for extra pay for missed rest breaks. I remember there was supposed to be a procedure for meal breaks, but not rest breaks.

26.     As far as I remember, I have never been paid any extra wage for missed rest breaks by Menzies Aviation.

- 7 -

DECLARATION OF ANDREW GUTIERREZ IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

27.    As discussed above, I used my personal cell phone daily for work purposes. This was the main way that my co-workers, including my bosses, would communicate with us about work. I would get text messages or calls throughout my shift. I would even get text messages and phone calls when I was supposed to be on a meal break, from supervisors wanting to discuss work related issues.

28.    More importantly, we use our personal cellphones to communicate with our team or crew to ensure that we have all the proper equipment for our task. Since we are not issued company cellphones, nor given radios, the crew utilized group chat, text message, or call each other using our personal cellphone since we could be in various areas in the airport to gather these equipment.

29.    When I was working for Menzies Aviation, about 70% of the time I used my personal cellphone was for work related purposes. My monthly cellphone bill at the time was $100.00/month.

30.    I never knew I had a right to seek reimbursement for using my personal cellphone for work-related matters. Menzies Aviation has never offered to reimburse me for that, nor have they advised me that I can be reimbursed. I am not aware of any procedure or mechanism I could have used at Menzies Aviation to get reimbursement for my use of my personal cellphone for work-related things.

- 8 -

DECLARATION OF ANDREW GUTIERREZ IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1      I declare under penalty of perjury under the laws of the State of California and the

2  United States that the foregoing is true and correct.

3      Executed this_____05/10/2023_____ at __Torrance___, California.

4

5

6      _____

7                Andrew Gutierrez

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- 9 -

DECLARATION OF ANDREW GUTIERREZ IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# EXHIBIT 15

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>    Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br>CLASS ACTION<br><br>DECLARATION OF CLEMENT HURTADO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

- 1 -

DECLARATION OF CLEMENT HURTADO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

**My Typical Work Schedule for Menzies Aviation**

5.    I would typically work 12 hour shifts, 5 days per week while working for Menzies Aviation.    Throughout my time with Menzies Aviation, I constantly felt pressured by my managers to work through lunch and rest breaks.    I would go to the refinery to pick up the jet fuel and often there would be a line that I would have to wait in.    Sometimes the refinery was closed and I would have to drive to another to get the jet fuel.    Then I would have to drive, in Los Angeles traffic, to the various airports where I would unload the jet fuel into a fuel tank located that the airport.    Sometimes I would be behind schedule because of unforeseen lines at the refinery, the refinery being closed, and/or traffic congestion, which meant no time to take a meal or rest break.    In fact, I do not recall ever taking a ten minute rest break during the time I worked for Menzies Aviation.    I almost never took a lunch break within the first five hours of my shift.    Typically, I would try to stop along the road and grab a quick bite to eat, often after 7 or hour 8 hours of work.    I would often eat my lunch in the truck or while driving.    My managers at Menzies Aviation always made it clear to me that getting the jet fuel to a location in a timely manner was critical, and more important than me receiving a timely lunch or meal break.

6.    I would manually clock in and out of work each day.    I would receive instructions throughout my shift as to tasks I was to accomplish through phone calls and text messages on my personal cell phone, for which I was never reimbursed. I was never

- 3 -

issued a company cell phone.  There were times when I would be in a long line to fill the truck with jet fuel and I would tell my manager I was waiting in line.  He would insist I take a picture of the line and location with my cell phone and text him the image to confirm that there was actually a line. My manager would contact me on almost a daily basis while I was at work, either via text or phone call because he always wanted an update on my location.

**Menzies Aviation Did Not Provide Me Proper Lunch Breaks Or Rest Periods**

7.    Menzies Aviation never informed me that I was entitled to extra pay if I was unable to take a lunch break within the first five hours of work, or was unable to take a full, uninterrupted meal break of at least 30 minutes.  Menzies Aviation never advised me that I was entitled to ten minute rest breaks during the day and that I was entitled to extra pay if I was unable to take the rest breaks due to the demands that Menzies Aviation placed on truckers like me. I am not aware of any payments made by Menzies Aviation of any meal or rest break premium, or any additional wages, overtime, or penalties for not providing me a meal period, or rest break.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

8.    As explained above, I used my cell phone on a daily basis while working for Menzies Aviation, yet was never reimbursed for my cell phone.  There really was no other effective way to stay in touch with my manager or the office other than with my

- 4 -

1    cell phone, because my truck was not outfitted with a radio.    I am not aware of any

2    procedure or mechanism at the company for me to get reimbursed for my expenses like

3    the cell phone.

4

5

6         I declare under penalty of perjury under the laws of the State of California and the

7    United States that the foregoing is true and correct.

8

9

10

11    Executed this _____April 15_____, 2023 at _Los Alamitos_, California.

12

13

14                                    _____

15                                              Clement Hurtado

16

17

18

19

20

21

22

23

24

25

- 5 -

DECLARATION OF CLEMENT HURTADO IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

# EXHIBIT 16

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br>CLASS ACTION<br><br>DECLARATION OF ZOILA LEMUS IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

## DECLARATION OF ZOILA LEMUS

I, Zoila Lemus Martinez, declare as follows:

1.     I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2.      I was employed as a Passenger Service Agent for Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from April to July 2022.

**My Duties and Responsibilities at Menzies Aviation**

3.      As a Passenger Service Agent, I was responsible for checking in passengers for flights at the ticket counter, assigning seats and providing gate information, and checking baggage, among other things.

4.      My usually worked for Menzies from Wednesdays thru Sundays from 6 pm to 2 or 3 am. Sometimes until 8 am.  I was instructed by Menzies Aviation to record my work time on their Kronos timekeeping system. So when I reported to work each day, I would manually clock in at the office by placing my thumbprint on the Kronos electronic pad.  I would manually clock out at the end of my shift in the same way.  On those days that I had the opportunity to take meal breaks, I also clocked out when I started taking my meal and clocked back in when I resumed working, again using the same Kronos system. There were many days that I was prevented from taking meal breaks because of work. In these latter instances, I did not clock out/in for that 30-minute break. I only clocked out when I finally concluded my shift.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

5.      I use my personal cell phone at work every day because the supervisor would communicate with me and other Passenger Service Agents through a Whatsapp group chat about work related issues, including flight arrivals, departures and delays.

6.      I was told that I had to be added to the Whatsapp group as soon as I started to work.  The group chat is active when we are off the clock, taking meal breaks, while on rest breaks, and even when we are at home. There were Walkie talkies but those were used by the Supervisors and were give to us only when we went to the gate because at the gate there was no phone signal.  Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of use of my personal cellphone for work.

DECLARATION OF ZOILA LEMUS IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1  for us to take rest breaks.  I am not aware of ever being compensated by Menzies Aviation for failing to

2  allow me to take rest breaks during my shift.

3

4         I declare under penalty of perjury under the laws of the State of California and the United States

5  that the foregoing is true and correct.

6

7         Executed this_____4/20_____, 2023 at ___Downey_____, California.

8

9

10        _____

          Zoila Lemus

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

DECLARATION OF ZOILA LEMUS IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# EXHIBIT 17

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx <br><br> CLASS ACTION <br><br> DECLARATION OF WA LUO IN SUPPORT OF MOTION FOR CLASS CERTIFICATION <br><br> Judge: Hon. Mark C. Scarsi <br> Ctrm.: 7C, 7th Floor <br><br> Complaint Filed: August 19, 2022 <br> FAC Filed: August 30, 2022 |

- 1 -

DECLARATION OF WA LUO IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

288

to ensure that the warehouse agent put the cargo in specific pallets or containers in such a way that the correct cargo are in each location (pallet /container) in the warehouse area.

7.     As an in-bound Cargo Agent, I ensured that the trucking company can easily identify their cargo inside our warehouse, including which particular area the cargo was located, the specific pallet/container they were in, and where those pallets/containers were located.

8.     The morning shift is usually busy because the driver will pick up cargo and there are only 1-2 Cargo Agents on hand who are responsible for preparing the documentation and checking that information needed by Customs are ready and accurate. Because of this, we often have to work through our meal breaks in order to ensure that the cargo are ready for shipment.

9.     Sometimes, when the driver arrives in the middle of my meal break, I have to stop eating and attend to the driver.  I thought that is how it is supposed to be done because Menzies Aviation was the first U.S. company I had worked for as a new immigrant to the United States.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

10.     I used my personal cell phone practically every day to communicate about work related matters.  If there are any missing, damaged or undocumented cargo, I needed to contact my supervisor to request assistance, and since I would be in the AOA area in the airport, I cannot reach anybody except through my personal cellphone.

11.     In the ramp or AOA area, there are no Menzies company cellphones or telephones, and there are no company radios. So Cargo Agents like me have no choice but to use our personal cellphones to communicate with our co-workers.

- 3 -

DECLARATION OF WA LUO IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

12.    There are also instances when I would have engine, tire blow out, or no gas in the Menzies vehicle I am using inside the airport.  When that happened, I would have to contact my supervisor for assistance.

