UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and ANIBAL SILVA, an individual; on behalf of themselves and others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>*Defendants*. | Case No. 2:22-cv-05915-HDV-MARx<br><br>**ORDER DENYING DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT [59; 65]** |

## I. INTRODUCTION

Plaintiffs bring a putative class action against their employer Menzies Aviation (USA), Inc. ("Menzies") for violation of wage-and-hour laws and failure to reimburse business expenses under Cal. Labor Code § 2802. Defendant Menzies moves for partial summary judgment on Plaintiffs' reimbursement claim arguing that the claim is preempted by the Labor Management Relations Act ("LMRA") and the Railway Labor Act ("RLA"). The relevant question here is whether the employees' right to reimbursement under California law is preempted where the parties' Collective-Bargaining Agreement (CBA) states that the employer will provide employees with all equipment adequate to perform their work.

Preemption under both the LMRA and RLA extends only as far as necessary to protect the role of labor arbitration in resolving CBA disputes. To that end, LMRA and RLA preemption only apples where a state law claim arises entirely from or requires construction of the CBA. Neither situation is present here. Plaintiffs' right to reimbursement arises under state law, and adjudication of Plaintiffs' claim under Cal. Labor Code § 2802 does not require any interpretation of the CBA. That the CBA requires Menzies to provide adequate work equipment does not affect or supersede Plaintiffs' independent state law right to reimbursement for business expenses. For the reasons detailed below, the Court *denies* Defendant's Motion for Partial Summary Judgment.

## II. BACKGROUND

Defendant Menzies is an aviation services company that provides ground handling services, cargo handling services, and fueling services to commercial airlines. Joint Statement of Uncontroverted Facts ("JSUF") ¶ 1 [Dkt. No. 65-3]. Ground handling includes "above-the-wing" servicing of aircraft parked at passenger gates, such as cleaning aircraft between flights, JSUF ¶ 2, and also includes "below-the-wing" work on the ramp, such as loading cargo and guiding taxiing aircraft, *id.* ¶ 3. Cargo handling includes, for example, processing cargo inside warehouses away from passenger aircraft and processing paperwork related to cargo. *Id.* ¶¶ 4, 5. On the fueling side of its operations, Menzies employees pump jet fuel into aircraft, operate the airport's fuel tank "farm," monitor fueling infrastructure, and perform routine and emergency maintenance for airport fueling equipment. *Id.* ¶¶ 6, 7. Menzies operates across several California airports. *Id.* ¶ 8. At a

single airport, Menzies' employees may perform ground handling, cargo, and fueling services for various airlines whose planes, passengers, and cargo are at different locations throughout the airport. Plaintiffs' Separate Joint Statement of Uncontroverted Facts ("PSUF") ¶ 33 [Dkt. No. 65-4].

Virtually all Menzies' non-exempt employees operating in California are represented by one of the unions at Menzies, all pursuant to a series of collective-bargaining agreements. JSUF ¶ 8. Plaintiff Amaya worked for Menzies as a Passenger Service Agent at Menzies' operation at LAX. *Id*. ¶ 16. Amaya remains a current employee of Menzies; however, she has been on a leave of absence since December 8, 2022. *Id*. ¶ 17. Plaintiff Silva worked for Menzies as a Ramp Agent, also at LAX. *Id*. ¶ 16. Silva's employment with Menzies terminated on March 15, 2020. *Id*. ¶ 18. Both Plaintiffs worked in classifications represented by a union and had the terms and conditions of their employment covered by a collective-bargaining agreement. *Id*. ¶ 19. Though represented by the same union, Plaintiffs worked pursuant to different CBAs due to their differing job classifications. *Id*. ¶ 21. However, both CBAs contain identical language addressing Menzies' obligation to provide employees with all equipment necessary to perform their work. *Id*. ¶ 22. Both CBAs explicitly state that "[t]he Employer agrees to provide and to maintain properly equipment and materials adequate to perform any and all work assignments." *Id*. ¶ 23.

Menzies' employees performing ground-handling, cargo, and fueling services at various locations throughout the airport were compelled to remain in contact and able to communicate with colleagues located in different locations throughout the airport in the discharge of their duties. PSUF ¶ 34. Plaintiffs and other putative class members routinely used their personal cell phones in the discharge of their duties, *id*. ¶ 35 (disputed on other grounds), and were not reimbursed by Menzies for these costs, *id*. ¶ 36 (disputed on other grounds).

