UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and ANIBAL SILVA, an individual; on behalf of themselves and others similarly situated,<br><br>      *Plaintiffs*,<br><br>   v.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>      *Defendants.* | Case No. 2:22-cv-05915-HDV-MARx<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION [41]** |

I. **INTRODUCTION**

Before the Court is Plaintiffs' Motion for Class Certification ("Motion") [Dkt. No. 41] asking the Court to certify a class of current and former employees of Defendant Menzies Aviation (USA), Inc. ("Menzies"), against which Plaintiffs allege several violations of the California Labor Code. Plaintiffs Dora Patricia Amaya and Anibal Silva, themselves current or former Menzies' employees, allege Menzies routinely deprived employees of meal and rest periods, failed to pay employees legally-mandated premium wages for those missed meal and rest breaks, and required employees to use personal cell phones for work purposes without reimbursement. Plaintiffs further contend that Menzies' practices, driven by the pressures and operational realities of the aviation industry, resulted in a pattern of Labor Code violations capable of classwide adjudication.

After careful consideration of the requirements of Federal Rule of Civil Procedure 23, the Court finds class certification appropriate. Plaintiffs' claims are exactly those suited for class treatment; they present several common issues of law and fact that are most efficiently resolved on a classwide basis. For those reasons and the additional reasons detailed below, the Court **grants** Plaintiffs' Motion for Class Certification.

II. **FACTUAL BACKGROUND**

Defendant Menzies is an aviation services company that provides ground handling services, cargo handling services, and fueling services to commercial airlines. Declaration of Talin Bazerkanian ("Bazerkanian Decl.") [Dkt. No. 50-2] ¶ 2. Ground handling includes "above-the-wing" servicing of aircraft parked at passenger gates and "below-the-wing" work on the ramp including loading cargo and taxiing aircraft. *Id*. Cargo handling includes, for example, processing cargo inside warehouses away from passenger aircraft and processing the related paperwork. *Id*. ¶ 3. On the fueling side of its operations, Menzies' employees pump jet fuel, operate the airport's fuel tank "farm," monitor fueling infrastructure, and perform routine and emergency maintenance for airport fueling equipment. *Id*. ¶ 4.

Menzies, which operates across several California airports, maintains over 70 non-exempt job classifications for employees performing these jobs and supporting the operations administratively. *Id*. ¶ 5. Other than administrative personnel, virtually all non-exempt Menzies'

employees in California are represented by a union and subject to a collective bargaining agreement. *Id*. At all times during the relevant period, Menzies asked employees to agree to an Alternative Dispute Resolution ("ADR") Policy. *Id*. ¶ 6.

      Menzies maintains employment policies covering meal periods, rest periods, and the use of personal electronics. Declaration of Kevin Jackson ("Jackson Decl.") [Dkt. No. 50-1], Exhibits 8-12. Regarding "Meal Periods," the Menzies Employee Handbook states: "Non-exempt employees who work more than five (5) hours in a workday are entitled to an unpaid, duty-free meal period of at least 30 minutes. If you work more than ten (10) hours in a workday, you are entitled to a second, unpaid meal period of at least 30 minutes." *Id*., Ex. 8 at 12. Under "Rest Periods," the Employee Handbook provides: "Non-exempt employees are authorized and permitted to take one 10-minute paid rest break for every four hours worked or major fraction thereof." *Id*., Ex. 8 at 13. Menzies' Employee Handbook instructs employees to "immediately notify [their] manager or supervisor" if they miss a meal or rest period. *Id*. Menzies' also submitted a document titled, "Kronos Meal Period Clocking Policy and Reminder of Meal and Rest Period Policies and Requirements," which states: "If you do not take a meal or rest period during any shift for any reason, you are required to complete a Missed Punch Form so that your time records can be updated, and any other corrective action can be taken." *Id*., Ex. 12 at 1-2.

