1
2
3
4

C. JOE SAYAS, JR. (CA Bar No. 122397)
KARL P. EVANGELISTA (CA Bar No. 250685)
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 2000
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

CHRISTOPHER WARD
(SBN 238777)
**FOLEY & LARDNER LLP**
555 S. Flower Street, Suite 3300
Los Angeles, California 90071-2418
Tel.: 213.972.4500
Fax: 213.486.0065

5
6
7
8

DAVID P. KING (CA Bar No. 136765)
**KING CHENG MILLER & JIN, LLP**
150 N. Santa Anita Ave., Suite 410
Arcadia, California 91006
Telephone: (626) 304-9001
Facsimile:  (626) 304-9002

KEVIN JACKSON (SBN 278169)
**FOLEY & LARDNER LLP**
11988 El Camino Real, Suite 400
San Diego, California 92130-2594
Tel.: 858.847.6700
Fax: 858.792.6774

9
10

Attorneys for Plaintiffs

Attorneys for Defendant
MENZIES AVIATION (USA), INC.

11

**UNITED STATES DISTRICT COURT**

12

**CENTRAL DISTRICT OF CALIFORNIA**

13
14
15
16

DORA PATRICIA AMAYA, an
individual; and ANIBAL SILVA, an
individual; on behalf of themselves and
others similarly situated,

17

Plaintiffs,

18

19
20
21

vs.

MENZIES AVIATION (USA), INC., a
Delaware corporation; and DOES 1
through 10, inclusive,

22

Defendants.

23
24
25
26

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:22-cv-05915-HDV-MARx

CLASS ACTION

**JOINT MEMORANDUM OF POINTS
AND AUTHORITIES RE:
PLAINTIFFS' MOTION FOR
PARTIAL SUMMARY JUDGMENT**

Date:       June 20, 2024
Time:      10:00 a.m.
Judge:     Hon. Hernán D. Vera
Ctrm:      5B, 5th Floor,
                First Street U.S. Courthouse

27
28

---

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. 6

PLAINTIFFS' OPENING BRIEF ........................................................ 10

I.    INTRODUCTION ......................................................................... 10

II.   PERTINENT UNDISPUTED FACTS AND PROCEDURAL HISTORY. ........... 11

     A.   Menzies Knew of its Right to Arbitrate ............................. 11

     B.   Menzies Elected to Participate in this Class Action. ...................... 12

     C.   Menzies Willingly Provided its Input in the Management of This Case. .. 12

     D.   Menzies Pursued Expansive Discovery and Sought Affirmative Relief from this Court to Regulate the Discovery Process in this Action. ............. 13

     E.   Without Regard to Whether the Claims of Some Employees are Unambiguously Excluded from Arbitration under *Saxon*, Menzies Sought to Defeat Class Certification of all Employees' Claims . .............................. 17

     F.   Menzies Continued to Provide its Input in the Management of this Class Action. ................................................................... 18

     G.   Menzies Sought This Court's Order to Dismiss the Wage Reimbursement Claims of Plaintiffs and Class Members ........................... 19

III.  MENZIES  WAIVED ITS CONTRACTUAL RIGHT TO COMPEL ARBITRATION AND ITS WAIVER WARRANTS SUMMARY ADJUDICATION OF ITS ARBITRATION DEFENSE AS A MATTER OF LAW. ................................................................... 20

     A.   FED. R. CIV. PROC. 56(a) Authorizes Summary Adjudication of Affirmative Defenses ................................................................ 20

B.    By its own Actions and Inaction, Menzies Waived its Contractual Right to Arbitration. ................................................................................. 21

      1.    Menzies  Knew of Its Contractual Right to Arbitration Since at Least September 8, 2022, When Menzies Informed Plaintiffs' Counsel that Plaintiff Amaya is Party to a Purported Arbitration Agreement. ..... 22

      2.    Menzies Has Acted in Many Ways that are Inconsistent with its Existing Right to Arbitration. ................................................... 23

      3.    Allowing Menzies to Maintain its Arbitration Defense Prejudices Plaintiffs and Class Members ................................................. 29

IV.  CONCLUSION. ............................................................................... 30


DEFENDANT'S OPPOSITION BRIEF ........................................................ 32

I.    INTRODUCTION ............................................................................ 32

II.  PERTINENT FACTS AND PROCEDURAL HISTORY ....................................... 33

    A.    Menzies Has Maintained The ADR Policy And Consistently Enforced Its Arbitration Rights For More Than A Decade ................................... 33

    B.    The *Lopez* Litigation And The Ninth Circuit's Ruling On How *Saxon* Applies To Menzies Is Critically Important To This Case ........................... 33

    C.    Plaintiffs' Strategic Naming Of Ramp Agents As Parties To Avoid Arbitration Is Why Menzies Has Not Burdened The Court With A Motion To Compel Pending *Lopez*'s Outcome ............................................. 35

    D.    Menzies Has Continued To Invoke Arbitration In This Case's Key Pleadings And Reports Simultaneous With Its Arguments In *Lopez* .......... 37

    E.    Menzies Argued Its Arbitration Rights And Their Impact On Class Member Standing As A Key Barrier To Class Certification ...................... 38

JOINT MEMORANDUM RE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

F.     Menzies Brought Its Partial MSJ In Parallel To Class Certification Proceedings Addressing Arbitration For Purposes Of Efficiency ............... 38

G.     Only After Menzies Identified *Marriott* And Sought Relief From Certification Of A Class Consisting Of Thousands Without Standing To Participate Did Plaintiffs Claim Waiver ........................................... 39

III.   THE PARITES' ACTIONS DEMONSTRATE MENZIES' INTENTIONAL PRESERVATION OF ITS ARBITRATION RIGHTS AND CARE FOR JUDICIAL EFFICIENCY WHILE *LOPEZ* REMAINS PENDING ................... 40

A.     Plaintiffs' Strategy And Actions Have Significantly Dictated How Arbitration Has Affected This Case .................................................... 40

B.     The Significant Differences Between *Xerox* And *Salas* And The Facts Here Make Plain No Waiver Has Occurred ........................................ 42

C.     Addressing The Import Of Arbitration And Class Waivers At Certification Is Fully Consistent Retention Of Arbitration Rights ..................... 44

D.     Plaintiffs' Characterization Of Menzies' Actions As "Inconsistent" With Its Arbitration Rights Dodges The Full Context Of This Matter ................. 45

IV.   CONCLUSION. ........................................................................... 47


PLAINTIFFS' REPLY BRIEF ............................................................. 48

I.    INTRODUCTION ......................................................................... 48

II.   ARGUMENT. ............................................................................... 49

A.     Menzies Concedes the First Element of Waiver. ........................... 49

B.     Menzies Repeatedly Chose Not to Move for Arbitration. ............... 49

C.     Menzies' Misguided Focus on Plaintiffs' Actions Contravenes the *Morgan's* Instructions for Analyzing Waivers. .............................. 50

1.   Waiver is unilateral and focuses on Menzies' actions. ...................... 50

2.   Plaintiffs had no obligation to limit the proposed class as Menzies
asserts – its right to arbitrate was waivable and has been waived.... 51

D.   Menzies' Actions Outside this Case do not Avoid Waiver Here. ................ 51

E.   Menzies Misstates the Import of *Hill* in This Case. ......................................... 52

F.   The Pending Appeal in *Lopez* Does Not Excuse Menzies' Failure to
Timely Move for Arbitration. .............................................................................. 53

G.   Menzies' Claim of Futility is Unavailing. ......................................................... 54

H.   Menzies failed to preserve its right to arbitrate. ............................................... 55

I.   Menzies' lame excuses for its active participation in litigation do not defeat
the fact that it acted inconsistently with its right to arbitrate. ........................ 56

J.   Seeking judicial determination of arbitrable claims is inconsistent with the
right to arbitrate. ................................................................................................. 56

III.   CONCLUSION. ....................................................................................................... 57

# TABLE OF AUTHORITIES

**<u>Cases</u>**

*Alvarez v. Sheraton Operating Corp.,*
  Case No. 22-55729, 2023 WL 2491279 (9th Cir. 2023) ............................................ 28

*Archer v. Carnival Corp. & PLC,* No. 20-cv-04203,
  2020 WL 6260003 (C.D. Cal. Oct. 20, 2020)..................................................... 44

*Armstrong v. Michaels Stores, Inc.*,
  59 F.4th 1011 (9th Cir. 2023). .................................................... 20

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 321 (2011).......................................................... 32, 50

*Avecilla v. Live Nation Entm't, Inc.*,
  No. CV 23-1943 PA, 2023 WL 5354401 (C.D. Cal. 2023) ....................................... 44

*Berman v. Freedom Fin. Network, LLC*,
  400 F. Supp. 3d 964 (N.D. Cal. 2019) .......................................... 40

*Bogart v. RTW Retailwinds Acquisition LLC,* Case No. SACV 23-01268-CJC (DMFx),
  2024 WL 898925 (C.D. Cal. Feb. 14, 2024) ..................................... 28

*Diva Limousine, Ltd. v. Uber Tech., Inc.*,
  392 F. Supp. 3d 1074 (N.D. Cal 2019)...................................... 45

*Gau v. Hillstone Rest. Group, Inc.*,
  No. 20-CV-08250-SVK, 2021 WL 754536 (N.D. Cal. Feb. 26, 2021)..................... 40

*Hill v. Xerox Business Services, LLC*,
  59 F.4th 457 (9th Cir. 2023). ................................................. passim

*Hooper v. Advance America, Cash Advance Ctrs. of Missouri, Inc.*,
  589 F.3d 917 (8th Cir. 2009) ...................................................... 28, 49

*In re Marriott Int'l, Inc.*,
  78 F.4th 677 (4th Cir. 2023) ..................................................... passim

*In re Marriott Int'l Customer Data Sec. Breach Litig.*,
  345 F.R.D. 137 (D. Md. 2023)...................................................... 29

*In re Mirant Corp.*,

 613 F.3d 584 (5th Cir. 2010) ................................................................. 27, 49

*International Ship Repair and Marine Services, Inc. v. St. Paul Fire and Marine Ins.*

 *Co.*, 944 F.Supp. 886 (M.D. Fla. 1996) ....................................................... 20

*Iskanian v. CLS Transp.*,

 59 Cal. 4th 348 (2014) .................................................................................. 33

*Lawson v. Grubhub, Inc.*,

 13 F.4th 908 (9th Cir. 2021) ........................................................................ 43

*Lindsay v. Carnival Corp.*,

 No. C 20-982, 2021 WL 2682566 (W.D. Wash. June 30, 2021) ................ 44

*Little Traverse Bay Bands of Odawa Indians v. Snyder*,

 194 F.Supp.3d 648 (W.D. Mich. 2016) ....................................................... 20

*Martin v. Yasuda*,

 829 F.3d 1118 (9th Cir. 2016) .............................................................. passim

*Meyer v. Kalanick*,

 185 F.Supp.3d 448 (S.D.N.Y. 2016) ........................................................... 51

*Morgan v. Sundance, Inc.*,

 596 U.S. 411 (2022) ............................................................................... passim

*Nelson v. Insignia/Esg, Inc.*,

 215 F.Supp.2d 143  (D.D.C. 2002) .............................................................. 19

*Newirth v. Aegis Senior Communities, LLC*,

 931 F.3d 935 (9th Cir. 2019) ........................................................... 21, 23, 54

*O'Connor v. Uber Techs., Inc.*,

 904 F.3d 1087 (9th Cir. 2018) ..................................................................... 40

*Ortiz v. Randstad Inhouse Servs., LLC*,

 -- 4th -- (9th Cir. 2024) ................................................................................ 34

*Royal Air Props., Inc. v. Smith*,

 333 F.2d 568 (9th Cir. 1964) ....................................................................... 50

*Salas v. Toyota Motor Sales, U.S.A., Inc.*, ................. Case No. 2:15-cv-08629-HDV-E,
    2024 WL 606166 (C.D. Cal. Jan. 10, 2024), ...................................................... passim

*Schwarzchild v. Tse*,
    69 F.3d 293 (9th Cir. 1995) .......................................................................... 45

*Sequoia Benefits & Insurance Services, LLC v. Constantini*,
    553 F.Supp.3d 752 (N.D. Cal. 2021) ................................................................ 27

*Slaten v. Experian Information Solutions, Inc.*, Case No. CV 21-09045-MWF (Ex),
    2023 WL 6890757 (C.D. Cal. Sept. 6, 2023) ....................................... 24, 26, 28, 42

*Southwest Airlines Co. v. Saxon*,
    596 U.S. 450 (2022) .................................................................................. passim

*Van Ness Townhouses v. Mar Industries Corp.*,
    862 F.2d 754 (9th Cir. 1988) ........................................................................ 54

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. ___ (2022) .................................................................................. 33

**<u>Statutes</u>**

9 U.S.C. § 1 ................................................................................................ 11

Cal. Bus. & Prof. Code § 17200 ...................................................................... 10

Cal. Lab. Code § 226 .................................................................................... 10

Cal. Lab. Code § 226.7 .................................................................................. 10

Cal. Lab. Code § 512 .................................................................................... 10

Cal. Lab. Code § 2802 ......................................................................... 10, 18, 55

**<u>Rules</u>**

Fed. R. Civ. Proc. 23 ......................................................................... 40, 44, 54

Fed. R. Civ. Proc. 56(a) ................................................................................ 19

Fed. R. Civ. Proc. 56(g) ................................................................................ 19

Fed. R. Civ. Proc. 1 .................................................................................... 29

Local Rule 16-15.4 ................................................................................. 12, 27

JOINT MEMORANDUM RE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

**Regulations**

8 Cal. Code Regs. § 11090............................................................................. 10

**Other Authorities**

Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2737 (4th ed.) ..................................... 20

JOINT MEMORANDUM RE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1

## PLAINTIFFS' OPENING BRIEF

2

## I.   INTRODUCTION.

3
4
5
6
7
8
9

In this wage and hour class action, defendant employer Menzies Aviation (USA) Inc. ("Menzies") asserted an affirmative defense that purportedly requires all non-exempt employees to arbitrate their employment claims on an individual basis ("Arbitration Defense"). Despite knowledge of its contractual right to arbitrate at the outset, Menzies chose not to move to compel arbitration throughout this 19-month litigation. Instead, Menzies made a strategic choice to litigate the claims made against it by Plaintiffs and Class Members.

