CHRISTOPHER WARD, CA Bar No. 238777
　　cward@foley.com
KALEB N. BERHE, CA Bar No. 302080
　　kberhe@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE:　213.486.0065

KEVIN JACKSON, CA Bar No. 278169
　　kjackson@foley.com
**FOLEY & LARDNER LLP**
11988 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2594
TELEPHONE: 858.847.6700
FACSIMILE:　858.792.6773

Attorneys for Defendant
MENZIES AVIATION (USA), INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and ANIBAL SILVA, an individual; on behalf of themselves and others similarly situated, <br><br>             Plaintiffs, <br><br>     vs. <br><br> MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive, <br><br>           Defendants. | Case No. 2:22-cv-05915-HDV-MARx <br><br> **DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS** <br><br> Date:　　February 20, 2025 <br> Time:　　10:00 a.m. <br> Ctrm.:　　5B, 5th Floor <br> Judge:　　Hon. Hernán D. Vera <br><br> Complaint Filed:　August 19, 2022 <br> FAC Filed:　　August 30, 2022 <br> SAC Filed:　　May 9, 2023 |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 20, 2025 at 10:00 a.m., or as soon thereafter as this matter may be heard, in Courtroom 5B, 5th Floor, before the Honorable Hernán D. Vera of the above-captioned Court, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, California 90012, Defendant Menzies Aviation (USA), Inc. ("Menzies" or "Defendant") will, and hereby does, move this Court pursuant to the Federal Arbitration Act (9 U.S.C. § 1, et seq., the "FAA") for an order:

A.  Compelling certain current class members in Covered Job Classifications (which Menzies assert are in the following job classifications: Ramp Supervisor, Passenger Service Agent Lost and Found, Operations Agent, Passenger Service Agent, Passenger Service Lead Agent, Passenger Service Supervisor, Safety Administration Assistant, Service Desk Agent, Training Supervisor, Supervisor Timekeeper, Timekeeper, Baggage Coordinator, Lost and Found Bag Agent, Talent Acquisition, Safety Supervisor, Safety Security and Environmental Supervisor, Safety and Training Supervisor, Lavatory Agent, Human Resources Administrative, Human Resources Specialist, General Worker, Cabin Cleaner, Lead Cabin Cleaner, Cargo Office Lead, Cargo Office Supervisor, Compliance Officer, Fueling Supervisor, Dispatcher, Quality Control Supervisor, Inventory Clerk, GSE Administration Assistant, GSE Fueler, GSE Mechanic, GSE Utility Agent, Lead GSE Mechanic, Cargo Handler Agent, Apprentice – Fuel Facility Management, Driver Operator, Accounting Clerk, Accounts Receivable Specialist, Administrative Assistant – Fueling, Cabin Services Agent, Cabin Services Lead Agent, Cargo Agent, Cargo Screening Agent, Facility Electrician, Fuel Facility Electrician, Fuel Farm Mechanic, Fuel Farm Operator, Fuel Farm Supervisor, General Fueling Helper, Inside Wireman, Intern, Janitor, Lead Dispatcher, Fuel Farm Operator Lead, Lead Quality Control Technician, Quality Control Technician, Load Master, Maintenance

MENZIES' MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED
CLASS MEMBERS FROM THE CERTIFIED CLASS
-1-                    Case No. 2:22-cv-05915-HDV-MARx

Technician – Fuel Storage Facility, Operations Coordinator Supervisor,
Operations Coordinator, Operations Supervisor – Ground Handling, Cargo
Screening Supervisor, and Training Coordinator) to submit their individual
claims to arbitration pursuant to Menzies' Alternative Dispute Resolution
Policy ("ADR Policy"); and

B.     Excluding all current class members in the Covered Job Classifications that
the Court finds are not exempt from the FAA because their claims can only
be pursued in individual arbitration and are thus not appropriate for inclusion
in the certified class in this action.

Good cause exists for this Motion.  Plaintiff Dora Patricia Amaya and individuals
in the Covered Job Classifications are bound by the ADR Policy through an Agreement
to be Bound By Alternative Dispute Resolution Policy (the "Arbitration Agreement"), by
which they agreed to arbitrate all claims arising out of their employment, including those
asserted under the operative pleading in this action.  Thus, those claims must be referred
to arbitration. Moreover, they agreed to assert any dispute with Menzies on an individual
basis only and waived the right to bring or otherwise participate in class claims in court
or arbitration.  Plaintiff Amaya must also be compelled to submit her individual claim
under the Private Attorneys' General Act ("PAGA") before proceeding with a
representative action in Court.  Accordingly, the Court should compel the individuals in
the Covered Job Classifications to arbitration, exclude them from this certified class
action, and compel Plaintiff Amaya to submit her individual PAGA claim to arbitration.

This Motion is and will be made based on this Notice of Motion and Motion, the
Memorandum of Points and Authorities, the Appendix of Supporting Evidence, all
pleadings, and such other written and oral argument as the Court may entertain on this
Motion.  This Motion is made following the conference of counsel pursuant to L.R. 7-3
which took place between August and September 2024.

///

1

DATED:  December 30, 2024

**FOLEY & LARDNER LLP**
Christopher Ward
Kevin Jackson
Kaleb Berhe

2

3

4

5

/s/ Christopher Ward

6

Christopher Ward
 Attorneys for Defendant
 MENZIES AVIATION (USA), INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................. 8

II.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND.................... 9

    A.    PROCEDURAL BACKGROUND AND THE CERTIFIED CLASS
        THAT CURRENTLY INCLUDES INDIVIDUALS SUBJECT TO
        MANDATORY INDIVIDUAL ARBITRATION........................................ 9

    B.    THE MENZIES ADR POLICY AND ARBITRATION
        AGREEMENT .......................................................................... 10

III.  MENZIES' ATTEMPTS TO NARROW THE SCOPE OF THIS MOTION
    AND PLAINTIFFS' ASSERTION THAT EVERY MENZIES EMPLOYEE
    IS A TRANSPORTATION WORKER................................................ 11

