C. JOE SAYAS, JR. (CA Bar No. 122397)
cjs@joesayaslaw.com
KARL P. EVANGELISTA (CA Bar No. 250685)
kpe@joesayaslaw.com
**LAW OFFICES OF C. JOE SAYAS, JR.**
500 N. Brand Boulevard, Suite 2000
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

DAVID P. KING (CA Bar No. 136765)
dpk@kcmlaw.net
**KING CHENG MILLER & JIN, LLP**
150 N. Santa Anita Ave., Ste. 410
Arcadia, California 91006
Telephone: (626) 304-9001
Facsimile: (626) 304-9002

Class Counsel

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and ANIBAL SILVA, an individual; on behalf of themselves and others similarly situated,<br><br>                Plaintiffs,<br><br>        vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>                Defendants. | Case No. 2:22-cv-05915-HDV-MARx<br><br>CLASS ACTION<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS**<br><br>Date:      February 20, 2025 [vacated]<br>Time:      10:00 a.m.<br>Judge:     Hon. Hernán D. Vera<br>Ctrm:      5B, 5th Floor |

a

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ......................................................................... 1

II.   FAA SECTION 1 EXCLUDES FROM ARBITRATION
      WORKERS ENGAGED IN FOREIGN OR INTERSTATE
      COMMERCE ............................................................................... 3

      A.    The Term Transportation Worker Applies to Employees
            Whose Work is Closely Related to Foreign or Interstate
            Commerce as to be in Practical Effect Part of It .............. 3

            1.    *Transportation Workers Include Employees Who
                  Facilitate Foreign or Interstate Commerce* ............ 4

III.  MENZIES APPLIES AN INCORRECT STANDARD FOR
      SECTION 1's EXCLUSIONARY PROVISION ........................... 6

      A.    Foreign or Interstate Commerce Includes Movement of
            Passengers as Well as Goods ............................................ 6

      B.    Menzies' Insistence on a Hands-On Requirement Has Been
            Soundly Rejected by the Courts ........................................ 8

            1.    *Menzies' Reliance on Out-of-Circuit* Fraga
                  *Decisions is Misplaced* ........................................ 8

IV.   CLASS OF WORKERS WHO FACILITATE CROSS-BORDER
      JOURNEY OF BOTH PASSENGERS AND GOODS ARE
      TRANSPORTATION WORKERS EXCLUDED FROM
      ARBITRATION ........................................................................... 9

V.    CLASS OF WORKERS WHO FACILITATE CROSS-BORDER
      JOURNEY OF PASSENGERS ARE TRANSPORTATION
      WORKERS EXCLUDED FROM ARBITRATION ...................... 11

VI.   CLASS OF WORKERS WHO FACILITATE CROSS-BORDER
      JOURNEY OF BAGGAGE AND CARGO ARE TRANSPORTATION
      WORKERS EXCLUDED FROM ARBITRATION ...................... 13

b

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL
ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

# T<small>ABLE OF</small> C<small>ONTENTS</small> (C<small>ONT'D</small>)

**Page**

**VII.  CLASS OF TRUCKERS WHO TRANSPORT FUEL TO FINAL
CONSUMERS ARE TRANSPORTATION WORKERS
EXCLUDED FROM ARBITRATION**                                          16

**VIII. CLASS OF WORKERS WITH DIRECT INVOLVEMENT IN
REFUELING OF PLANES ARE TRANSPORTATION WORKERS
EXCLUDED FROM ARBITRATION**                                          16

**IX.   CLASS OF WORKERS WHO PROVIDE NECESSARY SUPPORT TO
EMPLOYEES WHO DIRECTLY HANDLE GOODS AND
PASSENGERS ARE TRANSPORTATION WORKERS
EXCLUDED FROM ARBITRATION**                                          17

**X.    CONSIDERING TOTALITY OF CIRCUMSTANCES, MENZIES
HAS WAIVED ITS CONTRACTUAL RIGHT TO ARBITRATE**             20

    **A.  <u>Menzies' Filing of This Motion at This Late Juncture Fails to
Comply with Judicial Rules of Timeliness, Since as With Any
Other Contract, a Party's Right to Arbitrate is Waived by
Inaction and Delay</u>**                                           21

    **B.  <u>Menzies Has Taken Advantage of Being in Federal Court to
Actively Participate in Litigation and Discovery</u>**             23

    **C.  <u>Prejudice Caused by Menzies' Delay Supports Waiver</u>**    24

**XI.   CONCLUSION**                                                  25

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL
ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

# TABLE OF AUTHORITIES

*Page(s)*

**FEDERAL CASES**

*Alvarez v. Sheraton Operating Corp.,* 2023 WL 2491279 (9th Cir. 2023)     22

*Armstrong v. Michaels Stores, Inc.,* 59 F.4th 1011 (9th Cir. Feb. 13, 2023)     21

*Banq, Inc. v. Purcell,* 2024 WL 4164126 (9th Cir. Sep. 12, 2024)     22

*Bissonnette v. LePage Bakeries Park St., LLC,*
    601 U.S. 246 (U.S. Apr. 12, 2024)     2 n.1

*Bogart v. RTW Retailwinds Acquisition LLC,* 2024 WL 898925
    (C.D. Cal. Feb. 14, 2024)     22-23

*Capriole v. Uber Techs., Inc.,* 7 F.4th 854 (9th Cir. Aug. 2, 2021)     1, 6, 7, 11, 12

*Carmona v. Domino's Pizza, LLC,* 73 F.4th 1135 (9th Cir. Jul. 21, 2023)     4 n.2, 16

*Chan v. Panera LLC,* 2024 WL 4137332 (C.D. Cal. Sep. 3, 2024)     24 n.12

*Circuit City Stores, Inc. v. Adams,* 532 U.S. 105 (2001)     3, 6

*DeFries v. Union Pacific Railroad Company,* 104 F.4th 1091 (9th Cir. 2024)     25 n.15

*Edwards v. Cal.,* 314 U.S. 160 (1941)     6, 7

*Ford v. Yasuda,* 2015 WL 3650216 (C.D. Cal. Apr. 19, 2015)     22

*Fraga v. Premium Retail Servs., Inc.,* 704 F.Supp.3d 289
    (D. Mass. Dec. 5, 2023)     9 n.5

*Gibbons v. Ogden,* 22 U.S. 1, 6 L. Ed. 23 (1824)     6

*Grice v. U.S.D.C.,* 974 F.3d 950 (9th Cir. Sep. 4, 2020)     6

*Hill v. Xerox Bus Servs.,* 59 F.4th 457 (9th Cir. Feb. 3, 2023)     23

*Hoke v. U.S.,* 227 U.S. 308 (1913)     6

*In re Citigroup, Inc.,* 376 F.3d 23 (1st Cir. 2004)     25 n.14

*Jimenez v. Menzies Aviation Inc.,* 2015 WL 5591722
    (N.D. Cal. Sept. 23, 2015)     24 n.13

*Lopez v. Aircraft Serv. Int'l,* 107 F.4th 1096 (9th Cir. Jul. 19, 2024)     *passim*

*Martin v. Yasuda,* 829 F.3d 1118, 1125 (9th Cir. Jul. 21, 2016)     3, 21

*Mohamed v. Uber Techs., Inc.,* 848 F.3d 1201 (9th Cir. 2016)     9

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL
ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

TABLE OF AUTHORITIES (CONT'D)

*Page(s)*

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)                         21, 24

*Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152
    (9th Cir. Mar. 12, 2024)                              *passim*

*Pagtalunan v. Galaza*, 291 F.3d 639 (9th Cir. 2002)          24 n.13

*Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. Aug. 19, 2020)    3-4, 16

*Riverside Publishing Co. v. Mercer Publishing LLC*, 829 F.Supp.2d 1017
    (W.D. Wash. 2011)                                    24

*Rogers v. Lyft, Inc.*, 452 F.Supp.3d 904 (N.D. Cal. Apr. 7, 2020)    6-7

*S.W. Airlines Co. v. Saxon*, 596 U.S. 450 (Jun. 6, 2022)          *passim*

*Sibron v. New York*, 392 U.S. 40 (1968)                          24 n.13

*Singh v. Uber Techs. Inc.*, 939 F.3d 210 (3rd Cir. Sep. 11, 2019)    7, 12, 17

*U.S. v. Hill*, 248 U.S. 420 (1919)                               6

CALIFORNIA CASES

*Campbell v. Sunshine Behavioral Health*, 105 Cal.App.5th 419
    (Cal. Ct. App. Sep. 25, 2024)                       22 n.9

*Lopez v. CH Robinson Co.*, No. 30-2022-01273893-CU-OE-CXC,
    2023 Cal. Super. LEXIS 6721 (O.C. Sup. Ct. Jan. 20, 2023)    8 n.4

*Quach v. Cal. Commerce Club*, 16 Cal. 5th 562 (Cal. Jul. 25, 2024)    22 n. 9, 24

STATUTES

*9 U.S.C. § 1*                                                     3

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL
ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

# I.    INTRODUCTION

Defendant Menzies Aviation (USA), Inc. (hereafter, "Menzies") is an aviation-services company that provides ground-handling, cargo-handling, and fueling services for its airline clients.  Congruent with its motto of "Excellence from Touchdown to Takeoff," Menzies employs thousands of California employees to facilitate movement of airplane passengers, their luggage, and air cargo/freight, through various California airports, and onto or off of airplanes that travel across international and interstate borders.  These aviation-services employees' *raison d'etre* is to enable the timely and orderly transportation of airline passengers and goods in the stream of foreign and interstate commerce.  Nevertheless, Menzies contends that most of these employees should **not** be considered exempt transportation workers under Section 1 of the Federal Arbitration Act (hereafter, "FAA").

