CHRISTOPHER WARD, CA Bar No. 238777
   cward@foley.com
KALEB N. BERHE, CA Bar No. 302080
   kberhe@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE:  213.486.0065

KEVIN JACKSON, CA Bar No. 278169
   kjackson@foley.com
**FOLEY & LARDNER LLP**
11988 EL CAMINO REAL, SUITE 400
SAN DIEGO, CA 92130-2594
TELEPHONE: 858.847.6700
FACSIMILE:  858.792.6773

Attorneys for Defendant
MENZIES AVIATION (USA), INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DORA PATRICIA AMAYA, an individual; and ANIBAL SILVA, an individual; on behalf of themselves and others similarly situated,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>MENZIES AVIATION (USA), INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>　　　　　　　Defendants. | Case No. 2:22-cv-05915-HDV-MARx<br><br>**DEFENDANT MENZIES AVIATION (USA), INC.'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND EXCLUDE COVERED CLASS MEMBERS FROM THE CERTIFIED CLASS**<br><br>Date:　　February 20, 2025<br>Time:　　10:00 a.m.<br>Ctrm.:　　5B, 5th Floor<br>Judge:　　Hon. Hernán D. Vera<br><br>Complaint Filed:　August 19, 2022<br>FAC Filed:　　　August 30, 2022<br>SAC Filed:　　　May 9, 2023 |

I.    **INTRODUCTION**

Through *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022) and *Bissonnette v. LePage Bakeries Parks St., LLC*, 601 U.S. 246 (2024), the Supreme Court has made it plain that the "transportation worker" exemption under Section 1 of the Federal Arbitration Act ("FAA") requires analysis of what a class of workers does, not the nature of the employer's business. Yet Plaintiffs' Opposition materials depend entirely on what Menzies Aviation does – which is simply legally incorrect. As a consequence, their meager evidentiary presentation relying on an industry-based approach, delving into only **four** of the **65** Covered Job Classifications and creates an arguable factual dispute with **only one** such classification, falls woefully short of satisfying their burden of proof with respect to each and every one of the Covered Job Classifications. The Court should therefore grant Menzies' Motion to Compel Arbitration and Exclude Covered Class Members from the Certified Class (the "Motion") in its entirety and simultaneously reject Plaintiffs' procedurally improper and factually misleading request for reconsideration of their unsuccessful attempt to assert waiver by Menzies of its arbitration rights.

II.   **ARGUMENT**

   A.   **Plaintiffs Concede The Enforceability Of The Arbitration Agreement**

As a threshold matter, Plaintiffs do <u>not</u> challenge the existence or enforceability of the Arbitration Agreement. Instead, their Opposition is limited to the question whether employees who worked in any of the Covered Job Classifications are "transportation workers" under Section 1 of the FAA and therefore exempt from its coverage. As a result, Plaintiffs have conceded that Menzies satisfied its obligation to establish the existence and enforceability of the Arbitration Agreement as to all those working in a Covered Job Classification and the Court need not give that issue any consideration.

   B.   **Plaintiffs Fail To Satisfy Their Burden To Prove That Each Covered Job Classification Is A Transportation Worker**

As the "party resisting arbitration," Plaintiffs carry "the burden of proving" that employees working in Covered Job Classifications are "transportation workers" under

1  Section 1 of the FAA.  *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91
2  (2000) *Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc.*,
3  560 F.3d 935, 940 (9th Cir. 2009); *Castillo v. CleanNet USA, Inc.*, 358 F. Supp. 3d 912,
4  939 (N.D. Cal. 2018) ("[t]he party seeking to avoid arbitration bears the burden of
5  establishing that Congress intended to preclude arbitration of the statutory claims at
6  issue").  To satisfy this burden, Plaintiffs must present sufficient evidence for this Court
7  to apply the exemption because "factfinding is required to decide whether to compel
8  arbitration."  *Fraga v. Premium Retail Servs., Inc.*, 61 F.4th 228, 237, 242 (1st Cir. 2023)
9  (remanding case and directing that "[f]urther factfinding is necessary to determine
10 whether [plaintiff] belonged to a class of transportation workers.")