13.    The supervisor also sends group text messages to me and other Cargo Agents through a group chat, usually regarding an important announcement, such as an error done by another Cargo Agent that the supervisor fixed and reminding everyone of the issue and not to do the same mistake.

14.    I would also at times use my cellphone to take a photo of an error or system issue I was having trouble with. I would send the photo of the error message to the supervisor via my cellphone.  I would need her assistance immediately, and cellphone text messages was the communication tool that I can use to get a response immediately.

15.    Supervisors would also sometimes text message me outside of my working hours when they needed me to come in early the next day or work longer hours.

16.    Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement.

**Menzies Aviation Did Not Provide Uninterrupted 30-Minute Meal Periods**

17.    Due to my heavy work load, I would have late meal breaks about twice a week when I worked at Menzies Aviation, meaning that I would work more than 5 hours from the start of my shift before I would be allowed to take my meal break.  More frequently, approximately four times a week, I would have interrupted meal breaks, meaning that I would be asked to do work before 30 minutes have passed since I started a meal break.  When we needed to submit documentation for Customs, I often had to postpone my meal break and just work through it in order to submit the report timely.

18.    Menzies Aviation never informed me that I was entitled to extra pay if Menzies Aviation did not provide me with 30-minute uninterrupted off-duty meal breaks.

- 4 -

I was never paid any meal break premiums or any additional wages, penalties, or other money by Menzies Aviations for not providing me proper meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

19.   I did not know that I was entitled to 10-minute rest breaks when I worked at Menzies Aviation.  I only learned about rest breaks after I left Menzies Aviation, when I was working for another company at the airport.  I do not recall ever being able to take off-duty 10-minute rest breaks when I worked at Menzies Aviation.

20.   As such, I never knew the procedure to take rest breaks or that I could get paid for any missed rest breaks. To my knowledge, Menzies Aviation did not pay me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

21.   As I mentioned above, I would often use my personal cell phone for work, especially when I am in the AOA area, where I would have no other means apart from my mobile phone to communicate with supervisors or co-workers about work related matters (*i.e.*, arrival of driver/s, missing cargo, damaged cargo, missing documentation, etc.)  Supervisors would also text message me, or send me and other Cargo Agents, a group text message regarding work schedule for the next day or important announcements.

22.   I estimate that 20% of my total use of my personal cellphone was for Menzies Aviation work purposes when I worked there.  At that time, my monthly cellphone bill was about $40.00 per month.

- 5 -

DECLARATION OF WA LUO IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

23.    Menzies Aviation never offered me a company cellphone or radio, never advised me of the right to be reimbursed for the use of my personal cellphone, and has never reimbursed me for use of my personal cellphone.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this___05/15/2023_____ at __San Mateo__, California.



_____
Wa Luo

DECLARATION OF WA LUO IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# EXHIBIT 18

1  C. JOE SAYAS, JR. (CA Bar No. 122397)
   cjs@joesayaslaw.com
2  KARL P. EVANGELISTA (CA Bar No. 250685)
3  kpe@joesayaslaw.com
   **LAW OFFICES OF C. JOE SAYAS, JR.**
4  500 N. Brand Boulevard, Suite 980
5  Glendale, California 91203
   Telephone: (818) 291-0088
6  Facsimile: (818) 240-9955

7  DAVID P. KING (CA Bar No. 136765)
8  dpk@kcmlaw.net
   **KING CHENG MILLER & JIN, LLP**
9  3675 Huntington Dr., Ste. 200
10 Pasadena, California 91107
   Telephone: (626) 304-9001
11 Facsimile:  (626) 304-9002

12 Attorneys for Plaintiffs
13
               **UNITED STATES DISTRICT COURT**
14
              **CENTRAL DISTRICT OF CALIFORNIA**
15

16 DORA PATRICIA AMAYA, an          CASE NO. 2:22-cv-05915-MCS-MARx
   individual; and BRAYAN LOZANO
17 GONZALEZ, an individual; on behalf of   CLASS ACTION
18 themselves and others similarly situated,
                                     DECLARATION OF JAVIER MARTINEZ
19           Plaintiffs,            IN SUPPORT OF MOTION FOR CLASS
                                     CERTIFICATION
20      vs.
                                     Judge: Hon. Mark C. Scarsi
21 MENZIES AVIATION (USA), INC., a   Ctrm.: 7C, 7th Floor
22 Delaware corporation; and DOES 1
   through 10, inclusive,           Complaint Filed: August 19, 2022
23                                   FAC Filed: August 30, 2022
             Defendants.
24
25

                              - 1 -

DECLARATION OF JAVIER MARTINEZ IN SUPPORT OF MOTION FOR CLASS
                          CERTIFICATION

latter instances, I did not clock out/in for that 30-minute break. I only clocked out when I finally concluded my shift.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

5.      When I started working at Menzies Aviation, my supervisor informed me that I would be required to use my personal cellphone for work communications. I frequently used my personal cell phone at work as my supervisors almost always communicated through my cellphone to provide directions on where to go next to service a flight, handle luggage (such as dropping it off at a certain location), for special instructions, and updates on the status of flight arrivals and departures. Because I would be moving between flights, there was really no choice but to use a cellphone or other mobile device, but Menzies never offered to provide me a company phone, two-way radio or other similar device. There were radios but they were not for us regular employees to use; only the Supervisors and/or Managers use them. I am not aware of Menzies Aviation offering to reimburse me for use of my personal phone for work duties or advising me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of use of my personal cellphone for work.

- 3 -

DECLARATION OF JAVIER MARTINEZ IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

that I was actually entitled to rest breaks under the law. Work had to be completed in a timely manner so that Menzies Aviation would not be penalized. There was such a tremendous amount of work to be completed each day that rest breaks were not authorized by our supervisor, because planes needed to be serviced rapidly and so left no time for an opportunity to take a rest break.

9. I am not aware of Menzies Aviation paying me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this ____4/18____, 2023 at _SAN LEANDRO_ California.

_____
Javier Martinez

- 5 -

DECLARATION OF JAVIER MARTINEZ IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION

# EXHIBIT 19

1  C. JOE SAYAS, JR. (CA Bar No. 122397)
2  cjs@joesayaslaw.com
   KARL P. EVANGELISTA (CA Bar No. 250685)
3  kpe@joesayaslaw.com
4  **LAW OFFICES OF C. JOE SAYAS, JR.**
   500 N. Brand Boulevard, Suite 980
5  Glendale, California 91203
6  Telephone: (818) 291-0088
   Facsimile: (818) 240-9955
7
8  DAVID P. KING (CA Bar No. 136765)
9  dpk@kcmlaw.net
   **KING CHENG MILLER & JIN, LLP**
10 3675 Huntington Dr., Ste. 200
11 Pasadena, California 91107
   Telephone: (626) 304-9001
12 Facsimile: (626) 304-9002
13
14 Attorneys for Plaintiffs

15              **UNITED STATES DISTRICT COURT**
16              **CENTRAL DISTRICT OF CALIFORNIA**

17

18 DORA PATRICIA AMAYA, an            CASE NO. 2:22-cv-05915-MCS-MARx
   individual; and BRAYAN LOZANO
19 GONZALEZ, an individual; on behalf of   CLASS ACTION
20 themselves and others similarly situated,
                                       DECLARATION OF JESUS MENDOZA IN
21            Plaintiffs,              SUPPORT OF MOTION FOR CLASS
22        vs.                         CERTIFICATION
23 MENZIES AVIATION (USA), INC., a    Judge: Hon. Mark C. Scarsi
   Delaware corporation; and DOES 1   Ctrm.: 7C, 7th Floor
24 through 10, inclusive,
                                       Complaint Filed: August 19, 2022
25            Defendants.             FAC Filed: August 30, 2022
26
27
28

                                    1
   DECLARATION OF JESUS MENDOZA IN SUPPORT OF MOTION FOR CLASS
                          CERTIFICATION

# DECLARATION OF JESUS MENDOZA

I, Jesus Mendoza, declare as follows:

1.     I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2.     I was employed as a Freight Agent for Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from June 22, 2020 to July 19, 2022.

## My Duties and Responsibilities at Menzies Aviation

3.     Throughout the time I worked at Menzies Aviation, I was a Freight Agent responsible for loading and unloading cargo pallets and other larger cargo items (cars, airplane motors, etc.) off arriving flights and onto departing flights.  We would take these larger items from the aircraft to the Menzies Aviation warehouse located at LAX.  We would also be responsible for transporting these larger cargo items from the warehouse to the departing flights, or at least assist in loading them onto trucks to transport to the aircraft.

## My Typical Work Schedule for Menzies Aviation

4.     My working hours with Menzies Aviation varied quite a bit, but Wednesdays through Sundays was the most common work shift I had each week.  I would commonly receive a text from my supervisor on the night before my shift, advising me what time to report to work the following day.  It was common for me to arrive at work between 3:00 a.m – 4:00 a.m.  Some days I would work a 12-hour shift.  Other days I would work 2-3 hours in the morning, go home and be asked to return later that day for another 6-8 hour shift.