Menzies maintains a series of written policies governing employees' possession of personal cell phones during work hours and purported use of such personal cell phones for work purposes. JSUF ¶ 9; *id*. ¶¶ 10-12 (disputed on other grounds). Menzies provides some forms of communications such as radios and cell phones to certain employees—managers, for example—to carry out their job functions. *Id*. ¶ 29.

The CBAs governing Plaintiff Amaya and Plaintiff Silva's employment with Menzies

1  establish a four-step grievance and arbitration procedure. *Id*. ¶¶ 24-25.  Plaintiff Silva used the
2  grievance procedure to complain to the Union about missed meal periods on one prior occasion. *Id*.
3  ¶ 28.  Neither Plaintiff used the grievance procedure for Menzies' failure to provide cell phones or
4  reimbursement for the use of personal cell phones. *Id*. ¶ 31 (disputed on other grounds).
5      On May 9, 2023, Plaintiffs filed their Second Amended Complaint asserting against Menzies
6  seven claims for violations of California law including: (i) failure to pay wages for missed meal
7  periods, (ii) failure to pay wages for missed rest periods, (iii) failure to reimburse business expenses,
8  (iv) failure to provide accurate, itemized wage statements, (v) waiting time penalties, (vi) unfair
9  competition, and (vii) civil penalties under the California Labor Code Private Attorney General Act.
10 Plaintiffs' Second Amended Complaint ("SAC") [Dkt. No. 40].  Plaintiffs bring these claims
11 individually and on behalf of all individuals who worked for Menzies in California as non-exempt
12 employees at any time from the 4-year period preceding the filing of the Complaint through the
13 present.  SAC ¶ 30.
14     In its Motion for Partial Summary Judgment, Menzies challenges only Plaintiffs' third claim:
15 failure to reimburse business expenses under Cal. Labor Code § 2802.  ("Motion") [Dkt. No. 65].
16 **III.   LEGAL STANDARDS**
17     Summary judgment should be granted "if the movant shows that there is no genuine dispute
18 as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
19 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Material facts
20 are those that may affect the outcome of the case.  *Nat'l Ass'n of Optometrists & Opticians v.*
21 *Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,
22 248 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a
23 verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.
24     The moving party bears the initial burden of establishing the absence of a genuine issue of
25 material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met
26 its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her
27 own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate
28 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting Fed. R. Civ. P.

4

56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed." Fed. R. Civ. P. 56(e)(2). The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252. "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

## IV. DISCUSSION

In its Motion, Menzies argues that Plaintiffs' claim for failure to reimburse employees for necessary business expenses under Cal. Labor Code § 2802 is preempted by federal labor law and must be dismissed. Menzies invokes both the Labor Management Relations Act ("LMRA") § 301 and the Railway Labor Act ("RLA") as sources of preemption.

LMRA § 301 establishes federal jurisdiction for "[s]uits for violations of contracts between an employer and a labor organization …." 28 U.S.C. § 185(a). Section 301 preemption displaces entirely any state law claim for violation of collective-bargaining agreements between employers and labor organizations. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983). Preemption under § 301 apples "even in some instances in which the plaintiffs have not alleged a breach of contract in their complaint," but where the claim is "either grounded in the provisions of the labor contract or requires interpretations of it." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). This is because limiting the LMRA's preemptive force to breaches of collective-bargaining agreements would "elevate form over substance and allow the parties to evade the requirements of § 301 by relabeling their contract claims for tortious breach of contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S. Ct. 1904, 1911, 85 L. Ed. 2d 206 (1985).