      Plaintiff Amaya has worked for Menzies as a Passenger Service Agent at Los Angeles International Airport ("LAX") since August 2021. Declaration of Dora Patricia Amaya ("Amaya Decl.") [Dkt. No. 41-5] ¶ 2. Plaintiff Silva worked for Menzies as a Lead Ramp Agent, also at LAX, from 2015 to 2020. Declaration of Anibal Silva ("Silva Decl.") [Dkt. No. 41-5] ¶¶ 2-3. Plaintiffs Amaya and Silva report that they and their co-workers were routinely unable to take compliant meal and rest breaks because they were expected to complete their work on flight operations prior to taking a break, sought to avoid financial penalties for delayed flights, or were too busy addressing continuous work demands. Amaya Decl. ¶¶ 12, 16; Silva Decl. ¶¶ 6, 9-11, 15. Both Plaintiffs recall numerous instances of missed, late, and interrupted meal breaks, but only received the premium wages to which they were entitled under California law ("Meal Premiums") on a fraction of those occasions. Amaya Decl. ¶ 15; Silva Decl. ¶ 6. Further, according to Amaya, Menzies never

3

informed her or her fellow employees that they were entitled to premium wages for missed rest breaks ("Rest Premiums"), nor did Menzies pay her any Rest Premiums. Amaya Decl. ¶ 17. Plaintiffs both state their duties required them to use their personal cell phone at work every day to communicate with co-workers and supervisors. Amaya Decl. ¶¶ 9-10; Silva Decl. ¶ 7. Neither Plaintiff was offered a company phone or reimbursed for use of their personal cell phone for work-related tasks. Amaya Decl. ¶ 18; Silva Decl. ¶¶ 8, 16.

### III.    PROCEDURAL BACKGROUND

On May 9, 2023, Plaintiffs filed their Second Amended Complaint asserting against Menzies seven claims for violations of California law including: (i) failure to pay wages for missed meal periods, (ii) failure to pay wages for missed rest periods, (iii) failure to reimburse business expenses, (iv) failure to provide accurate, itemized wage statements, (v) waiting time penalties, (vi) unfair competition, and (vii) civil penalties under the California Labor Code Private Attorney General Act. Plaintiffs' Second Amended Complaint ("SAC") [Dkt. No. 40]. Plaintiffs asserted these claims individually and on behalf of others similarly situated. *Id*.

On March 22, 2023, Plaintiffs filed the present Motion for Class Certification. The Motion seeks certification of a class of individuals defined as "all individuals who worked for Defendant [Menzies] in California as non-exempt employees at any time from the 4-year period preceding the filing of this Complaint through the present." *Id*. ¶ 30. Plaintiffs further seek to establish one subclass, the Labor Code Section 203 Subclass, which is defined as all class members "who worked during the relevant time period who are no longer employed by Defendant [Menzies]." *Id*.

Prior to the completion of briefing on Plaintiffs' Motion for Class Certification, on June 23, 2023, the case was transferred to this Court and the hearing on the Motion was continued. [Dkt. Nos. 51, 52]. On September 14, 2023, Defendant brought a Motion for Partial Summary Judgement as to Plaintiffs' Third Claim premised on failure to reimburse Plaintiffs for necessary business expenses under Cal. Labor Code § 2802. [Dkt. No. 65]. On October 26, 2023, the Court heard oral argument on Plaintiffs' Motion for Class Certification and Defendant's Motion for Partial Summary Judgment. [Dkt. No. 67]. The Court denied Defendant's Motion for Partial Summary Judgment on December 7, 2023. [Dkt. No. 68].

## IV. LEGAL STANDARDS

Rule 23 confers "broad discretion to determine whether a class should be certified, and to revisit that certification throughout the legal proceedings before the court." *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005). Rule 23 is the "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (citation omitted). To justify departure from the rule, a class representative must be part of the class and possess the same interest and suffer the same injury as fellow class members. *Id*. (citation omitted); *accord Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979 (9th Cir. 2011).