10
11
12
13
14
15
16
17
18
19

Menzies participated in this class action by, *inter alia*, a) filing Answers to Plaintiffs First and Second Amended Complaint; b) propounding and responding to extensive discovery which goes beyond the individual claims of named Plaintiffs and encompasses class action matters; c) participating in the adjudication of discovery disputes involving class information and asking relief from the Court to impose notice conditions and obligations on Plaintiffs to pay for the procedures, and to further require Plaintiffs to provide Class Members with certain disclosures; d) participating in meetings with counsel to jointly provide reports and stipulations to the Court on matters involving management of this class action; and e) seeking  merits determination and dismissal of Class Members' wage claims through its Motion for Summary Judgment.

20
21
22
23
24

By attempting to avail itself of the benefits of this federal judicial forum, including seeking far-ranging judicial relief against Class Members not obtainable in individual arbitrations, Menzies clearly sought to take advantage of litigating in federal court throughout this time. Menzies, therefore, engaged in a series of acts that are clearly inconsistent with its right to arbitrate.

25
26
27
28

For these and other reasons discussed below, including its failure to promptly move to compel arbitration, Menzies effectively waived its contractual right to arbitrate. Hence, Plaintiffs' Motion for Partial Summary Judgment with respect to Menzies' Arbitration Defense should be granted.

## II.     PERTINENT UNDISPUTED FACTS AND PROCEDURAL HISTORY.

This wage and hour class action alleges the following causes of action: 1) Failure to Pay Wages for Missed Meal Periods (*Cal. Lab. Code §§ 226.7 & 512*; *8 Cal. Code Regs. § 11090* (IWC Wage Order 9), ¶ *11*); (2) Failure to Pay Wages for Missed Rest Periods (*Cal. Lab. Code § 226.7*; *8 Cal. Code Regs. § 11090* (IWC Wage Order 9), ¶ *12*); (3) Failure to Reimburse Business Expenses (*Cal. Lab. Code § 2802*); (4) Failure to Provide Accurate, Itemized Wage Statements (*Cal. Lab. Code § 226*); (5) Waiting Time Penalties (*Cal. Lab. Code §§ 201, 202 & 203*); (6) Unfair Competition (*Cal. Bus. & Prof. Code §§ 17200 et seq.*); and (7) Civil Penalties Under the California Labor Code Private Attorney General Act (*Cal. Lab. Code §§ 2698 et seq.*).  It seeks recovery of wages and  penalties on behalf of named Plaintiffs and of approximately 5,462 non-exempt employees ("Class Members") against their employer, Defendant Menzies Aviation (USA) Inc ("Menzies").

The Complaint was filed on August 19, 2022, by Plaintiff Dora Patricia Amaya("Amaya"), a Passenger Service Agent employee, on behalf of herself and others similarly situated against her employer, Menzies. Statement of Uncontroverted Facts "SUF" 1. Plaintiffs filed the First Amended Complaint ("FAC") on August 30, 2022, which added Brayan Lozano Gonzales – a former Ramp Agent of Menzies – as a Plaintiff. SUF 2.

### A.     Menzies Knew of its Right to Arbitrate.

In a September 8, 2022 letter to Plaintiffs' counsel, Menzies' counsel stated that Ms. Amaya signed an Alternative Dispute Resolution Agreement ("ADR Agreement") that purportedly requires her  to submit all employment disputes to arbitration, and prohibits her from joining a class action or serving as a class representative. SUF 3. The letter did not state that Menzies would move the Court to compel arbitration, but stated its "trust" that Ms. Amaya would refrain from serving the Summons and Complaint and instead would arbitrate "if she desires to do so." SUF 4.

Plaintiffs' counsel responded in a September 29, 2022 letter which stated that

*Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 142 S.Ct. 1783 (2022)[1] invalidated Menzies' purported arbitration agreement. SUF 5. Menzies' counsel responded by requesting a two-week extension of time to file a responsive pleading, including a Motion to Compel Arbitration, as confirmed in an October 11, 2022 email. SUF 6.

### B.   Menzies Elected to Participate in this Class Action.

But Menzies did not file a motion in this action to compel Amaya to arbitrate. SUF 7. Instead, Menzies "elected", as it admitted in its recent Motion for Reconsideration, to file an Answer to the FAC, instead of moving to compel arbitration. SUF 8. Since it made its choice in 2022 to litigate Plaintiffs' claims in this judicial forum rather than in arbitration, Menzies continues to act consistently with that preferred litigation strategy until the present,

Menzies filed its Answer to the FAC on October 25, 2022. SUF 9. Menzies' Answer to the FAC includes a Twenty-Fourth Defense (Arbitration), which alleges that "Plaintiffs and the putative class they seek to represent are required to submit their claims to final and binding arbitration on an individual basis." SUF 10.

### C.   Menzies Willingly Provided its Input in the Management of This Case.

While stating an arbitration defense, Menzies did not ask leave of Court to be relieved from its  case management and discovery obligations as a party in this class action. Neither did it assert its intent to arbitrate. Instead, Menzies' counsel met-and-conferred and exchanged communications with Plaintiffs' counsel to discuss discovery and motion matters, as well as scheduling management, including a trial estimate, in this case. SUF 11.  From these discussions, the parties filed their "Joint Federal Rule of Civil Procedure 26(f) Report for Scheduling Conference on December 5, 2022. SUF 12. In this Joint Report, Menzies outlined its litigation plan to the Court: that it

---

[1] In *Saxon* the United States Supreme Court ruled that ramp agents who physically load and unload cargos are exempt from arbitration under §1 of the Federal Arbitration Act (9 U.S.C. § 1). Generally, any class of workers directly involved in transporting goods across state or international borders falls within § 1's exemption from arbitration.

"anticipate[d] filing a motion for summary judgment, or summary adjudication, on the issue of whether one or more of the claims asserted by Plaintiffs are preempted by an applicable collective bargaining agreement, among others." SUF 13. Menzies further represented to the Court that it did "not anticipate filing any motions regarding parties, claims, amended pleadings, venue, or other procedural matters." SUF 14.

Menzies further detailed its discovery plan in this case: that it "intend[ed] to conduct standard written discovery, including propounding interrogatories and document requests, as well as depositions of both named Plaintiffs." SUF 15. At no point did Menzies state any intent to file a motion to compel arbitration. SUF 16.

From this Court's list of ADR Procedures under Local Rule 16-15.4, Menzies elected ADR Procedure No. 1 which involves an appearance before a magistrate judge for settlement proceedings rather than ADR Procedure No. 3 – a private dispute resolution proceeding. SUF 17. Accordingly, the Court entered a Scheduling Order on December 16, 2022 which set discovery and motion schedules based on the parties report. SUF 18.

### D.   Menzies Pursued Expansive Discovery and Sought Affirmative Relief from this Court to Regulate the Discovery Process in this Action.

On December 2, 2022, Plaintiffs served Interrogatories requesting discovery of the names and contact information of all Class Members but Menzies objected. SUF 19. In a discovery dispute adjudicated before Federal Magistrate Margo A. Rocconi. Menzies sought the following relief from the Court: a) that the Court impose the *Belaire-West* notice and opt-out procedures that Plaintiffs must follow before Menzies provides the class information; b) that the Court order Plaintiffs to pay the costs of administering the notice and opt-out procedures; and c) that Plaintiffs' counsel be required to provide certain information or disclosures to Class Members if they

communicate with them.[2]  SUF 20.

On February 6, 2023, the Court denied Menzies' first two requests for relief, ordering Menzies to provide the class information without the Belaire-West notice, and denied Menzies' "Motion for Plaintiffs to pay the cost of the Belaire-West notice." SUF 21.  However, the Court partly granted Menzies' third request that Plaintiffs provide certain disclosures in its communications with Class Members.  *Id.*  Subsequently, Menzies' counsel met-and-conferred with Plaintiffs' counsel to jointly prepare and eventually filed a Stipulated Protective Order ("SPO").  SUF 22. The Magistrate granted approval of the parties' proposed SPO on February 24, 2023. *Id.*

Menzies' counsel coordinated with Plaintiffs' counsel in jointly preparing a Class Certification Dates Worksheet that contains the parties' agreed dates on class certification briefings, expert discovery cut-off, expert disclosure, and non-expert discovery cut-off. SUF 23.

In a rolling production until March 16, 2023, Menzies then produced voluminous time and pay records including extensive electronic data pertaining to approximately 5,462 Class Members. SUF 24. In communications with Class Members that followed, Plaintiffs' counsel incorporated the disclosures sought by Menzies and which were ordered by the Court. SUF 25.

---

[2] Menzies asked the Court to require Plaintiffs' counsel to include the following information in their communications with the employees: (1) inform putative class members at the outset that the member has a right not to communicate with counsel; (2) inform the putative class members that their refusal to speak with counsel will not prejudice their rights should the court certify the class; (3) keep a list of all employees who make it known that they do not wish to be contacted and preserve that list for the court; and (4) use the obtained contact information only for purposes of the class action. *See* Dkt. 28, at 4. Accordingly, the Court ordered the parties to prepare a proposed Stipulated Protective Order **which in effect granted Menzies' request requiring Plaintiffs to provide the information and comply with respect to items 1 to 3.**  The Magistrate ruled that Menzies' fourth request is unnecessary as a forthcoming Protective Order will already provide for that. Dkt. 28, 4-5.

Menzies participated in extensive discovery in terms of conducting and responding to various discovery modes within the context of this litigation. SUF 26. It sought information regarding claims not only of the named Plaintiffs but expanded its scope to include claims made on behalf of Class Members. SUF 27. Menzies FRCP Rule 34 Requests for Production of Documents, for instance, sought production of the following:

REQUEST FOR PRODUCTION NO. 22:

All DOCUMENTS that RELATE TO YOUR allegation in the COMPLAINT that DEFENDANT "continue[s] to fail to provide CLASS MEMBERS with all accrued wages and compensation within the time limits prescribed by the California Labor Code."[3]

---

[3] As a class action, Plaintiffs' operative Second Amended Complaint certainly alleges Labor Code violations against the class. Menzies' broad discovery sought production of other categories of documents relating to class claims. These included the following:

REQUEST FOR PRODUCTION NO. 5: All DOCUMENTS which RELATE TO the allegations of this action or the allegations in the COMPLAINT, including statements, declarations, affidavits, and electronic recordings, but excluding pleadings filed and served in this action.

REQUEST FOR PRODUCTION NO. 6: All DOCUMENTS which RELATE TO any COMMUNICATIONS between YOU and anyone other than YOUR attorneys regarding the allegations in the COMPLAINT.

REQUEST FOR PRODUCTION NO. 7: All DOCUMENTS which RELATE TO any written or recorded statements obtained or received by YOU concerning any of the allegations in the COMPLAINT.

REQUEST FOR PRODUCTION NO. 10: All DOCUMENTS that RELATE TO injuries for which YOU seek damages in the COMPLAINT.

REQUEST FOR PRODUCTION NO. 20:

SUF 28.

Within the framework of this litigation, Menzies took the depositions of Plaintiff Amaya on April 26, 2023, and Plaintiff Silva on May 19, 2023. SUF 34. In both depositions, Menzies inquired on matters pertaining to claims of the individual Plaintiffs as well as those other claims made on behalf of the class. SUF 35. In taking both Plaintiffs' depositions, Menzies inquired about their qualifications to serve as class representatives, their knowledge of Menzies operations, and company-wide employment practices as they apply to other employees and those outside the Plaintiffs' departments and locations. SUF 36. Meanwhile, Menzies produced its Rule 30(b)(6) designee and six of its managers and participated in multiple depositions noticed by Plaintiffs. SUF 37. Much time was spent between Menzies and Plaintiffs' counsel in meet-and-confer discussions on arranging managers' deposition dates and discussing the need to complete these depositions before the class certification briefings. SUF 38. Menzies continued to engage in meet-and-confer discussions on additional depositions and interrogatories that may exceed the number allowed under the Federal Rules of Civil Procedure. SUF 39.