IV.   THE COVERED JOB CLASSIFICATIONS DO NOT HAVE
    SUFFICIENTLY FREQUENT, DIRECT AND ACTIVE INVOLVEMENT
    IN MOVEMENT OF INTERSTATE GOODS AND THEREFORE ARE
    NOT TRANSPORTATION WORKERS............................................... 14

    A.    THE ARBITRATION AGREEMENT SUFFERS FROM NO
        ENFORCEABILITY BAR .......................................................... 14

        1.    The FAA And Its Liberal Policy Favoring Arbitration
            Applies ...................................................................... 15

        2.    The Arbitration Agreement Satisfies Each *Armendariz*
            Factor ....................................................................... 15

        3.    The Arbitration Agreement Encompasses The Covered
            Job Classifications ....................................................... 16

    B.    THE NARROW "TRANSPORTATION WORKER" EXEMPTION
        APPLIES ONLY TO EMPLOYEES WHOSE WORK INVOLVES
        "ACTIVE" AND "FREQUENT" INVOLVEMENT IN THE
        "DIRECT, PHYSICAL" MOVEMENT OF INTERSTATE GOODS...... 17

    C.    WHILE THIS COURT MUST APPLY *LOPEZ* TO FUELERS, IT
        SHOULD FOLLOW THE CONSISTENT GUIDANCE FROM
        *SAXON*, *BISSONNETTE*, *ORTIZ*, AND *FRAGA* ...................... 19

    D.    NONE OF THE COVERED JOB CLASSIFICATIONS HAVE
        "ACTIVE" AND "FREQUENT" INVOLVEMENT IN THE
        "DIRECT, PHYSICAL" MOVEMENT OF GOODS ..........................21

        1.    Covered Job Classifications That Are Plainly Not
            Transportation Workers Because They Are Not
            Involved In The Direct, Physical Loading Or Unloading
            Of Goods ...................................................................22

2.    Covered Job Classifications That Have Infrequent Or
Indirect Involvement With Loading And Unloading Of
Interstate Goods.............................................................................24

E.    PLAINTIFF AMAYA'S REPRESENTATIVE PAGA CLAIM
SHOULD BE DISMISSED OR STAYED...............................................25

V.    CONCLUSION.................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adolph v. Uber Technologies, Inc*.,
  Case No. S274671, 2023 WL 4553702 ....................................................... 26, 27

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) .......................................................................... 15, 16

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 321 (2011) ............................................................................ 10, 15

*Bissonnette v. LePage Bakeries Parks St., LLC*,
  601 U.S. 246 (2024) ...................................... 8, 9, 13, 14, 17, 18, 19, 20, 21, 23

*Circuit City Stores v. Adams*,
  532 U.S. 105 (2001) ............................................................................ 15, 17, 19

*Fraga v. Premium Retail Serv., Inc.*,
  61 F.4th 228 (1st Cir. 2023) ................................................................. 19, 24

*Fraga v. Premium Retail Serv., Inc.*,
  704 F. Supp. 3d 289 (D. Mass. 2023) ................................................ 19, 20, 22, 24

*Green Tree Fin. Corp.-Alabama v. Randolph*,
  531 U.S. 79 (2000) .............................................................................. 14, 24

*Iskanian v. CLS Transp. Los Angeles, LLC*,
  59 Cal. 4th 348 (2014) ............................................................................ 25

*Lamps Plus, Inc. v. Varela*,
  587 U.S. 176 (2019) ................................................................................ 25

*Lopez v. Aircraft Serv. Int'l, Inc.*,
    107 F.4th 1096 (9th Cir. 2024)...................................................................12, 19, 20, 21

*Ortiz v. Randstad Inhouse Servs., LLC*,
    95 F.4th 1152 (9th Cir. 2024)..............................................18, 19, 20, 21, 23

*Rittman v. Amazon.com, Inc.*,
    971 F.3d 904 (9th Cir. 2020)...............................................................20, 21

*Southwest Airlines Co. v. Saxon*,
    596 U.S. 450 (2022) .....................................................................9, 11, 17

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010) ...........................................................................25

*Viking River Cruises, Inc. v. Moriana*,
    596 U.S. 639 (2022) ......................................................................25, 26

**STATUTES**

9 U.S.C. § 2 ........................................................................................15
Code Civ. Proc. § 1285 ....................................................................26, 27
Code Civ. Proc. §1281.4 ..................................................................26, 27
Code Civ. Proc. § 1287.4 .......................................................................26

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The issue for the Court to consider and resolve through this Motion is whether any of the Covered Job Classifications qualify as "transportation workers" under the FAA such that individuals working in those Covered Job Classifications are relieved of their obligation to bring the claims at issue in this case individually in arbitration and can remain part of the currently certified class.  If any Covered Job Classifications do not qualify as "transportation workers," individuals in those Covered Job Classifications must be severed from the scope of the certified class because they cannot as a matter of law participate in class action or representative PAGA litigation.

While the legal issue presented by this Motion is relatively narrow, the degree of analysis this Motion asks of this Court regrettably is not.  Repeatedly, the Supreme Court has described the transportation worker exemption as narrow and has instructed lower courts to avoid broad interpretations that spur litigation over its breadth.  Indeed, earlier this year, the high court clarified that any interpretation of the exemption centering on what the employer does, and not what the employees do, is erroneous.  *See Bissonnette v. LePage Bakeries Parks St., LLC*, 601 U.S. 246 (2024).  Yet Plaintiffs have taken the same industry-wide argument that *Bissonnette* explicitly rejects, and have indicated they will resist this Motion with respect to every Menzies non-exempt classification in California because no matter what any given employee does, his or her work has some impact on Menzies' larger ability to carry out its operations.  This is a categorically incorrect argument, and it is unfortunate Menzies must now bring a much broader Motion asking the Court to essentially conduct dozens of "mini-trials" in direct contravention of what the Supreme Court has instructed.  *See id*. (directing that application of the transportation worker rule should not result in "mini trials" and asserting extensive discovery should not be necessary to ruling on a motion to compel arbitration).