Specifically, by their Motion to Compel arbitration ("Motion"), Menzies belatedly insists that said employees do **not** qualify for the so-called residual clause of FAA Section 1, on grounds that they do not sufficiently place their hands on **goods** moving through the stream of foreign and interstate commerce.  Menzies' position is untenable.  First, Menzies is mistaken in wholly ignoring that those engaged in commerce as transportation workers include those facilitating the movement of **passengers,** and claiming that only transportation of goods qualifies under the residual clause.  As detailed below, longstanding jurisprudence makes clear that interstate commerce under Section 1 of the FAA includes transportation of both **passengers** and **goods**.  *See*, *e.g.*, *Capriole v. Uber Techs., Inc.*, *infra*, 7 F.4th 854, 861 (9th Cir. Aug. 2, 2021) (transportation-worker exemption applies to workers who "transport *people or goods* in interstate commerce") (emphasis in original).

Secondly, the Ninth Circuit has expressly rejected Menzies' rehashed assertion of a hands-on-goods requirement, explaining that "the Supreme Court did not impose a requirement…that the worker must have hands-on contact with goods and cargo or be directly involved in the transportation of the goods."  *See Lopez v. Aircraft Serv. Int'l*, 107 F.4th 1096, 1101 (9th Cir. Jul. 9, 2024), *cert. denied*, 2025 U.S. LEXIS 44 (U.S. Jan. 13, 2025). Menzies' attempt to relitigate the hands-on-goods requirement here is unavailing; *Lopez* is

controlling law in the Ninth Circuit.

As detailed herein, many of the job positions at issue in Menzies' motion primarily perform work duties intimately related and necessary to the transit of passengers through the channels of foreign or interstate commerce (i.e., air travel). Many primarily do work tasks necessary to facilitate the movement of both those passengers and their goods (i.e., luggage) across national and state borders. Still many others are focused on performing work tasks necessary to facilitate the movement of goods—whether luggage or air cargo/freight brought onto or out of airplanes—that originate from, or are destined for, foreign or interstate locations.

There are also those employees who—like the fuelers in *Lopez*—perform work that directly enables the cross-border transportation of passengers and goods, in that their absence would cause such commerce to grind to a halt, making their tasks "so closely related to interstate and foreign commerce as to be in practical effect part of it." *See Lopez*, 107 F.4th at 1101. All of these job positions are exempt under the FAA's residual clause.[1]

Moreover, the totality of circumstances, consisting of additional evidence before this Court and recent case law, show that Menzies has waived its right to arbitrate. Menzies unreasonably delayed filing this Motion. It actively litigated this case for nearly two and one-

---

[1] Menzies' Motion criticizes Class Counsel for not stipulating that at least some job categories of Class Members in this certified class action should be excluded from the class and compelled to arbitration. But given their work duties, the concerned Class Members here have reasonable bases to claim application of the §1 exclusion provision under *Saxon* and Ninth Circuit law. Class Counsel is duty-bound to ensure that these Class Members' claims are properly presented to the Court for adjudication. In addition, there are compelling reasons to find that, in light of additional evidence and new case law, Menzies has waived its right to arbitrate against all Class Members at this juncture.

Menzies' Motion also contends that Class Counsel's refusal to concede that at least some class members fall outside the §1 exemption is tantamount to application of the industry test rejected in *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246 (U.S. Apr. 12, 2024). In *Bissonnette*, the Supreme Court held that a "transportation worker need not work in the transportation industry to fall within the exemption from the FAA," and confirmed *Saxon*'s instruction that courts look to what workers do rather than the general industry within which they work. 601 U.S. at 253-56. As detailed below, Plaintiffs here do not argue that Menzies' place in the transportation industry is dispositive; rather, these employees are transportation workers because what they do at Menzies is so closely related to foreign and interstate commerce as to be in practical effect part of it.

---

half years and sought affirmative relief, including judgment from this Court on the merits of Plaintiffs' arbitrable claims. Failing to obtain what it wants from this Court, Menzies now seeks to move Plaintiff's claims out of this Court and take another chance before an arbitrator. A litigation conduct described as a game of "heads I win, tails you lose," courts appropriately respond by rejecting such gamesmanship. *See Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. Jul. 21, 2016).

## II.    FAA SECTION 1 EXCLUDES FROM ARBITRATION WORKERS ENGAGED IN FOREIGN OR INTERSTATE COMMERCE

Under Section 1 of the FAA, the mandatory-arbitration provisions of the statute do not apply to agreements involving "seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." *9 U.S.C. § 1*. The exclusion under §1 applies to "transportation workers." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118-19 (2001). An arbitration agreement falling within the transportation-worker exclusion provision is <u>not</u> subject to the FAA, such that either party may proceed in court. *Id.*

To determine whether an employee is a transportation worker, the Court must determine: (1) the relevant "class of workers" to which the individual belongs, as defined by the work they perform; and (2) whether that class of workers is "engaged in foreign or interstate commerce." *S.W. Airlines Co. v. Saxon ("Saxon")*, 596 U.S. 450, 455 (Jun. 6, 2022).

### A.    <u>The Term Transportation Worker Applies to Employees Whose Work is Closely Related to Foreign or Interstate Commerce as to be in Practical Effect Part of It</u>

Controlling Ninth Circuit law emphasizes that the term "transportation worker" is a term of art for workers engaged in commerce, rather than strictly applying only to those who literally cross borders with goods and/or persons in tow. *See Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 910 (9th Cir. Aug. 19, 2020) ("transportation workers need not cross state lines to be considered 'engaged in foreign or interstate commerce' pursuant to § 1."). The *Rittmann* court explained that the term's application is much more expansive, in that "[w]hen Congress enacted the FAA, the word 'engaged' meant 'occupied or employed',," and "'Commerce'" was understood to mean "[i]ntercourse by way of trade and traffic between different people or

---

states and the citizens or inhabitants thereof, including not only the purchase, sale, and exchange of commodities, but also the **instrumentalities and agencies by which it is promoted and the means and appliances by which it is carried on**, and the **transportation of persons as well as goods**…" *Id.* (*citing* Black's Law Dictionary (2d ed. 1910)) (emphasis supplied).[2]

As such, "workers may be exempt from the FAA even 'when the class of workers carries out duties further removed from the channels of interstate commerce or the actual crossing of borders." *Lopez, supra*, 107 F.4th at 1101-1102 (*citing Saxon*, 596 U.S. 450, 457 n.2. The applicable test is whether the class of workers' tasks are "so closely related to interstate and foreign commerce as to be in practical effect part of it." *Id.* at 1101.

### 1. *Transportation Workers Include Employees Who Facilitate Foreign or Interstate Commerce*

The Ninth Circuit explained that *Saxon* "laid out a series of closely related standards detailing the required relationship between the class of workers and interstate commerce": (i) whether the workers "at least play a direct and 'necessary role in the free flow of [commerce]' across borders," (ii) whether the workers are "actively 'engaged in transportation'…across borders via the channels of foreign or interstate commerce," or (iii) whether the worker is "'intimately involved with the commerce…" *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1159-60 (9th Cir. Mar. 12, 2024), *cert. denied*, 2024 WL 4426655 (U.S. Oct. 7, 2024). The Court explained that these related standards tested for one thing, namely, that the work performed by the employees have a real connection to, and effect on, the movement of goods (and/or presumably passengers) through the channels of foreign or interstate commerce:

> Though the Court's different formulations of the test—direct and necessary, active engagement, and intimate involvement—all vary slightly, *Saxon*'s bottom line is that to qualify as a transportation worker, an employee's relationship to

---

[2] The Ninth Circuit has emphasized that *Rittmann* remains good law following the Supreme Court's *Saxon* decision. *Carmona v. Domino's Pizza, LLC*, 73 F.4th 1135, 1138-39 (9th Cir. Jul. 21, 2023), *cert. denied*, 2024 U.S. LEXIS 1846 (U.S. Apr. 22, 2024) ("We conclude that *Saxon* is not inconsistent, let alone clearly irreconcilable, with *Rittmann*, which continues to control our analysis.")

the movement of goods…must be sufficiently close enough to conclude that his **work plays a tangible and meaningful role in their progress through the channels of interstate commerce**.” *Ortiz*, 95 F.4th at 1160 (emphasis supplied).