11         Instead of taking on this burden with position-specific evidence in response to the
12 extensive evidence Menzies offered, Plaintiffs primarily rely on a clearly erroneous legal
13 argument regarding the transportation exemption scope while providing meager credible
14 evidence to allow the Court to test their showing against their burden.  As noted *infra*, in
15 so doing, they clearly fail to satisfy their burden of proving by a preponderance of the
16 evidence that every Covered Job Classification meets the "narrow" transportation worker
17 exemption.  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111, 114-15 (2001)
18 (directing lower courts to construe the FAA's Section 1 "residual clause" narrowly,
19 erring in favor of arbitration unless the circumstances at issue clearly compel a different
20 result.)  Their weak effort in response to this burden calls for the Court to grant the
21 Motion in its entirety and with respect to every Covered Job Classification.

22             **1.    <u>The Correct Analysis Is How Frequently Covered Job</u>**
23                    **<u>Classifications Perform Active, Direct, Physical Movement Of</u>**
24                    **<u>Goods – Not The Industry In Which They Perform Those Tasks</u>**

25         Effectively ignoring Supreme Court precedent, Plaintiffs tether their analysis to the
26 fact that Menzies' employees work in the airline industry, in direct convention of *Saxon*
27 and *Bissonnette*.  Plaintiffs also totally ignore *Fraga*'s "frequency" analysis – an analysis
28 required by the *Saxon* holding – and instead make the erroneous argument that "Menzies

stubbornly insists that this Court ignore controlling Ninth Circuit law in *Lopez* to administer an alternate residual-clause test ostensibly utilized in the First Circuit by the U.S. District Court of Massachusetts" which Plaintiffs believe "would be improper." [Dkt. 103, pp. 8-9.] Plaintiffs' arguments fail for several reasons.

First, contrary to the contention that Menzies asks the Court to ignore *Lopez*, Menzies unequivocally stated it "recognizes that this Court is bound to apply [*Lopez*] and find individuals who directly pump fuel into aircraft are transportation workers." [Dkt. 101, p. 19.] As a consequence, Menzies did not include Fuelers in the Covered Job Classifications. Instead, Menzies observed that while the Court must follow *Lopez* with respect to Fuelers, the consequence of Plaintiffs' claim that every Menzies employee is a "transportation worker" presents the Court with the difficult task of reconciling *Lopez*'s view that workers whose tasks are "so closely related to interstate and foreign commerce as to be in practical effect part of it" with the Supreme Court's explicit rejection of an industry-wide standard in *Saxon* and *Bissonnette* and the *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152 (9th. Cir. 2024) panel's painstaking application of "*Saxon*'s bottom line" to narrowly construe the exemption. [Dkt. 103, p. 2.]

Second, Plaintiffs do not attempt to disguise the fact that they ask the Court to take an industry-wide view of the transportation exemption, declaring that Menzies' "aviation-services employees' *raison d'etre* is to enable the timely and orderly transportation of airline passengers and good in the stream of interstate commerce." [Dkt. 103, p. 1.] Of course, the same was true for Southwest Airlines, yet the Supreme Court has twice unequivocally rejected the same argument, directing courts to focus on the particular workers involved and the actual work they perform. *Bissonnette*, 601 U.S. at 247 ("§1 says nothing to direct courts to consider the industry of a worker's employer. The relevant question [is] 'what [Saxon] does at Southwest, not what Southwest does generally"), *citing Saxon*, 596 U.S. at 455-58, 463. Relying on these clear instructions, at least one other District Court in California has seen through this same façade. *See Nair v. Medline Indus., Inc.*, No. 2:22-CV-00331-DAD-JDP, 2023 WL 2636464, at *3 (E.D. Cal.

MENZIES' REPLY ISO MOTION TO COMPEL ARBITRATION
-3-   Case No. 2:22-cv-05915-HDV-MARx

Mar. 24, 2023), *aff'd sub nom. Nair v. Medline Indus., LP*, No. 23-15582, 2024 WL 4144070 (9th Cir. Sept. 11, 2024) (*citing Saxon* for its holding "rejecting plaintiff-respondent Saxon's argument that she belonged to a class of "airline employees" and instead defining her class in terms of the work performed by ramp supervisors like her) ("Rather, the court must consider the "actual work" that those in plaintiff's position "typically carry out," that is, what those workers "frequently" do for the employer"). Put simply, Plaintiffs ask the Court to view the work of Covered Job Classifications through the lens of Menzies' industry – which *Saxon* and *Bissonnette* forbid.