5.     I was instructed by Menzies Aviation to record my work time on their Kronos timekeeping system. So when I reported to work each day, I would manually clock in at the office by placing my thumbprint on the Kronos electronic pad.  I would manually clock out at the end of my shift in the same way.  On those days that I had the opportunity to take meal breaks, I also clocked out when I started taking my meal and clocked back in

DECLARATION OF JESUS MENDOZA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

when I resumed working, again using the same Kronos system. There were many days that I was prevented from taking meal breaks because of work. In these latter instances, I did not clock out/in for that 30-minute break. I only clocked out when I finally concluded my shift. When I arrived for my shift, Menzies required me to clock in. I would do that through a Kronos device in the Menzies operations room. I was also required to clock out and also clock in and out for meal breaks, which I would do the same way.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

6.     I was required to use a cellphone to perform my job duties and my supervisor told me and made it clear that I was to use my personal cellphone. I would use my personal cell phone at work every day throughout my shift. We would keep track of arriving and departing flights using our cell phone and communicating with supervisors and managers. We would also use the cell phone to contact our supervisors or managers if we encountered any problem where we needed help.  The supervisors and managers would text us with instructions throughout the shift.  As I would be moving around the airport to get to different flights throughout the shift, there was no realistic way of communicating efficiently without a cellphone or some other mobile device. Menzies never offered me a company phone or any other mobile device or informed me of the availability of any options other than using my own personal phone.

7.     Menzies Aviation never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of use of my personal cellphone for work.

**Menzies Aviation Did Not Provide Me Timely, Uninterrupted 30-Minute Meal Periods**

8.     In my experience, meal breaks were never scheduled at Menzies Aviation and were not authorized whenever there was work that needed to be completed.  Because there

DECLARATION OF JESUS MENDOZA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

were too many flights arriving near in time to each other and we were under constant pressure to quickly load or unload freight in a certain time period, that meant that meal breaks were hardly ever authorized, if at all.  We were advised by our supervisors that Menzies Aviation would be fined if we did not service an aircraft on time.

9.      For these reasons, we would often work more than 5 hours without any meal (or rest) break.  More than once, the supervisor advised me that he would fill out the necessary paperwork for the late or missing break, but I never saw the paperwork.  On a few occasions, my manager asked me to punch out to reflect a lunch break even though we continued to work.

10.     I do not recall whether Menzies Aviation ever paid me extra for all the meal breaks I missed.  I would need to review my pay stubs.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

11.     Throughout the time I worked for Menzies Aviation, I never had a 10 minute rest break.  Like with meal breaks, there was simply too much work to be done. Throughout my time working at Menzies Aviation, I don't recall a supervisor or manager ever authorizing such a rest break during my shifts. I was never told that I was entitled to a rest break.  I was never told that I was entitled to extra pay for a missed rest break either.   I also do not recall whether Menzies Aviation ever paid me extra for all the rest breaks I missed.  I would need to review my pay stubs.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this __April 18__, 2023 at __Inglewood__, California.

_____
Jesus Mendoza

4

DECLARATION OF JESUS MENDOZA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

301

# EXHIBIT 20

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>        Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx<br><br>CLASS ACTION<br><br>DECLARATION OF BRYAN MORGAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor<br><br>Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |

- 1 -

DECLARATION OF BRYAN MORGAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

6.      I am also fairly certain that Menzies Aviation did not pay me for missed rest breaks, because rest breaks were a rarity while I worked at Menzies Aviation and I don't recall ever receiving pay for a missed rest break.  Aircraft constantly needed fueling and we had to be ready when a flight was delayed to promptly fuel it so that Menzies Aviation would not be penalized.

7.      I used my cell phone every day at work for a number of reasons including to communicate with my supervisor for rides to and from the tarmac, for verification of meal breaks and any other work related issues or questions that arose during my shift.  I was not reimbursed for my cell phone use and am not aware of any procedure or mechanism at Menzies Aviation for me to get reimbursed for the expense of use of my personal cell phone for work.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this _____4/20/_____, 2023 at _SAN FRANC_, California.

Bryan Morgan

- 4 -

DECLARATION OF BRYAN MORGAN IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# EXHIBIT 21

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br> vs. <br> MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx <br><br> CLASS ACTION <br><br> DECLARATION OF KEVIN ORANGE IN SUPPORT OF MOTION FOR CLASS CERTIFICATION <br><br> Judge: Hon. Mark C. Scarsi <br> Ctrm.: 7C, 7th Floor <br><br> Complaint Filed: August 19, 2022 <br> FAC Filed: August 30, 2022 |

1

DECLARATION OF KEVIN ORANGE IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION

1

## DECLARATION OF KEVIN ORANGE

2    I, Kevin Orange, declare as follows:

3    1.    I have personal knowledge of the facts set forth in this Declaration, and I could
4 and would readily and competently testify under oath if called as a witness.

5    2.    I have been employed as a Ramp Agent for Menzies Aviation (USA), Inc.
6 ("Menzies Aviation") and its predecessor at Los Angeles International Airport ("LAX")
7 since August 2007.

8

### My Duties and Responsibilities at Menzies Aviation

9

10    3.    Throughout the time I have worked at Menzies Aviation, I have been assigned
11 to the Ramp Operations Department at LAX. Since at least 2018, I have primarily worked
12 the morning shift, which starts between 6:00-6:30 a.m. and lasts until around 2:00-3:30
13 p.m., Mondays through Fridays.  As a Ramp Agent, I am responsible for loading and
14 unloading cargo and luggage from arriving and departing flights, which usually involves
15 nonstop work for us throughout the morning. I work with a crew chief, sometimes referred
16 to as a Lead, and 4-5 other co-workers, depending on who shows up for work.

17    4.    I clock-in and clock-out at the Menzies Aviation break room using a biometric
18 system called Kronos, which involves touching a pad with one of my fingers. I understand
19 that clocking in and out is a mandatory Menzies Aviation policy.

20    5.    I use this same method to clock out for my meal break and to clock back in
21 after my meal break is finished, except when my meal break was not provided until after
22 the 5th hour of my shift.  In those instances, I would fill out a Missed Punch Form and leave
23 it on the manager's desk to approve and process.  My understanding is that Menzies
24 Aviation would then manually enter the time of my late meal break.

25

### The Need to Use My Personal Cellphone for My Job Duties for Menzies
### Aviation

26

27

28    6.    While I was a Ramp Agent for Menzies Aviation I used my personal cell
phone at work every day to communicate with others about work related issues. I used my

2

DECLARATION OF KEVIN ORANGE IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION

1  cell phone to monitor the Kronos system and my work schedule each day.  Even though
2  Menzies Aviation had an ostensible no cell phone policy, everyone used their cell phone
3  at work to communicate with each other, the managers and supervisors. The managers and
4  supervisors definitely knew employees were using our personal cell phones as a routine
5  part of our job because that's how they would communicate with me and other employees
6  throughout our shifts.  For example, if luggage, equipment or the aircraft was damaged we
7  would take pictures with our phones and text them to the supervisor and/or manager.  We
8  had a group chat to communicate with other crew members about work related issues,
9  including gage changes, flight arrivals and departures and delays.

10       7.      Menzies Aviation did not issue me a company cell phone, radio, or any other
11  device that I could have used to communicate with my managers, supervisors, and co-
12  workers.  Menzies Aviation never offered to reimburse me for use of my personal phone
13  for work duties and has never advised me of any right to reimbursement. I am not aware
14  of any procedure or mechanism at the company for me to get reimbursed for the expense
15  of using my personal cellphone for work.

16
17  **Menzies Aviation Has Denied Me And My Co-workers Extra Pay For Missed
Meal Breaks.**
18
19       8.      I am aware that there is a paper form we can supposedly fill out when a meal
20  break is not taken within the first 5 hours of work.  On many occasions, I worked well over
21  5 hours before taking a meal break, which has to be authorized by a supervisor under
22  Menzies Aviation policy.  But, the supervisor regularly does not authorize a meal break
23  until all the planes have been loaded or unloaded.  With the heavy number of flights
24  arriving and departing, or being delayed, at LAX it is rare to ever take a meal break within
25  the first 5 hours of work.  The priority for Menzies Aviation is to handle the cargo and
26  luggage on arriving and departing flights as expeditiously as possible, and supervisors
27  routinely withhold permission for us to take meal breaks until the work is completed.
28       9.      When a meal break is missed (meaning not taken within the first 5 hours of a
shift) Menzies Aviation has a paper form that I and my co-workers are to fill out and submit

matters, including employee meal and break periods. Certainly, that has been my experience.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

13.    Throughout the time I worked for Menzies Aviation, it has been a rarity that I or the others I have worked with have been able to take rest breaks during the shift, and certainly not within the first four hours. I don't recall receiving a second rest break despite the long hours of work that often exceed 8 hours. Rather, during my shift, I would work continuously. Flights get delayed, rescheduled, and cancelled, and thus departure and arrival times change. Luggage and cargo need to be transferred between flights. Thus, there were always issues that needed to be addressed. Because of the continuous work, a 10-minute down time is very rare, and I would be lucky if I was able to have at least one rest break during a shift.