5

1   However, "the bare fact that a collective-bargaining agreement will be consulted in the course of
2   state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512
3   U.S. 107, 124 (1994).
4       "[Section] 301 pre-emption merely ensures that federal law will be the basis for interpreting
5   collective-bargaining agreements, and says nothing about the substantive rights a State may provide
6   to workers when adjudication of those rights does not depend upon the interpretation of such
7   agreements." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409, 108 S. Ct. 1877, 1883,
8   100 L. Ed. 2d 410 (1988); *see also Livadas*, 512 U.S. at 123 ("[Section] 301 cannot be read broadly
9   to preempt nonnegotiable rights conferred on individual employees as a matter of state law.").
10  Certain state law rights, such as minimum wage protections and pay periods, remain "well within the
11  traditional police power of the states, and claims alleging violations of such protections will not
12  necessarily be preempted, even when the plaintiff is covered by a CBA." *Curtis v. Irwin Indus., Inc.*,
13  913 F. 3d 1146, 1152 (9th Cir. 2019) (internal quotes omitted).
14      Relatedly, the RLA "creates a comprehensive framework for resolving labor disputes in the
15  rail and airline industries. Within this framework, labor disputes are first categorized as
16  'representation,' 'major,' or 'minor,' according to their subject matter, then assigned to a
17  corresponding dispute-resolution mechanism." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 916–
18  17 (9th Cir. 2018). Menzies argues that Plaintiffs' reimbursement claim is a "minor" dispute under
19  the RLA, Motion at 11-12, which is a dispute "growing out of grievances or ... the interpretation or
20  application of agreements covering rates of pay, rules, or working conditions," and must be
21  addressed through the CBA grievance procedures. *Alaska Airlines Inc.*, 898 F.3d at 917. "To the
22  extent state law would also create a cause of action for a minor dispute, and thereby 'permit[] an
23  individual to sidestep available grievance procedures,' the state law action is preempted." *Id*. (citing
24  *Lingle*, 486 U.S. at 411, 108 S.Ct. 1877). However, the RLA minor dispute preemption is meant to
25  "reduce commercial disruption," not to "federaliz[e] all of labor and employment law so as to
26  preempt independent state law rights." *Id*. at 920. Therefore, "[f]or RLA-covered workers, as for
27  LMRA-covered workers, 'it would be inconsistent with congressional intent ... to preempt state rules
28  that proscribe conduct, or establish rights and obligations, independent of a labor contract.'" *Id*.

6

(quoting *Lueck*, 471 U.S. at 212, 105 S.Ct. 1904).

The preemption test is the same under the Labor Management Relations Act and Railway Labor Act. *Id.* at 913 (describing LMRA preemption and RLA preemption as "virtually identical"). "Under both the RLA and LMRA § 301, federal preemption extends no further than necessary to preserve the role of grievance and arbitration, and the application of federal labor law, in resolving *CBA disputes*." *Id.* at 916 (emphasis in original).

The Ninth Circuit has "distilled the Supreme Court's RLA and LMRA § 301 case law into a two-part inquiry into the nature of a plaintiff's claim." *Id.* at 920 (citation omitted).[1] First, a court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted …." *Burnside*, 491 F.3d at 1059–60. Second, if the right underlying the state claim exists independently of the CBA, then the court considers whether the right is "substantially dependent on analysis of a collective-bargaining agreement." *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 387, 107 S. Ct. 2425, 2427 (1987)).

### A. Preemption Step One

The first step of the Ninth Circuit's preemption inquiry asks whether the asserted claim involves a right conferred **solely** by a CBA. "[T]o determine whether a particular right is grounded in a CBA, we evaluate the 'legal character' of the claim by asking whether it seeks purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines Inc.*, 898 F.3d at 920–21 ("[C]laims are not simply CBA disputes by another name, and so are not preempted under this first step, if they just refer to a CBA-defined right, … rely in part on a CBA's terms of employment, … run parallel to a CBA violation, … or invite use of the CBA as a defense."). If the right exists only due to the CBA, "the claim is preempted, and our analysis ends." *Burnside*, 491 F.3d at 1059.

The parties agree that the right to reimbursement of necessary business expenses under Cal. Labor Code § 2802 is conferred upon the employee by virtue of state law, rather than the CBA. *See*

---

[1] Defendant suggests that if the CBA language either "directly" or even "arguably" speaks to a business expense claim, the claim is preempted by the LMRA and RLA. Motion at 8-10. This framing broadens the Ninth Circuit preemption test beyond recognition.

7

1  Defendant's Reply at 1.  Because the Court finds the right to reimbursement from § 2802 is
2  independent of the CBA, it must proceed to the next part of the analysis: whether the right is
3  substantially dependent on an analysis of the CBA.  See *Burnside*, 491 F.3d at 1060.

### B. Preemption Step Two

To determine whether a state law right is 'substantially dependent' on the terms of a CBA, the Supreme Court "directs us to decide whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA." *Burnside*, 491 F.3d at 1060 (citing *Livadas*, 512 U.S. at 125).  "If the latter, the claim is preempted; if the former, it is not." *Id*.  Therefore, the Court must determine whether Plaintiffs' reimbursement claim requires ***interpretation*** of the CBA.  The Court find that it does not.