A motion for class certification involves a two-part analysis. First, the plaintiffs must demonstrate that the proposed class satisfies the requirements of Rule 23(a): (1) the members of the proposed class must be so **numerous** that joinder of all claims would be impracticable; (2) there must be questions of law and fact **common** to the class; (3) the claims or defenses of the representative parties must be **typical** of the claims or defenses of absent class members; and (4) the representative parties must fairly and **adequately** protect the interests of the class. Fed. R. Civ. P. 23(a). The plaintiffs may not rest on mere allegations, but must provide facts to satisfy these requirements. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304, 1309 (9th Cir. 1977) (citing *Gillibeau v. Richmond*, 417 F.2d 426, 432 (9th Cir. 1969)).

Second, the plaintiffs must meet the requirements for at least one of the three subsections of Rule 23(b). Rule 23(b) defines three different types of classes. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2012). Here, Plaintiff seeks certification under Rules 23(b)(3). Motion at 21. Rule 23(b)(3), which concerns monetary relief, requires the court to find that "questions of law or fact common to class members **predominate** over any questions affecting only individual members" and "that a class action is **superior** to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added).

The plaintiffs bear the burden of demonstrating that Rule 23 is satisfied. *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266

(2001). The district court must rigorously analyze whether the plaintiffs have met the prerequisites of Rule 23. *Dukes*, 564 U.S. at 350 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). The district court need only form a "reasonable judgment" on each certification requirement "[b]ecause the early resolution of the class certification question requires some degree of speculation." *Gable v. Land Rover N. Am., Inc.*, No. 07-CV-0376-AG-RNB, 2011 WL 3563097, at *3 (C.D. Cal. July 25, 2011) (citation omitted); *see also Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975). This may require the court to "'probe behind the pleadings before coming to rest on the certification question,'" and the court "'*must* consider the merits' if they overlap with Rule 23(a)'s requirements." *Wang v. Chinese Daily News*, 709 F.3d 829, 834 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 351); *accord Ellis*, 657 F.3d at 983.

## V.   DISCUSSION

Plaintiffs' Motion seeks class certification of claims against Defendant for violation of California Labor Code and related regulations, including: (i) failure to pay wages for missed meal periods; (ii) failure to pay wages for missed rest periods; (iii) failure to reimburse business expenses; (iv) failure to provide accurate, itemized wage statements; and (v) waiting time penalties. Motion at 3. The latter two violations are derivative of the former three, and therefore the Court focuses on the propriety of classwide adjudication for the meal break, rest break, and reimbursement claims. *Id*. at 3 n.2.

### A.  Rule 23(a) Prerequisites

The Court turns first to the requirements of Rule 23(a), colloquially labeled numerosity, commonality, typicality, and adequacy.

#### a.  Numerosity

Rule 23(a)(1) requires that a class be sufficiently numerous such that it would be impracticable to join all members individually. There is no set number required to satisfy the numerosity requirement; the court must examine the specific facts of each case. *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Broadly, however, "courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (citation omitted).

Here, Plaintiffs' proposed class includes over 5,000 putative members. *See* Motion at 17. And because Menzies' provides cell-phones only to certain managers and supervisory personnel, *id*. at 18, the size of Plaintiffs' proposed subclass for the Section 2802 reimbursement claim will be of similar scale. Joinder of thousands of members would be prohibitively difficult. Therefore, the Court finds Plaintiffs' proposed class satisfies the numerosity requirement of Rule 23(a)(1).

### b. Commonality

Rule 23(a)(2) requires that questions of law or fact be common to the class. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). The common question "must be of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Dukes*, 564 U.S. at 350.