Menzies also provided answers to Plaintiffs' First Set of Interrogatories, while its compliance with Plaintiffs Second Set of Interrogatories remains pending. SUF 40. Moreover, Menzies produced additional categories of documents other than the time and pay records in further response to Plaintiffs' Rule 34 Request. SUF 41. Menzies and Plaintiffs' counsel recently completed their prolonged pre-filing meet-and-confer communications on Menzies' compliance with Plaintiffs' Interrogatories and Requests for Production in compliance with Local Rule 37-1. SUF 42. On April 2, 2024, Plaintiffs emailed the parties' request for a Pre-Motion Telephonic Conference with the

---

All DOCUMENTS that RELATE TO YOUR allegation in the COMPLAINT that DEFENDANT has engaged in "unfair business practices."

SUF 29-33.

Magistrate Judge and provided three alternative times agreed between the parties, as required by the Judge's Procedures on Discovery Motions. SUF 43. If the discovery disputes are not resolved, Joint Stipulations regarding Plaintiffs' Motion to Compel Menzies' Compliance will be filed for adjudication by the Magistrate Judge. SUF 44.

After electing to file an Answer to Plaintiffs' First Amended Complaint, Menzies then stipulated with Plaintiffs to file the Second Amended Complaint ("SAC").[4] SUF 45. The SAC, filed on May 9, 2023, names Amaya and Anibal Silva ("Silva") as Plaintiffs on behalf of themselves and others similarly situated. SUF 46. Silva, another ramp agent, replaced Brayan Lozano Gonzalez as one of the named Plaintiffs. *Id.* Menzies again **elected** to file an Answer to the SAC on June 5, 2023, which similarly asserted a Twenty-Fourth Defense (Arbitration). SUF 47. Up to this point, Menzies still opted not to file a motion to compel arbitration. SUF 48.

### E.   <u>Without Regard to Whether the Claims of Some Employees are Unambiguously Excluded from Arbitration under *Saxon*, Menzies Sought to Defeat Class Certification of all Employees' Claims .</u>

Plaintiffs filed their Motion for Class Certification on May 22, 2023. SUF 49. In Menzies' June 12, 2023 Opposition to the Motion for Class Certification, it asserted:

"At all times during the class period, Menzies has maintained an Alternative Dispute Resolution mechanism by which employees waive their right to present various claims – including *all* the class claims at issue here – in any forum other than binding individual arbitration. [[Declaration of Talin Bazerkanian] ¶¶ 6-7, Ex. H.] Pursuant to that policy, each employee who enters into an ADR Agreement agrees that the ADR Policy 'prohibits you from joining

---

[4] Menzies entered into other stipulations with Plaintiffs that were submitted for this Court's approval that relate to management of this litigation. Menzies for instance, also stipulated with Plaintiffs to extend discovery and motion deadlines, and coordinated with Plaintiffs on jointly preparing a Class Certification Dates Worksheet that contains the parties agreed dates on class certification briefings, expert discovery cut-off, expert disclosure, and non-expert discovery cut-off. *See* Dkt. 19, Dkt. 32, Dkt. 34, Dkt. 36.

or otherwise participating in a class action or as a collective action representative, or otherwise consolidating a covered claim with the claims of others.' [*Id.*] Virtually all of Menzies' California non-exempt employees are subject to the ADR Policy – including *both* Plaintiffs and *every one* of the declarants relied upon by Plaintiffs in support of their Motion. [*Id.* ¶ 8.]" [5] SUF 50.

Despite the foregoing statement in its Opposition, Menzies failed to move the Court for an order compelling Amaya, Silva, or any of the declarants in support of Plaintiffs' Motion for class certification, or to assert its intent to file such motion to compel arbitration. SUF 53. Instead, Menzies opted to defeat class certification of all claims, whether arbitrable or not.

## F.   Menzies Continued to Provide its Input in the Management of this Class Action.

On July 10, 2023, the parties filed a Joint Case Management Statement per Court's Reassignment Order. SUF 54. In the Joint Case Management Statement, Menzies mentioned arbitration, although to the limited extent that it disputed Plaintiffs' claims as suitable for class treatment, including that "the vast majority of the putative class is subject to enforceable arbitration agreements." SUF 55. Notwithstanding this statement, Menzies again failed to move nor assert any intent to move the Court for an order compelling arbitration. *Id.*

On July 27, 2023, the parties filed a Joint Rule 26(f) Report for August 24, 2023 Scheduling Conference. SUF 56. Menzies restated that "the vast majority of the putative class is subject to enforceable arbitration agreements." SUF 57. Again, Menzies did not assert any intent to file a motion to compel arbitration, but reiterated its prior representation to the Court in 2022 that "Menzies does not anticipate filing any motions regarding parties, claims, amended pleadings, venue or other procedural

---

[5] Notwithstanding this assertion, Menzies acknowledges that its Ramp Agent employees, like Plaintiff Silva, are "not so disqualified" from serving as class representatives and or participating in class actions under *Saxon.* SUF 51.

matters." SUF 58. Menzies did, however, state that it "anticipate[d] filing a motion for summary judgment, or summary adjudication, on the issue of whether one or more of the claims asserted by Plaintiffs are preempted by an applicable collective bargaining agreement, among others." SUF 59. Menzies, like Plaintiffs, requested the Court for a jury trial on the class claims. SUF 60. Menzies reaffirmed its prior selection of ADR Procedure No. 1, indicating Menzies' choice to seek the assistance of a magistrate judge for settlement of the claims made against it in this litigation. SUF 61.

### G. Menzies Sought This Court's Order to Dismiss the Wage Reimbursement Claims of Plaintiffs and Class Members

On September 14, 2023, Menzies filed a Motion for Partial Summary Judgment. SUF 62. Menzies sought judgment from this Court to dismiss the entire Third Cause of Action in the SAC for failure to indemnify Plaintiffs and Class Members for business expenses they incurred in the discharge of their duties in violation of California Labor Code § 2802. SUF 63. An adjudication of this motion by this Court in Menzies' favor would have adversely impacted the wage reimbursement claims not only of named Plaintiffs but also of the entire class.[6] SUF 64. Here, it sought significant relief from this Court, moving to obtain the benefit of dismissing the entire class reimbursement claims against it, which Menzies otherwise would not have obtained in arbitration. *Id.* The Court denied Menzies' Motion for Partial Summary Judgment on December 7, 2023. SUF 65.

On February 8, 2024, the Court granted Plaintiffs' Motion for Class Certification, including with respect to Plaintiffs' Section 2802 reimbursement claim. SUF 66. On February 22, 2024, Menzies filed a motion for reconsideration of the Court's order granting Plaintiffs' motion for class certification. SUF 66. In its motion, Menzies asserts

---

[6] Menzies' sought for relief is so encompassing that if it had its way, there would not even be an opportunity at any arbitration to adjudicate similar claims of non-exempt employees whose claims may arguably be arbitrable.

**JOINT MEMORANDUM RE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

that "the Court certified a class containing thousands of individuals across dozens of job classifications that do not have standing to participate in class action litigation generally and this class specifically – including Plaintiff Amaya." SUF 68. Menzies did not, however, move nor assert an intent to file any motion(s) to compel any of those thousands of individuals to proceed to individual arbitrations.[7] SUF 69.

## III. MENZIES  WAIVED ITS CONTRACTUAL RIGHT TO COMPEL ARBITRATION AND ITS WAIVER WARRANTS SUMMARY ADJUDICATION OF ITS ARBITRATION DEFENSE AS A MATTER OF LAW.

### A. FED. R. CIV. PROC. 56(a) Authorizes Summary Adjudication of Affirmative Defenses.

 "A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a); *see also* FED. R. CIV. PROC. 56(g) (the court "may enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute and treating the fact as established in the case").

Partial summary judgment is an appropriate procedural mechanism for evaluating whether Menzies has waived its right to compel arbitration. *See Nelson v. Insignia/Esg, Inc.*, 215 F.Supp.2d 143, 147 (D.D.C. 2002) ("summary judgment is the proper procedural mechanism to use in evaluating whether the plaintiff must submit her claims to arbitration"); *Little Traverse Bay Bands of Odawa Indians v. Snyder*, 194 F.Supp.3d

---

[7] If the arbitration agreements were to be enforced, Menzies faces the burden of bearing the entire costs of "the arbitrator's fees and expenses and costs associated with the facilities for the arbitration," as well as its own attorney's fees, in each of those hundreds, if not thousands of individual arbitrations. *See* Dkt. 50-2, Page 41 of 45 ("Fees and Costs of Arbitration"). Understandably, a chosen strategy of continued litigation and seeking relief from this Court is beneficial to Menzies.

648, 651 (W.D. Mich. 2016) ("Courts may dismiss an insufficient defense on summary judgment, as whether a defense may lie is often 'solely [an issue] of law.'"); Wright & Miller, 10B Fed. Prac. & Proc. Civ. § 2737 (4th ed.) ("A partial summary judgment [of an affirmative defense] seems particularly appropriate and several courts have so ruled."), *citing inter alia International Ship Repair and Marine Services, Inc. v. St. Paul Fire and Marine Ins. Co.*, 944 F.Supp. 886, 891 (M.D. Fla. 1996) ("partial summary judgment may be used by the Court to dispose of affirmative defenses").

## B. By its own Actions and Inaction, Menzies Waived its Contractual Right to Arbitration.

"The right to arbitration, like other contractual rights, can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). The United States Supreme Court held in *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) that the rule of waiver does not require prejudice to the non-moving party, and that the **focus of analysis is on the actions of the person who holds the right**. In addition, a policy favoring arbitration "does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Id.* at 418. "The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.* Hence, "the burden for establishing waiver of an arbitration agreement is the same as the burden for establishing waiver in any other contractual context." *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1015 (9th Cir. 2023). After *Morgan*, the burden of showing waiver of the right to arbitrate "is no longer 'heavy.'" *Id.* at 1014.

Now, "the rule of waiver of the right to arbitrate … is nothing more than the general rule of waiver of a contractual right." *Hill v. Xerox Business Services, LLC*, 59 F.4th 457, 460 (9th Cir. 2023). "[A] party waives its right to compel arbitration when (1) it has knowledge of the right, and (2) it acts inconsistently with that right." *Id.*

"In the Ninth Circuit, '[t]here is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate; rather, [courts] consider the totality of the parties' actions.'" *Salas v. Toyota Motor Sales, U.S.A., Inc.*, Case No.

2:15-cv-08629-HDV-E, 2024 WL 606166 *7 (C.D. Cal. Jan. 10, 2024), *Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 940 (9th Cir. 2019), *abrogated on other grounds in Morgan*, 596 U.S. at 417-19. "Where the waiver of the right to compel arbitration implicates questions of arbitrability that 'affect the allocation of power' between a court and arbitrator, [the Ninth Circuit has] applied a federal law standard for determining whether an arbitration agreement has been waived." *Newirth*, 931 F.3d at 1121.

      **1.**     ***Menzies Knew of Its Contractual Right to Arbitration Since at Least September 8, 2022, When Menzies Informed Plaintiffs' Counsel that Plaintiff Amaya is Party to a Purported Arbitration Agreement.***

      There is no dispute that Menzies has known of its allegedly existing right to arbitrate since the outset of this case. Menzies' counsel wrote a September 8, 2022 letter to Plaintiffs' counsel in which Menzies informed Plaintiffs of their purported obligation to arbitrate the disputes alleged in the Complaint. SUF 3. It is even reasonable to assume that Menzies knew of this contractual right much earlier because it admits that "virtually all of Menzies' California non-exempt employees are subject to the ADR Policy." SUF 50; *see* Dkt. 50, Page 10 of 23, at lines 6-15.

      There was never any impediment to Menzies timely filing a motion to compel arbitration if it actually intended to exercise that right. Nor can Menzies persuasively contend that it could not file a motion to compel arbitration until after the class was certified, when Menzies knew who the class members are. First, the Ninth Circuit rejected the argument that it is not possible to waive the right to arbitrate before the class is certified: "[W]e have never suggested that for waiver purposes, knowledge of an existing right to arbitrate requires a present ability to move to enforce an arbitration agreement." 59 F.4th at 469. Second, Menzies itself asserted that it intended to respond to the FAC in 2022 with a "motion to compel arbitration," but then it "elected" not to file it after all. Third, Menzies knew in 2022 that Amaya was supposedly bound by an

arbitration agreement (SUF 3), but even now Menzies has failed to move to compel her – or anyone else – to arbitrate.

### 2. Menzies Has Acted in Many Ways that are Inconsistent with its Existing Right to Arbitration.

A party waives the right to compel arbitration when it makes a "strategic choice to engage the judiciary for resolution of the class claims rather than to obtain a resolution from an arbitrator" (*Hill*, 59 F.4th at 477). This is precisely what occurred here. At the outset, with full knowledge of its right to arbitrate against Amaya, Menzies elected to file its Answer to the FAC, and equally elected not to move for arbitration. *See* SUF 3-7. Menzies' overall conduct throughout this action reveals the pursuit of its preferred litigation strategy in an effort to take advantage of and benefit from litigating in federal court. Menzies has continued and continues to act in many other ways that are inconsistent with a right to compel arbitration.