As set forth *infra*, the transportation worker exception is narrow, applying only to those classifications of workers that have "direct" and "physical" involvement with the

movement of interstate goods that is sufficiently "active" and "frequent" to trigger the narrow exemption. *See Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 455-58 (2022). This analysis, combined with *Bissonnette*'s cautions, make plain that a practical focus on what a worker does – not what the impact of an individual's work is – is the critical question. Only if the worker actually has direct, physical involvement in the transportation of interstate goods, and only if the worker performs that work with sufficient frequency, does the exemption apply. By following this straightforward path and applying it to the dozens of classifications this Motion must regrettably encompass, the Court should compel the individual arbitration of all individuals in the Covered Job Classifications and sever them from the currently certified class.

## II.    RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### A.    Procedural Background And The Certified Class That Currently Includes Individuals Subject To Mandatory Individual Arbitration

Plaintiff Amaya, who worked in Menzies' Passenger Service Agent job classification, initiated the present class action on August 19, 2022. [Dkt. No. 1.] She then amended her pleading with a First Amended Complaint ("FAC") adding former Ramp Agent Brayan Lozano Gonzalez as a plaintiff and proposed class representative on August 30, 2022. [Dkt. No. 7.] On May 9, 2023, counsel for Plaintiffs filed a Second Amended Complaint ("SAC"), which replaced Gonzalez with another Ramp Agent, Anibal Silva. [Dkt. No. 40.]

On May 22, 2024, Plaintiffs moved for class certification, relying on the two class definitions stated in the SAC – both of which include all employees in non-exempt classifications in California without regard to their job duties or job classification. [*See* Dkt No. 40, ¶ 30, No. 41, and No. 41-1.] In other words, Plaintiffs proposed to this Court that it certify a class without any consideration for the ADR Policy's implications. On June 12, Menzies filed its Opposition to Plaintiffs' Motion for Class Certification (the "Opposition"). [Dkt. No. 50.] Menzies repeatedly invoked the fact that "virtually all of Menzies' California non-exempt employees are subject to the ADR Policy, including

1  *both* Plaintiffs and *every one* of the declarants relied upon by Plaintiffs in support of their

2  Motion." [Dkt. No. 50, p. 13, ln. 20-22.]

3      On February 8, 2024, the Court granted Plaintiffs' Motion for Class Certification,

4  which included as class members all of Menzies' non-exempt California employees who

5  signed valid and enforceable arbitration agreements containing class action waivers.

6  [Dkt. No. 69.] Plaintiffs later sought partial summary judgment contending that Menzies

7  had waived its right to enforce the Arbitration Agreement as to the class members. [Dkt.

8  No. 76.] The Court denied Plaintiffs' motion, thereby clearing the path for Menzies to

9  bring the instant motion. [Dkt. No. 86.]

### B.    The Menzies ADR Policy And Arbitration Agreement

11     Following the Supreme Court's ruling in *AT&T Mobility LLC v. Concepcion*, 563

12  U.S. 321 (2011), Menzies implemented the ADR Policy for all employees at its locations

13  in the United States, including its employees in California, that includes a waiver of the

14  right to participate in class or otherwise representative action litigation. [Declaration of

15  Talin Bazerkanian ("Bazerkanian Decl."), ¶ 13.] For the period relevant to this Action,

16  virtually 100% of Menzies' non-exempt current and former employees in California have

17  bound themselves to the ADR Policy, with the handful of opt-outs limited to exempt

18  management personnel. [Bazerkanian Decl., ¶ 15.] Employees who have bound

19  themselves to the ADR Policy via execution of the Arbitration Agreement have agreed

20  with Menzies that any claims arising from the employment relationship, other than

21  certain categories of statutorily-excluded claims, must be brought in binding arbitration –

22  including "claims brought under the California Labor Code." [Bazerkanian Decl., ¶ 15,

23  Ex. G.] Employees also receive a free-standing copy of the Menzies ADR Policy

24  memorializing all the terms of the ADR Policy, including, among other terms, that it

25  applies bilaterally to the employee and Menzies, that Menzies will be responsible for all

26  unique costs of arbitration, that the parties will have the full range of discovery available

27  to them as in civil litigation, that the arbitrator has the power to award all civilly-available

28  forms of relief, and that the arbitrator must issue a written award. [Bazerkanian Decl., ¶

17, Ex. E.]  The ADR Policy and Arbitration Agreement also contain a waiver of the right to act as a class action representative or pursue claims on any type of representative basis, as it explicitly prohibits "otherwise consolidating a covered claim with the claims of others."  [Bazerkanian Decl., ¶ 17, Exs. G, E.]

In support of this Motion, Menzies has submitted a declaration from Talin Bazerkanian, Menzies' Senior Vice President of Human Resources, attesting to and authenticating the existence of Arbitration Agreements signed by the class members covered by this Motion.  By agreeing to be bound by the Menzies ADR Policy, Amaya, Silva, and class members waived the ability to pursue, on an individual or representative basis, various wage and hour claims against Menzies in a civil forum, including those contained in the scope of this class action.  [Bazerkanian Decl., ¶ 17, Exs. E-H.]  The issue for this Court to now consider is whether any of the Covered Job Classifications qualify as "transportation workers" under the FAA such that individuals working in those Covered Job Classifications are relieved are the ADR Policy's and Arbitration Agreement's requirement to bring the claims at issue in this case individually in arbitration and can remain part of the currently certified class.

## III.  MENZIES' ATTEMPTS TO NARROW THE SCOPE OF THIS MOTION AND PLAINTIFFS' ASSERTION THAT EVERY MENZIES EMPLOYEE IS A TRANSPORTATION WORKER

Following months of discussion about the impact of arbitration in this case and Plaintiffs' unsuccessful waiver arguments to preclude Menzies from asserting its arbitration rights, on September 13, 2024, Menzies sent a letter to Plaintiffs' counsel to meet and confer regarding the instant motion.  [Ward Decl., ¶¶ 2-3, Ex. A.]  Menzies proposed a list of non-exempt job positions that Menzies contends remain subject to the FAA following the Supreme Court's decision in *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022) applying the FAA's transportation worker exemption to Ramp Agents who directly load cargo onto passenger aircraft.  [*Id*.].  Menzies acknowledged that for

the time being[1], the Ninth Circuit's decision in *Lopez v. Aircraft Serv. Int'l, Inc.*, 107 F.4th 1096 (9th Cir. 2024) extends the holding of *Saxon* to find "Fuelers" are also exempt transportation workers, and in the spirit of narrowing the issues for this Court to decide, Menzies agreed it would not move to compel arbitration as to the following job positions: Ramp Agent, Lead Ramp Agent, Lead Cargo Runner, Cargo Runner, and Aircraft Fueler.[2]  [*Id.*]