Thus, in *Ortiz*, the Ninth Circuit affirmed a finding that warehouse workers, who had no role in “unloading shipping containers upon their arrival or loading them into trucks when they left the warehouse,” were nonetheless transportation workers excluded from arbitration, as they “ensured that goods would reach their final destination by processing and storing them while they awaited further interstate transport,” which was a “small but nevertheless ‘direct and necessary’ role in the interstate commerce of goods.” *Ortiz*, 95 F.4th at 1161-62, 1165-66.  *Ortiz* explained that since the work of warehousing goods in the midst of its interstate journey was done “with the direct purpose of **facilitating their continued travel** through an interstate supply chain,” such work was “a **necessary** step in their ongoing interstate journey to their final destination,” and the absence of the warehouse workers would cause commerce to “immediately grind to a halt.”  *Id.* at 1162-63 (emphasis supplied).

Similarly, in *Lopez*, the Ninth Circuit affirmed a finding that an airplane fueler is exempt from arbitration under §1, because the work of fueling airplanes facilitated air transportation across foreign and interstate borders.  *Lopez, supra*, 107 F.4th at 1101-1103.  *Lopez* explained that fuelers were “engaged ‘in the *channels* of foreign or interstate commerce,’” and that since the act of fueling an airplane was “a vital component of its ability to engage in [commerce],” the fuelers’ work is “so closely related to interstate and foreign commerce as to be in practical effect part of it.”  *Id.* at 1101.  Like the warehouse workers in *Ortiz*, the absence of the airplane fuelers would undoubtedly cause the air transport of passengers and goods (i.e., commerce) to “grind to a halt.”  *See Lopez* at 1101-1103; *Ortiz* at 1162-63.  As detailed below, the classes of workers at issue in Menzies’ motion to compel arbitration facilitate the cross-border movement of airline passengers and goods, such that their work is so closely related to foreign and interstate commerce as to be practically a part of it.  *See id.*

---

PLAINTIFFS’ OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.’S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

## III.    MENZIES APPLIES AN INCORRECT STANDARD FOR SECTION 1's EXCLUSIONARY PROVISION

Menzies, however, insists that the sixty-five (65) distinct job titles at issue in their Motion cannot qualify as transportation workers, on grounds that they either: (1) have no role in directly loading goods onto, or unloading goods from, aircraft; or (2) have only indirect or infrequent involvement in the loading and unloading of goods onto and off of airplanes. Menzies offers a myopic and unfounded view.  Section 1's exclusionary provision is not limited to only employees who physically load and unload goods.

### A.    Foreign or Interstate Commerce Includes Movement of Passengers as Well as Goods

Menzies is mistaken in its implication that transportation work must involve the movement of goods for workers to fall under the residual clause of FAA Section 1; it is well-settled that the FAA's §1 exemption also includes transportation workers involved in transporting **passengers**. *See, e.g., Capriole v. Uber Techs., Inc., supra*, 7 F.4th 854, 861 (9th Cir. Aug. 2, 2021) ("We have applied this clause to 'the contracts of employees who actually transport *people or goods* in interstate commerce.'") (*quoting Craft v. Campbell Soup Co.*, 177 F.3d 1083, 1085 (9th Cir. 1998), *abrogated on other grounds by Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001)) (emphasis in original); *Grice v. U.S.D.C.*, 974 F.3d 950, 955 (9th Cir. Sep. 4, 2020) ("[W]e have described the residual clause as applying to 'the contracts of employees who actually transport *people or goods* in interstate commerce.'") (emphasis in original); *see also Edwards v. Cal.*, 314 U.S. 160, 172 (1941) ("[I]t is settled beyond question that the transportation of persons is 'commerce', within the meaning of that provision."); *U.S. v. Hill*, 248 U.S. 420, 423 (1919) ("[C]ommerce has been held to include the transportation of persons and property no less than the purchase, sale and exchange of commodities."); *Hoke v. U.S.*, 227 U.S. 308, 320 (1913) ("Commerce among the states, we have said, consists of intercourse and traffic between their citizens, and includes the transportation of persons and property."); *Gibbons v. Ogden*, 22 U.S. 1, 6 L. Ed. 23, 189 (1824) ("commerce" is more than mere "interchange of commodities," but includes passenger transport by steamboat).

In *Rogers v. Lyft Inc.*, the court expressly rejected the defendant's argument that

---

transportation workers can qualify for exemption from the FAA only if they transport goods, as opposed to people, in interstate commerce. *Rogers v. Lyft, Inc.*, 452 F.Supp.3d 904, 913-14 (N.D. Cal. Apr. 7, 2020), *aff'd*, No. 20-15689, 2022 U.S. App. LEXIS 4219 (9th Cir. Feb. 16, 2022). The *Rogers* court explained:

> The traditional tools of statutory interpretation all point in the same direction: *Section 1* is not limited to classes of workers who transport goods in interstate commerce. As an initial matter, the goods-passengers distinction is nowhere to be found in the statutory text, which refers to "foreign or interstate commerce." The term "commerce" is "not normally limited to the transportation of only physical goods…To the contrary, "it is **settled beyond question that the transportation of persons is 'commerce'" for constitutional purposes**, an understanding that prevailed well before the enactment of the FAA.

452 F. Supp. 3d at 914 (*citing Edwards v. Cal.*, 314 U.S. 160, 172 (1941)) (emphasis supplied); *see also Singh v. Uber Techs. Inc.*, 939 F.3d 210, 219 (3rd Cir. Sep. 11, 2019) ("[T]he residual clause of *§ 1* is not limited to transportation workers who transport goods, but may also apply to those who transport passengers, so long as they are engaged in interstate commerce or in work so closely related thereto as to be in practical effect part of it.")[3]

Contrary to Menzies' suggestion, employees whose work involve facilitating the transport of passengers—or both passengers and goods—across foreign or interstate commerce also qualify under the FAA's residual-clause exemption. *See Lopez, supra*, at 1101-1103; *Ortiz, supra*, at 1162-63; *Capriole, supra*, 7 F.4th at 861.

---

[3] This was the dominant understanding of "commerce" when Congress passed the FAA in 1925. *Singh*, 939 F.3d at 229 n.2 (*citing* Bouvier's Law Dictionary & Concise Encyclopedia (8th ed. 1914) ("The term 'commerce' comprehends more than a mere exchange of goods; it embraces commercial intercourse in all its branches, including transportation of passengers[.]"); Black's Law Dictionary (2d ed. 1910) ("Intercourse by way of trade and traffic between different peoples or states and the citizens or inhabitants thereof, including … the transportation of persons as well as of goods, both by land and by sea."); Henry C. Black, Handbook of American Constitutional Law § 104, at 189 (2d ed. 1897) ("[Commerce] is not limited to the transportation of freight, but extends equally to passenger traffic.").

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

**B.**    **Menzies' Insistence on a Hands-On Requirement Has Been Soundly Rejected by the Courts**

There is also no merit to Menzies' assertion that its workers have to physically load and unload goods onto and off of airplanes to qualify as exempt transportation workers.  In fact, this was the very argument Menzies itself made in the case of *Lopez v. Aircraft Service International*, which the Ninth Circuit explicitly rejected: "The Supreme Court did not impose a requirement in *Saxon* that the worker must have hands-on contact with goods and cargo or be directly involved in the transportation of the goods."  *Lopez v. Aircraft Serv. Int'l*, 107 F.4th 1096, 1101 (9th Cir. Jul. 19, 2024), *cert. denied*, 2025 U.S. LEXIS 44 (U.S. Jan. 13, 2025); *see Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1161-63 (9th Cir. Mar. 12, 2024, *cert. denied*, 2024 U.S. LEXIS 3860 (U.S. Oct. 7, 2024) (warehouse workers who had no role in "unloading shipping containers upon their arrival or loading them into trucks when they left the warehouse" are nonetheless exempt transportation workers because work of processing and storing facilitates the continued movement of goods through interstate supply chain).[4]

Contrary to Menzies' repeated insistence, there is absolutely no requirement that workers physically touch cargo, let alone directly load and unload it, for such employees to be deemed exempt under the FAA's residual clause.  *See Lopez, supra*, at 1101; *Ortiz, supra*, at 1161-63.