Third, Plaintiffs fail to acknowledge that both the Ninth Circuit and courts within the Circuit have cited *Fraga* with approval – <u>meaning *Saxon*'s frequency requirement is something the Court must consider against Plaintiff's burden of proof</u>. *See, e.g., Carmona Mendoza v. Domino's Pizza, LLC*, 73 F.4th 1135, 1138 (9th Cir. 2023), *cert. denied sub nom. Domino's Pizza, LLC v. Carmona*, 144 S. Ct. 1391 (2024); *see also Nair*, 2023 WL 2636464, at *3. Menzies thus correctly asks the Court to reconcile the Ninth Circuit's analysis in *Lopez* with *Saxon*, *Bissonnette*, *Ortiz* and *Fraga* – all of which support an analysis that emphasizes direct physical movement of goods and "active" and "frequent" requirements to such activity. *Fraga* is particularly instructive because it is the *only* post-*Saxon* case applying the "frequency" requirement to the factual record in interpreting the transportation worker exemption – and Plaintiffs' Opposition materials do nothing to contradict what Menzies provided in terms of such frequency – indeed, Plaintiffs completely ignore that required component with their industry-wide approach.

Fortunately for this Court, Plaintiffs' insistence that the Court disregard the Supreme Court's rejection of an industry-wide standard has resulted in their choosing to provide virtually no evidence contradicting what Menzies provided in terms of the minimal frequency of direct movement of interstate goods performed by some Covered Job Classifications. Although parsing through the Covered Job Classifications remains a daunting task occasioned by Plaintiffs' incorrect legal position, the task has become somewhat simplified given Plaintiffs' failure to take on their burden of proof and a

faithful application of the key takeaways from the precedent discussed above. First, the Court should focus on the work performed, not Menzies' industry. Second, the Court should determine whether the work performed involves both the "frequent" and "active" direct physical movement of goods – and with respect to the frequency component, only Menzies has supplied evidence to assist the Court with that portion of the analysis. Finally, the Court should apply these benchmarks in a manner that recognizes "that the § 1 exclusion provision be afforded a narrow construction." *Circuit City*, 532 U.S. at 118.

## 2. Plaintiffs' Failure To Submit Position-Specific Evidence Compels A Finding That No Covered Job Classification Is Exempt

Having taken the position that every one of Menzies' 7,000+ employees in California is a "transportation worker," Plaintiffs must prove that *each* and *every* Covered Job Classification entails "frequent" and "active" involvement in the direct movement of interstate goods. Their Opposition materials are insufficient to carry their burden.[1]

Menzies submitted with the Motion a job description and declaration testimony for each Covered Job Classification, and for certain classifications, it provided additional testimony from witnesses with firsthand knowledge of the practical realities of the job and the minimal frequency with which certain job duties are performed. All told, Menzies established that Covered Job Classifications in Evidence Group 1 positions "exclusively perform job functions that have no connection to, or involvement with, luggage, cargo, or any other form of interstate goods." [Dkt. 101-6, p. 4.] Evidence Group 2(a) positions have no role in the movement of cargo or passenger baggage onto or

---

[1] Plaintiffs' contention that Menzies is "mistaken in wholly ignoring" workers who "facilitate" the "movement of passengers" is a red herring. Menzies does not employ any personnel who travel on aircraft with passengers, and there is certainly no evidence that any Covered Job Classification has duties requiring a worker to physically pick up and carry passengers around the terminal, or from the gate to their seat on the aircraft. Insofar as a particular worker's duties involve servicing the aircraft (e.g., Fuelers) to sufficiently facilitate the interstate journey of goods such that the Section 1 exemption applies to their work, it goes without saying that such duties also facilitate the movement of passengers. Plaintiffs' reliance on cases involving workers who physically transport passengers (e.g., Uber drivers) thus misses the mark entirely given that there are no Covered Job Classifications who directly transport passengers across state lines.

off of aircraft. Evidence Group 2(b) positions only have indirect and ancillary involvement in the movement of cargo or passenger baggage onto or off of aircraft. And Evidence Group 2(c) positions only have infrequent (i.e., less than 20% of working time) involvement in the movement of cargo or passenger baggage onto or off of aircraft.