14.    I am unaware of Menzies Aviation paying me or other co-workers any extra wages for missed rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this ___April   21___, 2023 at _Los ANGELES_, California.

_____
Kevin Orange

# EXHIBIT 22

1  C. JOE SAYAS, JR. (CA Bar No. 122397)
2  cjs@joesayaslaw.com
   KARL P. EVANGELISTA (CA Bar No. 250685)
3  kpe@joesayaslaw.com
4  **LAW OFFICES OF C. JOE SAYAS, JR.**
   500 N. Brand Boulevard, Suite 980
5  Glendale, California 91203
6  Telephone: (818) 291-0088
7  Facsimile: (818) 240-9955

8  DAVID P. KING (CA Bar No. 136765)
9  dpk@kcmlaw.net
   **KING CHENG MILLER & JIN, LLP**
10 3675 Huntington Dr., Ste. 200
11 Pasadena, California 91107
   Telephone: (626) 304-9001
12 Facsimile: (626) 304-9002

13
14 Attorneys for Plaintiffs

15            **UNITED STATES DISTRICT COURT**
16            **CENTRAL DISTRICT OF CALIFORNIA**

17
18 DORA PATRICIA AMAYA, an          CASE NO. 2:22-cv-05915-MCS-MARx
   individual; and BRAYAN LOZANO
19 GONZALEZ, an individual; on behalf of   CLASS ACTION
20 themselves and others similarly situated,
                                    DECLARATION OF JONATHAN G.
21                                  OTZOY IN SUPPORT OF MOTION FOR
            Plaintiffs,             CLASS CERTIFICATION
22         vs.
23 MENZIES AVIATION (USA), INC., a   Judge: Hon. Mark C. Scarsi
   Delaware corporation; and DOES 1    Ctrm.: 7C, 7th Floor
24 through 10, inclusive,
                                    Complaint Filed: August 19, 2022
25                                  FAC Filed: August 30, 2022
            Defendants.
26
27
28

                                    1
   DECLARATION OF JONATHAN G. OTZOY IN SUPPORT OF MOTION FOR
                        CLASS CERTIFICATION

## DECLARATION OF JONATHAN G. OTZOY

I, Jonathan G. Otzoy, declare as follows:

1.     I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2.     I was employed in the Ramp Operations Department of Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from March 29, 2016, to August 18, 2021.

### My Duties and Responsibilities at Menzies Aviation

3.     I was initially hired as a Ramp Agent by Menzies Aviation. Starting around February 2017, I became a Crew Lead in Ramp Operations, responsible for a crew of 4-5 other Ramp Agents.  I was responsible, along with others on my team, for loading and unloading luggage and cargo for aircraft that would arrive and depart each day. Flights are arriving and departing constantly at LAX and we have to be ready at all times to handle the luggage and cargo for those airplanes.  Many days we were shorthanded and had difficulty handling all the luggage and cargo that needed handling, especially when airplanes were arriving or departing near in time to each other.

### My Typical Work Schedule for Menzies Aviation

4.     My working hours with Menzies Aviation varied, but towards the end of my employment I had been working Saturdays through Wednesdays.  Some days I would work a shorter 5 hour shift, but most days I was scheduled to work from 12:00 pm to 9:00 pm and sometimes later than that – the same with my crew.

### The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation

5.     I often used my personal cell phone at work. The managers and supervisors texted flight or gate schedule changes, as well as other work related instructions, to my cell phone throughout my shift. I clocked in and out for my shift, as well as clocked in and out

2

DECLARATION OF JONATHAN G. OTZOY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

1   for meal breaks, using the Kronos machine that was located at the office. But if there was
2   a technical problem with the machine, then I could use the app on my phone to clock in
3   and out.

4       6.      Not only did I use my personal cell phone on an almost daily basis to
5   communicate with my managers, supervisors, agents and my crew, often through a group
6   chat, but also I would get flight information over the internet by logging into flight tracker,
7   and to bid on my work schedule. As a general rule, managers and supervisors were part of
8   the group chats. It would be completely normal for the managers and/or supervisors to send
9   out instructions or call for a meeting using employees' personal cell phones. There were
10  radios, but there were not enough for everyone that needed them, and the radios that did
11  exist were often not operating.

12      7.      While the written policy is that we are not to use our phones at work, it was
13  one of the primary sources of communication. The group chat texts would include a
14  minimum of 3 people and as many as 15, including the supervisor. In fact, it was the
15  supervisor or manager that would create the group chat.

16      8.      As Ramp Agents, my crew and I were constantly on the move throughout the
17  airport, sent to different planes and having to go to various locations in the airport to locate
18  and obtain the equipment and vehicles we needed to do our jobs. Being able to stay in touch
19  with your fellow crew members, as well as other Menzies Aviation employees scattered in
20  various locations, was part of our job. Without the group chats, and the ability to directly
21  communicate with co-workers, including supervisors and managers, via text or phone call,
22  we simply would not be able to complete our job tasks in the times allotted.

23      9.      Menzies Aviation never offered to reimburse me for use of my personal cell
24  phone for work duties and did not advise me of any right to reimbursement. I was not aware
25  of any procedure or mechanism at Menzies Aviation to get reimbursed for the expense of
26  using my personal cellphone for work.

27
28

3

DECLARATION OF JONATHAN G. OTZOY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

14.    The majority of the time my crew and I did not take rest breaks.  Menzies Aviation's point of view was that any time waiting for a flight was considered a break.  It was pretty much policy that if we had "downtime," meaning time spent waiting for the next plane on our list of assignments, that would be considered break time, no matter that we usually spent that downtime looking for equipment or preparing for the next flight.  My crew and I certainly did not have the opportunity to do whatever we wanted during this supposed downtime, since we were expected to stay on the jobsite in order to be immediately ready to work as soon as the airplane was there for us to unload and load.

15.    I started each work shift with a schedule of the aircraft my crew and I had to work with that day, but aircraft get delayed, supervisors ask for favors such as to grab equipment, a tow cart, etc.  Also, there were aircraft that we had to service that were not scheduled when we started the shift, but which we would be instructed to service even with a shorthanded crew.  In other words, we continuously had work to do throughout our shifts, including supposed downtimes, so there was really no opportunity to take off-duty breaks of at least 10 minutes.

16.    I am not aware of any form or procedure I could have used to ask Menzies Aviation for premium wages for missed rest breaks. I am not aware of Menzies Aviation paying for any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this May ___16th___, 2023 at Inglewood, California.

_____
Jonathan Otzoy

5

DECLARATION OF JONATHAN G. OTZOY IN SUPPORT OF MOTION FOR
CLASS CERTIFICATION

# EXHIBIT 23

1  C. JOE SAYAS, JR. (CA Bar No. 122397)
2  cjs@joesayaslaw.com
   KARL P. EVANGELISTA (CA Bar No. 250685)
3  kpe@joesayaslaw.com
   **LAW OFFICES OF C. JOE SAYAS, JR.**
4  500 N. Brand Boulevard, Suite 980
5  Glendale, California 91203
   Telephone: (818) 291-0088
6  Facsimile: (818) 240-9955

7  DAVID P. KING (CA Bar No. 136765)
8  dpk@kcmlaw.net
   **KING CHENG MILLER & JIN, LLP**
9  3675 Huntington Dr., Ste. 200
10 Pasadena, California 91107
   Telephone: (626) 304-9001
11 Facsimile: (626) 304-9002

12 Attorneys for Plaintiffs

13                    **UNITED STATES DISTRICT COURT**

14                    **CENTRAL DISTRICT OF CALIFORNIA**

15

16 DORA PATRICIA AMAYA, an            CASE NO. 2:22-cv-05915-MCS-MARx
   individual; and BRAYAN LOZANO
17 GONZALEZ, an individual; on behalf of  CLASS ACTION
   themselves and others similarly situated,
18                                       DECLARATION OF ANTHONY PENCA IN
                                         SUPPORT OF MOTION FOR CLASS
19            Plaintiffs,               CERTIFICATION

20       vs.                            Judge: Hon. Mark C. Scarsi
                                        Ctrm.: 7C, 7th Floor
21 MENZIES AVIATION (USA), INC., a
   Delaware corporation; and DOES 1      Complaint Filed: August 19, 2022
22 through 10, inclusive,                FAC Filed: August 30, 2022

23            Defendants.

24

25

                                    - 1 -

DECLARATION OF ANTHONY PENCA IN SUPPORT OF MOTION FOR CLASS
                          CERTIFICATION

a shift from 7:00 a.m. to 3:00 p.m., and sometimes 3:30 p.m. to 10:00 p.m. However, the issues with meal and rest breaks, as described below, were basically the same regardless of the shift times.

5.    I clocked in and out for my shift, as well as clocked in and out for meal breaks, using the Kronos machine that was located at the warehouse. If there was a technical problem with the machine then I would use the app on my phone. Sometimes I had to go to another location to use the Kronos machine when the one in the warehouse was inoperable.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

6.    I used my personal cell phone at work every day. When the Kronos machine was not working properly, I would use my phone to clock-in and clock-out, to request time off, to communicate with my managers, supervisors and co-workers, and to check schedules. We were told to use our personal cell phone to communicate with management via phone or text. I would also have to call clients or other agencies and used my personal phone for that. Menzies Aviation did not provide me with any other device to communicate electronically at work.