"'Interpretation' is construed narrowly; it means something more than 'consider,' 'refer to,' or 'apply.'" *Alaska Airlines Inc.*, 898 F.3d at 921 (internal citation and quotation marks omitted). "[T]he need to interpret the CBA must inhere in the nature of the plaintiff's claim." *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 691 (9th Cir. 2001), *as amended* (Aug. 27, 2001) ("A plaintiff's claim is the touchstone for this analysis.").  "[A] *hypothetical* connection between the claim and the terms of the CBA is not enough to preempt the claim." *Id*. (emphasis in original).  Nor is "[a] creative linkage between the subject matter of the claim and the wording of a CBA provision." *Id*. at 692.  And "preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Id*. at 691.  Instead, "at this second step of an RLA or LMRA § 301 preemption analysis, claims are only preempted to the extent there is an active dispute over 'the ***meaning*** of contract terms.'" *Alaska Airlines Inc.*, 898 F.3d at 921 (citing *Livadas*, 512 U.S. at 124) (emphasis added).  No such hermeneutic dispute exists here.

In its Motion, Menzies tries to reframe Plaintiffs' Cal. Labor Code § 2802 claim so that it implicates a provision of the CBA—specifically the provision stating Menzies agreed "to provide and to maintain properly equipment and materials adequate to perform any and all work assignments." Motion at 6.  According to Menzies, Plaintiffs' § 2802 claim cannot be resolved without addressing Menzies' alleged failure to comply with the CBA provision covering adequate

equipment and materials.[2]  Motion at 10.  But that simply isn't the case.  To adjudicate Plaintiffs' Cal. Labor Code § 2802 claim, the Court must determine only that: "(1) the employee made expenditures or incurred losses; (2) the expenditures or losses were incurred in direct consequence of the employee's discharge of his or her duties, or obedience to the directions of the employer; and (3) the expenditures or losses were reasonable and necessary."  *Arroyo v. Int'l Paper Co.*, 611 F. Supp. 3d 824, 844–45 (N.D. Cal. 2020) (citation omitted).

The fact that a Court may need to consider whether cell phones are necessary to performance of the employees' jobs both to show a § 2802 violation and to establish a breach of the CBA is of no moment.  The Court in *Lingle* explained that although the state law analysis might involve attention to the same factual considerations as the contractual determination, such parallelism does not render the state law analysis *dependent upon* the contractual analysis.  As long as the state law claim can be resolved without interpreting the collective-bargaining agreement itself, the claim is "independent" of the agreement for § 301 preemption purposes.  486 U.S. at 400.  This is true "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing *precisely the same set of facts*."  *Id*. at 409–10 (emphasis added).

That the § 2802 and breach of CBA inquiries are independent makes logical sense—there are numerous hypothetical circumstances in which Menzies could be in compliance with the CBA yet in violation of Cal. Labor Code § 2802 (and vice versa).  For example, if Menzies provided an employee with a company vehicle necessary to do her job, but failed to reimburse that employee for the gas she put in the vehicle while working, Menzies would have arguably violated § 2802, but not the terms of the CBA.  The same would be true if Menzies provided all employees with cell phones but required employees to purchase certain applications for work purposes without reimbursement.  Moreover, an employer may violate Cal. Labor Code § 2802 for failure to reimburse costs that may

---

[2] At oral argument on the Motion, Menzies tried to distinguish this case from others that have found no preemption on the grounds that Menzies has employee policies prohibiting the use of personal phones while on the job.  But Menzies provided no authority stating that company policies outside the CBA makes the CBA in greater need of interpretation—nor does the Court see why that would be the case.  Menzies' policies on personal phone use may be relevant to the issue of whether use of personal phones was necessary to fulfil the employees' duties, but are not relevant to the preemption inquiry.

not have been necessary for the discharge of the employee's duties, but were incurred at the employer's direction.

In other words, whether Menzies violated the CBA is an inquiry separate and distinct from whether it violated Cal. Labor Code § 2802. Plaintiffs' theory is not that Menzies failed to provide employees with cell phones in violation of the CBA. Rather, the gravamen of Plaintiffs' claim is that Menzies failed to reimburse employees for the cost of using their personal cell phones for work purposes. And that framing is the touchstone for the preemption analysis. *Cramer*, 255 F.3d 683, 691 ("[T]he need to interpret the CBA must inhere *in the nature of the plaintiff's claim*."). Menzies' argument is simply "[a] creative linkage between the subject matter of the claim and the wording of a CBA provision." *Id*. at 692. Plaintiffs' claim for violation of Cal. Labor Code § 2802 is not preempted by either LMRA § 301 or the RLA.

## V. CONCLUSION

For the reasons stated herein, Defendant's Motion for Partial Summary Judgment is ***denied***.

Dated: December 7, 2023

Hernán D. Vera
United States District Judge