Menzies argues that Plaintiffs cast too wide a net with their proposed class. Menzies explains that the proposed class includes dozens of job classifications, some of which have predictable schedules that are unaffected by the operational realities of airline service and others of which get significant "down time" as a result of their job function. *See* Defendant Menzies Aviation (USA), Inc's Opposition to Plaintiffs' Motion for Class Certification ("Opp.") [Dkt. No. 50] at 5-6, 9. Defendant also takes issue with the fact that the class covers multiple airports in California because employees' experiences arguably vary based on the size of each airport and number of flights serviced there daily. Opp. at 2, 12. These differences, Menzies argues, impede the Court from adjudicating a common question of law or fact with respect to Plaintiffs' claims.

The Court disagrees. The commonality requirement does not "mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (emphasis in original); *accord Dukes*, 564 U.S. at 359. Plaintiffs' claims ask whether Menzies' policies and practices—driven by the nature of its operations—violate California labor law relating to employee meal and rest breaks, premium wages, and expense reimbursement. The commonality requirement is met because the class action will resolve issues central to the validity of the claims,

including (i) whether Menzies had a common practice of not paying employees meal and rest break premiums when compliant meal or rest breaks were not provided; (ii) whether Menzies' procedures by which employees receive meal and rest break premiums comply with the law; and (iii) whether use of employees' personal cell phones was necessary to perform their duties. As discussed further in the predominance inquiry, *infra* IV.B.a., each of Plaintiffs' claims requires the resolution of a question of law or fact that can (and should) be decided on a classwide basis.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same source of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Castillo v. Bank of Am., N.A.*, 980 F.3d 723, 729 (9th Cir. 2020) (citation omitted). "[C]lass certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon*, 976 F.2d at 508 (citation omitted).

Here, the Court finds the representative parties meet the typicality requirement of Rule 23. Class members share common injuries, including lack of compensation for non-compliant breaks and lack of reimbursement for necessary use of their personal cell phone at work. There is no evidence Amaya or Silva were injured based on unique conduct or that the other class members were injured by a different course of conduct.

Defendant challenges the typicality and adequacy of Plaintiff Amaya on the ground that she is subject to a unique defense regarding arbitration. According to Defendant, "[v]irtually all" the members of the class signed a mandatory arbitration agreement covering their claims in this case. Opp. at 3 ("Virtually all of Menzies' California non-exempt employees are subject to the ADR Policy—including *both* Plaintiffs and *every one* of the declarants relied upon by Plaintiffs in support of their Motion."). However, Menzies argues that Amaya is subject to a unique defense because her

job classification falls outside the Supreme Court's decision in *Southwest Airlines Co. v. Saxon*. 596 U.S. ___, 142 S. Ct. 1783 (2022). The Supreme Court in *Saxon* held that airplane cargo loaders and ramp supervisors fall within a "class of workers engaged in foreign or interstate commerce" under § 1 of the Federal Arbitration Act (FAA) and are thus exempt from its scope. The airplane cargo loaders and ramp supervisors in *Saxon*, therefore, could not be compelled to arbitration. As applied here, *Saxon* dictates that Menzies' employees who are "engaged in foreign or interstate commerce" cannot be compelled to arbitration and may proceed with their claims in federal court.

Menzies concedes that its employees in the Ramp Agent classification fall directly under the scope of *Saxon* and thus may proceed with these claims in federal court. Opp. at 3 n.1. But Menzies believes that every other Menzies job classification is not subject to *Saxon* and therefore should be compelled to arbitration. But in so arguing, Menzies illustrates why the arbitration defense is not "unique" to Amaya. Because virtually every Menzies employee in California is subject to Menzies' arbitration agreement, *id*. at 3, the question of whether such arbitration agreements fall under the Federal Arbitration Act ("FAA") exemption for "contracts of employment of … any … class of workers engaged in foreign or interstate commerce," 9 U.S.C. § 1, presents a common question of law that is suitable for classwide adjudication. In other words, Amaya is well positioned to represent the interests of those Menzies employees who do not unambiguously fall under *Saxon*.