**First**, Menzies filed its Motion for Partial Summary Judgment seeking merits determination in effort to dismiss Plaintiff's entire Third Cause of Action for failure to indemnify Plaintiffs and other Class Members for expenses incurred during the performance of their job duties, in violation of Cal. Labor Code § 2802. SUF 62-64; Dkt. 65. "[A]ctively litigating" the merits through the filing of a motion for partial summary judgment "most clearly" shows "a tactical choice to resolve the claims judicially" (*Hill*, 59 F.4th at 473, 476), and it is therefore "most instructive" on the waiver issue (*Salas*, 2024 WL 606166 *7).  Here, Menzies argued that federal preemption under the Labor Management Relations Act, specifically the employees' alleged failure to abide by the CBA, bars the employees' reimbursement claims. Menzies represents to the Court that "virtually all the non- exempt employees performing services provided directly to airline customers are represented by one of the several unions at Menzies, all pursuant to a series of collective bargaining agreements." Dkt 65-1, at 3;6-10.  Had Menzies' preemption argument been sustained, therefore, it would have foreclosed the claims of **all** Class Members.

In its Motion, Menzies strongly argued not only against the merits of the claims made on behalf of Plaintiffs, but also of **all** Class Members. Menzies cast an overly wide net of remedies against phone reimbursement claims of all employees, without even distinguishing whether these claims are arbitrable or not.[8] Dkt. 65-1.

Here, as in *Hill*, if Menzies's motion for partial summary judgment had been successful, "it would have struck an arrow through the heart of all class members' claims" for reimbursement for the business use of their personal cell phones. *See Hill*, 59 F.4th at 476. As mentioned, such a hugely beneficial outcome for Menzies could not have been a relief it could have obtained in individual arbitrations. Menzies knew it is a result that can aggressively be pursued and obtained only in court. This is "clear" evidence of a "strategic choice to engage the judiciary for resolution of the class claims rather than to obtain a resolution from an arbitrator." *Id.* at 477.

With focus on its conduct, Menzies "knowingly decided to defer its right to compel arbitration to avail itself of the benefits of the federal court forum, an intentional action inconsistent with its known right to arbitration." *Newirth*, 931 F.3d at 942.

**Second**, Menzies actively participated in submission of Joint Reports and filings related to the Court's management and handling of this case. Notably, Menzies twice advised the Court – in the parties' Joint Rule 26(f) Reports (Dkts. 19 and 58) – that Menzies did *not* intend to file *any* procedural motion. SUF 14, 58. Most recently, in the July 27, 2023 Joint Report Menzies advised the Court that it "does not anticipate filing any motions regarding parties, claims, amended pleadings, venue, or other procedural matters." *See* SUF 58; Dkt. 58, at 6:23-25. A motion to compel arbitration is procedural and not substantive motion because it seeks an arbitral rather than judicial forum – not a decision on the merits of the parties' underlying dispute. *See* Federal Arbitration Act, 9

---

[8] Menzies, for instance, sought dismissal of Plaintiff Silva's reimbursement claims based on its flawed merits argument. In its overreach to dismiss the entire class claims, Menzies advanced this all-encompassing argument before this Court tellingly after admitting that ramp agents like Silva are excluded from arbitration under *Saxon*.

U.S.C § 4 (authorizing petition for order directing that arbitration proceed) and § 6 (application "shall be made and heard in the manner provided by law for the making and hearing of motions…").

This case is therefore like *Slaten v. Experian Information Solutions, Inc.*, Case No. CV 21-09045-MWF (Ex), 2023 WL 6890757 (C.D. Cal. Sept. 6, 2023), in which the defendant "made representations to the Court suggesting that it would not seek to compel arbitration." *Id.* *5. Although Menzies noted its awareness of the arbitration issue in its portion of the parties' Joint Rule 26(f) Reports and stated its intention to file a summary judgment motion, Menzies did *not* advise the Court that Menzies intended to *act* upon its purported right to arbitrate by actually filing a motion to compel arbitration. A party like Menzies is "at risk" of waiver where, as here, it "failed to provide notice of its intention to seek arbitration" and "such notice was needed to correct the impression of waiver." *Hill*, 59 F.4th at 481.

**Third**, Menzies actively engaged in extensive discovery in this class action, including discovery of class claims that would not have been available to it in arbitration.  *See* SUF 26-44. Menzies also participated in a discovery dispute that was adjudicated by Magistrate Judge Rocconi. SUF 20. As mentioned, Menzies even actively moved to obtain various types of affirmative relief from the Court. It sought an order from the Court to impose the *Belaire-West* notice and opt-out procedures which would have prolonged the discovery process. It sought an order from the Court to further require Plaintiffs to assume the burden and pay the costs of these procedures. Both requests were denied. SUF 21. However, Menzies' requested court order that Plaintiffs provide certain disclosures in its communications with Class Members was granted. This latter Order sought by Menzies, although not opposed by Plaintiffs, regulated the manner and process by which Plaintiffs communicated with Class Members. SUF 21, 25.

As noted above, Menzies participated in submitting two Joint Rule 26(f) Reports where it provided the Court with its discovery plan. SUF 12-15, 56. Menzies took

depositions of the two named Plaintiffs where it additionally inquired about information relevant to the class claims. SUF 34-35. In deposing both Plaintiffs, Menzies probed matters beyond individual claims of the named Plaintiffs; It broadly inquired about Plaintiffs' qualifications to serve as class representatives, their knowledge of Menzies operations, and company-wide employment policies and practices that affect other employees, and those Class Members outside the Plaintiff's departments and locations." SUF 35.  Menzies served Rule 34 Requests for Production to the Plaintiffs where it similarly sought information relevant to both the individual Plaintiffs and the class claims. *See* SUF 27-33.

Menzies' act of conducting such an overexpansive discovery constitutes an act that is inconsistent with its right to compel arbitration.  The Ninth Circuit found waiver of the right to arbitrate when defendant employer "sought to take advantage of litigation in federal court by requesting extensive discovery on unnamed parties to the case." *Hill*, 59 F.4th 474. Such extensive discovery requests "serve as evidence that XBS wanted  to challenge judicially the merits of the claims that the merits of the claims that the putative class members were underpaid." *Id.* at 474-75.

Menzies responded to Plaintiffs' discovery by participating in deposition of seven of Menzies' managers. SUF 37.  Menzies' counsel engaged in numerous and time-intensive meet-and-confer discussions regarding the parties' discovery, from discussing the necessity of certain depositions and scheduling, to compliance with interrogatories and requests for documents. SUF 38. Menzies' counsel worked with Plaintiffs' counsel in jointly drafting the SPO which was approved by the Court for compliance by the parties in their communications with Class Members and the handling of class information in this case. SUF 22. Menzies produced the requested contact information of the class following the Magistrate's Order. Menzies produced voluminous documents including electronic data on Class Members in response to Plaintiffs' requests for production. SUF 24.

Courts have found that this kind of active participation in discovery supports a

finding of waiver. *See Martin*, 829 F.3d at 1126 ("defendant engaged in conduct inconsistent with their right to arbitrate" by "entering into a protective order, answering discovery, and preparing for an conducting a deposition"); *Slaten*, 2023 WL 6890757 *5 (defendant "intentionally abandoned its right to arbitration" when it "met and conferred with Plaintiff's counsel, joined a motion for a protective order, sought to extend discovery deadlines multiple times, responded to written discovery, produced documents, participated in discovery conferences, and submitted a Joint Rule 26(f) Report") (collecting cases).

**Fourth,** Menzies vigorously opposed Plaintiffs' Motion for Class Certification without filing any motion to compel arbitration. SUF 50. While Menzies mentioned that employees' claims are subject to individual arbitration in its Opposition, it raised the issue **only** from the standpoint of adequacy and typicality.  Menzies did not argue in its Opposition though that the impact of the arbitration agreement be addressed first before a class is certified, and it should not be allowed to make this belated argument now. Neither did it move to compel arbitration and seek resolution of the issue before the parties and the Court embarked on the rigorous task of determining whether FRCP Rule 23 requirements have been met.

Menzies' litigation strategy is not to refine the scope of the class as it did not move that only those excluded from arbitration under *Saxon* should be class members. Instead, Menzies went all in seeking this Court's judgment to defeat class certification for the entire Class Members.[9] Similar to its litigation strategy of aggressively moving for this Court's summary judgment to dismiss all reimbursement claims alleged in the Second Amended Complaint, Menzies boldly sought judicial resolution for its benefit against the entire class of non-exempt employees. Menzies did so without regard to

---

[9] In its Opposition to Plaintiffs' Motion for Class Certification, Menzies asked the Court as follows: "The Court should therefore deny the Motion in its entirety." Dkt. 60, at p. 25, lines 21-22.

whether the claims of other employees, like ramp agents as Plaintiff Silva, are clearly excluded from arbitration.[10] Menzies' behavior in litigation reveals its strategic choice to engage the judiciary for resolution of the class claims rather than a resolution from an arbitrator. *Salas*, 2024 WL 606166 *9 ("'A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court.' …Toyota's reference to an unspecified number of arbitration agreements in its opposition to class certification evinced an express purpose of defeating class certification entirely rather than refining the scope of the class."), *quoting In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010).

**Fifth**, Menzies unabashedly sought to further avail itself of the Court's resources by electing to request the assistance of a Magistrate Judge on settlement of the claims against it in this litigation while maintaining its arbitration defense.  When the parties advised the Court about their choice of a mandatory ADR procedure, Menzies did *not* assert that the dispute should be resolved by arbitration – which is one of the permissible options under L.R. 16-15.4. Menzies instead agreed with Plaintiffs that it would be most appropriate for the parties to mediate before a magistrate judge. SUF 17, 61. Menzies' choice of an ADR Procedure that necessarily involves the Magistrate's participation "strongly indicates" that Menzies "acted inconsistently for the purpose of finding waiver." *Sequoia Benefits & Insurance Services, LLC v. Constantini*, 553 F.Supp.3d 752, 759 (N.D. Cal. 2021).

**Finally,** Courts generally find waiver when a party like Menzies fails to timely act on its right to compel arbitration early in a case and instead actively litigates the merits in the district court. *See Martin*, 929 F.3d at 1125 ("[A] party's extended silence

---

[10] In its Order granting class certification, the Court specifically addressed the issues of typicality and adequacy in relation to arbitration as raised by Menzies. It correctly found that Amaya, as a signatory to the same arbitration agreement, "is well-positioned to represent the interests of employees who do not unambiguously fall under *Saxon.*" *See* Dkt. 69, 9:16-17.

and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which [is] inconsistent with a right to arbitrate."). Menzies even now has not filed any motion to compel arbitration, and it has delayed filing any such motion for the entire time since it "informed" Plaintiffs' counsel of Amaya's purported agreement to arbitrate. SUF 3, 69.

Delays of less than nineteen months have resulted in waiver. *See, e.g., Martin,* 829 F.3d at 1122 (affirming finding of waiver where "almost seventeen months after the start of the case, the defendants actually moved to compel individual arbitration"); *Alvarez v. Sheraton Operating Corp.,* Case No. 22-55729, 2023 WL 2491279 *1 (9th Cir. 2023) (affirming finding of waiver where "Appellants asserted preemption by the Federal Arbitration Act as an affirmative defense in their answer and then waited eight months before moving to compel arbitration."); *Bogart v. RTW Retailwinds Acquisition LLC,* Case No. SACV 23-01268-CJC (DMFx), 2024 WL 898925 (C.D. Cal. Feb. 14, 2024) ("Defendants acted inconsistent with their right to arbitrate by actively and substantively participating in this litigation for nearly six months before filing a motion to compel arbitration."); *Slaten,* 2023 WL 6890757 *4 (five-month delay).

Relatedly, it is of no moment that Menzies raised the arbitration issue in its answers, Joint Reports, and other filings, because "[a] statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Salas,* 2024 WL 606166 *9, *quoting Martin,* 829 F.3d at 1125; *see also Hill,* 59 F.4th at 461, 466 (finding waiver despite citation of waived arbitration agreements in answer, and arguments about arbitration agreements in opposition to class certification); *Hooper v. Advance America, Cash Advance Ctrs. of Missouri, Inc.*, 589 F.3d 917, 923 (8th Cir. 2009) ("A reservation of rights is not an assertion of rights.").

### 3.   *Allowing Menzies to Maintain its Arbitration Defense Prejudices Plaintiffs and Class Members*

As mentioned above, it is not necessary for the party asserting waiver to prove prejudice. *Morgan*, 596 U.S. at 417. However, it is important to note that the Court and

the parties have spent considerable time and energy into this hard-fought litigation for the last nineteen months. Throughout this litigation, there have been adjudications involving disputed issues on disclosure and production of evidence for the entire class of non-exempt employees, rigorous analysis of whether this case meets class certification requirements, and the merits determination of wage reimbursement claims of the class. In addition, the parties have engaged in extensive discovery, participated in numerous conferences, exchanges of correspondence and emails, and jointly submitted reports and stipulations to the Court that governed the management and handling of this class action. Allowing Menzies to belatedly enforce its contractual right to compel resolution of these claims in individual arbitrations now or at some future time prejudices Plaintiffs and the Class Members. It would cause undue delays in resolving the class claims against Menzies for its multiple violations of employment laws and deny justice to thousands of its non-exempt employees.