Instead, Menzies proposed to focus this Motion on job classifications that do not fall under the FAA's "transportation worker" exemption because they are not a "class of workers directly involved in transporting goods across state or international borders." *Saxon*, 596 U.S. 450.  Menzies thus identified the following positions: Ramp Supervisor, Passenger Service Agent Lost and Found, Operations Agent, Passenger Service Agent, Passenger Service Lead Agent, Passenger Service Supervisor, Safety Administration Assistant, Service Desk Agent, Training Supervisor, Supervisor Timekeeper, Baggage Coordinator, Talent Acquisition, Safety Supervisor, Safety Security and Environmental Supervisor, Safety and Training Supervisor, Lavatory Agent, Human Resources Administrative, General Worker, Cabin Cleaner, Lead Cabin Cleaner, Cargo Office Lead, Cargo Office Supervisor, Compliance Officer, Fueling Supervisor, Dispatcher, Quality Control Supervisor, Inventory Clerk, GSE Administration Assistant, GSE Mechanic, GSE Utility Agent, Lead GSE Mechanic, and Cargo Handler Agent.[3]  Moreover, Menzies

---

[1] Menzies filed on November 26, 2024 a petition for a writ of certiorari to the United States Supreme Court seeking review of *Lopez*, which has been docketed under Case No. 24-596.  Menzies reserves the right to later move to compel arbitration of Fuelers (and potentially other classifications depending on how this Court resolves this Motion) based on the outcome of any Supreme Court review.

[2] Menzies has since determined the following additional positions are not subject to the instant motion: Cargo Handler Agent, Lead Cargo Handler, Warehouse Cargo Lead, Baggage Agent, Baggage Lead Agent, Freighter Agent, and Lead Aircraft Fueler.

[3] Menzies has since determined the following additional positions are subject to the instant motion: Apprentice – Fuel Facility Management, Driver Operator, Accounting Clerk, Accounts Receivable Specialist, Administrative Assistant – Fueling, Cabin Services Agent, Cabin Services Lead Agent, Cargo Agent, Cargo Screening Agent, Facility Electrician, Fuel Facility Electrician, Fuel Farm Mechanic, Fuel Farm Operator, Fuel Farm Supervisor, Human Resources Specialist, General Fueling Helper, GSE Fueler, Inside Wireman, Intern, Janitor, Lead Dispatcher, Fuel Farm Operator Lead, Lead Quality Control Technician, Lost and Found Bag Agent, Quality Control Technician,

asserted in verbal meet-and-confer discussions that the Parties could narrow this Motion to a handful of these Covered Job Classifications because the majority of them plainly do not have "direct involvement" in transporting goods across state or international borders.

At no point during the meet-and-confer process has Plaintiffs' counsel taken the position that the Arbitration Agreement itself suffers from any enforceability flaws unrelated to the transportation worker exemption. [Ward Decl., ¶ 5.] Instead, they have taken the position that the <u>entire class</u> (i.e., all Menzies' non-exempt employees in California) are "transportation workers" – arguing *every* Menzies worker is "integral" to the larger movement of interstate goods – and rejected Menzies' efforts to narrow the scope of this motion even as to classifications that plainly have no involvement at all, let alone direct involvement, in the movement of interstate cargo (e.g. "Talent Acquisition," "Human Resources Administrative" and its many desk/office and infrastructure positions like Safety and Training roles). [Ward Decl., ¶ 5, Ex. B.] Even after Menzies reminded Plaintiffs' counsel that the Supreme Court has explicitly rejected, both in *Saxon* and *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246 (2024), this same industry-wide interpretation of the transportation worker exemption, and has instead instructed lower courts to give "attention to the performance of work" in determining whether such work is "directly involved in transporting goods across state or international borders" *Id*. at 247. Plaintiffs' counsel continued to make arguments such as "administrative HR people," perform duties that are "necessary in facilitating the movement of goods across borders" and "the absence of that employee's work would cause the movement of goods to 'grind to a halt.'" [Ward Decl., ¶ 5, Ex. B.]

Regrettably unable to narrow the scope of this Motion following these meet and confer efforts, Menzies now asks this Court to compel arbitration of all class members included in the Appendix of Evidence submitted with this Motion.

Load Master, Maintenance Technician – Fuel Storage Facility, Operations Coordinator Supervisor, Operations Coordinator, Operations Supervisor – Ground Handling, Cargo Screening Supervisor, Timekeeper, and Training Coordinator.

## IV. THE COVERED JOB CLASSIFICATIONS DO NOT HAVE SUFFICIENTLY FREQUENT, DIRECT AND ACTIVE INVOLVEMENT IN MOVEMENT OF INTERSTATE GOODS AND THEREFORE ARE NOT TRANSPORTATION WORKERS

Having taken the position that *every* Menzies employee is a transportation worker (effectively an employer-wide assertion that ignores *Saxon*'s and *Bissonnette*'s explicit direction otherwise), <u>Plaintiffs bear the burden to persuade this Court</u> – with respect to each and every one of the Covered Job Classifications – <u>that the transportation worker exemption applies to the classification</u>.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000) ("the party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration").  Even if Plaintiffs challenge the viability of the Arbitration Agreement as a general matter despite making not such argument during L.R. 7-3 discussions, any such challenge would fail.  This Court should also hold Plaintiffs to their burden – again, with respect to each classification – to demonstrate how classifications of workers that either have no direct relationship with passenger baggage or cargo, or only an incidental relationship with it and the movement of it on and off aircraft – satisfy the plain language analysis set forth in *Saxon* as modified by *Bissonnette*'s indication that such analysis should be practical and straightforward.  The evidence provided by Menzies in support of this Motion makes clear Plaintiffs will not and cannot satisfy this burden.