**1.**    *Menzies' Reliance on Out-of-Circuit* **Fraga** *Decisions is Misplaced*

Menzies stubbornly insists that this Court ignore controlling Ninth Circuit law in *Lopez* to administer an alternate residual-clause test ostensibly utilized in the First Circuit by the

---

[4] Reasoning in a state court decision is insightful.  *See Lopez v. CH Robinson Co.*, No. 30-2022-01273893-CU-OE-CXC, 2023 Cal. Super. LEXIS 6721, at *6-8 (O.C. Sup. Ct. Jan. 20, 2023), *aff'd*, 2024 Cal. App. Unpub. LEXIS 7100, 2024 WL 4719070 (Cal. Ct. App. Nov. 8, 2024) (truck dispatchers exempt under § 1, as without them, "truckers would not know what loads to pick up or where to take them," and would not have any "support during the transportation of products over state lines"; "**While Plaintiff may not physically touch or transport the cargo itself, Plaintiff performs the integral duty of ensuring that the cargo is successfully transported from Point A to Point B.** His job is more than tangentially related to the movement of goods. Plaintiff's work is so closely related to the trucking portion of the business that he is 'practically a part of it.'") (emphasis supplied).

---

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

U.S. District Court of Massachusetts.  That would be improper.  *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016) ("Binding authority must be followed unless and until overruled by a body competent to do so.").[5]

## IV.  CLASS OF WORKERS WHO FACILITATE CROSS-BORDER JOURNEY OF BOTH PASSENGERS AND GOODS ARE TRANSPORTATION WORKERS EXCLUDED FROM ARBITRATION

The following job classifications comprise a class of workers who engage in foreign and interstate commerce in that they primarily perform work focused on facilitating and ensuring the movement of airline passengers and their luggage (i.e., passengers and goods), through ongoing streams of foreign and interstate commerce: (1) "Passenger Service Agent Lost and Found"; (2) "Passenger Service Agent"; (3) "Passenger Service Lead Agent"; (4) "Passenger Service Supervisor"; (5) "Service Desk Agent"; (6) "Operations Coordinator"; (7) "Operations Coordinator Supervisor"; and (8) "Operations Supervisor."  *See* Plaintiffs' Appendix of Menzies' Written Job Descriptions ("Plaintiffs' Appendix"), filed concurrently herewith, § A.

Job descriptions for these job classifications make clear that these positions are in the

---

[5] Moreover, even if the *Fraga* decisions applied, Menzies is mistaken in its assertion that these cases test the frequency of hands-on work performed by workers; in fact, there is **no mention of a hands-on requirement in either of the *Fraga* decisions**.  Rather, the case of *Fraga v. Premium Retail Services, Inc.* applied the same tests described by the Ninth Circuit in *Ortiz* and *Lopez*, namely, whether the employees' work played a "tangible and meaningful role in…progress…through the channels of interstate commerce," such that it is "in practical effect part of" interstate or foreign commerce.  *See Lopez* at 1101; *Ortiz* at 1160.  The *Fraga* court found that the class of retail employees were not actually transporting goods within the stream of commerce, and that focusing solely on the fact that Merchandisers carried retail displays to stores in nearby border states "risks morphing an incidental aspect of the Merchandisers' job into the central characterization of it."  *See Fraga v. Premium Retail Servs., Inc.*, 704 F.Supp.3d 289, 298-99 (D. Mass. Dec. 5, 2023).  The court explained:

> The commercial goods here are the cosmetics, sunglasses, laxatives, and like products Merchandisers never transport. Transportation workers move these goods to retailers for sale. Merchandisers daily dress up these commercial goods with point of purchase advertising, discounts, and coupons. This advertising work is important, but it is simply not "so closely related to interstate transportation as to be practically a part of it." [Cite]. The exemption, therefore, does not apply here.

*Fraga*, 704 F.Supp.3d at 298-99.  Here, unlike in *Fraga*, the employees at issue actively facilitate the movement of passengers and goods through airports and onto international and interstate flights, such that these classes of workers are properly deemed exempt transportation workers.  *See infra.*

---

Ramp Operations Department.  *See* <u>Plaintiffs' Appendix</u>, § A.  Ramp handling involves all aspects of the offloading and loading of baggage and cargo, as well as guiding taxiing aircraft when they arrive, securing aircraft with chocks and cones, and towing aircraft out of the gate area for departure.  *See* <u>Deposition of Talin Bazerkanian Under FRCP Rule 30(b)(6)</u> ("<u>30b6 Depo.</u>"), attached as <u>Exhibit 3</u> to <u>Declaration of C. Joe Sayas, Jr., Esq. in Opposition to Defendant's Motion to Compel Arbitration and Exclude Members from the Certified Class</u> ("<u>Sayas Decl.</u>"), pp. 33:12-18, 35:3-12; <u>Deposition of Brian Galindo</u> ("<u>Galindo Depo.</u>"), attached as <u>Exhibit 4</u> to <u>Sayas Decl.</u>, at pp. 13:11-23, 15:3-11, 22:17-25:17; <u>Deposition of Jose A. Salcedo Garcia</u> ("<u>Salcedo Depo.</u>"), attached as <u>Exhibit 5</u> to <u>Sayas Decl.</u>, at pp. 10:7-21, 11:23-12:7.

The job descriptions for Passenger Service Agent Lost and Found, "Passenger Service Agent", "Passenger Service Lead Agent", "Passenger Service Supervisor," and "Service Desk Agent" further make clear that these workers also work in passenger services, which generally consists of checking in passengers for their flights, facilitating their boarding at boarding gates, assisting with flight operations, and assisting arriving passengers with lost luggage, as well as customs and border-protection documents.  *See* <u>Plaintiffs' Appendix</u>, § A. 1. – A. 5; <u>30b6 Depo.</u>, pp. 33:19-34:24.  According to their written job descriptions, these workers: check in airline passengers for their flights at ticket counters and gates; assign seats and provide gate information to passengers; receive and checked-in luggage from passengers and send them onto proper ramp staff; safely lift luggage weighing up to 70 pounds or more; assist passengers in locating and reuniting with lost luggage; handle ticketing changes; re-schedule flights; handle the processing of unaccompanied minors; facilitate the boarding of passengers' pets; and otherwise ensure that all passengers and their luggage make it through the various California airports, onto the correct flights in the case of departing passengers, and on their respective ways to their final destinations across foreign and interstate borders.  *See* <u>Plaintiffs' Appendix</u>, § A. 1. – A. 5.

The written job descriptions for "Operations Coordinator," "Operations Coordinator Supervisor," and "Operations Supervisor – Ground Handling," reflect that these workers

ensure timely and proper completion of the ramp-handling tasks necessary: (i) for arriving airplanes to make it to the correct arrival gates; (ii) for passengers and cargo (including luggage) to timely and properly disembark according to applicable safety and security rules; (iii) for departing airplanes to properly park at the correct departure gates in preparation for departing passengers, luggage and cargo; (iv) for passengers and cargo (including passengers' luggage) to be timely and properly loaded onto the correct flights; and (v) for all passengers and cargo (including luggage) to make it through the various California airports in a timely and orderly manner, onto the correct flights in the case of departing passengers and cargo, and on their way to their final destinations across foreign and interstate borders.  *See* Plaintiffs' Appendix, § A. 6. – A. 8.   Tellingly, these workers are required to directly assist in baggage handling, and so must be able to safely lift up to 70 pounds.  *See ibid.*

The class of workers in this Section IV., who are directly and intimately involved in facilitating and ensuring the movement of **passengers and goods** through the airport, and onto or from their international or interstate flights, are undoubtedly transportation workers[6] under § 1 of the FAA.  *See Lopez, supra*, at 1101-1103; *Ortiz, supra*, at 1162-63; *Capriole, supra*, 7 F.4th at 861.