In response, Plaintiffs provided position-specific evidence with respect to only **four** of the **65** Covered Job Classifications (Passenger Service Agent, Cargo Agent, Cabin Cleaner, and Cabin Lead). With respect to the Passenger Service Agents, Plaintiffs submitted a single self-serving declaration from Plaintiff Amaya describing her experience. [Dkt. 103-2.] Even were this isolated, self-serving evidence credible, at most, it establishes a fact dispute for one position and contradicts the testimony of Cass Borthwick, Dave Funes, and Kyle Stephens. [*Compare* 103-2 (Amaya's declaration stating that she spent three to four hours per 8-hour shift "tracking down baggage" [2]), *with* Dkt. 101-15, 101-17, and 101-27 (Borthwick's, Funes', and Stephens' declarations all stating that Passenger Service Agents only touch passenger baggage during check-in, and only for a moment when they move luggage from a scale onto the floor)]. The evidence weighs in Menzies' favor in a situation where Plaintiffs have the burden, but even if the Court disagrees, at most, Plaintiffs have established a factual dispute with respect to one position that would need to be resolved at an evidentiary hearing.

As for Cabin Cleaners, Cabin Leads, and Cargo Agents, Plaintiffs cited testimony that in fact favors Menzies and is consistent with the Menzies' evidence. As to Cabin Cleaners/Cabin Leads, the evidence is consistent that they "exclusively perform job functions that have no connection to, or involvement with, luggage, cargo, or any other form of interstate goods." [*Compare* Dkt. 101-6, p. 4 *with* Dkt. 103-1, pp. 59–62 (Cabin Cleaners and Leads are responsible for cleaning and security checks)]. As to Cargo Agents, the evidence establishes that they "work in an office and engage in clerical work. . . . In fact, Cargo Agents are prohibited from moving passenger baggage or

---

[2] "Tracking down baggage" is an artful way of avoiding what *Saxon* requires – "direct" and "actual" movement of goods. "Tracking down baggage" is not physically moving baggage for hours at a time – it means "tracking it down" mostly using a computer.

cargo." [*Compare* Dkt. 101-17, p. 4 *with* Dkt. 103-1, p. 77].

That is the entirety of Plaintiffs' position-specific evidentiary submission going beyond the superficial job descriptions. Beyond that, they cite a handful of deposition excerpts that explain that Menzies provides three general services in California: ground handling, cargo handling, and fueling. [Dkt. 101-6, p. 2; 101-1, pp. 29-36.] Referring to these services as "departments," Plaintiffs categorize the 65 Covered Job Classifications within them, but then rather than focusing on any specific position, Plaintiffs focus on the *overarching services* provided the three "departments" to make speculative arguments about position-specific job duties untethered to evidence. [*E.g.*, Dkt. 103, pp. 9-10 ("Job descriptions for these job classifications make clear that these positions are in the Ramp Operations Department. Ramp handling involves all aspects of the offloading and loading of baggage and cargo …")[3]]. This is merely another turn to an improper industry-specific analysis, *Bissonnette*, 601 U.S. at 247, *Saxon*, 596 U.S. at 455-58, 463, not a focus on the specific duties of each Covered Job Classification.

The only other evidence Plaintiffs rely on is the face of the job descriptions. [Dkt. 103-3.] Plaintiffs created a 50-page chart cherry-picking items from job description that, in Plaintiffs' view, suggest some relationship between a given position and the movement of goods. But superficial job descriptions alone do not satisfy Plaintiffs' burden of proof. To the extent some of the job descriptions suggest a position involves direct movement of baggage or cargo, such a suggestion does not negate the extensive declaration testimony submitted by Menzies. In fact, the vagaries of written job descriptions <u>are the reason why Menzies supplemented many of them</u> with declaration testimony providing context, real-life experience, and describing the minimal frequency with which some duties are performed. As but one example, the Training Coordinator description includes a generic note that "other tasks include lifting passenger bags up to 70lbs" and "frequently lift and/or move up to 25lbs," [Dkt. 101-24], and Menzies thus supplemented this generic

---

[3] Plaintiffs cite extensive deposition testimony about Ramp Agents and Cargo Handlers – positions Menzies did not include in the Covered Job Classifications, making such evidence completely irrelevant to the Motion.

MENZIES' REPLY ISO MOTION TO COMPEL ARBITRATION
-7-    Case No. 2:22-cv-05915-HDV-MARx

note with Anthony Pulgado's declaration testimony that "Training Coordinators never engage in the movement of passenger baggage or cargo" and that "[t]he Training Coordinator performs the classroom training and computer training, both of which take place in an office building. However, on-the-job training is always performed by the employee's on-site supervisor or manager." [Dkt. 101-23.] A chart taking job description language out of context does not carry the day against such testimony.

Ultimately, Plaintiffs' strategy depends on the supposition that they do not need to focus on what any Covered Job Classification does – only what Menzies' larger business is. The failure of that legal argument results in their failure to meet their burden of proof.