7.    Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not

- 3 -

DECLARATION OF ANTHONY PENCA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work tasks.

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

8.     In my experience at Menzies Aviation, there was no set schedule for meal breaks.  Whether and when we got an opportunity to take a meal break would always depend on the workload, and required permission from our supervisor. There was always uncertainty about flight arrivals and departures, so we would always be on standby to handle those flights.  Also, there would be manpower shortages so that fewer of us had to handle more tasks, and the work load became overwhelming.  Meal breaks were not authorized when there was work left to be completed.  Supervisors and managers always stressed to us the need to get the work done to satisfy the airline customers.  A customer's needs always took priority over an employee meal break.  So I would normally take a meal break after more than 5 hours of continuous work.

9.     Even when I was able to take a meal break, I was compelled to stop using the break room to take them, because I would always be interrupted by managers and supervisors with work related questions or issues.  Sometimes a manager would ask me to cut my meal break short to handle some unexpected work task.  For these reasons, I started taking my meal break in my car to try to get a 30 minute uninterrupted meal break.

- 4 -

DECLARATION OF ANTHONY PENCA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1    I declare under penalty of perjury under the laws of the State of California and the

2   United States that the foregoing is true and correct.

3

4

5    Executed this _April 15th_____, 2023 at _Hawthorne_____, California.

6

7

8                              Anthony Penca

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- 6 -

DECLARATION OF ANTHONY PENCA IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION

# EXHIBIT 24

1  C. JOE SAYAS, JR. (CA Bar No. 122397)
2  cjs@joesayaslaw.com
   KARL P. EVANGELISTA (CA Bar No. 250685)
3  kpe@joesayaslaw.com
   **LAW OFFICES OF C. JOE SAYAS, JR.**
4  500 N. Brand Boulevard, Suite 980
   Glendale, California 91203
5  Telephone: (818) 291-0088
6  Facsimile: (818) 240-9955

7  DAVID P. KING (CA Bar No. 136765)
8  dpk@kcmlaw.net
   **KING CHENG MILLER & JIN, LLP**
9  3675 Huntington Dr., Ste. 200
   Pasadena, California 91107
10 Telephone: (626) 304-9001
11 Facsimile:  (626) 304-9002

12 Attorneys for Plaintiffs

13               **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16 DORA PATRICIA AMAYA, an          CASE NO. 2:22-cv-05915-MCS-MARx
   individual; and BRAYAN LOZANO
17 GONZALEZ, an individual; on behalf of   CLASS ACTION
   themselves and others similarly situated,
18                                   DECLARATION OF ABDEL RIFAI IN
19          Plaintiffs,              SUPPORT OF MOTION FOR CLASS
                                     CERTIFICATION
20        vs.
                                     Judge: Hon. Mark C. Scarsi
21 MENZIES AVIATION (USA), INC., a   Ctrm.: 7C, 7th Floor
   Delaware corporation; and DOES 1
22 through 10, inclusive,            Complaint Filed: August 19, 2022
                                     FAC Filed: August 30, 2022
23          Defendants.

24

25

- 1 -

DECLARATION OF ABDEL RIFAI IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1

2

### DECLARATION OF ABDEL RIFAI

3      I, Abdel Rifai, declare as follows:

4      1.      I have personal knowledge of the facts set forth in this Declaration, and I

5   could and would readily and competently testify under oath if called as a witness.

6      2.      I was employed as a Truck Driver for Menzies Aviation (USA), Inc.

7   ("Menzies Aviation") at the Los Angeles International Airport ("LAX") from January

8   2022 until on or around August 2022.

9   **My Typical Work Schedule for Menzies Aviation**

10     3.      I would typically work 8-hour shifts, usually from 6:00 p.m. to 2:30 a.m.,

11  five days per week.

12     4.      I would clock in with my employee code and using my finger on a device

13  located either inside the Menzies Aviation warehouse or in the Menzies Aviation lunch

14  room within LAX.  I would clock out at the end of my shift the same way.

15  **My Duties and Responsibilities at Menzies Aviation**

16     5.      Throughout the time I worked at Menzies Aviation, I drove a company-

17  owned semi-truck to transport cargo to and from company warehouses within and around

18  3-4 miles of LAX.

19     6.      Menzies supervisors would call me on my personal cellphone throughout my

20  shift with instructions to pick up cargo from one company warehouse to another.

21     7.      At the start of my workday, I would drive my semi-truck and line up at the

22  location of my first warehouse.  There is usually a line of truck drivers to get cargo in a

23  warehouse.

24     8.      Drivers need to stay on the line, then once it's your turn, you open the

25  loading dock gate, set up the ramp to the trailer, hitch the trailer to the semi-truck, access

- 2 -

DECLARATION OF ABDEL RIFAI IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

14.    I was not aware that I was entitled to rest breaks when I worked at Menzies Aviation.  I was never trained on meal or rest breaks by the company, and I don't recall ever being given any employee handbook.  I was just given keys to the truck and told to drive.  Nevertheless, because of my tight work schedule, I would have been unable to take any rest breaks.

15.    Menzies Aviation did not advise me that I was entitled to 10-minute off-duty rest breaks during my shift, or that I was entitled to extra pay if I was unable to take the rest breaks.

16.    I do not recall being paid any extra wages for any missed or late meal breaks, or for any missed rest breaks.  I never knew the procedure to obtain payment for missed or late breaks, meals or otherwise.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

17.    The practice at Menzies Aviation was for Truck Drivers like me to receive instructions on our tasks throughout our shifts via phone calls and text messages on our personal cell phones.  I was constantly in contact with someone on the phone from the company regarding what they wanted me to do and any questions either I had or they had for me.

18.    I was never issued a company cell phone, radio or other device I could have used instead of my personal cellphone to communicate with the people I needed to stay in touch with at the company.

19.    Throughout the duration of my work, I was required to keep my personal cell phone on so that I can always be available to Menzies and its managers/supervisors, who provide work instructions to me.  If they couldn't reach me on my cell phone, they would get mad at me.

- 4 -

DECLARATION OF ABDEL RIFAI IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

20.    I used my personal cell phone on a daily basis to perform essential tasks while working for Menzies Aviation, but I did not know that I could be reimbursed by the company for using my cell phone for work.  I was never reimbursed by Menzies Aviation for use of my cell phone.

21.    About 15-20 % of my total use of my cell phone was for work-related purposes at Menzies Aviation.  My monthly cellphone bill was $65.00.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this_____05/18/2023_____ at  Los Angeles, California.

_____

Abdel  Rifai

- 5 -

# EXHIBIT 25

1    C. JOE SAYAS, JR. (CA Bar No. 122397)
2    cjs@joesayaslaw.com
    KARL P. EVANGELISTA (CA Bar No. 250685)
3    kpe@joesayaslaw.com
    **LAW OFFICES OF C. JOE SAYAS, JR.**
4    500 N. Brand Boulevard, Suite 980
    Glendale, California 91203
5    Telephone: (818) 291-0088
6    Facsimile: (818) 240-9955

7    DAVID P. KING (CA Bar No. 136765)
8    dpk@kcmlaw.net
    **KING CHENG MILLER & JIN, LLP**
9    3675 Huntington Dr., Ste. 200
    Pasadena, California 91107
10    Telephone: (626) 304-9001
11    Facsimile: (626) 304-9002

12    Attorneys for Plaintiffs
13

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated, | CASE NO. 2:22-cv-05915-MCS-MARx<br><br>CLASS ACTION<br><br>DECLARATION OF BRANDON ROBINSON IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |
|         Plaintiffs, | |
|       vs. | Judge: Hon. Mark C. Scarsi<br>Ctrm.: 7C, 7th Floor |
| MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive, | Complaint Filed: August 19, 2022<br>FAC Filed: August 30, 2022 |
|        Defendants. | |

- 1 -

DECLARATION OF BRANDON ROBINSON IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

7.      I use my personal cell phone at work every day, because there was no other way of knowing the actual times of arrival of flights, and at which gate each aircraft will actually be.  The order in which I fuel the aircraft was based on the list of flight schedules given to me by management.  But the arrival times and the gates listed on the papers they gave me could change at any time, which often happened.  Also, I would regularly be asked by management to cover other aircraft that was not originally included in my list.  My supervisor for the shift would also give other instructions over the phone.  So I had to stay in touch with my supervisors throughout my shift, since they would communicate to me with the information that I needed via text message or a call to my personal cellphone.  If I had any questions for my supervisor, I would also use my personal cellphone to contact them and they would answer my questions so that I know what they wanted me to do in order to do my work properly.