On a related note, the Ninth Circuit has held that a named plaintiff who has *not* signed an arbitration agreement cannot represent a class that includes people who *have* signed arbitration agreements. *See Boumaiz v. Charter Commc'ns LLC*, 2021 WL 2189481, at *6 (C.D. Cal. May 19, 2021) ("As this Court has previously held, Ninth Circuit precedent forecloses the viability of the proposition that a named plaintiff who has not signed an arbitration agreement can represent a class that includes persons who have signed arbitration agreements; in that scenario, a defendant has defenses against class members who have signed arbitration agreements that the named plaintiff has no standing to oppose on their behalf."). But that is not the situation here. The fact that Amaya and Silva signed arbitration agreements puts them in the *same* position as virtually every Menzies employee in California, *see* Opp. at 18, and gives them the capacity and willingness to prosecute the issue vigorously on behalf of the class.

### d. Adequacy

Rule 23(a)(4) requires that the representative party "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is grounded in constitutional due process concerns: 'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" *Evans v. IAC/Interactive Corp.*, 244 F.R.D. 568, 577 (C.D. Cal. 2007) (quoting *Hanlon*, 150 F.3d at 1020). A named plaintiff satisfies the adequacy test if she has no conflict of interest with other class members and if the named plaintiff will prosecute the action vigorously on behalf of the class. *Ellis*, 657 F.3d at 985.

Menzies argues Amaya and Silva cannot adequately represent the class because their knowledge and experience is limited to their positions (passenger service agent and ramp agent, respectively) and limited to the airport at which they work (LAX). Menzies also specifically argues that Silva is inadequate because he admitted during his deposition that he had never read the First Amended Complaint, which added him as a named plaintiff. Opp at 25; *see* Silva Depo. 66:11-68:5.

Menzies' concerns are exaggerated. "The threshold knowledge required of the class representatives is low. [A] party must be familiar with the basic elements of her claim, and will be deemed inadequate only if she is startlingly unfamiliar with the case. It is not necessary that a representative be intimately familiar with every factual and legal issue in the case." *DuFour v. Be LLC*, 291 F.R.D. 413, 419 (N.D. Cal. 2013) (citation omitted); *see also Edwards v. First Am. Corp.*, 289 F.R.D. 296, 301 (C.D. Cal. 2012) ("As previously stated by this Court, however, 'the Ninth Circuit places little importance on the named plaintiff's own legal knowledge and experience.'"); *Andrade v. Am. Apparel, Inc.*, No. 10-CV-06352-MMM-PJW, 2011 WL 13130706, at *11 (C.D. Cal. Mar. 15, 2011) ("Plaintiffs, however, 'do[ ] not need to have special knowledge of the case or possess a detailed understanding of the legal or factual basis on which a class action is maintained' in order adequately to supervise their attorneys."). By their involvement through declarations and testimony at their depositions, Amaya and Silva have demonstrated sufficient involvement in the case and knowledge of their claims to assure the Court that they are qualified to serve as class representatives. *See, e.g.*, Declaration of C. Joe Sayas, Jr., ¶¶ 5-12; *see generally* Amaya Decl.; Silva Decl.

**B. Rule 23(b)(3)**

Having considered the prerequisites of Rule 23(a), the Court now addresses whether the proposed class falls within the requirements of Rule 23(b)(3). Subdivision (b)(3) encompasses those cases "in which a class action would achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231 (1997)). A class may be certified under this subdivision where common questions of law and fact predominate over questions affecting individual members, and where a class action is superior to other means to adjudicate the controversy. Fed. R. Civ. P. 23(b)(3).