Now that the class has been certified, post-certification discovery should proceed expeditiously to enable the parties to adequately prepare for trial. Menzies cannot keep its right to arbitrate in reserve indefinitely. In a case where waiver of the employer's right to arbitrate in a class action was found, the Court warned of an outcome that militates against the efficient administration of justice: Defendant's invocation of the class action waiver enforceable through arbitration after unsuccessful attempts to secure relief in court could "potentially force this and other courts to hold separate trials of dozens, or hundreds, or even thousands of cases involving extensively overlapping issues. Such a result is flatly inconsistent with the governing Rules, which are to be 'construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.' FED.R.CIV.P. 1." *In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137, 146 (D. Md. 2023).

## IV.   <u>CONCLUSION.</u>

It is undisputed that, with its chosen litigation strategy, Menzies engaged in multiple and prolonged acts inconsistent with its contractual right to arbitration.

Menzies should therefore be deemed to have waived its right to arbitration. For all the reasons set forth herein, Plaintiffs respectfully request that the Court issue an Order granting Partial Summary Judgment, finding that there is no genuine dispute as to any material fact and that Plaintiffs are entitled to judgment as a matter of law with respect to Menzies' Twenty-Fourth affirmative defense of arbitration.

DATED: April 4, 2024                    **LAW OFFICES OF C. JOE SAYAS, JR. and KING CHENG MILLER & JIN LLP**


                                        By:    _/s/ C. Joe Sayas, Jr._
                                               C. JOE SAYAS, JR.
                                               KARL P. EVANGELISTA
                                               Attorneys for Plaintiffs

**DEFENDANT'S OPPOSITION BRIEF**

**I.   INTRODUCTION**

Perhaps realizing that *In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023) will mean they overreached in arguing to this Court that it was appropriate for them to propose for certification a class substantially comprised of individuals without standing to participate, Plaintiffs have suddenly turned to waiver arguments presumably hoping to preserve their class from its inherent legal problems highlighted by Menzies' pending Motion for Reconsideration and Petition for Review before the Ninth Circuit.  But in making such arguments and relying heavily on *Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457 (9th Cir. 2023) and this Court's recent application of *Xerox* in *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. 2:15-CV-08629-HDV-E, 2024 WL 606166 (C.D. Cal. Jan. 10, 2024), Plaintiffs not only fail to understand the significant differences between those cases and this matter, they also ignore the implications of their own strategic actions, legal arguments, and current Ninth Circuit litigation in which Menzies is addressing identical arbitration-related legal questions that potentially dramatically affect this case.  Plaintiffs have undertaken an intentional course of action that has made a motion to compel arbitration a practically pointless and inefficient-at-this-stage exercise and that has mandated Menzies engage in the very steps Plaintiffs point to as purported actions inconsistent with preservation of its arbitration rights.  They also ignore that until Menzies identified how *Marriott* supports its concerns about certification of a class including individuals subject to arbitration, they argued arbitration helped their arguments for class certification, and only after so using arbitration as a sword do they now try to shield themselves from its impact.

The circumstances here are nowhere close in character to those that supported waiver in *Xerox* and *Salas*.  In fact, Menzies' course of conduct in this litigation mirrors the conduct in *Xerox* that the courts explicitly found to be appropriate and used to juxtapose against other facts to demonstrate waiver.  Menzies has from the outset identified arbitration as critical to this case, and after Plaintiffs strategically added ramp

agents as parties to avoid arbitration, Menzies has consistently noted it as a central part of its legal strategy.  These actions, especially when viewed in context with the imminent decision from the Ninth Circuit in *Lopez v. Aircraft Serv. Int'l, Inc. and Menzies Aviation (USA), Inc.*, Case No. 23-55015, show Menzies has acted consistently with the intent to assert its arbitration rights, and require denial of Plaintiffs' motion.

## II.    PERTINENT FACTS AND PROCEDURAL HISTORY

### A.    Menzies Has Maintained The ADR Policy And Consistently Enforced Its Arbitration Rights For More Than A Decade

Following the Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 321 (2011), Menzies implemented an Alternative Dispute Resolution Policy ("ADR Policy") for all employees at its locations in the United States, including its employees in California, that includes a waiver of the right to participate in class or otherwise representative action litigation.  [*See* Menzies' Additional Material Facts ("AMF"), 70-71.]  For the period relevant to this Action, virtually 100% of Menzies' non-exempt current and former employees in California have bound themselves to the ADR Policy, with the handful of opt-outs limited to exempt management personnel. [AMF 72.]  Until the filing of the *Lopez* case, Menzies has successfully relied upon the ADR Policy in response to every threat or specter of class action litigation, dissuading multiple sets of employee-side lawyers from bringing such litigation and/or securing the immediate dismissal of such class action without the need for motion practice.  [AMF 73.]

### B.    The *Lopez* Litigation And The Ninth Circuit's Ruling On How *Saxon* Applies To Menzies Is Critically Important To This Case

On July 21, 2021, a former employee of Menzies' into-plane fueling operation filed a single cause of action Private Attorneys General Act ("PAGA") complaint currently captioned *Lopez v. Aircraft Serv. Int'l, Inc. and Menzies Aviation (USA), Inc.*, Case No. 2:21-cv-07108 (C.D. Cal).  [AMF 74 (citing *Lopez* Dkt. 1.]  Lopez was the first PAGA-only action filed against Menzies, and at the time of its filing, the rule of

*Iskanian v. CLS Transp.*, 59 Cal. 4th 348 (2014) exempting PAGA actions from arbitration remained valid California law.  [AMF 75.]  However, given that the Supreme Court had *Viking River Cruises, Inc. v. Moriana*, 596 U.S. ___ (2022) under consideration at the time, Menzies initially moved to stay the *Lopez* case pending the result of *Viking River*.  [AMF 76.]  In June 2022, the Supreme Court issued two landmark opinions in *Viking River* and *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, ___ (2022), the latter of which held that "ramp agents" who load cargo and baggage onto passenger aircraft are exempt "transportation workers" under Section 1 of the Federal Arbitration Act.  Both decisions portended significant impacts on the Menzies ADR Policy and the scope of its enforceability within California.

Consistent with its pattern of enforcing the ADR Policy, on July 14, 2022 – just weeks after *Viking River* struck down the *Iskanian* rule and ***before*** Plaintiffs commenced the instant action – Menzies moved to compel arbitration in *Lopez*.  [AMF 78.]  Lopez opposed on multiple grounds, but as relevant here, on December 13, 2022 the Hon. Dolly M. Gee accepted Lopez's argument that *Saxon*'s reasoning also applies to aircraft fuelers despite the fact that such individuals themselves have no role in the loading or unloading of baggage or cargo and thus arguably expanding *Saxon*'s reach to aspects of Menzies' business beyond those working in the "ramp agent" classification based on a "so closely related to interstate commerce" analysis. [AMF 79-80.]  Believing Judge Gee's analysis to be at odds with *Saxon* in ways that create significant uncertainty as to which Menzies job classifications are and are not "transportation workers," Menzies quickly appealed on January 9, 2023, the Order denying its Motion to Compel Arbitration.  [AMF 81.]  Simultaneous to the preliminary litigation steps occurring in this Action, Menzies and Lopez briefed that appeal throughout the spring and summer of 2023, finally completing such briefing with Menzies' Reply Brief filed on October 19, 2023 – less than a week before this Court heard argument on class certification in this action.  [AMF 82.]  The Ninth Circuit held oral argument on January 8, 2024 but has yet to issue a decision on the *Lopez* appeal. [AMF 83.]  However, on

March 12, 2024, a different panel of the Ninth Circuit published *Ortiz v. Randstad Inhouse Servs., LLC*, -- 4th -- (9th Cir. 2024), No. 23-55147, which Menzies believes directly supports its arguments for why Judge Gee erred and the "transportation worker" exemption should apply only to its "ramp agent" job classification.

Menzies notified this Court of the *Lopez* matter and alluded to its implications at Footnote 1 of its Opposition to Plaintiffs' Motion for Class Certification. [AMF 84, citing Dkt. 50.] However, now that Plaintiffs assert waiver of its arbitration rights, which this Court analyzes by looking at the totality of the parties' actions*, Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 471 (9th Cir. 2023), it is important for the Court to know the full context of *Lopez*, its current procedural posture, and the legal questions it addresses. Judge Gee's ruling in *Lopez* and what the Ninth Circuit ultimately does in response – and the analysis and reasons it will give for its decision – have significant ramifications on this matter and the scope of any permissible class. This context is important to understanding Menzies' actions from the outset of this Action.

### C.   Plaintiffs' Strategic Naming Of Ramp Agents As Parties To Avoid Arbitration Is Why Menzies Has Not Burdened The Court With A Motion To Compel Pending *Lopez*'s Outcome

Plaintiff Amaya, who worked in Menzies' Passenger Service Agent job classification, initiated the present class action on August 19, 2022, just over a month after Menzies filed its Motion to Compel Arbitration in *Lopez*. [AMF 78.] While she then amended her pleading with a First Amended Complaint ("FAC") adding former Ramp Agent Brayan Lozano Gonzalez as a plaintiff and proposed class representative on August 30, 2002, counsel did not serve Menzies with the amended pleading until September 21, 2022. [AMF 85.] That was the first notice Menzies had that a ramp agent covered by *Saxon* had joined the case as a proposed class representative. [AMF 86.] Before receiving that notice, counsel for Menzies sent a letter on September 8, 2022 informing counsel for Plaintiffs that Amaya signed a valid and enforceable ADR Policy agreement, which required her to submit all disputes to final and binding

arbitration and that she was prohibited from joining a class action or serving as a class representative.  [SUF 1.]  On September 29, 2022, counsel responded, invoking *Saxon* to support Amaya's refusal to bring her individual claims in arbitration and denying that "Plaintiffs' claims are "subject to a valid arbitration agreement."  [SUF 5.]

The addition of a former ramp agent as a plaintiff and proposed class representative had obvious implications on the question of arbitration because, pursuant to *Saxon*, Gonzalez had standing to seek class action treatment regardless of how *Lopez* will ultimately illuminate Amaya's qualification or non-qualification as a "transportation worker."  Counsel for the Parties discussed these issues and a potential motion to compel arbitration directed to Amaya only during a telephonic meet and confer conference on October 11, 2022, during which Menzies requested additional time respond to the FAC to consider potential courses of action.  [AMF 87]  Menzies concluded that even if it were successful compelling Amaya's claims to arbitration, doing so would have no practical effect on the initial aspects of this putative class action.  [AMF 88.]   In other words, even if the Court compelled arbitration as to Amaya over her *Saxon*-based opposition, it would have no practical impact on the class claims because Gonzalez would retain standing to pursue them.  Additionally, given that it had fully briefed the arguments on *Saxon*'s scope beyond the ramp agent classification in *Lopez*, rather than burden this Court with a parallel motion that might lead to inconsistent district court decisions but would in no circumstances change the early stages of this litigation, Menzies felt it would be the best use of all parties' (including Plaintiffs') and the courts' resources to see how Judge Gee addressed the issue and re-evaluate options depending on her ruling.  [AMF 89.]  Accordingly, Menzies decided to move forward with the litigation based on Gonzalez's presence in the case required while expressly preserving its right to invoke the arbitration agreement at an appropriate stage of this litigation.  [AMF 90.]

**D.** **Menzies Has Continued To Invoke Arbitration In This Case's Key Pleadings And Reports Simultaneous With Its Arguments In *Lopez***

On October 25, 2022, Menzies filed an Answer to the FAC, which included the Twenty-Fourth Affirmative Defense stating "Plaintiffs and the putative class they seek to represent are required to submit their claims to final and binding arbitration on an individual basis." [AMF 90; *see* Answer.] On December 5, 2022, the Parties filed a Joint 26(f) Report for Scheduling Conference, wherein Menzies expressly references the "Alternative Dispute Resolution agreements" as something it considered to be key matter relating to the parties and the evidence. [SUF 12.] At the time the Parties submitted that Report, Judge Gee had yet to deny Menzies' Motion to Compel Arbitration in *Lopez*. [AMF 80.]

In response to Plaintiffs' written discovery requests, Menzies produced exemplar ADR Policy agreements, including those signed by Plaintiffs Amaya and Gonzalez. [AMF 91.] On April 26, 2023 – 16 days after filing its Opening Brief with the Ninth Circuit in *Lopez* – Menzies deposed Amaya, during which counsel inquired at length about Amaya's understanding of the ADR Policy and authenticated her written agreement for potential future use. [AMF 92.] On May 9, 2023, counsel for Plaintiffs filed a Second Amended Complaint ("SAC"), which replaced Gonzalez with another Ramp Agent, Anibal Silva. [Dkt. 40.] As it had in December 2022, Menzies evaluated the practical and legal impact of moving to compel arbitration, but concluded once more that because Silva was also a Ramp Agent, it would have been impractical and inefficient to move to compel because Silva was clearly exempt from the FAA, particularly with the scope of how *Saxon* would apply to the Menzies business now squarely before the Ninth Circuit pending an opinion that will bind this Court on the implications of the ADR Policy. [AMF 93.] On May 19, 2023, Menzies deposed Silva, again inquiring at length about Silva's understanding of the ADR Policy and authenticating his written agreement. [AMF 94.]