### A. The Arbitration Agreement Suffers From No Enforceability Bar

As noted *supra*, Plaintiffs did not during the Local Rule 7-3 process contest the validity of the Arbitration Agreement on more "standard" enforceability arguments. While Menzies prefers to focus this Motion on the transportation worker exemption and how it does not apply to the Covered Job Classifications, in an abundance of caution and to avoid any claims of waiver, Menzies will demonstrate that there is no procedural or state-law basis to refuse to enforce the Arbitration Agreement generally.

### 1.    <u>The FAA And Its Liberal Policy Favoring Arbitration Applies</u>

The principal purpose of the FAA, as well as the California Arbitration Act, is to ensure that "private arbitration agreements are enforced according to their terms," reflecting a liberal policy favoring arbitration.  *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333 (2011); *see also* 9 U.S.C. § 2.  The U.S. Supreme Court also has repeatedly affirmed that the FAA applies to written arbitration agreements in the employment context.  *Circuit City Stores v. Adams*, 532 U.S. 105, 115 (2001).  It has also held that, even in the employment context, "Congress has instructed in the Arbitration Act that arbitration agreements providing for individualized proceedings must be enforced, and neither the Arbitration Act's saving clause nor the NLRA suggests otherwise."  *Id.* (emphasis added.)

Here, absent any application of the Section 1 transportation worker exemption (*see infra*), the FAA's general principles unquestionably apply because the Arbitration Agreement "evidenc[es] a transaction involving [interstate] commerce."  *See* 9 U.S.C. § 2.  In this regard, Menzies is an aviation services business that provides ground handling services to commercial airlines' aircraft, cargo handling services in airlines' cargo warehouses, and both aircraft fueling to airlines and fuel facilities management services to airports. Thus, the work performed by the Covered Job Classifications involves interstate commerce and the Arbitration Agreement "evidence[s] a transaction involving commerce," 9 U.S.C. § 2, and therefore the FAA and its liberal policy favoring arbitration applies.

### 2.    <u>The Arbitration Agreement Satisfies Each *Armendariz* Factor</u>

Plaintiffs may argue that in addition to deciding whether the Arbitration Agreement is valid and encompasses the dispute at issue, the Court also must also look to *Armendariz v. Foundation Health Psychcare Services, Inc.*, in which the California Supreme Court set forth five elements necessary to an enforceable employment arbitration agreement: (1) a neutral arbitrator; (2) more than minimal discovery, (3) a written award, (4) availability of court remedies, and (5) the prohibition of unreasonable

costs or arbitrator fees being imposed on the employee.[4]  *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 102 (2000) ("*Armendariz*").  The Arbitration Agreement satisfies the *Armendariz* requirements.  Specifically, the first two elements are satisfied because the Agreement (1) provides for an arbitrator via the American Arbitration Association's ("AAA") Employment Panel (in the event the parties cannot mutually agree on an arbitrator), who will be selected in accordance with and bound by the AAA's Employment Arbitration Rules and Mediation Procedures, and (2) permits the parties to exercise the same rights and be subject to the same obligations regarding discovery as provided in the California Code of Civil Procedure.  The third and fourth elements are satisfied because the Agreement states in part that "the arbitrator shall have the same authority to award remedies and damages on the merits of the dispute as provided to a judge and/or jury under parallel circumstances."  Finally, the fifth element is satisfied because Menzies is responsible "for the arbitrator's fee and expenses and any costs associated with the facilities for the arbitration."  Therefore, the Arbitration Agreement satisfies all of the *Armendariz* factors, and this matter should be moved to arbitration accordingly.

### 3.    The Arbitration Agreement Encompasses The Covered Job Classifications

There is no reasonable dispute that the individual claims of individuals in the Covered Job Classifications are covered by the Arbitration Agreement.  This action alleges direct claims for unpaid meal and rest break premiums, waiting time penalties, inaccurate wage statements, unpaid necessarily incurred business expenses, and unfair competition. [*See generally*, SAC.]  The Arbitration Agreement broadly covers any claims arising from the employment relationship, other than certain categories of

---

[4] Many courts and commentators have noted that the *Armendariz* test may no longer be good law, reasoning that the FAA displaces any state law which impedes the FAA' s purposes of promoting resolution through arbitration.  By imposing a list of requirements applicable only to arbitration agreements and creating an additional hurdle to enforceability of such agreements, *Armendariz* arguably runs afoul of the FAA.  Nevertheless, the *Armendariz* factors, if deemed applicable, are met here.

statutorily-excluded claims, explicitly covers claims relating to meal periods, rest periods, itemized wage statements, and "claims brought under the California Labor Code." [Bazerkanian Decl. ¶ 15, Ex. G.]  Thus, absent application of the transportation worker exemption, the claims of all individuals the Covered Job Classifications are subject to arbitration.

**B.** **The Narrow "Transportation Worker" Exemption Applies Only To Employees Whose Work Involves "Active" And "Frequent" Involvement In The "Direct, Physical" Movement Of Interstate Goods**

Consistent with its extensive jurisprudence speaking to the importance of lower courts interpreting and applying the FAA consistent with the above-mentioned principles, the Supreme Court has directed lower courts to construe the statute's Section 1 "residual clause" narrowly, erring in favor of arbitration unless the circumstances at issue clearly compel a different result.  *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111, 114-15 (2001).  It did so in *Saxon*, faithfully balancing Section 1's exclusions against the FAA's liberal policy favoring arbitration by directing courts to focus on the particular workers involved and the actual work they perform – <u>not the environment where the workers carry out their duties or the employer's business or industry</u>.  *Saxon*, 596 U.S. at 455-58, 463.  *Saxon* also outlined a two-part framework for analyzing the transportation worker exemption that emphasizes fundamental and practical concepts: (1) the individual must have "direct," "physical" involvement with movement of interstate goods; and (2) only those who have "active" and "frequent" involvement in that "direct, physical" movement of the goods as part of their interstate journey fall within the narrow exemption.  *Id.* Subsequent to *Saxon*, the Supreme Court again rejected the same notion advanced by Plaintiffs during meet and confer discussions that the employer's business or industry affects the analysis, confirming again that "the relevant question is 'what [the employee] does at Southwest, not what Southwest does generally.'"  *Bissonnette*, 601 U.S. at 247, quoting *Saxon*, 596 U. S. at 456.  The high court also reiterated the importance of avoiding interpretative tests for the transportation worker exemption that make its

application highly fact dependent "before deciding a simple motion to compel arbitration." *Id.*. *Bissonnette* thus indicates that courts should bring a practical approach to transportation worker questions using easy-to-apply principles, because otherwise "mini-trials … could become a regular, slow and expensive practice in FAA cases" breeding "litigation from a statute that seeks to avoid it." *Id.* (internal citations omitted).