## V.    CLASS OF WORKERS WHO FACILITATE CROSS-BORDER JOURNEY OF PASSENGERS ARE TRANSPORTATION WORKERS EXCLUDED FROM ARBITRATION

The following job classifications comprise a class of workers who engage in foreign and interstate commerce in that they primarily, and collectively, perform necessary work focused on facilitating air travel for passengers bound for foreign and interstate airports: (1) "Lavatory Agent"; (2) "Cabin Cleaner"; (3) "Lead Cabin Cleaner"; (4) "Cabin Services

---

[6] The work experience of Plaintiff Amaya, a Passenger Service Agent, illustrates the vital role played by this class of workers who facilitate the movement of passengers and their luggage through the streams of commerce.  As detailed in her accompanying declaration, without Ms. Amaya—and passenger-service workers like her—passengers on international and interstate flights would not be directed to the proper gates and aircraft to board, their luggage would not be sent onto the right track for loading onto the proper flights, and missing luggage would not be delivered to their owners.  *See* Declaration of Dora Patricia Amaya in Support of Opposition to Motion to Compel Arbitration and to Exclude Covered Class Members from the Certified Class, filed concurrently herewith.

Agent"; and (5) "Cabin Services Lead Agent." *See* <u>Plaintiffs' Appendix</u>, § B. 1. – B. 5.

The workers here include Lavatory Agents, the written job description for which shows that their work primarily involves unloading waste and filling up tanks with required anti-bacterial solution, and otherwise ensuring that aircraft have properly-functioning lavatories for passengers travelling to foreign and interstate airports. *See* <u>Plaintiffs' Appendix</u>, § B. 1.

This class of workers also includes cabin cleaners and cabin services agents, who collectively perform security checks of arriving and departing aircraft, clean the aircraft after passengers and crew have disembarked, and otherwise prepare the aircraft for new passengers and crew and the aircraft's timely and orderly departure. *See* <u>Deposition of Lizette Medina</u> ("<u>Medina Depo.</u>"), attached as <u>Exhibit 6</u> to <u>Sayas Decl.</u>, at pp. 8:21-11:1. The written job descriptions for these positions show that these workers: collect and remove used blankets and pillows; replace used blankets and pillows with clean ones; "vacuum, sweep, dust, disinfect, and clean all areas of the aircraft"; clean the entire aircraft interior; conduct physical searches of aircraft interiors and accessible exterior areas for safety and security; and guard ramps to ensure against unauthorized entry onto aircraft. *See* <u>Plaintiffs' Appendix</u>, § B. 2. - B. 5.

Like the fuelers in *Lopez*, the class of workers in this Section V. perform necessary and important work that makes air travel possible, in that they facilitate the transport of airline passengers across foreign and interstate commerce by doing the work of screening, cleaning and preparing aircraft so that they are safe and fit for passengers' occupation during international and interstate flights. *See ibid.* In other words, this class of workers perform work so closely related to foreign and interstate commerce that is in practical effect part of it, such that they are exempt transportation workers under § 1 of the FAA. *See Lopez, supra*, at 1101-1103; *Ortiz, supra*, at 1162-63; *Capriole, supra*, 7 F.4th at 861; *see also Singh, supra*, 939 F.3d at 219.

/ / /

/ / /

## VI.    CLASS OF WORKERS WHO FACILITATE CROSS-BORDER JOURNEY OF BAGGAGE AND CARGO ARE TRANSPORTATION WORKERS EXCLUDED FROM ARBITRATION

The following job classifications comprise a class of workers who engage in foreign and interstate commerce in that they primarily perform work focused on facilitating and ensuring the movement of passengers' luggage and cargo through the airport and onto airplanes bound for foreign or interstate airports, or from airplanes arriving from foreign or interstate airports and onto their continuing journeys to their final destinations: (1) "Ramp Supervisor"; (2) "Operations Agent"; (3) "Baggage Coordinator"; (4) "Lost and Found Bag Agent"; (5) "Cargo Office Lead"; (6) "Cargo Office Supervisor"; (7) "Compliance Officer"; (8) "Cargo Handler Agent"; (9) "Cargo Agent"; (10) "Cargo Screening Agent"; (11) "Cargo Screening Supervisor"; and (12) "Load Master." *See* Plaintiffs' Appendix, § C.

Written job descriptions for Ramp Supervisors and Operations Agents reflect that these are employees in the Ramp Operations Department. *See* Plaintiffs' Appendix, § C. 1. – C. 2. Like the ramp employees in Section IV., *supra*, these workers ensure proper offloading and loading of baggage and cargo, from and onto airplanes. *See* 30b6 Depo., at pp. 33:12-18, 35:3-12; Galindo Depo., at pp. 13:11-23, 15:3-11, 22:17-25:17; Salcedo Depo., at pp. 10:7-21, 11:23-12:7. Their written job descriptions show that these workers are required to safely lift items between 35-70 pounds, and confirm that their work tasks are predominantly focused on ensuring that luggage and cargo are properly loaded onto, and unloaded from, aircraft. *See* Plaintiffs' Appendix, § C. 1. – C. 2.

Baggage Coordinators directly "[a]ssist in the baggage handling area" to ensure that passengers' luggage are properly transported and loaded to, and unloaded from, outbound and inbound flights. *See* Plaintiffs' Appendix, § C. 3. These workers are expected to perform "heavy lifting, pushing, pulling, bending and stretching," and must be capable of comfortably lifting 70 pounds. *See ibid.* Similarly, Lost and Found Bag Agents are responsible for "handling customer baggage check-in and misplaced/lost baggage claims," in order to ensure that transiting baggage reach their proper owners and destinations. *See* Plaintiffs' Appendix, § C. 4. They screen "interline passengers prior to placing bags on the interline return belts,"

"[e]nsures baggage tagging is correct," "[d]irect and assist passengers with mis-checked or short checked bags," and handle "misplaced/lost baggage claims, such that they are expected to "regularly lift and/or move up to 70 lbs." *See ibid.*

The written job descriptions for "Cargo Office Lead," "Cargo Office Supervisor," "Compliance Officer," "Cargo Handler Agent," "Cargo Agent," "Cargo Screening Agent," and "Cargo Screening Supervisor" show that these workers operate within Menzies' Cargo Department, which handles both inbound and outbound cargo for Menzies' airline customers. *See* <u>Plaintiffs' Appendix</u>, § C. 5. – C. 11.; <u>30b6 Depo.</u>, pp. 18:3-9. Their collective work tasks involve receiving, processing, and sorting cargo, delivering inbound cargo to land-transport agents, and building up outbound cargo into pallets and containers in preparation for loading onto departing aircraft. *See* <u>30b6 Depo.</u>, pp. 36:23-37:11; <u>Salcedo Depo.</u>, pp. 13:2-12; <u>Deposition of Dave Funes</u> ("<u>Funes Depo.</u>"), attached as <u>Exhibit 7</u> to <u>Sayas Decl.</u>, at pp. 8:12-17, 9:1-20, 17:6-18:2, 18:17-19:11, 21:2-22:17, 26:13-28:11, 31:2-32:12.

Cargo Office Leads and Cargo Office Supervisors have "[h]ands-on activities in all areas of work including that which is both directly and indirectly associated with aircraft handling." *See* <u>Plaintiffs' Appendix</u>, § C. 5. – C. 6. They perform Explosive Trace Detection on cargo, collect and report necessary data to Customs, and perform "Dangerous Goods Acceptance." *See ibid.* Their work requires that they be "able to lift at least 35 pounds on a continuous basis." *See ibid.*

Cargo Handler Agents unload and load "luggage, freight and cargo on and off commercial aircraft," as well as "in the outbound bag room and the baggage claim area." *See* <u>Plaintiffs' Appendix</u>, § C. 8. These workers also transport cargo and baggage "between aircraft, airport terminals and air cargo facilities." *See ibid.* Cargo Handler Agents are required to "continuously lift/move 70 lbs." *See ibid.*

Compliance Officers work in the Cargo Operations Department, performing "Hazard Analysis and Risk Assessments" and Explosive Trace Detection screening, ensuring compliance with safety and security rules, and communicating "with Regulatory Bodies and Airport Authority" regarding the cargo transported by Menzies' airline clients. *See* <u>Plaintiffs'</u>

---

1  Appendix, § C. 7.

2  Similarly, Cargo Screening Agents and Cargo Screening Supervisors: "[c]arry out cargo

3  screening functions to screen for IEDs, IED components, or other destructive substances,"

4  utilizing both Explosive Trace Detection equipment and visual and physical searches, and

5  "[e]nsure that all required documentation is complete and available for regulatory inspection"

6  by the TSA, Customs and Border Protection, and Menzies' customer airlines.  *See* Plaintiffs'

7  Appendix, § C. 10. – C. 11.  Cargo Screening Agents and Cargo Screening Supervisors are

8  expected to frequently lift up to 25 pounds, and be able to lift up to 70 pounds.  *See ibid.*