## C. The Court Should Ignore Plaintiffs' Disingenuous Attempt To Relitigate Their Partial Summary Judgment Motion Asserting Waiver

Plaintiffs dedicate five pages of their Opposition to make what amounts to an improper motion for reconsideration, urging the Court to reverse its finding that Menzies did not waive its arbitration rights. Just as they make little effort to conceal that they want the Court to apply a legally incorrect industry-wide standard, Plaintiffs also "request re-evaluation in light of additional evidence before it and the above-cited new cases"— effectively packaging an improper motion for consideration into their Opposition. Notably, Plaintiffs focus not on the brief period between the Court's denial of their motion, but instead recycle the same arguments the Court already rejected. [Dkt. 130, pp. 21-24] (characterizing Menzies' conduct over "28 months" of litigation).

Plaintiffs also boldly contend that Menzies' appeal "never had any merit," based solely on the fact that the Ninth Circuit did not grant its *en banc* petition and the Supreme Court denied its petition for certiorari[4] – neither of which reflect the merits of Menzies' arguments on what has become a rapidly developing area of the law following the 2022

---

[4] The Supreme Court grants "about 1%" of petitions for certiorari. *See* SCOTUSblog, Jan. 2, 2022, https://www.scotusblog.com/2022/01/the-statistics-of-relists-over-the-past-five-terms-the-more-things-change-the-more-they-stay-the-same. The Ninth Circuit grants *en banc* petitions even less frequently. *See* Central District Insider, Aug. 3, 2019 ("The 9th Circuit Annual Report for 2018 has some pretty interesting statistics. One is that there were 955 petitions for rehearing en banc last year. Of those, 17 were 'called' for a vote. Of those, 8 petitions were granted and 9 denied. So 8 out of 955").

*Saxon* decision. Plaintiffs' contentions that the *Lopez* appeal "never had any substantial bearing" on Menzies' Motion also simply does not account for the fact that because of the *Lopez* decision, Menzies excluded positions other than Fuelers from its list of Covered Job Classifications – meaning *Lopez* had a direct bearing on how Menzies drew the scope of the Covered Job Classifications. [Dkt. 103, p. 12, fn. 2.] Moreover, Menzies' exhaustion of its appellate rights is consistent with the Court's prior determination that it was "reasonable" for Menzies "to await filing a motion to compel arbitration this case, while the appeal in *Lopez* remains pending." [Dkt. 86, pp. 6-7.]

Similarly, Plaintiffs' characterization that Menzies is "vigorously participating in discovery" is a shameful misrepresentation of what has occurred. Menzies' "vigorous participation" in discovery <u>is only in direct response to what Plaintiffs have forced Menzies to do with their own affirmative discovery actions</u>. The reality is that Menzies has not propounded any discovery or taken any depositions whatsoever for over a year – instead, Menzies' efforts have been devoted exclusively to responding to Plaintiffs' repeated discovery requests and discovery disputes, punctuated by Menzies' recent production of hundreds of thousands of documents. The Court need look no further than the case docket and Plaintiffs' recent motion to compel discovery efforts to bear this out. [Dkt. 96, 97 & 99.] Plaintiffs also ignore the fact that immediately following the Court's denial of their motion asserting waiver, Menzies devoted substantial effort to meet and confer efforts hoping to narrow the scope of this Motion. [Dkt. 101, pp. 12-13; Dkt. 101-2, pp. 3-4.] These efforts regrettably culminated not in limiting the issues before the Court, but instead greatly expanding them beyond what Menzies reasonably anticipated, which necessitated Menzies to gather evidence to present to the Court regarding employees who are not involved whatsoever in the physical movement of goods (such as Human Resources personnel). Following the parties' meet and confer efforts, Menzies diligently gathered the evidence necessary over the subsequent months to support its Motion and promptly filed it before the end of 2024, efforts which are consistent with its preservation of the right to compel arbitration.

The Court should disregard Plaintiffs' procedurally improper and factually disingenuous request for reconsideration.

### III. CONCLUSION

For the foregoing reasons, Menzies respectfully requests that the Court grant its Motion in its entirety.

DATED: February 6, 2025

**FOLEY & LARDNER LLP**
Christopher Ward
Kevin Jackson
Kaleb Berhe


/s/ Christopher Ward
Christopher Ward
Attorneys for Defendant
MENZIES AVIATION (USA), INC.