8.      I was not issued any company cellphone, radio, or any handheld device on which I could have received information from my supervisors regarding the real time aircraft arrival times and gates information that I needed and their other instructions.  My fuel truck has no radio or device where I could check for these information.   The only tool I had to contact my supervisors, from wherever I was at in the airport with my fuel truck, was my personal cellphone.  This was how we communicated with each other throughout my shift because that was the only thing available other than having to drive back to where they were to talk face to face, which would have taken too much time and not allowed me to do all the work they wanted me to do.

9.      Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement.

- 3 -

DECLARATION OF BRANDON ROBINSON IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

10.     I eat my meals in my fuel truck whenever I find a decent time interval between fueling assignments to eat. I do not go to the Menzies office to clock out because it is a good 10-15 minutes drive from the tarmac and I had limited time before my supervisor would need me again for a fueling assignment.  So I would just find a safe zone on the tarmac where I could eat my meal in my fuel truck.

11.     I have to first call my shift supervisor to tell them that I will be taking my meal break, and they will give permission if there wasn't a fueling assignment that they needed me to do at the time.  But they can always interrupt my meal period to ask me to cover fueling another aircraft since they knew I was just in my truck ready to go.  This happened about 2-3 times per week.

12.     Basically, I would only be authorized to take a meal period if there was no work to be done at that moment, but with the understanding that I was on standby in case there was suddenly work that they needed me for.  My understanding from my work experience there is that the policy of Menzies Aviation is for flight operations to take precedence over all other matters, including employee meal and break periods.

13.     Since the work always took priority, there were times when I could not take my meal break within the first 5 hours of my shift.  Flights are often delayed, and I needed to be on standby, ready to fuel the aircraft on my flight schedules, as there can be no delay on my part in getting them fueled and ready to leave again.  Oftentimes, flights are back-to-back, so I would finish fueling one aircraft and then immediately have to turn my attention to fuel the next one.  Hence, approximately 3-4 times a week, I would have to take a late meal break.

14.     Moreover, we usually needed to cover fueling other aircraft that weren't originally on our list.  I needed to get permission from my supervisor before I can take a

- 4 -

DECLARATION OF BRANDON ROBINSON IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1    I declare under penalty of perjury under the laws of the State of California and the

2    United States that the foregoing is true and correct.

3    Executed this_____ at _____, California.
05/16/2023                    san francisco

4

5    *Brandon Robinson*
_____

6    Brandon Robinson

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- 6 -

DECLARATION OF BRANDON ROBINSON IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# EXHIBIT 26

C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
3675 Huntington Dr., Ste. 200
Pasadena, California 91107
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 2:22-cv-05915-MCS-MARx <br><br> <u>CLASS ACTION</u> <br><br> DECLARATION OF MARIO ROCHA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION <br><br> Judge: Hon. Mark C. Scarsi <br> Ctrm.: 7C, 7th Floor <br><br> Complaint Filed: August 19, 2022 <br> FAC Filed: August 30, 2022 |

- 1 -

DECLARATION OF MARIO ROCHA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

4.     Managers and supervisors were constantly yelling at us to get the work done quicker. We were always under pressure to get the work done as quickly as possible.

**My Typical Work Schedule for Menzies Aviation**

5.     My working hours with Menzies Aviation varied.  I typically worked Mondays through Fridays beginning around 4pm to 2am. There were many days, however, when it was so busy and we were shorthanded, that I worked a 12 hour shift.  I would typically clock in and out of work each day, as well as for meal breaks using the Kronos system in the breakroom.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

6.     I used my personal cell phone at work every day. Supervisors would communicate with me almost exclusively through my cell phone with work instructions. We would text about issues such as where to drop off cargo or luggage, where certain containers were to be directed, or such mundane issues such as a request to bring a dolly. There were instances where I used my phone to take pictures of the luggage that appeared to have been damaged or opened and sent it to my supervisor or manager.  There was not a way to do my job efficiently, and certainly not within the time Menzies Aviation expected work to be completed, without using my cell phone.  I had no other device to communicate with my supervisor. In fact, one of my supervisors asked me for my cell

- 3 -

DECLARATION OF MARIO ROCHA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

phone number which he then used to communicate with me at work. The other supervisors had my cell phone number from my employment application.

7.    I also used my cell phone to participate in a group chat with other employees, including supervisors, for information about flights. When I arrived at work we would be provided a schedule of flights that we would be responsible for, but that could change during the day and we would be notified of changes through the group chat. We would also use the group chat for updates on flight delays or cancellations.

8.    I also downloaded two apps, one to clock in and out via my phone when I was not able to clock in and out manually in the office using the Kronos system. I also used the app to keep track of my hours and paycheck.

9.    Menzies Aviation did not offer to provide me with a company phone, 2-way radio or any other device I could've used instead of my personal cell phone for work-related tasks. The company never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work.

**Menzies Aviation Did Not Provide Me Timely, Uninterrupted 30-Minute Meal Periods**

10.    Often, meal breaks were not permitted by the supervisor or manager within the first 5 hours of my shift, for a number of reasons. Flights would constantly be

- 4 -

DECLARATION OF MARIO ROCHA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

impression that my supervisor approved the Missed Punch Form, I noticed that my paycheck frequently failed to properly account for the missed meal breaks. In other words, Menzies Aviation did not pay me extra for those missed meal breaks.

13.   If I worked 10 or 12 hours we were never given a second lunch, at most we were given 10 or 15 minute break almost at the time we were about to go home. If I worked 12 hours the machine would automatically discount 30 minutes for lunch, even though I didn't take that second lunch.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

14.   Some days, Menzies Aviation permitted me a 10-minute rest break, but only if there was time between flights. If the flights were arriving and departing too close in time, breaks were not permitted or taken. I don't recall ever being permitted a second 10 minute rest break on those days that I worked 8, 10 or 12 hours.

15.   I am not aware of Menzies Aviation paying me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this ___4 / 3 0___, 2023 at _INGLEWOOD_ California.

_____
Mario Rocha Rodriguez

- 6 -

DECLARATION OF MARIO ROCHA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# EXHIBIT 27

1  C. JOE SAYAS, JR. (CA Bar No. 122397)
2  cjs@joesayaslaw.com
   KARL P. EVANGELISTA (CA Bar No. 250685)
3  kpe@joesayaslaw.com
4  **LAW OFFICES OF C. JOE SAYAS, JR.**
   500 N. Brand Boulevard, Suite 980
5  Glendale, California 91203
6  Telephone: (818) 291-0088
7  Facsimile: (818) 240-9955

8  DAVID P. KING (CA Bar No. 136765)
9  dpk@kcmlaw.net
   **KING CHENG MILLER & JIN, LLP**
10 3675 Huntington Dr., Ste. 200
11 Pasadena, California 91107
   Telephone: (626) 304-9001
12 Facsimile:  (626) 304-9002

13
14 Attorneys for Plaintiffs

15              **UNITED STATES DISTRICT COURT**
16              **CENTRAL DISTRICT OF CALIFORNIA**

17
18 DORA PATRICIA AMAYA, an          CASE NO. 2:22-cv-05915-MCS-MARx
   individual; and BRAYAN LOZANO
19 GONZALEZ, an individual; on behalf of  CLASS ACTION
20 themselves and others similarly situated,
                                    DECLARATION OF RYAN SIERRA IN
21              Plaintiffs,          SUPPORT OF MOTION FOR CLASS
22       vs.                        CERTIFICATION
23 MENZIES AVIATION (USA), INC., a
   Delaware corporation; and DOES 1   Judge: Hon. Mark C. Scarsi
24 through 10, inclusive,           Ctrm.: 7C, 7th Floor
25
                                    Complaint Filed: August 19, 2022
26              Defendants.          FAC Filed: August 30, 2022
27
28

─────────────────────────────────────────────
                        1
DECLARATION OF RYAN SIERRA IN SUPPORT OF MOTION FOR CLASS
                  CERTIFICATION

5.    I would punch in when I reported to work, punch out when I took a meal break, punch back in when my meal break was over, and then punch out at the end of my shift using a biometric method, which involves touching an electronic pad in Menzies Aviation's Operations Room using my finger.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

6.    I used my personal cell phone at work every day because my instructions would be sent to me via my phone.  Frequently I would receive instructions about flight schedules and schedule changes during my meal break so that I knew exactly where to report and what to do the minute my meal break was over.

7.    I was not provided with any alternative method of communication with my supervisors and/or managers. The supervisors and managers used radios and/or other forms of communication but those were never offered to us.  Menzies Aviation has never offered to reimburse me for use of my personal phone for work duties and has never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work.

**Menzies Aviation Did Not Provide Me Timely, Uninterrupted 30-Minute Meal Periods**

8.    For most of the shifts that I worked at Menzies Aviation, I was not afforded a meal break within the first 5 hours of my shift, because the busy workload did not allow for a break.  Meal breaks had to be approved by a manager or supervisor, and those breaks would not be permitted when multiple flights were arriving and departing, and the work needed to be completed.  Our managers made it clear to us that Menzies Aviation stressed the urgency of getting planes serviced in a timely manner and that always took priority over a meal or rest break.  There were rare instances when we would be told to take our meal break as soon as we clocked in because that was the only time we had due to the

3

DECLARATION OF RYAN SIERRA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

hectic flight schedule, even though we ended up working 8, 10 or even 12 hours that day. The flight schedule dictated when and if we would take a meal break.