**a. Predominance**

The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). While similar to commonality, the inquiry requires a heightened showing that facts and issues common to the class predominate over any individual issues that may be present. Fed. R. Civ. P. 23(b)(3); *Amchem Prods.*, 521 U.S. at 624, 117 S.Ct. 2231. But Rule 23(b)(3) requires a showing that common questions predominate, "not that those questions will be answered, on the merits, in favor of the class." *Amgen*, 568 U.S. at 459, 133 S.Ct. 1184. In assessing predominance, the court "is limited to resolving whether the evidence establishes that a common question is *capable* of classwide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 666–67 (9th Cir. 2022) (emphasis in original), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, 143 S. Ct. 424, 214 L. Ed. 2d 233 (2022). A court does not have "license to engage in free-ranging merits inquiries at the certification stage" and therefore "cannot decline certification merely because it considers plaintiffs' evidence relating to the common question to be unpersuasive and unlikely to succeed in carrying the plaintiffs' burden of proof on that issue." *Id.* at 667.

### i. Meal Breaks

Plaintiffs' first cause of action alleges violation of Cal. Labor Code §§ 226.7, 512 and 8 Cal. Code Regs. § 11090, ¶ 11. Under California law, "[i]f an employer fails to provide an employee a meal or rest or recovery period in accordance with state law ... the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided." Cal. Lab. Code § 226.7(c). Plaintiffs allege Defendant failed to pay employees the statutorily-required Meal Premiums for noncompliant meal breaks. In support of their claim, Plaintiffs offer Menzies' own time records for the period in question and corresponding pay records—through which expert analysis can identify late meal breaks, incomplete meal breaks, or a missed meal breaks and determine whether the employee was paid a Meal Premium. The California Supreme Court held in *Donohue v. AMN Services, LLC* that time record evidence creates a presumption of liability for a meal break violation like those Plaintiff asserts. 11 Cal. 5th 58 (2021). "With a full dataset of payroll data and timekeeping records, meal break premiums owed to putative class members for missed and shortened meal breaks can be assessed on a classwide basis, and will not necessarily require individual inquiry into the circumstances surrounding each and every employee's work shifts and meal break periods." *Morgan v. Rohr, Inc.*, No. 20-CV-574-GPC-AHG, 2022 WL 974334, at *17 (S.D. Cal. Mar. 31, 2022). Absent an affirmative defense, therefore, plaintiffs may prove liability for a meal period violation on a classwide basis through time record and payroll evidence.[1]

Menzies argues the claim is nonetheless inappropriate for class certification because the Court must consider *why* the employee missed the meal period, such as by voluntarily waiving the meal period. After *Donohue*, "[a]n employer's assertion that … the employee waived the opportunity to have a work-free break[] is not an element that a plaintiff must disprove as part of the

---

[1] The Court also notes that Plaintiffs' theory on meal violations appears to include a question of whether Menzies' "Meal Premium Payment Policy" is facially unlawful, which can be addressed on a classwide basis. *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1033 (2012) ("Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment.").

plaintiff's case-in-chief. Rather, ... the assertion is an affirmative defense, and thus the burden is on the employer, as the party asserting waiver, to plead and prove it." *Donohue*, 11 Cal. 5th at 74 (quoting *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1053 (2012) (Werdegar, J. concurring)).[2] Instead, it is the employer's burden to plead and prove that the employee was advised of her legal right to take a meal period, that a compliant meal period was offered, and that the employee voluntarily decided not to take the meal period. *Id*. Menzies' point is that this burden can only be met with individualized evidence—causing individualized issues to predominate over those common to the class.

"[W]hether in a given case affirmative defenses should lead a court to approve or reject certification will hinge on the manageability of any individual issues." *Brinker*, 53 Cal. 4th at 1054 (Werdegar, J. concurring). Defendant is adamant that it be given the opportunity to prove waiver as to each individual missed meal break of each of the thousands of purported class members.[3] This is not necessary. The Court agrees with the California Supreme Court in *Donohue* and the several other courts that have addressed this issue since. "Representative testimony, surveys, and statistical analysis, along with other types of evidence, 'are available as tools to render manageable determinations of the extent of liability.'" *Donohue*, 11 Cal. 5th at 77 (citing *Brinker*, 53 Cal.4th at 1054); *accord Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal. App. 5th 685, 722, 292 Cal. Rptr. 3d 1, 30 (2022), *aff'd* 2024 WL 188863 (Cal. Jan. 18, 2024).