**E.**     **Menzies Argued Its Arbitration Rights And Their Impact On Class Member Standing As A Key Barrier To Class Certification**

On May 22, 2024, Plaintiffs moved for class certification, relying on the two class definitions stated in the SAC – both of which include all employees in non-exempt classifications in California without regard to their job duties.  [*See* Docket No. 40, ¶ 30, No. 41, and No. 41-1.]  In other words, Plaintiffs proposed to this Court that it certify a class without any consideration for the ADR Policy's implications.  Indeed, Plaintiffs would later argue on reply that the issue of how arbitration affected class members' rights was itself a common question that supported certification, thus themselves relying on Menzies' assertion of its arbitration rights as a reason why the Court should certify the proposed definitions for class treatment.  [AMF 95; Dkt. 53, II(A), p. 1:16-2:16.]

On June 12, 2023 – less than eight months after raising its arbitration affirmative defense – Menzies filed its Opposition to Plaintiffs' Motion for Class Certification (the "Opposition").  [Dkt. 50.]  Menzies repeatedly invoked the fact that "virtually all of Menzies' California non-exempt employees are subject to the ADR Policy, including *both* Plaintiffs and *every one* of the declarants relied upon by Plaintiffs in support of their Motion." [Dkt. 50, p. 13, ln. 20-22.]  As noted *supra*, it also alerted the Court to *Lopez* and reiterated that while Ramp Agents themselves may not be subject to enforceable ADR Policy agreements, dozens of other classifications are completely outside the scope of *Saxon* and subject to individual defenses that completely bar to their participation in this class action.  [Dkt. 50, p. 3, fn. 1.]

**F.**     **Menzies Brought Its Partial MSJ In Parallel To Class Certification Proceedings Addressing Arbitration For Purposes Of Efficiency**

After transfer of this case from Judge Scarsi's docket, this Court held a status conference on August 24, 2023 resetting the hearing date on Plaintiffs' now fully-briefed certification motion.  [Dkt. 64.]  During that conference, counsel for Menzies specifically asked the Court for leave to have its anticipated partial summary judgment

motion on the same date as Plaintiffs' certification motion, explaining that the issues presented in that motion would bear on Plaintiffs' individual ability to serve class representatives and it thus would be an efficient use of the Court's time to address those issues in connection with the already-briefed arguments opposing certification – including specifically the arbitration issue.  [AMF 96; Dkt. 64.]  This Court then set the hearing on the pending class certification motion for October 25, 2023 to allow for simultaneous hearing on both motions, and Menzies' Motion for Partial Summary Judgment thus sought relief as to Plaintiffs only for purpose of addressing their ability to act as class representatives.  [AMF 97; Dkt. 64.]  Menzies then repeated its arguments about the key importance of the arbitration question on the propriety of class certification during oral argument on October 25, 2022, emphasizing the fact that the majority of the putative class was bound by the ADR Policy even post-*Saxon*.  [AMF 98]

On February 8, 2024, the Court granted Plaintiffs' Motion for Class Certification, which included as class members all of Menzies' non-exempt California employees who signed valid and enforceable arbitration agreements containing class action waivers.  [AMF 99.]  The Court specifically identified the arbitration issue as a common question supporting the propriety of class treatment which Plaintiffs had argued in their reply brief.  [Dkt. 69, p. 9.]

## G. **Only After Menzies Identified *Marriott* And Sought Relief From Certification Of A Class Consisting Of Thousands Without Standing To Participate Did Plaintiffs Claim Waiver**

Believing the inclusion in the class of individuals who have waived or arguably waived standing to participate is contrary to Ninth Circuit authority, Menzies sought immediate relief limited to the sole and discrete issue of the Court's treatment of the arbitration issue as a common question supporting class certification and whether a class containing individuals bound or arguably bound by arbitration agreements can stand. [AMF 99-100.] On February 22, 2024, Menzies concurrently filed (1) a Petition

for Permission to Appeal Under Rule 23(f) with the Ninth Circuit; and (2) a Motion for Reconsideration with this Court, both of which specifically addressed the impact of arbitration on the propriety of class certification and whether any class could be certified before arbitration questions were fully resolved.  [AMF 99-100.]  Both the Petition and Motion identified *Marriott* and relied on its holding that "the time to address a contractual waiver is before, not after, a class is certified" because "this is the only approach consistent with the nature of class actions and the logic of class waivers." 78 F.4th at 686-87.  [AMF 99-100.]  Having earlier relied on Menzies' arbitration arguments as a reason to certify the class, it was only after Menzies petitioned the Ninth Circuit and moved for reconsideration that Plaintiffs began arguing waiver as a reason not to apply *Marriott*.  [Dkt. 72, p.8.]

## III. THE PARITES' ACTIONS DEMONSTRATE MENZIES' INTENTIONAL PRESERVATION OF ITS ARBITRATION RIGHTS AND CARE FOR JUDICIAL EFFICIENCY WHILE *LOPEZ* REMAINS PENDING

This Court assesses Plaintiff's waiver of arbitration rights argument under a fact-intensive analysis of two elements: (1) whether Menzies had knowledge of an existing right to compel arbitration; and (2) whether Menzies engaged in intentional acts inconsistent with that existing right.  *Xerox*, 59 F.4th at 468.  Given that there is no dispute as to Menzies' knowledge of its arbitration rights, Plaintiffs' motion focuses on the second element, which calls on the Court to consider "the totality of the ***parties'*** actions" because "[t]here is no concrete test to determine whether a party has engaged in acts inconsistent with its right to arbitrate.  *Id.* at 471 (emphasis supplied, internal citations omitted).  The totality of all parties' actions in this case, measured particularly against *Xerox* and this Court's recent decision in *Salas*, make plain Menzies has not waived its arbitration rights.

### A. Plaintiffs' Strategy And Actions Have Significantly Dictated How Arbitration Has Affected This Case

*Xerox*'s reminder to consider the totality of the plural parties' actions is an

important reminder that while prejudice is no longer part of the analysis following *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), the totality of the "parties' actions" necessarily makes Plaintiffs' actions relevant to the analysis.  Plaintiffs' strategic naming and maintaining of ramp agents – including substituting Silva when Gonzalez apparently no longer wished to participate – is a substantial factor explaining Menzies' preservation of arbitration rights while waiting to move to compel.  While Plaintiffs seemingly suggest Menzies should have filed a motion to compel arbitration against Amaya alone, they ignore that doing so would have no practical impact on this case overall.  Their intentional decision to include ramp agents as party plaintiffs has required Menzies to participate in discovery and other aspects of this litigation – during which Menzies has always maintained arbitration as part of its defense strategy.  Plaintiffs also chose to define and seek certification of a class without any consideration for the fact that the majority of that class lacked standing to participate.  *See Marriott*, 78 F.4th at 686 (noting a class-waiver defense is not a defense to liability, but whether class action litigation is even an available process); *see also Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 986 (N.D. Cal. 2019) (citing *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087 (9th Cir. 2018) for the premise that a class encompassing members with valid arbitration agreements and others not subject to them cannot be certified).  It was Plaintiffs' duty and decision to define for the Court the scope of a proper class – not Menzies obligation to clean up their class definition and define its proper parameters for them.  *See* Fed. R. Civ. P. 23 (plaintiffs have the burden to define the class and the class claims); *Gau v. Hillstone Rest. Group, Inc.*, No. 20-CV-08250-SVK, 2021 WL 754536, at * 7 (N.D. Cal. Feb. 26, 2021) ("Having intentionally defined [their] classes broadly, [Plaintiffs] cannot now escape the consequences of that choice … even if [Defendant] may have a strong defense based on the [arbitration agreement]") (internal citations omitted).   They then relied on Menzies' arguments for why arbitration precluded certification of the class they proposed as a reason why they satisfied the commonality and typicality aspects of the certification inquiry.  It is

disingenuous at best for Plaintiffs to have argued the specter of arbitration helps their legal arguments in this case, only to then claim after *Marriott* that Menzies cannot preserve and avail itself of its rights when that same specter poses substantial problems. 78 F.4th at 686 (arbitration questions must be resolved before a class is certified).

How Menzies has directed its litigation strategy in response to Plaintiffs' litigation strategy – which only now includes a waiver argument after they have learned of *Marriott* – thus directly bears on whether Menzies supposedly has acted inconsistently with its arbitration rights.  Plaintiffs' actions have made impractical a motion to compel arbitration to this point – particularly when bringing one would force this Court to render a decision applying *Saxon* while Menzies has already been litigating that identical issue before another court of this District and now the Ninth Circuit.  Indeed, had Menzies refused to participate in discovery *in response to Plaintiffs' demands*, Plaintiffs' own factual submissions strongly suggest Menzies would have been facing discovery motions and other allegations of litigation misconduct.  The totality of the plural parties' actions necessarily includes Plaintiffs' strategic decisions, which have greatly impacted how the arbitration question has so far played out in this litigation.

### B.   The Significant Differences Between *Xerox* And *Salas* And The Facts Here Make Plain No Waiver Has Occurred

Menzies is mindful both of this Court's admonition during the April 11, 2024 hearing that it is very familiar with the *Xerox* decision and the fact that it analyzed and applied it in *Salas* earlier this year.  However, given the massive contrast between the facts of those two decisions versus what has transpired in this case, Menzies believes briefly distinguishing both cases will be useful.

*Xerox* dealt with two different arbitration agreements, one adopted in 2002 ("2002 DRP") and a later version adopted in 2012 ("2012 DRP") containing an express class action waiver.  59 F.4th at 460-61.  Relative to the 2012 DRP, XBS litigated the issue very similarly to how Menzies has litigated this case, expressly asserting a right to

arbitration in its answer to the operative pleading, in discovery, in a motion for summary judgment, and in opposition to class certification (but not, notably, in a motion to compel arbitration). *See id.* at 461-65. There was never a debate about waiver vis-à-vis the 2012 DRP, even though XBS had only invoked the 2012 DRP in communications with counsel, joint reports, and in opposition to class certification, and had never filed a motion to compel. *Id*. at 468. Waiver had only occurred relative to the 2002 DRP, where over a period of time three times as long as this case has been pending, XBS never asserted a right to arbitration relative to that agreement, did not raise it as a barrier to class certification nor as part of its request for reconsideration of class certification, and throughout years of interlocutory appellate litigation. *See id.* at 461-65. Only after six years of such strategy did XBS suddenly invoke a right to compel arbitration under the 2002 DRP and argued the district court should exclude signatories of both the 2002 and 2012 DRPs from the final class definition, only to then continue treating the 2002 DRP signatories as part of the class list. *See id.* at 466-67. The Ninth Circuit actually juxtaposed how XBS approached the 2012 DRP (using largely the same path Menzies pursued in this case) as a demonstration of how it waived the right to enforce the 2002 DRP. *Id.* at 473-76.

Menzies' actions asserting its arbitration rights parallel how XBS acted relative to the 2012 DRP but come nowhere close to the facts resulting of waiver relative to the 2002 DRP. Nor do they come anywhere close to the key facts in *Salas*, where after two motions to dismiss, failure to identify arbitration as an affirmative defense for over two years, failure to raise arbitration as a barrier to class certification, and admonishment that any issues not raised in motions filed after nearly eight years of litigation would be waived, this Court found waiver. *Salas*, 2024 WL 606166 at *1-4. *Slaten v. Experian Info. Sol., Inc.*, No. CV 21-09045-MWF (Ex), 2023 WL 6890757 (C.D. Cal. Sept. 6, 2023), where the defendant never identified arbitration as an affirmative defense, waited 18 months before moving to compel arbitration, and engaged in other acts generally inconsistent with the right to arbitrate, is equally inapposite. 2023 WL 6890757 at *4-6.

Menzies has consistently and repeatedly invoked arbitration as a key issue in this case, brought it to counsel's and the Court's attention, and asserted its rights in response to Plaintiffs' strategic decisions to render a motion to compel arbitration a practically pointless exercise, their decision to include individuals subject to arbitration in the class definition, and their reliance on it as a basis for class certification.  Its actions have thus not only been markedly different than those considered in *Xerox*, *Salas* and *Slaten*, they also sit within the significant context of the *Lopez* litigation (itself a significant factual distinction across all three case) and the potentially dramatic impacts its outcome will have on this case.  While *Lopez* remains outstanding, asking this Court to assess how to apply the transportation worker exemption over Amaya's claim the she falls within it despite her having significantly different job duties than ramp agents have would be inefficient to the judiciary as a whole and put this Court in the unenviable position or perhaps issuing a ruling at odds with Judge Gee or that would immediately demand further motion practice or appeals once the Ninth Circuit has decided the case.

Plaintiffs' argument that Menzies should have wasted this Court's time and disregarded the impact on its limited resources, lest it be subject to the instant arguments about "waiver," is thus myopic impractical and at odds with the authorities on which they rely.  The Court should not entertain such an unreasonable outcome.