The Ninth Circuit considered and followed these directives in *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152 (9th Cir. 2024), applying the transportation worker exemption to workers who physically moved interstate goods only over small distances inside a warehouse.  Central to *Ortiz*'s analysis was the fact that the even though the workers at issue only physically handled and moved the goods over a matter of a few feet, they nevertheless physically handled and moved the goods.  *Id.* at 1160, 1162-63 ("*Saxon*'s bottom line is that … an employee's relationship to the movement of the goods must be sufficiently close enough … that his work plays a tangible and meaningful role in their progress through … interstate commerce") ("Though Ortiz moved goods only a short distance … he nevertheless moved them.  And not only did he move them, he did so with the purpose of facilitating their continued travel").  *Ortiz* also explicitly rejected the argument that focusing only on the goods is improper – meaning transportation worker application should start from the perspective of who moves the goods, not from being amorphously "vital" to their interstate movement.  *Id.* at 1164 ("*Saxon* did not improperly shift its focus away from Saxon's work by accounting for the *inescapable fact that her job required her to handle goods* … Rather, the Court could only understand the extent to which Saxon contributed to the interstate commerce of baggage after it understood that Saxon's job … *involved handling bags as they traveled interstate*") (emphasis supplied).  Put simply, after acknowledging that employees "who do not transport products across great distances and interact with interstate commerce on a purely local basis present[s] a particularly difficult interpretative issue," *id.* at 1159, *Ortiz* carefully and faithfully followed *Saxon* by virtue of its emphasis on the plaintiff's physical handling and directly moving goods.

The First Circuit's recent analysis in *Fraga v. Premium Retail Serv., Inc.*, 61 F.4th 228 (1st Cir. 2023) and the District of Massachusetts' subsequent decision in *Fraga v. Premium Retail Serv., Inc.*, 704 F. Supp. 3d 289 (D. Mass. 2023) also highlight the importance of direct physical movement of goods by applying *Saxon*'s "active" and "frequent" requirements to such activity.  The First Circuit found that though the class of workers had ***some*** direct physical contact with goods and moved them across state lines, the class of workers bore the burden to demonstrate that they directly and ***frequently*** engaged in such tasks as required by *Saxon*. 61 F.4th at 237. On remand, after careful scrutiny of the evidence, the district court declined to apply the transportation worker exemption because the class of workers' direct movement of goods in interstate commerce occurred a couple of times a week for no more than an hour at a time, which the district court held was <u>insufficiently frequent</u>. 704 F. Supp. 3d at 297-98. The *Fraga* cases thus reinforce the practical necessity that the class of workers themselves "directly" and "physically" move interstate goods; if it is a necessity transportation have "frequent" and "active' involvement in their movement, then they must themselves be responsible for such movement.

## C. While This Court Must Apply *Lopez* To Fuelers, It Should Follow The Consistent Guidance From *Saxon*, *Bissonnette*, *Ortiz*, and *Fraga*

Until and unless the Supreme Court grants review of the *Lopez* opinion, Menzies recognizes that this Court is bound to apply it and find individuals who directly pump fuel into aircraft are transportation workers.  However, in assessing the residual clause exception to the Covered Job Classifications, the consistent principles drawn from *Saxon*, *Bissonette*, and *Ortiz* – all of which follow *Circuit City*'s instruction to construe the Section 1 exception narrowly, 532 U.S. at 114-15 – supply the Court with the practical principles necessary to decide what should be "a simple motion to compel arbitration" and avoid "mini-trials" breed "litigation from a statute that seeks to avoid it." *Bissonnette*, 601 U.S. at 247.

Rather than tethering its analysis to *Saxon, Bissonnette* and *Ortiz* – authority the

panel acknowledged but failed to follow in any practical way – the *Lopez* panel relied principally on *Rittman v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020). But *Rittman* is a pre-*Saxon* case that does not arise from worker movement of goods; instead, *Rittmann* addresses the importance of whether the individual's work requires crossing of state lines (a question never at issue in *Lopez* and not at issue in this matter). At odds with *Saxon*'s instruction to focus on whether the class of workers have (1) "direct" and "physical" involvement with movement of interstate goods and (2) only "active" and "frequent" involvement in that "direct, physical" movement of the goods, *Lopez* found the transportation worker exemption applied to individuals whose work is "*a vital component* to [a plane's] ability to engage in the interstate and foreign transportation of goods." 107 F.4th at 1101 (emphasis supplied). Not only does this "vital component" analysis find no grounding in *Saxon* or *Bissonnette*, but the *Lopez* panel also gives courts no practical guidance for how to assess the amorphous question of whether an individual's work is sufficiently "vital" to invoke the transportation worker exemption. Such "vital component" language also effectively reads away the "frequency" element from the *Saxon* two-part analysis which *Fraga* so carefully applied in questioning whether workers themselves moved goods with sufficient frequency to qualify as transportation workers. Indeed, and as *Fraga* teaches and *Lopez* ignores, *Saxon*'s "active" and frequent" elements have no practical meaning absent connection to "direct, physical" movement of goods. *Saxon*, 596 U.S. at 455-58, 463; *Ortiz*, 95 F.4th. at 1164 (noting *Saxon*'s analysis turns on "the inescapable fact that her job required her to handle goods").

As it analyzes this Motion with respect to each of the Covered Job Classifications, this Court can and should take far greater guidance from the practical analyses offered by *Saxon*, *Ortiz* and the *Fraga* cases, which provide a practical, easy-to-apply roadmap for a "simple motion to compel arbitration" without creating "mini-trials" that are a "slow and expensive practice" and without breeding "litigation from a statute that seeks to avoid it." *Bissonnette*, 601 U.S. at 247. *Saxon* and *Bissonnette* already reject the expansive

arguments that underly Plaintiffs' position that every Menzies non-exempt employee is "integral" to the larger movement of interstate goods on the premise that at a macro-level "the absence of that employee's work would cause the movement of goods to 'grind to a halt.'" [Ward Decl., ¶ 5, Ex. B.]    And *Ortiz*'s thoughtful analysis looking to *Saxon*'s "bottom line" is a far better guidepost for this Court than *Lopez*'s boundless "vital component" language bereft of meaningful discussion and relying on *Rittman*'s analysis relating to a completely different legal question.