9  Cargo Agents facilitate the transport of cargo by "compiling documents on import or

10  export cargo shipments, expediting shipments…from [the] warehouse and assist[ing]

11  customers in tracking their shipments."  *See* Plaintiffs' Appendix, § C. 9.  These employees'

12  work involve meeting passenger flights to "clear general declarations thru Immigration CBP

13  office" and "to exchange documents," examining "manifests, bills of lading and air waybill"

14  to determine necessary steps for releasing cargo, working with government agencies to "clear

15  shipments for import," notifying "consignee[s] or representative[s] concerning arrival dates

16  of shipment, customs clearance requirements and tonnage shipment," and "[a]uthoriz[ing]

17  final approval for cargo release."  *See ibid.*  Cargo Agents' work requires that they be able to

18  comfortably lift "70 lbs. repetitively" and have "[c]ertification in dangerous good

19  awareness/acceptance."  *See ibid.*

20  Load Masters "[c]oordinate and communicate all airside activities" regarding "Arrival

21  and Departure of Aircraft," to ensure safety policies and guidelines are met, including "all

22  FAA, TSA and Airport Rules and Regulations."  *See* Plaintiffs' Appendix, § C. 12.  Load

23  Masters: (i) prepare arrival gates by positioning ramp equipment; (ii) marshal and park aircraft

24  into proper positions; (iii) "[o]btain valid loading instruction[s] and brief all concerned ramp

25  staff"; (iv) "Initiate and supervise the loading of the aircraft and ensure that it is loaded in

26  accordance with the valid loading instructions"; (v) "check on the baggage handling process

27  to ensure that adequate loading space is available"; (vi) "check on connecting baggage"; and

28  (vii) provide airline clients with required load-distribution information.  *See ibid.*

This class of workers are closely comparable to the warehouse workers in *Ortiz*, in that they perform the work necessary to facilitate the movement of goods through foreign and interstate commerce, and perform work so closely related to foreign and interstate commerce as to be in practical effect part of it. *See Lopez, supra*, at 1101-1103; *Ortiz, supra*, at 1162-63.

## VII.  CLASS OF TRUCKERS WHO TRANSPORT FUEL TO FINAL CONSUMER ARE TRANSPORTATION WORKERS EXCLUDED FROM ARBITRATION

The position of "Driver Operator" comprises a class of workers who "operate a tractor trailer/tanker" to "load Jet-A Fuel at terminal and offload at Menzies Aviation Facility" following transport through local highways. *See* <u>Plaintiffs' Appendix</u>, § D. 1.  In other words, these workers perform the last-leg delivery of fuel from foreign and interstate sources to their final consumer, such that they are properly deemed exempt transportation workers under § 1 of the FAA. *See Carmona v. Domino's Pizza, LLC*, 73 F.4th 1135, 1138 (9th Cir. Jul. 21, 2023) (question of whether truck drivers are exempt transportation workers is determined by assessing whether they "operate in a single, unbroken stream of interstate commerce that renders interstate commerce a central part of their job description"); *Rittmann v. Amazon.com, Inc., supra*, 971 F.3d at 915 ("AmFlex workers pick up packages that have been distributed to Amazon warehouses, certainly across state lines, and transport them for the last leg of their shipment to their destination," such that the goods "they carry…remain in the stream of interstate commerce until they are delivered," and thus, these workers are "transportation workers engaged in the movement of interstate commerce and exempt from the FAA's application.")

## VIII.  CLASS OF WORKERS WITH DIRECT INVOLVEMENT IN REFUELING OF PLANES ARE TRANSPORTATION WORKERS EXCLUDED FROM ARBITRATION

The following job classifications comprise a class of workers who have direct involvement in the refueling of planes for Menzies' airline clients: (1) "Fueling Supervisor"; (2) "Dispatcher"; (3) "Lead Dispatcher"; (4) "Quality Control Technician"; and (5) "Lead Quality Control Technician." *See* <u>Plaintiffs' Appendix</u>, § E.  Much like the fueling technicians

in *Lopez*, this class of workers are "engaged 'in the *channels* of foreign or interstate commerce' for purposes of the FAA exemption." *See Lopez*, *supra*, at 1101.

Fueling Supervisors "[s]upervises and coordinates air carrier fueling and service operations," and "ensur[e] the effective operation of the air carrier fueling function." *See* Plaintiffs' Appendix, § E. 1. They are responsible for "[p]erforming or assisting subordinates in performing duties," and so must be "[a]ble to routinely lift, push and pull up to 70 lbs." *See ibid.*

The work of Dispatchers and Lead Dispatchers involve communicating with airlines and Menzies' fuelers for purposes of "distributing proper fuel loads." *See* Plaintiffs' Appendix, § E. 2. – E. 3. In other words, without these employees, fuelers would simply not know which aircraft to fuel and at what time, making them a vital component in allowing aircraft the ability to engage in foreign or interstate commerce. *See ibid.*

Quality Control Technicians and Lead Quality Control Technicians do the important work of inspecting and testing fuels and additive products to ensure that they meet proper standards. *See* Plaintiffs' Appendix, § E. 4. – E. 5. Moreover, they are expressly required to perform the duties of a Fueler, Fuel Farm Operator or Fuel Farm attendant whenever needed, and are therefore expected to "[h]andle fueling carts and fueling hoses which will require [them] to lift and move up to 70 lbs." *See ibid.*

Like the technicians in *Lopez*, the class of workers in this Section VIII. provide a vital component of aircraft's ability to engage in foreign or interstate transportation of goods and passengers: in their direct involvement with refueling aircraft, they are "so closely related to interstate and foreign commerce as to be in practical effect part of it." *See Lopez*, *supra*, at 1101; *see also Singh*, *supra* at 219. This class of workers are therefore exempt under FAA Section 1's residual clause. *See id.*

## IX.    CLASS OF WORKERS WHO PROVIDE NECESSARY SUPPORT TO EMPLOYEES WHO DIRECTLY HANDLE GOODS AND PASSENGERS ARE TRANSPORTATION WORKERS EXCLUDED FROM ARBITRATION

The following job classifications comprise a class of workers who engage in foreign

---

and interstate commerce in that they perform work that provides necessary support to Menzies employees who directly handle goods and passengers in the course of their work: (1) "Quality Control Supervisor"; (2) "Inventory Clerk"; (3) "Apprentice – Fuel Facility Maintenance"[7]; (4) "Administrative Assistant – Fueling"; (5) "Fuel Facility Electrician"; (6) "Fuel Farm Mechanic"; (7) "Fuel Farm Operator"; (8) "Fuel Farm Operator Lead"; (9) "Fuel Farm Supervisor"; (10) "General Fueling Helper"; (11) "Maintenance Technician – Fuel Storage Facility"; (12) "GSE Administration Assistant"; (13) "GSE Fueler"; (14) "GSE Mechanic"; (15) "Lead GSE Mechanic"; (16) "GSE Utility Agent"; (17) "Safety Administration Assistant"; (18) "Safety Supervisor"; (19) "Safety Security and Environmental Supervisor"; (20) "Safety and Training Supervisor"; (21) "Training Supervisor"; (22) "Training Coordinator"; (23) "Supervisor Timekeeper"; (24) "Timekeeper"; (25) "Talent Acquisition"; (26) "Human Resources Administrative"; (27) "Human Resources Specialist"; (28) "General Worker"; (29) "Accounting Clerk"; (30) "Accounts Receivable Specialist"; (31) "Facility Electrician"; (32) "Inside Wireman"; (33) "Intern"); and (34) "Janitor." *See* Plaintiffs' Appendix, § F. 1. – F. 34.

The positions of "Quality Control Supervisor," "Inventory Clerk," "Apprentice – Fuel Facility Maintenance," "Administrative Assistant – Fueling," "Fuel Facility Electrician," "Fuel Farm Mechanic," "Fuel Farm Operator," "Fuel Farm Operator Lead," "Fuel Farm Supervisor," "General Fueling Helper," and "Maintenance Technician – Fuel Storage Facility" all perform work involving the fuel used by Menzies for their aircraft and the machines used for ground handling. *See* Plaintiffs' Appendix, § F. 1. – F. 11. These workers test and evaluate the quality of fuel, keep track of fuel inventory and fueling transactions, repair and maintain fueling and fuel-storage equipment, ensure that fuelers are paid their wages, and otherwise ensure the proper functioning of Menzies' fueling infrastructure. *See ibid.*

The positions of "GSE Administration Assistant," "GSE Fueler," "GSE Mechanic,"

---

[7] Menzies' motion mistakenly lists this job position as "Apprentice – Fuel Facility Management," but the written job description provided is for an "Apprentice – Fuel Facility Maintenance."