9.    I am not aware of Menzies Aviation's policy for paying for or recording missed meal breaks, and I'm also not aware if I ever received extra pay for my missed or late meal breaks. I am not aware of Menzies Aviation's policy for paying for or recording missed meal breaks, and I'm also not aware if I ever received extra pay for my missed or late meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

10.    Throughout the time I worked for Menzies Aviation, I was not aware that I was entitled to take rest breaks during my shift, and certainly did not ever get 2 10-minute rest breaks for shifts over 8 hours. During my shift, I would work continuously. Flights get delayed, rescheduled, and cancelled, and thus departure and arrival times change. My managers made it clear to me that I always had to be available to service those planes. Cargo needed to be offloaded from flights, and our managers said that these needed to be loaded and unloaded promptly. Thus, there were always issues that needed to be addressed. I really don't recall being allowed to take rest breaks during my shift.

11.    I am not aware of Menzies Aviation paying me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

Executed this ___April 20___, 2023 at ___Hawthorne___, California.


___Ryan Sierra___
Ryan Sierra

DECLARATION OF RYAN SIERRA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# EXHIBIT 28

1  C. JOE SAYAS, JR. (CA Bar No. 122397)
2  cjs@joesayaslaw.com
   KARL P. EVANGELISTA (CA Bar No. 250685)
3  kpe@joesayaslaw.com
   **LAW OFFICES OF C. JOE SAYAS, JR.**
4  500 N. Brand Boulevard, Suite 980
5  Glendale, California 91203
   Telephone: (818) 291-0088
6  Facsimile: (818) 240-9955

7
   DAVID P. KING (CA Bar No. 136765)
8  dpk@kcmlaw.net
   **KING CHENG MILLER & JIN, LLP**
9  3675 Huntington Dr., Ste. 200
10 Pasadena, California 91107
   Telephone: (626) 304-9001
11 Facsimile:  (626) 304-9002

12
   Attorneys for Plaintiffs
13
14                  **UNITED STATES DISTRICT COURT**

15                  **CENTRAL DISTRICT OF CALIFORNIA**

16 | | |
   |---|---|
17 | DORA PATRICIA AMAYA, an individual; and BRAYAN LOZANO GONZALEZ, an individual; on behalf of themselves and others similarly situated, | CASE NO. 2:22-cv-05915-MCS-MARx |
18 | | <u>CLASS ACTION</u> |
19 | Plaintiffs, | DECLARATION OF ANIBAL SILVA IN SUPPORT OF MOTION FOR CLASS CERTIFICATION |
20 | vs. | Judge: Hon. Mark C. Scarsi |
21 | MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive, | Ctrm.: 7C, 7th Floor |
22 | | Complaint Filed: August 19, 2022 |
23 | Defendants. | FAC Filed: August 30, 2022 |
24
25

- 1 -

frequently request that we stay beyond the shift to handle, for example,  a delayed arriving or departing flight, or for other reasons. In other words, while a 8 hour schedule was contemplated, the crew and I would often work as many as 12 hours on a single shift.

6.      I estimate that in majority of the days I worked at Menzies aviation I was unable to take a lunch break at all and or was unable to take them within the first 5 hours, and often not until I had worked 7-8 hours.  There were also occasions when  I would be required to work 10 hours or more and was not provided with a second meal period due to work demands. Others in my crew had the same experience.  For the most part, I was not paid  premium  wages for these late or missed meal breaks.

**The Need to Use My Personal Cellphone for My Job Duties for Menzies Aviation**

7.      My job at Menzies required that I use and keep open, my personal cell phone at work every day. Menzies' supervisors and managers, as well as other co-employees, communicated with me through my personal cell phone, to provide me  with instructions regarding work related issues, including information about cargo being loaded or unloaded,  status of flight arrivals, flight departures,  cancellations, delays, and equipment issues as examples.

8.      Menzies Aviation did not pay nor offer to reimburse me for use of my personal cell phone for work duties. Menzies did not advise me of any right to reimbursement.

- 3 -

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

16.    As discussed above, for numerous reasons, including clocking-in and clocking-out through the Menzies App on my phone, the need for intra-airport calls to baggage and other personnel, and the group chat, the use of a cellphone during my shift is critical for performing my job duties. Menzies Aviation has never offered me a company cellphone, has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my personal cellphone.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.


Executed this  _April  13th_ , 2023 at _Paulden_ , Arizona.


_____
Anibal Silva

- 6 -

SILVA DECLARATION

Scanned by TapScanner

# EXHIBIT 29

1  C. JOE SAYAS, JR. (CA Bar No. 122397)
2  cjs@joesayaslaw.com
   KARL P. EVANGELISTA (CA Bar No. 250685)
3  kpe@joesayaslaw.com
4  **LAW OFFICES OF C. JOE SAYAS, JR.**
   500 N. Brand Boulevard, Suite 980
5  Glendale, California 91203
6  Telephone: (818) 291-0088
7  Facsimile: (818) 240-9955

8  DAVID P. KING (CA Bar No. 136765)
9  dpk@kcmlaw.net
   **KING CHENG MILLER & JIN, LLP**
10 3675 Huntington Dr., Ste. 200
11 Pasadena, California 91107
   Telephone: (626) 304-9001
12 Facsimile:  (626) 304-9002
13
14 Attorneys for Plaintiffs

15            **UNITED STATES DISTRICT COURT**

16            **CENTRAL DISTRICT OF CALIFORNIA**

17

18 DORA PATRICIA AMAYA, an          CASE NO. 2:22-cv-05915-MCS-MARx
   individual; and BRAYAN LOZANO
19 GONZALEZ, an individual; on behalf of  <u>CLASS ACTION</u>
20 themselves and others similarly situated,
                                    DECLARATION OF ABRAHAM TORRES
21          Plaintiffs,             IN SUPPORT OF MOTION FOR CLASS
                                    CERTIFICATION
22          vs.
                                    Judge: Hon. Mark C. Scarsi
23 MENZIES AVIATION (USA), INC., a  Ctrm.: 7C, 7th Floor
24 Delaware corporation; and DOES 1
   through 10, inclusive,           Complaint Filed: August 19, 2022
25                                  FAC Filed: August 30, 2022
26          Defendants.
27
28
                            - 1 -

   DECLARATION OF ABRAHAM TORRES IN SUPPORT OF MOTION FOR CLASS
                          CERTIFICATION

## DECLARATION OF ABRAHAM TORRES

I, Abraham Torres, declare as follows:

1.    I have personal knowledge of the facts set forth in this Declaration, and I could and would readily and competently testify under oath if called as a witness.

2.    I was employed as a Ramp Agent in the Ramp Operations Department of Menzies Aviation (USA), Inc. ("Menzies Aviation") at Los Angeles International Airport ("LAX") from 2017 until 2021.

**My Duties and Responsibilities at Menzies Aviation**

3.    Throughout the time I worked at Menzies Aviation, I was assigned to the Ramp Operations Department at LAX. During my shift, I worked with other ramp agents to load and offload passenger luggage and cargo.

**My Typical Work Schedule for Menzies Aviation**

4.    My working hours with Menzies Aviation varied. While I would report to work expecting to work an 8-hour shift, ramp agents were often asked by Menzies supervisors to work additional hours to service a plane that was arriving or departing after the 8-hour shift was ending, regularly resulting in work days of 10-12 hours.

5.    I would clock-in and clock-out through a biometric touch pad in Menzies Aviation's Operations Room using my thumb. The other method is an application ("Menzies App") installed on cell phones. Sometimes I would clock in and clock out using this Kronos Menzies App that our managers instructed us to install on our personal cell phones. I would clock in at the beginning of my shift and clock out at the end of my shift. I would also clock out and back in for meal breaks, either on the biometric touch pad or on the Menzies App on my cell phone.

6.    Like many Menzies Aviation employees, I was asked by my supervisors that I used my personal telephone to communicate with other employees about work related issues, I used it to track flights through Flight View and Flight Radar in order to prepare

- 2 -

DECLARATION OF ABRAHAM TORRES IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION

to receive and service the flights. I received text messages at work and during off hours regarding my schedule, flight arrivals, departures and the nature of work that needed to be accomplished. I used my personal cell phone at work every day to communicate with other employees, managers and supervisors about our instructions, plane arrivals and departures, cargo issues, and other related work issues. Supervisors used our phones to keep everyone updated on flight information, including delays, and cancellations, specific instructions regarding an arriving or departing flight, issues with any luggage or cargo, and other work related issues throughout the day. There were walkie talkies but they were never offered to us. They were for management to use. My managers and supervisors knew that I was using my personal cell phone for my work-related tasks, but they did not offer me a company phone, radio or anything else to use instead of my personal cell phone.

7.     Menzies Aviation never offered to reimburse me for use of my personal phone for work duties and never advised me of any right to reimbursement. I am not aware of any procedure or mechanism at the Menzies Aviation to get reimbursed for the expense of using my personal cellphone for work.