---

[2] This presumption is derived from the "employer's duty to maintain accurate records of meal periods." *Donohue*, 11 Cal. 5th at 76 (citation omitted). "To place the burden elsewhere would offer an employer an incentive to avoid its recording duty and a potential windfall from the failure to record meal periods." *Id*. at 75.

[3] Menzies also tries to argue individual issues predominate because, for every declarant Plaintiff proffers attesting to a meal period violation, Menzies can offer a "competing declarant with the opposite experience." Opp. at 22. This argument both ignores *Donohue* and is beside the point. Declarations that some employees were able to take compliant meal periods or received premium meal payments cannot prevent the Court from finding presumptive violations reflected in Menzies' own time records. Nor do Menzies' competing declarations viewed at an individual level, as Menzies urges, serve to rebut the presumption of violations. To state the obvious, that Menzies complied with the law in one instance says nothing about whether it complied in another instance. While representative evidence of Menzies' practices and compliance may be relevant in a class setting, these declarations do nothing to defeat certification.

### ii. Rest Breaks

Plaintiffs also assert a claim for failure to pay Rest Premiums for missed rest periods.[4] According to Plaintiffs, the operational realities of the aviation industry and Menzies' common practice of denying class members the opportunity to take rest breaks until all work has been completed result in routine violation of employees' right to a rest break. Further, Plaintiffs claim Menzies failed to adequately notify employees of their right to be paid a premium wage for each missed rest break and that Menzies lacked a mechanism by which Rest Premiums would be paid for missed breaks. *See* Motion at 20.

Unlike Plaintiffs' meal break claim, there are no time records on which Plaintiffs can rely to establish presumptive violations because employees do not clock in and out when taking rest breaks. However, common issues still predominate with respect to rest breaks. First, the claim challenges whether Menzies had an unofficial rest break policy through custom and practice that violated its own facially compliant written policy. This presents classwide, not individual, questions. Second, the claim asks whether Menzies even had a mechanism or procedure by which Rest Premiums were paid.[5] Whether such a mechanism existed and whether that mechanism is sufficient under the law both ask common questions suitable for classwide determination. *See Chacon v. Express Fashion Operations LLC*, 2021 WL 4595772, at *9 (C.D. Cal. June 14, 2021); *Brinker*, 53 Cal. 4th at 1033.

### iii. Section 2802 Reimbursement

Plaintiffs' third cause of action alleges that Menzies violated California law by failing to

---

[4] Plaintiffs' second claim is premised on violation of Cal. Labor Code §§ 226.7 and 8 Cal. Code Regs. § 11090, ¶ 12.

[5] In response to Plaintiffs' theory that there was no mechanism to request rest breaks premiums, Menzies' submitted employee declarants who stated they "[knew] to report [missed rest breaks] to [their] manager" to receive a rest period premium. *See* Declarations of Employees in Support of Defendant Menzies Aviation (USA), Inc.'s Opposition to Plaintiffs' Motion for Class Certification ("Menzies' Employee Declarations") [Dkt. No. 50-4], Declaration of Kristianne Del Mundo ¶ 19; *id*., Declaration of Phuong Do ¶ 19; *id*., Declaration of Fangia Finau ¶ 21. (Notably, none of the Menzies' Employee Declarants stated that they in fact received a rest break premium.) Even if Menzies' "policy" was to pay out Rest Premiums reported to managers, Plaintiffs' could challenge the legality of shifting the burden to request a premium onto the employee. *See Brinker*, 53 Cal. 4th at 1033.