## C.   Addressing The Import Of Arbitration And Class Waivers At Certification Is Fully Consistent Retention Of Arbitration Rights

Plaintiffs' contention that Menzies somehow either had to move to compel arbitration prior to class certification or waive its rights under the ADR Policy similarly has no support in the legal authorities.  For starters, that is exactly what XBS did in *Xerox* relative to the 2012 DRP, which the both the district court and the Ninth Circuit recognized as a proper course of action.  *Id.* at 473-76.  And as Menzies has previously pointed out, courts have frequently reinforced the notion that raising arbitration as a barrier to class certification is appropriate.  *See, e.g., Lawson v. Grubhub, Inc.,* 13 F.4th 908, 913 (9th Cir. 2021) (affirming the class was not "worthy of certification" where all

class members except one representative signed waivers); *Marriott*, 78 F.4th 677-87 ("the time to address a contractual class waiver is before, not after a class is certified … usually as the first order of business")[11]; *Lindsay v. Carnival Corp.,* No. C 20-982, 2021 WL 2682566, at *4 (W.D. Wash. June 30, 2021) (denying class certification as barred by class waiver); *Archer v. Carnival Corp. & PLC,* No. 20-cv-04203, 2020 WL 6260003, at *8 (C.D. Cal. Oct. 20, 2020) (certification barred by class waiver rendering moot other certification questions under Rule 23(a) and 23(b)(3)); *Avecilla v. Live Nation Entm't, Inc.*, No. CV 23-1943 PA, 2023 WL 5354401 (C.D. Cal. 2023) (finding class-action waiver valid and dismissing class action claims without addressing the Rule 23 requirements);.  Plaintiffs' Motion provides no authority to support the implied argument that Menzies was required to bring a pointless motion to compel arbitration rather than addressing the issue during class certification – a fact that Plaintiffs concede Menzies repeatedly emphasized in communications and filings from the outset of this litigation.  [*See* Motion, p. 20, lines 17-18 ("Menzies raised the arbitration issue in its answers, Joint Reports, and other filings.")]

### D. <u>Plaintiffs' Characterization Of Menzies' Actions As "Inconsistent" With Its Arbitration Rights Dodges The Full Context Of This Matter</u>

Plaintiffs' various arguments for cherry-picking examples of how Menzies' "participation" in the instant litigation constitutes actions "inconsistent" with its right to arbitrate ignore the unique factual and procedural considerations at play in this case. Critically, despite knowing of the *Lopez* matter, Plaintiffs avoid it completely, dodging any considerations as to how that ongoing litigation critically affects this matter.  They

---

[11] The facts of Marriott are themselves distinguishable.  The defendant unsuccessfully moved to dismiss and the certified class consisted entirely of individuals subject to binding arbitration, and the Plaintiffs had not themselves engaged in strategic litigation decisions intended to make a motion to compel arbitration a practically pointless exercise.  78 F.4th at 683-87.  And of course, *Marriott* has no similar contextual backdrop to the significant one created by the *Lopez* litigation.

also do not confront how *Saxon* would have made a motion to compel arbitration as to
Amaya a pointless exercise that would not have freed Menzies from engaging in the
same discovery practices they point to as supposedly supporting waiver.  Casting
Menzies' cooperation in this litigation, which Plaintiffs' strategic inclusion of ramp
agents as plaintiffs has necessitated is equally stripped of context and disingenuous.
Indeed, Plaintiffs concede that "Menzies raised the arbitration issue in its answers, Joint
Reports, and other filings," but then cherry picks portions of them to argue that Menzies
made representations to the Court suggesting that it would not seek to compel
arbitration." [*See* Motion at p. 20, lines 17-18.]  The arc of this case – again,
particularly against the backdrop of *Lopez* – instead makes plain Menzies has always
asserted arbitration as an important part of its defense – not waived its arbitration rights.

Similarly, Plaintiffs reliance on Menzies' Motion for Partial Summary Judgment
(on a single cause of action out of seven) ignores the context in which Menzies asked
specific permission to bring it – jointly for hearing at the same time as class certification
where Menzies centrally argued arbitration as a certification barrier and because of the
potential impact summary judgment might have on class certification questions.  [AMF
98.]  As Menzies emphasized to the Court, the unique CBA preemption defenses
applicable to Plaintiffs' reimbursement claim constitute a basis to deny class
certification *and* deny relief on the merits as to Plaintiffs only – meaning there was a
significant efficiency for the Court to consider the issues simultaneously.  Had Menzies
prevailed, it would only have affected Plaintiffs' ability to represent the class – not the
substantive claims of absent class members, who would have retained the right to
pursue such claims.  *See Schwarzchild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) (pre-
certification merits ruling not binding on non-parties); *Diva Limousine, Ltd. v. Uber
Tech., Inc.*, 392 F. Supp. 3d 1074, 1096 (N.D. Cal 2019) (inappropriate to rule on
summary judgment directed at class-based claims pre-certification when the ruling will
not bind putative class members).  Moreover, in *Xerox*, the defendant also filed a
similar motion for partial summary judgment (and then sought appeal which caused

several years of delay), which did not have any bearing on the analysis regarding the 2012 DRP and the defendants non-waiver of it. 59 F.4th at 462.

Plaintiffs' argument that Menzies "unabashedly sought to further avail itself of the Court's resources by electing to request the assistance of a Magistrate Judge on settlement of the claims against it in this litigation while maintaining its arbitration defense" is specious at best.  Plaintiffs' strategic inclusion of ramp agents as party plaintiffs required that Menzies make a selection in this Court's *mandatory* ADR procedure, and Menzies thus chose the least involved *mandatory* ADR procedure available – a settlement conference (which has yet to occur).  Once again, when considered in the full context of the instant litigation and against the strategic decisions Plaintiffs have made leaving no avenue (short of outright litigation misconduct) for Menzies to avoid participating in this case, Plaintiffs cannot demonstrate that Menzies "engaged in acts inconsistent with its right to arbitrate" when considering the "totality of the *parties'* actions."  *See Xerox*, 59 F. 4th at 471 (emphasis supplied).

## IV.    <u>CONCLUSION.</u>

For all the foregoing reasons, the Court should deny Plaintiffs' Motion in its entirety.

DATED: April 25, 2024                    **FOLEY & LARDNER LLP**

                    By:     <u>/s/ Christopher Ward</u>
                    CHRISTOPHER WARD
                    KEVIN JACKON
                    Attorneys for Defendant
                    Menzies Aviation (USA), Inc.

**PLAINTIFFS' REPLY BRIEF**

## I.   **INTRODUCTION.**

By the time this Motion for Partial Summary Judgment ("Motion") is heard, Defendant Menzies Aviation (USA), Inc. ("Menzies") will have been actively litigating this case before the Court for about twenty-one months. But until now Menzies has failed to move to compel arbitration. Supreme Court authority must govern the waiver inquiry: "…to decide whether a waiver has occurred, the court focuses on the actions of the person who held the right." *Morgan v. Sundance Inc.,* 596 U.S. 411, 417 (2022).

Menzies' Opposition disingenuously attempts to shift blame for its own actions by faulting Plaintiffs for naming Patricia Amaya ("Amaya") and Annibal Silva ("Silva") as class representatives, and by arguing futility. Other than its self-contrived excuse, however, there never was and there now remains nothing to prevent Menzies from moving to compel arbitration. The reality is Menzies chose to litigate, not to arbitrate. Hence, Menzies alone is responsible for its own choice of a preferred strategy to adjudicate its defenses in court and not in arbitration.

Strangely, Menzies seeks refuge in the pending appeal in *Lopez v. Aircraft Serv. Int'l, Inc.*, 9th Cir. Case No. 23-55015 – an entirely separate, unrelated, and non-class action case. The issue in *Lopez* is whether the plaintiff fueler – who seeks Private Attorney General Act ("PAGA") penalties against Menzies – was exempt from arbitration under *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022). Menzies does not pretend that *Lopez* has anything to do with waiver. It clearly does not since *Lopez* is an appeal from an order denying a motion to compel arbitration, holding that Lopez' work duties make him a transportation worker under *Saxon.* The issue presented by the Motion is completely different: whether Menzies' active litigation conduct inconsistent with its right to arbitrate has resulted in waiver.

Far from effectively enforcing its contractual right to arbitrate, Menzies took advantage of litigating before this Court. Menzies embarked on an over-inclusive class wide discovery, submitted its litigation plan to the Court within the framework of this

class action, sought merits determination of arbitrable claims and pursued judicial in lieu of arbitral relief that – if granted by the Court– would have eviscerated wage reimbursement claims of the entire class in this case.

When the *Morgan* court placed arbitration agreements on the same footing as other contracts, it provided clear guidance on waiver analysis. *Morgan* directs courts "to apply the usual federal procedural rules, including any rules relating to a motion's timeliness." *Id.* at 419. Applying these usual rules including timeliness, it is clear that Menzies, because of its numerous actions inconsistent with its right to arbitrate coupled with its failure to move to arbitrate, waived its right to do so.

## II.   ARGUMENT.

### A.   Menzies Concedes the First Element of Waiver.

"[T]here is no dispute as to Menzies' knowledge of its arbitration rights." Opp. at p. 22. At issue now is whether Menzies acted inconsistent with a right to arbitrate.

### B.   Menzies Repeatedly Chose Not to Move for Arbitration.

Menzies *chose* not to arbitrate at the outset of the case and reaffirmed that choice in the course of litigation. Menzies admits "ramp agents" are transportation workers exempt from arbitration under Section 1 of the Federal Arbitration Act ("FAA"), under *Saxon*, and Menzies cannot compel class members who are ramp agents to arbitrate. Thus, as Menzies admits, this action will proceed as to members exempt under *Saxon* even if the Court were to compel other class members to arbitrate. "Accordingly, Menzies ***decided*** to move forward with this litigation" without filing a motion to compel arbitration in the fall of 2022. Opp. at 36:24 (emphasis added). And when Plaintiffs filed a Second Amended Complaint in May 2023 that replaced original named plaintiff Gonzalez with another ramp agent (Anibal Silva), Menzies "concluded once more" that it would not move to compel. Opp., at 37:20-21. A delay of little as five months has supported a waiver, as explained in Plaintiff's Opening Brief. *Supra*, at 6. The Opposition does not disagree, and thus concedes the point.

Contrary to Menzies' arguments, "[a] statement by a party that it has a right to

arbitration in pleadings or motions is not enough to defeat a claim of waiver." *Salas v. Toyota Motors Sales, U.S.A., Inc.*, 2024 WL 606166 *9 (C.D. Cal. Jan. 10, 2024), *quoting Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). "A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court." *In re Mirant Corp.*, 613 F.3d 584, 591 (5th Cir. 2010. And "[a] reservation of rights is not an assertion of rights." *Hooper v. Advance America, Cash Advance Ctrs. of Missouri, Inc.*, 589 F.3d 917, 923 (8th Cir. 2009). As in *Salas*, Menzies' Opposition confirms that it had a "preferred strategy" of "exhaustively litigating the merits of all class members' claims – all the way to trial, if need be – before moving to compel absent class members to arbitration." 2024 WL 606166 *9. Adopting and consistently following that strategy has resulted in waiver.

## C.   Menzies' Misguided Focus on Plaintiffs' Actions Contravenes the *Morgan's* Instructions for Analyzing Waivers.

### 1.   *Waiver is unilateral and focuses on Menzies' actions.*

Disingenuously playing victim, Menzies argues Plaintiffs are somehow to blame for Menzies's own decision not to file a motion to compel arbitration. The argument fails principally because it contravenes the Supreme Court's guidance on waiver inquiry to look at the conduct of the holder of the right. *Morgan* supra, at 417. It also misrepresents *Hill v. Xerox Business Services, LLC*, 59 F.4th 457 (9th Cir. 2023) by citing an isolated sentence which departs from the ruling of the case affirming waiver of the employer's right to arbitrate. Opp. at 40. However, *Hill* clearly teaches otherwise.

**First**, there are only two elements of waiver: "(1) knowledge of an existing right to compel arbitration; and (2) intentional acts inconsistent with that right." *Hill*, 59 F.4th at 468. Neither of those elements involves any inquiry about the action of the party asserting a waiver. **Second**, *Hill* explained that "waiver is a unilateral concept":

"A finding of waiver by [defendant] XBS looks *only* to the acts of XBS, binds only XBS, does not reach out to affect the right of as then-unnamed class members, and does not depend upon when the law requires or authorizes such a

right to be asserted. As noted by the Supreme Court in *Morgan* '[t]o decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party.'"

*Hill*, 59 F.4th at 469, *quoting Morgan*, 142 S.Ct. at 1713, and citing *Royal Air Props., Inc. v. Smith*, 333 F.2d 568, 571 (9th Cir. 1964) ("waiver is unilaterally accomplished"). Menzies is wrong when it suggests the Court needs to consider *Plaintiffs'* actions to decide whether *Menzies* acted in ways inconsistent with its own right to arbitrate.

> **2.**    ***Plaintiffs had no obligation to limit the proposed class as Menzies asserts – its right to arbitrate was waivable and has been waived.***

Menzies insists Plaintiffs had "duty" to seek certification of a class comprised only of Menzies employees exempt from arbitration under *Saxon*. The argument makes no sense. **First**, the employer's right to arbitrate is subject to the usual contractual defenses, such as waiver. The FAA permits arbitration agreements to be declared unenforceable upon such grounds as exist at law or in equity for the revocation of any contract. *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, at 339, 131 S. Ct. 1740, at 1745 (2011). Plaintiffs were not obliged to *assume* that Menzies would not waive its right to arbitrate (Menzies in fact waived that right), or that there would be no other grounds in law or equity to render the ADR Policy unenforceable. **Second**, the cases Menzies cites on page 41 of its Opposition do not support the conclusion that Plaintiffs are to somehow to blame for Menzies' own choice to participate actively in this litigation. Nor do those cases recognize a duty on Plaintiffs' part to define the proposed class to exclude members that Menzies contends are bound by an arbitration agreement.