### D.    None Of The Covered Job Classifications Have "Active" And "Frequent" Involvement In The "Direct, Physical" Movement Of Goods

Consistent with the position it took during the meet and confer process, there are positions part of the currently certified class that Menzies acknowledge qualify as transportation workers under *Saxon*, and it acknowledges this Court must apply *Lopez* to workers who themselves pump fuel onto aircraft.  To be clear then, the following classifications are not covered by this Motion and at this time the Court need not analyze their qualification as transportation workers: Ramp Agents, Lead Ramp Agents, Cargo Runners, Lead Cargo Runners, Cargo Handlers, Lead Cargo Handlers, Baggage Agents, Lead Baggage Agents, Freighter Agents, Aircraft Fuelers, Lead Aircraft Fuelers, and Warehouse Cargo Leads.

Menzies asks the Court to compel arbitration the claims of workers in every classification within the Covered Job Classifications because none of them share the common thread of "active" and "frequent" involvement in the "direct, physical" movement of interstate goods.  All of the Covered Job Classifications fall into one of two categories: (1) the workers have <u>no responsibility whatsoever</u> for any "direct, physical" loading of cargo or passenger baggage onto or off of passenger aircraft, and thus plainly do not qualify as transportation workers under *Saxon*'s clear language and *Bissonnette*'s clear suggestion that the transportation worker analysis is a straightforward, practical analysis; or (2) even if the workers have some involvement with loading or unloading baggage or cargo, that work is limited and only incidental to their primary job duties,

such that they do not satisfy *Saxon*'s "active, frequent" requirements as emphasized by the *Fraga* cases.

To show these facts, Menzies submits with this Motion a voluminous Appendix of Evidence grouping the Covered Job Classifications into the following categories: (1) positions described by the authenticated job description only, because from the face of the job description itself it is clear the classification has no direct role whatsoever in the movement of cargo or passenger baggage onto or off of passenger aircraft ("Evidence Group 1"); and (2) positions described by the authenticated job descriptions and supplemented by testimony describing the actual job duties to show the job classification has either (a) no role whatsoever in the movement of cargo or passenger baggage onto or off of aircraft ("Evidence Group 2(a)"), (b) indirect/ancillary involvement in the movement of cargo or passenger baggage onto or off of aircraft ("Evidence Group 2(b)"), or (c) infrequent involvement in the movement of cargo or passenger baggage onto or off of of aircraft ("Evidence Group 2(c)").

1. **Covered Job Classifications That Are Plainly Not Transportation Workers Because They Are Not Involved In The Direct, Physical Loading Or Unloading Of Goods**

Workers in a substantial swath of Covered Job Classifications plainly do not qualify as transportation workers because their job duties simply do not encompass *any* direct, physical movement of cargo, baggage, or passengers in their interstate journey – let alone loading or unloading of such interstate goods onto or off of aircraft.  In many cases, this is plainly evident from the job title and character itself, such as for workers who perform administrative, desk and office jobs or purely localized job functions entirely unrelated to the actual movement of goods.  In other cases, the workers perform purely infrastructure support, training and supervisory functions.

Given the unfortunate volume of job classification Plaintiffs have insisted be at issue in this Motion, it is unfortunate that Menzies must now ask the Court to apply the transportation worker analysis to dozens and dozens of job classifications, requiring

review of classification-by-classification evidence regarding the job duties and work activities of each Menzies position.  Page limitations governing motion practice put practical restrictions on providing the Court with a position-by-position breakdown within this brief, but to try to make the Court's heavy lift in ruling on this Motion a little easier, Menzies has attempted to organize the evidence in a way that it hopes will help the Court efficiently consider each position.  The portion of Menzies' argument included under this Section IV.D.1 thus applies to every position included with Evidence Group 1 and Evidence Group 2(a).  The extensive evidence provided by Menzies with respect to each of the classifications within those two evidence groups makes plain they have no involvement whatsoever in the movement of interstate goods onto and off of aircraft, and thus the Section 1 exemption does not apply under *Saxon*'s plain language.

Plaintiffs adopted the untenable position during meet-and-confer discussions that these individuals who plainly have no direct role in moving goods whatsoever, such as "administrative HR people," perform duties that are "necessary in facilitating the movement of goods across borders" and "the absence of that employee's work would cause the movement of goods to "grind to a halt."  [Ward Decl., ¶ 5, Ex. B.]  Plaintiffs fail to acknowledge how that argument is squarely at odds with *Saxon*, *Bissonnette*, and *Ortiz*, and constitutes a de facto "industry-wide" framework unambiguously rejected by the Supreme Court.  Plaintiffs' characterization of employees in these job functions is informed entirely by the industry in which they operate, not the day-to-day work they perform.  While some of these employees perform work that is unique to the industry, such as GSE Mechanics and Lavatory Agents, many of them perform work that is necessary to most businesses irrespective of industry, such as Training Supervisors, Safety and Training Managers, Human Resources Administrators, and Timekeepers.  Their work would remain fundamentally the same even if performed outside of a transportation industry workplace, such as retail or hospitality.

### 2.    Covered Job Classifications That Have Infrequent Or Indirect Involvement With Loading And Unloading Of Interstate Goods

As *Saxon*'s language makes clear and the *Fraga* cases highlight, some direct physical relationship with interstate goods is not itself suffice for application of the transportation worker exemption. Rather, they must have "active" involvement in the goods' interstate movement and that "active" involvement must be sufficiently frequent. The *Fraga* cases suggest that the performance of these duties "for two or more hours most every day" satisfies this frequency measure – in other words, approximately 25% or more of an employee's total working duties (assuming a standard eight-hour shift) must involve "active" involvement in the goods' interstate movement. *Fraga*, 61 F.4th at 237; *Fraga*, 704 F. Supp. 3d at 297-98. Moreover, as the *Fraga* cases also emphasize, it is the employee's burden to demonstrate that the class of workers performs such duties with sufficient frequency as the party resisting arbitration. *Fraga*, 704 F. Supp. 3d at 297-98, citing *Green Tree* , 531 U.S. at 91.