18

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

"Lead GSE Mechanic," and "GSE Utility Agent" ensure that the Ground Support Equipment used to provide Menzies' ground-handling services—including "tugs, forklifts, pay loaders, fuel trucks and other larger airport vehicles"—are repaired and maintained for proper functioning, and properly fueled, so that Menzies employees are able to use them in their work. *See* Plaintiffs' Appendix, § F. 12. – F. 16. The position of "General Worker" similarly repairs or replaces broken parts on mechanical equipment, including "pneumatic systems" and "electrical equipment and control circuits." *See* Plaintiffs' Appendix, § F. 28.

The positions of "Safety Administration Assistant," "Safety Supervisor," "Safety Security and Environmental Supervisor," "Safety and Training Supervisor," "Training Supervisor," and "Training Coordinator" perform work that ensures that Menzies' employees, including new hires, are properly trained in performing their ground-handling, cargo, and fueling work in accordance with all applicable safety and security rules. *See* Plaintiffs' Appendix, § F. 17. – F. 22. They patrol Menzies' ground-handling, cargo and fueling operations, and perform investigations of any rules violations. *See ibid.*

The positions of Timekeeper and Supervisor Timekeeper are responsible for scheduling Menzies' workers, and making sure that Menzies' employees are paid their wages. *See* Plaintiffs' Appendix, § F. 23. – F. 24. The positions of "Talent Acquisition," and "Human Resources Specialist" identify and obtain qualified aviation workers for Menzies, as informed by their expected "[e]xperience in ground handling, cargo or any aviation related field" and knowledge of "International Aviation Safety and Security Standards." *See* Plaintiffs' Appendix, § F. 25. & F. 27. The position of "Human Resources Administrative" works in the onboarding of new hires, and is tasked with "[i]nvestigat[ing] and answering[ing] employees' complaints." *See* Plaintiffs' Appendix, § F. 26.

The positions of "Accounting Clerk" and "Accounts Receivable Specialist" ensure that Menzies is properly paid by their clients and that Menzies' employees are in turn paid for their work in providing the services for Menzies' clients. *See* Plaintiffs' Appendix, § F. 29. – F. 30.

The position of "Intern" generally assists in the areas of "Administration," "Finance," "Legal," "Information Services," and "Operations." *See* Plaintiffs' Appendix, § F. 33.

The positions of "Facility Electrician," "Inside Wireman," and "Janitor" are responsible for maintaining the facilities and equipment used by Menzies' ground-handling, cargo and fueling employees, including repair and maintenance of electrical wiring, fiber optic systems, and fuel-system controls; repair and maintenance of "conveyors, passenger loading bridges, and other airport equipment"; "vacuuming, mopping, cleaning vents," and otherwise "ensuring that the building is well maintained and clean"; "switching lightbulbs and unclogging toilets"; and "[u]tiliz[ing] insecticides to prevent infestation by dangerous pests." *See* Plaintiffs' Appendix, § F. 31., F. 32., & F. 34.

As described above, the class of workers in this Section IX. provide direct and necessary support for the Menzies employees that directly handle passengers and goods in the course of their work. The essential work that they do make it possible for the ground-handling, passenger services, cargo, and fueling workers of Menzies to perform the more-direct transportation work they do on behalf of Menzies' airline clients, such that their absence would cause the ground-handling, cargo and fueling work, to "grind to a halt." *See Ortiz, supra*, 95 F.4th at 1162-63 (fact that absence of warehouse workers supporting the ongoing foreign and interstate journey of Adidas products would cause such commerce to "grind to a halt" supports finding that these warehouse workers are exempt transportation workers engaged in foreign or interstate commerce).

## X.    CONSIDERING TOTALITY OF CIRCUMSTANCES, MENZIES HAS WAIVED ITS CONTRACTUAL RIGHT TO ARBITRATE

On July 16, 2024, this Court denied Plaintiffs' Motion for Partial Summary Judgment ("MPSJ") on Menzies' waiver of arbitration, and Menzies then **still** delayed filing this Motion until December 30, 2024. Nearly *28 months* since the Complaint, Menzies now belatedly seeks to arbitrate claims of employees "who do not unambiguously fall under *Saxon*."[8]

---

[8] In its February 8, 2024 Order granting class certification, the Court ruled that "Amaya is well positioned to represent the interests of those Menzies employees who do not unambiguously fall under *Saxon*." *See* Dkt. 69. Amaya has sought to represent them since her Complaint was filed on August 19, 2022. Menzies now belatedly seeks to arbitrate the claims of these very employees whose job duties Menzies knew and with job descriptions Menzies has had all along.

---

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

Considering the totality of circumstances at this juncture, the Court should consider Menzies' additional prejudicial delay to Class Members in conjunction with the evidence in Plaintiffs' prior MPSJ, as well as new case law and additional evidence, to find that Menzies waived any arbitral right by: a) deposing Amaya and propounding production requests probing on the merits of Amaya's individual wage claims; b) producing voluminous documents in response to discovery; c) seeking relief with the Magistrate Judge on contents and procedures of notices to **all** non-exempt employees; d) participating in joint Rule 26(f) and Case Management Reports (representing that Menzies did "not anticipate filing any motions" other than "summary judgment"; e) demanding jury trial and selecting a Magistrate Judge for ADR; and f) seeking affirmative relief via Summary Judgment, invoking federal preemption to dismiss Amaya's individual wage reimbursement claim. *See* <u>Sayas Decl</u>.

## A.    <u>Menzies' Filing of This Motion at This Late Juncture Fails to Comply with Judicial Rules of Timeliness, Since as With Any Other Contract, a Party's Right to Arbitrate is Waived by Inaction and Delay</u>

"[F]ederal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 412 (2022). Hence the right to arbitration "like other contractual rights can be waived." *Martin v. Yasuda*, 829 F.3d 1118, 1124 (9th Cir. 2016). After *Morgan*, the burden of a party asserting waiver "is no longer 'heavy.'" *Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. Feb. 13, 2023).

Placing arbitration agreements on the same footing as other contracts, the Supreme Court directs courts "to apply the usual federal procedural rules, **including any rules relating to a motion's timeliness.**" *Morgan*, 596 U.S. at 419 (emphasis supplied). Here, Menzies delayed filing its Motion for **28 months**, only now moving to arbitrate Amaya's individual claims, and seeking a stay of the PAGA action pending adjudication of same, pursuant to the procedure under *Adolph v Uber*, 14 Cal.5th 1104 (2023). But Menzies learned of Amaya's intent to bring her PAGA cause of action as early as March 2, 2023, yet failed to file its Motion and/or request a stay until almost 22 months later, and delayed 11 months from this Court's class certification Order on February 8, 2024. *See* <u>Sayas Decl</u>., at ¶¶ 2-18.

21

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

A delay of as little as **5 months** supports a finding of waiver. *See Banq, Inc. v. Purcell*, 2024 WL 4164126, at *2 (9th Cir. Sep. 12, 2024) (reversed finding of no waiver, as "five months constitutes a prolonged delay under the totality of the circumstances in this case because Defendants actively litigated the merits of the case and engaged in discovery proceedings during that period").[9] The defendant in *Banq* showed its intent to take advantage of a judicial forum by moving to dismiss Plaintiff's claims on preemption grounds, much like Menzies' summary judgment motion which similarly invoked preemption to seek the same dismissal of Amaya's wage reimbursement claim. *See id.* If Menzies had been successful, it would have eliminated the wage claims of all employees Amaya represents. Similar to this case, discovery in *Banq* consisted of "submitting an amended joint Rule 26(f) report, a discovery plan and scheduling order, a stipulated protective order, and a stipulation regarding documents and electronically stored information." *See id.* at *4. Here, Menzies' much longer delay, its vigorous litigation effort to dismiss Amaya's individual claim, and significantly more active participation in discovery should result in a similar finding of waiver. *See id.*

Other courts similarly find waiver of arbitration when the party seeking it fails to file its motion after the lapse of time periods following the start of the lawsuit: a) *See Ford v. Yasuda*, 2015 WL 3650216, at *8 (C.D. Cal. Apr. 19, 2015) (**17-month delay** from the filing of the Complaint "undue" and prejudicial; b) *Alvarez v. Sheraton Operating Corp.,* 2023 WL 2491279, at *1 (9th Cir. 2023) (affirming finding of waiver where "Appellants asserted preemption by the Federal Arbitration Act as an affirmative defense in their answer and then waited **eight months** before moving to compel arbitration") (emphasis supplied); c) *Bogart v. RTW Retailwinds Acquisition LLC,* 2024 WL 898925, at *9 (C.D. Cal. Feb. 14, 2024) ("Defendants…acted inconsistent with their right to arbitrate by actively and substantively

---

[9] *See also Quach v. Cal. Commerce Club*, 16 Cal. 5th 562, 586-87 (Cal. Jul. 25, 2024) Decided after this court's July 16, 2024 ruling, the California Supreme Court found waiver after **13 months of delay from filing of the lawsuit**, despite defendant's assertion in its Answer that "Quach's arbitration agreement barred his suit and that he should be compelled to arbitrate"); *Campbell v. Sunshine Behavioral Health*, 105 Cal.App.5th 419, 432 (Cal. Ct. App. Sep. 25, 2024) ("It is well established that a **four-to six-month delay** in enforcing the right to arbitrate may result in a finding of waiver if the party acted inconsistently with the intent to arbitrate during that window."), *quoting Semprini v. Wedbush Securities Inc.*, 101 Cal.App.5th 518, 527 (2024).

participating in this litigation for nearly **six months** before filing a motion to compel arbitration.") (emphasis supplied).