**Menzies Aviation Did Not Provide Uninterrupted or Timely 30-Minute Meal Periods**

8.     My co-employees and I would rarely have a lunch break within the first 5 hours of a shift. Even when we did take a short lunch, we would often be interrupted with work-related texts, conversations and instructions. I was aware that the Kronos Machine locked us out for 30 minutes, meaning that when we clocked out for lunch, we could not clock back in unless 30 minutes had passed.

9.     My co-workers and I could not take a meal break without authorization from our manager or supervisor. Menzies Aviation insisted that we work through lunch if a plane needed to be serviced, in order to ensure that the work was completed as quickly as possible. Meals would be missed because the workload was substantial and needed to be

- 3 -

DECLARATION OF ABRAHAM TORRES IN SUPPORT OF MOTION FOR CLASS
CERTIFICATION

15. Menzies Aviation never informed me that we were entitled to extra pay if Menzies Aviation did not provide us with 10-minute rest breaks during our shift.

**Menzies Aviation Did Not Reimburse Me for Business Expenses That I Incurred in Relation to Performance of My Job Duties**

16. As discussed above, for numerous reasons, including clocking-in and clocking-out through the Menzies App on my phone, tracking flights, and communicating with co-workers, I would use my cellphone during my shift. Menzies Aviation never offered me a company cellphone, has never reimbursed me for use of my personal cellphone, and has never advised me of the right to be reimbursed for the use of my personal cellphone. I am not aware of any procedure or mechanism at the company for me to get reimbursed for the expense of using my personal cellphone for work.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this ___April  21___, 2023 at ___Huntington Park___, California.

_____
Abraham Torres

- 5 -

DECLARATION OF ABRAHAM TORRES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

# EXHIBIT 30

1   C. JOE SAYAS, JR. (CA Bar No. 122397)
2   cjs@joesayaslaw.com
    KARL P. EVANGELISTA (CA Bar No. 250685)
3   kpe@joesayaslaw.com
    **LAW OFFICES OF C. JOE SAYAS, JR.**
4   500 N. Brand Boulevard, Suite 980
    Glendale, California 91203
5   Telephone: (818) 291-0088
    Facsimile: (818) 240-9955
6

7   DAVID P. KING (CA Bar No. 136765)
8   dpk@kcmlaw.net
    **KING CHENG MILLER & JIN, LLP**
9   3675 Huntington Dr., Ste. 200
    Pasadena, California 91107
10  Telephone: (626) 304-9001
    Facsimile:  (626) 304-9002
11

12  Attorneys for Plaintiffs

13

           **UNITED STATES DISTRICT COURT**
14

           **CENTRAL DISTRICT OF CALIFORNIA**
15

16  DORA PATRICIA AMAYA, an      CASE NO. 2:22-cv-05915-MCS-MARx
    individual; and BRAYAN LOZANO
17  GONZALEZ, an individual; on behalf of   CLASS ACTION
    themselves and others similarly situated,
18                       DECLARATION OF STEVEN VAKOC IN
                             SUPPORT OF MOTION FOR CLASS
19        Plaintiffs,          CERTIFICATION
20       vs.                  Judge: Hon. Mark C. Scarsi
                             Ctrm.: 7C, 7th Floor
21  MENZIES AVIATION (USA), INC., a
    Delaware corporation; and DOES 1      Complaint Filed: August 19, 2022
22  through 10, inclusive,           FAC Filed: August 30, 2022
23         Defendants.

24

25

                         - 1 -

DECLARATION OF STEVEN VAKOC IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

**Menzies Aviation Did Not Provide Me Uninterrupted 30-Minute Meal Periods**

6.      My recollection is that I rarely took my meal breaks within the first 5 hours of my shift.  I was assigned to Southwest Airlines, which are back-to-back-to-back flights. I would barely finish fueling one aircraft before I must immediately turn my attention to fuel another one.  There were days that I worked more than 6-7 hours straight after clocking in before I could find an opportunity to grab a bite to eat.

7.      My superiors at Menzies Aviation made it clear to me and the other fuelers that we cannot neglect to fuel an aircraft even if we are hungry because we would get written up if flights are delayed on your watch.  If there were any planes that needed fueling, a fueler had to keep working, regardless of how long you've been on duty since clocking in for your shift.  As such, I would get a late meal break, meaning one beyond the 5th hour of working, about 3-4 times a week.

8.      The policy at Menzies Aviation is that flight operations takes precedence over all other matters, including employee meal and break periods.  So approximately 5-6 times a month, I would absolutely miss having a chance to stop and eat for my entire shift.

9.      Also, because of the rule that you had to keep working if there were any planes that needing fueling, even when I did have a chance to have a meal break, it would occasionally be interrupted by my supervisor calling me to fuel another aircraft.  This happened about 2-3 times per week.

10.      Since I can always get interrupted by my supervisor instructing me to fuel another aircraft, when I was given a chance to take my meal break, I would just grab the opportunity by simply taking my lunch out and eating at my fuel truck.  I never knew if I would be asked by my supervisor to cover for another flight, and they made it clear that it wasn't an option for me to decline the instruction when I'm on a meal break, so I pretty

- 3 -

DECLARATION OF STEVEN VAKOC IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

much had to stay with my truck, ready to work on a moment's notice. So I did not have an opportunity to drive back to the break room to clock out for meal breaks.

11.    I did not know when I worked at Menzies Aviation that I can get paid for missing, late, or interrupted meal breaks, let alone any procedure to request a meal break premium payment.

12.    As far as I know, I have never have been paid for any meal break premiums while I was working at Menzies Aviation. Nor am I aware of Menzies Aviation ever paying me any additional wages or penalties for not providing me a meal period, or for having me work during my supposed meal breaks.

**Menzies Aviation Did Not Provide Me Proper Rest Periods**

13.    I rarely took any rest breaks while I was working at Menzies Aviation. The priority at the company was to fuel all the aircraft as soon as possible, which was more important than employees taking any breaks. Sometimes, I would catch a few minutes break in-between flights, but rarely was it 10 minutes. And since I cannot leave the Airport Operations Area (AOA) and my fuel truck in case my supervisor needed me to fuel another aircraft, it didn't seem to be off duty. Sometimes, in lieu of my meal break, I would take a quick rest break to be able to eat something in between fuelings in my fuel truck.

14.    In reality, I never knew I was entitled to 10-minute off-duty rest breaks when I worked for Menzies Aviation, much less payment for missed rest breaks. As such, I never applied for rest break premium payments and I don't know how I could have even done that. I do not recall Menzies Aviation ever paying me any rest break premium or any additional wages, penalties, or other money for not providing me proper rest breaks.

- 4 -

DECLARATION OF STEVEN VAKOC IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1    I declare under penalty of perjury under the laws of the State of California and the

2    United States that the foregoing is true and correct.

3    Executed this _____ at _____, California.
     05/16/2023                          rancho cucamonga ,ca

4

5    _____

6    Steven Vakoc

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- 5 -

DECLARATION OF STEVEN VAKOC IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# PROOF OF SERVICE

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 500 N. Brand Boulevard, Suite 980, Glendale, CA 91203.

On the date of execution hereof, I caused to be served the following attached documents:

1. **DECLARATION OF C. JOE SAYAW, JR. IN SUPPORT OF OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

on all interested parties in this action by the method indicated below and addressed as follows:

| | |
|---|---|
| **Christopher Ward, Esq.**<br>FOLEY & LARDNER, LLP<br>555 South Flower Street, Suite 3300<br>Los Angeles, CA 90071<br>Facsimile: (213) 486-0065<br>cward@foley.com<br>hvanhowe@foley.com | *Attorneys for Defendant, MENZIES AVIATION (USA), INC.* |
| **Kevin Jackson, Esq.**<br>FOLEY & LARDNER, LLP<br>11988 El Camino Real, Suite 400<br>San Diego, CA 92130<br>Facsimile: (858) 792-6773<br>kjackson@foley.com<br>smoreno@foley.com | *Attorneys for Defendant, MENZIES AVIATION (USA), INC.* |

( )  **BY MAIL** as follows:
STATE- I am readily familiar with the practice of this office's collection and processing correspondence for mailing.  Under that practice it is deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Glendale California, in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

( )  **BY PERSONAL SERVICE** as follow:  I caused each such envelope to be delivered by hand to the addressee (s) noted above or on the attachment herein.

(X)  **BY E-MAIL OR ELECTRONIC TRANSMISSION** as follows:  I caused a PDF version of the document to be sent via e-mail to the individuals listed herein and the parties have stipulated to treat e-mail service as "personal service."  The electronic mail

1

PROOF OF SERVICE

was sent to an electronic mail address maintained by the persons on whom the documents are served as last given by that/those persons. I personally requested a "delivery receipt" for this electronic mail message, and, unless disallowed by the recipient, received the same.

I DECLARE under penalty of perjury that the foregoing is true and correct.

Executed on September 5, 2023, at Los Angeles, California.

                          /s/ Roxana Hernandez
                            Roxana Hernandez

2

PROOF OF SERVICE