14

reimburse employees for expenses incurred through the use of their personal cell phones to perform their job functions. California Labor Code § 2802 provides, "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer …." The question central to establishing a § 2802 reimbursement violation is whether the employees' expenses—here, expenses associated with use of their personal cell phones—were necessary to discharge their duties or incurred at their employer's direction. "[W]hether it is 'necessary' for [employees] to use their personal cell phones when discharging [their] duties is a common contention that is very 'capable of classwide resolution.'" *Sinohui v. CEC Ent., Inc.*, No. 14-CV-2516-JLS-KK, 2016 WL 3475321, at *11 (C.D. Cal. Mar. 16, 2016) (citing *Dukes*, 131 S. Ct. at 2551) (certifying class for claim employer failed to reimburse employees for on-the-job use of their personal cell phones and rejecting defendant's argument that the claim rested on individualized factors such as "the purpose of the calls or texts" and "specific statements made by their individual superiors"). Menzies submitted employee declarations saying employees voluntarily chose to use their personal cell phone on the job. *See* Opp. at 17; *see generally* Menzies' Employee Declarations. Whether an employee used their personal cell phone voluntarily, Menzies argues, is an individual question that predominates over any class issues. But whether the employee's use is voluntary is not the test; the Court must consider whether it was necessary to performing employees' duties. This can be examined for each job classification, rather than each individual class member.

Defendant also argues that individualized inquiries would be needed to determine which employees were *not* provided company-issued cellphones. Opp. at 17. But Menzies concedes that only a limited number of company-issued phones were issued, and only for supervisory personnel, so the court fails to see how this issue precludes certification. Moreover, the Court need not tally the personal phone use of each employee at this stage. "Whether certain putative class members are ultimately entitled to damages is a separate question …." *Sinohui*, 2016 WL 3475321, at *13; *Yokoyama v. Midland Nat'l Life Ins. Co*, 594 F.3d 1087, 1094 (9th Cir. 2010) (explaining that, to the extent individualized questions arise when calculating damages, the Ninth Circuit has held that "[i]n this circuit, ... damage calculations alone cannot defeat certification"). Therefore, the Court finds

15

common issues predominate as to all three of Plaintiffs' claims.

### b. Superiority

Finally, the Court considers whether a class action would be superior to individual suits. "The purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). "A class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority analysis, including: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

The first factor is the interest of each member in "individually controlling the prosecution or defense of separate actions." Fed. R. Civ. P. 23(b)(3)(A). Where—as here—"damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action." *Zinser*, 253 F.3d at 1190 (citation omitted). Often, workers are unlikely to pursue unpaid wage claims of this nature because the costs of individual litigation may exceed the value of individual recovery. In many cases, class adjudication is the only opportunity these workers will have to recover for the wrongs allegedly suffered.

The second factor concerning the extent of related litigation that has already begun "is intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits." *Id*. at 1191 (citation omitted). As neither party has alerted the Court to the existence of any other pending litigation despite thousands of class members, this factor weighs in favor of class adjudication as the superior method of litigating the controversy.

The third factor asks the Court to evaluate the desirability of concentrating claims in this particular forum. For example, courts sometimes find it undesirable to hear large, nationwide class

actions in a particular forum when the potential plaintiffs, witnesses, and evidence are located across the country. *Id.* at 1191–92 (citing *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653 (N.D. Cal. 1996)). Here, Plaintiffs' proposed class is comprised only of California-based employees. Defendant has operated in the State of California, including extensively within the geographical boundaries of this District. Menzies' raises no argument against the desirability of concentrating claims in this particular forum, nor does the Court see one.

Finally, under the fourth factor, "when the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." *Id*. at 1192 (citation omitted). "If each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Id*. For the reasons discussed with respect to commonality and predominance, the likely difficulties in managing this class action do not outweigh the benefits of classwide adjudication.

The Court concludes a class action is superior to other available methods for fair and efficient adjudication of the controversy.

## VI.  CONCLUSION

For the reasons stated herein, Plaintiffs' Motion for Class Certification is ***granted***.

Dated: February 8, 2024

Hernán D. Vera
United States District Judge