> **D.**    **Menzies' Actions Outside this Case do not Avoid Waiver Here.**

Menzies cites no authority for the proposition that its secret litigation strategy vis-à-vis *Lopez*, and its efforts to compel arbitration in *other* cases, has any bearing on the question of waiver *in this case*. The question is not whether Menzies *generally* waived its arbitration rights, but whether it waived its right to compel arbitration of

claims in *this case*, by choices Menzies made *in this case* and its actions *in this case*.
After all, a party to an arbitration agreement is free to waive its right to arbitrate in one
case, while acting to enforce that right in other cases. *See, e.g., Meyer v. Kalanick*, 185
F.Supp.3d 448, 453, n. 3 (S.D.N.Y. 2016)(defendant waived right to arbitrate in *Meyer*
but reserved his right to move to compel in other cases arising out of the agreement at
issue). Evidence that Menzies took steps outside this case to enforce its arbitration
rights under its ADR Policy are relevant only to prove this: Menzies knows what to do
when it *actually* wants to arbitrate. It plainly *chose* to do the opposite here. Even now,
Menzies stops short of avowing that it ever will, in fact, file a motion to compel
arbitration. Menzies argues that much depends upon the outcome of *Lopez*. But
Menzies' position makes no sense: regardless of *Lopez*'s outcome there were *already*
thousands of class members who Menzies *now* contends are obligated to arbitrate.
Nothing *ever* prevented Menzies from filing a motion to compel Plaintiff Amaya to
arbitrate, except of course, Menzies' own choice to litigate before this Court.

### E.    Menzies Misstates the Import of *Hill* in This Case.

Menzies argues its actions in this case are like the defendant's actions in *Hill* with
respect to the later of two arbitration agreements at issue in that case – the 2012 DRP,
which contained a class action waiver. Menzies' strained arguments overlook key facts.

**First**, *Hill* reviewed an order denying a motion to compel arbitration of claims
related to the earlier of two arbitration agreements – the 2002 DRP. 59 F.4th at 468.
Menzies, by contrast, has never filed any motion to compel arbitration, or confirmed
(even now) that it ever will. **Second**, *Hill* had no occasion to consider whether the
defendant in *Hill* waived any rights with respect to arbitration provision in the later
2012 DRP, because the plaintiff in *Hill* conceded that agents who signed the 2012 DRP
"will be prevented from participating in this class action" (*Hill*, 59 F.4th at 463), the
certification order did not include them, and the defendant's motion to compel did not
relate to them. Thus, contrary to Menzies' argument, *Hill* had no occasion to consider,
much less hold, that there was no waiver with respect to agents who signed the 2012

DRP. **Third**, the defendant in *Hill* advised the court that if "individuals subject to arbitration agreements [we]re included in the class," the defendant "anticipated bringing motions to compel individual arbitration once the class is finalized." 59 F.4th at 466. Menzies *never* provided notice it intends to file a motion to compel arbitration. To the contrary, Menzies' portion of joint reports repeatedly informed this Court that it had no intention of filing any procedural motion. Undeniably, a motion to compel arbitration is a procedural motion which Menzies itself represented it did not intend to file.

## F.   The Pending Appeal in *Lopez* Does Not Excuse Menzies' Failure to Timely Move for Arbitration.

The Opposition miserably fails to show that the pending appeal in *Lopez* is any reason to deny Plaintiffs' motion. First, *Lopez* is irrelevant. It involves the issue of whether Lopez, a fueler,[12] is a transportation worker exempt from arbitration under *Saxon*. There is no waiver at issue in *Lopez* because Menzies filed a motion to compel arbitration promptly in that case – which of course shows Menzies knows how to protect its right to arbitrate *when it wants to*. And *Lopez* was never a class action; it instead asserts a single cause of action under PAGA seeking penalties on behalf of the government and not on behalf of thousands of other Menzies non-exempt employees. The outcome of the *Lopez* appeal therefore has no bearing on the present motion.

Second, there is no merit in Menzies' contrived argument that it can unilaterally hold a motion to compel arbitration in this case in abeyance because the Ninth Circuit *might* reverse Judge Gee's finding, under *Saxon*, that aircraft fuelers are exempt "transportation workers" under Section 1 of the FAA. According to Menzies, *if* the Ninth Circuit reverses in *Lopez*, that *might* affect a determination of whether fuelers in this case can be compelled to arbitrate, and Menzies *might* decide to file a motion to compel arbitration at some point in the future. It also might not. It makes no promises.

---

[12] Aside from differences in issues in *Lopez* and the present case, the plaintiff's work in *Lopez* as a fueler is different from Amaya's duties as a passenger service agent. Amaya physically receives baggage from airline passengers for transport to other states and countries. Even if *Lopez* reverses Judge Gee's ruling that a fueler is covered by *Saxon*, it will not apply to Amaya.

Menzies' specious argument fails because nothing really prevented Menzies from timely filing a motion to compel arbitration. If it really believed then that the outcome in *Lopez* would make a difference, Menzies would have moved this Court for an order staying this case, instead of keeping its motion to compel arbitration in its back pocket until the *Lopez* appeal is resolved. Casually "alluding" to *Lopez* in a footnote of its brief in opposition to class certification without more does not preserve its right.

Menzies argues, in the name of supposed "efficiency," that it has not filed a motion to compel arbitration because it would unduly "burden this Court" with a motion that might lead to a different result than in *Lopez*. But there is nothing "efficient" about laying in the weeds with an undisclosed strategy of waiting for results in other litigation before moving to compel arbitration in this case. As *Hill* explained, when a litigant acts inconsistent with its right to compel arbitration, that litigant has "a choice to set the record straight by dispelling the notion that it was waiving its rights." 59 F.4th at 481. A party like Menzies is "at risk" of waiver if it fails to "provide notice of its intention to seek arbitration" when such notice is "needed to correct the impression of waiver [the party] itself create[s]" when it acts inconsistently with "arbitration rights by its litigation practices in the courts." *Id.* Menzies *even now* has not committed itself to filing a motion to compel arbitration at any point in this case. It instead purports to "preserve" its right to arbitration if and when Menzies *unilaterally* decides there is "an appropriate stage of this litigation." Opp. at 36. This open-ended gamesmanship constitutes a knowing waiver.

### G.   Menzies' Claim of Futility is Unavailing.

Menzies argues it would be futile to move to compel Amaya to arbitrate because Silva would still have standing to bring the class action. Menzies is wrong. A similar argument was raised by the defendant employer in *Hill* – who argued it could not move to compel until it knew who all the class members were – and was rejected. *Id.* at 480. According to the Ninth Circuit, the defendant failed to appreciate that waiver is a "unilateral concept." *Id.* at 469. A finding of waiver "does not depend upon when the

law requires or authorizes such a right to be asserted." *Id.* For waiver purposes, it is not required that the holder of the right has a present ability to enforce the arbitration agreement. *Id.* ( "… we simply recognize that under the circumstances of this case, it was permissible to find that XBS engaged in actions during the course of the litigation that were inconsistent with the right to compel arbitration under the 2002 DRP").[13]

### H. <u>Menzies failed to preserve its right to arbitrate.</u>

Menzies' claim of futility is inherently implausible. Had Menzies moved promptly against Amaya, it would have preserved its right against Amaya and other Class Members who "do not unambiguously fall under *Saxon*" – Class Members whom, according to this Court, "Amaya is well positioned to represent." Dkt. 69, at 9:16-17.  By failing to do so Menzies failed to preserve its right to arbitrate.

Neither was Menzies able to preserve its right by mentioning individual arbitrations in its Opposition to Plaintiffs' Motion for Class Certification. There, it referenced arbitration simply within the context of typicality and adequacy elements of FRCP Rule 23, as Menzies sought to deny class certification in its entirety. In fact, this Court addressed this exact argument in its Order granting certification, seeing them as "Defendants' challenges [to] the typicality and adequacy of Plaintiff Amaya." Dkt 69, at 8-9. But nowhere in said Opposition nor in any of its submissions to this Court that Menzies provides notice of its intention to seek arbitration. As stated, this notice is "needed to correct the impression of waiver" when a party like Menzies "acts inconsistently with 'arbitration rights' by its litigation practices in the courts." *Id*.

By arguing that statements of its defense to class certification is enough to preserve its right to arbitrate, Menzies conflates the elements of waiver with those of

---

[13] *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 756, 759 (9th Cir. 1988) concluded that the defendant acted inconsistently with its known arbitration right when it made an intentional decision to refrain from filing a motion to compel arbitration (because it did not want to sever the arbitrable claims from the nonarbitrable claims), and litigated the arbitrable claims for two years in federal court, including filing a motion to dismiss for failure to state a claim.  *See also Newirth v. Aegis Senior Cmtys.*, LLC, 931 F.3d 935, 941 (9th Cir. 2019), as cited in *Hill*, 59 F.4th at 471.

class certification requirements.  These are apples and oranges. To preserve its right to arbitrate, Menzies had to do more than oppose class certification. Menzies' failure to move and or provide notice of its intention to compel arbitration is fatal to its defense.

## I.   Menzies' lame excuses for its active participation in litigation do not negate the fact that it acted inconsistently with its right to arbitrate.

Menzies cannot deny it actively litigated this case – it propounded and responded to class discovery; took and defended depositions; submitted reports and stipulations to this Court; and defended and pursued law and motion issues including its own partial summary judgment on the merits of arbitrable claims. Menzies now claims its all-out participation in this litigation was driven by a need to avoid "facing discovery motions and other allegations of discovery misconduct." The argument is borderline absurd.

The truth is Menzies – a sophisticated litigant represented herein by experienced class action attorneys – knows what to do in this situation. Instead of feigning helplessness, it could have requested stay, notified the Court of its "true plan" to arbitrate, or sought relief from its litigation or reporting obligations. Menzies could have candidly informed the Court it wanted to limit its participation in litigation because it intended to file a motion to compel arbitrate. That kind of transparency, and even sincerity, would have allowed *the Court* to effectively manage the case, and decide whether any of Menzies claimed excuses might justify holding arbitration in abeyance. Menzies *chose* none of these options; it instead arrogated to itself a unilateral decision to hold off on its motion to compel arbitration, and offers feeble excuses for it now.

## J.   Seeking judicial determination of arbitrable claims is inconsistent with the right to arbitrate.

Menzies also mistakenly argues its Motion for Partial Summary Judgment ("PSJ") seeking to dismiss Labor Code 2802 wage claims sought relief only against Amaya and Silva as individuals. Menzies' representations, however, are belied by arguments in its own PSJ. There, Menzies' argued Plaintiffs' reimbursement claims are preempted because they require interpretation of Collective Bargaining Agreement

("CBA") language. To show its vain attempt to eradicate the wage claims of **all** unnamed members of the class, Menzies submitted all **seven (7) CBAs relevant for all class members**, not just the CBA applicable to named plaintiffs. See SUF 63-64.

Menzies' effort to understate the potential impact of its PSJ ignores the fact that this case is a class action. It is fundamental that Plaintiffs as class representatives are seeking wage reimbursements for other employees similarly situated. By asking this Court to defeat the claims of class representatives, Menzies at the same time sought to eliminate the claims of thousands of other unnamed employees **in this case**. *See Hill*, 59 F.4th at 473. Its verbal contortions notwithstanding, Menzies consciously sought a "favorable judicial ruling" on the merits of crucial class claims, plainly choosing not to do so in arbitration. As in *Hill*, this choice to seek judicial judgment on the merits "was inconsistent with the agreement to arbitrate those claims." *Id.* at 474 and 476.

Menzies' strategy has become clear. It pursued a strategy of attempting to benefit from this litigation through a summary judgment that would eviscerate the claims against it by an entire class, and in the process caused this Court and the parties to spend extensive amounts of time and resources to adjudicate the issues. Failing to get its desired outcome on its motion before this Court, Menzies now wants to keep an arbitration option in its back pocket so it can take a second bite at the apple later before an arbitrator. Menzies' gamesmanship should not be allowed.

## III.   **CONCLUSION.**

Menzies engaged in far-ranging litigation conduct throughout this case while failing to enforce its right to arbitrate. Plaintiffs respectfully request the Court to find waiver of Menzies contractual right to arbitrate and grant Plaintiff's Motion.

Dated: May 9, 2024

**LAW OFFICES OF C. JOE SAYAS, JR. and KING CHENG MILLER & JIN LLP**

By:     */s/ C. Joe Sayas, Jr.*
          C. JOE SAYAS, JR.
          KARL P. EVANGELISTA
          Attorneys for Plaintiffs

## __Local Rule 5-4.3.4(a)(2) Attestation__

I, David P. King, hereby attest that all signatories listed above, and on whose behalf this filing is submitted, concur in the filing's content and have authorized its filing.

May 9, 2024                                        _/s/ David P. King_____
                                                   DAVID P. KING

**JOINT MEMORANDUM RE PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**