All of the positions covered by this Section IV.D.2 portion of Menzies' Motion are found in Evidence Groups 2(b) and 2(c). The extensive evidence provided by Menzies with respect to each of the classifications demonstrates that to the extent they have any direct relationship in the movement of interstate goods, that relationship is incidental and certainly does not rise to the level of approximately 25% of their working time. Plaintiffs simply will not have any legitimate evidence supporting arguments otherwise sufficient to carry their burden as the party resisting arbitration. In fact, Plaintiff Amaya has conceded that during her employment as a Passenger Service Agent she infrequently and only occasionally moved baggage from the cabin crew down to Ramp Agents when overhead storage on passenger aircraft cabins were full, but she did **not** participate in loading the passenger baggage onto the aircraft because that task was performed by Ramp Agents. [Ward Decl., ¶ 7, Ex. C; Tab 4 of Appendix of Evidence.]

E.   **Plaintiff Amaya's Representative PAGA Claim Should Be Dismissed Or Stayed.**

Finally, all the foregoing applies with equal measure to PAGA claims and that California's legislature cannot supersede the preemptive scope of the FAA.  *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022) has resolved whether the FAA preempts the rule of *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 380 (2014) that "PAGA claims cannot be split individual arbitrable 'individual' claims and nonarbitrable 'representative' claims."  In holding that the FAA preempts the *Iskanian* rule, *Viking River* went beyond simply enforcing a "representative action waiver" and instead analyzed the issues of claim joinder and standing.

With respect to claim joinder, specifically, the U.S. Supreme Court held that PAGA's built-in mechanism of claim joinder conflicts with the FAA.  *Iskanian*'s prohibition of contractual division of PAGA actions into constituent claims "unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate,' *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019), and does so in a way that violates the fundamental principle that 'arbitration is a matter of consent.'"  *Viking River*, at 641 (citing *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).)  Therefore, "state law cannot condition the enforceability of an agreement to arbitrate on the availability of a procedural mechanism that would permit a party to expand the scope of the anticipated arbitration by introducing claims that the parties did not jointly agree to arbitrate."  *Id*.  In other words, the FAA preempts *Iskanian* insofar as it requires joinder of claims under PAGA.  As a result, *Viking River* instructs that PAGA encompasses an "individual" claim and a "non-individual" claim, and that the FAA preempts *Iskanian* to the extent that it would prevent an employee from waiving the right to bring his "individual" PAGA claim in a court action.  *Id*. at 642.

In *Viking River*, the U.S. Supreme Court also considered PAGA's standing requirement, and addressed the question of whether an individual who is compelled to

submit his individual PAGA claim to arbitration retains standing to pursue the "non-individual" PAGA claim (i.e., the representative claim brought for the benefit of other "aggrieved employees"). The Court held, in unequivocal terms, that "[u]nder PAGA's standing requirement, a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action. *See* Cal. Lab. Code Ann. §§2699(a), (c). When an employee's own dispute is pared away from a PAGA action, the employee is no different from a member of the general public, and PAGA does not allow such persons to maintain suit." *Viking River* at 663. As a result, once Plaintiff here is required to submit his individual PAGA claim to arbitration – and he must pursuant to *Epic Systems* and its predecessor cases – "the correct course is to dismiss [his] remaining [non-individual] claims." *Id.*

Should this Court decline to follow *Viking River*'s instruction, at a minimum Plaintiff Amaya's representative PAGA claim must be stayed pending the resolution of her individual claims pursuant to *Adolph v. Uber Technologies, Inc*., Case No. S274671, 2023 WL 4553702. In *Adolph*, the California Supreme Court determined that a plaintiff whose individual PAGA claim has been compelled to arbitration is not stripped of "standing as an aggrieved employee to litigate claims on behalf of other employees under PAGA." *Id.* at *8. In making its decision, the Court specifically directed the process for how such arbitration and litigation should proceed:

> First, the trial court may exercise its discretion to stay the non-individual claims pending the outcome of the arbitration pursuant to section 1281.4 of the Code of Civil Procedure. Following the arbitrator's decision, any party may petition the court to confirm or vacate the arbitration award under section 1285 of the Code of Civil Procedure. If the arbitrator determines that Adolph is an aggrieved employee in the process of adjudicating his individual PAGA claim, that determination, if confirmed and reduced to a final judgment (Code Civ. Proc., § 1287.4), would be binding on the court, and Adolph would continue to have standing to litigate his nonindividual claims. If the arbitrator determines that Adolph is not an aggrieved

> employee and the court confirms that determination and reduces it to a final judgment, the court would give effect to that finding, and Adolph could no longer prosecute his non-individual claims due to lack of standing.

*Id*. at *8.

Thus, should the Court decide to not follow the instruction of *Viking River* with regard to the disposition of the PAGA representative claim, the Court must, at the very least, follow the recent guidance of *Adolph* and stay Plaintiff Amaya's representative PAGA claim pending the outcome of her individual PAGA claim, pursuant to California Code of Civil Procedure Section 1281.4. Once arbitration is complete, either party may petition the Court to confirm or vacate the arbitrator's decision pursuant to Section 1285. This process will expedite any further litigation and reduce duplication of resources.

## V.    **CONCLUSION**

Because the Covered Class Members agreed to arbitrate their employment-related claims, including the claims at issue in this case, and the Arbitration Agreement does not allow arbitration of class or collective, their individual claims must be compelled to arbitration and they should be excluded from participating in this class action.  Menzies respectfully requests that the Court grant its Motion in its entirety.


DATED:  December 30, 2024          **FOLEY & LARDNER LLP**
                                   Christopher Ward
                                   Kevin Jackson
                                   Kaleb Berhe



                                   /s/ Christopher Ward
                                   _____
                                   Christopher Ward
                                   **Attorneys for Defendant**
                                   MENZIES AVIATION (USA), INC.