In light of these authorities, Menzies' lengthy 28-month delay is inexcusable. Plaintiffs are mindful of the Court's finding in its July 16, 2024 Order that it was "reasonable" for Menzies "to await filing a motion to compel arbitration in this case, while the appeal in *Lopez* remains pending." Dkt. 86, at pp. 6-7. Plaintiffs respectfully request re-evaluation in light of additional evidence before it and the above-cited new cases. The submission of Job Descriptions now before this Court reveal that the *Lopez* appeal involving that one position of Fueler in *Lopez* never had any substantial bearing on Menzies' ability to file its Motion sooner, and Menzies' appeal never had any merit.[10] Menzies seeks to compel arbitration as to 65 job positions, based upon Job Descriptions showing work duties that are far different from Fuelers. Hence, a finding that *Lopez*'s Fueler is a transportation worker would not be dispositive of whether or not these other 65 job positions are covered by FAA's § 1 exclusion. Waiting for *Lopez* does not excuse Menzies delay.

**B.** <u>**Menzies Has Taken Advantage of Being in Federal Court to Actively Participate in Litigation and Discovery**</u>

A party waives the right to compel arbitration when it makes a "strategic choice to engage the judiciary for resolution of the class claims rather than to obtain a resolution from an arbitrator." *Hill v. Xerox Bus Servs.*, 59 F.4th 457, 477 (9th Cir. Feb. 3, 2023). Here, Menzies elected to aggressively litigate this case for nearly 2 and ½ years. *See* <u>Sayas Decl</u>.[11] Evaluating the entire evidence now before this Court, and in light of the above-cited cases, it is clear that Menzies in many ways acted inconsistently with its right to arbitrate.

---

[10] Judge Gee's well-reasoned order was affirmed without dissent, *Lopez v. Aircraft Serv. Int'l*, 107 F.4th 1096 (9th Cir. Jul. 19, 2024), Menzies' *en banc* petition was denied without a single justice requesting a vote, 2024 U.S. App. LEXIS 22019 (9th Cir. Aug. 29, 2024), and Menzies' petition for certiorari was summarily denied by the Supreme Court, 2025 U.S. LEXIS 44 (U.S. Jan. 13, 2025).

[11] These were also discussed in the May 9, 2024 Declaration of C. Joe Sayas, Jr., Dkt. 76-5, as well as Plaintiffs' briefs in support of their MPSJ. Dkt. 76-1 & Dkt. 76-2.

---

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

In the recent case of *Quach*, *supra*, the California Supreme Court found waiver after 13 months upon considering the totality of circumstances: a) employer filed a CMC Statement and requested jury trial, did not indicate it was willing to participate in arbitration, and "represented that the only motion it intended to file was a 'dispositive motion'"; b) actively participated in discovery by propounding discovery requests, responding to discovery, engaging in meet and confer over discovery disputes, and taking plaintiff's deposition; c) posted jury fees; and d) delayed moving to arbitrate until 13 months after the complaint was filed. 16 Cal. 5th 562, 586 (Cal. Jul. 25, 2024).[12] Menzies' 28-month delay in moving to arbitrate—while vigorously participating in discovery and seeking court judgment that affects the merits of Amaya's individual claims—far exceeds the level of defendant's conduct in *Quach*.

## C.    Prejudice Caused by Menzies' Delay Supports Waiver

A party asserting waiver need not prove prejudice, *Morgan* at 417, but the undue prejudice to thousands of employees here is compelling reason to find waiver, and the 9th Circuit has not "limited the scope of a court's prejudice inquiry." *Riverside Publishing Co. v. Mercer Publishing LLC*, 829 F.Supp.2d 1017, 1021-22 (W.D. Wash. 2011). Prejudice results when evidence is "lost as a result of delay." *Quach*, 16 Cal.5th at 574.[13] Substantial prejudice is also present because granting Menzies' motion would subject affected Class Members to

---

[12] Following the precedent in *Quach*, in *Chan v. Panera LLC*, 2024 WL 4137332 (C.D. Cal. Sep. 3, 2024) – a wage and hour class action – this Court (Hon. Josephine L. Staton) found that *Panera* also found defendant's conduct was inconsistent with the intent to arbitrate, including because it "responded to substantial discovery requests," engaged in "multiple meet-and-confer efforts," and three "discovery conferences." *Id.* In addition, the parties stipulated to extend the deadline for moving for class certification, and stipulated to entry of a protective order to facilitate exchange of class-related discovery. *Id. Panera* found waiver of the right to arbitrate because defendant's "conduct in discovery reflected an intent to litigate a motion for class certification, which is inconsistent with the intent to compel arbitration." *Id.* at *4.

[13] See also *Jimenez v. Menzies Aviation Inc.*, 2015 WL 5591722, *4 (N.D. Cal. Sept. 23, 2015) (denying Menzies' motion to stay action pending appeal of order denying motion to compel arbitration, including because of harm to plaintiff from the "risk of lost evidence"); *Sibron v. New York*, 392 U.S. 40, 57 (1968) ("litigation is better conducted when the dispute is fresh and additional facts may, if necessary, be taken without a substantial risk that witnesses will die or memories fade"); *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002) ("Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale.").

---

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS

new defenses including the statute of limitations, release of claims, waiver, and laches. Menzies' ADR Policy states: "In the event a dispute should arise and you wish to initiate these procedures, you must deliver a written request for alternative dispute resolution to Menzies Aviation within the statute of limitations period that would apply to the filing of a civil complaint alleging the same claims in court.... If a request for an alternative dispute resolution is not submitted timely, the claim will be deemed to have been waived and forever released." Dkt. 101-11, at pp. 4-5.[14]  If arbitration is ordered, Menzies can boot-strap itself into new defenses that can delay, or even dismiss, any individual arbitrations the Court compels. Prejudice is compounded because of potential uncertainty about tolling of the statute of limitations, and when that tolling ends (and the statute of limitations begins to run again) for affected Class Members.[15]

## XI.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court deny Menzies' "Motion to Compel Arbitration and Exclude Covered Class Members from the Certified Class" in its entirety.

DATED: January 30, 2025

**LAW OFFICES OF C. JOE SAYAS, JR. and KING CHENG MILLER & JIN LLP**

By:    _/s/ C. Joe Sayas, Jr._

C. JOE SAYAS, JR.
KARL P. EVANGELISTA
Class Counsel

---

[14] The First Circuit addressed a similar situation in *In re Citigroup, Inc.*, 376 F.3d 23 (1st Cir. 2004), where the employer-defendant filed a motion to compel arbitration 18 months after a class of employees was certified. The district court found defendant had waived the right to arbitrate, and denied the motion, which the First Circuit affirmed, finding "no excuse for [defendant's] delay in notifying the class members of its intention to seek arbitration nor for failing to seek arbitration promptly."  376 F.3d at 27.  *In re Citigroup* notably found prejudice because "if the arbitrable claims are sent to arbitration they may be subject to new defenses related to the statute of limitations and the equitable doctrine of laches; and even if the defenses are not successful, plaintiffs will have to respond to them."  *Id.*

[15] *See DeFries v. Union Pacific Railroad Company*, 104 F.4th 1091, 1095 (9th Cir. 2024) (addressing "question of first impression for class-action practice," specifically, when does the narrowing of a class definition end tolling of the statute of limitations for members of a putative or certified plaintiff class?) (petition for certiorari filed Dec. 9, 2024).

25

PLAINTIFFS' OPPOSITION TO DEFENDANT MENZIES AVIATION (USA), INC.'S MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS